No. 25-2553

---

IN THE

# United States Court of Appeals
FOR THE THIRD CIRCUIT

---

LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, *Plaintiffs-Appellants*,

*-against-*

BRITTANY JEREAM COURVILLE, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey Limited Liability Company, *Defendants-Appellees*.

---

On Appeal from the United States District Court for the District of New Jersey, before the Honorable Zahid N. Quraishi, U.S.D.J.
No. 3:22-cv-04969-ZNQ-RLS

---

**APPELLANTS' BRIEF IN SUPPORT OF APPEAL FROM THE ORDER ENTERED JULY 11, 2025, DISMISSING THE FOURTH AMENDED COMPLAINT WITH PREJUDICE**

---

**EPSTEIN OSTROVE, LLC**
Elliot D. Ostrove, Esq.
Vahbiz P. Karanjia, Esq.
Lucia Wa Yang, Esq.
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Tel: (732) 828-8600
Fax: (732) 828-8601

*Counsel for Plaintiffs-Appellants*

# CORPORATE DISCLOSURE STATEMENT AND FINANCIAL INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Rule 26.1, Plaintiffs-Appellants, Lima Jevremović ("Ms. Jevremović"), and Autonomous User Rehabilitation Agent, LLC ("AURA"), discloses as follows:

AURA is a non-governmental corporate entity with no parent company, and no publicly held corporation owns a ten % (10%) or greater ownership interest in it.

No publicly held corporation holds a financial interest in the outcome of this litigation.

DATED: October 21, 2025      **EPSTEIN OSTROVE, LLC**

BY: _____
     Elliot D. Ostrove, Esq.
     Vahbiz P. Karanjia, Esq.
     200 Metroplex Drive, Suite 304
     Edison, New Jersey 08817
     Tel: (732) 828 – 8600
     Fax: (732) 820 – 8601
     e.ostrove@epsteinostrove.com
     v.karanjia@epsteinostrove.com

     *Counsel for Plaintiffs-Appellants*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ......................................................................................... 1

STATEMENT OF JURISDICTION ............................................................... 2

STATEMENT OF ISSUES ............................................................................ 3

STATEMENT OF RELATED CASES ........................................................... 5

STATEMENT OF THE CASE ....................................................................... 5

   I.   RELEVANT PROCEDURAL HISTORY ............................................ 5

   II.   STATEMENT OF FACTS ................................................................... 6

      A.  Lima Jevremović and AURA ...................................................... 6

      B.  Brittany Jeream Courville ............................................................ 7

      C.  Plaintiffs' Involvement with Bam Margera .................................. 7

      D.  Plaintiffs' Involvement with Amanda Rabb ................................ 12

      E.  Ms. Courville Doxes Ms. Jevremović And Her Family ............. 16

SUMMARY OF THE ARGUMENT ............................................................. 18

LEGAL ARGUMENT .................................................................................. 22

   I.   STANDARD OF REVIEW ............................................................... 22

   II.   THE DISTRICT COURT ERRED IN DISMISSING THE LIBEL
      CLAIMS ........................................................................................... 23

      A.  Plaintiffs Have Plead Libel Claims ............................................ 23

        1.  Plaintiffs Have Sufficiently Plead that Defendants Published False and
          Defamatory Statements Concerning Plaintiffs ......................... 24

          i.  Defendants Published False and Defamatory Statements Regarding
            Plaintiffs' Involvement with Mr. Margera ......................... 25

          ii.  Defendants Published False and Defamatory Statements Regarding
            Plaintiffs' Involvement with Ms. Rabb .............................. 29

          iii.  Defendants Published False and Defamatory Statements by
            Implying That Ms. Jevremović Had an OnlyFans Account ........... 32

2.   Plaintiffs Have Adequately Pled that Defendants Published Defamatory Statements to Their Audience.................................33

3.   Plaintiffs Have Adequately Pled Actual Malice....................................35

    i.   The District Court Did Not Provide any Independent Analysis on the Libel Claims .................................................................................35

    ii.   Plaintiffs Have Alleged Facts to Support an Inference of Actual Malice .................................................................................37

III.  THE DISTRICT COURT ERRED IN THE DISMISSING THE INVASION OF PRIVACY CLAIMS ................................................................................ 43

   A.   The District Court Erred in Dismissing the Intrusion Upon Seclusion Claim .......................................................................................................43

   B.   The District Court Erred In Dismissing The False Light Claim................46

IV.  THE DISTRICT COURT ERRED IN DISMISSING THE EMOTIONAL DISTRESS CLAIMS ................................................................................... 48

   A.   Plaintiffs Have Sufficiently Pleaded the Intentional Infliction of Emotional Distress (the "IIED") Claim ..................................................48

   B.   Plaintiffs Have Sufficiently Pled the Negligent Infliction of Emotional Distress ("NIED") Claim ..........................................................................51

V.  THE DISTRICT COURT ERRED IN DISMISSING THE TORTIOUS INTERFERENCE CLAIMS ....................................................................... 52

   A.   The District Court Erred in Dismissing the Tortious Interference Claims without Examining Their Substance .......................................................52

   B.   Plaintiffs Have Adequately Pled The Tortious Interference Claims .........54

CONCLUSION.................................................................................................55

COMBINED CERTIFICATIONS.......................................................................56

CERTIFICATE OF SERVICE ...........................................................................57

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Woodbridge Twp. Sch. Dist.*,
  957 F.3d 174 (3d Cir. 2020) ................................................................27

*Alianza Dominicana, Inc. v. Luna*,
  645 N.Y.S.2d 28 (App. Div. 1996) .......................................................28

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................23

*Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*,
  654 F. App'x 80 (3d Cir. 2016) ............................................................34

*DeAngelis v. Hill*,
  180 N.J. 1 (2004) .................................................................................24

*Eastwood v. Nat'l Enquirer*,
  123 F.3d 1249 (9th Cir. 1997) .............................................................39

*Fanelle v. LoJack Corp.*,
  79 F. Supp. 2d 558 (E.D. Pa. 2000) .....................................................48

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .............................................................................38

*Greczyn v. Colgate-Palmolive*,
  183 N.J. 5 (2005) .................................................................................54

*Herman v. Ibtihaj Muhammad*,
  No. A-1328-23, 2024 N.J. Super. Unpub. LEXIS 2416 (App. Div. Oct.
  15, 2024) ........................................................................ 35, 42

*Karnell v. Campbell*,
  206 N.J. Super. 81 (App. Div. 1985) ....................................................24

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
  926 F.2d 1406 (3d Cir. 1991) ..............................................................23

*Lascurain v. City of Newark*,
  349 N.J. Super. 251 (App. Div. 2002) ..................................................52

*Leang v. Jersey City Bd. of Ed.*,
   198 N.J. 557 (2009) ............................................................................ 25, 30

*LY Berditchev Corp. v. ESupplements, LLC*,
   No. 2:24-cv-00625 (WJM), 2024 U.S. Dist. LEXIS 165092, at *4-5 (D.N.J. Sep.
   12, 2024) ..................................................................................................55

*Mangan v. Corp. Synergies Grp., Inc.*,
   834 F. Supp. 2d 199 (D.N.J. 2011).........................................................26

*McCafferty v. Newsweek Media Grp., Ltd.*,
   955 F.3d 352 (3d Cir. 2020) .................................................. 29, 38, 42

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ................................................................................ 22, 28

*Moriarty v. Classic Auto Grp., Inc.*,
   Civil Action No. 13-5222 (JBS/AMD), 2014 U.S. Dist. LEXIS 79408,
   (D.N.J. June 11, 2014)..............................................................................38

*Nostrame v. Santiago*,
   213 N.J. 109 (2013) ..................................................................................56

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019) .................................................... 40, 42, 43

*Pierce v. Capital Cities Commc'ns, Inc.*,
   576 F.2d 495 (3d Cir. 1978) .....................................................................28

*Printing Mart-Morristown v. Sharp Elec. Corp.*,
   116 N.J. 739 (1989) ..................................................................................55

*Salzano v. N. Jersey Media Grp. Inc.*,
   201 N.J. 500 (2010) ..................................................................................24

*Schachtel v. Hughes*,
   Nos. A-3510-21, A-3728-21, 2024 N.J. Super. Unpub. LEXIS 2609, (App. Div.
   Oct. 25, 2024) ................................................................. 21, 36, 51

*Senna v. Florimont*,
   196 N.J. 469 (2008) ..................................................................................25

*Standridge v. Ramey*,
   221 N.J. Super. 538 (App. Div. 1999)......................................................38

*Tah v. Glob. Witness Publ'g, Inc.*,
    413 F. Supp. 3d 1 (D.D.C. 2019)...................................................................32

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
    164 F.3d 186 (3d Cir. 1998) ............................................................... 26, 33

*Turner v. Wong*,
    363 N.J. Super. 186 (App. Div. 2003)...........................................................52

*United States v. Gonzalez*,
    905 F.3d 165 (3d Cir. 2018) ........................................................................35

*Wang v. N.J. State Police*,
    No. 3:18-cv-11933-BRM-TJB, 2019 U.S. Dist. LEXIS 139809 (D.N.J.
    Aug. 19, 2019) .............................................................................................51

*Ward v. Zelikovsky*,
    136 N.J. 516 (1994) .............................................................. 25, 29, 33, 34

**Statutes**

28 U.S.C. §1291 ................................................................................................3

28 U.S.C. §1332(a) ..........................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................23

Rule 12(b)(6)..................................................................................................23

**Treatises**

1 Law of Defamation §1:21 (2d ed)..............................................................1

Restat. (2nd) of Torts § 652B cmt. d. .........................................................45

## INTRODUCTION

> The protection of reputation has taken on additional gravity since the development of the Internet. It is now easier to defame another person than at any time in world history, as the Internet makes everyone a potential mass-media publisher.
>
> 1 Law of Defamation §1:21 (2d ed).

Plaintiffs-Appellants, Lima Jevremović ("Ms. Jevremović"), and Autonomous User Rehabilitation Agent, LLC ("AURA" and, with Ms. Jevremović, collectively referred to as "Plaintiffs"), respectfully submit this brief in support of their appeal to the United States Court of Appeals for the Third Circuit. Ms. Jevremović and her family have been devastated by a series of defamatory Youtube videos published to millions on social media by Defendants-Appellees, Brittany Jeream Courville ("Ms. Courville") and her Youtube channel, That Surprise Witness TV, LLC (the "LLC" and, with Ms. Courville, collectively referred to as "Defendants").

When the District Court dismissed the Fourth Amended Complaint ("FAC"), it created an unprecedent free pass allowing online surfers to defame others without consequence. The District Court erroneously granted that free pass to Defendants because "the context of the allegations as pled in the FAC stem from Instagram and YouTube," as if merely making the statement online necessarily immunizes you

from a claim of defamation. Of course, it is the *content* of the communication, not the medium through which it is transmitted, that controls.

The District Court also held that linguistic trappings such as "it appears," "I believe," or simply couching one's statements as a "conspiracy theory" entitles Defendants to a free pass for defamation. Again, such holding disregards the content, verifiability, and the context of the underlying statements, which are the core factors to determine if a statement is defamatory.

More importantly, throughout its decision, the District Court manufactured a heightened pleading standard for Plaintiffs. When the District Court analyzed Plaintiffs' claims, it did not draw reasonable inferences from Plaintiffs' allegations, as required by *Twombly* and *Iqbal.* Had the correct standards been applied, all of Plaintiffs' claims should survive and proceed. As such, it is respectfully submitted that the District Court's Order should be reversed and this matter should be remanded so that it may proceed in due course.

## STATEMENT OF JURISDICTION

On August 8, 2022, the Complaint was filed by Ms. Jevremović, a resident of California, and AURA, a limited liability company duly formed under the laws of the State of Delaware with its primary place of business in the State of Washington, against Ms. Courville, who is a resident of New Jersey. JA029, ¶¶1-3. The LLC, a limited liability company duly formed in the State of New Jersey, was later added as

a Defendant in the Second Amended Complaint ("SAC"). JA119, ¶5. Pursuant to 28 U.S.C. §1332(a), the Court has jurisdiction over this action as there is complete diversity of citizenship and defendants and because the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

On July 11, 2025, the District Court entered a final order and decision dismissing the FAC, with prejudice. JA012-027. On August 8, 2025, Plaintiffs filed a timely Notice of Appeal. JA010-011. Pursuant to 28 U.S.C. §1291, this Court has jurisdiction to review final orders and judgments from the United States District of New Jersey.

## STATEMENT OF ISSUES

1.  Whether the District Court erred in dismissing the First and Second Count (the "Libel Claims") of the FAC, with prejudice, holding that "the context of the allegations as pled in the [FAC] stem from Instagram and YouTube." JA021.

2.  Whether the District Court erred in dismissing the Libel Claims, with prejudice, when it found Defendants' statements were mere insults and rhetorical hyperbole. *Id.*

3.  Whether the District Court erred in dismissing the Third Count (Invasion of Privacy - Intrusion upon Seclusion) of the FAC, with prejudice, when Defendants released, to their viewers, Ms. Jevremović's and her family's personal information. JA021-023.

4.      Whether the District Court erred in dismissing the Fourth Count (Invasion of Privacy - False Light) of the FAC, with prejudice, when it did not make any findings of fact with respect to that claim. JA024.

5.      Whether the District Court erred in dismissing the Fifth Count (Intentional Infliction of Emotional Distress) of the FAC, with prejudice, when Defendants intentionally published fabricated stories of criminal conduct by Ms. Jevremović, and when Ms. Courville encouraged her viewers to dox Ms. Jevremović and her family. JA024-026.

6.      Whether the District Court erred in dismissing the Sixth Count (Negligent Infliction of Emotional Distress) of the FAC, with prejudice, when Ms. Jevremović and her family were forced to relocate their residence, forced to hire a 24-hour security to guard, and when Ms. Jevremović received death threats and text messages that included pictures of dead bodies. JA026.

7.      Whether the District Court erred in dismissing the Seventh Count (Tortious Interference with Contractual Relations), and Eighth Count (Tortious Interference with Prospective Economic Advantage) of the FAC, with prejudice, without addressing the substance of the allegations and when those claims related back to claims in prior pleadings. JA018.

## STATEMENT OF RELATED CASES

This case has not been before this Court previously, and Plaintiffs are not aware of any related cases pending before this Court.

## STATEMENT OF THE CASE

### I.   RELEVANT PROCEDURAL HISTORY

On August 8, 2022, Plaintiffs filed their initial Complaint, asserting libel claims against Ms. Courville. JA002; 028-058. After correcting a deficiency, Plaintiffs filed an Amended Complaint on June 6, 2023. JA005, 059-088. Ms. Courville filed a Motion to Dismiss the Amended Complaint, which the District Court granted on August 10, 2023 ("*Jevremović I*"). JA004, 089.

On September 11, 2023, Plaintiffs filed a Second Amended Complaint ("SAC") adding the LLC and Prem Benipal ("Mr. Benipal") as additional defendants, as well as eight (8) additional counts. JA110-111, 119, 157-166.

On December 6, 2023, Plaintiffs filed a Third Amended Complaint ("TAC"), correcting a clerical error in the SAC's caption. JA006, 261-262. On January 11, 2024, Defendants filed a Motion to Dismiss, which the District Court granted on August 30, 2024 ("*Jevremović II*"). JA007, 321. The District Court dismissed the claims against Mr. Benipal as time-barred. JA326-330. The District Court dismissed two Harassment Claims with prejudice, and the remaining claims without prejudice. JA321, 337-338, 343.

On October 23, 2024, Plaintiffs filed the FAC, which kept the libel claims, invasion of privacy claims, emotional distress claims, and replaced the unfair competition claims with two tortious interference claims. JA007, 344-399. On December 13, 2024, Defendants filed a Motion to Dismiss the FAC. JA008. On July 11, 2025, the District Court granted Defendants' Motion to Dismiss the FAC with prejudice (the "Order"), finding that "any further amendment would be futile" ("*Jevremović III*"). JA012, 027.

Plaintiffs timely appealed from the Order on August 8, 2025. JA009-011.

## II.    STATEMENT OF FACTS

### A. Lima Jevremović and AURA

Ms. Jevremović has two sisters who experienced mental health crises starting in their early twenties. JA346, ¶6. As Ms. Jevremović helped to take care of her sisters, she became familiar with the difficulties of navigating the complexities of getting medical care for mental illness treatment, and obtaining health insurance coverage for treatment. *Id*. As a result, Ms. Jevremović founded AURA in 2019, to help individuals suffering through mental health crises, including addiction. *Id*. ¶¶7-8. AURA was founded to use technology to scale affordable, high-quality mental health treatment services. *Id*. ¶8. By March 2022, AURA had received $1.5 million in investment and was valued at $10 million. JA347, ¶13.

6

## B. Brittany Jeream Courville

Ms. Courville is a New Jersey attorney, licensed in 2021, after graduating from the University of Pennsylvania School of Law in 2020. JA347-368, ¶15. She worked briefly at Winston & Strawn LLP before parting ways with the firm over her social media use. *Id.* Through her YouTube Channels and Instagram accounts, including, but not limited to, That Surprise Witness TV LLC, Ms. Courville has posted hundreds, if not thousands, of videos or Instagram posts defaming Ms. Jevremović, and her start-up, AURA. JA348, ¶¶16-18, 22.

## C. Plaintiffs' Involvement with Bam Margera

Celebrity entertainer Bam Margera ("Mr. Margera") and his wife, Nicole Boyd-Margera ("Ms. Boyd-Margera"), took an interest in AURA in the Winter of 2020. JA364, ¶84. Mr. Margera had fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addiction. *Id.* Mr. Margera and Ms. Boyd-Margera initially sought to provide their support to Plaintiffs' efforts to rehabilitate addiction and improve related health outcomes. *Id.* When Mr. Margera proved susceptible to multiple relapses in his own battle with addiction, Mr. Margera's family approached Ms. Jevremović for intervention assistance. JA365, ¶85.

When Mr. Margera's family and friends implored Ms. Jevremović to serve as Mr. Margera's temporary guardian, Ms. Jevremović agreed and took on the

responsibility for overseeing Mr. Margera's treatment, which was put into effect by Court Order. *Id.* Mr. Margera's father had been assisting Mr. Margera in managing his finances for many years at Mr. Margera's request, and Ms. Jevremović's appointment as a temporary guardian did not touch upon Mr. Margera's money. JA365, ¶85. On or about June 7, 2021, an Arizona court granted a one-year temporary guardianship over Mr. Margera in connection with his diagnosed medical issues. *Id.*. Notwithstanding that Ms. Jevremović was statutorily permitted to collect reasonable sums for her services as *guardian*, Ms. Jevremović was not reimbursed for funds she advanced for Mr. Margera's treatment or for legal fees. *Id.*

Having no connection to the underlying proceedings, Defendants nevertheless made, suggested, and implied baseless accusations that Mr. Margera's family and Ms. Jevremović manipulated a court-imposed guardianship to access Mr. Margera's assets, that Ms. Jevremović was committing and assisting in the commission of criminal acts, and that Ms. Jevremović was dishonest and promulgated lies. JA365, ¶¶88-89.

Defendants' fabricated story started with the false statement that Mr. Margera was under a "conservatorship." JA366-367, ¶¶90-92. On or about February 9, 2022, Defendants published a post, which stated, among other things, that Mr. Margera was under a "conservatorship," and that conservatorship has financial implications. JA366-367, ¶¶91-95. Informed of the difference between

guardianship and conservatorship, and that Mr. Margera was under a guardianship, Ms. Courville chose to flex her Ivy League legal education to give herself credibility and commented on her own post, among other things:

> Bam margera from jackass is in a conservatorship. His so called friends are erroneously stating that guardianships and conservatorships are not the same thing. The so called friends are mistaken.

JA366-367, ¶92. On April 19, 2022, Ms. Courville published an image on Instagram containing a short conversation between herself and a commenter. The commenter accurately stated:

> [Mr. Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

JA368, ¶96. Ms. Courville, reminding her viewers that she is a lawyer, solicited viewers for her advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

JA368, ¶97. Ms. Courville presented herself as an authority, and her audience viewed her as such on the issues she was discussing. JA368-369, ¶¶98-99.

From June 22, 2022, to June 24, 2022, in no less than five (5) posts on Instagram, Ms. Courville published documents that had been filed under seal in the Superior Court of Arizona, County of Maricopa, in "In the Matter of the Guardianship of: BRANDON MARGERA." JA369-370, ¶¶100-102.

Ms. Courville suggested, insinuated, and implied that Ms. Jevremović was motivated, and was in a position as a "conservator," to control Mr. Margera's assets for her personal benefit. JA369-372, ¶¶102-113. For example, on April 3, 2022, Ms. Courville published an image on Instagram, which purported to list biographical information about Mr. Margera, including his putative net worth ($20 Million). She commented on the image:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 🙄🙄🙄 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😭😭👽👽 #FreeBam.

JA371, ¶111. A commenter on that post stated: "20 million now, soon to be much less, but it'll all be 'legit,'" to which Ms. Courville responded: "but a certain someone will have fresh lips, Botox, and a BBL watch" *Id.* and the same commentator responded: "plus a vehicle, home, medical expenses, all necessary in order to fulfil duties." *Id.* Defendants did nothing to disabuse the commenters of the conclusion being drawn from Defendants' published image and comments. JA370-371, ¶¶104-107.

Under the post where Ms. Courville stressed that a conservator and a guardian are the same thing, a commenter asked: "forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]" JA371, ¶108. Ms.

Courville responded: "I mean… that's my impression, so if you're wrong[,] I am too." *Id*. Again, it was clear that Defendants' posts were being understood in a certain way and Defendants did nothing to disabuse their viewers of that understanding.

Ms. Courville also posted, among other things, "To clarify, I am a licensed attorney who believes @bam__margera's constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in bams best interest." JA372, ¶114. Ms. Courville further told to her audience that Ms. Jevremović was a "handler[] and trafficker[]," and a "criminal." *See, e.g.*, JA374-380, ¶¶121-122, 124, 127, 144, 146.

One of the classic examples of Defendants' fabrication of Ms. Jevremović's "set up" of Mr. Margera are the statements that Ms. Courville made during her video entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT" (the "Police Report Video"). JA376-377, ¶132. In that video, Ms. Courville claims that Ms. Jevremović conspired with Steven Timmer and Mr. Margera's aunt, Antoinette Melissa Dompierre a/k/a Aunt Missy, to trick Mr. Margera into flying to Florida as a "setup" for Mr. Margera's arrest at the hotel at which he was staying. *Id.* Specifically, Ms. Courville zoomed in on two pictures of Ms. Jevremović, and implied to her audience that, according to

11

the article she was reading, Ms. Jevremović was the female who was reportedly assaulted by Mr. Margera, and who "thinks [Mr. Margera] tore her implant." JA377-378, ¶¶133-139. Ms. Jevremović, was not and could not have been the alleged victim. *Id.* ¶139. Defendants knew that but created the illusion otherwise to convince their viewers otherwise. *Id.* Indeed, Ms. Jevremović was in the State of Washington when the alleged assault occurred. JA378, ¶137.

### D. Plaintiffs' Involvement with Amanda Rabb

Amanda Rabb was an unhoused, drug-addicted, woman residing on Los Angeles' notorious Skid Row. JA350, ¶31. In or around late July 2020, Ms. Jevremović appeared for an interview on a YouTube Channel, Soft White Underbelly ("SWU"), run by Mark Laita, a commercial photographer. JA347, ¶10. During that interview, Ms. Jevremović said that she was starting a scholarship program, under which the recipient was to receive one-year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate back into society as a productive, healthy member, free of charge. JA350, ¶28.

Ms. Jevremović eventually selected Ms. Rabb as the first recipient of the scholarship, who was, at that time, in jail for assaulting her father, Larry Rabb.

JA350-351, ¶¶29-32. In or around August 2020, Ms. Jevremović started working with Mr. Rabb and Ms. Rabb's public defender to help Ms. Rabb obtain the treatment she needed for her substance abuse and mental illnesses. JA351, ¶33. In or around November 2020, the Court granted the petition for Ms. Rabb to receive treatment. *Id.* ¶34. Sadly, on May 9, 2021, Ms. Rabb passed away. JA351-352, ¶36.

Ms. Courville took it upon herself to fabricate a story, claiming that Plaintiffs conspired with Ms. Rabb's father and Mr. Laita to put Ms. Rabb in jail. JA352-353, ¶¶37-42. Ms. Courville further falsely claimed that Ms. Jevremović and AURA conducted experimental treatment on Ms. Rabb, against Ms. Rabb's will. JA352-359, ¶¶39-40, 50-51, 63-64. And, Ms. Courville falsely claimed that Plaintiffs caused, and then lied about, Ms. Rabb's death. JA352-353, ¶38-39; JA361, ¶72. Ms. Courville published her story through her social media platforms, including, but not limited to, on her YouTube channel, called "Virtual Reality Hell: The Amanda Rabb Story," which was streamed live on July 21, 2022, and is still accessible online, today (the "Virtual Reality Video"). JA353, ¶40. That video has been viewed over 1.5 million times. The video was published through her YouTube channel: BJ Investigates. Defendant describes her BJ Investigates Channel as follows:

> BJ sets off to uncover the TRUTH behind some of the biggest scandals in History. No matter what that truth may hold…

13

*Id.* ¶41. In selling that story to her viewers, Ms. Courville first played a short excerpt of one of Ms. Rabb's interviews with Mr. Laita, where Ms. Rabb had stated that her father was a molester. JA354, ¶44. Then Ms. Courville told her audience that Ms. Jevremović already knew about Ms. Rabb by July, and worked with Mr. Laita, and Mr. Rabb, whom Ms. Rabb called a "molester," to have Ms. Rabb arrested and put in jail. JA355-356, ¶¶47-55. Ms. Courville also stated in another video, among other things, "On Lima's suggestion, Mark Laita said you should call the cops and get her arrested." JA357, ¶56.

Ms. Courville's viewers believed the "facts" that Defendants conveyed, and interpreted Defendants' false statements as the truth. *See*, e.g., JA359-388. ¶¶62, 116-118, 141-152, 176. Defendants published defamatory statements, such as Ms. Jevremović fraudulently collected donations on behalf of Ms. Rabb and that Ms. Jevremović used Ms. Rabb as a "experiment," "test subject" "against her will," and a "research object." JA358-362, ¶¶59-61, 64, 70, 74, 77.

Ms. Courville once again touted her background as a lawyer and advised her viewers and listeners that her many false statements should be believed because she was making the statements based on her "education, knowledge, and experience." JA372, ¶114, JA386-387; ¶173. Defendants' audience trusted her claimed credentials, listened to and believed as true the objectively false statements that she made, implied, and suggested, and commented on Defendants' videos and

14

posts, among other things, that "Lima and her company 'AURA' is a SCAM," "[t]his woman is a criminal and con artist," and that Lima is "criminal," "sounds like another Elizabeth Holmes," "[d]isgusting," "dangerous," "evil," "manipulative." JA356-363, ¶¶55, 62, 78. Defendants did nothing to disabuse the commenters of their conclusions. JA358-379 ¶¶58, 143.

Ms. Courville chose not to disclose to her audience that Ms. Rabb had stated that she cleared her father's name regarded her father as "a great guy," her "best friend," and her "rock." JA354, ¶¶45-46. Ms. Courville purposely edited the video to leave those parts out because they did not fit into the false narrative she was selling her viewers and followers. JA355-356, ¶¶47, 55.

Ms. Jevremović did not know about Ms. Rabb until Ms. Rabb was already in jail. JA355, ¶¶47-49. During the April 19, 2021, interview with Ms. Rabb, that Ms. Courville referenced in her video, Mr. Laita described to Ms. Rabb and the audience how, and why, he had suggested to Mr. Rabb to put Ms. Rabb in jail. JA357-358, ¶¶57-58. Indeed, Mr. Laita did not mention Ms. Jevremović, whatsoever. JA358, ¶58. In the same interview, Mr. Laita unequivocally said that he recommended Ms. Rabb as the recipient of the scholarship as "the hardest of all" possible candidates. JA355-356, ¶53.

Furthermore, Ms. Courville chose not to show to her audience that Ms. Rabb said, during her April 19, 2022, interview with Mr. Laita, that she had been clean of

15

substance abuse for 10 to 11 months at that time, that the treatment she was receiving "really helped," that Lima "feels like a mom," is "great," and that Ms. Rabb felt "blessed to have Lima." JA364, ¶¶81-82. Again, Ms. Courville purposely edited the video so those parts were not shown because they did not fit with the false narrative she wanted her viewers and followers to believe. *Id.*

### E. Ms. Courville Doxes Ms. Jevremović And Her Family

Ms. Courville's attacks escalated beyond publishing false statements by doxing Ms. Jevremović and her family. JA383-385, ¶¶159-169. She encouraged her rabid fan base to "make some noise" at Ms. Jevremović while providing her personal information. JA348, ¶19; JA383-384, ¶¶161, 163. She published Ms. Jevremović's Social Security number, date of birth, unlisted home phone number, three different home addresses after each forced relocation, and family members' addresses. JA383-385, ¶¶159-169. Additionally, in April 2022, Ms. Courville published a screenshot of a woman named "Lima Mora" insinuating that Ms. Jevremović had a sexually explicit OnlyFans account, which her followers interpreted as fact. JA387-388, ¶¶174-178.

By the time Ms. Jevremović had filed her first complaint, on June 27, 2023, Ms. Courville vociferously proclaimed in a live stream:

> they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it

and it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny–not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…

JA388-389, ¶181.

As a direct result of Ms. Courville's systematic campaign, Ms. Jevremović and her family have suffered severe mental and emotional harm. JA383-384, ¶159-165; JA395, ¶219. They were forced to relocate twice; hired 24-hour security guards after receiving death threats; have received text messages containing pictures of dead bodies; have had drones peer into their homes; and have had strangers appear at their home. JA345, ¶2; JA383, ¶¶161-162; JA392, ¶204. Ms. Jevremović's mother lost her job as a software engineer after thousands of Ms. Courville's followers harassed her employer, based on information Ms. Courville provided. JA349, ¶24.

As a result of Defendants' wrongful conduct, Ms. Jevremović has lost "everything." JA348, ¶21. AURA, once valued at $10 million, closed in February 2024, as investors no longer wanted to affiliate with Ms. Jevremović due to Defendants' defamatory statements. JA345, ¶1; JA348, ¶22; 382, ¶157. Ms. Jevremović could not find employment because Google searches show Ms. Courville's Youtube videos about her. JA349, 382, ¶¶23, 156. Ms. Jevremović regularly sees a psychiatrist and therapist. JA394-395, ¶¶214, 291-220. She was

17

diagnosed with depression in April 2024, and has developed a heart condition related to her emotional distress. JA395, ¶¶219-220. Ms. Jevremović's marriage ended in divorce following Ms. Courville's campaign of harassment. JA349, ¶25.

**SUMMARY OF THE ARGUMENT**

Throughout *Jevremovic I & II*, which were incorporated into *Jevermovic III*, and in *Jevremovic III*, the District Court manufactured a heightened pleading standard for Plaintiffs, instead of accepting the allegations of the FAC as true, and drawing all reasonable inferences in Plaintiffs' favor. The District Court's application of such a heightened standard is especially inappropriate when it comes to libel claims, because "where the statement is capable of more than one meaning, one of which is defamatory and another not, the question of whether its content is defamatory must be resolved by the fact finder." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 263 (App. Div. 2003) (explaining that ambiguous language must be evaluated by the fact finder when more than one reasonable interpretation exists).

Indeed, the District Court applied its manufactured heightened pleading standard to all of Plaintiffs' claims. Plaintiffs adequately pleaded facts that assert and allow the Court to draw reasonable inferences that: (1) published defamatory statements causing damages to Plaintiffs (JA349-349); (2) Defendants intentionally intruded upon Defendants' seclusion by among other things, releasing Ms. Jevremović's SSN (Count III) (JA391-393, ¶¶200-206); (3) Defendants' conduct

18

was "extreme or outrageous" or "beyond all possible bounds of decency" when Defendants encouraged viewers to "make noise" and assisted followers to hound Ms. Jevremović and everyone associated with her (Count V) (JA383-384, 393-394, ¶¶161-163, 212-215); and (4) Defendants' conduct "placed the plaintiff in reasonable fear of immediate personal injury" when Ms. Jevremović was forced to hire a 24-hour security guard, and received text messages of dead bodies (Count VI). JA383, ¶161; JA392, ¶204; 395, ¶218. The District Court erred when it dismissed the FAC.

The District Court further erred in not making any analyses, whatsoever, on whether Plaintiffs have alleged actual malice. JA018-021. Plaintiffs' well pleaded facts were ignored and not addressed. *See e.g.,* JA354-358, 364, 367, 370, 378, 387-389. Had those facts been properly reviewed, the District Court should have concluded that Plaintiffs have allege facts to support, at a minimum, an **inference** of actual malice, just in case such a finding is ultimately made. *Pace v. Baker-White*, 850 F. App'x 827, 832 (3d Cir. 2021) ("At the pleading stage, a public figure, like Pace, must allege *facts* to support an inference of actual malice") (emphasis in original).

When the District Court dismissed Plaintiffs' claim for false light, the District Court simply stated that, "[f]or the reasons provided above, the Court concludes that Plaintiff did not sufficiently allege actual malice with respect to her two libel

claims," and thus, Plaintiffs did not plead actual malice for their false light claims. JA024. There were no "reasons provided above," the District Court did not apply any independent analysis of the actual malice for both the Libel claims and the False Light claims. *Id.*

In dismissing the Tortious Interference claims, the District Court ignored those claims that relate back to, and are, based on the same facts alleged in the TAC in the two Unfair Competition claims. JA316-317, 396-397. Because they are, in essence, the same claims, based on the same facts and just labeled more accurately, those claims should have been examined on merit, instead of being dismissed on a technicality. See *Dole v. Archo Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) (reversing summary judgment and remanding to amend pleading because defendant's claims related back to original agency citations that were not included in original complaint).

The District Court also erred when it incorrectly concluded that Ms. Courville gets a free pass because her statements are published across social media forums. JA019-020. There is no "internet defense." *United States v. Gonzalez*, 905 F.3d 165, 192 (3d Cir. 2018) (holding that internet posts were defamatory). "Words do mean something, and they do have consequences" even when they are published on the Internet. *Schachtel v. Hughes*, Nos. A-3510-21, A-3728-21, 2024 N.J. Super. Unpub. LEXIS 2609, at *19 (App. Div. Oct. 25, 2024). Defendants' viewers believed Defendants' words and implications to be the truth. JA359, ¶32; JA384, ¶167. When

Ms. Courville called her followers to "make some noise," they followed and targeted, harassed, doxed, and cyberstalked Ms. Jevremović, her mother, her husband, and her husband's family. JA348-349, ¶¶19, 23-25; JA383-384, ¶¶161, 163; JA392, ¶202. When Ms. Courville presented her fabricated stories to her audience, saying they were based on her "education, knowledge, and experience," her viewers believed she was "speaking truth, doing God's work," and that Ms. Jevremović is "[a] criminal," "sounds like another Elizabeth Holmes," "[d]isgusting," "dangerous," "evil," "manipulative," "snake oil salesman with blook on her hands," to name a few. JA356, ¶55; JA359, ¶62; JA362, ¶78; 373-374, ¶118; JA375, ¶125. Ms. Courville reinforced her viewers' beliefs and encouraged her viewers to support her statements by affirming and supporting their comments. JA370, ¶107; 379-380, ¶143.

Furthermore, the District Court erred when it held that because Ms. Courville couched her statements as "conspiracy theory," added qualifiers such as "it appears," "I believe" (all with a wink and a nod, of course) and claimed that she uses "satirical, opinion language," Ms. Courville gets a free pass. JA015, 019-021. That free pass flies in the face of the ruling of the US Supreme Court, that held: "[it] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (brackets in original).

21

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

The Court reviews *de novo* a District Court's granting of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Davis v. Samuels*, 962 F.3d 105, 117 n.2 (3d Cir. 2020).

On a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, "the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). To survive a motion to dismiss, a complaint must contain sufficient factual matters which, accepted as true, state a claim to relief that is plausible on its face. *Bell At'l Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is plausible where "the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a probability requirement, but it asks for more than the possibility that a defendant has acted unlawfully. *Id.*

As the Court noted in *Twombly,* "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556.

22

## II. THE DISTRICT COURT ERRED IN DISMISSING THE LIBEL CLAIMS

In a defamation case, the threshold issue is "whether the language used is reasonably susceptible of a defamatory meaning." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 424 (1989). "When the language at issue is capable of both a defamatory and a nondefamatory meaning, there exists a question of fact for a jury to decide." *Karnell v. Campbell*, 206 N.J. Super. 81, 88 (App. Div. 1985). If the challenged language is ambiguous "in the sense of being reasonably subject to either an innocent or a defamatory meaning," it is for the factfinder to determine whether the language will be read in its defamatory sense. *Herrmann v. Newark Morning Ledger Co.*, 48 N.J. Super. 420, 430 (App. Div. 1958).

Here, even if all three decisions – *Jevremović I, II,* and *III* – are considered, the District Court erred in dismissing the Libel Claims, because the allegations in the FAC, construed with all inferences in Plaintiffs' favor, easily cross the modest line from the "possible" to "plausible" that *Twombly* and *Iqbal* require.

### A. Plaintiffs Have Plead Libel Claims

To establish a prima facie case of defamation in New Jersey, a plaintiff must show: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004). A defamatory statement is one that "harms the reputation of another such

23

that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010).

1. Plaintiffs Have Sufficiently Plead that Defendants Published False and Defamatory Statements Concerning Plaintiffs

"To determine if a statement has a defamatory meaning, a court must consider three factors: '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" *DeAngelis*, 180 N.J. at 1.

Courts begin their review to determine whether a statement is susceptible of a defamatory meaning by looking "'to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence.'" *Ward v. Zelikovsky*, 136 N.J. 516, 529 (1994).

When considering verifiability, a court must determine whether the statement is one of fact or opinion. *Id.* at 530. A statement is actionable if it "'suggested specific factual assertions that could be proven true or false.'" *Leang v. Jersey City Bd. of Ed.*, 198 N.J. 557, 585 (2009) (quoting *DeAngelis*, 180 N.J. at 14).

A defendant's accusation that plaintiff committed a crime, must be considered in context, focusing on "the listener's reasonable interpretation" of the statement. *Leang*, 198 N.J. at 585. Context includes "the identity of the speaker and the targeted audience." *Senna v. Florimont*, 196 N.J. 469, 492–93 (2008).

24

> i. *Defendants Published False and Defamatory Statements Regarding Plaintiffs' Involvement with Mr. Margera*

Contrary to the District Court's findings, it cannot be reasonably disputed that Defendants repeatedly published false and defamatory statements about Ms. Jevremović and AURA as related to Mr. Margera. Defendants created a narrative accusing Ms. Jevremović of "set[ting] up" Mr. Margara to be arrested in order to force him into a treatment center, usurping Mr. Margera's assets through a "conservatorship,"[1] using Mr. Margera's assets to get "free lips, Botox, and a BBL watch,"[2] and on numerous occasions referred to Ms. Jevremović as a "handler[]," "trafficker[]," and "criminal." *See e.g.* JA374, ¶121; JA375, ¶124; JA376, ¶127, JA379-380, ¶¶141-142, 144; *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204-205 (D.N.J. 2011) (finding statements that plaintiff engaged in "financial improprieties" constituted actionable "statements of mixed opinion" because they implied underlying facts capable of being proven false); *Taj Mahal Travel, Inc. v.*

---

[1] For example, Defendant posted:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 🫨🫨🫨 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂😂👽👽 #FreeBam.

JA371, ¶111.

[2] Defendant responded to her viewers' comment under this post, implying that Ms. Jevremovic would use Mr. Margera's funds to get "fresh lips, Botox, and a BBL watch." *Id.*

*Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) ("A defamatory statement need not explicitly name a plaintiff, so long as it was understood to refer to it by at least one third party: '[i]f the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff.'"). Defendants posted content echoing and doubling-down on her false statements about Plaintiffs across 300 videos – more than 47 hours devoted to Plaintiffs. JA348, ¶18; JA388, ¶179.

"Determining if a statement is one of fact or opinion rests on the concept of verifiability, because if a statement cannot be proven true or false, it cannot be subject to liability." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 183 (3d Cir. 2020). Here, notwithstanding Defendant's efforts to try to thwart accusations of defamation by couching her statements as opinion or herself as a "conspiracy theorist," each of Defendants' false statements concerning Plaintiffs are verifiable. For example, Defendants could have verified, and chose not to try to verify, whether Ms. Jevremović was appointed as a guardian or as a conservator for Mr. Margera and whether there is a substantive difference between the two based on relevant state laws. JA366-370, ¶¶90-107. Defendants could have verified, and chose not to verify, whether Ms. Jevremović was receiving any payments or distributions, as approved by a Court, through her guardianship of Mr. Margera. JA367, ¶¶93-95.

26

And, of course, couching the defamatory statements in kitschy rhetoric as a "conspiracy theory" with a wink and a nod to her viewers and followers does not render Defendants' defamatory statements not actionable. JA371, ¶111; JA376, ¶128. The District Court erred when it only focused on the use of certain linguistic trappings of "opinion" without looking at the overall context of those statements. JA018-021. Indeed, adding disclaimers or cautionary language such as "they say" or "rumor in the streets say," does not make actionable statements non-actionable. *Alianza Dominicana, Inc. v. Luna*, 645 N.Y.S.2d 28, 30 (1st Dep't 1996). Similarly, "[s]imply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" *Milkovich*, 497 U.S. at 19.

Regardless of how Defendants dressed up their statements, there is no doubt that Ms. Courville's fans, who have long followed Defendants' posts, live stream, and videos, believed that the statements regarding Plaintiffs were objectively true. *Pierce v. Capital Cities Commc'ns, Inc.*, 576 F.2d 495, 502 (3d Cir. 1978) ("It is established that a court should not scrutinize simply the literal references of the language in question, but also should weigh the words 'together with their context.'") (Restat. (Second) of Torts § 563, cmt. (d)). Commenters on Defendants' posts repeatedly accepted Defendants' statements concerning Ms. Jevremović as true. *See e.g.*, JA358, ¶¶60-61; JA360-361, ¶¶66-74; JA362-363, ¶¶76-79.

27

Defendants not only did nothing to disabuse those commenters of their belief, but actually encouraged them to so believe. JA363-364, ¶¶80-82.

Defendants' viewers published numerous comments, expressing their agreement with the falsehoods that Defendants were peddling - that Ms. Jevremović wanted to "control" Mr. Margera's money, that Ms. Jevremović "wants to sink her claws into his parents and manipulate them out of what little he has left," and that Ms. Jevremović was a "snake oil salesman with blood on her hands." JA373-JA374, ¶¶116-119; JA376, ¶131. Defendants' viewers believed, as a result of the statements published by Defendants, among other things, that Ms. Jevremović conducted criminal activity, including, but not limited to, stealing money from Mr. Margera, illegally placed Mr. Margera into a treatment center, and "trafficking" Mr. Margera. JA380-381, ¶¶146-152. The reasonable interpretations of Defendants' comments by Defendants' intended audience demonstrate that Defendants' statements are defamatory. *See Ward*, 136 N.J. at 532 ("The listener's reasonable interpretation, which will be based in part on the context in which the statement appears, is the proper measure for whether the statement is actionable.").

Under the post where Defendants stressed that a conservator and a guardian is the same thing, a commenter asked: "forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]" JA371, ¶108. Ms. Courville responded: "I

28

mean… that's my impression, so if you're wrong[,] I am too." *Id.* The commentator believed Ms. Courville's false statements that Ms. Jevremović was exploiting Mr. Margera, a celebrity, for money, and Defendant reinforced that belief. *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 358 (3d Cir. 2020) ("For example, calling a district attorney 'the David Duke of Chester County' could be actionable because it implied that he was unlawfully 'abusing his power as the district attorney, an elected office, to further racism.'"). The District Court erred in not considering, whatsoever, the newly context of Defendants' statements in the FAC.

As demonstrated above, Defendants' statements are not "mere insults and rhetorical hyperbole," as decided by the District Court. JA021. The District Court erred in finding that Plaintiffs have not adequately plead that Defendants published false and defamatory statements.

ii.   *Defendants Published False and Defamatory Statements Regarding Plaintiffs' Involvement with Ms. Rabb*

Plaintiffs' FAC contains numerous allegations relating to Defendants' false statements about Plaintiffs' connection to Ms. Rabb, the treatment Ms. Rabb received from AURA, and Defendants' fabrication of a story whereby Ms. Jevremović somehow conspired with Mr. Laita and Mr. Rabb to have Ms. Rabb put in jail, among other false statements. *See, e.g.,* JA352-353, ¶39; JA354-355, ¶¶50-55; JA357-358, ¶¶56-58. Contrary to the District Court's findings, Defendants'

29

statements are not protected opinions. *See Leang*, 198 N.J. at 585 (allegations of criminal conduct or conspiracy can be defamatory).

Ms. Courville claimed that Ms. Jevremović and AURA conducted experimental treatment on Ms. Rabb, against Ms. Rabb's will. JA352-353, ¶39; JA355, ¶51. And, Ms. Courville claimed that Plaintiffs caused, and then lied about, Ms. Rabb's death. *Id*. Ms. Courville published her story through her social media platforms, including, but not limited to, the Virtual Reality Video, which is still accessible, today, and has been viewed more than 1,500,000 times. JA353, ¶40.

In the video, Ms. Courville falsely stated, among other things, that Ms. Jevremović conspired with Mr. Laita and Mr. Rabb to put Ms. Rabb in jail. JA355, ¶¶47-49. In selling that story to her viewers, Ms. Courville first played a short excerpt of one of Ms. Rabb's interviews with Mr. Laita, where Ms. Rabb had stated that her father was a molester. JA354, ¶¶44-45. Then Ms. Courville told her audience that Ms. Jevremović already knew about Ms. Rabb by July and worked with Mr. Laita and Mr. Rabb, whom Ms. Rabb called a "molester," to have Ms. Rabb arrested and put in jail. JA355, ¶¶48, 50, 52; JA357, ¶56.

Of course, Defendants' false statements were easily verifiable. Ms. Rabb's own statements in the very same video that Ms. Courville showed, contradicted Ms. Courville's baseless accusations that Ms. Jevremović used Ms. Rabb as an "experiment," "test subject" "against her will," and a "research object" without

30

consent. JA358, ¶¶59-61; JA359, ¶64; JA360, ¶70; JA361, ¶74; JA362, ¶77. Ms. Rabb has said that the treatment she was receiving "really helped," that Lima "feels like a mom," is "great," and that Ms. Rabb felt "blessed to have Lima." JA364, ¶¶81-82.

Defendants also stated in another video, among other things, "On Lima's suggestion, Mark Laita said you should call the cops and get her arrested." JA357, ¶56. Of course, Ms. Jevremović did not know about Ms. Rabb until Ms. Rabb was already in jail. JA355, ¶49. As a result, it was factually impossible that Ms. Jevremović conspired to put Ms. Rabb in jail.

Defendants' viewers understood Defendants' statements to be the truth, and published their agreement with Defendants' statements. Evidence of how viewers and followers in fact understood a publication is probative of how average readers could understand a publication. *Tah v. Glob. Witness Publ'g, Inc.*, 413 F. Supp. 3d 1, 11 (D.D.C. 2019) ("a publication must also be read 'in the sense in which it would be understood by the readers to whom it was addressed.'"). Here, Defendants' audience listened to and believed the objectively false "facts" that Defendants presented and implied. Viewers commented under Defendants' videos and posts, among other things, that "Lima and her company 'AURA' is a SCAM;" "[t]his woman is a criminal and con artist;" and that Lima is "criminal;" "sounds like another Elizabeth Holmes;" "[d]isgusting;" "dangerous;" "evil;" "manipulative."

JA356, ¶55; JA358, ¶62; JA362-363, ¶78. In other words, the viewers and followers understood Defendant' statements exactly how Defendants intended them to be understood. Indeed, every time any viewer or follower made similar comments, Defendants did nothing to disabuse the commenters of their understanding. To the contrary, Defendants often supported the comment and emphasized correction of the understanding. JA357-358, ¶57; JA360, ¶¶67-70. As such, Defendants' statements are susceptible of defamatory meanings, given how Defendants' audience understood those statements. *See Ward*, 136 N.J. at 529. The District Court erred when it did not address or consider any of the pleaded context of Defendants' statements related to Ms. Rabb.

### iii. *Defendants Published False and Defamatory Statements by Implying That Ms. Jevremović Had an OnlyFans Account*

After publishing to her audience that Ms. Jevremović had spent Mr. Margera's money on "fresh lips, Botox, and a BBL watch," and after learning that her viewers believed Ms. Jevremović was a "prostitute," Ms. Courville published a screenshot of an OnlyFans account with the name "Lima Mora." JA387-388, ¶¶174-177. Although Ms. Courville did not explicitly mention Ms. Jevremović by name or tell her audience that the picture she posted was a screenshot of an OnlyFans Account, Defendants' audience, based on the context in which the picture was posted, knew Ms. Courville was referring to the person in the screenshot as Ms. Jevremović, and affirmatively commented: "She got an onlyfans." JA388, ¶176; *Taj Mahal Travel,*

*Inc.,* 164 F.3d at 189 ("A defamatory statement need not explicitly name a plaintiff, so long as it was understood to refer to it by at least one third party…"). "[T]he literal accuracy of separate statements will not render a communication 'true' where . . . the implication of the communication as a whole was false." *Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*, 654 F. App'x 80, 105 (3d Cir. 2016) (ellipses in original). Thus, "even where the complained-of statements are literally true, if, when viewed *in toto*, the accurate statements create a false implication, the speaker may be liable for creating a defamatory implication." *Id.* (emphasis in original).

Viewed *in toto*, Defendants intentionally suggested that Ms. Jevremović had an OnlyFans account in an obvious attempt to besmirch Ms. Jevremović's character and reputation. Her audience believed it. JA388, ¶¶175-178. Defendants' publication of the screenshot, in the context in which it was published, is defamatory, *per se*. *See Ward*, 136 N.J. at 526 (statements that impute "unchastity of a woman" constitute slander *per se*).

The District Court did not consider any of above newly pleaded context of Defendants' statements on the "OnlyFans Account," and erred in concluding that Defendants' statements were protected opinions.

2. Plaintiffs Have Adequately Pled that Defendants Published Defamatory Statements to Their Audience

Defendants published numerous false statements about Plaintiffs through the YouTube Channel of "That Surprise Witness" and "BJ Investigates," and the

Instagram Account of "That Surprise Witness." JA353, ¶¶41-42.  The District Court erred in finding that because Defendants' statements "stem from Instagram and YouTube," there is some talismanic social media defense to defamation law. JA021. Contrary to the District Court's holding, there is no "internet defense." *United States v. Gonzalez*, 905 F.3d 165, 192 (3d Cir. 2018).

In drawing the conclusion, the District Court heavily relied on *Sciore v. Phung*, that involved an online restaurant review. 2022 U.S. Dist. LEXIS 58163, Civil Action No. 19-13775, at *16 (D.N.J. Mar. 30, 2022). The District Court did not consider that *Sciore* involved the sort of quintessentially subjective expression that is never actionable, no matter what the medium. *See Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 228 (2d Cir. 1985) ("Appellee does not cite a single case that has found a restaurant review libelous."). It is the content, verifiability, and context of the communication, not the medium through which it is transmitted, that control. *DeAngelis*, 180 N.J. at 14.

Indeed, New Jersey Courts have addressed the increased dissemination of defamatory statements online and the harm those statements have caused. For example, in October 2024, the Appellate Division affirmed the denial of a defendant's motion to dismiss and concluded that the plaintiff, a public-school teacher, alleged a prima facie case of defamation and false-light invasion based on statements that the defendant posted on his Instagram account. *Herman v. Ibtihaj*

34

*Muhammad*, No. A-1328-23, 2024 N.J. Super. Unpub. LEXIS 2416, at *12 (App. Div. Oct. 15, 2024).

Around the same time, the Appellate Division affirmed a judgment awarding plaintiffs damages for defamation and intentional infliction of emotional distress in the amount of $664,947.75, where the defendant published negative online reviews of the plaintiffs – an attorney and her law firm – claiming that plaintiff stole her retainer payment for personal use, never performed work on her case, and was under ethics review. *Schachtel*, 2024 N.J. Super. Unpub. LEXIS 2609, at *2. In entering the judgment, the court concluded, *inter alia*:

> Words do mean something, and they do have consequences; consequences that are palpable, actual, and in this case, debilitating.
>
> The court finds that the harm here was real, that [the defendant's] conduct was real, and that it was reckless and intentional and she caused harm to [the plaintiff].

*Schachtel*, 2024 N.J. Super. Unpub. LEXIS 2609, at *19. Here too, Defendants' words have consequences, consequences that have been and continue to be palpable, actual, and, debilitating.

### 3. Plaintiffs Have Adequately Pled Actual Malice

#### i. *The District Court Did Not Provide any Independent Analysis on the Libel Claims*

The District Court erred in finding that Plaintiffs failed to establish a *prima facie* claim of libel. JA021. The District Court did not even analyze whether

35

Plaintiffs needed to, or have successfully plead actual malice in the FAC. While the District Court vaguely referenced "*Jevremović I* and *II*," the District Court ignored Plaintiffs' plead facts that alleged Defendants' actual malice. *See* JA354-358, JA364, JA367, JA370, JA378, JA387, JA389. Rather than review the statements, the context in which those statements that are alleged to have been made, and providing analysis based on that, the District Court provided a one-paragraph recitation of the prior decisions to conclude that the statements are "unactionable opinions." JA021. By failing to consider the FAC to the exclusion of the prior versions of the Complaint, the District Court erred.

The FAC is the operative pleading and must be considered without reference to superseded pleadings. *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1504 (3d Cir. 1996) (reiterating the general principle that an amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading" (internal quotations and citations omitted)); *see also W. Run Student Hous. Assoc., LLC v. Huntington Nat'l Bank*, 712, F.3d 165, 172 (3d Cir. 2013) (citing *Kelley v. Crosfield Catalysts*, 135 F.3d 1202 (7th Cir. 1998)) ("[i]t is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*"). In relying on outdated decisions, the District Court failed to consider Plaintiffs' newly pleaded facts that allege

36

Defendants' actual malice, and therefore, erred in dismissing the libel claims. *See e.g.,* JA354-JA358, JA364, JA367, JA370, JA378, JA387, JA389.

ii.    *Plaintiffs Have Alleged Facts to Support an Inference of Actual Malice*

The District Court erred in concluding that Plaintiffs needed to plead actual malice, without making any finding that Ms. Jevremović is a public figure or limited purpose public figure. JA019. To establish the applicability of the actual malice standard, *defendant* has the burden to show that the plaintiff is a "public official," "public figure," or "limited purpose public figure." *See N.Y. Times*, 376 U.S. at 279-280; *Curtis Publ'g Co.*, 388 U.S. at 154; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Here, Defendants asserted that Plaintiffs are subject to the actual malice standard without even purporting to demonstrate that Plaintiffs are public officials, public figures, or limited purpose public figures. JA019.

Nevertheless, to the extent that Plaintiffs could possibly be considered one, an issue that should be decided later and after discovery, Plaintiffs have, nevertheless, adequately pled actual malice by Defendants.

Indeed, Plaintiffs only need to allege facts to support an **inference** of actual malice. *See Pace*, 850 F. App'x at 831. "Actual malice . . . does not connote ill will or improper motivation. Rather, it requires that the [defendant] either know that its [statement] was false or publish it with 'reckless disregard' for its truth." *McCafferty*, 955 F.3d at 359. "To prove this state of mind, a plaintiff will generally need to depose

37

not only the defendant but also any other person who the defendant claims to have been a source of the alleged false information contained in the defamatory statement." *Standridge v. Ramey*, 323 N.J. Super. 538, 547-548 (App. Div. 1999); *see also Eastwood v. Nat'l Enquirer,* 123 F.3d 1249, 1253 (9th Cir. 1997) ("As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence. By examining the editors' actions, we try to understand their motives.").

Here, Plaintiffs have sufficiently plead that Defendants either knew their statements were false or acted with "reckless disregard" for the truth. By way of illustration:

| Defendants' Statement(s): | Allegations of Actual Malice |
| --- | --- |
| • Defendants' story that Ms. Jevremović took advantage of her court-appointed role to conduct criminal activities, to conspire for criminal purposes, to get access to and use Mr. Margera's funds. *See, e.g.,* JA365, ¶¶88-89; JA371, ¶¶108-111; JA372, ¶114; JA373-374, ¶¶118-119; JA376, ¶¶128-130. | • Defendant chose to ignore the critical distinction between conservatorship and guardianship, so that she could deliver to her audience a factually impossible story. Every time she implied to her viewers the there was a link between Mr. Margera's shrinking assets and Ms. Jevremović, or that Ms. Jevremović was benefiting financially through her court-appointed role, Defendant knew her statements were false, or she was acting with reckless disregard for the truth. JA366-370, ¶¶91-107.<br><br>• Defendant touted her background as a lawyer who "graduated from an Ivy League law school," spent enormous hours of her time "searching every possible nook and cranny-not only of the internet but of the physical field of reality," managed to get a copy of documents |

38

| Defendants' Statement(s): | Allegations of Actual Malice |
|---|---|
|  | that were filed under seal with the Superior Court of the State of Arizona, County of Maricopa, and published those documents no less than five times. JA369, ¶102; JA386-387, ¶173; JA388-389, ¶181. She touted to her audience that she knew the "stuff" because she "[is] a lawyer," using her degree "for civil rights," and insisted that she did all the research and investigation of the facts. JA380-381, ¶147. By her own admission, and considering Defendant's credentials, Defendants knew or should have known the truth – that Ms. Jevremović did not have access to Mr. Margera's assets by her court-appointed role. |
| • In the Police Report Video Ms. Courville implied to her audience, by zooming in on two pictures of Ms. Jevremović, that Ms. Jevremović was at the scene to setup Mr. Margera's arrest, and it was her implant that was allegedly torn apart by Mr. Margera. JA376-377, ¶¶132-136. | • It was plain from the article that the caller described the alleged victim as a white woman in her 50s or early 60s, and the caller did not specify "which woman" was the victim: the "alleged prostitute" or the "minder." Ms. Jevremović, in her 30s, could not have been the alleged victim. Defendant knew or should have known Ms. Jevremović was neither the "prostitute" nor the "minder." *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019). <br><br> • When Ms. Courville's viewers commented on her Instagram post of an excerpt in which Ms. Jevremović was wearing the same black sweater as in the two pictures that Ms. Courville zoomed in on, expressing their belief that Ms. Jevremović was the person whose implant was torn, Ms. Courville did not correct any of those false statements. Instead, she endorsed the comment of "[s]he must be the prostitute that got her implant torn," by |

39

| Defendants' Statement(s): | Allegations of Actual Malice |
|---|---|
| | responding " 👌 😂 😂 the 'minder.'" JA379, ¶142. |
| • Ms. Courville repeatedly stated or otherwise implied that Ms. Jevremović conspired with Mr. Rabb and Mr. Laita to put Ms. Rabb in jail. JA352-353, ¶¶38-39; JA355, ¶¶47-52; JA357, ¶56. | • Ms. Courville intentionally lied about, or at the very least recklessly disregarded, Ms. Rabb's relationship with her father, whom Ms. Rabb regarded as "a great guy," her "best friend," and her "rock," so that Ms. Courville could persuade her audience that Ms. Jevremović conspired with Mr. Rabb to put Ms. Rabb in jail. JA354-355, ¶¶46-47. <br><br> • Ms. Courville also knew that Mr. Laita is the one who suggested to Mr. Rabb to put Ms. Rabb in jail. JA357-358, ¶57. Mr. Laita said that when Mr. Rabb called one night and asked "what do I do Amanda just assaulted me the police are here," he told Mr. Rabb to put Ms. Rabb in jail. *Id.* <br><br> • Furthermore, Ms. Courville intentionally chose not to show to her audience that, with Ms. Jevremović's help, Ms. Rabb was clean of substance abuse for 10 to 11 months by April 2022, that Ms. Rabb said that the treatment she was receiving "really helped," that Lima "feels like a mom," is "great," and that Ms. Rabb felt "blessed to have Lima." JA364, ¶¶81-82. <br><br> • Ms. Courville knew the truth, and chose not to show Mr. Laita's and Ms. Rabb's statements to her audience, when she lied that Ms. Jevremović knew about Ms. Rabb before she went to jail, "hand chose[]" Ms. Rabb with the cooperation of Mr. Rabb, "a molester," suggested to Mr. Laita that Ms. Rabb should |

| Defendants' Statement(s): | Allegations of Actual Malice |
|---|---|
|  | be arrested, then send Ms. Rabb to "coerced treatment." JA355, ¶¶50-52. |

Ms. Courville lied when she made statements about Plaintiffs' involvement with Mr. Margera and she lied when she made statements about Plaintiffs' involvement with Ms. Rabb. "Where the defendant finds internal inconsistencies or apparently reliable information that contradicts its libelous assertions, but nevertheless publishes those statements anyway, the *New York Times* actual malice test can be met." *Schiavone,* 847 F.2d at 1090; *McCafferty* 955 F.3d at 359; *see Herman*, N.J. Super. Unpub. LEXIS 2416, at *16 (affirming that the defendant's failure to "modify her accusations against [Plaintiff]" after learning of the truth from the plaintiff "can be viewed as evidence of her subjective intent in her posts.").

Here, Plaintiffs' allegations of actual malice were not merely conclusory. Nor did they perfunctorily parrot the legal test. Contrary to the District Court's findings in *Jevremović I*, which was incorporated into *Jevremović III*, that "Plaintiffs do not point to any facts – circumstantial or direct – that demonstrates Defendant entered any serious doubts…" JA108. Plaintiffs have alleged that Defendants knew or had serious doubts about the veracity of their accusations of Plaintiffs' involvement with Mr. Margera and Ms. Rabb. *See e.g,* JA354-356, ¶¶45-47, 53; JA357-358, ¶¶57, 58;

41

JA364, ¶¶81, 82; JA366-368, ¶¶91-97; JA377-379, ¶¶133-140; *Herman,*, N.J. Super. Unpub. LEXIS 2416 at *15-16.

The Second Circuit's decision in *Palin v. New York Times Co.*, also provides useful guidance for pleading actual malice. 940 F.3d 804 (2d. Cir. 2019). In *Palin*, the Second Circuit concluded that actual malice was adequately pled, in part, because: the speaker of the defamatory statements had a "background as an editor and political advocate provided sufficient evidence to permit a jury to find that he published the editorial with deliberate or reckless disregard for its truth;" and "(2) the drafting and editorial process also permitted an inference of deliberate or reckless falsification[.]" *Id.* at 813. The Second Circuit in *Palin* cautioned that the "[t]he test is whether the complaint is plausible, not whether it is less plausible than an alternate explanation." *Id.* at 815.

Here, Plaintiffs' allegations concerning actual malice are more than plausible. Like the editor who made the defamatory statements in *Palin*, Ms. Courville touted her background as an Ivy League law graduate who spent an enormous amount of time "searching every possible nook and cranny – not only of the internet but of the physical field of reality." JA369-370, ¶102; JA387, ¶173; JA388-389, ¶181. Ms. Courville emphasized that she knew "stuff" because she "[is] a lawyer," using her degree "for civil rights," and admitted that she did all the research and investigation of the facts. JA380-381, ¶147; JA387-389, ¶181. By her own admission and touting

her credentials, she knew or should have known, that her many statements, were false.

The Second Circuit, in its *Palin* decision, found that "the inclusion of the hyperlinked article gives rise to more than one plausible inference, and any inference to be drawn from the inclusion of the hyperlinked article was for the jury – not the court." *Id.* at 815. It is respectfully submitted that the same is true here.

As set forth above, Ms. Courville chose to ignore the major inconsistencies between her statements and the truth, cherry-picked what she revealed to her audience, and intentionally edited audio and video that would have had revealed the truth, to further deceive her audience. JA354-355, ¶¶46-47; JA364, ¶¶81-82; JA366-370, ¶¶91-107; JA369, ¶102; JA386-387, ¶173; JA388-389, ¶181. While "actual malice" may not be necessary for Plaintiffs to ultimately prove, surely Plaintiffs have more than sufficiently plead actual malice. The District Court erred when it found otherwise.

## III. THE DISTRICT COURT ERRED IN THE DISMISSING THE INVASION OF PRIVACY CLAIMS

### A. The District Court Erred in Dismissing the Intrusion Upon Seclusion Claim

Under New Jersey law, Intrusion Upon Seclusion requires "(1) intentional intrusion (2) upon seclusion of another (3) that is highly offensive to a reasonable person." *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 292 (3d Cir. 2016; *see also Friedman v. Martinez*, 242 N.J. 449, 454-55 (2020) (citing

43

Restatement (Second) of Torts § 652B). In determining whether an intrusion is "highly offensive," courts balance the social need for private information against the individual's right to privacy. *N.O.C., Inc. v. Schaefer*, 197 N.J. Super. 249, 258-259 (Law Div. 1984).

Here, the FAC adequately pleads all elements of Intrusion Upon Seclusion. Defendants, twice, intentionally released Ms. Jevremović's social security number, which was contained in a court-sealed document. JA369, ¶100; JA370, ¶102; JA392, ¶202. Defendants' intentional publication of Ms. Jevremović's SSN, without more, violated *N.J.S.A.* §56:8-164.

Ms. Courville assisted and encouraged her followers to use the information that she released to harass and torment Ms. Jevremović. Ms. Courville called "that Surprise Army" to "make noise." JA348, ¶19. With the knowledge of and encouragement from Ms. Courville, That Surprise Army had a discord server "that had over 10,000 pieces of information about Ms. Jevremović and everyone she knew, including estimates and timelines of when Ms. Jevremović met certain people and where Ms. Jevremović was located." JA384, ¶165. As a result, Ms. Jevremović and her family "were forced to relocate their residence, more than once, and were forced to hire a 24-hour security to guard their home." JA345, ¶2. Ms. Jevremović received death threats, text messages with pictures of dead bodies from unknown numbers, strangers showing up uninvited and unannounced at Ms. Jevremović's

home, and drones entering and surveilling her property. JA344, ¶2; JA392, ¶204. Defendants' conduct, and the conduct of their followers who acted at Ms. Courville's urging, amounts to a course of hounding and harassment that became a substantial burden to Ms. Jevremović's existence. *See Diaz v. D.L. Recovery Corp.,* 486 F. Supp. 2d 474, 480 (E.D. Pa. 2007) (citing Restat. (2nd) of Torts § 652B cmt. d.).

The District Court incorrectly held that Plaintiffs did not "adequately allege any conduct attributable to Defendants themselves" because Plaintiffs did not plead that "Defendants themselves obtained such personal information by wrongful means." JA024. It is respectfully submitted that the District Court applied, again, an unnecessarily heightened standard at the pleading stage. Indeed, Plaintiffs have sufficiently alleged facts "that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.

Defendants' intentional release of Ms. Jevremović's SSN obtained from a court-sealed document, adequately allows a court to draw a reasonable inference that Ms. Courville did not obtain the information by any rightful means. JA383, ¶159; JA392, ¶202. Furthermore, after Ms. Jevremović had initiated her lawsuit, Ms. Courville proclaimed in a live stream to her audience:

> they're going to sue me for telling the truth, ***you better not have no skeletons in your damn closet***. You better not have a single femur bone in your closet ***because I'm gonna find it***. Oh yes I am. ***Stuff you never ever thought that I was gonna find*** I'm gonna find it and then if I find

it and it was public which ***almost every single thing I ever find is public*** I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short ***I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny–not only of the internet but of the physical field of reality*** in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…

JA388-389, ¶181 (emphasis added). To reiterate, Ms. Courville, *verbatim*, stated that she will find "stuff you never ever thought I was gonna find," and dedicated more than two weeks with "10 to 15 hours a day" to "searching every possible nook and cranny" on the internet and the "physical field of reality." *Id*.

Taking all the evidence together and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have sufficiently alleged that Defendants intentionally intruded upon Plaintiffs' seclusion. *See Friedman v. Martinez,* 242 N.J. 449, 471 (2020) (citation omitted) ("To establish that an intrusion occurred, a victim may rely on circumstantial evidence, and courts can draw reasonable inferences from the proofs presented.").

## B. The District Court Erred In Dismissing The False Light Claim

The District Court's dismissal of the False Light claim was in error as it did not provide an analysis of the facts plead in the FAC, reasoning that "the third element of a false-light claim parallels the actual malice requirement of a defamation claim." JA024 (citing *Durando v. Nutley Sun*, 209 N.J. 235, 249 (2012)). An amended complaint supersedes prior iterations and must be determined on the merits

46

independently. *Huntington Nat'l Bank*, 712 F.3d at 171. Because the District Court did not provide any independent analysis or ruling on the actual malice element in the Libel claims as pled in the FAC, there was no analysis of actual malice to the False Light claims. JA019-021.

To prove a claim of false light, a plaintiff must demonstrate that: "(1) the defendant publicized a matter concerning the plaintiff before the public in a false light; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988) (quoting Restatement (Second) of Torts § 652E).

Plaintiffs have sufficiently alleged that Ms. Courville made and published numerous statements, including false and defamatory statements, which publicized Ms. Jevremović's relationship and care of Mr. Margera and Ms. Rabb, satisfying the first and second elements of false light. JA364-JA382, ¶¶84-155. Ms. Courville published countless videos of Ms. Jevremović, depicting and portraying her as a criminal, a trafficker, and manipulating Mr. Margera and Ms. Rabb. JA352-382, ¶¶39-158. The false publicity at issue was of a character "highly offensive to a reasonable person." *Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 563 (E.D. Pa. 2000) ("Being falsely labeled a criminal could be highly offensive to a reasonable

person."). Finally, and contrary to the District Court's conclusion, Plaintiffs have sufficiently plead facts that meet the reckless-disregard-for-the-truth prong of false light. *See* Section II.A.3, *supra*.

The District Court erred when it dismissed the False Light claim.

## IV.    THE DISTRICT COURT ERRED IN DISMISSING THE EMOTIONAL DISTRESS CLAIMS

### A. Plaintiffs Have Sufficiently Pleaded the Intentional Infliction of Emotional Distress (the "IIED") Claim

The District Court erred in dismissing the IIED claim when the District Court found that the FAC did "not plead specific allegations which would constitute an IIED claim" and that none of Defendants' conduct was considered "extreme or outrageous." JA025.

An IIED claim is rarely dismissed on a motion to dismiss. *See Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 433 (D.N.J. 2000) (collecting cases) (allegations of physical impact, skin conditions, unspecified "physical injuries," and high-blood pressure requiring medication and doctors' visits sufficient to survive motion to dismiss); and *Bishop v. Okidata, Inc.*, 864 F.Supp. 416 (D.N.J. 1994) (denying motion to dismiss intentional infliction of emotional distress claims tied to employment discrimination claims because it would be premature).

To establish a claim for IIED, a plaintiff must show: (1) intentional conduct; (2) extreme and outrageous conduct; (3) proximate causation; and (4) severe emotional distress. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).

48

The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id* (quoting Restat. (Second) of Torts, §46 Cmt. d).

Over the course of over two years and through the publication of more than 47 hours of allegations and false accusations, Defendants intentionally published fabricated stories to their viewers about Ms. Jevremović's "criminal" conduct, including, but not limited to, cooperating with a "molester" to put Ms. Rabb in jail, so that Ms. Jevremović could use Ms. Rabb as a "research object," and conducted "coerced treatment" on Ms. Rabb; imposing a conservatorship on Mr. Margera, "s[a]nk her claws into his parents," used Mr. Margera's funds for her personal benefit, and "traffick[ed]" Mr. Margera. JA362, ¶77; JA374, ¶121, JA375, ¶124; JA376, ¶131; JA381, ¶149; JA382, ¶153.

After Plaintiffs began their lawsuit against Defendants, Ms. Courville intentionally found and distributed Ms. Jevremović and her family's information. JA383, ¶159. In a livestream on June 27, 2023, Ms. Courville proclaimed that she would find "[s]tuff you never ever thought that I was gonna find" and that Ms. Courville would "tell every damn person about it who will listen." JA388-389, ¶181. Ms. Courville then systematically doxed Ms. Jevremović by publishing her Social Security number, multiple home addresses, family members' addresses, personal

49

phone numbers, and even where her family attended church. JA381, ¶159; JA392, ¶202. Crucially, Ms. Courville encouraged her viewers to "make noise" and assisted her followers to hound Ms. Jevremović and everyone associated with her. JA348, ¶19; JA383, ¶161; JA384, ¶163. Ms. Courville's persistent and relentless campaign, targeting anyone who has been seen associated with Ms. Jevremović, led to Ms. Jevremović ending her start-up, her future career, her social connections, and ultimately, her marriage. JA348-349, ¶¶22-23, 25. Defendants' conduct rises to the level of "extreme and outrageous." *Schachtel*, 2024 N.J. Super. Unpub. LEXIS 2609, at *25 (affirming that Plaintiff's IIED claim included "distress she suffered as a result of the totality of [the defendant]'s conduct directed at her over the years the two were acquainted," including, without limitation, the online negative reviews and the defendant's court filings.).

Contrary to the District Court's findings, the traumatic events experienced by Ms. Jevremović and her family parallel the type of "extreme and outrageous conduct" described by the district court's reference to *Coefield v. GPU*, which includes examples of extreme and outrageous conduct like "bringing a mob to a plaintiff's door with a threat to lynch him if he did not leave town, and wrapping a gory dead rat inside a loaf of bread." *Coefield*, 125 Fed. Appx. 445, 450 (3d Cir. 2005) (internal citation omitted)). JA026.

As a result of Defendants' wrongful conduct, Ms. Jevremović regularly sees a psychiatrist and a therapist, and was diagnosed with depression in April 2024. JA394, ¶214. *See Wang v. N.J. State Police*, No. 3:18-cv-11933-BRM-TJB, 2019 U.S. Dist. LEXIS 139809, at \*19 (D.N.J. Aug. 19, 2019) ("New Jersey law . . . requires plaintiffs to assert that they sought treatment for their alleged distress."); *see also Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384-85 (D.N.J. 1999) (motion to dismiss IIED claim granted because plaintiff did not seek medical assistance or allege specific ailments). Indeed, the emotional distress that Defendants inflicted has exacerbated Ms. Jevremović's physical conditions, including a heart condition. JA394, ¶214; JA395, ¶219. *See Turner v. Wong*, 363 N.J. Super. 186, 200 (App. Div. 2003) (The "severe emotional distress" contemplated by the fourth element "must be sufficiently substantial to result in either physical illness or serious psychological sequelae.").

Plaintiffs sufficiently have plead facts supporting a claim for IIED. The District Court erred when it found otherwise.

## B. Plaintiffs Have Sufficiently Pled the Negligent Infliction of Emotional Distress ("NIED") Claim

A NIED claim requires a plaintiff to show that the defendant had a duty, the defendant owed the duty toward the plaintiff, and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002).

51

"Whether the defendant has a duty of care to the plaintiff depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed." *Id.* A plaintiff can demonstrate NEID by showing that a defendant's conduct "placed the plaintiff 'in reasonable fear of immediate personal injury.'" *Jablonowska v. Suther*, 195 N.J. 91, 103 (2008).

There is no doubt that Defendants' conduct, as described in Section V.A, above, has placed Ms. Jevremović in reasonable fear of immediate personal injury. Plaintiffs have alleged that as a result of Defendants' conduct, Ms. Jevremović and her family "were forced to relocate their residence, more than once, and were forced to hire a 24-hour security to guard their home," and that Ms. Jevremović received "death threats and text messages of dead bodies from unknown numbers." JA345, ¶2; JA392, ¶204. Plaintiffs have further alleged that as a result of Ms. Courville's repeated harassment directed toward Ms. Jevremović, she now regularly visits a psychiatrist and therapist for depression and has developed a heart condition from the emotional distress. JA395, ¶219. As such, and contrary to the District Court's findings, Plaintiffs have sufficiently pled a claim of NIED.

## V.   THE DISTRICT COURT ERRED IN DISMISSING THE TORTIOUS INTERFERENCE CLAIMS

### A. The District Court Erred in Dismissing the Tortious Interference Claims without Examining Their Substance

The District Court's dismissal with prejudice of the Tortious Interference Claims (Counts Seven and Eight) violated the liberal amendment policy favored

52

under Rule 15(a). The District Court dismissed those counts on the procedural ground that they "exceeded the leave provided by the Court" to file the FAC. JA015. However, that reasoning runs contrary to the relation-back doctrine and the liberal amendment standard. *SEPTA v. Orrstown Fin. Servs.*, 12F.4h 337, 344-345 (3d Cir. 2021); *Dole v. Arco Chemical Co.*, 921 F2d 484 (3d Cir. 1990) (reversing summary judgment and remanding to allow amended pleading); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (court should use "strong liberality" in considering whether to grant leave to amend).

Under Rule 15(a)(2), courts "should freely give leave when justice so requires," and dismissal with prejudice is appropriate only when "amendment would be futile." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Third Circuit has emphasized that "the mandate [of Rule 15] is to be heeded" and adopts "a particularly liberal approach in favor of permitting pleading amendments to ensure that 'a particular claim will be decided on the merits rather than on technicalities.'" *Dole*, 921 F.2d at 487.

The two Tortious Interference claims in the FAC have been properly included in the FAC because they relate back, and are based on the same facts as alleged in the TAC, in the two Unfair Competition claims pled there. *See Greczyn v. Colgate-Palmolive*, 183 N.J. 5, 17 n.3 (2005). Specifically, both the Unfair Competition claims in the TAC and the Tortious Interference claims in the FAC centered on how

Defendants' defamatory statements damaged AURA. JA316-317; JA396-397. In remedying the defects in the TAC, pursuant to the Court's Opinion dated August 30, 2024, Plaintiffs have re-labeled the Unfair Competition Claim as their Tortious Interference claims primarily based on the facts alleged in the TAC. JA343; JA396-397.

**B. Plaintiffs Have Adequately Pled The Tortious Interference Claims**

A claim for tortious interference requires a plaintiff to allege facts showing:(1) the existence of a contract, or a prospective economic or contractual relationship; (2) defendant interfered intentionally and maliciously with that contract; (3) loss of the prospective gain or breach of contract as a result of the interference; and 4) damages resulting from that interference. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751-52 (1989); *LY Berditchev Corp. v. ESupplements, LLC*, No. 2:24-cv-00625 (WJM), 2024 U.S. Dist. LEXIS 165092, at *4-5 (D.N.J. Sep. 12, 2024). In terms of the first element, "[c]ourts in this district have held that a 'claim for tortious interference with contract [may] survive a motion to dismiss where a plaintiff alleges the existence of a contract but does not plead specific facts identifying it.'" *LY Berditchev Corp.* at *5. Here, Plaintiffs sufficiently alleged the existence of contracts, with "the investors that had already invested in AURA," and a prospective economic or contractual relationship, with "the prospective

investors, including those who had provided a Letter of Intent." *See* JA396, ¶226; JA397, ¶¶231-232.

As to the second element, "[t]here can be no doubt that inducing another to end a contractual relationship through acts that amount to fraud or defamation would be wrongful." *Nostrame v. Santiago*, 213 N.J. 109, 124 (2013). Here, Defendants published defamatory statements about Ms. Jevremović and AURA, including, but not limited to, that they used homeless people as "research objects," put them through coerced treatment, and implied to the public that the founder of AURA had an OnlyFans account. JA355, ¶50; JA362, ¶77; JA387-388, ¶¶174-177. As to the Third and Fourth elements, Plaintiffs plead that AURA lost its investors and potential investors as a result of Defendants' wrongful conduct. JA396, ¶¶222-228. As such, Plaintiffs have adequately plead the Tortious Interference claims. The District Court erred when it did not consider the claims as plead.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants, Lima Jevremović and Automated User Rehabilitation Agent, LLC, pray that the Court reverse the District Court's order dismissing the Fourth Amended Complaint, and remand the matter for further proceedings.

DATED: October 21, 2025          EPSTEIN OSTROVE, LLC

By: _____
Elliot D. Ostrove, Esq.

Case: 25-2553    Document: 14-1    Page: 63    Date Filed: 10/21/2025

## COMBINED CERTIFICATIONS

I hereby certify that:

1.      At least one of the attorneys whose names appear on the foregoing brief, including the undersigned, is a member of the Bar of this Court, as required by Local Rule 28.3(d).

2.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it is 12,868 words, excluding the parts of the brief exempted from the limitation by Federal Rule of Appellate Procedure 32(f).

3.      This brief complies with the typeface requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the typeface requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft word in Times New Roman, size 14, font.

4.      The text of the electronic versions of this brief and joint appendix filed on ECF are identical to the text of the paper copies filed with the Court.

5.      The electronic versions of the brief and joint appendix filed on ECF checked for viruses using Microsoft Defendant, and no virus was detected.

DATED: October 21, 2025

_____
Elliot D. Ostrove, Esq.

56

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 21, 2025, the foregoing was filed electronically and served on the other parties via the Court's ECF system. The undersigned hereby certifies that counsel for Appellants have also delivered an electronic copy of the foregoing to counsel for Appellees and is sending the same by regular mail to:

John P. Johnson, Esq.
Tamar S. Wise, Esq.
**COZEN O'CONNOR, P.C.**
3WTC, 175 Greenwich St, 55th Floor
New York, NY 10007
jjohnson@cozen.com
twise@cozen.com
Tel: (212) 883 – 4924
Fax: (646) 461 – 2054
*Counsel for Defendants-Appellees*
*Brittany Jeream Courville and That Surprise Witness TV LLC*

DATED: October 21, 2025

_____
Elliot D. Ostrove, Esq.

57

No. 25-2553

IN THE

# United States Court of Appeals
## FOR THE THIRD CIRCUIT

LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER
REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,
*Plaintiffs-Appellants*,

-*against*-

BRITTANY JEREAM COURVILLE, an individual; and THAT SURPRISE
WITNESS TV LLC, a New Jersey Limited Liability Company,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of New Jersey,
before the Honorable Zahid N. Quraishi, U.S.D.J.
No. 3:22-cv-04969-ZNQ-RLS

**JOINT APPENDIX VOLUME I (JA001 – JA027)**

**EPSTEIN OSTROVE, LLC**
Elliot D. Ostrove, Esq.
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Tel: (732) 828 – 8600
Fax: (732) 820 – 8601
e.ostrove@epsteinostrove.com
v.karanjia@epsteinostrove.com
*Counsel for Plaintiffs-Appellants*

**COZEN O'CONNOR, P.C.**
John P. Johnson, Esq.
Tamar S. Wise, Esq.
3 WTC, 175 Greenwich St, 55th Floor
New York, NY 10007
Tel: (212) 883 – 4924
Fax: (646) 461 – 2054
jjohnson@cozen.com
twise@cozen.com
*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS
## VOLUME I (BOUND WITH BRIEF)

Docket Sheet, D.N.J. No. 3:22-cv-04969-ZNQ-RLS……………………..**JA001**

Notice of Appeal, D.N.J. Doc. 97, August 8, 2025…………………………..**JA010**

Order Granting Motion to Dismiss Fourth Amended Complaint…………….**JA012**
    D.N.J. Doc. 96, July 11, 2025

Opinion Granting Motion to Dismiss Fourth Amended Complaint…….…… **JA013**
    D.N.J. Doc. 95, July 11, 2025

## VOLUME II

Verified Complaint, D.N.J. Doc. 1, dated August 8, 2022……………………**JA028**

Amended Verified Complaint, D.N.J. Doc. 26, dated June 6, 2023…………...**JA059**

Order Granting Motion to Dismiss the Amended Verified Complaint………..**JA089**
    D.N.J. Doc. 45, August 10, 2023

Opinion Granting Motion to Dismiss the Amended Verified Complaint……...**JA090**
    D.N.J. Doc. 44, August 10, 2023

Second Amended Verified Complaint……………………………………...**JA110**
    D.N.J. Doc. 48, September 11, 2023

Exhibit 1, D.N.J. Doc. 48-1, September 11, 2023…………………………..**JA170**

Redlined Second Amended Verified Complaint……………………………...**JA179**
    D.N.J. Doc. 48-2, September 11, 2023

Third Amended Verified Complaint, D.N.J. Doc. 64, December 6, 2023….…**JA261**

Order Granting Motion to Dismiss Third Amended Complaint………………**JA321**
    D.N.J. Doc. 76, August 30, 2024

Opinion Granting Motion to Dismiss Third Amended Complaint…………….**JA322**
    D.N.J. Doc. 75, August 30, 2024

Fourth Amended Verified Complaint, D.N.J. Doc. 79, October 23, 2024….…**JA344**

Redlined Fourth Amended Verified Complaint……………………………**JA400**
    D.N.J. Doc. 79-1, October 23, 2024

APPEAL,CLOSED

**U.S. District Court**
**District of New Jersey [LIVE] (Trenton)**
**CIVIL DOCKET FOR CASE #: 3:22-cv-04969-ZNQ-RLS**

| | |
|---|---|
| JEVREMOVIC et al v. COURVILLE | Date Filed: 08/08/2022 |
| Assigned to: Judge Zahid N. Quraishi | Date Terminated: 07/11/2025 |
| Referred to: Magistrate Judge Rukhsanah L. Singh | Jury Demand: Plaintiff |
| Case in other court: Third Circuit, 25-02553 | Nature of Suit: 320 Assault Libel & Slander |
| Cause: 28:1332 Diversity-Libel,Assault,Slander | Jurisdiction: Diversity |

**Plaintiff**

**LIMA JEVREMOVIC**
*an individual*

represented by **ELLIOT DAVID OSTROVE**
EPSTEIN OSTROVE LLC
200 METROPLEX DRIVE
SUITE 304
EDISON, NJ 08817
732-828-8600
Fax: 732-828-8601
Email: e.ostrove@epsteinostrove.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**VAHBIZ P. KARANJIA**
EPSTEIN OSTROVE, LLC
200 METROPLEX DRIVE
SUITE 304
EDISON, NJ 08817
732-828-8600
Fax: 732-828-8601
Email:
V.KARANJIA@EPSTEINOSTROVE.COM
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AUTONOMOUS USER**
**REHABILITATION AGENT, LLC**
*a Delaware Limited Liability Company*

represented by **ELLIOT DAVID OSTROVE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**VAHBIZ P. KARANJIA**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BRITTANY JEREAM COURVILLE**
*an individual*

represented by **JOHN P. JOHNSON , JR.**
COZEN O'CONNOR
1010 KINGS HIGHWAY SOUTH

**JA001**

CHERRY HILL, NJ 08034
856-910-5001
Fax: 215-701-2049
Email: jjohnson@cozen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**THAT SURPRISE WITNESS TV LLC**          represented by   **JOHN P. JOHNSON , JR.**
*a New Jersey limited liability corporation*                      (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/08/2022 | 1 | COMPLAINT against BRITTANY JEREAM COURVILLE ( Filing and Admin fee $ 402 receipt number ANJDC-13615945) with JURY DEMAND, filed by LIMA JEVREMOVIC, Autonomous User Rehabilitation Agent, LLC. (Attachments: # 1 Exhibit)(AFFRUNTI, SHERRI) (Entered: 08/08/2022) |
| 08/09/2022 | 2 | SUMMONS ISSUED as to BRITTANY JEREAM COURVILLE. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (kht) (Entered: 08/09/2022) |
| 08/09/2022 | 3 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3), Other Affiliate AUTONOMOUS USER REHABILITATION AGENT, LLC for AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVICfiled by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (AFFRUNTI, SHERRI) (Entered: 08/09/2022) |
| 08/09/2022 | 4 | Corporate Disclosure Statement by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC identifying Autonomous User Rehabilitation Agent, LLC as Corporate Parent.. (AFFRUNTI, SHERRI) (Entered: 08/09/2022) |
| 08/16/2022 | 5 | NOTICE of Appearance by JOHN PHILIP JOHNSON, JR on behalf of BRITTANY JEREAM COURVILLE (Attachments: # 1 Certificate of Service)(JOHNSON, JOHN) (Entered: 08/16/2022) |
| 08/16/2022 | 6 | STIPULATION *AND ORDER TO EXTEND PLEADING DEADLINE* by BRITTANY JEREAM COURVILLE. (JOHNSON, JOHN) (Entered: 08/16/2022) |
| 08/17/2022 | 7 | STIPULATION AND ORDER granting request for extension of time to answer Compliant; Defendants shall answer or otherwise respond to the Complaint by 9/28/2022. Signed by Magistrate Judge Rukhsanah L. Singh on 8/17/2022. (jal, ) (Entered: 08/17/2022) |
| 08/26/2022 | 8 | MOTION for Leave to Appear Pro Hac Vice by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (Attachments: # 1 Declaration Declaration of Sherri A. Affrunti, Esq., # 2 Declaration Declaration of Neville L. Johnson, Esq., # 3 Declaration Declaration of Adam M. Winokur, Esq., # 4 Declaration Declaration of Rodney A. Smolla, Esq., # 5 Text of Proposed Order Proposed Order)(AFFRUNTI, SHERRI) (Entered: 08/26/2022) |
| 08/26/2022 | 9 | ORDER granting 8 Motion for Leave to Appear Pro Hac Vice as to Neville L. Johnson. Signed by Magistrate Judge Rukhsanah L. Singh on 8/26/2022. (jal, ) (Entered: 08/26/2022) |

**JA002**

| 09/01/2022 | 10 | Notice of Request by Pro Hac Vice Neville L. Johnson to receive Notices of Electronic Filings. (AFFRUNTI, SHERRI) (Entered: 09/01/2022) |
|---|---|---|
| 09/01/2022 | 11 | Notice of Request by Pro Hac Vice Adam M. Winokur to receive Notices of Electronic Filings. (AFFRUNTI, SHERRI) (Entered: 09/01/2022) |
| 09/01/2022 | 12 | Notice of Request by Pro Hac Vice Rodney A. Smolla to receive Notices of Electronic Filings. (AFFRUNTI, SHERRI) (Entered: 09/01/2022) |
| 09/14/2022 | 13 | MOTION for Leave to Appear Pro Hac Vice *for Tamar S. Wise* by BRITTANY JEREAM COURVILLE. (Attachments: # 1 Affidavit - Affidavit of Tamar S. Wise, # 2 Exhibit - Exhibit A - Certificate of Good Standing - New York, # 3 Exhibit - Exhibit B - Certificate of Good Standing - PA, # 4 Certificate of Service - Certificate of Service, # 5 Text of Proposed Order - Proposed Order)(JOHNSON, JOHN) (Entered: 09/14/2022) |
| 09/23/2022 | 14 | Proposed MOTION to Dismiss by BRITTANY JEREAM COURVILLE. (JOHNSON, JOHN) (Entered: 09/23/2022) |
| 09/23/2022 | 15 | Letter from John P. Johnson, Jr., Esquire. (JOHNSON, JOHN) (Entered: 09/23/2022) |
| 09/30/2022 | 16 | Letter from Plaintiffs in response to Defendant's request for Leave to File a Motion to Dismiss re 15 Letter. (AFFRUNTI, SHERRI) (Entered: 09/30/2022) |
| 10/04/2022 | 17 | TEXT ORDER that the Court has reviewed the parties' letters 15 and 16 , and hereby WAIVES the requirement for a pre-motion conference; Defendant shall file any Motion to Dismiss, limited to the bases articulated in her letter, by no later than 10/14/2022, to be made returnable 11/07/2022. So Ordered by Judge Zahid N. Quraishi on 10/04/2022. (Gonzalez, P) (Entered: 10/04/2022) |
| 10/04/2022 | 18 | ORDER granting 13 Motion for Leave to Appear Pro Hac Vice as to Tamar S. Wise. Signed by Magistrate Judge Rukhsanah L. Singh on 10/4/2022. (jal, ) (Entered: 10/04/2022) |
| 10/13/2022 | 19 | NOTICE by BRITTANY JEREAM COURVILLE re 18 Order on Motion for Leave to Appear - *Request by Local Counsel for PHV Attorney Tamar S. Wise to Receive Electronic Notifications* (JOHNSON, JOHN) (Entered: 10/13/2022) |
| 10/14/2022 | 20 | MOTION to Dismiss *Plaintiff's Complaint* by BRITTANY JEREAM COURVILLE. (Attachments: # 1 Brief - Defendant's Memorandum of Law In Support of Its Motion to Dismiss Pursuant to FRCP 12(b)(6), # 2 Certificate of Service - Certificate of Service, # 3 Text of Proposed Order - Proposed Order)(JOHNSON, JOHN) (Entered: 10/14/2022) |
| 10/19/2022 | 21 | Notice of Request by Pro Hac Vice Tamar S. Wise to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number ANJDC-13769767.) (JOHNSON, JOHN) (Entered: 10/19/2022) |
| 10/24/2022 | 22 | BRIEF in Opposition filed by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC re 20 MOTION to Dismiss *Plaintiff's Complaint* (Attachments: # 1 Certificate of Service)(AFFRUNTI, SHERRI) (Entered: 10/24/2022) |
| 10/31/2022 | 23 | BRIEF in Support filed by BRITTANY JEREAM COURVILLE re 20 MOTION to Dismiss *Plaintiff's Complaint - Defendant's Reply Memorandum of Law in Further Support of its Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)* (JOHNSON, JOHN) (Entered: 10/31/2022) |
| 05/30/2023 | 24 | ORDER TO SHOW CAUSE: Plaintiff must show cause why this matter should not be dismissed for lack of subject matter jurisdiction. If Plaintiffs do not submit properly establish jurisdiction by June 6, 2023, this matter will be dismissed for lack of jurisdiction and the Clerk shall close the case. The Clerks Office is instructed to administratively |

**JA003**

| | | |
|---|---|---|
| | | terminate the pending Motion to Dismiss without prejudice to Defendants right to renew it at a later date.. Signed by Judge Zahid N. Quraishi on 5/30/2023. (jdg) (Entered: 05/30/2023) |
| 06/06/2023 | 25 | Proposed Order *Proposed Confidentiality Order* by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (AFFRUNTI, SHERRI) (Entered: 06/06/2023) |
| 06/06/2023 | 26 | AMENDED COMPLAINT against BRITTANY JEREAM COURVILLE, filed by LIMA JEVREMOVIC, AUTONOMOUS USER REHABILITATION AGENT, LLC. (AFFRUNTI, SHERRI) (Entered: 06/06/2023) |
| 06/06/2023 | 27 | MOTION to Seal Document by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (Attachments: # 1 Brief Plaintiff's Brief, # 2 Certification Certification of Neville L. Johnson, # 3 Declaration Declaration of Lima Jevremovic, # 4 Text of Proposed Order, # 5 Certificate of Service)(AFFRUNTI, SHERRI) (Entered: 06/06/2023) |
| 06/06/2023 | 28 | Certification on behalf of AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC Re 27 Motion to Seal Document,. (AFFRUNTI, SHERRI)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 06/06/2023) |
| 06/07/2023 | 29 | Proposed Order *Stipulated Discovery Confidentiality Order* by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (AFFRUNTI, SHERRI) (Entered: 06/07/2023) |
| 06/07/2023 | 30 | Stipulated Discovery Confidentiality Order Filed. Signed by Magistrate Judge Rukhsanah L. Singh on 6/7/2023. (jal, ) (Entered: 06/07/2023) |
| 06/08/2023 | 31 | Discovery Confidentiality Order. Signed by Magistrate Judge Rukhsanah L. Singh on 6/7/2023. (mg) (Entered: 06/08/2023) |
| 06/13/2023 | 32 | TEXT ORDER that in light of the supplemental allegations contained in the Amended Complaint 26 with respect to the citizenship of Plaintiff AURA LLC, the Court hereby WITHDRAWS its Order to Show Cause 24 concerning subject matter jurisdiction. So Ordered by Judge Zahid N. Quraishi on 6/13/2023. (kas) (Entered: 06/13/2023) |
| 06/13/2023 | 33 | MOTION to Dismiss - *Renewed Pursuant to Court's Instructions [ECF 24] and in Response to Amended Complaint [ECF 26]* by BRITTANY JEREAM COURVILLE. (JOHNSON, JOHN) (Entered: 06/13/2023) |
| 06/20/2023 | 34 | MEMORANDUM in Opposition filed by BRITTANY JEREAM COURVILLE re 27 MOTION to Seal Document (Attachments: # 1 Declaration - Declaration of Brittany Jeream Courville, # 2 Text of Proposed Order - proposed Order, # 3 Certificate of Service - Certificate of Service)(JOHNSON, JOHN) (Entered: 06/20/2023) |
| 06/26/2023 | 35 | RESPONSE in Opposition filed by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC re 33 MOTION to Dismiss - *Renewed Pursuant to Court's Instructions [ECF 24] and in Response to Amended Complaint [ECF 26]* (AFFRUNTI, SHERRI) (Entered: 06/26/2023) |
| 06/26/2023 | 36 | Letter from Sherri A. Affrunti, Esq. to Magistrate Singh with PHV Application for Jeffrey Miles, Esq.. (Attachments: # 1 Declaration Declaration of Sherri A. Affrunti, Esq., # 2 Declaration Certification of Jeffrey Miles, Esq., # 3 Text of Proposed Order Order |

**JA004**

| | | |
|---|---|---|
| | | Terminating PHV Admission of Adam Winokur, Esq., # 4 Text of Proposed Order Order for PHV Admission of Jeffrey Miles, Esq.)(AFFRUNTI, SHERRI) (Entered: 06/26/2023) |
| 06/26/2023 | 37 | REPLY BRIEF to Opposition to Motion filed by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC re 27 MOTION to Seal Document (Attachments: # 1 Certificate of Service)(AFFRUNTI, SHERRI) (Entered: 06/26/2023) |
| 06/27/2023 | 38 | CONSENT ORDER: Granting pro hac vice admission as to Adam M. Winokur. Signed by Magistrate Judge Rukhsanah L. Singh on 6/27/2023. (jal, ) (Entered: 06/27/2023) |
| 07/06/2023 | 39 | ORDER granting 27 Motion to Seal Document. Signed by Magistrate Judge Rukhsanah L. Singh on 7/6/2023. (jdg) (Entered: 07/06/2023) |
| 07/06/2023 | 40 | REPLY to Response to Motion filed by BRITTANY JEREAM COURVILLE re 33 MOTION to Dismiss - *Renewed Pursuant to Court's Instructions [ECF 24] and in Response to Amended Complaint [ECF 26] - Defendant's Renewed Reply In Further Support of Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) with Certificate of Service* - (JOHNSON, JOHN) (Entered: 07/06/2023) |
| 07/13/2023 | 41 | AMENDED ORDER granting PRO HAC VICE admission as to JEFFREY J. MILES, ESQ. and TERMINATION of ADAM M. WINOKUR, ESQ. Signed by Magistrate Judge Rukhsanah L. Singh on 7/13/2023. (mlh) (Entered: 07/13/2023) |
| 07/14/2023 | 42 | Letter re 39 Order on Motion to Seal Document. (AFFRUNTI, SHERRI) (Entered: 07/14/2023) |
| 07/18/2023 | 43 | NOTICE by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC re 41 Order *Request to Receive Electronic Filings for Jeffrey J. Miles, Esq.* (AFFRUNTI, SHERRI) (Entered: 07/18/2023) |
| 08/10/2023 | 44 | OPINION filed. Signed by Judge Zahid N. Quraishi on 8/10/2023. (mlh) (Entered: 08/10/2023) |
| 08/10/2023 | 45 | ORDER granting 33 Motion to Dismiss without prejudice. It is further ORDERED that Plaintiffs are hereby granted leave to file a Second Amended Complaint within thirty (30) days of the entry of this Order. A failure to cure the defects noted in the accompanying Opinion may lead to dismissal with prejudice; and it is further ORDERED that the Clerk is instructed to mark this matter CLOSED. Signed by Judge Zahid N. Quraishi on 8/10/2023. (mlh) (Entered: 08/10/2023) |
| 09/11/2023 | 46 | Substitution of Attorney - Attorney SHERRI A. AFFRUNTI terminated. Attorney ELLIOT DAVID OSTROVE for AUTONOMOUS USER REHABILITATION AGENT, LLC,ELLIOT DAVID OSTROVE for LIMA JEVREMOVIC added.. (AFFRUNTI, SHERRI) (Entered: 09/11/2023) |
| 09/11/2023 | 47 | NOTICE of Appearance by ELLIOT DAVID OSTROVE on behalf of All Plaintiffs (OSTROVE, ELLIOT) (Entered: 09/11/2023) |
| 09/11/2023 | 48 | AMENDED COMPLAINT against All Defendants All Defendants., filed by LIMA JEVREMOVIC, AUTONOMOUS USER REHABILITATION AGENT, LLC. (Attachments: # 1 Exhibit Jevremovic TRO Order, # 2 Appendix Comparison)(OSTROVE, ELLIOT) (Entered: 09/11/2023) |
| 09/19/2023 | 49 | STIPULATION re 48 Amended Complaint *Extending Time To Answer to October 24, 2023* by BRITTANY JEREAM COURVILLE. (JOHNSON, JOHN) (Entered: 09/19/2023) |
| 09/20/2023 | 50 | STIPULATION AND ORDER extending defendant's time to answer or otherwise respond to the Amended Complaint until 10/24/2023. Signed by Magistrate Judge Rukhsanah L. |

| | | |
|---|---|---|
| | | Singh on 9/20/2023. (jal, ) (Entered: 09/20/2023) |
| 09/26/2023 | 51 | NOTICE of Appearance by JOHN PHILIP JOHNSON, JR on behalf of PREM BENIPAL (JOHNSON, JOHN) (Entered: 09/26/2023) |
| 09/26/2023 | 52 | NOTICE of Appearance by JOHN PHILIP JOHNSON, JR on behalf of THAT SURPRISE WITNESS LLC (JOHNSON, JOHN) (Entered: 09/26/2023) |
| 09/26/2023 | 53 | WAIVER OF SERVICE Returned Executed by PREM BENIPAL. PREM BENIPAL waiver sent on 9/12/2023, answer due 11/13/2023. (JOHNSON, JOHN) (Entered: 09/26/2023) |
| 09/26/2023 | 54 | WAIVER OF SERVICE Returned Executed by THAT SURPRISE WITNESS LLC. THAT SURPRISE WITNESS LLC waiver sent on 9/12/2023, answer due 11/13/2023. (JOHNSON, JOHN) (Entered: 09/26/2023) |
| 10/23/2023 | 55 | Letter from John P. Johnson, Jr. to the Hon. Zahid N. Quraishi.. (Attachments: # 1 Exhibit - Attachment - Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), # 2 Exhibit - Attachment - Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)) (JOHNSON, JOHN) (Entered: 10/23/2023) |
| 10/30/2023 | 56 | Letter from Neville L. Johnson re 55 Letter,. (OSTROVE, ELLIOT) (Entered: 10/30/2023) |
| 10/31/2023 | 57 | Letter from Neville L. Johnson re QC - Generic Message,. (OSTROVE, ELLIOT) (Entered: 10/31/2023) |
| 11/09/2023 | 58 | TEXT ORDER that the Court has considered the parties' letters 55 and 56 regarding Defendant's anticipated Motion to Dismiss and Motion to Strike. A telephone conference is hereby scheduled for 11/20/2023 at 10:00 AM. Counsel for Defendants is to coordinate the call to chambers at that time: 609-989-2105. So Ordered by Judge Zahid N. Quraishi on 11/9/2023. (kas) (Entered: 11/09/2023) |
| 11/10/2023 | 59 | TEXT ORDER that the pre-motion conference call on for 11/20/2023 is RESCHEDULED to 11/27/2023 at 10 AM. Defense counsel shall initiate the call to our chambers line: 609-989-2105. So Ordered by Judge Zahid N. Quraishi on 11/10/2023. (kas) (Entered: 11/10/2023) |
| 11/17/2023 | 60 | Letter from Elliot D. Ostrove re 59 Order. (OSTROVE, ELLIOT) (Entered: 11/17/2023) |
| 11/20/2023 | 61 | LETTER ORDER Granting 60 request to reschedule the Pre-Motion Conference for December 6, 2023. Signed by Judge Zahid N. Quraishi on 11/20/2023. (amv) (Entered: 11/20/2023) |
| 12/05/2023 | 62 | NOTICE of Appearance by VAHBIZ P. KARANJIA on behalf of AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC (KARANJIA, VAHBIZ) (Entered: 12/05/2023) |
| 12/06/2023 | 63 | TEXT ORDER directing Plaintiff to file their Amended Complaint by no later than 12/8/2023. Defendants are directed to file their Motion to Dismiss no later than 1/11/2024. Both parties are granted a 5 page extension on their respective briefs. So Ordered by Judge Zahid N. Quraishi on 12/6/2023. (jmh) (Entered: 12/06/2023) |
| 12/06/2023 | 64 | AMENDED COMPLAINT *Filed Pursuant to Court's Text Order [Dkt. 63]* against PREM BENIPAL, BRITTANY JEREAM COURVILLE, THAT SURPRISE WITNESS TV LLC, filed by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC.(OSTROVE, ELLIOT) (Entered: 12/06/2023) |
| 01/09/2024 | 65 | Letter from E. Ostrove re 63 Order,. (OSTROVE, ELLIOT) (Entered: 01/09/2024) |

**JA006**

| 01/10/2024 | 66 | LETTER ORDER Approving 65 briefing schedule for Motion to Dismiss. Signed by Judge Zahid N. Quraishi on 1/10/2024. (amv) (Entered: 01/10/2024) |
|---|---|---|
| 01/11/2024 | 67 | MOTION to Dismiss *Plaintiffs' Second Amended Complaint* by PREM BENIPAL, BRITTANY JEREAM COURVILLE, THAT SURPRISE WITNESS TV LLC. (Attachments: # 1 Brief - Defendants' Memorandum of Law in Support of Motion to Dismiss Plainitffs' Second Amended Complaint, # 2 Text of Proposed Order - Proposed Order, # 3 Certificate of Service - Certificate of Service)(JOHNSON, JOHN) (Entered: 01/11/2024) |
| 01/17/2024 | 68 | TEXT ORDER that the Clerk's Office is hereby instructed to re-open this case. The Court will take up the pending Motion to Dismiss in due course. So Ordered by Judge Zahid N. Quraishi on 01/17/2024. (Gonzalez, P) (Entered: 01/17/2024) |
| 01/31/2024 | 69 | Letter from Vahbiz P. Karanjia Re Revised Briefing Schedule, on Consent re 67 MOTION to Dismiss *Plaintiffs' Second Amended Complaint*, 66 Order. (KARANJIA, VAHBIZ) (Entered: 01/31/2024) |
| 02/01/2024 | 70 | LETTER ORDER that the Opposition to the Motion to Dismiss shall be filed by 2/14/2024. Signed by Judge Zahid N. Quraishi on 2/1/2024. (jdg) (Entered: 02/01/2024) |
| 02/14/2024 | 71 | BRIEF in Opposition filed by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC re 67 MOTION to Dismiss *Plaintiffs' Second Amended Complaint* (OSTROVE, ELLIOT) (Entered: 02/14/2024) |
| 03/01/2024 | 72 | STIPULATION re 67 MOTION to Dismiss *Plaintiffs' Second Amended Complaint - Extending time to Serve Reply Brief to March 13, 2024* by All Defendants. (JOHNSON, JOHN) (Entered: 03/01/2024) |
| 03/04/2024 | 73 | STIPULATION AND ORDER Extending Defendants' time to submit a Reply Brief in Support of Motion to Dismiss until March 13, 2024. Signed by Judge Zahid N. Quraishi on 3/4/2024. (amv) (Entered: 03/04/2024) |
| 03/13/2024 | 74 | BRIEF - *Reply in support of Motion to Dismiss the THIRD Amended Complaint* (JOHNSON, JOHN) (Entered: 03/13/2024) |
| 08/30/2024 | 75 | OPINION filed. Signed by Judge Zahid N. Quraishi on 8/30/2024. (jdg, ) (Entered: 08/30/2024) |
| 08/30/2024 | 76 | ORDER granting 67 Motion to Dismiss; and it is further ORDERED that Counts One, Two, Three, Four, Seven, Eight, Nine, and Ten of Plaintiffs' Third Amended Complaint are hereby DISMISSED WITHOUT PREJUDICE. Plaintiffs are hereby granted leave to file a Fourth Amended Complaint within 30 days. A failure to cure the defects noted in the accompanying Opinion may lead to dismissal with prejudice. Signed by Judge Zahid N. Quraishi on 8/30/2024. (jdg) (Entered: 08/30/2024) |
| 09/19/2024 | 77 | Letter from Elliot D. Ostrove re 76 Order on Motion to Dismiss,. (OSTROVE, ELLIOT) (Entered: 09/19/2024) |
| 09/20/2024 | 78 | LETTER ORDER granting request for an extension of time to respond to the Amended Complaint until 10/23/2024. Signed by Magistrate Judge Rukhsanah L. Singh on 9/20/2024. (jal, ) (Entered: 09/20/2024) |
| 10/23/2024 | 79 | AMENDED COMPLAINT *Fourth Amended Complaint* against BRITTANY JEREAM COURVILLE, THAT SURPRISE WITNESS TV LLC, filed by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (Attachments: # 1 Redlined Comparison)(OSTROVE, ELLIOT) (Entered: 10/23/2024) |

**JA007**

| 10/28/2024 | 80 | MOTION for Pro Hac Vice Counsels' Withdrawal of Appearanace and Representation as Counsel re 41 Order, 9 Order on Motion for Leave to Appear by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (Attachments: # 1 Declaration of Neville Johnson, # 2 Text of Proposed Order)(OSTROVE, ELLIOT) (Entered: 10/28/2024) |
|---|---|---|
| 10/29/2024 | 81 | Exhibit to 80 Motion for Miscellaneous Relief, by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (OSTROVE, ELLIOT) (Entered: 10/29/2024) |
| 10/29/2024 | 82 | ORDER granting 80 Motion for Pro Hac Vice Counsels' Withdrawal of Appearanace as to Neville L. Johnson and Jeffrey J. Miles. Signed by Magistrate Judge Rukhsanah L. Singh on 10/29/2024. (jal, ) (Entered: 10/29/2024) |
| 11/01/2024 | 83 | Letter from John P. Johnson, Jr., Esq.. (JOHNSON, JOHN) (Entered: 11/01/2024) |
| 11/08/2024 | 84 | Letter from Plaintiffs in Response to Defendants' Pre-motion Letter. (OSTROVE, ELLIOT) (Entered: 11/08/2024) |
| 11/25/2024 | 85 | TEXT ORDER that the Court has reviewed the parties' letters 83 and 84 , and hereby WAIVES the pre-motion conference. Defendant shall file its Motion to Dismiss, limited to the arguments in its pre-motion letter, by no later than 12/13/2024, to be made returnable 01/06/2025. So Ordered by Judge Zahid N. Quraishi on 11/25/2024. (kas) (Entered: 11/25/2024) |
| 12/13/2024 | 86 | MOTION to Dismiss by BRITTANY JEREAM COURVILLE. Responses due by 12/23/2024. (Attachments: # 1 Memorandum Memo in Support of Motion to Dismiss, # 2 Certificate of Service, # 3 Text of Proposed Order)(JOHNSON, JOHN) (Entered: 12/13/2024) |
| 12/18/2024 | 87 | STIPULATION re 86 MOTION to Dismiss , Set/Reset Motion and R&R Deadlines/Hearings, by LIMA JEVREMOVIC, AUTONOMOUS USER REHABILITATION AGENT, LLC. (OSTROVE, ELLIOT) (Entered: 12/18/2024) |
| 12/19/2024 | 88 | STIPULATION AND ORDER extending deadlines and resetting 86 motion to dismiss until 2/18/2025. Signed by Judge Zahid N. Quraishi on 12/19/2024. (jal, ) (Entered: 12/19/2024) |
| 01/09/2025 | 89 | STIPULATION re 86 MOTION to Dismiss by LIMA JEVREMOVIC, AUTONOMOUS USER REHABILITATION AGENT, LLC. (OSTROVE, ELLIOT) (Entered: 01/09/2025) |
| 01/10/2025 | 90 | STIPULATION AND ORDER granting request regarding briefing schedule for Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint. Signed by Judge Zahid N. Quraishi on 1/10/2025. (mlh) (Entered: 01/10/2025) |
| 01/21/2025 | 91 | MEMORANDUM in Opposition filed by LIMA JEVREMOVIC, AUTONOMOUS USER REHABILITATION AGENT, LLC re 86 MOTION to Dismiss (OSTROVE, ELLIOT) (Entered: 01/21/2025) |
| 02/25/2025 | 92 | BRIEF in Support filed by BRITTANY JEREAM COURVILLE re 86 MOTION to Dismiss (JOHNSON, JOHN) (Entered: 02/25/2025) |
| 03/24/2025 | 93 | MOTION for Pro Hac Vice Counsel's Withdrawal of Appearance and Representation re 8 MOTION for Leave to Appear Pro Hac Vice , 9 Order on Motion for Leave to Appear by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(OSTROVE, ELLIOT) (Entered: 03/24/2025) |

| 03/25/2025 | 94 | ORDER Granting 93 Motion to Withdraw RODNEY A. SMOLLA as pro hac vice counsel. Signed by Magistrate Judge Rukhsanah L. Singh on 3/25/2025. (amv) (Entered: 03/25/2025) |
| 07/11/2025 | 95 | OPINION filed. Signed by Judge Zahid N. Quraishi on 7/11/2025. (kht) (Entered: 07/11/2025) |
| 07/11/2025 | 96 | ORDER that Defendants' 86 Motion is hereby GRANTED. The Fourth Amended Complaint is hereby DISMISSED WITH PREJUDICE. The Clerk's Office is instructed to mark this matter CLOSED. Signed by Judge Zahid N. Quraishi on 7/11/2025. (kht) (Entered: 07/11/2025) |
| 08/08/2025 | 97 | NOTICE OF APPEAL as to 96 Order on Motion to Dismiss by AUTONOMOUS USER REHABILITATION AGENT, LLC, LIMA JEVREMOVIC. Filing fee $ 605, receipt number ANJDC-16543970. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. Appeal Record due by 9/8/2025. (OSTROVE, ELLIOT) (Entered: 08/08/2025) |
| 08/13/2025 | 98 | USCA Case Number 25-2553 for 97 Notice of Appeal (USCA), filed by LIMA JEVREMOVIC, AUTONOMOUS USER REHABILITATION AGENT, LLC. USCA Case Manager Alicia (Document Restricted - Court Only) (ca3amr) (Entered: 08/13/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/17/2025 15:29:43 | | | |
| **PACER Login:** | edostrove | **Client Code:** | Jevremovic |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-04969-ZNQ-RLS Start date: 8/8/2022 End date: 10/17/2025 Starting with document: 1 Ending with document: 98 |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**JA009**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LIMA JEVREMOVIĆ, an individual;  :
and   AUTONOMOUS    USER   :
REHABILITATION AGENT, LLC, a   :
Delaware Limited Liability Company,   :
:
          Plaintiffs,   :   CIVIL ACTION NO.: 3:22-CV-04969-ZNQ-RLS
:
      v.   :
:
BRITTANY JEREAM COURVILLE,   :
an individual; and THAT SURPRISE   :
WITNESS TV LLC, a New Jersey   :
limited liability corporation,   :
:
          Defendants.   :

## NOTICE OF APPEAL

Plaintiffs, Lima Jevremović and Autonomous User Rehabilitation Agent, LLC, appeal to the United States Court of Appeals for the Third Circuit from the Order Granting Defendants' Brittany Jeream Courville, and That Surprise TV, LLC, Motion to Dismiss Plaintiffs' Verified Fourth Amended Complaint, entered on July 11, 2025.

**EPSTEIN OSTROVE, LLC**

By:_____*s/ Elliot D. Ostrove*_____
    Elliot D. Ostrove, Esq. (Bar No. 025581997)
    EPSTEIN OSTROVE
    200 Metroplex Drive, Suite 304
    Edison, New Jersey 08817
    Telephone: (732) 828-8600
    Fax: (732) 828-8601
    Email: e.ostrove@epsteinostrove.com

    *Attorneys for Plaintiffs Lima Jevremović*
    *and Autonomous User Rehabilitation Agent,*
    *LLC*

Dated: August 8, 2025

**JA010**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LIMA JEVREMOVIC,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **BRITTANY JEREAM COURVILLE,** *et al.*, <br><br> Defendants. | Civil Action No. 22-4969 (ZNQ) (RLS) <br><br> **ORDER** |

**QURAISHI, District Judge**

     **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville") and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). (ECF No. 86.) For the reasons set forth in the accompanying Opinion,

     **IT IS** on this **11th** day of **July 2025,**

     **ORDERED** that Defendants' Motion (ECF No. 86) is hereby **GRANTED**; it is further

     **ORDERED** that the Fourth Amended Complaint is hereby **DISMISSED WITH PREJUDICE**; and it is further

     **ORDERED** that the Clerk's Office is instructed to mark this matter **CLOSED**.

s/ Zahid N. Quraishi     
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

**JA011**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **LIMA JEVREMOVIC, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**BRITTANY JEREAM COURVILLE, *et al.*,**<br><br>Defendants. | Civil Action No. 22-4969 (ZNQ) (RLS)<br><br>**ORDER** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville") and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). (ECF No. 86.) For the reasons set forth in the accompanying Opinion,

      **IT IS** on this **11th** day of **July 2025,**

      **ORDERED** that Defendants' Motion (ECF No. 86) is hereby **GRANTED**; it is further

      **ORDERED** that the Fourth Amended Complaint is hereby **DISMISSED WITH PREJUDICE**; and it is further

      **ORDERED** that the Clerk's Office is instructed to mark this matter **CLOSED**.

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

**JA012**

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LIMA JEVREMOVIC, *et al.*, | |
| Plaintiffs, | Civil Action No. 22-4969 (ZNQ) (RLS) |
| v. | **OPINION** |
| BRITTANY JEREAM COURVILLE, *et al.*, | |
| Defendants. | |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville") and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). ("Motion", ECF No. 86.) Defendants filed a brief in support of their Motion. ("Moving Br.", ECF No. 86-1.) Plaintiffs Lima Jevremovic ("Jevremovic") and Autonomous User Rehabilitation Agent, LLC ("AURA") (collectively, "Plaintiffs") filed an Opposition to the Motion ("Opp'n Br.", ECF No. 91), to which Defendants replied ("Reply Br.", ECF No. 92).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will GRANT Defendants' Motion.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1
**JA013**

## I.    BACKGROUND AND PROCEDURAL HISTORY

This action arises out of alleged defamatory statements made by Defendants across various online platforms about Jevremovic and her company, AURA.  (*See generally* Fourth Amended Complaint, "FAC", ECF No. 79.)  A complete factual background of this dispute is set forth in the Court's earlier Opinion dated August 10, 2023, which the Court incorporates by reference.  (ECF No. 44.)  *Jevremovic v. Courville*, Civ. No. 22-4969, 2023 WL 5127332 (D.N.J. Aug. 10, 2023) (hereinafter *Jevremovic I*).  The relevant background and procedural history for the purposes of the current motion are summarized as follows.

Plaintiffs initiated the instant action on August 8, 2022, by filing the original Complaint. (ECF No. 1.)  On May 30, 2022, the Court issued an Order to Show Cause why this matter should not be dismissed for lack of subject matter jurisdiction because Plaintiffs failed to adequately allege the citizenship of AURA.  (ECF No. 24.)  On June 6, 2023, Plaintiffs filed an Amended Complaint (ECF No. 26) that adequately alleged AURA's citizenship; the original Complaint and the Amended Complaint were otherwise identical.  Accordingly, the Court withdrew its Order to Show Cause. (ECF No. 32.)

The Amended Complaint asserted two counts of libel against Courville.  (ECF No. 26 ¶¶ 29–111.)  Between the two counts, Plaintiffs alleged that Courville made defamatory statements about Plaintiffs on her YouTube channel, on Instagram posts, and on other social media platforms. The statements largely concerned Plaintiffs' relationship with Amanda Rabb and Brandon "Bam" Margera, individuals associated with Jevremovic and AURA's efforts to provide mental health services and substance abuse treatment.

Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 20), which the Court granted.  *Jevremovic I*, 2023 WL 5127332.  In *Jevremovic I*, the Court held that Courville's

statements were unactionable opinions, not defamatory statements. *Id.* The Court provided several explanations to support its conclusion, including that: (1) the statements were made on Instagram and YouTube which are "forums that welcome opinions and candor," (*id.* at \*5); (2) despite being a lawyer, Courville "disclaims that her opinions are 'not legal advice,'" (*id.* at \*6); and (3) Courville characterizes her opinions as "theories" and even refers to herself as a "conspiracy theorist," *Id.* The Court also found that Plaintiffs failed to sufficiently plead actual malice, a demanding standard requiring "particularized facts to suggest that . . . [the statement] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement." *Id.* Ultimately, the Court dismissed the two libel counts without prejudice and granted Plaintiffs leave to "cure the defects" identified and noted that a failure to do so may result in dismissal with prejudice. *Jevremovic I*, 2023 WL 5127332, at \*8.

On September 11, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"). (ECF No. 48.) Just a few months later, Plaintiffs filed the Third Amended Complaint ("TAC") on December 6, 2023, to correct a clerical error in the caption of the SAC. (ECF No. 64.) Other than the caption, the SAC and the TAC were identical.

The amendments in the TAC significantly exceeded the Court's narrow leave provided to Plaintiffs to cure the defects of the Amended Complaint. First, Plaintiffs added two new parties: Defendants Benipal and the LLC. (*See generally id.*) Second, Plaintiffs added eight new counts, Counts Three through Ten, alleging various causes of action including invasion of privacy, harassment, intentional and negligent infliction of emotional distress, and unfair competition. (*Id.* ¶¶ 173–222.)

To support their additional causes of action, Plaintiffs pled several factual allegations describing Defendants' purported harassment and doxing behavior towards them. (*Id.* ¶¶ 44–63.)

Plaintiffs described how Defendants "resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremovic and prevent" her from bringing this lawsuit. (*Id.* ¶ 44.) Plaintiffs alleged that Defendants have published over 300 videos and over 1,000 posts about Jevremovic across Defendants' social media outlets. (*Id.* ¶ 47.) Plaintiffs pointed to a photo that Defendants published "falsely communicating that Courville had found an OnlyFans page for Jevremovic—a profile page which links to pornographic films and photographs that are not Jevremovic." (*Id.* ¶ 48.) Finally, Plaintiffs alleged that Defendants have distributed personal information relating to Jevremovic and her family. (*Id.* ¶¶ 50–53.) Altogether, Plaintiffs claimed that Defendants' conduct has caused "substantial and irreversible damage to Jevremovic's career and reputation" and well as destroying AURA's ability to operate professionally or commercially. (*Id.* ¶¶ 60–61.)

Although Defendants recognized that Plaintiffs "tried to widen the scope of this action" with their amendments in the TAC, Defendants did not object to the TAC on a procedural basis and the Motion only sought dismissal under Rule 12(b)(6). (Moving Br. at 1.) As such, the Court accepted the TAC as the operative pleading and considered Defendants' arguments for dismissal.

On August 30, 2024, the Court granted Defendants' Motion to Dismiss the TAC. (ECF No. 76.) *Jevremovic v. Courville,* Civ. No. 22-4979, 2024 WL 402144 (D.N.J. Aug. 30, 2024) (*hereinafter Jevremovic II*). The Court dismissed without prejudice Counts One and Two (libel), Three (intrusion upon seclusion), Four (false light), Seven (intentional infliction of emotional distress), Eight (negligent infliction of emotional distress), Nine and Ten (unfair competition claims). *Id.* The Court dismissed with prejudice Counts Five and Six (harassment claims).[2] The Court allowed Plaintiffs to file a Fourth Amended Complaint limited again to remedying the

---

[2] The Court also dismissed as time barred Counts One, Two and Four against newly added Defendant Benipal. *Id.* at *4.

defects identified and noted that a failure to do so might result in dismissal with prejudice. *Id.* at 11.

On October 23, 2024, Plaintiffs filed a Fourth Amended Complaint ("FAC"). (ECF No. 79.) The FAC retains the libel claims (Counts One, Two), invasion of privacy claims(Counts Three, Four) and both the intentional and negligent infliction of emotional distress claims (Counts Five, Six), but drops AURA's unfair competition claims and attempts to add two new tortious interference claims (Counts Seven, Eight).

## II.  <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the

5
**JA017**

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   DISCUSSION

### A.   NEW CLAIMS WITHOUT LEAVE

The FAC includes claims for tortious interference with contractual relations (Count Seven) and tortious interference with prospective economic advantage (Count Eight). (FAC ¶¶ 222–235.) Defendants object on the basis that the Court's prior dismissal of Plaintiffs' claims in *Jevremovic II* granted Plaintiffs leave to amend their Complaint, but expressly stated that it was for a narrow purpose: "*limited to remedying the defects in the counts dismissed without prejudice.*"

Insofar as the FAC purports to add entirely new claims, Plaintiffs again seek to exceed the leave provided by the Court. The Court exercised its discretion to consider new claims in the TAC. Given that this is Plaintiffs' second attempt to ignore the Court's instructions and this is their fifth pleading in this matter, the Court will not exercise that discretion again. Counts Seven and Eight will therefore be dismissed.

### B.   DEFAMATION CLAIMS

In Counts One and Two, Plaintiffs assert claims for libel. In Count One, Jevremovic alleges a libel claim against Defendants (FAC ¶¶ 183–191), and in Count Two, AURA alleges a libel claim against Defendants (*id.* ¶¶ 192–199). To adequately state a claim for libel, a plaintiff must allege a prima facie case of defamation. To establish a prima facie case of defamation, a plaintiff must show that the defendant communicated a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff. *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 164–65 (1999). A

6
**JA018**

defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010). "To determine if a statement has a defamatory meaning, a court must consider three factors: '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" *Id.* (quoting *DeAngelis v. Hill*, 180 N.J. 1, 14 (2004)).

Second, where the plaintiff is a public figure, a plaintiff must also allege that the defendant acted with "actual malice."[3] *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). "Actual malice" is a term of art that does not connote ill will or improper motivation. Rather, it requires that the publisher of the statements either knew that the statements were false, or they published the statements with "reckless disregard" for their truth. *McCafferty*, 955 F.3d at 359.

The Court will address each count in turn.

### 1. Libel Claim by Jevremovic (Count One)

Jevremovic alleges that Defendants published false and defamatory statements about her involvement with Amanda Rabb ("Amanda") and Brandon Margera ("Bam"). In *Jevremovic II*, the Court dismissed Jevremovic's libel claim without prejudice, finding the statements alleged against Defendants constituted "unactionable opinions." *Jevremovic II,* 2024 WL 4024144, at *6. In the FAC, Jevremovic alleges several new defamatory statements made by Courville.

As to Amanda, Jevremovic alleges that Courville, through her social media accounts including YouTube and Instagram, falsely claimed that Jevremovic: conspired with Amanda's

---

[3] Plaintiffs do not concede that Jevremovic is a public figure. The Court, however, has already found that in this instance she qualifies as a limited public figure. (ECF No. 44 at 16–17.); *see Gulrajaney v. Petricha*, 885 A.2d 496, 505 (N.J. Super. Ct. App. Div. 2005) ("The classification of a person as a public or private figure is a question of law to be decided by the [court].")

father to put Amanda in prison; conducted experimental treatment on Amanda against her will; and lied about Amanda's death. (FAC ¶39–40, 64, 67.) Jevremovic alleges that Courville posted several videos on her YouTube channel throughout 2022 and 2023 in which Courville stated, among other things, that Jevremovic was "working in concert with Amanda's father . . . and Mark Laita," a photographer who interviewed Amanda for a YouTube series, "to make sure that Amanda went to jail."[4]  (*Id.* ¶48.)  Jevremovic further alleges that Courville claimed Jevremovic "forces people by court order to use [AURA'S] tools" and that Amanda's arrest was a set up to "put her into a conservatorship and . . . force her into rehab." (*Id.* ¶¶40, 56, 79.)[5]  Jevremovic also pleads a statement by Courville in which she stated that Amanda "did not survive the treatment" and she "died in the AURA treatment center." (*Id.* ¶64).

As to Bam, Jevremovic alleges that Courville similarly falsely accused Jevremovic of "setting up" Bam to be arrested and forced into a treatment center and that Jevremovic was serving as a conservator to Bam to gain access to Bam's finances.  (*Id.* ¶¶88, 104, 111, 115, 132.) Jevremovic pleads that Defendants knew, or had reckless disregard for the truth, that Bam was under a guardianship, not a conservatorship, and even went so far as to claim that conservatorships and guardianships are "exactly the same." (*Id.* ¶97.)

---

[4] Jevremovic further alleges that Courville referred to Amanda's father as a "molester" based on an interview Amanda gave with Mark Laita but that Courville intentionally misled her audience because Amanda later clarified in that same video that, "the things I accused my dad of . . is not true. I had schizophrenia. I had mental illness where . . . I hear voices . . . so my dad has done nothing to hurt me. He's a great guy." (*Id.* ¶46.)  Jevremovic contends that Courville claimed Jevremovic was thus working with Amanda's father to hurt Amanda.  (*Id.* ¶¶48-51.)

[5] Jevremovic also pleads many statements that Courville made in response to comments Courville received on her social media posts.  For example, Jevremovic alleges that Courville posted a photo on Instagram in March 2022, of Amanda wearing virtual reality headgear and participating in a "virtual reality exposure therapy session using AURA." (FAC ¶74.)  In response to a comment on the post, Courville wrote, "the issue is that [Amanda] was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do [sic] be used as a test subject and marketing tool . . . . What's not cool is taking away someone's choice for their own treatment." (*Id.*)

In their Motion, Defendants argue that Plaintiffs fail to cure the deficiencies the Court identified in *Jevremovic II* and the FAC therefore fails to allege actionable defamatory statements. (Moving Br. at 8, citing *Jevremovic II,* 2024 WL 4024144, at *6). Defendants contend that the alleged defamatory statements attributed to Courville in the FAC are constitutionally protected opinion which were made without malice. (Moving Br. at 8.) Plaintiffs argue in opposition that each of Courville's allegedly defamatory statements are verifiably false, and that Courville either knew the statements were false or acted with "reckless disregard" for the truth. (Opp'n Br. at 13, 20.)

Upon a thorough review of the FAC, the Court finds that Jevremovic's allegations again fail to establish a prima facie claim of libel. As in *Jevremovic I and II*, the context of the allegations as pled in the FAC stem from Instagram and YouTube, forums that the Court previously noted welcome opinions and candor. *Jevremovic II,* 2024 WL 4024144, at *6. Furthermore, many of the statements alleged appear to have been made by Courville in her responses to viewers comments both on Instagram and YouTube. Further, "mere insults and rhetorical hyperbole, while they may be offensive, are not defamatory." *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 312 (App. Div. 2000) (quoting *Lynch*, 161 N.J. at 167–68). Accordingly, the Court finds that the new statements in the FAC are not defamatory statements, but rather unactionable opinions. For these reasons, the Court will dismiss Counts One and Two.

### C. ADDITIONAL CLAIMS

#### 1. Invasion of Privacy Claims (Counts Three & Four)

##### a) *Invasion of Privacy – Intrusion upon Seclusion (Count Three)*

In Count Three, Jevremovic asserts a claim for intrusion upon seclusion. (FAC ¶¶ 200–206.) To state a claim for intrusion upon seclusion, the New Jersey Supreme Court has held that

a plaintiff must allege (1) an intentional intrusion, (2) upon the seclusion of another, (3) that is highly offensive to a reasonable person. *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 293 (3d Cir. 2016) (citing *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17 (N.J. 1992)).  Courts have explained that the "thrust" of an intrusion upon seclusion claim is that "a person's private, personal affairs should not be pried into" and that "there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known." *D'Ambly v. Exoo*, Civ. No. 20-12880, 2021 WL 5083816, at *8 (D.N.J. Nov. 1, 2021) (citing *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. Sup. Ct. App. Div. 1982)).

Here, Jevremovic alleges that Defendants released her personal information including Jevremovic's home address; the name and address of the church she attends in Los Angeles; her phone number; her social security number; the names of Jevremovic's husband, sisters, mother and mother-in-law; and photos of her family. (FAC ¶202.)  Jevremovic alleges that Defendants' intentional release of her social security number violates N.J. Stat. Ann. §56:8-164 and that she has witnessed several drones circling near her home and property and that strangers have "show[n] up uninvited and unannounced" at her home. (*Id.* ¶¶203–04.)

Defendants argue that Jevremovic fails to allege how "any of the information identified is private, or at least not publicly known, or how Defendants "used anything other than public or permissible means to obtain [the] information." (Moving Br. at 26.)  Defendants further contend that Jevremovic included her social security number in a "publicly available filing in Florida state court" and that such action on her part "undermines any suggestion that this information is private" and is thus "fatal to an invasion of privacy claim." (*Id.*)  Jevremovic argues in response that she

included her social security number in a guardianship application which was sealed and "not accessible to the public." (Opp'n Br. at 25.)

The Court finds that Jevremovic fails to adequately allege any conduct attributable to Defendants themselves that amounts to either direct or indirect intrusions. *See McQueen v. Credit One Bank, N.A.*, 769 F. Supp. 3d 321, 327 (D.N.J. 2025) (explaining that the tort covers direct intrusions like "when someone opens a neighbor's mail" and indirect intrusions, whereby "the alleged intrusion runs through a third-party intermediary – as when A intrudes on B's 'seclusion' by improperly obtaining B's private information from C, [i.e., a bank]"). Rather than pleading allegations that Defendants themselves obtained such personal information by wrongful means, Jevremovic ultimately alleges only that Defendants released the information. Missing from the FAC are allegations as to actual intrusion on the part of any Defendant. That is, Jevremovic alleges that Defendants "published" and "released" personal and private information regarding Jevremovic and her family, but it is unclear whether Defendants themselves improperly obtained the information or whether a third-party, such as one of Defendants' viewers, obtained the information and provided it to Defendants. The same is true for the release of Jevremovic's social security number. Jevremovic does not plead that Defendants themselves obtained this information wrongfully from a sealed court filing; only that Defendants released the number.

The Court does not doubt that the information was in fact released but Jevremovic does not allege how Defendants obtained the information, whether Defendants "used anything other than public or permissible means to" obtain the information, or if the information was not public. *See D'Ambly*, 2021 WL 5083816, at *9. Without more, Jevremovic cannot sufficiently allege an intentional intrusion into her private information. The Court will therefore dismiss Count Three.

**JA023**

b) *Invasion of Privacy – False Light (Count Four)*

In Count IV, Jevremovic asserts a claim for the tort of false light. (FAC ¶¶ 207–211.) To state a claim of false light, a plaintiff must allege that (1) the defendant publicized a matter concerning the plaintiff "before the public in a false light"; (2) "the false light in which [the plaintiff] was placed would be highly offensive to a reasonable person"; and (3) the defendant had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [the plaintiff] would be placed." *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988) (quoting *Restatement (Second) of Torts* § 652E). The third element of a false-light claim parallels the actual malice requirement of a defamation claim. *Durando v. Nutley Sun*, 209 N.J. 235, 249 (2012). For the reasons provided above, the Court concludes that Plaintiff did not sufficiently allege actual malice with respect to her two libel claims. As such, the Court finds that Jevremovic has also failed to properly allege actual malice for her claim of false light, and it will dismiss Count Four.

### 2. Jevremovic's Emotional Distress Claims (Counts Five & Six)

Next, Jevremovic alleges two emotional distress claims. In Count Five, Jevremovic alleges a claim for intentional infliction of emotional distress ("IIED") (FAC ¶¶ 212–215), and in Count Six, she alleges a claim for negligent infliction of emotional distress ("NIED") (*id.* ¶¶ 216–221). Jevremovic premises both her emotional distress claims on the following facts: (1) Defendants' distribution of her home address, phone number, social security number, (FAC ¶¶213, 217) (2) Defendants' distribution of her mother and sister's home addresses, (*id.*) and (3) Defendants' suggestion that Jevremovic is involved in pornography, (*id.*). Jevremovic further alleges that, as a result, she and her family have had to relocate and hire 24/7 security and that she suffered, and continues to suffer, emotional distress. Jevremovic alleges that she regularly sees a psychiatrist

and therapist, was diagnosed with depression in April 2024, and has developed a heart condition. (*Id.* ¶¶214, 219).

<em>a)</em>     IIED

To state a claim for intentional infliction of emotional distress, a plaintiff must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988). "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006). However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991). To establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon*, 173 F. Supp. 2d at 242 (quoting *Buckley*, 544 A.2d at 863 (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Authority*, No. 13-2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). I

Accepting as true all Jevremovic's allegations and construing the facts in the light most favorable to her, and considering the newly pled allegations concerning Jevremovic's depression diagnosis, the Court finds Jevremovic does not plead specific allegations which would constitute an IIED claim. Put simply, Jevremovic has not alleged any conduct that is "extreme or outrageous" or "beyond all possible bounds of decency." "Examples of conduct found to be extreme and outrageous by New Jersey courts include, when a physician, knowing it to be false, told parents

13<br><strong>JA025</strong>

their son was suffering from cancer; spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside a loaf of bread for a sensitive person to open." *Coefield v. GPU,* 125 F. App'x 445, 450 (3d Cir.2005) (quoting *McConnell v. State Farm Mut. Ins. Co.,* 61 F.Supp.2d 356, 363 (D.N.J.1999)). Jevremovic has not alleged that Defendants engaged in conduct that could be characterized as extreme and outrageous. The "elevated threshold" for finding outrageous conduct is only satisfied in extreme cases under New Jersey law. *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001).

> b) NIED

A plaintiff can only recover for negligent infliction of emotional distress in one of two ways. *Jablonowska v. Slither*, 948 A.2d 610, 618 (N.J. 2008). First, he can show "the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury." *Id.* (citing *Falzone v. Busch*, 214 A.2d 12 (N.J. 1965)). Alternatively, a plaintiff can show (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." *Id.* (citing *Portee v. Jaffee*, 417 A.2d 521 (N.J. 1980)).

Jevremovic has not pled a sufficient basis to make out a claim for negligent infliction of emotional distress under either avenue. The FAC does not allege that any Defendants' conduct "placed the plaintiff in reasonable fear of immediate personal injury," *Falzone*, 214 A.2d at 17, or that any of Defendants' negligence caused the "death or serious injury" of Plaintiff's family member, *Portee*, 417 A.2d at 527. Therefore, Jevremovic's claim for negligent infliction of emotional distress will be dismissed.

14
**JA026**

## D. DISMISSAL WITH PREJUDICE

Insofar as this was Plaintiffs' Fourth Amended Complaint and they were cautioned that failure to remedy their pleading defects would result in dismissal with prejudice, the Court will now dismiss this matter with prejudice on the basis that any further amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that court has discretion to dismiss claims with prejudice when finding amendment would be futile (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

## IV. CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion (ECF No. 86). The Fourth Amended Complaint will be DISMISSED WITH PREJUDICE and this matter will be closed. An appropriate Order will follow.

Date: July 11, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**