No. 25-2553

IN THE

# United States Court of Appeals
## FOR THE THIRD CIRCUIT

LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER
REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,
*Plaintiffs-Appellants*,

*-against-*

BRITTANY JEREAM COURVILLE, an individual; and THAT SURPRISE
WITNESS TV LLC, a New Jersey Limited Liability Company,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of New Jersey,
before the Honorable Zahid N. Quraishi, U.S.D.J.
No. 3:22-cv-04969-ZNQ-RLS

**JOINT APPENDIX VOLUME II (JA028 – JA507)**

| | |
|---|---|
| **EPSTEIN OSTROVE, LLC** | **COZEN O'CONNOR, P.C.** |
| Elliot D. Ostrove, Esq. | John P. Johnson, Esq. |
| Vahbiz P. Karanjia, Esq. | Tamar S. Wise, Esq. |
| 200 Metroplex Drive, Suite 304 | 3 WTC, 175 Greenwich St, 55th Floor |
| Edison, New Jersey 08817 | New York, NY 10007 |
| Tel: (732) 828 – 8600 | Tel: (212) 883 – 4924 |
| Fax: (732) 820 – 8601 | Fax: (646) 461 – 2054 |
| e.ostrove@epsteinostrove.com | jjohnson@cozen.com |
| v.karanjia@epsteinostrove.com | twise@cozen.com |
| *Counsel for Plaintiffs-Appellants* | *Counsel for Defendants-Appellees* |

# **TABLE OF CONTENTS**
## **VOLUME I (BOUND WITH BRIEF)**

Docket Sheet, D.N.J. No. 3:22-cv-04969-ZNQ-RLS…………………………..**JA001**

Notice of Appeal, D.N.J. Doc. 97, August 8, 2025…………………………..**JA010**

Order Granting Motion to Dismiss Fourth Amended Complaint…………….**JA012**
    D.N.J. Doc. 96, July 11, 2025

Opinion Granting Motion to Dismiss Fourth Amended Complaint………….. **JA013**
    D.N.J. Doc. 95, July 11, 2025

## **VOLUME II**

Verified Complaint, D.N.J. Doc. 1, dated August 8, 2022……………………**JA028**

Amended Verified Complaint, D.N.J. Doc. 26, dated June 6, 2023…………...**JA059**

Order Granting Motion to Dismiss the Amended Verified Complaint………..**JA089**
    D.N.J. Doc. 45, August 10, 2023

Opinion Granting Motion to Dismiss the Amended Verified Complaint……...**JA090**
    D.N.J. Doc. 44, August 10, 2023

Second Amended Verified Complaint………………………………………...**JA110**
    D.N.J. Doc. 48, September 11, 2023

Exhibit 1, D.N.J. Doc. 48-1, September 11, 2023…………………………..**JA170**

Redlined Second Amended Verified Complaint……………………………...**JA179**
    D.N.J. Doc. 48-2, September 11, 2023

Third Amended Verified Complaint, D.N.J. Doc. 64, December 6, 2023….…**JA261**

Order Granting Motion to Dismiss Third Amended Complaint………………**JA321**
    D.N.J. Doc. 76, August 30, 2024

Opinion Granting Motion to Dismiss Third Amended Complaint…………….**JA322**
    D.N.J. Doc. 75, August 30, 2024

Fourth Amended Verified Complaint, D.N.J. Doc. 79, October 23, 2024….…**JA344**

Redlined Fourth Amended Verified Complaint……………………………**JA400**
    D.N.J. Doc. 79-1, October 23, 2024

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that, on October 21, 2025, the foregoing was filed electronically and served on the other parties via the Court's ECF system. The undersigned hereby certifies that counsel for Appellants have also delivered an electronic copy of the foregoing to counsel for Appellees and is sending the same by regular mail to:

John P. Johnson, Esq.
Tamar S. Wise, Esq.
**COZEN O'CONNOR, P.C.**
3WTC, 175 Greenwich St, 55th Floor
New York, NY 10007
jjohnson@cozen.com
twise@cozen.com
Tel: (212) 883 – 4924
Fax: (646) 461 – 2054
*Counsel for Defendants-Appellees*
*Brittany Jeream Courville and That Surprise Witness TV LLC*

DATED: October 21, 2025

/s/ Elliot D. Ostrove
Elliot D. Ostrove, Esq.

Sherri A. Affrunti, Esq. (SBN 017981996)
THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road
Bldg. 1800, #1803, 2d Floor, Jackson Suite
Yardley, PA 19067
Tel:  267.392.5842
Email: sherri@affruntilaw.com

Neville L. Johnson, Esq. (*Pro Hac Vice* Admission pending)
Adam M. Winokur, Esq. (*Pro Hac Vice* Admission pending)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com; awinokur@jjllplaw.com

Rodney A. Smolla, Esq. (*Pro Hac Vice* Admission pending)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiffs,<br><br>       vs.<br><br>BRITTANY JEREAM COURVILLE, an individual,<br><br>    Defendant. | Civil Action No:<br><br>*Document Electronically filed*<br><br><br>**VERIFIED COMPLAINT FOR:**<br><br>**1.  LIBEL**<br><br>**2.  LIBEL**<br><br>**DEMAND FOR JURY TRIAL** |

**JA028**

Plaintiffs Lima Jevremović ("Ms. Jevremović"), an individual with her principal residence in the State of California, and Autonomous User Rehabilitation Agent, LLC, a limited liability company with its principal place of business in the State of Washington ("AURA" or the "Company") (together, "Plaintiffs"), by and through their undersigned counsel, complaining of Defendant Brittany Jeream Courville ("Defendant" or "Courville"), allege as follows:

## PARTIES

1. AURA is a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300, Bainbridge Island, Washington 98110-2450. AURA operates as a wellness supplements and healthcare solutions software business.

2. Ms. Jevremović, an individual, is the founder and CEO of AURA. She identifies her address as: c/o Neville Johnson, Johnson & Johnson, LLP, 439 North Canon Drive, Suite 200, Beverly Hills, California, 90210 because she and her family have received harassment and threats in connection with the claims in this matter, and because her home address was disseminated (and unknown third parties have attempted to gain entry while the family was home), Ms. Jevremović and her family relocated their residence and hired 24-hour security to guard their home. Ms. Jevremović thus respectfully seeks to avoid providing her personal address in court filings, so she will not be forced to relocate again.

3. Defendant is an individual who, upon information and belief, resides at 10 Teak Lane, Princeton, NJ 08540.

## NATURE OF THE ACTION

4. This is an action for defamation in the form of libel in connection with Courville's publications and republications to the Internet of or about Jevremović and AURA. With respect to facts alleged herein on information and belief, Plaintiffs and their undersigned attorneys are

2

**JA029**

informed and believe that those facts are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, because, among other reasons, evidence to support those facts is exclusively in Defendant's possession.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is appropriate to this Court under 28 U.S.C. § 1332 because complete diversity exists amongst the parties and the amount in controversy exceeds the jurisdictional minimum.

6. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) because Courville resides in this District and Courville published a substantial number of actionable statements to the Internet from this District.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. Defendant is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Courville worked at Winston Strawn briefly before she and the firm parted ways over Courville's use of social media. On her LinkedIn profile, she identifies herself as President of the defunct Life Treasures Foundation, Inc., and describes her profession as "Legal Commentary on YouTube/Social Media Law."

8. In July 2020, Courville began to affiliate herself with the "Free Britney" cause célèbre, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Courville uses variants of the handle "that surprise witness" on her social media accounts. She reports becoming "obsessed" and using her newfound "legal expertise" to interpret the associated law, pleadings, and court opinions and orders. She spread this information online via videos, photos, and text commentary. As the "Free Britney" cause célèbre gained mass media attention, Courville was invited to give interviews as an attorney among the

**JA030**

Britney Spears fanatics. Courville received attention, praise, and admiration from strangers in reaction to her publications regarding the Britney Spears litigation.

9. However, as Britney Spears' conservatorship was terminated, Courville began to receive less attention. She looked for other celebrities onto whom to latch and began inventing scandal where none existed. Courville found a celebrity in entertainer Brandon "Bam" Margera ("Margera") and created a scandal concocting ersatz villains out of Ms. Jevremović and her wellness supplements and healthcare solutions software business, AURA.

10. In 2019, Ms. Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA uses technology to scale affordable, high-quality mental health treatment services. The Company supports mental health professionals using the technology to track patient progress of people undergoing mental health treatment, *inter alia,* by recording and analyzing biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, *e.g.*, assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. The Company also produces vitamins/supplements for brain health and mood support.

11. AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch. Through AURA, Ms. Jevremović supplies mental health assistance tools to numerous individuals free of charge in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product. To that end, AURA additionally provides services without charge to celebrities, influencers, and persons in the public eye as well as individuals with no public presence as a

4

**JA031**

community social service. Plaintiffs were successful in this regard until Courville began her social media campaign against them.

12.     One such recipient of AURA's free-of-charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles' notorious Skid Row who turned to sex work to fund her addiction. AURA provided $250,000 to be used by Rabb for a year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate Rabb back into society as a productive, healthy member. Rabb was also given the opportunity to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care professionals. Ms. Jevremović personally funded the majority of Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

13.     Sadly, on Sunday, May 9, 2021, staff at the Desert Hope Treatment Center ("Desert Hope") found Rabb unresponsive in her bed and unsuccessfully performed CPR. An AURA employee contacted the Clark County Coroner's Office, requesting information regarding Rabb's death. Desert Hope indicated that Rabb only had Tylenol in her system – a fact verified by a representative of the Clark County Coroner, Dr. Paul Uribe.  Dr. Uribe added that Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors.

14.     Celebrity entertainer Margera and his wife, Nicole Boyd-Margera ("Boyd-Margera"), took an interest in AURA in the Spring of 2021. Margera has starred in blockbuster

5

**JA032**

Jackass movies and popular television programs. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addictions over the previous two decades. Because of his background, Margera and Boyd-Margera initially sought to provide their support to Plaintiffs' worthy cause. However, Margera relapsed soon thereafter, and Margera's family approached Ms. Jevremović for intervention assistance.

15.     On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed mental disorder. Margera's family and friends implored Ms. Jevremović to serve as Margera's temporary guardian. Ms. Jevremović agreed and took on the responsibility for Margera's care and treatment, effected by court order. Ms. Jevremović was given no control over or insight into Margera's finances. Also, despite the fact that the Ms. Jevremović is statutorily permitted to collect reasonable sums for her services as guardian, Ms. Jevremović has received no compensation whatsoever, directly or indirectly, in association with her status as Margera's guardian.

16.     Margera began treatment at a drug rehabilitation facility in Florida. However, Margera left this facility, and his whereabouts were unknown for several weeks while he engaged in risky and self-destructive behaviors consistent with his mental disorder. Margera was found and involuntarily placed in the custody of another drug rehabilitation facility. Ms. Jevremović assisted in helping Margera obtain further treatment in Florida. After the court-ordered guardianship terminated, Margera requested that Ms. Jevremović continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery.

17.     Margera's guardianship and substance abuse treatment received press coverage. Courville pried into Margera's public records – discovering Ms. Jevremović's involvement – and formulated a conspiracy theory. Courville began publishing videos, photos, and text

6

**JA033**

commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam." On her Instagram account, Courville proudly calls herself a "conspiracy theorist."[1]

18.    Courville's theory is that Margera's family, friends, and business partners used a court-imposed guardianship to remove Margera as an obstacle to co-opting his assets. Courville baselessly asserts that Ms. Jevremović is committing and assisting in the commission of criminal acts and that Ms. Jevremović is dishonest and promulgates lies. In formulating conspiracies about Ms. Jevremović, Courville further latched onto the publicity surrounding Rabb, her treatment, and her ultimate death. Courville published videos, photos, and textual commentary in which she falsely accused Ms. Jevremović of criminal acts and dishonesty. Springing from Courville's publication of these false allegations, Courville has inspired a throng of similarly celebrity-obsessed fans to harass, threaten, and attack Ms. Jevremović, her family, and her business.

19.    Courville has published to the Internet Ms. Jevremović's social security number, date of birth, home phone number, and family members' addresses, among other pieces of highly personal and sensitive information. Additionally, Courville published information regarding Ms. Jevremović's family – including pictures of her husband and mother-in-law – as well as the identities of Ms. Jevremović's sisters and details of their medical histories. After being besieged in their home in Washington state by Courville's devotees, Ms. Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

---

[1] Courville published an illustration on or about May 31, 2022, in which a "conspiracy theorist" is defined as "[s]omebody who figures out *the truth* before most people" (emphasis added), and she commented on the illustration with "#FreeBam."

**JA034**

20.     Moreover, Courville's defamatory statements of or about Plaintiffs directly interfered with AURA's second round funding, causing potential investors actively involved in funding discussions to retreat. Additionally, Courville's defamatory statements of or about Plaintiffs have interfered with AURA's launch of a new product line of vitamin supplements, directly resulting in order cancellations and the withdrawal of marketing affiliates.

21.     Courville has expressly invited the present lawsuit, believing that Ms. Jevremović cannot defend herself because to do so would be prohibitively expensive, stating:

> Lima, if you think you're going to be in a lawsuit with me, I dare you to sue me in a lawsuit because I'm a lawyer. I will pay zero dollars for law services, and you will have to pay lawyers who are at least as smart as me to fight against me, which is not cheap; it is very expensive to hire lawyers who are as smart as me. So, have at it if you motherfucking think that you have a snowball's chance in the goddamn fireplace, but you don't.

Brittany Jeream Courville (That Surprise Witness TV), *Is Bam Free? | Lawyer Reacts*, YouTube (May 18, 2022), https://www.youtube.com/watch?v=852cOZLBNZA&t=518s&ab_channel=ThatSurpriseWitnessTV. Courville will now receive what she requested.

## ACTUAL MALICE

22.     Courville knew and ignored the fact that no evidence demonstrated Ms. Jevremović to be dishonest, and knew and ignored the fact that no evidence demonstrated Ms. Jevremović to be a criminal.

23.     Courville had a preconceived story line, *i.e.*, that Ms. Jevremović must be acting improperly, prior to learning any facts regarding Ms. Jevremović, and Courville purposefully twisted and misrepresented information in order to fit her preconceived story line.

24.     Courville was aware that her statements of fact were untrue based on their inherent improbability.

25.     Courville took steps to deliberately avoid learning the truth regarding Ms. Jevremović, despite that such information was available to her.

8

**JA035**

26.    Courville's videos air advertisements from which she personally profits. Thus, Courville is incentivized to publish and disseminate shocking materials, materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during her videos.

27.    Courville further solicits and collects donations directly from viewers during her live broadcasts *via* YouTube, and Courville operates a site to solicit donations on gofundme.com. Courville has a Patreon account (an organization that provides users tools with which to fund-raise) in which she has 148 paying subscribers and where she solicits additional funds for in-depth videos on her conspiracy theories. Courville also uses her social media accounts to drive income through the sale of branded merchandise. Courville thus drives her income via defamatory statements.

28.    On July 15, 2022, Plaintiffs contacted Courville in writing to demand retraction of defamatory statements. To the extent Courville disclaimed any of her defamation, her attempts were patently pretextual and obviously insincere. On July 22, 2022, Plaintiffs again contacted Courville in writing to identify further defamatory statements and to demand their retraction. No retraction issued.

## FIRST COUNT

### LIBEL

### (By Plaintiff Lima Jevremović)

29.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 28 as though fully set forth herein.

30.    On May 30, 2022, Courville published via Instagram the statement:

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

9

**JA036**

31.   This statement is defamatory as it expressly impugns Ms. Jevremović's honesty and is wholly false.

32.   On April 19, 2022, Courville published an image of Ms. Jevremović reading Amanda's cause of death (as per the information obtained by an AURA employee from the Clark County Coroner) from a YouTube video to Instagram with the caption:

> I requested the autopsy report and lima is lying in this video. There was NO evidence of traumatic injury. There was LOTS [sic] of medication in her system (not 'only Tylenol'). The cause of death has nothing to do with 'seizure disorder', but rather cardiac arrhythmia. I've posted on [Instagram]about it.

33.   This is defamatory insofar as it falsely accuses Ms. Jevremović of dishonesty, whereas Ms. Jevremović in fact accurately conveyed the information that the Clark County Coroner had conveyed to AURA.

34.   On April 19, 2022, Courville published photos of Amanda Rabb's "Report of Investigation" record obtained from the Clark County Coroner, and Courville published comments stating:

> Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1. WAYY [sic] more than just Tylenol in her system (including cannibinoids [sic] and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS.

35.   These false statements are defamatory insofar as they impugn Ms. Jevremović's honesty.

36.   On April 19, 2022, Courville published a video of Ms. Jevremović reading Amanda's cause of death (as per the information obtained from the Clark County Coroner) from a YouTube video to Instagram. Courville commented on the video, stating:

> So lima from @meetaura BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'. I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie?? #FreeBam #AmandaRabb.

**JA037**

37.     This false statement is defamatory insofar as it impugns Ms. Jevremović's honesty.

38.     On April 3, 2022, Courville published an image on Instagram which purports to list biographical information about Margera, including his putative net worth ($20 Million). Courville commented on the image:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 😎😎😎 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂😂🥺🥺 #FreeBam.

Another commenter states:

> 20 million now, soon to be much less, but it'll all be 'legit,'

to which Courville responds:

> but a certain someone will have fresh lips, Botox, and a BBL watch.

Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Courville's comments here to reference Ms. Jevremović – in fact, people did comment in response who understood the messages to reference Ms. Jevremović.

39.     These statements are defamatory insofar as Courville falsely characterizes Ms. Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such statements are defamatory as they falsely impute a motive to Ms. Jevremović, which most people would find condemnable. Courville further reveals her insincerity with respect to the "conspiracy theory" label and "conspiracy theorist" moniker: a commenter states:

> Please stop with conspiracy theory that have proof and makes sense. You give us true conspiracy theorist who talk about nonsense with no proof look brilliant😊😊😊😊. Keep up the good fight

and Courville responds with

11

😂😂😂 I just say it so they can't use that stupid sh[i]t against me. The smart people know when they're looking at evidence in the face. The ones who know, know 👽💟.

40. Courville thus disclaims language that implies her statements are anything but sincere.

41. On March 30, 2022, Courville published to Instagram an excerpt of a YouTube video in which Ms. Jevremović and Larry Rabb, Amanda Rabb's father, describe how they managed to transfer Amanda from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Courville states that Amanda's public defender is not supposed to:

help you push your scam conservatorship through.

42. This statement is defamatory per se insofar as it accuses Ms. Jevremović of a scam with reference to attempting to impose an LPS conservatorship on Rabb; this imputes criminality or at least immorality and is thus defamatory.

43. On May 7, 2022, Courville published a photo to Instagram picturing Margera's costars from his television show and movies performing a stunt, and Courville captioned the photo:

[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy

And

#FREEBAM.

She further published a comment on the photo stating,

Let the #conspiracytheories roll #freebam.

12

**JA039**

44.     These statements were defamatory as they falsely imply that Ms. Jevremović, as a person Courville repeatedly identifies as responsible for Margera's confinement, is a criminal and engaged in a criminal conspiracy.

45.     On May 6, 2022, Courville published a picture of Margera to Instagram, overlayed with an anonymous person's statement criticizing Courville's publications:

> the whole #freebam thing is so weird and i [sic] strongly believe that [Courville] is a conspiracy theorist. if [sic] she was an actual lawyer[,] wouldn't she actually be busy? sorry [sic] i'm [sic] not buying it

Courville published a comment in response:

> I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy. So they're right! #freebam.

46.     This statement is defamatory as it implies that Ms. Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy.

47.     On May 4, 2022, Courville published an image to Instagram containing mostly text; the text is a republication of a comment previously made by Courville, which of relevance includes:

> . . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in [Margera's] best interest. . . . #freebam SPREAD THE WORD.

48.     This statement constitutes defamation insofar as it implies that Ms. Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy and is attempting to co-opt Margera's assets. Further, Courville encourages her audience to further publish her statements.

49.     On May 4, 2022, Courville published an image on Instagram regarding Margera, and a user, "pettyhearst," commented thereupon stating:

13

**JA040**

I've been a [Margera] fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge[,] I would at least have peace of mind that there is no malicious intent. But they aren't in charge[;] Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating [Margera's parents].

50. Courville published a reply directly to this statement expressing agreement:

bingo.

51. This statement is defamatory insofar as Courville affirmed the false statements made by the anonymous commenter, thus adopting those comments as her own. These statements assert that Ms. Jevremović is manipulating persons for her own gain (impugning Ms. Jevremović's honesty) and imply that Ms. Jevremović is not acting in Margera's interest, that Ms. Jevremović is responsible for Rabb's death ("blood on her hands" – in conjunction with Courville's other defamatory statements with respect to Ms. Jevremović and Rabb, this is a reference to Ms. Jevremović allegedly being at fault for Rabb's death), and that Ms. Jevremović has malicious intent.

52. On April 27, 2022, Courville published on Instagram an image showing a digital message sent to her in which Courville is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"). Courville captioned the image

SUE ME

and published a comment on the image, stating:

The only facts that were imagined came from Lima Jevremović's lying ass mouth.

53. This false statement is defamatory insofar as it impugns Ms. Jevremović's honesty. Courville further published a comment to this image, stating:

if telling the truth is 'damaging to others' and those others are criminals, SO BE IT.

14

**JA041**

54.     This statement is defamatory insofar as it implies that "others" is Ms. Jevremović and thus falsely implies that she is a criminal (the "others" referenced is clearly a reference to Ms. Jevremović, in context).

55.     On April 27, 2022, Courville published on Instagram another image showing a portion of the message sent to her. Courville published a comment associated with the image that reads in relevant part:

> Or is it maybe because the public record doesn't agree with the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??.

56.     This statement is defamatory as it impugns Ms. Jevremović's honesty by implying that she fabricated a "fake[,] imaginary tale" to mislead people. In a separate comment, Courville further answers a question about Ms. Jevremović's description of HIPAA's application to Rabb, stating:

> because they lie.

57.     This is defamatory as it is false and expressly impugns Ms. Jevremović's honesty.

58.     On April 26, 2022, Courville published to Instagram a screenshot showing the "gofundme" donation page for Rabb's treatment, which then indicated that no new donations would be accepted. Courville commented on this photo with the statement:

> Thanks for taking down your fraudulent fundraiser lima!

59.     This statement is defamatory as it falsely imputes criminality to Ms. Jevremović, expressly accusing her of fraud.

60.     On April 25, 2022, Courville published on Instagram an excerpt from a Complaint previously filed by Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually

15

[k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

In response, Courville states:

the plan is to end his life. I'm convinced of it. #savebam.

61.     This statement is defamatory insofar as it alleges that those involved in "the plan" are seeking to kill Margera; in context with Courville's statements regarding Ms. Jevremović being central to Margera's treatment, one can reasonably infer that Courville is falsely referencing Ms. Jevremović as planning to kill Margera.

62.     On April 25, 2022, Courville published to Instagram a screenshot showing that the "Donate now" button was still present on the "gofundme" donation page for Rabb's treatment. Courville commented, asking Gofundme

can you return the funds that have been fraudulently collected from donors on this fundraiser?

and stated,

many people have reported this fraudulent fundraiser and your organization has taken no action.

Elsewhere, Courville states that

we've reported [fraud] a lot

63.     These statements are defamatory as they falsely accuse Ms. Jevremović of criminal behavior – namely, fraud.

64.     On April 19, 2022, Courville posted an image comprising text with the tip line for human trafficking from the National Human Trafficking Hotline, and Courville commented: "#FreeBam." Courville specifically highlighted the phone number and the text stating,

REPORT A TIP with information on potential human trafficking activity.

16

**JA043**

65.     Courville further added a second photo, depicting a cell phone call to a phone number with five minutes having elapsed, the implication being that Courville had called to report Margera as being trafficked to the National Human Trafficking Hotline. A commenter asks in response:

There [are two] different numbers?!

to which Courville answers:

yeah[,] there's a few[.] I called a different tip line[,] but you can call either one.

66.     This is defamatory because Courville implies that Margera is being trafficked, a criminal act, and in the context of her other statements used in connection with the "#FreeBam" tag, it is clear that she views Ms. Jevremović as central to this effort. In the context of her statement that she has called to report Margera's situation as human trafficking and in light of her explicit instructions to a commenter to call, Courville intends this statement to be understood sincerely.

67.     On April 19, 2022, Courville published an image on Instagram containing a short conversation between Courville and a commenter. The commenter accurately stated:

[Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

68.     As recounted in the discussion of Margera above, he was subject to a guardianship imposed in Arizona, and at no relevant time has a conservatorship been imposed. Nonetheless, Courville invokes her credentials, suggests she holds expertise, again provides an inaccurate interpretation of the law, and solicits viewers for her advertisement-supported videos:

are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

In response, a commenter remarked:

17

**JA044**

> Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

Courville, apparently drawing upon her self-avowed lawyerly expertise, explains:

> it's to confuse people so the criminals can keep crim[e-]ing.

69. This is defamatory insofar as, in the context of discussing Margera, it falsely states effectively that the guardianship system is a criminal tool, and thus by implication that Ms. Jevremović, as Margera's guardian, must be a criminal.

70. On April 19, 2022, Courville published on Instagram a screenshot of a conversation between unidentified persons regarding Margera; Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker." On April 19, 2022, Courville published on Instagram screenshots of excerpts from a tabloid story about Margera's recovery, with a section of the article highlighted. Courville commented on the screenshot regarding Margera's recovery, in relevant part, by stating: "#FreeBam" and "#EndHumanTrafficking."

71. These statements are defamatory as they imply that Ms. Jevremović is trafficking Margera. While these statements might ordinarily be readily understood as hyperbole, Courville's repeatedly holding herself out as a legal expert and her repeated emphasis of her use of legal language in its technical sense would reasonably lead a significant portion of her audience to understand the implications of these statements literally.

72. On April 18, 2022, Courville published a screenshot of a highlighted excerpt from an article discussing the application of Iceland law and whether Margera's and his wife's marriage is legally recognized. A commenter on this image asked:

> where are his parents?

to which Courville responded:

> helping the criminals [sic] girl.

18

**JA045**

73. This statement is defamatory insofar as Courville's constant association of Ms. Jevremović with Margera's treatment naturally leads Courville's audience to understand "girl" in this context to reference Ms. Jevremović; these false statements are defamatory insofar they assert that Ms. Jevremović is a criminal, which she is not.

74. On April 3, 2022, Courville posted a screenshot of an excerpt of a celebrity tabloid article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth"; Courville commented on the photo, saying:

> I heard forced rehab is expensive… I learned that from Lima from @meetaura. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😂 #FreeBam.

75. By linking the cost of rehabilitation, as described by Ms. Jevremović, to the supposed depletion of Margera's net worth, Courville is falsely characterizing Ms. Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such a statement is defamatory as it falsely imputes a profit motive to Ms. Jevremović which most people would find condemnable.

76. On March 30, 2022, Courville published to Instagram a screenshot of comments made to Instagram; a commenter asked:

> forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

Courville responded:

> I mean… that's my impression, so if you're wrong[,] I am too.

77. Courville thereby explicitly adopted the commenter's false statements. Ms. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Ms. Jevremović is exploiting

19

**JA046**

celebrities for money. Such false statements are defamatory as they indicate dishonesty and insofar as people hold low opinions of those who exploit others.

78. On April 4, 2022, Courville published to YouTube a video in which she defames Ms. Jevremović. At 27:39, Courville describes Margera's transfers between treatment facilities and states:

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

79. This statement defames Ms. Jevremović insofar as Courville repeatedly identifies Ms. Jevremović as responsible for Margera's treatment, and insofar as Courville, invoking the authority she commands as a lawyer, describes aspects of Margera's treatment as criminal.

80. On July 15, 2022, Courville published to YouTube a video in which she reacts to Ms. Jevremović's public statements addressing, inter alia, Courville's harassment ("the relentless harassment, leaking all of my private information all over the internet, threats to my family and clients, constantly reporting my social media accounts and businesses and the over 14,000 emails that have cluttered my inbox"). At 05:05 Courville states

> I also know Lima [is] a liar.

81. This is defamatory insofar as Courville expressly impugns Ms. Jevremović's honesty.

82. Later in the same video, at 26:08, Courville addresses the discrepancy between Ms. Jevremović's description of Rabb's cause of death and the official autopsy report and states:

> [Ms. Jevremović] can't keep track of her story. And that's what happens when you lie; you have to keep track of the lies you told.

83. This is defamatory insofar as it expressly characterizes Ms. Jevremović's statements as lies.

84. On July 8, 2022, Courville published to YouTube a video. At 6:10, she states:

20

I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

85. Courville thus emphasizes that her statements are accurate and factual. At 15:59, Courville describes herself as

the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation

86. This is defamatory insofar as it characterizes Ms. Jevremović's imposition of a guardianship as human trafficking, a crime. While such statements might ordinarily be susceptible to an interpretation as hyperbole, Courville disclaims hyperbole by use of the term "literal," and she makes clear that if she did not intend for this statement to be taken literally, then she would have been "very explicit that it is my opinion or my belief or my suspicion," and she would "never say [this statement] as if it is a fact if [she didn't] know it to be a fact."

87. Ms. Jevremović's reputation and business endeavors have been negatively impacted, and she has unduly suffered humiliation, emotional distress, anger, embarrassment, sadness, frustration, fear, loss of income, chagrin, severe anxiety, stress, shame, mortification, hurt feelings, sleeplessness, and physical manifestations thereof resulting from Courville's above-described actions. Ms. Jevremović's associated damages are in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

88. Courville knew or should have known each of these statements to be false at the time the statement was made, and thus, Courville acted with actual malice sufficient to support an award of punitive damages.

89. Courville intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit herself by gaining more online attention and compensation for more views on her social media publications. Courville made these false

21

**JA048**

statements in a wanton and willful disregard of Ms. Jevremović's rights. Courville knew or should have known at the time that she made the statements that serious harm would arise from Courville's conduct, and Courville, with knowledge of the harm caused, continued such conduct. Courville's outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter her from similar wrongful conduct in the future.

## SECOND COUNT

## LIBEL

### (By Plaintiff AURA)

90. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 89 as though fully set forth herein.

91. On April 27, 2022, Courville published to Instagram an image showing a digital message sent to her in which the message-sender criticizes Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovićh [sic] . . . ever up held [sic] HIPPA [sic]?

Courville responded:

never not once [sic].

92. This statement is defamatory insofar as it references Ms. Jevremović's work on behalf of AURA, and it asserts that Ms. Jevremović, and by extension, AURA, violate the Health Insurance Portability and Accountability Act ("HIPAA"). Because AURA's products are used in mental health treatment, they must (and do) comply with HIPAA. Courville's statements are defamatory *per se* insofar as they falsely allege that AURA is irresponsible with its client's private information and that AURA does not follow black-letter law. Such statements would damage AURA's esteem and reputation amongst patients, healthcare practitioners, investors,

22

**JA049**

and others, and would lead third parties to think that AURA is incompetent in its business or engages in misconduct in its business operations.

93. On April 27, 2022, Courville republished an image containing another's statements to Instagram regarding Rabb, Margera, and Ms. Jevremović; an anonymous commenter asked:

> Are [Ms. Jevremović and Aura,] using homeless people with addictions to experiment on them for their [YouTube] channel?

and Courville unequivocally affirmed the commenter's statement:

> yes.

94. By affirming the commenter's statement, Courville effectively adopted the statement as her own. This false statement is defamatory as it explicitly states that Ms. Jevremović and AURA are experimenting on homeless individuals, implying that they are doing something inhumane. It further implies that Ms. Jevremović and Aura are dishonest insofar as Courville's statement contradicts Ms. Jevremović's stated reason for providing care to Rabb.

95. On March 31, 2022, Courville published to Instagram an excerpt from a video in which Ms. Jevremović read Rabb's cause of death as a seizure disorder. Courville pauses and adds commentary, including, at 0:10; Ms. Jevremović states:

> Rabb never had seizures prior to being homeless.

Courville comments and states:

> But I think another way of saying that is she never had seizures prior to using AURA.

96. Courville thus seeks to falsely imply that AURA's products caused Rabb's seizures and potentially caused her death.

97. On March 31, 2022, Courville published on Instagram a photo of Rabb wearing virtual reality headgear and participating in a "Virtual Reality Exposure Therapy Session using AURA." A

23

**JA050**

person commented on the photo with interest in the virtual reality-based treatment, and Courville responded:

> the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool. I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

98. This statement is defamatory insofar as it falsely states that patients have the AURA system forced upon them as a test-subject; such a statement carries negative implications about AURA as people are generally opposed to being forced to test healthcare treatments.

99. On April 1, 2022, Courville published an excerpt from a program for a virtual reality conference which included Ms. Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Courville commented on the image:

> Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #RabbRabb.

100. This statement is defamatory insofar as it characterizes Ms. Jevremović and AURA as experimenting on vulnerable populations whom Ms. Jevremović purportedly views as "problematic" and insofar as it contradicts Ms. Jevremović's stated reasons for working with those suffering from mental health disorders (thereby impugning her honesty); such a characterization is highly offensive and falsely imputes a motive to Ms. Jevremović and to AURA which most people would find condemnable.

101. On March 30, 2022, Courville published another excerpt from a video in which Ms. Jevremović describes the use of Aura products in connection with Rabb's treatment. Ms. Jevremović explains that AURA provides its products at no cost and uses the data collected for research purposes, and Rabb would have the opportunity to serve as a case study. Courville commented on the video:

> Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same

24

woman petitioned to put Bam into a conservatorship. #FreeBam #RabbRabb #InvestigateAURA

102. These statements are defamatory as they falsely state that Ms. Jevremović and Aura forced Rabb to test AURA products – people are generally opposed to being forced to test healthcare tools. Such a statement negatively impacts AURA's reputation.

103. On February 22, 2022, Courville published to YouTube a video in which she defames Ms. Jevremović and AURA. At 49:55, Courville falsely states:

[Ms. Jevremović] forces people by court order to use [AURA's] tools.

104. This statement is defamatory insofar as it falsely states that Ms. Jevremović on behalf of AURA imposes conservatorships on people as a means to force people to use AURA's tools (from which AURA and Ms. Jevremović would purportedly profit); people will generally understand this statement to be defamatory insofar as forcing guardianships and conservatorships on people for the purpose of generating profits is generally condemnable behavior.

105. AURA's reputation has been negatively impacted due to Courville's above-described actions; AURA has lost substantial investments, opportunities, and income resulting from Courville's defamation.

106. Courville intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit herself by gaining more online attention and compensation for more views on her social media publications. Courville made these false statements in wonton and willful disregard of AURA's rights, with knowledge of their falsity or reckless disregard for whether the statements were true. Courville knew or should have known at the time she made the statements that serious harm would arise from Courville's conduct, and Courville, with knowledge of the harm caused, nevertheless continued such conduct unabashedly. Courville's outrageous, egregious, and exceptionally wrongful behavior should be

25

**JA052**

punished in the form of punitive damages to deter her from similar wrongful conduct in the future.

107. These false statements expose AURA and its CEO, Ms. Jevremović, to hatred, contempt, and the loss of the good will and confidence felt toward them by others.

108. Furthermore, these false statements have a tendency to injure, and did in fact injure, Plaintiffs' business operations in the addictions recovery and mental healthcare industry, including but not limited to their use of therapist-guided exposure therapy implementing virtual reality technology and telehealth solutions.

109. These statements are entirely false. As a result of Courville's publications, Plaintiffs have suffered reputational harm in an amount to be proved at trial.

110. As a result of Courville's publications, AURA has lost business opportunities in an amount to be proven at trial.

111. Courville's conduct in publishing and republishing the above statements was actuated by actual malice and/or accompanied by a wanton and willful disregard of the effect her statements would have on Plaintiffs' reputations, which foreseeably might be harmed by Courville's republications. Such conduct entitles Plaintiffs to an award of punitive damages under N.J.S.A. 2A:15-5.9, *et seq.*, to both punish and deter Courville's wanton conduct in an amount to be proven at trial.

26

**JA053**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment as follows:

1.     For general damages according to proof, but not less than $75,001;

2.     For compensatory damages according to proof;

3.     For special damages for damage to reputations, losses of business opportunities, and losses of investment opportunities according to proof, but not less than the jurisdictional minimum of this Court;

4.     For the maximum available punitive damages per Plaintiff per cause of action;

5.     For a permanent injunction to remove all statements and publications adjudged libelous;

6.     For pre- and post-judgment interest as allowed by law;

7.     For costs of suit and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all matters triable.

Respectfully submitted,

*s/Sherri A. Affrunti*
Sherri A. Affrunti, Esq. (SBN 017981996)
THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road
Bldg. 1800, #1803, 2d Floor, Jackson Suite
Yardley, PA 19067
Tel:  267.392.5842
Email:  sherri@affruntilaw.com

*s/Neville L. Johnson*
Neville L. Johnson
(*Pro Hac Vice* Admission pending)
Adam M. Winokur
(*Pro Hac Vice* Admission pending)

27

**JA054**

JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com
      awinokur@jjllplaw.com

*s/Rodney Smolla*
Rodney Smolla
(*Pro Hac Vice* Admission pending)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorney for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC


Dated: August 8, 2022

**JA055**

## NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation Agent, LLC ("AURA"), hereby declare the following:

1. I am a Plaintiff in the present case, a citizen of California and the United States of America.

2. I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3. I have fully reviewed the foregoing Complaint;

I hereby certify that the matter in controversy in the foregoing Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on 08/05/22.

_____
Lima Jevremović, on my own behalf, and on behalf of Autonomous User Rehabilitation Agent, LLC

29

**JA056**

**CERTIFICATE OF SERVICE**

I hereby certify that Defendant Brittany Jeream Courville is being served with the foregoing

Complaint by hand delivery, addressed as follows:

10 Teak Lane
Princeton, New Jersey 08540

s/Sherri A. Affrunti
Sherri A. Affrunti, Esq.

Dated: August 8, 2022

30

**JA057**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lima Jevremović; Autonomous User Rehabilitation Agent, LLC | BRITTANY JEREAM COURVILLE |

**(b)** County of Residence of First Listed Plaintiff **Los Angeles, California**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Mercer, New Jersey**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road, Bldg. 1800; #1803, 2d Floor., Jackson Ste.,
Yardley, Pennsylvania 19067
Telephone: (267) 392-5842

Attorneys *(If Known)*
Cozen O'Connor, 3 WTC, 175 Greenwich Street, 55th Floor, New York, NY 10172; telephone: 212.883.4924

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☒ 320 Assault, Libel &   Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine   Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability / **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 190 Other Contract | Product Liability / ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -/ ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -/ ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332;

Brief description of cause:
Libel

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: August 8, 2022

SIGNATURE OF ATTORNEY OF RECORD
s/ Sherri A. Affrunti

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**JA058**

Sherri A. Affrunti, Esq. (SBN 017981996)
THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road
Bldg. 1800, #1803, 2d Floor, Jackson Suite
Yardley, PA 19067
Telephone:  (267) 392.5842
Email: sherri@affruntilaw.com

Neville L. Johnson, Esq. (Admitted *Pro Hac Vice*)
Adam M. Winokur, Esq. (Admitted *Pro Hac Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com; awinokur@jjllplaw.com

Rodney A. Smolla, Esq. (Admitted *Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,<br><br>     Plaintiffs,<br><br>          vs.<br><br>BRITTANY JEREAM COURVILLE, an individual,<br><br>     Defendant. | Civil Action No:<br><br>*Document Electronically filed*<br><br><br><br>**AMENDED VERIFIED COMPLAINT FOR:**<br><br>**1.  LIBEL**<br><br>**2.  LIBEL**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Lima Jevremović ("Ms. Jevremović"), an individual with her principal residence in the State of California, and Autonomous User Rehabilitation Agent, LLC, a limited liability company with its principal place of business in the State of Washington ("AURA" or the "Company") (together, "Plaintiffs"), by and through their undersigned counsel, complaining of Defendant Brittany Jeream Courville ("Defendant" or "Courville"), allege as follows:

## PARTIES

1.      AURA is a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300, Bainbridge Island, Washington 98110-2450. AURA operates as a wellness supplements and healthcare solutions software business.  AURA's members reside in the states of California, Colorado, Texas, Florida and Illinois, and in Australia.[1]

2.      Ms. Jevremović, an individual, is the founder and CEO of AURA. She identifies her address as: c/o Neville Johnson, Johnson & Johnson, LLP, 439 North Canon Drive, Suite 200, Beverly Hills, California, 90210 because she and her family have received harassment and threats in connection with the claims in this matter, and because her home address was disseminated (and unknown third parties have attempted to gain entry while the family was home), Ms. Jevremović and her family relocated their residence and hired 24-hour security to guard their home. Ms. Jevremović thus respectfully seeks to avoid providing her personal address in court filings, so she will not be forced to relocate again.

3.      Defendant is an individual who, upon information and belief, resides at 10 Teak Lane, Princeton, NJ 08540.

---

[1] The names of AURA's members have been disclosed in a separate filing with the Court under seal.

2

**JA060**

## NATURE OF THE ACTION

4.      This is an action for defamation in the form of libel in connection with Courville's publications and republications to the Internet of or about Jevremović and AURA. With respect to facts alleged herein on information and belief, Plaintiffs and their undersigned attorneys are informed and believe that those facts are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, because, among other reasons, evidence to support those facts is exclusively in Defendant's possession.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is appropriate to this Court under 28 U.S.C. § 1332 because complete diversity exists amongst the parties and the amount in controversy exceeds the jurisdictional minimum.

6.      Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) because Courville resides in this District and Courville published a substantial number of actionable statements to the Internet from this District.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.      Defendant is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Courville worked at Winston Strawn briefly before she and the firm parted ways over Courville's use of social media. On her LinkedIn profile, she identifies herself as President of the defunct Life Treasures Foundation, Inc., and describes her profession as "Legal Commentary on YouTube/Social Media Law."

8.      In July 2020, Courville began to affiliate herself with the "Free Britney" cause célèbre, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Courville uses variants of the handle "that surprise witness" on her social media accounts. She reports becoming "obsessed" and using her newfound "legal expertise" to

3

interpret the associated law, pleadings, and court opinions and orders. She spread this information online via videos, photos, and text commentary. As the "Free Britney" cause célèbre gained mass media attention, Courville was invited to give interviews as an attorney among the Britney Spears fanatics. Courville received attention, praise, and admiration from strangers in reaction to her publications regarding the Britney Spears litigation.

9. However, as Britney Spears' conservatorship was terminated, Courville began to receive less attention. She looked for other celebrities onto whom to latch and began inventing scandal where none existed. Courville found a celebrity in entertainer Brandon "Bam" Margera ("Margera") and created a scandal concocting ersatz villains out of Ms. Jevremović and her wellness supplements and healthcare solutions software business, AURA.

10. In 2019, Ms. Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA uses technology to scale affordable, high-quality mental health treatment services. The Company supports mental health professionals using the technology to track patient progress of people undergoing mental health treatment, *inter alia,* by recording and analyzing biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, *e.g.*, assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. The Company also produces vitamins/supplements for brain health and mood support.

11. AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch. Through AURA, Ms. Jevremović supplies mental health assistance tools to numerous individuals free of charge in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding

4

**JA062**

the product. To that end, AURA additionally provides services without charge to celebrities, influencers, and persons in the public eye as well as individuals with no public presence as a community social service. Plaintiffs were successful in this regard until Courville began her social media campaign against them.

12.     One such recipient of AURA's free-of-charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles' notorious Skid Row who turned to sex work to fund her addiction. AURA provided $250,000 to be used by Rabb for a year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate Rabb back into society as a productive, healthy member. Rabb was also given the opportunity to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care professionals. Ms. Jevremović personally funded the majority of Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

13.     Sadly, on Sunday, May 9, 2021, staff at the Desert Hope Treatment Center ("Desert Hope") found Rabb unresponsive in her bed and unsuccessfully performed CPR. An AURA employee contacted the Clark County Coroner's Office, requesting information regarding Rabb's death. Desert Hope indicated that Rabb only had Tylenol in her system – a fact verified by a representative of the Clark County Coroner, Dr. Paul Uribe.  Dr. Uribe added that Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors.

14. Celebrity entertainer Margera and his wife, Nicole Boyd-Margera ("Boyd-Margera"), took an interest in AURA in the Spring of 2021. Margera has starred in blockbuster Jackass movies and popular television programs. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addictions over the previous two decades. Because of his background, Margera and Boyd-Margera initially sought to provide their support to Plaintiffs' worthy cause. However, Margera relapsed soon thereafter, and Margera's family approached Ms. Jevremović for intervention assistance.

15. On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed mental disorder. Margera's family and friends implored Ms. Jevremović to serve as Margera's temporary guardian. Ms. Jevremović agreed and took on the responsibility for Margera's care and treatment, effected by court order. Ms. Jevremović was given no control over or insight into Margera's finances. Also, despite the fact that the Ms. Jevremović is statutorily permitted to collect reasonable sums for her services as guardian, Ms. Jevremović has received no compensation whatsoever, directly or indirectly, in association with her status as Margera's guardian.

16. Margera began treatment at a drug rehabilitation facility in Florida. However, Margera left this facility, and his whereabouts were unknown for several weeks while he engaged in risky and self-destructive behaviors consistent with his mental disorder. Margera was found and involuntarily placed in the custody of another drug rehabilitation facility. Ms. Jevremović assisted in helping Margera obtain further treatment in Florida. After the court-ordered guardianship terminated, Margera requested that Ms. Jevremović continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery.

6

**JA064**

17. Margera's guardianship and substance abuse treatment received press coverage. Courville pried into Margera's public records – discovering Ms. Jevremović's involvement – and formulated a conspiracy theory. Courville began publishing videos, photos, and text commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam." On her Instagram account, Courville proudly calls herself a "conspiracy theorist."[2]

18. Courville's theory is that Margera's family, friends, and business partners used a court-imposed guardianship to remove Margera as an obstacle to co-opting his assets. Courville baselessly asserts that Ms. Jevremović is committing and assisting in the commission of criminal acts and that Ms. Jevremović is dishonest and promulgates lies. In formulating conspiracies about Ms. Jevremović, Courville further latched onto the publicity surrounding Rabb, her treatment, and her ultimate death. Courville published videos, photos, and textual commentary in which she falsely accused Ms. Jevremović of criminal acts and dishonesty. Springing from Courville's publication of these false allegations, Courville has inspired a throng of similarly celebrity-obsessed fans to harass, threaten, and attack Ms. Jevremović, her family, and her business.

19. Courville has published to the Internet Ms. Jevremović's social security number, date of birth, home phone number, and family members' addresses, among other pieces of highly personal and sensitive information. Additionally, Courville published information regarding Ms. Jevremović's family – including pictures of her husband and mother-in-law – as well as the identities of Ms. Jevremović's sisters and details of their medical histories. After being besieged

---

[2] Courville published an illustration on or about May 31, 2022, in which a "conspiracy theorist" is defined as "[s]omebody who figures out *the truth* before most people" (emphasis added), and she commented on the illustration with "#FreeBam."

in their home in Washington state by Courville's devotees, Ms. Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

20. Moreover, Courville's defamatory statements of or about Plaintiffs directly interfered with AURA's second round funding, causing potential investors actively involved in funding discussions to retreat. Additionally, Courville's defamatory statements of or about Plaintiffs have interfered with AURA's launch of a new product line of vitamin supplements, directly resulting in order cancellations and the withdrawal of marketing affiliates.

21. Courville has expressly invited the present lawsuit, believing that Ms. Jevremović cannot defend herself because to do so would be prohibitively expensive, stating:

> Lima, if you think you're going to be in a lawsuit with me, I dare you to sue me in a lawsuit because I'm a lawyer. I will pay zero dollars for law services, and you will have to pay lawyers who are at least as smart as me to fight against me, which is not cheap; it is very expensive to hire lawyers who are as smart as me. So, have at it if you motherfucking think that you have a snowball's chance in the goddamn fireplace, but you don't.

Brittany Jeream Courville (That Surprise Witness TV), *Is Bam Free? | Lawyer Reacts*, YouTube (May 18, 2022), https://www.youtube.com/watch?v= 852cOZLBNZA&t=518s&ab_channel=ThatSurpriseWitnessTV. Courville will now receive what she requested.

## ACTUAL MALICE

22. Courville knew and ignored the fact that no evidence demonstrated Ms. Jevremović to be dishonest, and knew and ignored the fact that no evidence demonstrated Ms. Jevremović to be a criminal.

23. Courville had a preconceived story line, *i.e.*, that Ms. Jevremović must be acting improperly, prior to learning any facts regarding Ms. Jevremović, and Courville purposefully twisted and misrepresented information in order to fit her preconceived story line.

24. Courville was aware that her statements of fact were untrue based on their inherent improbability.

8

**JA066**

25. Courville took steps to deliberately avoid learning the truth regarding Ms. Jevremović, despite that such information was available to her.

26. Courville's videos air advertisements from which she personally profits. Thus, Courville is incentivized to publish and disseminate shocking materials, materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during her videos.

27. Courville further solicits and collects donations directly from viewers during her live broadcasts *via* YouTube, and Courville operates a site to solicit donations on gofundme.com. Courville has a Patreon account (an organization that provides users tools with which to fund-raise) in which she has 148 paying subscribers and where she solicits additional funds for in-depth videos on her conspiracy theories. Courville also uses her social media accounts to drive income through the sale of branded merchandise. Courville thus drives her income via defamatory statements.

28. On July 15, 2022, Plaintiffs contacted Courville in writing to demand retraction of defamatory statements. To the extent Courville disclaimed any of her defamation, her attempts were patently pretextual and obviously insincere. On July 22, 2022, Plaintiffs again contacted Courville in writing to identify further defamatory statements and to demand their retraction. No retraction issued.

## FIRST COUNT

### LIBEL

### (By Plaintiff Lima Jevremović)

29. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 28 as though fully set forth herein.

30. On May 30, 2022, Courville published via Instagram the statement:

9

**JA067**

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

31.     This statement is defamatory as it expressly impugns Ms. Jevremović's honesty and is wholly false.

32.     On April 19, 2022, Courville published an image of Ms. Jevremović reading Amanda's cause of death (as per the information obtained by an AURA employee from the Clark County Coroner) from a YouTube video to Instagram with the caption:

> I requested the autopsy report and lima is lying in this video. There was NO evidence of traumatic injury. There was LOTS [sic] of medication in her system (not 'only Tylenol'). The cause of death has nothing to do with 'seizure disorder', but rather cardiac arrhythmia. I've posted on [Instagram]about it.

33.     This is defamatory insofar as it falsely accuses Ms. Jevremović of dishonesty, whereas Ms. Jevremović in fact accurately conveyed the information that the Clark County Coroner had conveyed to AURA.

34.     On April 19, 2022, Courville published photos of Amanda Rabb's "Report of Investigation" record obtained from the Clark County Coroner, and Courville published comments stating:

> Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1. WAYY [sic] more than just Tylenol in her system (including cannibinoids [sic] and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS.

35.     These false statements are defamatory insofar as they impugn Ms. Jevremović's honesty.

36.     On April 19, 2022, Courville published a video of Ms. Jevremović reading Amanda's cause of death (as per the information obtained from the Clark County Coroner) from a YouTube video to Instagram. Courville commented on the video, stating:

10

**JA068**

> So lima from @meetaura BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'. I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie?? #FreeBam #AmandaRabb.

37.     This false statement is defamatory insofar as it impugns Ms. Jevremović's honesty.

38.     On April 3, 2022, Courville published an image on Instagram which purports to list biographical information about Margera, including his putative net worth ($20 Million). Courville commented on the image:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 😳 😳 😳 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂 😂 👀 👀 #FreeBam.

Another commenter states:

> 20 million now, soon to be much less, but it'll all be 'legit,'

to which Courville responds:

> but a certain someone will have fresh lips, Botox, and a BBL watch.

Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Courville's comments here to reference Ms. Jevremović – in fact, people did comment in response who understood the messages to reference Ms. Jevremović.

39.     These statements are defamatory insofar as Courville falsely characterizes Ms. Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such statements are defamatory as they falsely impute a motive to Ms. Jevremović, which most people would find condemnable. Courville further reveals her insincerity with respect to the "conspiracy theory" label and "conspiracy theorist" moniker: a commenter states:

11

**JA069**

Please stop with conspiracy theory that have proof and makes sense. You give us true conspiracy theorist who talk about nonsense with no proof look brilliant😊😊😊😊. Keep up the good fight

and Courville responds with

😂😂😂 I just say it so they can't use that stupid sh[i]t against me. The smart people know when they're looking at evidence in the face. The ones who know, know 👽💗.

40.     Courville thus disclaims language that implies her statements are anything but sincere.

41.     On March 30, 2022, Courville published to Instagram an excerpt of a YouTube video in which Ms. Jevremović and Larry Rabb, Amanda Rabb's father, describe how they managed to transfer Amanda from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Courville states that Amanda's public defender is not supposed to:

help you push your scam conservatorship through.

42.     This statement is defamatory per se insofar as it accuses Ms. Jevremović of a scam with reference to attempting to impose an LPS conservatorship on Rabb; this imputes criminality or at least immorality and is thus defamatory.

43.     On May 7, 2022, Courville published a photo to Instagram picturing Margera's costars from his television show and movies performing a stunt, and Courville captioned the photo:

[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy

And

#FREEBAM.

12

**JA070**

She further published a comment on the photo stating,

> Let the #conspiracytheories roll #freebam.

44. These statements were defamatory as they falsely imply that Ms. Jevremović, as a person Courville repeatedly identifies as responsible for Margera's confinement, is a criminal and engaged in a criminal conspiracy.

45. On May 6, 2022, Courville published a picture of Margera to Instagram, overlayed with an anonymous person's statement criticizing Courville's publications:

> the whole #freebam thing is so weird and i [sic] strongly believe that [Courville] is a conspiracy theorist. if [sic] she was an actual lawyer[,] wouldn't she actually be busy? sorry [sic] i'm [sic] not buying it

Courville published a comment in response:

> I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy. So they're right! #freebam.

46. This statement is defamatory as it implies that Ms. Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy.

47. On May 4, 2022, Courville published an image to Instagram containing mostly text; the text is a republication of a comment previously made by Courville, which of relevance includes:

> . . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in [Margera's] best interest. . . . #freebam SPREAD THE WORD.

48. This statement constitutes defamation insofar as it implies that Ms. Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged

13

**JA071**

in a criminal conspiracy and is attempting to co-opt Margera's assets. Further, Courville encourages her audience to further publish her statements.

49. On May 4, 2022, Courville published an image on Instagram regarding Margera, and a user, "pettyhearst," commented thereupon stating:

> I've been a [Margera] fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge[,] I would at least have peace of mind that there is no malicious intent. But they aren't in charge[;] Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating [Margera's parents].

50. Courville published a reply directly to this statement expressing agreement:

> bingo.

51. This statement is defamatory insofar as Courville affirmed the false statements made by the anonymous commenter, thus adopting those comments as her own. These statements assert that Ms. Jevremović is manipulating persons for her own gain (impugning Ms. Jevremović's honesty) and imply that Ms. Jevremović is not acting in Margera's interest, that Ms. Jevremović is responsible for Rabb's death ("blood on her hands" – in conjunction with Courville's other defamatory statements with respect to Ms. Jevremović and Rabb, this is a reference to Ms. Jevremović allegedly being at fault for Rabb's death), and that Ms. Jevremović has malicious intent.

52. On April 27, 2022, Courville published on Instagram an image showing a digital message sent to her in which Courville is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"). Courville captioned the image

> SUE ME

and published a comment on the image, stating:

> The only facts that were imagined came from Lima Jevremović's lying ass mouth.

14

**JA072**

53. This false statement is defamatory insofar as it impugns Ms. Jevremović's honesty. Courville further published a comment to this image, stating:

> if telling the truth is 'damaging to others' and those others are criminals, SO BE IT.

54. This statement is defamatory insofar as it implies that "others" is Ms. Jevremović and thus falsely implies that she is a criminal (the "others" referenced is clearly a reference to Ms. Jevremović, in context).

55. On April 27, 2022, Courville published on Instagram another image showing a portion of the message sent to her. Courville published a comment associated with the image that reads in relevant part:

> Or is it maybe because the public record doesn't agree with the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??.

56. This statement is defamatory as it impugns Ms. Jevremović's honesty by implying that she fabricated a "fake[,] imaginary tale" to mislead people. In a separate comment, Courville further answers a question about Ms. Jevremović's description of HIPAA's application to Rabb, stating:

> because they lie.

57. This is defamatory as it is false and expressly impugns Ms. Jevremović's honesty.

58. On April 26, 2022, Courville published to Instagram a screenshot showing the "gofundme" donation page for Rabb's treatment, which then indicated that no new donations would be accepted. Courville commented on this photo with the statement:

> Thanks for taking down your fraudulent fundraiser lima!

59. This statement is defamatory as it falsely imputes criminality to Ms. Jevremović, expressly accusing her of fraud.

15

**JA073**

60.     On April 25, 2022, Courville published on Instagram an excerpt from a Complaint previously filed by Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

In response, Courville states:

> the plan is to end his life. I'm convinced of it. #savebam.

61.     This statement is defamatory insofar as it alleges that those involved in "the plan" are seeking to kill Margera; in context with Courville's statements regarding Ms. Jevremović being central to Margera's treatment, one can reasonably infer that Courville is falsely referencing Ms. Jevremović as planning to kill Margera.

62.     On April 25, 2022, Courville published to Instagram a screenshot showing that the "Donate now" button was still present on the "gofundme" donation page for Rabb's treatment. Courville commented, asking Gofundme

> can you return the funds that have been fraudulently collected from donors on this fundraiser?

and stated,

> many people have reported this fraudulent fundraiser and your organization has taken no action.

Elsewhere, Courville states that

> we've reported [fraud] a lot

63.     These statements are defamatory as they falsely accuse Ms. Jevremović of criminal behavior – namely, fraud.

16

**JA074**

64.    On April 19, 2022, Courville posted an image comprising text with the tip line for human trafficking from the National Human Trafficking Hotline, and Courville commented: "#FreeBam." Courville specifically highlighted the phone number and the text stating,

REPORT A TIP with information on potential human trafficking activity.

65.    Courville further added a second photo, depicting a cell phone call to a phone number with five minutes having elapsed, the implication being that Courville had called to report Margera as being trafficked to the National Human Trafficking Hotline. A commenter asks in response:

There [are two] different numbers?!

to which Courville answers:

yeah[,] there's a few[.] I called a different tip line[,] but you can call either one.

66.    This is defamatory because Courville implies that Margera is being trafficked, a criminal act, and in the context of her other statements used in connection with the "#FreeBam" tag, it is clear that she views Ms. Jevremović as central to this effort. In the context of her statement that she has called to report Margera's situation as human trafficking and in light of her explicit instructions to a commenter to call, Courville intends this statement to be understood sincerely.

67.    On April 19, 2022, Courville published an image on Instagram containing a short conversation between Courville and a commenter. The commenter accurately stated:

[Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

68.    As recounted in the discussion of Margera above, he was subject to a guardianship imposed in Arizona, and at no relevant time has a conservatorship been imposed. Nonetheless,

17

**JA075**

Courville invokes her credentials, suggests she holds expertise, again provides an inaccurate interpretation of the law, and solicits viewers for her advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

In response, a commenter remarked:

> Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

Courville, apparently drawing upon her self-avowed lawyerly expertise, explains:

> it's to confuse people so the criminals can keep crim[e-]ing.

69.    This is defamatory insofar as, in the context of discussing Margera, it falsely states effectively that the guardianship system is a criminal tool, and thus by implication that Ms. Jevremović, as Margera's guardian, must be a criminal.

70.    On April 19, 2022, Courville published on Instagram a screenshot of a conversation between unidentified persons regarding Margera; Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker." On April 19, 2022, Courville published on Instagram screenshots of excerpts from a tabloid story about Margera's recovery, with a section of the article highlighted. Courville commented on the screenshot regarding Margera's recovery, in relevant part, by stating: "#FreeBam" and "#EndHumanTrafficking."

71.    These statements are defamatory as they imply that Ms. Jevremović is trafficking Margera. While these statements might ordinarily be readily understood as hyperbole, Courville's repeatedly holding herself out as a legal expert and her repeated emphasis of her use of legal language in its technical sense would reasonably lead a significant portion of her audience to understand the implications of these statements literally.

18

**JA076**

72. On April 18, 2022, Courville published a screenshot of a highlighted excerpt from an article discussing the application of Iceland law and whether Margera's and his wife's marriage is legally recognized. A commenter on this image asked:

where are his parents?

to which Courville responded:

helping the criminals [sic] girl.

73. This statement is defamatory insofar as Courville's constant association of Ms. Jevremović with Margera's treatment naturally leads Courville's audience to understand "girl" in this context to reference Ms. Jevremović; these false statements are defamatory insofar they assert that Ms. Jevremović is a criminal, which she is not.

74. On April 3, 2022, Courville posted a screenshot of an excerpt of a celebrity tabloid article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth"; Courville commented on the photo, saying:

I heard forced rehab is expensive… I learned that from Lima from @meetaura. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😂 #FreeBam.

75. By linking the cost of rehabilitation, as described by Ms. Jevremović, to the supposed depletion of Margera's net worth, Courville is falsely characterizing Ms. Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such a statement is defamatory as it falsely imputes a profit motive to Ms. Jevremović which most people would find condemnable.

76. On March 30, 2022, Courville published to Instagram a screenshot of comments made to Instagram; a commenter asked:

forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

19

**JA077**

Courville responded:

> I mean… that's my impression, so if you're wrong[,] I am too.

77. Courville thereby explicitly adopted the commenter's false statements. Ms. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Ms. Jevremović is exploiting celebrities for money. Such false statements are defamatory as they indicate dishonesty and insofar as people hold low opinions of those who exploit others.

78. On April 4, 2022, Courville published to YouTube a video in which she defames Ms. Jevremović. At 27:39, Courville describes Margera's transfers between treatment facilities and states:

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

79. This statement defames Ms. Jevremović insofar as Courville repeatedly identifies Ms. Jevremović as responsible for Margera's treatment, and insofar as Courville, invoking the authority she commands as a lawyer, describes aspects of Margera's treatment as criminal.

80. On July 15, 2022, Courville published to YouTube a video in which she reacts to Ms. Jevremović's public statements addressing, inter alia, Courville's harassment ("the relentless harassment, leaking all of my private information all over the internet, threats to my family and clients, constantly reporting my social media accounts and businesses and the over 14,000 emails that have cluttered my inbox"). At 05:05 Courville states

> I also know Lima [is] a liar.

81. This is defamatory insofar as Courville expressly impugns Ms. Jevremović's honesty.

20

**JA078**

82. Later in the same video, at 26:08, Courville addresses the discrepancy between Ms. Jevremović's description of Rabb's cause of death and the official autopsy report and states:

> [Ms. Jevremović] can't keep track of her story. And that's what happens when you lie; you have to keep track of the lies you told.

83. This is defamatory insofar as it expressly characterizes Ms. Jevremović's statements as lies.

84. On July 8, 2022, Courville published to YouTube a video. At 6:10, she states:

> I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

85. Courville thus emphasizes that her statements are accurate and factual. At 15:59, Courville describes herself as

> the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation

86. This is defamatory insofar as it characterizes Ms. Jevremović's imposition of a guardianship as human trafficking, a crime. While such statements might ordinarily be susceptible to an interpretation as hyperbole, Courville disclaims hyperbole by use of the term "literal," and she makes clear that if she did not intend for this statement to be taken literally, then she would have been "very explicit that it is my opinion or my belief or my suspicion," and she would "never say [this statement] as if it is a fact if [she didn't] know it to be a fact."

87. Ms. Jevremović's reputation and business endeavors have been negatively impacted, and she has unduly suffered humiliation, emotional distress, anger, embarrassment, sadness, frustration, fear, loss of income, chagrin, severe anxiety, stress, shame, mortification, hurt feelings, sleeplessness, and physical manifestations thereof resulting from Courville's above-described actions. Ms. Jevremović's associated damages are in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

**JA079**

88.     Courville knew or should have known each of these statements to be false at the time the statement was made, and thus, Courville acted with actual malice sufficient to support an award of punitive damages.

89.     Courville intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit herself by gaining more online attention and compensation for more views on her social media publications. Courville made these false statements in a wanton and willful disregard of Ms. Jevremović's rights. Courville knew or should have known at the time that she made the statements that serious harm would arise from Courville's conduct, and Courville, with knowledge of the harm caused, continued such conduct. Courville's outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter her from similar wrongful conduct in the future.

## SECOND COUNT

## LIBEL

### (By Plaintiff AURA)

90.     Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 89 as though fully set forth herein.

91.     On April 27, 2022, Courville published to Instagram an image showing a digital message sent to her in which the message-sender criticizes Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovićh [sic] . . . ever up held [sic] HIPPA [sic]?

Courville responded:

never not once [sic].

92.     This statement is defamatory insofar as it references Ms. Jevremović's work on behalf of AURA, and it asserts that Ms. Jevremović, and by extension, AURA, violate the Health

22

**JA080**

Insurance Portability and Accountability Act ("HIPAA"). Because AURA's products are used in mental health treatment, they must (and do) comply with HIPAA. Courville's statements are defamatory *per se* insofar as they falsely allege that AURA is irresponsible with its client's private information and that AURA does not follow black-letter law. Such statements would damage AURA's esteem and reputation amongst patients, healthcare practitioners, investors, and others, and would lead third parties to think that AURA is incompetent in its business or engages in misconduct in its business operations.

93. On April 27, 2022, Courville republished an image containing another's statements to Instagram regarding Rabb, Margera, and Ms. Jevremović; an anonymous commenter asked:

> Are [Ms. Jevremović and Aura,] using homeless people with addictions to experiment on them for their [YouTube] channel?

and Courville unequivocally affirmed the commenter's statement:

> yes.

94. By affirming the commenter's statement, Courville effectively adopted the statement as her own. This false statement is defamatory as it explicitly states that Ms. Jevremović and AURA are experimenting on homeless individuals, implying that they are doing something inhumane. It further implies that Ms. Jevremović and Aura are dishonest insofar as Courville's statement contradicts Ms. Jevremović's stated reason for providing care to Rabb.

95. On March 31, 2022, Courville published to Instagram an excerpt from a video in which Ms. Jevremović read Rabb's cause of death as a seizure disorder. Courville pauses and adds commentary, including, at 0:10; Ms. Jevremović states:

> Rabb never had seizures prior to being homeless.

Courville comments and states:

> But I think another way of saying that is she never had seizures prior to using AURA.

23

**JA081**

96.     Courville thus seeks to falsely imply that AURA's products caused Rabb's seizures and potentially caused her death.

97.     On March 31, 2022, Courville published on Instagram a photo of Rabb wearing virtual reality headgear and participating in a "Virtual Reality Exposure Therapy Session using AURA." A person commented on the photo with interest in the virtual reality-based treatment, and Courville responded:

> the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool. I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

98.     This statement is defamatory insofar as it falsely states that patients have the AURA system forced upon them as a test-subject; such a statement carries negative implications about AURA as people are generally opposed to being forced to test healthcare treatments.

99.     On April 1, 2022, Courville published an excerpt from a program for a virtual reality conference which included Ms. Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Courville commented on the image:

> Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #RabbRabb.

100.    This statement is defamatory insofar as it characterizes Ms. Jevremović and AURA as experimenting on vulnerable populations whom Ms. Jevremović purportedly views as "problematic" and insofar as it contradicts Ms. Jevremović's stated reasons for working with those suffering from mental health disorders (thereby impugning her honesty); such a characterization is highly offensive and falsely imputes a motive to Ms. Jevremović and to AURA which most people would find condemnable.

24

**JA082**

101.    On March 30, 2022, Courville published another excerpt from a video in which Ms. Jevremović describes the use of Aura products in connection with Rabb's treatment. Ms. Jevremović explains that AURA provides its products at no cost and uses the data collected for research purposes, and Rabb would have the opportunity to serve as a case study. Courville commented on the video:

> Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship. #FreeBam #RabbRabb #InvestigateAURA

102.    These statements are defamatory as they falsely state that Ms. Jevremović and Aura forced Rabb to test AURA products – people are generally opposed to being forced to test healthcare tools. Such a statement negatively impacts AURA's reputation.

103.    On February 22, 2022, Courville published to YouTube a video in which she defames Ms. Jevremović and AURA. At 49:55, Courville falsely states:

> [Ms. Jevremović] forces people by court order to use [AURA's] tools.

104.    This statement is defamatory insofar as it falsely states that Ms. Jevremović on behalf of AURA imposes conservatorships on people as a means to force people to use AURA's tools (from which AURA and Ms. Jevremović would purportedly profit); people will generally understand this statement to be defamatory insofar as forcing guardianships and conservatorships on people for the purpose of generating profits is generally condemnable behavior.

105.    AURA's reputation has been negatively impacted due to Courville's above-described actions; AURA has lost substantial investments, opportunities, and income resulting from Courville's defamation.

106.    Courville intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit herself by gaining more online attention and compensation for more views on her social media publications. Courville made these false

**JA083**

statements in wonton and willful disregard of AURA's rights, with knowledge of their falsity or reckless disregard for whether the statements were true. Courville knew or should have known at the time she made the statements that serious harm would arise from Courville's conduct, and Courville, with knowledge of the harm caused, nevertheless continued such conduct unabashedly. Courville's outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter her from similar wrongful conduct in the future.

107. These false statements expose AURA and its CEO, Ms. Jevremović, to hatred, contempt, and the loss of the good will and confidence felt toward them by others.

108. Furthermore, these false statements have a tendency to injure, and did in fact injure, Plaintiffs' business operations in the addictions recovery and mental healthcare industry, including but not limited to their use of therapist-guided exposure therapy implementing virtual reality technology and telehealth solutions.

109. These statements are entirely false. As a result of Courville's publications, Plaintiffs have suffered reputational harm in an amount to be proved at trial.

110. As a result of Courville's publications, AURA has lost business opportunities in an amount to be proven at trial.

111. Courville's conduct in publishing and republishing the above statements was actuated by actual malice and/or accompanied by a wanton and willful disregard of the effect her statements would have on Plaintiffs' reputations, which foreseeably might be harmed by Courville's republications. Such conduct entitles Plaintiffs to an award of punitive damages under N.J.S.A. 2A:15-5.9, *et seq.*, to both punish and deter Courville's wanton conduct in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment as follows:

1. For general damages according to proof, but not less than $75,001;

2. For compensatory damages according to proof;

3. For special damages for damage to reputations, losses of business opportunities, and losses of investment opportunities according to proof, but not less than the jurisdictional minimum of this Court;

4. For the maximum available punitive damages per Plaintiff per cause of action;

5. For a permanent injunction to remove all statements and publications adjudged libelous;

6. For pre- and post-judgment interest as allowed by law;

7. For costs of suit and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all matters triable.

Respectfully submitted,

_s/Sherri A. Affrunti_

Sherri A. Affrunti, Esq. (SBN 017981996)
THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road
Bldg. 1800, #1803, 2d Floor, Jackson Suite
Yardley, PA 19067
Telephone:  (267) 392.5842
Email:  sherri@affruntilaw.com

_s/Neville L. Johnson_

Neville L. Johnson
(Admitted *Pro Hac Vice*)
Adam M. Winokur
(Admitted *Pro Hac Vice*)

27

**JA085**

JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com
            awinokur@jjllplaw.com


*s/Rodney Smolla*
Rodney Smolla
(Admitted *Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorney for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC


Dated:  June 6, 2023

28

**JA086**

## NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation Agent, LLC ("AURA"), hereby declare the following:

1.      I am a Plaintiff in the present case, a citizen of California and the United States of America.

2.      I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3.      I have fully reviewed the foregoing Amended Complaint;

I hereby certify that the matter in controversy in the foregoing Amended Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on June 6, 2023                          s/Lima Jevremovic

                                                    _____
                                                    Lima Jevremović, on my own behalf, and
                                                    on behalf of Autonomous User
                                                    Rehabilitation Agent, LLC

29

**JA087**

## CERTIFICATE OF SERVICE

I hereby certify that Defendant Brittany Jeream Courville is being served with the foregoing Amended Complaint *via* her counsel of record through the Court's ECF system.

s/*Sherri A. Affrunti*

Sherri A. Affrunti, Esq.

Dated: June 6, 2023

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **LIMA JEVREMOVIC,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**BRITTANY JEREAM COURVILLE,**<br><br>Defendant. | Civil Action No. 22-4969 (ZNQ) (RLS)<br><br>**ORDER** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Brittany Jeream Courville ("Defendant"). (the "Motion," ECF No. 20.)[1]  For the reasons set forth in the accompanying Opinion,

  **IT IS** on this **10th** day of **August 2023,**

  **ORDERED** that Defendant's Motion (ECF No. 20) is hereby **GRANTED** and Plaintiffs' Complaint is hereby dismissed without prejudice; and it is further

  **ORDERED** that Plaintiffs are hereby granted leave to file a Second Amended Complaint within thirty (30) days of the entry of this Order.  A failure to cure the defects noted in the accompanying Opinion may lead to dismissal with prejudice; and it is further

  **ORDERED** that the Clerk is instructed to mark this matter **CLOSED**.

s/ Zahid N. Quraishi   
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[1] Renewed at ECF No. 33.

<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **LIMA JEVREMOVIC,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**BRITTANY JEREAM COURVILLE,**<br><br>Defendant. | Civil Action No. 22-4969 (ZNQ) (RLS)<br><br>**OPINION** |

**<u>QURAISHI, District Judge</u>**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Brittany Jeream Courville ("Defendant"). ("Motion", ECF No. 20.)[1] Defendant filed a Moving Brief in support of her Motion. ("Moving Br.", ECF No. 20-1.) Plaintiffs Lima Jevremovic ("Lima") and Autonomous User Rehabilitation Agent, LLC ("AURA" or "the Company") (collectively, "Plaintiffs") filed an Opposition to Defendant's Motion ("Opp'n", at 22) to which Defendant replied ("Reply", ECF No. 23.)

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion to Dismiss.

---

[1] Pursuant to the Court's instruction, (ECF No. 24), Defendant renewed its Motion on June 13, 2023 (ECF No. 33).

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs initiated the instant action on August 8, 2022, by filing their Complaint. ("Compl." ECF No. 1.)  Although the Complaint alleged that subject matter jurisdiction is proper under 28 U.S.C. § 1332 (Compl. ¶ 5), Plaintiffs failed to adequately allege the citizenship of the plaintiff limited liability company, AURA.  Accordingly, on May 30, 2022, the Court issued an Order to Show Cause why this matter should not be dismissed for lack of subject matter jurisdiction.  (ECF No. 24.)  On June 6, 2023, Plaintiffs filed an Amended Complaint ("Am. Compl.", ECF No. 26) that adequately alleged AURA's citizenship.  Accordingly, the Court withdrew its Order to Show Cause.  (ECF No. 32.)

The Amended Complaint generally alleges defamation in the form of libel in connection with Defendant's publications and republications to the Internet of or about Plaintiffs.[2]  (*Id.* ¶ 4.)  Specifically, it alleges that Defendant is a New Jersey attorney that was licensed in 2021.  (*Id.* ¶ 7.)  In 2019, Lima founded AURA to help individuals suffering through mental health crises— including addiction—using technology to scale affordable, high quality mental health treatment services.  (*Id.* ¶ 10.)  AURA also produces vitamins/supplements for brain health and mood support.  (*Id.*)  AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch.  (*Id.* ¶ 11.)  Through AURA, Lima "supplies mental health assistance tools to numerous individuals free of charge in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product." (*Id.*)  To that end, AURA additionally provides services without charge to celebrities, influencers, and persons in the public eye as well as individuals with no public presence as a community social

---

[2] For purposes of this motion, the Court will accept all facts alleged in the Complaint as true.  *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

2
**JA091**

service. (*Id.*) Plaintiffs were successful in this regard until Defendant began her social media campaign against them. (*Id.*)

One such recipient of AURA's free-of-charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles who turned to sex work to fund her addiction. (*Id.* ¶ 12.) AURA provided $250,000 to be used by Rabb for her rehabilitation to gradually integrate Rabb back into society. (*Id.*) Rabb was also given the opportunity to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care professionals. (*Id.*) Lima personally funded the majority of Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds. (*Id.*) On Sunday, May 9, 2021, staff at the Desert Hope Treatment Center ("Desert Hope") found Rabb unresponsive in her bed and unsuccessfully performed CPR. (*Id.* ¶ 13.) Desert Hope indicated that Rabb only had Tylenol in her system, which was later verified by a representative of the Clark County Coroner, Dr. Paul Uribe ("Dr. Uribe"). (*Id.*) Dr. Uribe added that Rabb's death resulted from natural causes, as well as physical trauma previously endured while abusing illicit substances. (*Id.*) Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors. (*Id.*)

Celebrity entertainer Brandon "Bam" Margera ("Margera") and his wife, Nicole Boyd-Margera ("Boyd-Margera"), took an interest in AURA in the Spring of 2021 and sought to provide their support to Plaintiffs' cause until Margera relapsed in his battle against substance abuse. (*Id.* ¶ 14.) On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed mental disorder. (*Id.* ¶ 15.) Lima took on the responsibility for Margera's care and treatment, effected by court order and agreed to do so free of charge. (*Id.*) During this time, Lima was given no control over or insight into Margera's

3
**JA092**

finances. (*Id.*) Margera began treatment at a drug rehabilitation facility in Florida but left this facility thereafter, with his whereabouts unknown for several weeks while he engaged in risky and self-destructive behaviors consistent with his mental disorder. (*Id.* ¶ 16.) "Margera was found and involuntarily placed in the custody of another drug rehabilitation facility." (*Id.*) After the court ordered guardianship terminated, Margera requested that Lima continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery. (*Id.*)

Margera's guardianship and substance abuse treatment received press coverage. (*Id.* ¶ 17.) Defendant pried into Margera's public records, discovered Lima's involvement, and formulated a conspiracy theory. (*Id.*) Defendant began publishing videos, photos, and text commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam", and included a biography on her Instagram account, calling herself a "conspiracy theorist." (*Id.*) Defendant's theory is that Margera's family, friends, and business partners used a court-imposed guardianship to remove Margera as an obstacle to co-opting his assets. (*Id.* ¶ 18.) Defendant further asserts that Lima is committing and assisting in the commission of criminal acts and that Lima is dishonest and promulgates lies. (*Id.*) "In formulating conspiracies about [Lima], [Defendant] further latched onto the publicity surrounding Rabb, her treatment, and her ultimate death." (*Id.*) Defendant "published videos, photos, and textual commentary in which she falsely accused [Lima] of criminal acts and dishonesty" and inspired a throng of similarly celebrity-obsessed fans to harass, threaten, and attack Lima, her family, and her business. (*Id.*) Defendant's statement also directly interfered with AURA's second round funding, causing potential investors actively involved in funding discussions to retreat and interfered with AURA's launch of a new

product line of vitamin supplements, directly resulting in order cancellations and the withdrawal of marketing affiliates. (*Id.* ¶ 20.)

Defendant knew and ignored the fact that no evidence demonstrated Lima was dishonest or a criminal. (*Id.* ¶ 22.) Defendant was aware that her statements of fact were untrue based on their inherent improbability and took steps to deliberately avoid learning the truth regarding Lima, despite that such information was available to her. (*Id.* ¶¶ 24–25.) Defendant's videos air advertisements from which she personally profits thus incentivizing her to publish and disseminate shocking materials, materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during her videos. (*Id.* ¶ 26.) Defendant further solicits and collects donations directly from viewers during her live broadcasts via YouTube and operates gofundme and Patreon sites on which she accepts donations. (*Id.* ¶ 27.) Defendant also uses her social media accounts to drive income through the sale of branded merchandise. (*Id.*) On July 15, 2022, Plaintiffs contacted Defendant in writing to demand retraction of defamatory statements. (*Id.* ¶ 28.) To the extent Defendant disclaimed any of her defamation, her attempts were patently pretextual and insincere. (*Id.*) On July 22, 2022, Plaintiffs again contacted Defendant in writing to identify further defamatory statements and to demand their retraction, but no retraction was issued.

## II.    <u>JURISDICTION</u>

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

## III.     LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability

6
**JA095**

requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## IV. <u>DISCUSSION</u>

### A. LIBEL AGAINST LIMA

In Count I of the Complaint, Lima alleges a libel claim against Defendant. Lima lists multiple statements made by Defendant that she alleges are defamatory. Specifically, Lima alleges that on May 30, 2022, Defendant published via Instagram a statement that noted: "Lima . . . LIED ABOUT [RABB'S] CAUSE OF DEATH TO MILLIONS of people." (Compl. ¶ 30.) On April 19, 2022, Defendant published an image of Lima reading Rabb's cause of death from a YouTube video to Instagram with the caption: "I requested the autopsy report and lima is lying in this video. There was NO evidence of traumatic injury. There was LOTS [sic] of medication in her system (not 'only Tylenol'). The cause of death has nothing to do with 'seizure disorder', but rather cardiac arrhythmia. I've posted on [Instagram] about it." (*Id.* ¶ 32.) On April 19, 2022, Defendant published photos of Rabb's "Report of Investigation" record obtained from the Clark County Coroner, and stated: "Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1.

WAYY [sic] more than just Tylenol in her system (including cannibinoids and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS."  (*Id.* ¶ 34.)  On April 19, 2022, Defendant published a video of Lima reading Rabb's cause of death from a YouTube video to Instagram, and stated: "So lima from @meetaura BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'.  I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie??"  (*Id.* ¶ 36.)

On March 30, 2022, Defendant published to Instagram an excerpt of a YouTube video in which Lima and Larry Rabb, Rabb's father, describe how they managed to transfer Rabb from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law at which point Defendant states that Rabb's public defender is not supposed to "help you push your scam conservatorship through." (*Id.* ¶ 41.)  On April 3, 2022, Defendant published an image on Instagram which purports to list biographical information about Margera, including his putative net worth ($20 Million) and commented: "According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so . . .but what do I know I'm just a cOnSpIrAcY tHeOrIsT."  (*Id.* ¶ 38.)  On April 27, 2022, Defendant published on Instagram an image showing a digital message sent to her in which Defendant is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"), captioning the image "SUE ME" and further commenting "the only facts that were imagined came from Lima Jevremović's [sic] lying ass mouth."  (*Id.* ¶ 52.)  On April 27, 2022, Defendant published on Instagram another image showing a portion of the message sent to her commented "or is it maybe because the public record doesn't agree with

the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??" (*Id.* ¶ 55.)

Similar posts and comments were posted during this time. On April 26, 2022, Defendant published to Instagram a screenshot showing the "gofundme" donation page for Rabb's treatment, which then indicated that no new donations would be accepted and commented "thanks for taking down your fraudulent fundraiser lima!" (*Id.* ¶ 58.) Lima also alleges that Defendant accused her of fraud (*id.* ¶ 63), implied that Margera was being trafficked (*id.* ¶ 66), and claims that "Lima" is an "alleged trafficker" (*id.* ¶ 70). On April 3, 2022, Defendant posted a screenshot of an excerpt of a celebrity tabloid article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth" and Defendant commented "I heard forced rehab is expensive… I learned that from Lima from @meetaura. Who now has @bam__margera in a forced rehab. WhT [sic] are the chances!! That's just my conspiracy theory lol." (*Id.* ¶ 74.) On March 30, 2022, Defendant responded to a comment that asked, "forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers?" by stating "I mean… that's my impression, so if you're wrong[,] I am too." (*Id.* ¶ 76.) On April 4, 2022, Defendant published to YouTube a video in which she describes Margera's transfers between treatment facilities and states: "honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me." (*Id.* ¶ 78.) On May 4, 2022, Defendant published an image to Instagram containing mostly text; the text is a republication of a comment previously made by Defendant, which of relevance includes: "I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in [Margera's] best interest." (*Id.* ¶ 47.) Lastly, on May 7, 2022, Defendant published a photo to Instagram

9

**JA098**

picturing Margera's costars from his television show and movies performing a stunt, and Defendant captioned the photo "[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy." (*Id.* ¶ 43.) Plaintiffs therefore allege that these statements are defamatory because they imply that Lima is liar, she was financially motivated to force treatment, and was involved in criminal activity such as fraud. (*Id.* ¶¶ 30–85.) Defendant, on the other hand, argues that these statements are not actionable because they are protected opinions rather than defamatory statements. (Moving Br. at 8.)

Whether a statement is defamatory is a matter of law to be determined by the court. *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 426 (1999).[3] To establish a prima facie case of defamation, whether denominated libel or slander, a plaintiff must show that defendant communicated a false statement about plaintiff to a third person that harms plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff. *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 164–65 (1999). Plaintiffs' burden of proof for each of the elements of defamation is by clear and convincing evidence. *Rocci v. Ecole Secondaire Macdonald-Cartier*, 165 N.J. 149, 159 (2000); *Lynch* 161 N.J. at 165. A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010). "To determine if a statement has a defamatory meaning, a court must consider three factors: '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" *Id.* (quoting *DeAngelis v. Hill*, 180 N.J. 1, 14 (2004)).

In considering verifiability, New Jersey courts have drawn a line between opinions, which are not actionable, and statements of fact, which are. "A statement's verifiability refers to whether

---

[3] Federal courts apply state substantive law when sitting pursuant to diversity jurisdiction. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

it can be proved true or false." *Lynch*, 161 N.J. at 167. A statement is actionable if it "'suggested specific factual assertions that could be proven true or false.'" *Leang*, 198 N.J. at 585 (quoting *DeAngelis*, 180 N.J. at 14). Statements of opinion are usually not actionable, as opinions "'are generally not capable of proof of truth or falsity because they reflect a person's state of mind[.]'" *NuWave Inv. Corp. v. Hyman Beck & Co.*, 432 N.J. Super. 539, 553 (App. Div. 2013) (quoting *Ward*, 136 N.J. at 531), *aff'd*, 221 N.J. 495 (2015). But an opinion is actionable if "it implies 'reasonably specific assertions' of 'underlying objective facts that are false.'" *Id.* (quoting *Ward*, 136 N.J. at 531).

"Loose, figurative or hyperbolic language is not likely to imply specific facts" and thus is generally not actionable. *Lynch*, 161 N.J. at 167–68. Similarly, "epithets, insults, name-calling, profanity and hyperbole" are not actionable. *DeAngelis*, 180 N.J. at 14. "The higher the fact content of a statement," the more likely it is actionable. *Lynch*, 161 N.J. at 168 (internal quotation marks and citation omitted).

Statements "falsely attributing criminality to an individual [are] defamatory as a matter of law." *G.D. v. Kenny*, 205 N.J. 275, 293 (2011) (internal citation omitted) (flyers referring to the plaintiff as a convicted drug dealer were defamatory); *see also Lawrence v. Bauer Publ'g & Printing*, 89 N.J. 451, 456, 459–60 (statement that two men might be charged with forgery was defamatory), *cert. denied*, 459 U.S. 999 (1982). "Yet, this does not mean that using a word that is also the name of a crime necessarily accuses the person of committing that crime." *Roberts v. Mintz*, Civ. No. 1563-14T4, 2016 WL 3981128, at *6 (N.J. Super. Ct. App. Div. July 26, 2016). Rather, the word must be considered in context, focusing on "the listener's reasonable interpretation" of the statement. *Leang*, 198 N.J. at 585. Context includes "the identity of the speaker and the targeted audience[,]" *Senna v. Florimont*, 196 N.J. 469, 492–93 (2008), or "the

section of a newspaper in which an article appears" *Lynch*, 161 N.J. at 168 (internal citation omitted).

Here, context is critical in deciphering unactionable opinion versus defamatory speech. Defendant's statements were delivered by a social media influencer on Instagram, and occasionally, YouTube. These are forums that welcome opinions and candor. *See, e.g.*, *Sciore v. Phung*, Civ. No. 19-13775, 2022 WL 950261, at *11–12 (Mar. 30, 2022) (holding that "statements made on internet forums are made in a unique context in that they are generally informal and unedited. This context leads readers to give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts" and further noted that since the defendant's allegedly defamatory statements were made on "an Internet forum specifically designed for the publication of crowd-sourced opinionated" statements, this "conveys a strong signal to a reasonable reader that the statements are defendant's opinion…the allegedly defamatory statements here do not overcome that context and are not actionable.") (quotations and citations omitted); *see also Valley Elecs. AG v. Polis*, Civ. No. 21-2108, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) (finding as relevant context for affirming dismissal of defamation claim as protected opinion, fact that statements were made in Instagram comments because they "used media that are typically regarded by the public as . . . vehicles for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter") (quotations and citation omitted); *Pelkowski v. Hovermann*, Civ. No. 20-1845, 2021 WL 9032222, at *5 (E.D.N.Y. Sept. 9, 2021) ("The defamatory statements [plaintiff] claims defendants made first appeared on the widely popular social media website Instagram, a context which weighs in favor of a finding that the statements were opinion. Numerous New York courts have expressed that communication appearing on social media and other internet websites are distinct from that which

appears in print media such as newspapers and magazines" noting that the suggestion of opinion "is further bolstered by the fact that it appears in a social media post featuring a string of hashtags, colorful emojis, and snarky writing"); *Rapaport v. Barstool Sports, Inc.*, Civ. No. 18-8783, 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021) ("apparent statements of fact may assume the character of statements of opinion . . . where comments are made on free-wheeling internet fora, such as blogs or social media sites, which courts have generally found to be a persuasive factor in holding that a statement would be understood by readers as reflecting the author's opinion.").

In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background. Additionally Defendant's profile picture is a photograph of her wearing a pink fuzzy ear headband and tie-dye shirt, and includes in her Instagram biography that she is a "Legal Edutainer (not legal advice)". (Compl. ¶ 84.) *See Roberts*, 2016 WL 3981128, at *6 (dismissing defamation claim because "defendant made the[ defamatory] statements under the heading, 'Rants and Raves,' signaling to any reader that what followed were the author's personal viewpoints.") Defendant frequently uses hashtags and emojis in her writing (*id.* ¶¶ 34–74) and although Plaintiffs argue that Defendant holds herself out as a legal expert, Defendant disclaims that her opinions are "not legal advice." *See, e.g., Perez*, 2013 WL 5770734, at *5.

Moreover, the specific language used in the context of the allegedly defamatory statements signals that Defendant is merely expressing her opinions and theories. Defendant repeatedly refers to her opinions—including the relationship between Lima and Margera—as mere "theories." (Compl. ¶¶ 38–39, 43, 45, 74.) Indeed, Defendant continually characterizes herself as a "conspiracy theorist," (*id.* ¶¶ 17, 38–39, 43, 45) and attaches disclaimers to her self-proclaimed theories making clear they are her beliefs. (*See, e.g., id.* ¶ 38 ("what do I know I'm just a conspiracy

13
**JA102**

theorist"); *id*. ¶ 45 ("I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy."); *id*. ¶ 47 ("I…believe[] [Margera]'s constitutional rights have been violated."); *id*. ¶¶ 50–51 (according to Plaintiffs' allegations, adopting statement that "I personally believe conservatorships are never the answer and forced treatment is harmful"); *id*. ¶ 74 (referring to Margera's court-ordered involuntary rehabilitation as "a forced rehab" and stating that such characterization is "just my conspiracy theory."); *id*. ¶ 76 (responding to Instagram commentator's theories regarding forced treatment, and stating, "I mean…that's my impression."); *id*. ¶ 78 (referring to theory regarding forced treatment, and stating, "some of it looks criminal . . . but what do I know.  It looks criminal to me.")).  Plaintiffs' allegations similarly acknowledge Defendant making clear that when she refers to her theories, she is consistently referring to "my opinion or my belief or my suspicion" (*id*. ¶ 84), "my impression" (*id*. ¶ 76), "my [] theory" (*id*. ¶¶ 45, 74), what "I [] believe[]" (*id*. ¶¶ 47, 49) or what was "alleged."  (*Id*. ¶ 70.)

The Third Circuit has held that "[i]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."  *McCafferty v. Newsweek Media Grp., Ltd.,* 955 F.3d 352, 356 (3d Cir. 2020) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).  In *McCafferty*, our appellate court found that the defendant's alleged defamatory statements were not actionable because they were disclaimed as the defendant's "political philosophy."  Similarly here, Defendant frequently disclaims her commentary as a conspiracy *theory*, refers to herself as a conspiracy *theorist*, uses signals such as "I believe" and "I think", and makes commentary on her social media page which is titled "Legal Edutainer", all of which point to unactionable opinions rather than defamatory statements.  Accordingly, the Court will dismiss Count I without prejudice.

## B.    LIBEL AGAINST AURA

In Count II of the Complaint, Plaintiff AURA alleges a libel claim against Defendant. Specifically, Plaintiffs allege that Defendant questioned Lima's ability to uphold Health Insurance Portability and Accountability Act ("HIPAA") privacy (Compl. ¶ 91), commented that "[she] think[s] . . . [Rabb] never had seizures prior to using AURA" (*id.* ¶ 95), and that "Rabb was forced to [undergo AURA's] treatment under the threat of going to prison" (*id.* ¶ 97). On April 1, 2022, Lima published an excerpt from a program for a virtual reality conference which included Lima and her then-company, which worked with virtual reality in jail and prison settings and commented that it "seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic.'"  (*Id.* ¶ 99.)  On March 30, 2022, Defendant expressed that "Rabb did not consent to being used as a research object.  She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP.  This same woman petitioned to put Bam into a conservatorship." (*Id.* ¶ 101.)  Lastly, Defendant stated on a Youtube vide that "[Lima] forces people by court order to use [AURA's] tool."  (*Id.* ¶ 103.) Plaintiffs argue that these statements and comments are defamatory because it implies Lima violates the HIPAA laws, AURA's products caused Rabb's seizures, patients were preyed upon and forced into AURA against their will, and AURA imposes conservatorships on people as a means to force people to use AURA's tools.  (*Id.* ¶¶ 92, 96, 98, 100, 104.)

In her Motion, Defendant argues that these statements, to the extent that they are true, are not defamatory.  (Moving Br. at 20.)  For example, "the Complaint readily alleges that AURA provides these tools to individuals such as Ms. Rabb 'free of charge' to 'develop a viral, word-of-mouth buzz surrounding the product.'"  (*Id.* (quoting Compl. ¶ 11.))  Defendant also argues that "Plaintiffs therefore do not dispute that AURA was allowing Rabb the use of this treatment, which

was only in its initial round of funding as a marketing tool on their Internet presence. (*Id.* (citing Compl. ¶¶ 93, 97.) Lastly, Defendant argues that the majority of the alleged defamatory statements were not "of and concerning" Plaintiffs, and are therefore unactionable. (*Id.* at 20.)

Defendant is correct in pointing out that truthful statements of facts are not defamatory. *See Higgins v. Pascack Valley Hospital*, 158 N.J. 404, 427 (1999) (holding that statements regarding an investigation of an employee were not defamatory because they did not attack her reputation, but only stated the facts). Thus, to the extent that any of these statements are true, they are not actionable. However, the veracity of Defendant's statements is not something for the Court to decide at this stage in the litigation. Count II nonetheless fails to state a claim for the same reasons as Count I. Namely, Defendant's statements, as pled, evince Defendant's opinions rather than defamatory statements. Defendant was making these statements on an account titled "Legal Edutainer" and most importantly, Defendant signals that these statements are her opinion by using words such as "I think" and "it seems." *See McCafferty,* 955 F.3d at 356 ("[i]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."). Accordingly, Count II will also be dismissed without prejudice.

## C.   ACTUAL MALICE

Plaintiffs' claims further fail because they did not sufficiently plead actual malice. To show defamation, a public figure—even if just a "limited-purpose public figure" like Plaintiffs— must show that the publisher acted with "actual malice." *McCafferty,* 955 F.3d at 359 (citing *American Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007). The Court agrees with the parties that the actual malice standard applies as Plaintiffs are limited-purpose public figures as they injected themselves into the public sphere by soliciting media

attention via an intensive public relations campaign regarding their rehabilitation treatment and treating high profile celebrities such as Margera.[4] (*Id.* ¶¶ 11, 14.) "Actual malice" is a term of art that does not connote ill will or improper motivation. Rather, it requires that the publisher either know that its article was false or publish it with "reckless disregard" for its truth. *McCafferty,* 955 F.3d at 359. The First Amendment requires this demanding standard. *Id.* (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Accordingly, Plaintiffs must plead actual malice.

Defendant does not admit that she "serious[ly] doubt[ed]" the truth of her statements or knew that they likely contained false statements. *Id.* (citing Restatement (Second) of Torts, § 580A cmt. d (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968))). "Thus, to show actual malice, [Plaintiffs] must use circumstantial evidence." *Id.* (citing *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 437 (Pa. 2015)). Critically, it is not enough for purposes of actual malice to plead that a defendant published statements "without fact-checking, without investigation, without interviewing those involved, and with no regard for accuracy." *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017). It is equally inadequate to allege that a defendant had bad motives or "ill will" towards plaintiff. *Jorjani v. New Jersey Inst. of Tech.*, Civ. No. 18-11693, 2019 WL 1125594, at *4 (D.N.J. Mar. 11, 2019). Nor can a plaintiff rely on "a bare conclusory assertion that [a defendant] 'knew and/or reasonably should have known that the statement was false.'" *Darakjian v. Hanna*, 366 N.J. Super. 238, 248 (App. Div. 2004). Instead, Plaintiffs need to plead sufficient facts to plausibly allege that Defendant "actually doubted the veracity" of her statements." *Lee*, 710 F. App'x at 560. In other words, the complaint must "allege sufficient particularized facts to suggest that . . . [the statement] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement." *Darakjian*, 366 N.J.

---

[4] Plaintiffs even reserve a section of their Complaint for pleading actual malice. (Compl. ¶¶ 22–28.)

Super. at 248. This high bar is purposeful as the actual malice standard reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co.*, 376 U.S. at 270; *see also Darakjian*, 366 N.J. Super. at 248 ("To permit a defamation action [regarding matters of public concern] to survive on the basis of a mere allegation of knowledge of falsity or reckless disregard affords insufficient breathing space to the critical rights protected, in the public interest, by the First Amendment.").

Plaintiffs claim that Defendant acted with actual malice because she ignored evidence that demonstrated Lima's honesty and clean criminal background, had a preconceived storyline, was aware that her statements were untrue, and took steps to deliberately avoid learning the truth regarding Lima. (Compl. ¶¶ 22–25.) These statements are bare and conclusory, and New Jersey courts have consistently dismissed defamation cases where the plaintiff only made bare conclusory allegations regarding actual malice. *See Darakjian*, 366 N.J. Super. at 246 (reversing lower court and dismissing defamation claim for failure to plead actual malice where "plaintiff has pled no facts tending to support her assertion that the offending article was published with an awareness that the statements reported were false" where plaintiff alleged only "a bare conclusory assertion that the press defendants 'knew and/or reasonably should have known that the statement…was false,' with no other factual reference to lend support to the contention," this is insufficient to sustain a claim of actual malice); *Jorjani*, 2019 WL 1125594, at *5 (same); *see also Pace v. Baker-White*, 850 F. App'x 827, 832 (3d Cir. 2021) ("conclusory allegations are insufficient" to establish actual malice at the pleading stage, such as allegations that defendant "had knowledge of, or acted in reckless disregard as to the falsity of the matter they communicated." Rather, "[a]t the pleading

stage, a public figure, like [plaintiff] must allege *facts* to support an inference of actual malice.") (emphasis in original).

"The actual malice standard is not satisfied by proof of even 'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.'" *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 498 (E.D. Pa. 2018) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989)). Rather, "'actual malice' requires that 'the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *St. Amant*, 390 U.S. at 731). Plaintiffs do not point to any facts—circumstantial or direct—that demonstrates Defendant entertained any serious doubts about the veracity of the statements she made. *See Nothstein v. United States Cycling*, 499 F. Supp. 3d 101, 126 (E.D. Pa. 2020). Even if Defendant did not do enough to substantiate the statements prior to making them on social media, she is not liable for defamation because "mere proof of failure to investigate, without more, cannot establish" such serious doubts as to the truth of the publication. *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1972)). "Actual malice focuses on [Defendant's] attitude towards the *truth*," not towards the plaintiffs themselves. *McCafferty,* 955 F.3d at 360 (citing *DeMary v. Latrobe Printing & Publ'g Co.*, 762 A.2d 758, 764 (Pa. Super. Ct. 2000)) (emphasis in original). In sum, Plaintiffs do not plead facts that suggest actual malice. Accordingly, the Court will grant Defendant's Motion to Dismiss.

## V.    **CONCLUSION**

For the reasons stated above, the Court will GRANT Defendant's Motion to Dismiss. Plaintiffs will be given thirty (30) days to file a Second Amended Complaint. Failure to cure the defects noted in this Opinion may lead to dismissal with prejudice. An appropriate Order will follow.

Date: **August 10, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com


Neville L. Johnson, Esq. (*Pro Hav Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com

Rodney A. Smolla, Esq. (*Pro Hav Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,<br><br>            Plaintiffs,<br><br>                  vs.<br><br>BRITTANY JEREAM COURVILLE, an individual; PREM BENIPAL, an individual; and THAT SURPRISE WITNESS LLC, a New Jersey limited liability corporation.<br><br>            Defendants. | Civil Action No: 3:22-cv-04969-ZNQ-RLS<br><br>*Document Electronically filed*<br><br><br>**VERIFIED SECOND AMENDED COMPLAINT FOR:**<br><br>**1. LIBEL**<br><br>**2. LIBEL**<br><br>**3. INVASION OF PRIVACY – INTRUSION UPON SECLUSION**<br><br>**4. INVASION OF PRIVACY – FALSE LIGHT** |

**JA110**

**5. DOMESTIC VIOLENCE ACT—HARASSMENT (N.J.S.A. § 2C:25-19(a)(13))**

**6. DOMESTIC VIOLENCE ACT—CYBER-HARASSMENT (N.J.S.A. § 2C:25-33-4.1)**

**7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**8. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**9. UNFAIR COMPETITION**

**10. UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

Plaintiffs Lima Jevremović ("Jevremović"), an individual with her principal residence in the State of California, and Autonomous User Rehabilitation Agent, LLC, a limited liability company with its principal place of business in the State of Washington ("AURA" or the "Company") (together, "Plaintiffs"), by and through their undersigned counsel, file this Second Amended Complaint against Defendant Brittany Jeream Courville ("Courville") and Defendant Prem Benipal ("Benipal") (collectively "Individual Defendants"), and Defendant That Surprise Witness TV LLC (the "Entity Defendant") (all collectively, "Defendants"), on the basis of libel[1] and additional causes

---

[1] Plaintiffs respectfully disagree with the Court's finding that no libel claims have been stated. In part to preserve the issue for appeal, Plaintiffs replead and amended the libel claims, given that "if plaintiff simply drops the dismissed claim

2

**JA111**

of action for harassment, cyber-harassment, intentional/negligent infliction of emotional distress, and unfair competition, arising from the conduct of Defendants.

<b><u>STATEMENT OF THE CASE</u></b>

This action arises out of the conduct of Courville, in concert with Defendant Benipal, and the Entity Defendant to weaponize the social media handle "That Surprise Witness" on various forms of social media in a concerted campaign to bring down and "cancel" Jevremović and to destroy AURA's business, vowing to try "to stop [AURA] before it even gets off the ground."[2] More recently, the Defendants began to pivot towards a more dangerous campaign of cyber-harassment and doxing, with Courville promising that her activities will continue or worsen until Jevremović drops this very lawsuit.[3]

Defendants, in a concerted and premeditated effort to build on the worst trends in online harassment and doxing, have courted the forces behind Q-Anon[4], and have resorted to implementing the use of non-public, HIPAA protected video footage of Jevremović's family

---

and does not attempt to replead, the claim will be deemed waived and plaintiff will not be able to raise the original dismissal of the cause of action on appeal." Federal Civil Procedure Before Trial (Rutter Group 2023). Plaintiffs continue to strongly believe that they properly stated claims for libel in the Complaint, and Plaintiffs attempt to amend Plaintiffs' libel claims in a way that will make this more apparent, which Plaintiffs will further argue in the event that Defendants file a new motion to dismiss. In addition, Plaintiffs plead new, additional facts which, even accepting this Court's prior findings, constitute proper libel claims.

[2] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[3] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39, Courville speaking to/regarding Jevremović: "If you're gonna sue, and this goes to anybody out there thinks they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it and it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny–not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…"

[4] Courville has recently been working on projects with noted Q-Anon leader Liz Crokin, *See* https://www.slaveprincess.com/credits (Accessed August 31, 2023). Crokin has been described as "an early embracer of the QAnon conspiracy theory, which alleges the world is run by a shadowy cabal of Satan-worshipping pedophiles.") https://thehill.com/homenews/campaign/3765836-trump-hosts-mar-a-lago-event-with-prominent-qanon-pizzagate-conspiracy-theorist/ (Accessed September 6, 2023).

3

<b>JA112</b>

members—and released private materials such as Jevremović's home address and social security number, her mother's home address, and countless other private photographs and details to intimidate and terrify Jevremović, and to gain clicks and exposure for the "That Surprise Witness" brand.

Initially, one aspect of Courville's campaign began in 2022 as a misguided attempt to "#FreeBam", based on a misunderstanding that Brandon Margera ("Bam" as he is termed by fans, or hereinafter, "Margera") was somehow being controlled or manipulated by Jevremović for her profit. It didn't matter to Courville that Jevremović received no compensation whatsoever for her work in attempting to assist Margera in fighting his battle with addiction.

Back then, Margera's family and friends were united in participating in his care— he was reconciling with his wife and spending time with his son. Positive influences in Margera's life like Steven Glover (better known as Steve-O), Johnny Schillereff and Brandon Novak, who had successfully found sobriety, were helping him get his career back on track and visiting with him often. Unfortunately, when Courville's early "#FreeBam" posts started gaining some online interest, unsavory characters slithered into Margera's circle, including Vinny Beedle[5] ("Beedle") and Brian Pingor ("Pingor") (an attorney who bragged about meeting Margera while they were both in rehab together). Beedle and Pingor befriended Margera at a fragile time and introduced him to Courville's toxic #FreeBam movement—with no motivation but to keep Margera too intoxicated to notice they were maxing out his credit cards and selling stories about him to TMZ. They knew if Margera stayed sober, there would be no benefit to them, so they tilted Bam towards Courville's toxicity and away from the friends and family who cared for him.

---

[5] https://twitter.com/VINNYBEEDLE (Accessed September 5, 2023).

4

**JA113**

Yet, Courville has been untroubled by the fact that there was nothing to "#FreeBam" from, except court orders arising from Margera's arrests that arose from the dangerous fight that Margera is having with addiction. Instead of grappling with the complicated realities of Margera's fight with substance abuse, Courville elected to make Jevremović and AURA into straw man villains. Courville knew that Jevremović-as-villain would generate more views for her channel and followers, without regard for the effect her campaign against Jevremović would have on Margera.

Recently, as Courville's off-kilter campaign has increasingly shifted towards a skewed personal vendetta against Jevremović, Margera has become an unfortunate casualty of Courville's online firebombing of all things associated with Jevremović and AURA. Accordingly, Margera's substance abuse issues have escalated and led to him being arrested twice in the past two months.[6] Courville has been complicit in using Margera, abetting him in getting high and drunk before coming on her YouTube show, angling to get Margera to say negative things about Jevremović and AURA (to contradict the positive things that Margera had said about Jevremović while Margera was sober). Courville has shown complete disregard for whether her efforts could derail Margera from a year-long attempt at sobriety.

At the same time, Courville's "#FreeBam" movement has been losing viewership and online followers, where it is becoming increasingly clear that the movement was nothing but a publicity ploy to drum up viewers and followers, that had nothing to do with the actual well-being of Margera or his family. Losing her grasp on viewership and followers on her social media channels, Courville has resorted to spiraling ever deeper into an unhinged obsession with

---

[6] Margera was arrested on August 9, 2023, for charges relating to Public Drunkenness and Engaging in Fighting. *See* https://www.nbcphiladelphia.com/news/local/jackass-star-bam-margera-arrest-radnor-hotel/3621538/#:~:text=Professional%20skateboarder%20and%20star%20of,to%20a%20law%20enforcement%20source (Accessed September 6, 2023). Margera's August arrest came just two weeks after an incident where he was charged with assault and making terroristic threats after a fight with Margera's brother. (*Id.*)

destroying Jevremović. Courville's panopticon of terror has reached into every conceivable cranny of Jevremović's family and personal life, destroyed her business, and even driven her and her family from their homes.

At the same time, Courville has effectively frozen investment in AURA and forestalled further development of AURA's new health-based business, even while simultaneously participating in the online health business "Giddy" as a contributor.[7] As such, Courville's conduct has the perverse effect that potential investors interested in a health start-up like AURA would perhaps now choose to invest in Giddy, rather than AURA.

Courville is nothing if not savvy about how to weaponize social media, and recent months have revealed a turn towards the depths of cyber-harassment and doxing in efforts to bring about real harm to Jevremović—an increasingly desperate attempt to keep her falling viewership and followers afloat at any cost, and to scare Jevremović into dropping this lawsuit.[8]

This includes publishing a video that urges Courville's followers to "make some noise," after arming her followers with Jevremović's mother's home address, phone number, and airing a humiliating mental health crisis video—a video that Oklahoma authorities have indicated should not have been available to the public.[9] As a result of Courville's doxing campaign, Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Courville to dig into Jevremović's mother's personal life to harass her and make calls to her employers.[10]

---

[7] https://getmegiddy.com/BJ_Courville; https://getmegiddy.com/BARE/BJ_Courville (Accessed September 5, 2023).
[8] June 27, 2023 YouTube Video: https://www.youtube.com/watch?v=Vh6j4YHIxoE (Accessed September 7, 2023).
[9] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). The Oklahoma police department from which this video footage was obtained has confirmed that this footage is not public information and Courville should not have been able to obtain it, and they have launched an on-going investigation into how Respondent was able to obtain these videos.
[10] Although Courville's release of private information is coupled with a disclaimer that such information should not be used to contact the people in the video, this disclaimer is disingenuous when combined with urgings that incite Courville's followers to "make some noise" in tandem with the release of the private information. The same video insists that anyone could get the same bodycam footage that Courville released; however, when contacted to inquire how the HIPAA

6

**JA115**

All the while, Courville has pretended her statements are not to be taken seriously, all the while winking and signaling to her followers that she means every word. Indeed, Courville has revealed that she is deliberately labelling herself a "conspiracy theorist", only so that her targets cannot use Courville's false statements "against her"[11], as shown below:



On numerous occasions, Courville has confirmed that her false statements of fact are a wolf in sheep's clothing (or a wolf in pink bunny ears)—hiding under a "conspiracy theorist" moniker as a shield to enable deeply dangerous false statements that are actually intended to be seen as true, and thus, are truly harmful.[12] Her followers tend to believe many of these Courville's statements have extra weight because Courville has often touted her

---

protected video had been obtained, the police department confirmed that such video should not have been publicly available and has launched an investigation into the release of that footage.

[11] https://www.instagram.com/p/Cb5b59wFxIg/?img_index=1 (Accessed September 8, 2023.)

[12] *Cf.* Court's August 10, 2023 Order on MTD, Jevremovic v. Courville, Dkt. 22-cv-4969 (ZNQ)(RLS) at 14 (August 10, 2023 (the "Order").

7

**JA116**

background as a lawyer, and she has made numerous statements based on her "education, knowledge, and experience."[13] Importantly, many of Courville's most serious false and misleading accusations about Jevremović have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata."[14] Instead, on her GoFundMe page, Courville describes herself as a "lawtuber and independent journalist" and has titled her fundraising campaign the "Facts Ain't Defamation Fund"—which reveals that she releases false information as fact.[15]

Frighteningly, Defendants have demonstrated that the "That Surprise Witness" team knows no limits, including using fake pornography to create public humiliation and shaming, as when Defendants published a photograph/link[16] falsely suggesting that Jevremović had an OnlyFans[17] page—a profile page which links to pornographic films and photographs that are not Jevremović. As recently as August 8, 2023, Courville's "@thatsurprisewitness" handle on Instagram hosted a post on a moderated comments thread that included Jevremović's home address, which resulted in Jevremović's needing to relocate and go into hiding for a third time since Courville's campaign began.[18] Drones were dispatched to Jevremović's home and strangers began to appear near her front yard, lurking inexplicably, almost immediately after this information being released on Courville's Instagram.[19] At the same time, followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise"

---

[13] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)

[14] *See* https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); *see also* https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); Cf. Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

[15] https://www.gofundme.com/f/facts-aint-defamation-fund (Accessed September 9, 2023.)

[16] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)

[17] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

[18] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

[19] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

8

**JA117**

at Courville's urging, including on one of Courville's posts featuring non-public bodycam footage of Jevremović's mother and Jevremović's sister during a mental health emergency:[20]



As Courville's increasing acceptance of new levels of dangerous online doxing and cyber-harassment has escalated, Jevremović has been left no choice but to seek a restraining order to protect her personal safety in California (*See* Exhibit 1, Temporary Restraining Order) and forced to bring the additional claims alleged herein to attempt to preserve Jevremović's business, and any last vestiges of her personal safety, and to preserve the hope of a normal life.

## **PARTIES**

1.      AURA is a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300, Bainbridge Island, Washington 98110-2450, and with no member domiciled in New Jersey.[21] AURA operates as a wellness supplements and healthcare solutions software business.

2.      Jevremović, an individual, is the founder and CEO of AURA. She identifies her address as: c/o Neville Johnson, Johnson & Johnson, LLP, 439 North Canon Drive, Suite 200,

---

[20]https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA==
(Accessed September 6, 2023).
[21] *See* Docket Nos. 28, 39.

9

Beverly Hills, California, 90210 because she and her family have received harassment and threats in connection with the claims in this matter, and because her home address was disseminated (and unknown third parties have attempted to gain entry while the family was home), Jevremović and her family relocated their residence multiple times and hired 24-hour security to guard their home. Jevremović thus respectfully seeks to avoid providing her California address in court filings, so she will not be forced to relocate yet again.

3. Defendant Brittany Courville is an individual who resides at 10 Teak Lane, Princeton, New Jersey, 08540, and operates the various "That Surprise Witness" social media channels, and formed the Entity Defendants.

4. Defendant Prem Benipal is an individual who resides at 10 Teak Lane, Princeton, New Jersey, 08540, and has financially supported Courville's activities on her various "That Surprise Witness" social media channels—and has himself appeared on the "That Surprise Witness" podcasts with Defendant Courville, and is involved with the operations of the Entity Defendants.

5. Defendant "That Surprise Witness TV LLC" was formed in New Jersey, under file number 450708640, on September 30, 2021, to carry out the activities of Courville and Benipal on the various "That Surprise Witness" social media outlets.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is appropriate to this Court under 28 U.S.C. § 1332 because complete diversity exists amongst the parties and the amount in controversy exceeds the jurisdictional minimum.

7. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) because Defendants reside in this District and published a substantial number of actionable statements to the Internet from this District.

10

**JA119**

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.  Defendant Courville is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Courville worked at Winston Strawn briefly before she and the firm parted ways over Courville's use of social media. On her LinkedIn profile, describes her profession as "Legal Commentary on YouTube/Social Media Law."

9.  At all relevant times, Defendant Benipal has provided financial support and acted as a *de facto* producer for various "That Surprise Witness" social media channels—and has himself appeared on the "That Surprise Witness" YouTube with Defendant Courville on numerous occasions and personally made false or misleading statements regarding Jevremović.[22]

10.  Both Individual Defendants have, on information in belief, acted in coordinated efforts to carry out the business of the Entity Defendant.

11.  In July 2020, Courville began to affiliate herself with the "Free Britney" movement, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Courville uses variants of the handle "That Surprise Witness" on her various social media accounts. Courville reported becoming "obsessed" and using her newfound "legal expertise" to interpret the associated law, pleadings, and court opinions and orders. She spread this information online via videos, photos, and text commentary. As the "Free Britney" movement gained mass media attention, Courville was invited to give interviews as an attorney.

---

[22] *See* https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 7, 2023) (i.e., at 10:07 "Had [Jevremović] left Amanda alone, Amanda might be alive today…".)

11

**JA120**

Courville gathered hundreds of followers and viewers during the time that she gave commentary in connection with the Britney Spears conservatorship.

12. However, after Britney Spears' conservatorship was terminated, Courville began to receive less attention, and fewer followers and viewers on her various "That Surprise Witness" social media handles. With her followers/viewers in the mere hundreds following the end of the Spears conservatorship, Courville needed to look for other celebrities and social media personalities that she could latch onto, to siphon off viewership and followers. Courville found the perfect combination of entities to tether "That Surprise Witness" to—with Margera (celebrity), Jevremović (entrepreneur with social media footprint), and AURA—Jevremović's wellness supplements and healthcare solutions software business that had been generating a lot of attention.

13. In 2019, Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA was founded to use technology to scale affordable, high-quality mental health treatment services. The Company was founded to support mental health professionals using the technology to track patient progress of people undergoing mental health treatment in various ways, *inter alia,* by recording and analyzing biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, *e.g.*, assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. The Company also produces vitamins/supplements for brain health and mood support and has explored various other means of using technology to enable better health outcomes.

**JA121**

14.     AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch. Through AURA, Jevremović supplied mental health assistance tools to numerous individuals free of charge in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product. To that end, AURA had previously provided some services without charge to certain celebrities, influencers, and persons in the public eye—as well as individuals with no public presence as a community social service. Plaintiffs had been a successful and growing business in this regard, until Courville began to leverage the "That Surprise Witness" treatment against created Jevremović and AURA, concocting scandals from Courville's new ersatz villains.

15.     On September 20, 2021, Courville and Benipal formed "That Surprise Witness TV LLC" in New Jersey with file number 0450708640.[23]

16.     Courville and Benipal have co-hosted many of their broadcasts together and otherwise collaborate to carry out Courville's individual actions in support of the Entity Defendant.[24]

## COURVILLE SPREADS FALSE STATEMENTS REGARDING

## DEATH OF AMANDA RABB

17.     One such recipient of AURA's free-of-charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles' notorious Skid Row who turned to sex work to fund her addiction. AURA provided $250,000 to be used by Rabb for a year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and

---

[23] https://www.njportal.com/DOR/BusinessNameSearch/Search/EntityId (Accessed September 5, 2023).
[24] *See* https://www.instagram.com/p/CvhzNuqAV67/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

**JA122**

two months of job placement training and reduced therapy to gradually integrate Rabb back into society as a productive, healthy member. Rabb was also given the option to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care professionals. Jevremović personally funded the majority of Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

18. Tragically, on Sunday, May 9, 2021, staff at the Desert Hope Treatment Center ("Desert Hope"), where Rabb was receiving treatment—(a treatment center not in any way controlled or operated by AURA or Jevremović)—found Rabb unresponsive in her bed and unsuccessfully performed CPR. When an AURA employee contacted the Clark County Coroner's Office, requesting information regarding Rabb's death, Desert Hope relayed to AURA and Jevremović that Rabb only had Tylenol in her system—a fact that was verified by a representative of the Clark County Coroner, Dr. Paul Uribe. Dr. Uribe added that Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors. Courville conveniently left out that Jevremović made two separate podcast appearances, on Soft White Underbelly [published on Sep 9, 2022] and No Jumper [published on Sep 28, 2022], to clarify that the information Jevremović was based on conflicting information received from Dr. Uribe.

19. It is not a coincidence that Courville launched her campaign of lies and misinformation surrounding the Rabb tragedy, around the time that Jevremović became involved as a court-appointed guardian to seek to help Margera in his fight with addiction. Some of Margera's unsavory associates such as Beedle and Pingor egged on Courville's efforts as a vigilante muckraker. These associates did not want to see Margera get better—these desultory

14

**JA123**

individuals wanted to continue to take advantage of him financially and to borrow on Margera's fame—and they urged Courville to amplify her false claims to further these ends.

20. So it was that Courville's thirst for online stardom was wedded with a deliberate effort to destroy Jevremović and AURA. Courville's campaign against Jevremović and AURA was amplified at the urgings of Beedle and Pingor, who sought to wild Courville's influence to punish Jevremović for trying to help Margera in his battle with the demons of addiction.

21. Defendants' blitz of false statements regarding Jevremović and AURA, analyzed in detail below, began in February 2022 and has continued through September 2023, a modern media manipulation that has been pervasively toxic and wide ranging. While Defendants' social media blackmail effort began impugning with Jevremović and AURA making false suggestions that Jevremović had played some part in Rabb's cause of death, the media offensive has expanded to accusing of Jevremović of numerous additional humiliating falsehoods. See Count I, *infra*. Working Defendants' social media adherents into a dangerous frenzy, with Courville's adherents now labelling themselves "That Surprise Army", the crusade has escalated to dangerous cyber-harassment and doxing to intimidate Jevremović into dropping this lawsuit and gain clicks with fear mongering, which has increasingly crossed over from online commentary into real world effects that have caused a well-founded fear in Jevremović and her family for their personal safety.[25]

---

[25] *See, e.g., Hate Speech on Social Media: Global Comparisons*, COUNCIL FOR FOREIGN RELATIONS, at https://www.cfr.org/backgrounder/hate-speech-social-media-global-comparisons ("Users' experiences online are mediated by algorithms designed to maximize their engagement, which often inadvertently promote extreme content. Some web watchdog groups say YouTube's autoplay function, in which the player, at the end of one video, tees up a related one, can be especially pernicious. The algorithm drives people to videos that promote conspiracy theories or are otherwise 'divisive, misleading or false,' according to a Wall Street Journal investigative report. 'YouTube may be one of the most powerful radicalizing instruments of the 21st century,' writes sociologist Zeynep Tufekci.") (Accessed September 1, 2023.)

**JA124**

22.     All the while, Defendants have callously profiteered from this behavior in the form of advertising revenues.

## COURVILLE SPREADS FALSE STATEMENTS REGARDING

## JEVREMOVIĆ'S INVOLVEMENT WITH BAM MARGERA

23.     Celebrity entertainer Margera and his wife, Nicole Boyd-Margera ("Boyd-Margera"), took an interest in AURA in the Winter 2020. Margera has starred in blockbuster Jackass movies and popular television programs. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addictions over the previous two decades. Because of his background, Margera and Boyd-Margera initially sought to provide their support to Plaintiffs' efforts to mediate addiction and improve related health outcomes. However, when Margera proved susceptible to multiple relapses in his battle with addiction, Margera's family approached Jevremović for intervention assistance.

24.     On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed medical issues. When Margera's family and friends implored Jevremović to serve as Margera's temporary guardian, Jevremović agreed and took on the responsibility for overseeing Margera's treatment, which was put into effect by Court Order, with no connection to his financials or other aspects of his life. Indeed, despite the fact that the Jevremović was statutorily permitted to collect reasonable sums for her services as guardian, Jevremović has received no compensation whatsoever, directly or indirectly, as Margera's guardian. Rather, Margera's father has been assisting Margera in managing his finances for many years at Margera's request, and Jevremović's appointment as a temporary guardianship never touched upon Margera's money in any way.

16

**JA125**

25. After the court-ordered guardianship terminated, Margera requested that Jevremović continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery.

26. After learning that Jevremović was involved in Margera's recovery, Courville began publishing videos, photos, and text commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam."

27. Courville began with baseless assertions that Margera's family and Jevremović manipulated a court-imposed guardianship as a tool to access Margera's assets, and that Jevremović is committing and assisting in the commission of criminal acts and that Jevremović is dishonest and promulgates lies.

28. At the same time, on a parallel front of Defendants' concerted media campaign, Courville manipulated the background of facts surrounding the Rabb tragedy, and published videos, photos, and textual commentary in which she falsely accused Jevremović of criminal acts and dishonesty.

29. Defendants' statements become so prolific that they all but wiped any legitimate results regarding Jevremović and AURA from the first few pages of Google search results regarding either Plaintiff. Defendants directly disrupted AURA's second round funding, causing potential investors actively involved in funding discussions to retreat.

30. Courville's false and misleading statements about Plaintiffs have directly interfered with AURA's business and caused deep financial disruption to Jevremović, directly resulting in order cancellations and the withdrawal of marketing affiliates.

17

**JA126**

## ACTUAL MALICE

31.     Courville knew and ignored the fact that no evidence demonstrated Jevremović to be dishonest and knew and ignored the fact that no evidence demonstrated Jevremović to be a criminal, because her true motivations were to create a smear campaign that would increase views, divert Jevremović from effectively acting as guardian to Margera, ruin Jevremović's business, and eventually seek revenge on Jevremović for filing this lawsuit.

32.     At least at the outset, Courville had a preconceived story line, *i.e.*, that Jevremović must be acting improperly, and Courville purposefully twisted and misrepresented information in whatever manner would accomplish her purpose of dissuading Jevremović from acting as a guardian for Margera.

33.     That purpose changed over time to a more generalized goal of destroying Jevremović and AURA at any cost, out of an obsessive interest in Jevremović that developed over the course of the conduct.

34.     Defendants also purposefully sought to reap the benefits that disinformation and online harassment have in the form of increased viewership and followers for Defendants' social media channels.

35.     Courville was aware that her statements of fact were untrue based on their inherent improbability—such as outlandish and unfounded assertions that Jevremović is involved in human trafficking.

36.     Courville took steps to deliberately avoid learning the truth regarding Jevremović despite the fact that such information was available to her. For instance, in her most viral video titled "Virtual Reality Hell", Courville asserts that Rabb's father was a molester eight times and

18

**JA127**

suggests that Jevremovic was working with a molester to coordinate Rabb's treatment[26], while at the same time, aware that Rabb had come out to clear her father's name before her tragic death.

37.     Courville specifically posted that her intent in pursuing AURA was specifically "trying to stop [AURA] before it even gets off the ground."[27]

38.     Defendants' videos air advertisements from which they personally profit. Thus, Defendants are incentivized to publish and disseminate shocking and untrue materials[28], materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during their videos.

39.     Courville further solicits and collects donations directly from viewers during her live broadcasts *via* YouTube, and Courville operates a site to solicit donations on gofundme.com that has generated $48,108 in donations thus far.[29] Courville has a Patreon account[30] (an organization that provides users tools with which to fundraise) where she has generated paying subscribers, and where Courville solicits additional funds for in-depth "investigations" and videos in furtherance of her campaign. Defendants promote branded "That Surprise Witness TV" merchandise, deriving income from their activities.[31] Defendants derive income via false, misleading and defamatory statements, that also serve to generate more buzz and more viewers.

40.     On July 15, 2022, Plaintiffs contacted Courville in writing to demand retraction of defamatory statements. To the extent Courville disclaimed any of her defamation, her

---

[26] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2.

[27] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[28] https://news.mit.edu/2018/study-twitter-false-news-travels-faster-true-stories-0308 (Accessed September 1, 2023)("[F]alsehood diffuses significantly farther, faster, deeper, and more broadly than the truth, in all categories of information, and in many cases by an order of magnitude.)

[29] https://www.gofundme.com/f/facts-aint-defamation-fund ("Facts Aint Defamation Fund").

[30] https://www.patreon.com/thatsurprisewitness/posts (Accessed August 20, 2023.)

[31] https://thatsurprisewitness.com/products/facts-aint-defamation-black-hoodie (Accessed September 1, 2023.)

19

**JA128**

attempts were patently pretextual and obviously insincere. On July 22, 2022, Plaintiffs again contacted Courville in writing to identify further defamatory statements and to demand their retraction. No retraction issued and instead, Courville issued retaliatory false claims that suggested Margera was an investor in AURA[32]—which has never been true.

41.     Courville and Benipal's doxing and harassment goes far beyond any sort of alleged social commentary, and on information and belief, is instead motivated by a desire to bring down Jevremović at any cost, even if it means exposing Jevremović to physical harm.

42.     This conduct has forced Jevremović to file police reports in New Jersey, California, and Oklahoma—and the LAPD Threat Management Unit is currently investigating Courville's actions as potentially criminal instances of stalking.

43.     Jevremović was forced to apply for a Restraining Order in California based on the actions of Courville's followers after they were armed with Jevremović's address, and as a result, Courville is subject to a Preliminary Restraining Order (attached as Exhibit 1), which includes an Order to Cease further social media posting about the protected parties (Jevremović, her sister and Jevremović's husband) with a hearing scheduled for September 25, 2023 to determine if a permanent restraining order will issue on the basis of Courville's malevolent conduct.

**WITH INTEREST IN DEFENDANTS' SOCIAL MEDIA CHANNELS WANING, COURVILLE HAS TURNED TO INCREASINGLY EXTREME ONLINE BEHAVIOR TO MAINTAIN VIEWERSHIP AND FOLLOWERS**

---

[32] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)(at Time Stamp 36:45-37:06: "Question whether that is ethical or appropriate for someone [Margera] who is basically an investor in your business [AURA] and now you put them under a conservatorship like I don't know about the actual laws behind that but that doesn't seem appropriate that you could be the someone's guardian or conservator and they have purchased a stake in your business".)  Margera has never been an investor in AURA.

20

**JA129**

44.     Additionally, it would seem that Defendants have resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremović and prevent Jevremović from maintaining this lawsuit, which was a goal stated by Courville in a YouTube video.[33]

45.     Courville's intent to seek to get Jevremović to drop this lawsuit has been a pervasive theme in the past year with Courville doxing even Jevremović's attorney, providing Neville L. Johnson's image in connection with her video criticizing the lawsuit[34]:



46.     Courville's unlawful activities have further evolved into a personal obsession with Plaintiff, and continuously increasingly disturbing incidents of harassment and doxing.

47.     Over the course of nineteen months of harassment, the Defendants have caused to be published over 300 videos across various forms of social media that are about Jevremović, with a total of 2,802+ minutes (46.7 hours), 8,000,000+ views across YouTube, Rumble, Instagram, Twitter and TikTok, and with over 1000 posts to Instagram and Tiktok about

---

[33] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39 (Accessed September 8, 2023.)
[34] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)

21

**JA130**

Jevremović. This does not include hundreds of other posts on Instagram and other forms of social media.

48.     In one especially humiliating post on April 22, 2022, Defendants caused to be published a photograph[35] on the @ThatSurpriseWitness Instagram handle, falsely communicating that Courville had found an OnlyFans[36] page for Jevremović—a profile page which links to pornographic films and photographs that are not Jevremović, as pictured below:



[35] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA==
(Accessed September 9, 2023.)
[36] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

22

**JA131**

49.     Courville has amplified the harm[37] to Jevremović from her campaign by including the false allegation regarding Jevremović's involvement in pornography, without any conceivable legitimate purpose except to harass and cause harm to Jevremović's reputation.[38]

50.     Courville has at various times published to the Internet Jevremović's social security number, date of birth, unlisted home phone number, and three of Jevremović's unlisted home addresses[39], her family members' addresses, among many other pieces of highly personal and sensitive information in a coordinated and intentional doxing campaign.

51.     Additionally, Defendants' publication of Jevremović's sisters addresses, resulted in the kidnapping and rape of Jevremović's sister, Dahlia, soon after the publication of Dahlia's otherwise private address.

52.     After being besieged in their home in Washington state by Courville's devotees, where Courville encouraged followers to "make some noise" directed towards Jevremović, Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

53.     As recently as August 2023, Defendants' "@thatsurprisewitness" handle on Instagram included a post with comments that included Jevremović's home address (in Courville's moderated comments section), which has resulted in Jevremović's needing to relocate and go into hiding, as drones were dispatched to her home and strangers began to appear

---

[37] Mary Anne Franks, Unwilling Avatars: Idealism and Discrimination in Cyberspace, 20 Colum. J. Gender & L. 224, 255 (2011) ("[W]omen's unwilling online embodiment is in effect a double-embodiment is one of the reasons that cyberspace harassment of women should be taken seriously. Women are frequently objectified in real life in ways that negatively impact their health, careers and general well-being, and are then re-objectified online in ways that also negatively impact their health, careers and general well-being. In the offline world, women are disproportionately "bodied"-over-identified with their physical characteristics-through their physical vulnerability relative to men and their historical, legal, and social objectification."); https://www.pewresearch.org/internet/2021/01/13/the-state-of-online-harassment/ ("Women targeted in online harassment are more than twice as likely as men to say most recent incident was very or extremely upsetting.")

[39] *See, e.g.,* https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

**JA132**

near her front yard, lurking inexplicably, almost immediately upon this information being

released on Defendants' "@thatsurprisewitness" Instagram handle:[40]



54.     Followers of Courville's began calling themselves "that Surprise Army" and

plotting to "make some noise" at Courville's urging, including on one of Courville's posts

featuring private bodycam footage of Jevremović's mother and Jevremović's sister.[41]

55.     After years of Defendants' assault on Jevremović, many previous collaborators of

Jevremović's have fallen away. For example, Jevremović used to collaborate with Chloe

Wilkinson on video projects relating to Wilkinson's "DissociaDID" social media channel and

supported each other through difficult times, communicating through WhatsApp, for many

years, until in August 2022, after Wilkinson became aware of Defendants' content regarding

Jevremović, Wilkinson publicly denounced, ceased all future collaborations with Jevremović

---

[40] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023) (the post has since been edited to remove the comment that included Lima's home address, but the screenshot above includes the post as originally listed).

[41] https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

**JA133**

and blocked Jevremović on whatsapp based on Defendants' content. This caused Jevremović to lose a valuable friendship, and to lose further followers and viewers on her own social media channels, as a result of losing this valuable cross platform collaboration.

56. Likewise, Courville's obsessive harassment and doxing has placed Jevremović in a false light, suggesting in turn that Jevremović is, by turns, a human trafficker[42], the cause of Amanda Rabb's death[43], a plotter out for Margera's money, a pornographic actress, and myriad other mistruths.

57. Her followers tend to believe many of these items[44] especially because of Courville's background as a lawyer, where she has made numerous statements based on her "education, knowledge, and experience."[45]  Indeed, many of Courville's most serious false accusations have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata."[46]

58. After nearly two years of Defendants' hundreds of postings about Jevremović and AURA, the top search engine results for Jevremović and AURA are now almost all Defendants' false and/or intimidating social media content.

59. At the same time, Defendants' videos regarding Jevremović make up more than half of Courville's top ten most viewed videos, from which it can be inferred that Courville has

---

[42] https://www.instagram.com/p/CcizM8YlOrq/?img_index=1 (Accessed September 8, 2023.)

[43] May 30, 2022 Instagram Post, at https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed September 8, 2023) (falsely suggesting Jevremovich's "Last ward died in her care and she lied about the cause of death.")

[44] https://www.socialmediatoday.com/news/new-report-shows-that-facebook-and-youtube-lead-the-way-as-key-sources-of-n/606877/ (Accessed September 8, 2023.)

[45] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)

[46] See https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); see also https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); Cf. Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

25

**JA134**

operated with the awareness of the economic potential from distributing falsehoods about Jevremović.

60.     Accordingly, Defendants' activities have destroyed AURA's abilities to operate professionally or commercially and caused massive financial harm to both Plaintiffs.

61.     As a result of the foregoing activities alleged regarding Defendants, AURA has lost countless investors and revenues have declined to near null.

62.     Defendants' activities have caused substantial and irreversible damage to Jevremović's career and reputation, and her career as an entrepreneur and healthcare activist has been nearly destroyed.

63.     Defendants' activities have destroyed Jevremović's prior income from social media, which was substantial prior to Courville's siphoning off Jevremović's followers/viewers by way of the unlawful activities.

<u>**FIRST COUNT**</u>

**LIBEL**

**(By Plaintiff Lima Jevremović against All Defendants)**

64.     Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 63 as though fully set forth in this paragraph.

65.     On May 30, 2022, Courville published via Instagram the statement[47]:

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

66.     This statement is defamatory as it expressly impugns Jevremović's honesty and is wholly false.

---

[47] https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed August 28, 2023.)

26

**JA135**

67.     In this same statement, published alongside photos and videos of Jevremović at Disneyland with Bam Margera and his family, Courville refers to Jevremović as a "handler[] and trafficker[]."

68.     This statement is defamatory as it characterizes Jevremović as a trafficker, and thus a criminal, which she is not.

69.     On April 19, 2022, Courville published an image[48] of Jevremović reading Amanda's cause of death (as per the information obtained by an AURA employee from the Clark County Coroner) from a YouTube video to Instagram with the caption:

> I requested the autopsy report and lima is lying in this video. There was NO evidence of traumatic injury. There was LOTS [sic] of medication in her system (not 'only Tylenol'). The cause of death has nothing to do with 'seizure disorder', but rather cardiac arrhythmia. I've posted on [Instagram]about it.

70.     This is defamatory insofar as it falsely accuses Jevremović of dishonesty, whereas Jevremović in fact accurately conveyed the information that the Clark County Coroner had conveyed to AURA.

71.     On April 19, 2022, Courville published photos[49] of Amanda Rabb's "Report of Investigation" record obtained from the Clark County Coroner, and Courville published comments stating:

> Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1. WAYY [sic] more than just Tylenol in her system (including cannibinoids [sic] and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS.

72.     These false statements are defamatory insofar as they impugn Jevremović's honesty.

---

[48] https://www.instagram.com/p/CciSZGpOyPH/ (Accessed August 30, 2023.)
[49] https://www.instagram.com/p/CciRdYbuxUX/?img_index=1 (Accessed August 30, 2023.)

27

**JA136**

73. On April 19, 2022, Courville published a video[50] of Jevremović reading Amanda's cause of death (as per the information obtained from the Clark County Coroner) from a YouTube video to Instagram. Courville commented on the video, stating:

> So lima from @meetAURA BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'. I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie?? #FreeBam #AmandaRabb.

74. This false statement is defamatory insofar as it impugns Jevremović's honesty.

75. On April 3, 2022, Courville published an image[51] on Instagram which purports to list biographical information about Margera, including his putative net worth ($20 Million). Courville commented on the image:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 🤓 🤓 🤓 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂 😂 👀 👀 #FreeBam.

Another commenter states:

> 20 million now, soon to be much less, but it'll all be 'legit,'

to which Courville responds:

> but a certain someone will have fresh lips, Botox, and a BBL watch.

Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Courville's comments here to reference Jevremović – in fact, people did comment in response who understood the messages to reference Jevremović.

76. These statements are defamatory insofar as Courville falsely characterizes Jevremović as depleting Margera's money rather than assisting with treatment for a substance

---

[50] https://www.instagram.com/p/CciQwHOO-Ux/ (Accessed August 30, 2023.)
[51] https://www.instagram.com/p/Cb5b59wFxIg/ (Accessed August 30, 2023.)

**JA137**

abuse disorder. Such statements are defamatory as they falsely impute a motive to Jevremović, which most people would find condemnable.

77.    On March 30, 2022, Courville published to Instagram an excerpt of a YouTube video[52] in which Jevremović and Larry Rabb, Amanda Rabb's father, describe how they managed to transfer Amanda from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Courville states that Amanda's public defender is not supposed to:

help you push your scam conservatorship through.

78.    This statement is defamatory per se insofar as it accuses Jevremović of a scam with reference to attempting to impose an LPS conservatorship on Rabb; this imputes criminality or at least immorality and is thus defamatory.

79.    On May 7, 2022, Courville published a photo[53] to Instagram picturing Margera's costars from his television show and movies performing a stunt, and Courville captioned the photo:

[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy

And

#FREEBAM.

She further published a comment on the photo stating,

Let the #conspiracytheories roll #freebam.

---

[52] https://www.instagram.com/p/CbvTro1JLYk/
[53] https://www.instagram.com/p/CdQOLU9OQxl/

29

**JA138**

80. These statements were defamatory as they falsely imply that Jevremović, as a person Courville repeatedly identifies as responsible for Margera's confinement, is a criminal and engaged in a criminal conspiracy.

81. On May 6, 2022, Courville published a picture[54] of Margera to Instagram, overlayed with an anonymous person's statement criticizing Courville's publications:

> the whole #freebam thing is so weird and i [sic] strongly believe that [Courville] is a conspiracy theorist. if [sic] she was an actual lawyer[,] wouldn't she actually be busy? sorry [sic] i'm [sic] not buying it

Courville published a comment in response:

> I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy. So they're right! #freebam.

82. This statement is defamatory as it implies that Jevremović is engaged in a criminal conspiracy with respect to her previous involvement with Margera—which is false and misleading, and has caused harm to Jevremović.

83. On May 4, 2022, Courville published an image[55] to Instagram containing mostly text; the text is a republication of a comment previously made by Courville, which of relevance includes:

> . . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in [Margera's] best interest. . . . #freebam SPREAD THE WORD.

84. This statement constitutes defamation insofar as it implies that Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy and is attempting to co-opt Margera's assets. Further, Courville encourages her audience to further publish her statements.

---

[54] https://www.instagram.com/p/CdOTKe4OFcG/
[55] https://www.instagram.com/p/CdJHr4Yu7WI/

30

**JA139**

85. On May 4, 2022, Courville published an image[56] on Instagram regarding Margera, and a user, "pettyhearst," commented thereupon stating:

> I've been a [Margera] fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge[,] I would at least have peace of mind that there is no malicious intent. But they aren't in charge[;] Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating [Margera's parents].

86. Courville published a reply directly to this statement expressing agreement:

> bingo.

87. This statement is defamatory insofar as Courville affirmed the false statements made by the anonymous commenter, thus adopting those comments as her own. These statements assert that Jevremović is manipulating persons for her own gain (impugning Jevremović's honesty) and imply that Jevremović is not acting in Margera's interest, that Jevremović is responsible for Rabb's death ("blood on her hands" – in conjunction with Courville's other defamatory statements with respect to Jevremović and Rabb, this is a reference to Jevremović allegedly being at fault for Rabb's death), and that Jevremović has malicious intent.

88. On April 27, 2022, Courville published on Instagram an image[57] showing a digital message sent to her in which Courville is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"). Courville captioned the image:

> SUE ME

and published a comment on the image, stating:

> The only facts that were imagined came from Lima Jevremović's lying ass mouth.

---

[56] https://www.instagram.com/p/CdJDkylMVl_/
[57] https://www.instagram.com/p/Cc3Ch4YLTYb/

31

**JA140**

89.     This false statement is defamatory insofar as it impugns Jevremović's honesty. Courville further published a comment to this image, stating:

> if telling the truth is 'damaging to others' and those others are criminals, SO BE IT.

90.     This statement is defamatory insofar as it implies that "others" is Jevremović and thus falsely implies that she is a criminal (the "others" referenced is clearly a reference to Jevremović, in context).

91.     On April 27, 2022, Courville published on Instagram another image[58] showing a portion of the message sent to her. Courville published a comment associated with the image that reads in relevant part:

> Or is it maybe because the public record doesn't agree with the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??.

92.     This statement is defamatory as it impugns Jevremović's honesty by implying that she fabricated a "fake[,] imaginary tale" to mislead people. In a separate comment, Courville further answers a question about Jevremović's description of HIPAA's application to Rabb, stating:

> because they lie.

93.     This is defamatory as it is false and expressly impugns Jevremović's honesty.

94.     On April 26, 2022, Courville published to Instagram a screenshot[59] showing the "gofundme" donation page for Rabb's treatment, which then indicated that no new donations would be accepted. Courville commented on this photo with the statement:

> Thanks for taking down your fraudulent fundraiser lima!

---

[58] https://www.instagram.com/p/Cc21n0Isp74/
[59] https://www.instagram.com/p/Cc1UinJsWvQ/

**JA141**

95.    This statement is defamatory as it falsely imputes criminality to Jevremović, expressly accusing her of fraud.

96.    On April 25, 2022, Courville published on Instagram an excerpt[60] from a Complaint previously filed by Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

In response, Courville states:

> the plan is to end his life. I'm convinced of it. #savebam.

97.    This statement is defamatory insofar as it alleges that those involved in "the plan" are seeking to kill Margera; in context with Courville's statements regarding Jevremović being central to Margera's treatment, one can reasonably infer that Courville is falsely referencing Jevremović as planning to kill Margera.

98.    On April 25, 2022, Courville published to Instagram a screenshot[61] showing that the "Donate now" button was still present on the "gofundme" donation page for Rabb's treatment. Courville commented, asking Gofundme:

> can you return the funds that have been fraudulently collected from donors on this fundraiser?

and stated,

> many people have reported this fraudulent fundraiser and your organization has taken no action.

---

[60] https://www.instagram.com/p/CcxsX9HsR9H/
[61] https://www.instagram.com/p/CcxeH1hOK1d/

33

**JA142**

Elsewhere, Courville states that

we've reported [fraud] a lot

99. These statements are defamatory as they falsely accuse Jevremović of criminal behavior – namely, fraud.

100. On April 19, 2022, Courville posted an image[62] comprising text with the tip line for human trafficking from the National Human Trafficking Hotline, and Courville commented: "#FreeBam." Courville specifically highlighted the phone number and the text stating,

REPORT A TIP with information on potential human trafficking activity.

101. Courville further added a second photo, depicting a cell phone call to a phone number with five minutes having elapsed, the implication being that Courville had called to report Margera as being trafficked to the National Human Trafficking Hotline. A commenter asks in response:

There [are two] different numbers?!

to which Courville answers:

yeah[,] there's a few[.] I called a different tip line[,] but you can call either one.

102. This is defamatory because Courville implies that Margera is being trafficked, a criminal act, and in the context of her other statements used in connection with the "#FreeBam" tag, it is clear that she views Jevremović as central to this effort. In the context of her statement that she has called to report Margera's situation as human trafficking and in light of her explicit instructions to a commenter to call, Courville intends this statement to be understood sincerely.

103. On April 19, 2022, Courville published an image[63] on Instagram containing a short conversation between Courville and a commenter. The commenter accurately stated:

---

[62] https://www.instagram.com/p/CcizM8YlOrq/
[63] https://www.instagram.com/p/CcibN0JOx89/ (Accessed September 8, 2023.)

34

**JA143**

[Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

104.    As recounted in the discussion of Margera above, he was subject to a guardianship imposed in Arizona, and at no relevant time has a conservatorship been imposed. Nonetheless, Courville invokes her credentials, suggests she holds expertise, again provides an inaccurate interpretation of the law, and solicits viewers for her advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

In response, a commenter remarked:

> Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

Courville, apparently drawing upon her self-avowed lawyerly expertise, explains:

> it's to confuse people so the criminals can keep crim[e-]ing.

105.    This is defamatory insofar as, in the context of discussing Margera, it falsely states effectively that the guardianship system is a criminal tool, and thus by implication that Jevremović, as Margera's guardian, must be a criminal.

106.    On April 19, 2022, Courville published on Instagram a screenshot[64] of a conversation between unidentified persons regarding Margera; Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker." On April 19, 2022, Courville published on Instagram screenshots[65] of excerpts from a tabloid story about Margera's recovery, with a section of the article highlighted. Courville commented on the screenshot regarding Margera's recovery, in relevant part, by stating: "#FreeBam" and "#EndHumanTrafficking."

---

[64] https://www.instagram.com/p/CciJ3HsuFlX/ (Accessed September 5, 2023.)
[65] https://www.instagram.com/p/CciIldIukcw/ (Accessed September 1, 2023.)

**JA144**

107.    These statements are defamatory as they imply that Jevremović is trafficking Margera. While these statements might ordinarily be readily understood as hyperbole, Courville's repeatedly holding herself out as a legal expert and her repeated emphasis of her use of legal language in its technical sense would reasonably lead a significant portion of her audience to understand the implications of these statements literally.

108.    On April 18, 2022, Courville published a screenshot[66] of a highlighted excerpt from an article discussing the application of Iceland law and whether Margera's and his wife's marriage is legally recognized. A commenter on this image asked:

where are his parents?

to which Courville responded:

helping the criminals [sic] girl.

109.    This statement is defamatory insofar as Courville's constant association of Jevremović with Margera's treatment naturally leads Courville's audience to understand "girl" in this context to reference Jevremović; these false statements are defamatory insofar they assert that Jevremović is a criminal, which she is not.

110.    On April 3, 2022, Courville posted a screenshot[67] of an excerpt of a celebrity tabloid article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth"; Courville commented on the photo, saying:

I heard forced rehab is expensive… I learned that from Lima from @meetAURA. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😂 #FreeBam.

111.    By linking the cost of rehabilitation, as described by Jevremović, to the supposed depletion of Margera's net worth, Courville is falsely characterizing Jevremović as depleting

---

[66] https://www.instagram.com/p/Ccf9UdxuHYc/ (Accessed September 1, 2023.)
[67] https://www.instagram.com/p/Cb5djK4FXNI/ (Accessed September 8, 2023.)

36

**JA145**

Margera's money rather than assisting with treatment for a substance abuse disorder. Such a statement is defamatory as it falsely imputes a profit motive to Jevremović which most people would find condemnable.

112. On March 30, 2022, Courville published to Instagram a screenshot[68] of comments made to Instagram; a commenter asked:

> forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

Courville responded:

> I mean… that's my impression, so if you're wrong[,] I am too.

113. Courville thereby explicitly adopted the commenter's false statements. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Jevremović is exploiting celebrities for money. Such false statements are defamatory as they indicate dishonesty and insofar as people hold low opinions of those who exploit others.

114. On April 4, 2022, Courville published to YouTube a video entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT"[69] in which she defames Jevremović. At 27:39, Courville describes Margera's transfers between treatment facilities and states:

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

115. This statement defames Jevremović insofar as Courville repeatedly identifies Jevremović as responsible for Margera's treatment, and insofar as Courville, invoking the authority she commands as a lawyer, describes aspects of Margera's treatment as criminal.

---

[68] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed September 8, 2023.)
[69] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed September 8, 2023.)

**JA146**

116.    On July 15, 2022, Courville published to YouTube a video entitled "Bam's Guardian LASHES OUT | Breaks Silence on #FreeBam – Reaction"[70] in which she reacts to Jevremović's public statements addressing, *inter alia*, Courville's harassment ("the relentless harassment, leaking all of my private information all over the internet, threats to my family and clients, constantly reporting my social media accounts and businesses and the over 14,000 emails that have cluttered my inbox"). At 05:05 Courville states

I also know Lima [is] a liar.

117.    This is defamatory insofar as Courville expressly impugns Jevremović's honesty without basis.

118.    Later in the same video, at 26:08, Courville addresses the discrepancy between Jevremović's description of Rabb's cause of death and the official autopsy report and states:

[Jevremović] can't keep track of her story. And that's what happens when you lie; you have to keep track of the lies you told.

119.    This is defamatory insofar as it expressly characterizes Jevremović's statements as lies, when in reality, Jevremovic's alleged false statements emanated from an email with conflicting information which Jevremovic read from in a video Courville cites as inaccurate.[71] Clark County did not provide Jevremovic with the complete autopsy report citing HIPAA law as the reason for not providing the full document—which Courville somehow obtained and publicized in attempts to discredit Jevremović. In reality, Jevremović read from the information she was provided.

120.    On July 8, 2022, Courville published to YouTube a video entitled "Bam's Family Breaks Silence on #FreeBam | Jess and April Margera SPEAK OUT."[72] At 6:10, she states:

---

[70] https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 8, 2023.)
[71] https://www.youtube.com/watch?v=lQTPnbpsAIc (Accessed September 8, 2023.)
[72] https://www.youtube.com/watch?v=Nr3e0RKY6Ig (Accessed September 8, 2023.)

38

**JA147**

I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

121. Courville thus emphasizes that her statements are accurate and factual. At 15:59, Courville describes herself as

the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation

122. This is defamatory insofar as it characterizes Jevremović's imposition of a guardianship as human trafficking, a crime. While such statements might ordinarily be susceptible to an interpretation as hyperbole, Courville disclaims hyperbole by use of the term "literal," and she makes clear that if she did not intend for this statement to be taken literally, then she would have been "very explicit that it is my opinion or my belief or my suspicion," and she would "never say [this statement] as if it is a fact if [she didn't] know it to be a fact."

123. On April 18, 2022, Courville posted a screenshot[73] of anonymous comments to Instagram, captioning the photo:

Looks like team con is planning to traffic @bam_margera for a "few more months". #freebam

124. This statement is defamatory insofar as it characterizes Jevremović as a trafficker and a con. Given Courville's repeated statements regarding Jevremović's guardianship, viewers would clearly understand "team con" to refer to Jevremović.

125. On July 1, 2022, Courville published a video to YouTube entitled "Virtual Reality Hell: The Amanda Rabb Story."[74] At 31:02 she states:

I operate in one absolute thing and that is truth. Lima didn't tell the truth.

---

[73] https://www.instagram.com/p/Ccf9opHlvNm/
[74] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2

39

126. By these statements, Courville impugns Jevremović's honesty, and emphasizes that Courville's statements are accurate and factual.

127. In this same video, at 31:31, Courville states:

That was not true. Amanda was hand chosen because they had the cooperation of Larry Rabb.

128. These statements are defamatory insofar as they impugn Jevremović's honesty.

129. On September 10, 2022, Courville published a video to YouTube entitled "Lima Jevremovic Made A Video About Me,"[75] in which she states at 17:53:

I joke about stuff, and I make light of situations, but like, make no mistake, this isn't drama, this is very serious.

130. By this statement, Courville emphasizes that her statements are not jokes or hyperbole but should be understood as accurate and factual by her viewers.

131. Courville reiterates this in the same video at 18:15, when she states:

It's very serious, a woman is dead, a woman has passed under [Jevremović's] care.

132. This statement both defames Jevremović by characterizing her as personally responsible for wrongdoing, *i.e.*, a woman's death, and reiterates that Courville's statements are serious and should be taken as such.

133. On July 30, 2023, Courville published to YouTube a video titled "Missing Twin NEEDS Help | *URGENT*."[76] At 1:37, she states:

Another story is the Amanda Rabb story and the fact that Lima did take over Amanda's life and healthcare in order to give her an experimental treatment and Amanda Rabb, as you know, did not survive the treatment. She passed away in the treatment center, in the AURA treatment center, and then Lima lied about how Amanda died and she never really gave a good explanation for that.

---

[75] https://www.youtube.com/watch?v=RtwiHx8_oMA
[76] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)

**JA149**

134. These false statements are defamatory insofar as they impugn Jevremović's honesty.

135. Later in this same video, at 10:55 she states:

This has turned into a me versus everyone, everybody in the family, all the – no, it's the truth versus lies.

136. Courville thus emphasizes that her statements are accurate and factual.

137. Courville also states in this video, at 11:12:

Not only do we have one unexplained death that has happened in Lima's care, we also now have allegations of sex trafficking of people that Lima has purported to be in care of, and Bam Margera told me himself he was held against his will for months without access to a phone, computer, internet, any of it.

138. These statements are defamatory insofar as they characterize Jevremović as a criminal, which she is not.

139. Courville then goes on to claim, "it's about the truth for me," before reading a letter which she states she sent to 25 to 50 different outlets and encourages viewers to also send, which states:

I am a lawyer and independent journalist with a few YouTube channels.[77]

140. Courville thus further relies on her legal background to support that her statements are accurate and factual; they are not.

141. Courville's letter, as read aloud in this video and posted in the video's description via a Google Doc for her followers to send, also states:

[Bam Margera] told me that he was held in rehab against his will and denied medical treatment.[78]

---

[77] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)
[78] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)

41

**JA150**

142. This statement is defamatory insofar as Courville identifies Jevremović as responsible for Margera's treatment and characterizes such treatment as criminal.

143. On August 14, 2023, Courville published a video to YouTube entitled "*SHOCKING* Presentation by Lima from AURA (NEW)"[79] in which she references her legal background, stating at 20:50:

> I think I scored in the 96th or 97th percentile on [the LSAT], like I scored in the top like three or four percent of everyone who took the test.

144. This statement serves to legitimize Courville's statements as factual and accurate, which they are not.

145. In this same video, Courville repeats the same false, defamatory statements detailed herein about Jevremović with regard to Ms. Rapp's death.

146. In an August 2022 video, Defendant Benipal appeared alongside Courville on the "That Surprise Witness" YouTube channel and personally made false or misleading statements regarding Jevremović and regarding Ms. Rapp's death, such as Benipal's statement at the 10:07 mark: "Had [Jevremović] left Amanda alone, Amanda might be alive today…".[80]

147. This statement is defamatory insofar as Courville identifies Jevremović as responsible for Ms. Rabb's death, which has no basis in truth.

148. Jevremović's reputation and business endeavors has been negatively impacted, if not destroyed by Defendants' actions, and she has unduly suffered humiliation, emotional distress, anger, embarrassment, sadness, frustration, fear, loss of income, chagrin, severe anxiety, stress, shame, mortification, hurt feelings, sleeplessness, and physical manifestations thereof resulting from Defendants' above-described actions. Jevremović's associated damages

---

[79] https://www.youtube.com/watch?v=Emm1WfIdZbE (Accessed September 5, 2023.)
[80] https://www.youtube.com/watch?v=5EPVSf8Kdlo at 10:07 (Accessed September 5, 2023.)

42

**JA151**

are in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

149.    Defendants knew or should have known each of these statements to be false at the time the statement was made, and thus, Defendants acted with actual malice sufficient to support an award of punitive damages.

150.    Defendants intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications. Defendants made these false statements in a wanton and willful disregard of Jevremović's rights. Defendants knew or should have known at the time that they made the statements that serious harm would arise from Defendants' conduct, and Defendants, with knowledge of the harm caused, continued such conduct. Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter them from similar wrongful conduct in the future.

## SECOND COUNT

## LIBEL

### (By Plaintiff AURA against All Defendants)

151.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 150 as though fully set forth in this paragraph.

152.    On April 27, 2022, Courville published to Instagram an image[81] showing a digital message sent to her in which the message-sender criticizes Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovićh [sic] . . . ever up held [sic] HIPPA [sic]?

---

[81] https://www.instagram.com/p/Cc22uuMsobQ/

**JA152**

Courville responded:

> never not once [sic].

153.    This statement is defamatory insofar as it references Jevremović's work on behalf of AURA, and it asserts that Jevremović, and by extension, AURA, violate the Health Insurance Portability and Accountability Act ("HIPAA"). Because AURA's products are used in mental health treatment, they must (and do) comply with HIPAA. Courville's statements are defamatory *per se* insofar as they falsely allege that AURA is irresponsible with its clients' private information and that AURA does not follow black-letter law. Such statements would damage AURA's esteem and reputation amongst patients, healthcare practitioners, investors, and others, and would lead third parties to think that AURA is incompetent in its business or engages in misconduct in its business operations.

154.    On April 27, 2022, Courville republished an image[82] containing another's statements to Instagram regarding Rabb, Margera, and Jevremović; an anonymous commenter asked:

> Are [Jevremović and AURA,] using homeless people with addictions to experiment on them for their [YouTube] channel?

and Courville unequivocally affirmed the commenter's statement:

> yes.

155.    By affirming the commenter's statement, Courville effectively adopted the statement as her own. This false statement is defamatory as it explicitly states that Jevremović and AURA are experimenting on homeless individuals, implying that they are doing something inhumane. It further implies that Jevremović and AURA are dishonest insofar as Courville's statement contradicts Jevremović's stated reason for providing care to Rabb.

---

[82] https://www.instagram.com/p/Cc3REs7FNGJ/

44

**JA153**

156. On March 31, 2022, Courville published to Instagram an excerpt[83] from a video in which Jevremović read Rabb's cause of death as a seizure disorder. Courville pauses and adds commentary, including, at 0:10; Jevremović states:

Rabb never had seizures prior to being homeless.

Courville comments and states:

But I think another way of saying that is she never had seizures prior to using AURA.

157. Courville thus seeks to falsely imply that AURA's products caused Rabb's seizures and potentially caused her death.

158. On March 31, 2022, Courville published on Instagram a photo[84] of Rabb wearing virtual reality headgear and participating in a "Virtual Reality Exposure Therapy Session using AURA." A person commented on the photo with interest in the virtual reality-based treatment, and Courville responded:

the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool. I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

159. This statement is defamatory insofar as it falsely states that patients have the AURA system forced upon them as a test-subject; such a statement carries negative implications about AURA as people are generally opposed to being forced to test healthcare treatments.

160. On April 1, 2022, Courville published an excerpt[85] from a program for a virtual reality conference which included Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Courville commented on the image:

---

[83] https://www.instagram.com/p/CbxaISSgRxR/
[84] https://www.instagram.com/p/CbxIzVsOT-D/

[85] https://www.instagram.com/p/Cb02KZuAJEe/

45

**JA154**

Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #RabbRabb.

161.    This statement is defamatory insofar as it characterizes Jevremović and AURA as experimenting on vulnerable populations whom Jevremović purportedly views as "problematic" and insofar as it contradicts Jevremović's stated reasons for working with those suffering from mental health disorders (thereby impugning her honesty); such a characterization is highly offensive and falsely imputes a motive to Jevremović and to AURA which most people would find condemnable.

162.    On March 30, 2022, Courville published another excerpt from a video[86] in which Jevremović describes the use of AURA products in connection with Rabb's treatment. Jevremović explains that AURA provides its products at no cost and uses the data collected for research purposes, and Rabb would have the opportunity to serve as a case study. Courville commented on the video:

Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship. #FreeBam #RabbRabb #InvestigateAURA

163.    These statements are defamatory as they falsely state that Jevremović and AURA forced Rabb to test AURA products – people are generally opposed to being forced to test healthcare tools. Such a statement negatively impacts AURA's reputation.

164.    On February 22, 2022, Courville published to YouTube a video[87] in which she defames Jevremović and AURA. At 49:55, Courville falsely states:

[Jevremović] forces people by court order to use [AURA's] tools.

165.    This statement is defamatory insofar as it falsely states that Jevremović on behalf of AURA imposes conservatorships on people as a means to force people to use AURA's tools (from

---

[86] https://www.instagram.com/p/CbvGodsJLtE/

[87] https://www.youtube.com/watch?v=hAPdBs398vc (Accessed September 5, 2023.)

46

**JA155**

which AURA and Jevremović would purportedly profit); people will generally understand this statement to be defamatory insofar as forcing guardianships and conservatorships on people for the purpose of generating profits is generally condemnable behavior.

166.    AURA's reputation has been negatively impacted due to Defendants' above-described actions; AURA has lost substantial investments, opportunities, and income resulting from Defendants' defamation.

167.    Defendants intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications. Defendants made these false statements in wonton and willful disregard of AURA's rights, with knowledge of their falsity or reckless disregard for whether the statements were true. Defendants knew or should have known at the time they made the statements that serious harm would arise from their conduct, and Defendants, with knowledge of the harm caused, nevertheless continued such conduct unabashedly. Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter them from similar wrongful conduct in the future.

168.    These false statements expose AURA and its CEO, Jevremović, to hatred, contempt, and the loss of the goodwill and confidence felt toward them by others.

169.    Furthermore, these false statements have a tendency to injure, and did in fact injure, Plaintiffs' business operations in the addictions recovery and mental healthcare industry, including but not limited to their use of therapist-guided exposure therapy implementing virtual reality technology and telehealth solutions.

170.    These statements are entirely false. As a result of Defendants' publications, Plaintiffs have suffered reputational harm in an amount to be proved at trial.

47

**JA156**

171. As a result of Defendants' publications, AURA has lost business opportunities in an amount to be proven at trial.

172. Defendants' conduct in publishing and republishing the above statements was actuated by actual malice and/or accompanied by a wanton and willful disregard of the effect their statements would have on Plaintiffs' reputations, which foreseeably might be harmed by Defendants' republications. Such conduct entitles Plaintiffs to an award of punitive damages under N.J.S.A. 2A:15-5.9, *et seq.*, to both punish and deter Defendants' wanton conduct in an amount to be proven at trial.

## THIRD COUNT

### Invasion of Privacy – Intrusion upon Seclusion

### (By Plaintiff Lima Jevremović against All Defendants)

173. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 172 as though fully set forth in this paragraph.

174. Plaintiff has alleged (i) an intentional intrusion (ii) upon the seclusion of another that is (iii) highly offensive to a reasonable person.[88]

175. Plaintiff has successfully alleged an intentional intrusion, where she was substantially certain she lacked any indicia of consent to commit the intrusive acts alleged herein. Plaintiff has alleged that Defendants released personal information without any permission to do so, and to the contrary, over Plaintiff's vehement objections.

176. Specifically, Defendants have released highly personal, private information regarding Plaintiff and her family, including Plaintiff's family's home addresses, the name and address of the church Plaintiff attends in Los Angeles, Plaintiff's phone number, and Plaintiff's

---

[88] *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17 (1992) (citing Restatement (Second) of Torts § 652B.

48

**JA157**

social security number, as well as the names and photos of Plaintiff's husband, sisters, mother, and mother-in-law. Moreover, Defendants' release of Plaintiff's personal information, and encouragement of Courville's followers[89], has caused further intrusions and invasions into Plaintiff's privacy via death threats and text messages of dead bodies from unknown numbers, strangers showing up uninvited and unannounced at Plaintiff's home, and drones entering and surveilling Plaintiff's property to watch Plaintiff and her family.

177. Plaintiff has alleged herein that Defendants have intruded into Plaintiff's otherwise private seclusion that the plaintiff has regarding her person or private life. Specifically, Defendants have intruded upon Plaintiff's family life, home and property, private information, and church and religious life.

178. The above-listed intrusions on Plaintiff's privacy, such as the release of her private contact information and social security number, would undoubtedly be highly offensive to the ordinary reasonable person.

179. Plaintiff has suffered immense emotional and financial harm as a result of Defendants' invasion into her privacy as described herein.

**FOURTH COUNT**

**Invasion of Privacy – False Light**

**(By Plaintiff Lima Jevremović against All Defendants)**

180. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 179 as though fully set forth in this paragraph.

181. Defendants gave publicity to a matter concerning Plaintiff that Defendants knew was false.

---

[89] June 27, 2023 YouTube video with Courville touting the contributions of her followers to her activities in digging into Jevremovich's personal life: https://www.youtube.com/watch?v=Vh6j4YHIxoE.

182. Defendants either knew that the publicized material was false and would place Plaintiff in a false light or acted with reckless disregard as to whether the publicized defamatory statements were false and/or with reckless disregard for the false impression created by the publicized defamatory statements. Specifically, Defendants made the defamatory statements and publications regarding Plaintiff with knowledge or reckless disregard of their falsity as described in Counts I and II.

183. The defamatory statements made by Defendants so misrepresented Plaintiff's character, history, activities and/or beliefs that a reasonable person in Plaintiff's position would find the material highly offensive. In fact, significant numbers of people who have viewed these defamatory statements have been so affected by them that Plaintiff has received death threats and text messages of dead bodies from unknown numbers, strangers have shown up uninvited and unannounced at Plaintiff's home and recently, drones entered Plaintiff's property and hovered above Plaintiff and Plaintiff's mother to surveil them. A reasonable person would not only find Defendants' statements highly offensive but would be offended and shocked by the effect Defendants' statements have had on other persons, and Defendants' continuing to make such statements knowing that Plaintiff faced such egregious threats to her safety based thereon.

184. The publicity caused by Defendants' defamatory statements was the cause of injuries, damages, and/or losses sustained by Plaintiff.

## FIFTH COUNT

**Domestic Violence Act ("DVA")—Harassment (N.J.S.A. § 2C:25-19(a)(13))**

**(By Plaintiff Lima Jevremović against All Defendants)**

185. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 184 as though fully set forth in this paragraph.

50

**JA159**

186.    Harassment under the DVA occurs where a person with purpose to harass another, "[m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. § 2C:33–4(a). "[A]nnoyance" under that subsection means to "disturb, irritate or bother." *State v. Hoffman*, 149 N.J. 564, 580 (1997). The provision in N.J.S.A. 2C:33–4(a) prohibiting conduct communicated in any manner likely to cause annoyance or alarm encompasses where those modes of communicative harassment "are also invasive of the recipient's privacy." *Id*. at 583.

187.    The Act further provides that the court shall consider, among other factors: the existence of immediate danger to person or property and the existence of a verifiable order of protection from another jurisdiction. N.J.S.A. 2C:25–29(a). Here, a Temporary Restraining Order is attached as Exhibit 1, that has been issued pending a hearing on September 25, 2023, based on the harm that has been caused to Plaintiff in California. *See* Exhibit 1.

188.    As alleged in multiple instances of harassing conduct above, Defendants have falsely suggested that Jevremović had an OnlyFans page with pornographic films and photographs (she does not and never has), which false suggestion would not have been made except as to cause annoyance or alarm, and which was invasive of the Plaintiff's privacy.

189.    As alleged above, Defendants have published to the Internet Jevremović's social security number, date of birth, home phone number, multiple private home addresses of Jevremović and her family members, along with urgings to her followers that would be suggestive that the pieces of highly personal and sensitive information are to be used in nefarious ways. Even though Courville has occasionally issued brief disclaimers regarding the usage of this personal identifying information, the context of the release of the information would suggest that the sole purpose of such releases was to frighten, intimidate and harass Jevremović.

51

**JA160**

190. As a result, Plaintiff and her family have been forced to relocate from their homes multiple times, hire around-the-clock security, and have obtained a Temporary Restraining Order based on the aforementioned conduct of Defendants (*See* Exhibit 1), that has thus caused Plaintiff financial harm, as well as pain and suffering.

## SIXTH COUNT

### Domestic Violence—Cyber-harassment (N.J.S.A. § 2C:25-33-4.1)

### (By Plaintiff Lima Jevremović against All Defendants)

191. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 190 as though fully set forth in this paragraph.

192. Cyber-harassment under the DVA occurs where making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person, and knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person; or threatens to commit any crime against the person or the person's property. N.J.S.A. § 2C:25-33-4.1.

193. Here, among the other allegations pleaded above, Courville did post to her @ThatSurpriseWitness Instagram posted on April 22, 2023, which on information is operated by Defendants Courville, Benipal, and That Surprise Witness TV LLC, a lewd photograph[90] falsely suggesting that Jevremović had an OnlyFans[91] page—and linking to pornographic films and photographs that are not of Jevremović; Defendants knowingly used such lewd and indecent

---

[90]https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023).

[91] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

52

**JA161**

material solely with the purpose of causing emotional harm to Jevremović, and without any legitimate purpose.

194.    Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, including the actions mentioned herein, with the knowledge that their publications could cause Plaintiff to suffer harassment and humiliation.

195.    The acts of Defendants resulted in damage to Plaintiff.

## SEVENTH COUNT

### Intentional Infliction of Emotional Distress

### (By Plaintiff Lima Jevremović against Defendant Courville)

196.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 195 as though fully set forth in this paragraph.

197.    The New Jersey Supreme Court in the seminal case *Buckley v. Trenton Saving Fund Soc.* sets forth the common law cause of action for the tort of intentional infliction emotional distress: one must intentionally or recklessly commit an extreme and outrageous act which proximately causes plaintiff severe emotional distress. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).

198.    The nature of the act or conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement, Second, Torts, § 46).

199.    Similarly, there is a rather rigorous, while objective, standard for how severe the distress must be that is suffered by plaintiff: "so severe that no reasonable man could be expected to endure it." *Cole v. Laughrey Funeral Home*, 376 N.J.Super. 135, 148 (App.Div.2005) ("The tort of intentional infliction of emotional distress requires emotional trauma that is severe.").

**JA162**

200. Here, there is no doubt that Defendants' distribution of Plaintiff's home address, her mother's home address, and myriad other releases of private information, including Plaintiff's phone number and social security number, was released with the aim of inflicting devastation and emotional distress on Plaintiff and her family—and that Defendants' actions did in fact cause devastation and emotional distress.

201. Further, the publication of a photo falsely suggesting Plaintiff was distributing pornographic materials via OnlyFans was but one example of the conduct alleged above, plainly released to torment and distress Plaintiff; Defendants' conduct in publicly touting this obscene lie did in fact cause devastation and emotional distress.

202. Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, with the knowledge that their publications could cause Plaintiff to suffer harassment and potential violence.

203. The acts of Defendants resulted in damage to Plaintiff. In fact, as a direct result of Defendants' distribution of Plaintiff's and her family's private information, Plaintiff and her family have been forced to move homes, relocate to different states, and hire around-the-clock security.[92]

### EIGHTH COUNT

### Negligent Infliction of Emotional Distress

### (By Plaintiff Jevremović against All Defendants)

204. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 203 as though fully set forth in this paragraph.

---

[92] Danielle Keats Citron, Addressing Cyber Harassment: An Overview of Hate Crimes in Cyberspace, 6 Case W. Res. J.L. Tech. & Internet at 4 (2015): https://scholarlycommons.law.case.edu/jolti/vol6/iss1/3 ("Victims fundamentally change their lives. They move because they no longer feel safe at home.")

54

**JA163**

205.     For a claim of negligent infliction of emotional distress, a plaintiff must plead that the defendant had a duty to the plaintiff and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark*, 349 N.J.Super. 251, 277 (App.Div.2002).

206.     Whether the defendant has a duty of care to the Plaintiff depends on whether it was foreseeable that the plaintiff would be seriously mentally distressed. *Id.*

207.     Here, Defendants were aware of the risk of serious mental distress to Jevremović as a result of Defendants' distribution of Plaintiff's home address (three different private addresses after Jevremović has been forced to move as a result of Courville's doxing), Jevremović's mother's home address[93], Jevremović's sister Dahlia's private home address, along with release of links to pornography with the false suggestion that it was Jevremović in the pornography, and the myriad false statements and releases of private information as pleaded above.

208.     As such, Defendants breached their duty of care to Jevremović as they combined to jointly conduct outrageous, cruel, and malicious doxing and cyber-harassment of Jevremović despite knowledge that their conduct had caused Jevremović severe emotional distress, and despite knowledge that Jevremović's reporting the conduct to law enforcement in three states.

209.     The acts of Defendants resulted in damage to Plaintiff and her family, including but not limited to, forcing Plaintiff and her family to relocate and 24-7 hire security.

210.     Defendants conduct herein has caused Jevremović extensive additional mental anguish[94] and financial harm.

---

[93] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023).
[94] Danielle Keats Citron, Addressing Cyber Harassment at 4-5: ("Victims experience severe emotional distress, anxiety, and depression.").

55

**JA164**

## NINTH COUNT

### Unfair Competition

### (By Plaintiff AURA against All Defendants)

211. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 210 as though fully set forth in this paragraph.

212. The actions of Defendants as alleged above were done deliberately and intentionally.

213. The actions of Defendants misled the public regarding AURA and/or products in violation of the common law of unfair competition of the State of New Jersey. Specifically, Defendants have actively spread defamatory statements and falsehoods about AURA, while Courville simultaneously began contributing to another online health company, Giddy.

214. The actions of Defendants as alleged above were committed with the intention of deceiving or defrauding the public in violation of the common law of unfair competition of the State of New Jersey.

215. Specifically, Defendants actions have effectively frozen investment in AURA, forestalled further development of AURA's new health-based business, and acted to siphon potential investors interested in a health start-up away from AURA.

216. Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## TENTH COUNT

### Unfair Competition

### (By Plaintiff Jevremović against All Defendants)

217. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 216 as though fully set forth in this paragraph.

56

**JA165**

218. The actions of Defendants as alleged above were done deliberately and intentionally to bring down Jevremović and to siphon off Jevremović's followers and viewers to Defendants' "That Surprise Witness" social media channels, and to deceive or defraud the public into following Defendants' social media channels instead of Jevremović, in violation of the common law of unfair competition of the State of New Jersey.

219. The actions of Defendants misled the public regarding Jevremović as a social media influencer in the health space, in violation of the common law of unfair competition of the State of New Jersey.

220. Specifically, Defendants have actively spread defamatory statements, falsehoods, and misleading statements about Jevremović, where negative commentary receives more traction online than positive content. At the same time, Courville contributed to another competing online health company, Giddy, that was also in the health space.

221. Specifically, Defendants' actions have effectively destroyed Jevremović's business as a YouTube commentator herself, forestalling Jevremović's growth as commercially successful social media personality in the health space, after Defendants' social media blitzkrieg demonizing Jevremović, and siphoning viewers and followers to Defendants' social media channels, and profiting thereby in the form of Patreon sponsors, advertising on Defendants' YouTube channel and other methods of monetization that Defendants wrongfully obtained at the harm and expense of Jevremović.

222. Defendant's actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment as follows:

57

**JA166**

1. For general damages according to proof, but not less than $75,001;

2. For compensatory damages according to proof;

3. For special damages for damage to reputations, losses of business opportunities, and losses of investment opportunities according to proof, but not less than the jurisdictional minimum of this Court;

4. For the maximum available punitive damages per Plaintiff per cause of action;

5. For a permanent injunction to remove all statements and publications adjudged libelous and to estop Defendants from publishing additional actionable statements under the causes of action alleged;

6. For pre- and post-judgment interest as allowed by law;

7. For costs of suit and such other and further relief as this Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand a trial by jury for all matters triable.

Respectfully submitted,

*s/Elliot D. Ostrove*

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suit 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com

*s/Neville L. Johnson*

Neville L. Johnson (*Pro Hac Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210

58

**JA167**

Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com


_s/Rodney Smolla_
Rodney Smolla
(_Pro Hac Vice_)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC


Dated:  September 11, 2023

59

**JA168**

**NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION**

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation Agent, LLC ("AURA"), hereby declare the following:

1.     I am a Plaintiff in the present case, a citizen of California and the United States of America.

2.     I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3.     I have fully reviewed the foregoing Second Amended Complaint, and aver that the matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I hereby certify that the matter in controversy in the foregoing Second Amended Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding, with the exception of an application for Domestic Violence Restraining Order filed in Family Court in California by Claimant Lima Jevremović against Respondent Brittany Courville at Case Number 23STR005881, which thus far resulted in a Temporary Restraining Order attached as Exhibit 1, and which was served upon Defendant on September 11, 2023.

I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on September 11, 2023.          */s/ Lima Jevremović*

_____

Lima Jevremović, on my own behalf, and on behalf of Autonomous User Rehabilitation Agent, LLC

60

**JA169**

# EXHIBIT 1

## CH-109 Notice of Court Hearing

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

AUG 3 1 2023

David W. Slayton, Executive Officer/Clerk of Court

By: P. Rodriguez, Deputy

**(1) Person Seeking Protection**

a. Your Full Name:
Lima Jevremovic

Your Lawyer (if you have one for this case):

Name: Benjamin F. Kanani          State Bar No.: 279248

Firm Name: Law Office of Benjamin Kanani, APC

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or email.)*

Address: 8730 Wilshire Blvd., Ste. #310

City: Beverly Hills          State: CA    Zip: 90211

Telephone: (310) 593-9592          Fax: (310) 295-2427

Email Address: ben@kananilegal.com

Fill in court name and street address:

Superior Court of California, County of
Los Angeles
111 N. Hill St.
Los Angeles, CA 90012

Court fills in case number when form is filed.

Case Number:
23STRO05821

**(2) Person From Whom Protection Is Sought**

Full Name: Brittany Jeream Courville

*The court will complete the rest of this form.*

**(3) Notice of Hearing**

A court hearing is scheduled on the request for restraining orders against the person in (2):

| Hearing Date | → Date: 9/25/23 Time: 1:30PM | Name and address of court if different from above: |
|---|---|---|
| | Dept.: 25  Room: 317 | |

**(4) Temporary Restraining Orders** *(Any orders granted are on form CH-110, served with this notice.)*

a. Temporary Restraining Orders for personal conduct and stay-away orders as requested in form CH-100, *Request for Civil Harassment Restraining Orders*, are *(check only one box below)*:

(1) ☒ All **GRANTED** until the court hearing.

(2) ☐ All **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

(3) ☐ Partly **GRANTED** and partly **DENIED** until the court hearing. *(Specify reasons for denial in b, below.)*

Judicial Council of California, www courts ca gov
Rev January 1, 2023 Mandatory Form
Code of Civil Procedure § 527 6
Approved by DOJ

Notice of Court Hearing
(Civil Harassment Prevention)

CH-109, Page 1 of 3
→

JA171

Case Number:

b. Reasons for denial of some or all of those personal conduct and stay-away orders as requested in form CH-100, *Request for Civil Harassment Restraining Orders,* are:

    (1) ☐ The facts as stated in form CH-100 do not sufficiently show acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed, or harassed the person in ① and caused substantial emotional distress.

    (2) ☐ Other *(specify):* ☐ As stated on Attachment 4b.

⑤ **Confidential Information Regarding Minor**

    a. ☐ A *Request to Keep Minor's Information Confidential* (form CH-160) was made and **GRANTED.** *(See form CH-165,* Order on Request to Keep Minor's Information Confidential, *served with this form.)*

    b. **If the request was granted, the information described in item ⑦ on the order (form CH-165) must be kept CONFIDENTIAL. The disclosure or misuse of the information is punishable as a sanction, with a fine of up to $1,000 or other court penalities.**

⑥ **Service of Documents for the Person in** ①

At least ☒ five ☐ _____ days before the hearing, someone age 18 or older—**not you or anyone to be protected**—must personally give (serve) a court's file-stamped copy of this form CH-109 to the person in ② along with a copy of all the forms indicated below:

    a. CH-100, *Request for Civil Harassment Restraining Orders* (file-stamped)

    b. ☒ CH-110, *Temporary Restraining Order* (file-stamped) **IF GRANTED**

    c. CH-120, *Response to Request for Civil Harassment Restraining Orders* (blank form)

    d. CH-120-INFO, *How Can I Respond to a Request for Civil Harassment Restraining Orders?*

    e. CH-250, *Proof of Service by Mail* (blank form)

    f. ☐ CH-170, *Notice of Order Protecting Information of Minor* and CH-165, *Order on Request to Keep Minor's Information Confidential* (file-stamped) **IF GRANTED**

    g. ☐ Other *(specify):* _____

Date: 8/31/23

Judicial Officer
STEVE COCHRAN

**JA172**

Case Number:

## To the Person in ❶ :

- The court cannot make the restraining orders after the court hearing unless the person in ② has been personally given (served) a copy of your request and any temporary orders. To show that the person in ② has been served, the person who served the forms must fill out a proof of service form. Form CH-200, *Proof of Personal Service,* may be used.
- For information about service, read form CH-200-INFO. *What Is "Proof of Personal Service"?*
- If you are unable to serve the person in ② in time, you may ask for more time to serve the documents. Use form CH-115, *Request to Continue Court Hearing and to Reissue Temporary Restraining Order.*

## To the Person in ❷ :

- If you want to respond to the request for orders in writing, file form CH-120, *Response to Request for Civil Harassment Restraining Orders,* and have someone age 18 or older—**not you or anyone to be protected**—mail it to the person in ① .
- The person who mailed the form must fill out a proof of service form. Form CH-250, *Proof of Service by Mail,* may be used. File the completed form with the court before the hearing and bring a copy with you to the court hearing.
- Whether or not you respond in writing, go to the hearing if you want the judge to hear from you before making an order. You may tell the judge why you agree or disagree with the orders requested.
- You may bring witnesses and other evidence.
- At the hearing, the judge may make restraining orders against you that could last up to five years and may order you to turn in to law enforcement, or sell to or store with a licensed gun dealer, any firearms (guns) and firearm parts that you own or possess. This includes firearm receivers and frames, and any item that may be used as or easily turned into a receiver or frame (see Penal Code section 16531).



### Request for Accommodations

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office or go to www.courts.ca.gov/forms for *Disability Accommodation Request* (form MC-410). (Civ. Code, § 54.8.)

*(Clerk will fill out this part.)*

### —Clerk's Certificate—

I certify that this *Notice of Court Hearing* is a true and correct copy of the original on file in the court.

Date: _____ AUG 3 1 2023

Clerk, by _____ P. Rodriguez _____, Deputy

Rev January 1, 2023

**Notice of Court Hearing**
**(Civil Harassment Prevention)**

CH-109, Page 3 of 3

**JA173**

# CH-110  Temporary Restraining Order

*Clerk stamps date here when form is filed.*

**FILED**
Superior Court of California
County of Los Angeles

**AUG 3 1 2023**

David W. Slayton, Executive Officer/Clerk of Court
By: P. Rodriguez, Deputy

*Person in ① must complete items ①, ②, and ③ only.*

## ① Protected Person
a. Your Full Name: Lima Jevremovic

Your Lawyer *(if you have one for this case):*

Name: Benjamin F. Kanani          State Bar No.:279248

Firm Name: Law Office of Benjamin Kanani, APC

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or email.):*

Address: 8730 Wilshire Blvd., Ste. #310

City: Beverly Hills          State: CA    Zip: 90211

Telephone: (310) 593-9592     Fax: (310) 295-2427

Email Address: ben@kananilegal.com

*Fill in court name and street address:*

Superior Court of California, County of
Los Angeles
111 N. Hill St.
Los Angeles, CA 90012

## ② Restrained Person

*(Give all the information you know. Information with a star (\*) is required to add this order to the California police database. If age is unknown, give an estimate.)*

*Court fills in case number when form is filed*

Case Number:
23STRO05821.

| | | |
|---|---|---|
| *Full Name: Brittany Jeream Courville | *Age: 35 | Date of Birth: Unknown |
| *Race: White   Height: 5'6"   Weight: Unknown   Hair Color: Blonde   Eye Color: Green | | |
| *Gender: ☐ M  ☒ F  ☐ Nonbinary   Home Address: 10 Teak Lane | | |
| City: Princeton   State: NJ   Zip: 08540 | | |

Relationship to Protected Person: Opposing party in a lawsuit in U.S. District Court, Content creator

## ③ ☒ Additional Protected Persons

In addition to the person named in ①, the following family or household members of that person are protected by the temporary orders indicated below:

| Full Name | Gender | Age | Household Member? | Relation to Protected Person |
|---|---|---|---|---|
| Ivan Jevremovic | M | 45 | ☒ Yes ☐ No | Husband |
| Dahlia Taquali | F | 31 | ☒ Yes ☐ No | Sister |
| Dia Taquali | F | 31 | ☒ Yes ☐ No | Sister |
| | | | ☐ Yes ☐ No | |

☐ *Check here if there are additional persons. List them on an attached sheet of paper and write "Attachment 3— Additional Protected Persons" as a title. You may use form MC-025, Attachment.*

## ④ Expiration Date

*The court will complete the rest of this form.*

*This Order expires at the end of the hearing scheduled for the date and time below:*

Date: 9/25/23     Time: 1:30     ☐ a.m. ☒ p.m.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
Rev. January 1, 2023 Mandatory Form
Code of Civil Procedure §§ 527.6 and 527.9
Approved by DOJ

**Temporary Restraining Order (CLETS-TCH)**
**(Civil Harassment Prevention)**

CH-110, Page 1 of 6
→

**JA174**

Case Number:

## To the Person in ❷:

The court has granted the temporary orders checked as granted below. If you do not obey these orders, you can be arrested and charged with a crime. You may be sent to jail for up to one year, pay a fine of up to $1,000, or both.

**(5) Personal Conduct Orders**

☐ Not Requested    ☐ Denied Until the Hearing    ☑ Granted as Follows:

a. You must **not** do the following things to the person named in ①
   ☐ and to the other protected persons listed in ③:

   (1) ☑ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

   (2) ☑ Contact the person, either directly or indirectly, in **any** way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by email, by text message, by fax, or by other electronic means.

   (3) ☑ Take any action to obtain the person's address or location. If this item (3) is not checked, the court has found good cause not to make this order.

   (4) ☐ Other *(specify):*
       ☐ Other personal conduct orders are attached at the end of this Order on Attachment 5a(4).

b. Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate this order. However, you may have your papers served by mail on the person in ①.

**(6) Stay-Away Order**

☐ Not Requested    ☐ Denied Until the Hearing    ☑ Granted as Follows:

a. You must stay at least ___**100**___ yards away from *(check all that apply):*

   (1) ☑ The person in ①
   (2) ☑ Each person in ③
   (3) ☑ The home of the person in ①
   (4) ☑ The job or workplace of the person in ①
   (5) ☐ The school of the person in ①
   (6) ☐ The school of the children of the person in ①

   (7) ☐ The place of child care of the children of the person in ①
   (8) ☑ The vehicle of the person in ①
   (9) ☐ Other *(specify):*
   _____
   _____
   _____

b. This stay-away order does not prevent you from going to or from your home or place of employment.

**(7) No Firearms (Guns), Firearm Parts, or Ammunition**

a. You cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get any prohibited items listed in b on the next page.

## This is a Court Order.

**JA175**

Case Number:

**(7)** b. **Prohibited items are:**

  (1) Firearms (guns);

  (2) Firearm parts, meaning receivers, frames, or any item that may be used as or easily turned into a receiver or frame (see Penal Code section 16531); and

  (3) Ammunition.

c. **You must:**
  (1) Sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any firearms (guns) and firearm parts in your immediate possession or control. This must be done within 24 hours of being served with this Order.

  (2) File a receipt with the court within 48 hours of receiving this Order that proves that your firearms (guns) and firearm parts have been turned in, sold, or stored. (You may use *Receipt for Firearms and Firearm Parts* (form CH-800) for the receipt.)

d. ☐ The court has received information that you own or possess a firearm (gun), firearm parts, or ammunition.

**(8)** **Possession and Protection of Animals**

  ☑ **Not Requested**   ☐ **Denied Until the Hearing**   ☐ **Granted as Follows** *(specify):*

a. ☐ The person in **(1)** is given the sole possession, care, and control of the animals listed below, which are owned, possessed, leased, kept, or held by him or her, or reside in his or her household.
  *(Identify animals by, e.g., type, breed, name, color, sex.)*

_____

_____

b. ☐ The person in **(2)** must stay at least _____ yards away from, and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of, the animals listed above.

**(9)** **Other Orders**

  ☑ **Not Requested**   ☐ **Denied Until the Hearing**   ☐ **Granted as Follows** *(specify):*

*Cease further social media posting about protected parties pending hearing.*

☐ Additional orders are attached at the end of this Order on Attachment 9.

**To the Person in ❶ :**

**(10)** **Mandatory Entry of Order Into CARPOS Through CLETS**

This Order must be entered into the California Restraining and Protective Order System (CARPOS) through the California Law Enforcement Telecommunications System (CLETS). *(Check one):*

a. ☐ The clerk will enter this Order and its proof-of-service form into CARPOS.

b. ☐ The clerk will transmit this Order and its proof-of-service form to a law enforcement agency to be entered into CARPOS.

**This is a Court Order.**

**JA176**

Case Number:

(10) c. ☐ By the close of business on the date that this Order is made, the person in (1) or his or her lawyer should deliver a copy of the Order and its proof-of-service form to the law enforcement agency listed below to enter into CARPOS:

Name of Law Enforcement Agency      Address *(City, State, Zip)*

_____      _____

_____      _____

☐ Additional law enforcement agencies are listed at the end of this Order on Attachment 10.

(11) **No Fee to Serve (Notify) Restrained Person**    ☐ **Ordered**    ☐ **Not Ordered**

The sheriff or marshal will serve this Order without charge because:

a. ☐ The Order is based on unlawful violence, a credible threat of violence, or stalking.

b. ☐ The person in (1) is entitled to a fee waiver.

(12) Number of pages attached to this Order, if any: _____

Date: _____8/31/23_____      *(signature)*

*Judicial Officer*

**STEVE COCHRAN**

**Warnings and Notices to the Restrained Person in ②**

## You Cannot Have Firearms (Guns), Firearm Parts, or Ammunition

You cannot own, have, possess, buy or try to buy, receive or try to receive, or otherwise get any prohibited items listed in item 7b on page 3 while this Order is in effect. If you do, you can go to jail and pay a $1,000 fine. You must sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any firearms (guns) and firearm parts that you have or control as stated in item (7) above. The court will require you to prove that you did so.

## Notice Regarding Nonappearance at Hearing and Service of Order

If you have been personally served with this Temporary Restraining Order and form CH-109, *Notice of Court Hearing,* but you do not appear at the hearing either in person or by a lawyer, and a restraining order that is the same as this Temporary Restraining Order except for the expiration date is issued at the hearing, a copy of the order will be served on you by mail at the address in item ②.

If this address is not correct or you wish to verify that the Temporary Restraining Order was converted into a restraining order at the hearing without substantive change, or to find out the duration of the order, contact the clerk of the court.

## After You Have Been Served With a Restraining Order

- Obey all the orders.

- Read form CH-120-INFO, *How Can I Respond to a Request for Civil Harassment Restraining Orders?,* to learn how to respond to this Order.

- If you want to respond, fill out form CH-120, *Response to Request for Civil Harassment Restraining Orders,* and file it with the court clerk. You do not have to pay any fee to file your response if the Request claims that you inflicted or threatened violence against or stalked the person in (1).

**This is a Court Order.**

**JA177**

| Case Number: |
|---|
|  |

## If the Protected Person Contacts the Restrained Person

Even if the protected person invites or consents to contact with the restrained person, this order remains in effect and must be enforced. The protected person cannot be arrested for inviting or consenting to contact with the restrained person. The order can be changed only by another court order. (Pen. Code, § 13710(b).)

## Conflicting Orders—Priorities for Enforcement
**If more than one restraining order has been issued protecting the protected person from the restrained person, the orders must be enforced in the following priority** (see Pen. Code, § 136.2 and Fam. Code. §§ 6383(h)(2). 6405(b)):

1. *Emergency Protective Order (EPO):* If one of the orders is an *Emergency Protective Order* (form EPO-001), provisions (e.g., stay-away order) that are more restrictive than in the other restraining/protective orders must be enforced. Provisions of another order that do not conflict with the EPO must be enforced.
2. *No-Contact Order:* If a restraining/protective order includes a no-contact order, the no-contact order must be enforced. Item 5a(2) is an example of a no-contact order.
3. *Criminal Protective Order (CPO):* If none of the orders include an EPO or a no-contact order, the most recent CPO must be enforced. (Fam. Code, §§ 6383(h)(2) and 6405(b).) Additionally, a CPO issued in a criminal case involving charges of domestic violence, Penal Code sections 261. 261.5, or former 262, or charges requiring sex offender registration must be enforced over any civil court order. (Pen. Code, § 136.2(e)(2).) All provisions in the civil court order that do not conflict with the CPO must be enforced.
4. *Civil Restraining Orders:* If there is more than one civil restraining order (e.g., domestic violence. juvenile. elder abuse. civil harassment), then the order that was issued last must be enforced. Provisions that do not conflict with the most recent civil restraining order must be enforced.



*(Clerk will fill out this part.)*

### —Clerk's Certificate—

I certify that this *Temporary Restraining Order* is a true and correct copy of the original on file in the court.

**P. Rodriguez**

Date: AUG 3 1 2023    Clerk. by _____ . Deputy

## This is a Court Order.

**JA178**

~~Sherri A. Affrunti~~Elliot D. Ostrove, Esq. ~~(SBN 017981996~~(Bar No. 025581997)
~~THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC~~
~~301 Oxford Valley Road~~
~~Bldg. 1800, #1803, 2d Floor, Jackson Suite~~
~~Yardley, PA 19067~~
EPSTEIN OSTROVE
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Telephone: (~~267) 392.5842~~ 732) 828-8600
Fax: (732) 828-8601
Email: ~~sherri@affruntilaw.com~~e.ostrove@epsteinostrove.com

Neville L. Johnson, Esq. (~~Admitted~~ *Pro Hac*~~Hac~~ *Hav* Vice) ~~Adam M. Winokur, Esq. (Admitted *Pro Hac*~~
~~*Vice*)~~
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
~~Email: njohnson@jjllplaw.com; awinokur@jjllplaw.com~~

Email: njohnson@jjllplaw.com

Rodney A. Smolla, Esq. (~~Admitted~~ *Pro Hac*~~Hac~~ *Hav* Vice)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: ~~rodsmolla@gmail.com~~rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ~~LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,~~ | ~~Civil Action No:~~ |
| | ~~Document Electronically filed~~ |
| ~~Plaintiffs,~~ | |
| ~~vs.~~ | |
| | ~~AMENDED VERIFIED COMPLAINT FOR:~~ |
| ~~BRITTANY JEREAM COURVILLE, an individual,~~ | ~~1. LIBEL~~ |
| | ~~2. LIBEL~~ |
| ~~Defendant.~~ | ~~DEMAND FOR JURY TRIAL~~ |

**JA179**

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,<br><br>      Plaintiffs,<br><br>          vs.<br><br>BRITTANY JEREAM COURVILLE, an individual; PREM BENIPAL, an individual; and THAT SURPRISE WITNESS LLC, a New Jersey limited liability corporation.<br><br>      Defendants. | Civil Action No: 3:22-cv-04969-ZNQ-RLS<br><br>*Document Electronically filed*<br><br>**VERIFIED SECOND AMENDED COMPLAINT FOR:**<br><br>**1. LIBEL**<br><br>**2. LIBEL**<br><br>**3. INVASION OF PRIVACY – INTRUSION UPON SECLUSION**<br><br>**4. INVASION OF PRIVACY – FALSE LIGHT**<br><br>**5. DOMESTIC VIOLENCE ACT— HARASSMENT (N.J.S.A. § 2C:25-19(a)(13))**<br><br>**6. DOMESTIC VIOLENCE ACT— CYBER-HARASSMENT (N.J.S.A. § 2C:25-33-4.1)**<br><br>**7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**8. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**9. UNFAIR COMPETITION**<br><br>**10. UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Lima Jevremović ("Jevremović"), an individual with her principal

2

**JA180**

residence in the State of California, and Autonomous User Rehabilitation Agent, LLC, a limited liability company with its principal place of business in the State of Washington ("AURA" or the "Company") (together, "Plaintiffs"), by and through their undersigned counsel, ~~complaining of Defendant Brittany Jeream Courville ("Defendant" or "Courville"), allege as follows:~~ file this Second Amended Complaint against Defendant Brittany Jeream Courville ("Courville") and Defendant Prem Benipal ("Benipal") (collectively "Individual Defendants"), and Defendant That Surprise Witness TV LLC (the "Entity Defendant") (all collectively, "Defendants"), on the basis of libel[1] and additional causes of action for harassment, cyber-harassment, intentional/negligent infliction of emotional distress, and unfair competition, arising from the conduct of Defendants.

## STATEMENT OF THE CASE

This action arises out of the conduct of Courville, in concert with Defendant Benipal, and the Entity Defendant to weaponize the social media handle "That Surprise Witness" on various forms of social media in a concerted campaign to bring down and "cancel" Jevremović and to destroy AURA's business, vowing to try "to stop [AURA] before it even gets off the ground."[2] More recently, the Defendants began to pivot towards a more dangerous campaign of cyber-harassment and doxing, with Courville promising that her activities will continue or worsen until Jevremović drops this very lawsuit.[3]

---

[1] Plaintiffs respectfully disagree with the Court's finding that no libel claims have been stated. In part to preserve the issue for appeal, Plaintiffs replead and amended the libel claims, given that "if plaintiff simply drops the dismissed claim and does not attempt to replead, the claim will be deemed waived and plaintiff will not be able to raise the original dismissal of the cause of action on appeal." Federal Civil Procedure Before Trial (Rutter Group 2023). Plaintiffs continue to strongly believe that they properly stated claims for libel in the Complaint, and Plaintiffs attempt to amend Plaintiffs' libel claims in a way that will make this more apparent, which Plaintiffs will further argue in the event that Defendants file a new motion to dismiss. In addition, Plaintiffs plead new, additional facts which, even accepting this Court's prior findings, constitute proper libel claims.

[2] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[3] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39, Courville speaking to/regarding Jevremović: "If you're gonna sue, and this goes to anybody out there thinks they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it and

3

Defendants, in a concerted and premeditated effort to build on the worst trends in online harassment and doxing, have courted the forces behind Q-Anon[4], and have resorted to implementing the use of non-public, HIPAA protected video footage of Jevremović's family members—and released private materials such as Jevremović's home address and social security number, her mother's home address, and countless other private photographs and details to intimidate and terrify Jevremović, and to gain clicks and exposure for the "That Surprise Witness" brand.

Initially, one aspect of Courville's campaign began in 2022 as a misguided attempt to "#FreeBam", based on a misunderstanding that Brandon Margera ("Bam" as he is termed by fans, or hereinafter, "Margera") was somehow being controlled or manipulated by Jevremović for her profit. It didn't matter to Courville that Jevremović received no compensation whatsoever for her work in attempting to assist Margera in fighting his battle with addiction.

Back then, Margera's family and friends were united in participating in his care—he was reconciling with his wife and spending time with his son. Positive influences in Margera's life like Steven Glover (better known as Steve-O), Johnny Schillereff and Brandon Novak, who had successfully found sobriety, were helping him get his career back on track and visiting with him often. Unfortunately, when Courville's early "#FreeBam" posts started gaining some online interest, unsavory characters slithered into Margera's circle, including Vinny Beedle[5] ("Beedle")

---

it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny– not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…"

[4] Courville has recently been working on projects with noted Q-Anon leader Liz Crokin, *See* https://www.slaveprincess.com/credits (Accessed August 31, 2023). Crokin has been described as "an early embracer of the QAnon conspiracy theory, which alleges the world is run by a shadowy cabal of Satan-worshipping pedophiles.") https://thehill.com/homenews/campaign/3765836-trump-hosts-mar-a-lago-event-with-prominent-qanon-pizzagate-conspiracy-theorist/ (Accessed September 6, 2023).

[5] https://twitter.com/VINNYBEEDLE (Accessed September 5, 2023).

4

and Brian Pingor ("Pingor") (an attorney who bragged about meeting Margera while they were both in rehab together). Beedle and Pingor befriended Margera at a fragile time and introduced him to Courville's toxic #FreeBam movement—with no motivation but to keep Margera too intoxicated to notice they were maxing out his credit cards and selling stories about him to TMZ. They knew if Margera stayed sober, there would be no benefit to them, so they tilted Bam towards Courville's toxicity and away from the friends and family who cared for him.

Yet, Courville has been untroubled by the fact that there was nothing to "#FreeBam" from, except court orders arising from Margera's arrests that arose from the dangerous fight that Margera is having with addiction. Instead of grappling with the complicated realities of Margera's fight with substance abuse, Courville elected to make Jevremović and AURA into straw man villains. Courville knew that Jevremović-as-villain would generate more views for her channel and followers, without regard for the effect her campaign against Jevremović would have on Margera.

Recently, as Courville's off-kilter campaign has increasingly shifted towards a skewed personal vendetta against Jevremović, Margera has become an unfortunate casualty of Courville's online firebombing of all things associated with Jevremović and AURA. Accordingly, Margera's substance abuse issues have escalated and led to him being arrested twice in the past two months.[6] Courville has been complicit in using Margera, abetting him in getting high and drunk before coming on her YouTube show, angling to get Margera to say negative things about Jevremović and AURA (to contradict the positive things that Margera had said about Jevremović while Margera was sober). Courville has shown complete disregard for whether her efforts could derail Margera from a year-long attempt at sobriety.

---

[6] Margera was arrested on August 9, 2023, for charges relating to Public Drunkenness and Engaging in Fighting. *See* https://www.nbcphiladelphia.com/news/local/jackass-star-bam-margera-arrest-radnor-hotel/3621538/#:~:text=Professional%20skateboarder%20and%20star%20of,to%20a%20law%20enforcement%20source (Accessed September 6, 2023). Margera's August arrest came just two weeks after an incident where he was charged with assault and making terroristic threats after a fight with Margera's brother. (*Id*.)

3

**JA183**

At the same time, Courville's "#FreeBam" movement has been losing viewership and online followers, where it is becoming increasingly clear that the movement was nothing but a publicity ploy to drum up viewers and followers, that had nothing to do with the actual well-being of Margera or his family. Losing her grasp on viewership and followers on her social media channels, Courville has resorted to spiraling ever deeper into an unhinged obsession with destroying Jevremović. Courville's panopticon of terror has reached into every conceivable cranny of Jevremović's family and personal life, destroyed her business, and even driven her and her family from their homes.

At the same time, Courville has effectively frozen investment in AURA and forestalled further development of AURA's new health-based business, even while simultaneously participating in the online health business "Giddy" as a contributor.[7] As such, Courville's conduct has the perverse effect that potential investors interested in a health start-up like AURA would perhaps now choose to invest in Giddy, rather than AURA.

Courville is nothing if not savvy about how to weaponize social media, and recent months have revealed a turn towards the depths of cyber-harassment and doxing in efforts to bring about real harm to Jevremović—an increasingly desperate attempt to keep her falling viewership and followers afloat at any cost, and to scare Jevremović into dropping this lawsuit.[8]

This includes publishing a video that urges Courville's followers to "make some noise," after arming her followers with Jevremović's mother's home address, phone number, and airing a humiliating mental health crisis video—a video that Oklahoma authorities have indicated should not have been available to the public.[9] As a result of Courville's doxing campaign,

---

[7] https://getmegiddy.com/BJ_Courville; https://getmegiddy.com/BARE/BJ_Courville (Accessed September 5, 2023).
[8] June 27, 2023 YouTube Video: https://www.youtube.com/watch?v=Vh6j4YHIxoE (Accessed September 7, 2023).
[9] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). The Oklahoma police department from which this video footage was obtained has confirmed that this footage is not public information and Courville should not have been able to obtain it, and they have launched an on-going investigation into how Respondent was able to obtain these videos.

6

**JA184**

Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Courville to dig into Jevremović's mother's personal life to harass her and make calls to her employers.[10]

All the while, Courville has pretended her statements are not to be taken seriously, all the while winking and signaling to her followers that she means every word. Indeed, Courville has revealed that she is deliberately labelling herself a "conspiracy theorist", only so that her targets cannot use Courville's false statements "against her"[11], as shown below:



On numerous occasions, Courville has confirmed that her false statements of fact are a wolf in sheep's clothing (or a wolf in pink bunny ears)—hiding under a "conspiracy theorist"

---

[10] Although Courville's release of private information is coupled with a disclaimer that such information should not be used to contact the people in the video, this disclaimer is disingenuous when combined with urgings that incite Courville's followers to "make some noise" in tandem with the release of the private information. The same video insists that anyone could get the same bodycam footage that Courville released; however, when contacted to inquire how the HIPAA protected video had been obtained, the police department confirmed that such video should not have been publicly available and has launched an investigation into the release of that footage.

[11] https://www.instagram.com/p/Cb5b59wFxIg/?img_index=1 (Accessed September 8, 2023.)

7

**JA185**

moniker as a shield to enable deeply dangerous false statements that are actually intended to be seen as true, and thus, are truly harmful.[12] Her followers tend to believe many of these Courville's statements have extra weight because Courville has often touted her background as a lawyer, and she has made numerous statements based on her "education, knowledge, and experience."[13] Importantly, many of Courville's most serious false and misleading accusations about Jevremović have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata."[14]  Instead, on her GoFundMe page, Courville describes herself as a "lawtuber and independent journalist" and has titled her fundraising campaign the "Facts Ain't Defamation Fund"—which reveals that she releases false information as fact.[15]

Frighteningly, Defendants have demonstrated that the "That Surprise Witness" team knows no limits, including using fake pornography to create public humiliation and shaming, as when Defendants published a photograph/link[16] falsely suggesting that Jevremović had an OnlyFans[17] page—a profile page which links to pornographic films and photographs that are not Jevremović.  As recently as August 8, 2023, Courville's "@thatsurprisewitness" handle on Instagram hosted a post on a moderated comments thread that included Jevremović's home address, which resulted in Jevremović's needing to relocate and go into hiding for a third time since Courville's campaign began.[18] Drones were dispatched to Jevremović's home and strangers began to appear near her front yard, lurking inexplicably, almost immediately after this information being

---

[12] *Cf.* Court's August 10, 2023 Order on MTD, Jevremovic v. Courville, Dkt. 22-cv-4969 (ZNQ)(RLS) at 14 (August 10, 2023 (the "Order").

[13] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)

[14] *See* https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); *see also* https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); Cf. Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

[15] https://www.gofundme.com/f/facts-aint-defamation-fund (Accessed September 9, 2023.)

[16] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)

[17] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

[18] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

8

**JA186**

released on Courville's Instagram.[19] At the same time, followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise" at Courville's urging, including on one of Courville's posts featuring non-public bodycam footage of Jevremović's mother and Jevremović's sister during a mental health emergency:[20]



   As Courville's increasing acceptance of new levels of dangerous online doxing and cyber-harassment has escalated, Jevremović has been left no choice but to seek a restraining order to protect her personal safety in California (*See* Exhibit 1, Temporary Restraining Order) and forced to bring the additional claims alleged herein to attempt to preserve Jevremović's business, and any last vestiges of her personal safety, and to preserve the hope of a normal life.

**PARTIES**

1.  AURA is a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300, Bainbridge Island, Washington 98110-2450, and with no member domiciled in New Jersey.[21] AURA operates as a

---

[19] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).
[20] https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).
[21] *See* Docket Nos. 28, 39.

9

wellness supplements and healthcare solutions software business. ~~AURA's members reside in the states of California, Colorado, Texas, Florida and Illinois, and in Australia.[1]~~

2. ~~Ms.~~ Jevremović, an individual, is the founder and CEO of AURA. She identifies her address as: c/o Neville Johnson, Johnson & Johnson, LLP, 439 North Canon Drive, Suite 200, Beverly Hills, California, 90210 because she and her family have received harassment and threats in connection with the claims in this matter, and because her home address was disseminated (and unknown third parties have attempted to gain entry while the family was home), ~~Ms.~~ Jevremović and her family relocated their residence multiple times and hired 24-hour security to guard their home. ~~Ms.~~ Jevremović thus respectfully seeks to avoid providing her ~~personal~~California address in court filings, so she will not be forced to relocate yet again.

~~3.~~ Defendant Brittany Courville is an individual who~~, upon information and belief,~~ resides at 10 Teak Lane, Princeton, ~~NJ~~New Jersey, 08540~~.~~

---

3. [1] ~~The names of AURA's members have been disclosed in a separate filing with~~, and operates the ~~Court under seal~~various "That Surprise Witness" social media channels, and formed the Entity Defendants.

## ~~NATURE OF THE ACTION~~

~~4.      This is an action for defamation in the form of libel in connection with Courville's publications and republications to the Internet of or about Jevremović and AURA. With respect to facts alleged herein on information and belief, Plaintiffs and their undersigned attorneys are informed and believe that those facts are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, because, among other reasons, evidence to support those facts is exclusively in Defendant's possession.~~

4.      Defendant Prem Benipal is an individual who resides at 10 Teak Lane, Princeton, New Jersey, 08540, and has financially supported Courville's activities on her various "That Surprise Witness" social media channels—and has himself appeared on the "That Surprise Witness" podcasts with Defendant Courville, and is involved with the operations of the Entity Defendants.

5.      Defendant "That Surprise Witness TV LLC" was formed in New Jersey, under file number 450708640, on September 30, 2021, to carry out the activities of Courville and Benipal on the various "That Surprise Witness" social media outlets.

## JURISDICTION AND VENUE

~~5.~~6.      Subject matter jurisdiction is appropriate to this Court under 28 U.S.C. § 1332 because complete diversity exists amongst the parties and the amount in controversy exceeds the jurisdictional minimum.

~~6.~~7.      Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) because ~~Courville resides~~Defendants reside in this District and ~~Courville~~ published a substantial number of actionable statements to the Internet from this District.

~~3~~

**JA189**

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.8.    Defendant Courville is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Courville worked at Winston Strawn briefly before she and the firm parted ways over Courville's use of social media. On her LinkedIn profile, she identifies herself as President of the defunct Life Treasures Foundation, Inc., and describes her profession as "Legal Commentary on YouTube/Social Media Law."

9.    At all relevant times, Defendant Benipal has provided financial support and acted as a *de facto* producer for various "That Surprise Witness" social media channels—and has himself appeared on the "That Surprise Witness" YouTube with Defendant Courville on numerous occasions and personally made false or misleading statements regarding Jevremović.[22]

10.    Both Individual Defendants have, on information in belief, acted in coordinated efforts to carry out the business of the Entity Defendant.

8.    In July 2020, Courville began to affiliate herself with the "Free Britney" cause célèbre movement, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Courville uses variants of the handle "that surprise witness That Surprise Witness" on her various social media

accounts. She reports Courville reported becoming "obsessed" and using her newfound "legal expertise" to

---

[22] *See* https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 7, 2023) (i.e., at 10:07 "Had [Jevremović] left Amanda alone, Amanda might be alive today…".)

4

**JA190**

11.    interpret the associated law, pleadings, and court opinions and orders. She spread this information online via videos, photos, and text commentary. As the "Free Britney" ~~cause célèbre~~movement gained mass media attention, Courville was invited to give interviews as an attorney ~~among~~. Courville gathered hundreds of followers and viewers during the time that she gave commentary in connection with the Britney Spears ~~fanatics. Courville received attention, praise, and admiration from strangers in reaction to her publications regarding the Britney Spears litigation.~~conservatorship.

~~9.~~12.   However, ~~as~~after Britney Spears' conservatorship was terminated, Courville began to receive less attention~~. She looked~~, and fewer followers and viewers on her various "That Surprise Witness" social media handles. With her followers/viewers in the mere hundreds following the end of the Spears conservatorship, Courville needed to look for other celebrities ~~onto whom to~~ and social media personalities that she could latch ~~and began inventing scandal where none existed.~~onto, to siphon off viewership and followers. Courville found ~~a~~ the perfect combination of entities to tether "That Surprise Witness" to—with Margera (celebrity ~~in entertainer Brandon "Bam" Margera ("Margera") and created a scandal concocting ersatz villains out of Ms.~~), Jevremović ~~and her~~(entrepreneur with social media footprint), and AURA—Jevremović's wellness supplements and healthcare solutions software business~~, AURA~~ that had been generating a lot of attention.

~~10.~~13. In 2019, ~~Ms.~~ Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA ~~uses~~was founded to use technology to scale affordable, high-quality mental health treatment services. The Company ~~supports~~was founded to support mental health professionals using the technology to track patient progress of people undergoing mental health treatment in various ways, *inter alia,* by recording and analyzing

biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, *e.g.*, assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. The Company also produces vitamins/supplements for brain health and mood support and has explored various other means of using technology to enable better health outcomes.

11.14. AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch. Through AURA, Ms. Jevremović supplies mental health assistance tools to numerous individuals free of charge inJevremović supplied mental health assistance tools to numerous individuals free of charge in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product. To that end, AURA had previously provided some services without charge to certain celebrities, influencers, and persons in the public eye—as well as individuals with no public presence as a community social service. Plaintiffs had been a successful and growing business in this regard, until Courville began to leverage the "That Surprise Witness" treatment against created Jevremović and AURA, concocting scandals from Courville's new ersatz villains.

order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding

6

**JA192**

~~the product. To that end, AURA additionally provides services without charge to celebrities, influencers, and persons in the public eye as well as individuals with no public presence as a community social service. Plaintiffs were successful in this regard until Courville began her social media campaign against them.~~

15.     On September 20, 2021, Courville and Benipal formed "That Surprise Witness TV LLC" in New Jersey with file number 0450708640.[23]

16.     Courville and Benipal have co-hosted many of their broadcasts together and otherwise collaborate to carry out Courville's individual actions in support of the Entity Defendant.[24]

## COURVILLE SPREADS FALSE STATEMENTS REGARDING
## DEATH OF AMANDA RABB

~~12.~~17.  One such recipient of AURA's free-of-charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles' notorious Skid Row who turned to sex work to fund her addiction. AURA provided $250,000 to be used by Rabb for a year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate Rabb back into society as a productive, healthy member. Rabb was also given the ~~opportunity~~option to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care professionals. ~~Ms.~~ Jevremović personally funded the majority of Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

---

[23] https://www.njportal.com/DOR/BusinessNameSearch/Search/EntityId (Accessed September 5, 2023).
[24] *See* https://www.instagram.com/p/CvhzNuqAV67/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

7

**JA193**

13. 18. Sadly Tragically, on Sunday, May 9, 2021, staff at the Desert Hope Treatment Center ("Desert Hope") "), where Rabb was receiving treatment (a treatment center not in any way controlled or operated by AURA or Jevremović) found Rabb unresponsive in her bed and unsuccessfully performed CPR. An When an AURA employee contacted the Clark County Coroner's Office, requesting information regarding Rabb's death, Desert Hope indicated relayed to AURA and Jevremović that Rabb only had Tylenol in her system a fact that was verified by a representative of the Clark County Coroner, Dr. Paul Uribe. Dr. Uribe added that Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors. Courville conveniently left out that Jevremović made two separate podcast appearances, on Soft White Underbelly [published on Sep 9, 2022] and No Jumper [published on Sep 28, 2022], to clarify that the information Jevremović was based on conflicting information received from Dr. Uribe.

cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors.

8

**JA194**

19.    It is not a coincidence that Courville launched her campaign of lies and misinformation surrounding the Rabb tragedy, around the time that Jevremović became involved as a court-appointed guardian to seek to help Margera in his fight with addiction. Some of Margera's unsavory associates such as Beedle and Pingor egged on Courville's efforts as a vigilante muckraker. These associates did not want to see Margera get better—these desultory individuals wanted to continue to take advantage of him financially and to borrow on Margera's fame—and they urged Courville to amplify her false claims to further these ends.

20.    So it was that Courville's thirst for online stardom was wedded with a deliberate effort to destroy Jevremović and AURA. Courville's campaign against Jevremović and AURA was amplified at the urgings of Beedle and Pingor, who sought to wild Courville's influence to punish Jevremović for trying to help Margera in his battle with the demons of addiction.

21.    Defendants' blitz of false statements regarding Jevremović and AURA, analyzed in detail below, began in February 2022 and has continued through September 2023, a modern media manipulation that has been pervasively toxic and wide ranging. While Defendants' social media blackmail effort began impugning with Jevremović and AURA making false suggestions that Jevremović had played some part in Rabb's cause of death, the media offensive has expanded to accusing of Jevremović of numerous additional humiliating falsehoods. See Count I, *infra*. Working Defendants' social media adherents into a dangerous frenzy, with Courville's adherents now labelling themselves "That Surprise Army", the crusade has escalated to dangerous cyber-harassment and doxing to intimidate Jevremović into dropping this lawsuit and gain clicks with fear mongering, which has increasingly crossed over from online commentary into real world effects that have caused a well-founded fear in Jevremović and her family for their personal safety.[25]

---

[25] *See, e.g., Hate Speech on Social Media: Global Comparisons*, COUNCIL FOR FOREIGN RELATIONS, at https://www.cfr.org/backgrounder/hate-speech-social-media-global-comparisons ("Users' experiences online are mediated

**JA195**

22.   All the while, Defendants have callously profiteered from this behavior in the form of advertising revenues.

**COURVILLE SPREADS FALSE STATEMENTS REGARDING JEVREMOVIĆ'S INVOLVEMENT WITH BAM MARGERA**

~~14.~~23. Celebrity entertainer Margera and his wife, Nicole Boyd-Margera ("Boyd-Margera"), took an interest in AURA in the ~~Spring of 2021~~Winter 2020. Margera has starred in blockbuster Jackass movies and popular television programs. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addictions over the previous two decades. Because of his background, Margera and Boyd-Margera initially sought to provide their support to Plaintiffs' ~~worthy cause.~~efforts to mediate addiction and improve related health outcomes. However, when Margera ~~relapsed soon thereafter, and~~ proved susceptible to multiple relapses in his battle with addiction, Margera's family approached ~~Ms.~~ Jevremović for intervention assistance.

~~15.~~   On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed ~~mental disorder.~~medical issues. When Margera's family and friends implored ~~Ms.~~Jevremović to serve as Margera's temporary guardian~~. Ms.~~, Jevremović agreed and took on the responsibility for overseeing Margera's ~~care and~~ treatment, ~~effected by court order. Ms. Jevremović was given no control over or insight~~which was put into ~~Margera's finances. Also~~effect by Court Order, with no connection to his financials or other aspects of his life. Indeed, despite the fact that the ~~Ms.~~Jevremović ~~is~~was

---

by algorithms designed to maximize their engagement, which often inadvertently promote extreme content. Some web watchdog groups say YouTube's autoplay function, in which the player, at the end of one video, tees up a related one, can be especially pernicious. The algorithm drives people to videos that promote conspiracy theories or are otherwise 'divisive, misleading or false,' according to a Wall Street Journal investigative report. 'YouTube may be one of the most powerful radicalizing instruments of the 21st century,' writes sociologist Zeynep Tufekci.") (Accessed September 1, 2023.)

**JA196**

statutorily permitted to collect reasonable sums for her services as guardian, ~~Ms.~~ Jevremović has received no compensation whatsoever, directly or indirectly, ~~in association with her status~~ as Margera's guardian.

24.     Rather, Margera's father has been assisting Margera ~~began treatment at a drug rehabilitation facility in Florida. However, Margera left this facility, and his whereabouts were unknown~~ in managing his finances for ~~several weeks while he engaged in risky~~ many years at Margera's request, and ~~self-destructive behaviors consistent with his mental disorder. Margera was found and involuntarily placed in the custody of another drug rehabilitation facility. Ms. Jevremović assisted in helping Margera obtain further treatment in Florida.~~ Jevremović's appointment as a temporary guardianship never touched upon Margera's money in any way.

~~16.~~ 25. After the court-~~-~~ordered guardianship terminated, Margera requested that ~~Ms.~~ Jevremović continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery.

**JA197**

~~17. Margera's guardianship and substance abuse treatment received press coverage.~~

26. ~~Courville pried into Margera's public records – discovering Ms. Jevremović's involvement – and formulated a conspiracy theory.~~ After learning that Jevremović was involved in Margera's recovery, Courville began publishing videos, photos, and text commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam." ~~On her Instagram account, Courville proudly calls herself a "conspiracy theorist."²~~

27. ~~Courville's theory is~~ Courville began with baseless assertions that Margera's family~~,~~ ~~friends,~~ and ~~business partners used~~ Jevremović manipulated a court-imposed guardianship ~~to remove Margera~~ as ~~an obstacle~~ a tool to ~~co-opting his~~ access Margera's assets~~. Courville baselessly asserts~~, and that ~~Ms.~~ Jevremović is committing and assisting in the commission of criminal acts and that ~~Ms.~~ Jevremović is dishonest and promulgates lies. ~~In formulating conspiracies about Ms. Jevremović~~

~~18.~~28. At the same time, on a parallel front of Defendants' concerted media campaign, Courville ~~further latched onto~~ manipulated the ~~publicity~~ background of facts surrounding the Rabb~~,~~ ~~her treatment, and her ultimate death. Courville~~ tragedy, and published videos, photos, and textual commentary in which she falsely accused ~~Ms.~~ Jevremović of criminal acts and dishonesty. ~~Springing from Courville's publication of these false allegations, Courville has inspired a throng of similarly celebrity-obsessed fans to harass, threaten, and attack Ms. Jevremović, her family, and her business.~~

~~19. Courville has published to the Internet Ms. Jevremović's social security number, date of birth, home phone number, and family members' addresses, among other pieces of highly personal and sensitive information. Additionally, Courville published information~~

~~12~~

**JA198**

regarding Ms. Jevremović's family — including pictures of her husband and mother in law — as well as the identities of Ms. Jevremović's sisters and details of their medical histories. After being besieged

---

[2] Courville published an illustration on or about May 31, 2022, in which a "conspiracy theorist" is defined as "[s]omebody who figures out *the truth* before most people" (emphasis added), and she commented on the illustration with "#FreeBam."

13

~~in their home in Washington state by Courville's devotees, Ms. Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.~~

~~20.~~29.  ~~Moreover, Courville's defamatory statements of or about Plaintiffs directly interfered with~~Defendants' statements become so prolific that they all but wiped any legitimate results regarding Jevremović and AURA from the first few pages of Google search results regarding either Plaintiff. Defendants directly disrupted AURA's second round funding, causing potential investors actively involved in funding discussions to retreat. ~~Additionally, Courville's defamatory statements of or about Plaintiffs have interfered with AURA's launch of a new product line of vitamin supplements, directly resulting in order cancellations and the withdrawal of marketing affiliates.~~

~~21.      Courville has expressly invited the present lawsuit, believing that Ms. Jevremović cannot defend herself because to do so would be prohibitively expensive, stating:~~

> ~~Lima, if you think you're going to be in a lawsuit with me, I dare you to sue me in a lawsuit because I'm a lawyer. I will pay zero dollars for law services, and you will have to pay lawyers who are at least as smart as me to fight against me, which is not cheap; it is very expensive to hire lawyers who are as smart as me. So, have at it if you motherfucking think that you have a snowball's chance in the goddamn fireplace, but you don't.~~

~~Brittany Jeream Courville (That Surprise Witness TV), *Is Bam Free? | Lawyer Reacts*, YouTube (May 18, 2022), https://www.youtube.com/watch?v=852cOZLBNZA&t=518s&ab_channel=ThatSurpriseWitnessTV. Courville will now receive what she requested.~~

30.     Courville's false and misleading statements about Plaintiffs have directly interfered with AURA's business and caused deep financial disruption to Jevremović, directly resulting in order cancellations and the withdrawal of marketing affiliates.

### ACTUAL MALICE

~~22.~~     Courville knew and ignored the fact that no evidence demonstrated ~~Ms.~~

~~14~~

Jevremović to be dishonest, and knew and ignored the fact that no evidence demonstrated Ms.

31. Jevremović to be a criminal, because her true motivations were to create a smear campaign that would increase views, divert Jevremović from effectively acting as guardian to Margera, ruin Jevremović's business, and eventually seek revenge on Jevremović for filing this lawsuit.

23.32. At least at the outset, Courville had a preconceived story line, *i.e.*, that Ms. Jevremović must be acting improperly, prior to learning any facts regarding Ms. Jevremović, and Courville purposefully twisted and misrepresented information in order to fit her preconceived story line.whatever manner would accomplish her purpose of dissuading Jevremović from acting as a guardian for Margera.

33. That purpose changed over time to a more generalized goal of destroying Jevremović and AURA at any cost, out of an obsessive interest in Jevremović that developed over the course of the conduct.

34. Defendants also purposefully sought to reap the benefits that disinformation and online harassment have in the form of increased viewership and followers for Defendants' social media channels.

24. Courville was aware that her statements of fact were untrue based on their inherent

35. improbability—such as outlandish and unfounded assertions that Jevremović is involved in human trafficking.

**JA201**

25.     Courville took steps to deliberately avoid learning the truth regarding Ms.

36.     Jevremović, despite the fact that such information was available to her. For instance, in her most viral video titled "Virtual Reality Hell", Courville asserts that Rabb's father was a molester eight times and suggests that Jevremovic was working with a molester to coordinate Rabb's treatment[26], while at the same time, aware that Rabb had come out to clear her father's name before her tragic death.

37.     Courville's Courville specifically posted that her intent in pursuing AURA was specifically "trying to stop [AURA] before it even gets off the ground."[27]

26.38.  Defendants' videos air advertisements from which she they personally profits profit. Thus, Courville is Defendants are incentivized to publish and disseminate shocking and untrue materials[28], materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during her their videos.

27.39.  Courville further solicits and collects donations directly from viewers during her live broadcasts *via* YouTube, and Courville operates a site to solicit donations on gofundme.com. Courville has a Patreon account (an organization that provides users tools with that has generated $48,108 in donations thus far.[29] Courville has a Patreon account[30] (an organization that provides users tools with which to fundraise) where she has generated paying subscribers, and where Courville solicits additional funds for in-depth "investigations" and videos in furtherance of her campaign. Defendants promote branded "That Surprise Witness TV" merchandise, deriving income

---

[26] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2.

[27] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[28] https://news.mit.edu/2018/study-twitter-false-news-travels-faster-true-stories-0308 (Accessed September 1, 2023)("[F]alsehood diffuses significantly farther, faster, deeper, and more broadly than the truth, in all categories of information, and in many cases by an order of magnitude.)

[29] https://www.gofundme.com/f/facts-aint-defamation-fund ("Facts Aint Defamation Fund").

[30] https://www.patreon.com/thatsurprisewitness/posts (Accessed August 20, 2023.)

16

from their activities.[31] Defendants derive income via false, misleading and defamatory statements, that also serve to generate more buzz and more viewers.

~~which to fund-raise) in which she has 148 paying subscribers and where she solicits additional funds for in-depth videos on her conspiracy theories. Courville also uses her social media accounts to drive income through the sale of branded merchandise. Courville thus drives her income via defamatory statements.~~

~~28.~~40.  On July 15, 2022, Plaintiffs contacted Courville in writing to demand retraction of defamatory statements. To the extent Courville disclaimed any of her defamation, her attempts were patently pretextual and obviously insincere. On July 22, 2022, Plaintiffs again contacted Courville in writing to identify further defamatory statements and to demand their retraction. ~~No retraction issued~~No retraction issued and instead, Courville issued retaliatory false claims that suggested Margera was an investor in AURA[32]—which has never been true.

41.      Courville and Benipal's doxing and harassment goes far beyond any sort of alleged social commentary, and on information and belief, is instead motivated by a desire to bring down Jevremović at any cost, even if it means exposing Jevremović to physical harm.

42.      This conduct has forced Jevremović to file police reports in New Jersey, California, and Oklahoma—and the LAPD Threat Management Unit is currently investigating Courville's actions as potentially criminal instances of stalking.

43.      Jevremović was forced to apply for a Restraining Order in California based on the actions of Courville's followers after they were armed with Jevremović's address, and as a result,

---

[31] https://thatsurprisewitness.com/products/facts-aint-defamation-black-hoodie (Accessed September 1, 2023.)
[32] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)(at Time Stamp 36:45-37:06: "Question whether that is ethical or appropriate for someone [Margera] who is basically an investor in your business [AURA] and now you put them under a conservatorship like I don't know about the actual laws behind that but that doesn't seem appropriate that you could be the someone's guardian or conservator and they have purchased a stake in your business".)  Margera has never been an investor in AURA.

Courville is subject to a Preliminary Restraining Order (attached as Exhibit 1), which includes an Order to Cease further social media posting about the protected parties (Jevremović, her sister and Jevremović's husband) with a hearing scheduled for September 25, 2023 to determine if a permanent restraining order will issue on the basis of Courville's malevolent conduct.

**WITH INTEREST IN DEFENDANTS' SOCIAL MEDIA CHANNELS WANING, COURVILLE HAS TURNED TO INCREASINGLY EXTREME ONLINE BEHAVIOR TO MAINTAIN VIEWERSHIP AND FOLLOWERS**

44.     Additionally, it would seem that Defendants have resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremović and prevent Jevremović from maintaining this lawsuit, which was a goal stated by Courville in a YouTube video.[33]

45.     Courville's intent to seek to get Jevremović to drop this lawsuit has been a pervasive theme in the past year with Courville doxing even Jevremović's attorney, providing Neville L. Johnson's image in connection with her video criticizing the lawsuit[34]:



46.     Courville's unlawful activities have further evolved into a personal obsession with Plaintiff, and continuously increasingly disturbing incidents of harassment and doxing.

---

[33] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39 (Accessed September 8, 2023.)
[34] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)

18

47.     Over the course of nineteen months of harassment, the Defendants have caused to be published over 300 videos across various forms of social media that are about Jevremović, with a total of 2,802+ minutes (46.7 hours), 8,000,000+ views across YouTube, Rumble, Instagram, Twitter and TikTok, and with over 1000 posts to Instagram and Tiktok about Jevremović. This does not include hundreds of other posts on Instagram and other forms of social media.

48.     In one especially humiliating post on April 22, 2022, Defendants caused to be published a photograph[35] on the @ThatSurpriseWitness Instagram handle, falsely communicating that Courville had found an OnlyFans[36] page for Jevremović—a profile page which links to pornographic films and photographs that are not Jevremović, as pictured below:



---

[35] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)

[36] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

19

**JA205**

49.     Courville has amplified the harm[37] to Jevremović from her campaign by including the false allegation regarding Jevremović's involvement in pornography, without any conceivable legitimate purpose except to harass and cause harm to Jevremović's reputation.[38]

50.     Courville has at various times published to the Internet Jevremović's social security number, date of birth, unlisted home phone number, and three of Jevremović's unlisted home addresses[39], her family members' addresses, among many other pieces of highly personal and sensitive information in a coordinated and intentional doxing campaign.

51.     Additionally, Defendants' publication of Jevremović's sisters addresses, resulted in the kidnapping and rape of Jevremović's sister, Dahlia, soon after the publication of Dahlia's otherwise private address.

52.     After being besieged in their home in Washington state by Courville's devotees, where Courville encouraged followers to "make some noise" directed towards Jevremović, Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

53.     As recently as August 2023, Defendants' "@thatsurprisewitness" handle on Instagram included a post with comments that included Jevremović's home address (in Courville's moderated comments section), which has resulted in Jevremović's needing to relocate and go into hiding, as drones were dispatched to her home and strangers began to appear near her front yard,

---

[37] Mary Anne Franks, Unwilling Avatars: Idealism and Discrimination in Cyberspace, 20 Colum. J. Gender & L. 224, 255 (2011) ("[W]omen's unwilling online embodiment is in effect a double-embodiment is one of the reasons that cyberspace harassment of women should be taken seriously. Women are frequently objectified in real life in ways that negatively impact their health, careers and general well-being, and are then re-objectified online in ways that also negatively impact their health, careers and general well-being. In the offline world, women are disproportionately "bodied"-over-identified with their physical characteristics-through their physical vulnerability relative to men and their historical, legal, and social objectification."); https://www.pewresearch.org/internet/2021/01/13/the-state-of-online-harassment/ ("Women targeted in online harassment are more than twice as likely as men to say most recent incident was very or extremely upsetting.")

[39] *See, e.g.,* https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

20

**JA206**

lurking inexplicably, almost immediately upon this information being released on Defendants' "@thatsurprisewitness" Instagram handle:[40]



54.     Followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise" at Courville's urging, including on one of Courville's posts featuring private bodycam footage of Jevremović's mother and Jevremović's sister.[41]

55.     After years of Defendants' assault on Jevremović, many previous collaborators of Jevremović's have fallen away. For example, Jevremović used to collaborate with Chloe Wilkinson on video projects relating to Wilkinson's "DissociaDID" social media channel and supported each other through difficult times, communicating through WhatsApp, for many years, until in August 2022, after Wilkinson became aware of Defendants' content regarding Jevremović, Wilkinson publicly denounced, ceased all future collaborations with Jevremović and blocked Jevremović on whatsapp based on Defendants' content. This caused Jevremović to lose a valuable friendship, and

---

[40] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023) (the post has since been edited to remove the comment that included Lima's home address, but the screenshot above includes the post as originally listed).
[41] https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

to lose further followers and viewers on her own social media channels, as a result of losing this valuable cross platform collaboration.

56.     Likewise, Courville's obsessive harassment and doxing has placed Jevremović in a false light, suggesting in turn that Jevremović is, by turns, a human trafficker[42], the cause of Amanda Rabb's death[43], a plotter out for Margera's money, a pornographic actress, and myriad other mistruths.

57.     Her followers tend to believe many of these items[44] especially because of Courville's background as a lawyer, where she has made numerous statements based on her "education, knowledge, and experience."[45]  Indeed, many of Courville's most serious false accusations have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata."[46]

58.     After nearly two years of Defendants' hundreds of postings about Jevremović and AURA, the top search engine results for Jevremović and AURA are now almost all Defendants' false and/or intimidating social media content.

59.     At the same time, Defendants' videos regarding Jevremović make up more than half of Courville's top ten most viewed videos, from which it can be inferred that Courville has operated with the awareness of the economic potential from distributing falsehoods about Jevremović.

---

[42] https://www.instagram.com/p/CcizM8YlOrq/?img_index=1 (Accessed September 8, 2023.)

[43] May 30, 2022 Instagram Post, at https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed September 8, 2023) (falsely suggesting Jevremovich's "Last ward died in her care and she lied about the cause of death.")

[44] https://www.socialmediatoday.com/news/new-report-shows-that-facebook-and-youtube-lead-the-way-as-key-sources-of-n/606877/ (Accessed September 8, 2023.)

[45] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney….".)

[46] *See* https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); *see also* https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); *Cf.* Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

22

**JA208**

60.     Accordingly, Defendants' activities have destroyed AURA's abilities to operate professionally or commercially and caused massive financial harm to both Plaintiffs.

61.     As a result of the foregoing activities alleged regarding Defendants, AURA has lost countless investors and revenues have declined to near null.

62.     Defendants' activities have caused substantial and irreversible damage to Jevremović's career and reputation, and her career as an entrepreneur and healthcare activist has been nearly destroyed.

63.     Defendants' activities have destroyed Jevremović's prior income from social media, which was substantial prior to Courville's siphoning off Jevremović's followers/viewers by way of the unlawful activities.

## FIRST COUNT

### LIBEL

### (By Plaintiff Lima Jevremović against All Defendants)

~~29.~~64.  Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through ~~28~~63 as though fully set forth ~~herein.~~in this paragraph.

~~30.~~65.  On May 30, 2022, Courville published via Instagram the ~~statement:~~statement[47]:

---

[47] https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed August 28, 2023.)

23

**JA209**

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

31. 66. This statement is defamatory as it expressly impugns Ms. Jevremović's honesty and is wholly false.

67. In this same statement, published alongside photos and videos of Jevremović at Disneyland with Bam Margera and his family, Courville refers to Jevremović as a "handler[] and trafficker[]."

68. This statement is defamatory as it characterizes Jevremović as a trafficker, and thus a criminal, which she is not.

32. On April 19, 2022, Courville published an image of Ms. image[48] of Jevremović reading

69. Amanda's cause of death (as per the information obtained by an AURA employee from the Clark County Coroner) from a YouTube video to Instagram with the caption:

> I requested the autopsy report and lima is lying in this video. There was NO evidence of traumatic injury. There was LOTS [sic] of medication in her system (not 'only Tylenol'). The cause of death has nothing to do with 'seizure disorder', but rather cardiac arrhythmia. I've posted on [Instagram]about it.

33. 70. This is defamatory insofar as it falsely accuses Ms. Jevremović of dishonesty, whereas Ms. Jevremović in fact accurately conveyed the information that the Clark County Coroner had conveyed to AURA.

34. On April 19, 2022, Courville published photos photos[49] of Amanda Rabb's "Report of

71. Investigation" record obtained from the Clark County Coroner, and Courville published comments stating:

> Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1. WAYY

---

[48] https://www.instagram.com/p/CciSZGpOyPH/ (Accessed August 30, 2023.)
[49] https://www.instagram.com/p/CciRdYbuxUX/?img_index=1 (Accessed August 30, 2023.)

24

**JA210**

_[sic] more than just Tylenol in her system (including cannibinoids [sic] and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS.

35.72. These false statements are defamatory insofar as they impugn ~~Ms.~~ Jevremović's honesty.

honesty.

36.    On April 19, 2022, Courville published ~~a video~~a video[50] of ~~Ms.~~ Jevremović reading

73.    Amanda's cause of death (as per the information obtained from the Clark County Coroner) from a YouTube video to Instagram. Courville commented on the video, stating:

---

[50] https://www.instagram.com/p/CciQwHOO-Ux/ (Accessed August 30, 2023.)

25

**JA211**

So lima from @~~meetaura~~meetAURA BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'. I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie?? #FreeBam #AmandaRabb.

~~37.~~74.  This false statement is defamatory insofar as it impugns ~~Ms.~~ Jevremović's honesty.

~~honesty.~~

~~38.~~ On April 3, 2022, Courville published an ~~image~~image[51] on Instagram which purports to

75.  list biographical information about Margera, including his putative net worth ($20 Million). Courville commented on the image:

According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 😭😭😭😭😭😭 🤣 🤣 🤣 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂😂😂😂😂😂😂😂 😂 👽 👽 #FreeBam.

Another commenter states:

20 million now, soon to be much less, but it'll all be 'legit,'

to which Courville responds:

but a certain someone will have fresh lips, Botox, and a BBL watch.

Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Courville's comments here to reference ~~Ms.~~ Jevremović – in fact, people did comment in response who understood the messages to reference ~~Ms.~~ Jevremović.

~~39.~~ These statements are defamatory insofar as Courville falsely characterizes ~~Ms.~~

76.  Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such statements are defamatory as they falsely impute a motive to ~~Ms.~~

---

[51] https://www.instagram.com/p/Cb5b59wFxIg/ (Accessed August 30, 2023.)

**JA212**

Jevremović, which most people would find condemnable. ~~Courville further reveals her insincerity with respect to the "conspiracy theory" label and "conspiracy theorist" moniker: a commenter states:~~

27

Please stop with conspiracy theory that have proof and makes sense. You give us true conspiracy theorist who talk about nonsense with no proof look brilliant😂😂😂😂😂😂😂😂. Keep up the good fight

and Courville responds with

😂😂😂😂😂😂 I just say it so they can't use that stupid sh[i]t against me. The smart people know when they're looking at evidence in the face. The ones who know, know 😂😂😂😂.

40.     Courville thus disclaims language that implies her statements are anything but sincere.

41.     On March 30, 2022, Courville published to Instagram an ~~excerpt~~excerpt of a YouTube

77.     video[52] in which ~~Ms.~~ Jevremović and Larry Rabb, Amanda Rabb's father, describe how they managed to transfer Amanda from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Courville states that Amanda's public defender is not supposed to:

help you push your scam conservatorship through.

~~42.~~78. This statement is defamatory per se insofar as it accuses ~~Ms.~~ Jevremović of a scam with reference to attempting to impose an LPS conservatorship on Rabb; this imputes criminality or at least immorality and is thus defamatory.

43.     On May 7, 2022, Courville published a ~~photo~~photo[53] to Instagram picturing Margera's

79.     costars from his television show and movies performing a stunt, and Courville captioned the photo:

[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy

---

[52] https://www.instagram.com/p/CbVTro1JLYk/
[53] https://www.instagram.com/p/CdQOLU9OQxl/

**JA214**

And

    #FREEBAM.

**JA215**

She further published a comment on the photo stating,

> Let the #conspiracytheories roll #freebam.

44.80. These statements were defamatory as they falsely imply that Ms. Jevremović, as a person Courville repeatedly identifies as responsible for Margera's confinement, is a criminal and engaged in a criminal conspiracy.

45. On May 6, 2022, Courville published a picturepicture[54] of Margera to Instagram, overlayed

81. with an anonymous person's statement criticizing Courville's publications:

> the whole #freebam thing is so weird and i [sic] strongly believe that [Courville] is a conspiracy theorist. if [sic] she was an actual lawyer[,] wouldn't she actually be busy? sorry [sic] i'm [sic] not buying it

Courville published a comment in response:

> I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy. So they're right! #freebam.

46.82. This statement is defamatory as it implies that Ms. Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy. with respect to her previous involvement with Margera—which is false and misleading, and has caused harm to Jevremović.

47. On May 4, 2022, Courville published an imageimage[55] to Instagram containing mostly

83. text; the text is a republication of a comment previously made by Courville, which of relevance includes:

> . . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by

---

[54] https://www.instagram.com/p/CdOTKe4OFcG/
[55] https://www.instagram.com/p/CdJHr4Yu7WI/

30

JA216

a group of criminal co-conspirators for financial purposes not in [Margera's] best interest—. . . . #freebam SPREAD THE WORD.

48. This statement constitutes defamation insofar as it implies that Ms. Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged

31

**JA217**

84. in a criminal conspiracy and is attempting to co-opt Margera's assets. Further, Courville encourages her audience to further publish her statements.

49. On May 4, 2022, Courville published an ~~image~~image[56] on Instagram regarding Margera,

85. and a user, "pettyhearst," commented thereupon stating:

I've been a [Margera] fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge[,] I would at least have peace of mind that there is no malicious intent. But they aren't in charge[;] Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating [Margera's parents].

86. Courville published a reply directly to this statement expressing agreement:

bingo.
~~50.~~
~~51.~~87. This statement is defamatory insofar as Courville affirmed the false statements made by the anonymous commenter, thus adopting those comments as her own. These statements assert that ~~Ms.~~ Jevremović is manipulating persons for her own gain (impugning ~~Ms.~~ Jevremović's honesty) and imply that ~~Ms.~~ Jevremović is not acting in Margera's interest, that ~~Ms.~~ Jevremović is responsible for Rabb's death ("blood on her hands" – in conjunction with Courville's other defamatory statements with respect to ~~Ms.~~ Jevremović and Rabb, this is a reference to ~~Ms.~~ Jevremović allegedly being at fault for Rabb's death), and that ~~Ms.~~ Jevremović has malicious intent.

52. On April 27, 2022, Courville published on Instagram an ~~image~~image[57] showing a digital

88. message sent to her in which Courville is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"). Courville captioned the image:

SUE ME

---

[56] https://www.instagram.com/p/CdJDkylMVl_/
[57] https://www.instagram.com/p/Cc3Ch4YLTYb/

32

**JA218**

and published a comment on the image, stating:

> The only facts that were imagined came from Lima Jevremović's lying ass mouth.

53. This false statement is defamatory insofar as it impugns ~~Ms.~~ Jevremović's

89. honesty. Courville further published a comment to this image, stating:

if telling the truth is 'damaging to others' and those others are criminals, SO BE IT.

~~54.~~90. This statement is defamatory insofar as it implies that "others" is ~~Ms.~~ Jevremović and

thus falsely implies that she is a criminal (the "others" referenced is clearly a reference to ~~Ms.~~

Jevremović, in context).

55. On April 27, 2022, Courville published on Instagram another ~~image~~image[58] showing a

91. portion of the message sent to her. Courville published a comment associated with

the image that reads in relevant part:

Or is it maybe because the public record doesn't agree with the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??.

~~56.~~92. This statement is defamatory as it impugns ~~Ms.~~ Jevremović's honesty by implying

that she fabricated a "fake[,] imaginary tale" to mislead people. In a separate comment, Courville

further answers a question about ~~Ms.~~ Jevremović's description of HIPAA's application to Rabb,

stating:

because they lie.

~~57.~~93. This is defamatory as it is false and expressly impugns ~~Ms.~~ Jevremović's honesty.

58. On April 26, 2022, Courville published to Instagram a ~~screenshot~~screenshot[59] showing the

---

[58] https://www.instagram.com/p/Cc21n0Isp74/
[59] https://www.instagram.com/p/Cc1UinJsWvQ/

~~34~~

94.        "gofundme" donation page for Rabb's treatment, which then indicated that no new donations would be accepted. Courville commented on this photo with the statement:

Thanks for taking down your fraudulent fundraiser lima!

59.95.  This statement is defamatory as it falsely imputes criminality to ~~Ms.~~ Jevremović, expressly accusing her of fraud.

~~expressly accusing her of fraud.~~

60. On April 25, 2022, Courville published on Instagram an ~~excerpt~~excerpt[60] from a Complaint

96. previously filed by Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

In response, Courville states:

> the plan is to end his life. I'm convinced of it. #savebam.

~~61.~~97. This statement is defamatory insofar as it alleges that those involved in "the plan" are seeking to kill Margera; in context with Courville's statements regarding ~~Ms.~~ Jevremović being central to Margera's treatment, one can reasonably infer that Courville is falsely referencing ~~Ms.~~ Jevremović as planning to kill Margera.

62. On April 25, 2022, Courville published to Instagram a ~~screenshot~~screenshot[61] showing that

98. the "Donate now" button was still present on the "gofundme" donation page for Rabb's treatment. Courville commented, asking Gofundme:

> can you return the funds that have been fraudulently collected from donors on this fundraiser?

and stated,

> many people have reported this fraudulent fundraiser and your organization has taken no action.

Elsewhere, Courville states that ~~we've reported [fraud] a lot~~

---

[60] https://www.instagram.com/p/CcxsX9HsR9H/
[61] https://www.instagram.com/p/CcxeH1hOK1d/

36

**JA222**

we've reported [fraud] a lot

63.    These statements are defamatory as they falsely accuse Ms. Jevremović of

99.    criminal behavior – namely, fraud.

37

64.    On April 19, 2022, Courville posted an ~~image~~image[62] comprising text with the tip line for

100.    human trafficking from the National Human Trafficking Hotline, and Courville commented: "#FreeBam." Courville specifically highlighted the phone number and the text stating,

REPORT A TIP with information on potential human trafficking activity.

~~65.~~101.    Courville further added a second photo, depicting a cell phone call to a phone number with five minutes having elapsed, the implication being that Courville had called to report Margera as being trafficked to the National Human Trafficking Hotline. A commenter asks in response:

There [are two] different numbers?!

to which Courville answers:

yeah[,] there's a few[.] I called a different tip line[,] but you can call either one.

~~66.~~102.    This is defamatory because Courville implies that Margera is being trafficked, a criminal act, and in the context of her other statements used in connection with the "#FreeBam" tag, it is clear that she views ~~Ms.~~ Jevremović as central to this effort. In the context of her statement that she has called to report Margera's situation as human trafficking and in light of her explicit instructions to a commenter to call, Courville intends this statement to be understood sincerely.

67.    On April 19, 2022, Courville published an ~~image~~image[63] on Instagram containing a short

103.    conversation between Courville and a commenter. The commenter accurately stated:

[Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

68.    As recounted in the discussion of Margera above, he was subject to a

---

[62] https://www.instagram.com/p/CcizM8YlOrq/
[63] https://www.instagram.com/p/CcibN0JOx89/ (Accessed September 8, 2023.)

~~38~~

**JA224**

guardianship imposed in Arizona, and at no relevant time has a conservatorship been imposed.

Nonetheless,

39

104.   Courville invokes her credentials, suggests she holds expertise, again provides an inaccurate interpretation of the law, and solicits viewers for her advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

In response, a commenter remarked:

> Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

Courville, apparently drawing upon her self-avowed lawyerly expertise, explains: ~~it's to confuse people so the criminals can keep crim[e-]ing.~~

> it's to confuse people so the criminals can keep crim[e-]ing.

~~69.~~ 105.     This is defamatory insofar as, in the context of discussing Margera, it falsely states effectively that the guardianship system is a criminal tool, and thus by implication that ~~Ms.~~ Jevremović, as Margera's guardian, must be a criminal.

~~70.~~     On April 19, 2022, Courville published on Instagram a ~~screenshot~~screenshot[64] of a conversation between unidentified persons regarding Margera; Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker." On April 19, 2022, Courville published on Instagram ~~screenshots~~screenshots[65] of excerpts from a tabloid story about Margera's recovery,

106.   with a section of the article highlighted. Courville commented on the screenshot regarding Margera's recovery, in relevant part, by stating: "#FreeBam" and "#EndHumanTrafficking."

---

[64] https://www.instagram.com/p/CciJ3HsuFlX/ (Accessed September 5, 2023.)
[65] https://www.instagram.com/p/CciIldIukcw/ (Accessed September 1, 2023.)

40

**JA226**

71.107.　　　These statements are defamatory as they imply that ~~Ms.~~ Jevremović is trafficking Margera. While these statements might ordinarily be readily understood as hyperbole, Courville's repeatedly holding herself out as a legal expert and her repeated emphasis of her use of legal language in its technical sense would reasonably lead a significant portion of her audience to understand the implications of these statements literally.

**JA227**

72.  On April 18, 2022, Courville published a ~~screenshot~~screenshot[66] of a highlighted excerpt from

108.  an article discussing the application of Iceland law and whether Margera's and his wife's marriage is legally recognized. A commenter on this image asked:

where are his parents?

to which Courville responded:

helping the criminals [sic] girl.

73.  This statement is defamatory insofar as Courville's constant association of ~~Ms.~~ 109.  Jevremović with Margera's treatment naturally leads Courville's audience to understand "girl" in this context to reference ~~Ms.~~ Jevremović; these false statements are defamatory insofar they assert that ~~Ms.~~ Jevremović is a criminal, which she is not.

74.  On April 3, 2022, Courville posted a ~~screenshot~~screenshot[67] of an excerpt of a celebrity tabloid

110.  article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth"; Courville commented on the photo, saying:

I heard forced rehab is expensive… I learned that from Lima from @~~meetaura~~meetAURA. Who now has @bam ~~-~~ margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😂😂😂 #FreeBam.

~~75.~~111.  By linking the cost of rehabilitation, as described by ~~Ms.~~ Jevremović, to the supposed depletion of Margera's net worth, Courville is falsely characterizing ~~Ms.~~ Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such a statement is defamatory as it falsely imputes a profit motive to ~~Ms.~~ Jevremović which most people would find condemnable.

---

[66] https://www.instagram.com/p/Ccf9UdxuHYc/ (Accessed September 1, 2023.)
[67] https://www.instagram.com/p/Cb5djK4FXNI/ (Accessed September 8, 2023.)

42

~~76.~~112.    On March 30, 2022, Courville published to Instagram a ~~screenshot~~screenshot[68] of comments made to Instagram; a commenter asked:

made to Instagram; a commenter asked:

> forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

---

[68] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed September 8, 2023.)

Courville responded:

> I mean… that's my impression, so if you're wrong[,] I am too.

77.    Courville thereby explicitly adopted the commenter's false statements. Ms.

113.   Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Ms. Jevremović is exploiting celebrities for money. Such false statements are defamatory as they indicate dishonesty and insofar as people hold low opinions of those who exploit others.

78.    On April 4, 2022, Courville published to YouTube a video video entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT"[69] in which she defames

Ms. Jevremović. At 27:39, Courville describes Margera's transfers between treatment facilities

114.   and states:

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

79.115.    This statement defames Ms. Jevremović insofar as Courville repeatedly identifies Ms. Jevremović as responsible for Margera's treatment, and insofar as Courville, invoking the authority she commands as a lawyer, describes aspects of Margera's treatment as criminal.

80.    On July 15, 2022, Courville published to YouTube a video video entitled "Bam's Guardian LASHES OUT | Breaks Silence on #FreeBam – Reaction"[70] in which she reacts to

116.   Ms. Jevremović's public statements addressing, *inter alia*, Courville's harassment ("the relentless harassment, leaking all of my private information all over the internet, threats to my

---

[69] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed September 8, 2023.)
[70] https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 8, 2023.)

44

**JA230**

family and clients, constantly reporting my social media accounts and businesses and the over

14,000 emails that have cluttered my inbox"). At 05:05 Courville states

I also know Lima [is] a liar.

~~81.~~117.     This is defamatory insofar as Courville expressly impugns ~~Ms.~~ Jevremović's

honesty without basis.


~~honesty.~~

82. Later in the same ~~video,~~ video, at 26:08, Courville addresses the discrepancy between

118. ~~Ms.~~ Jevremović's description of Rabb's cause of death and the official autopsy report and states:

> ~~[Ms.~~ [Jevremović] can't keep track of her story. And that's what happens when you lie; you have to keep track of the lies you told.

83. This is defamatory insofar as it expressly characterizes ~~Ms.~~ Jevremović's

119. statements as lies, when in reality, Jevremovic's alleged false statements emanated from an email with conflicting information which Jevremovic read from in a video Courville cites as inaccurate.[71] Clark County did not provide Jevremovic with the complete autopsy report citing HIPAA law as the reason for not providing the full document—which Courville somehow obtained and publicized in attempts to discredit Jevremović. In reality, Jevremović read from the information she was provided.

~~84.~~120. On July 8, 2022, Courville published to YouTube a ~~video.~~ video entitled "Bam's Family Breaks Silence on #FreeBam | Jess and April Margera SPEAK OUT."[72] At 6:10, she states:

> I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

~~85.~~121. Courville thus emphasizes that her statements are accurate and factual. At 15:59, Courville describes herself as

~~Courville describes herself as~~

> the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation

---

[71] https://www.youtube.com/watch?v=lQTPnbpsAIc (Accessed September 8, 2023.)
[72] https://www.youtube.com/watch?v=Nr3e0RKY6Ig (Accessed September 8, 2023.)

46

**JA232**

86.122.　　This is defamatory insofar as it characterizes ~~Ms.~~ Jevremović's imposition of a guardianship as human trafficking, a crime. While such statements might ordinarily be susceptible to an interpretation as hyperbole, Courville disclaims hyperbole by use of the term "literal," and she makes clear that if she did not intend for this statement to be taken literally, then she would have been "very explicit that it is my opinion or my belief or my suspicion," and she would "never say [this statement] as if it is a fact if [she didn't] know it to be a fact."

123.　On April 18, 2022, Courville posted a screenshot[73] of anonymous comments to Instagram, captioning the photo:

Looks like team con is planning to traffic @bam_margera for a "few more months". #freebam

124.　This statement is defamatory insofar as it characterizes Jevremović as a trafficker and a con. Given Courville's repeated statements regarding Jevremović's guardianship, viewers would clearly understand "team con" to refer to Jevremović.

125.　On July 1, 2022, Courville published a video to YouTube entitled "Virtual Reality Hell: The Amanda Rabb Story."[74] At 31:02 she states:

I operate in one absolute thing and that is truth. Lima didn't tell the truth.

126.　By these statements, Courville impugns Jevremović's honesty, and emphasizes that Courville's statements are accurate and factual.

127.　In this same video, at 31:31, Courville states:

That was not true. Amanda was hand chosen because they had the cooperation of Larry Rabb.

128.　These statements are defamatory insofar as they impugn Jevremović's honesty.

---

[73] https://www.instagram.com/p/Ccf9opHlvNm/
[74] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2

47

**JA233**

129. On September 10, 2022, Courville published a video to YouTube entitled "Lima Jevremovic Made A Video About Me,"[75] in which she states at 17:53:

I joke about stuff, and I make light of situations, but like, make no mistake, this isn't drama, this is very serious.

130. By this statement, Courville emphasizes that her statements are not jokes or hyperbole but should be understood as accurate and factual by her viewers.

131. Courville reiterates this in the same video at 18:15, when she states:

It's very serious, a woman is dead, a woman has passed under [Jevremović's] care.

132. This statement both defames Jevremović by characterizing her as personally responsible for wrongdoing, *i.e.*, a woman's death, and reiterates that Courville's statements are serious and should be taken as such.

133. On July 30, 2023, Courville published to YouTube a video titled "Missing Twin NEEDS Help | *URGENT*."[76] At 1:37, she states:

Another story is the Amanda Rabb story and the fact that Lima did take over Amanda's life and healthcare in order to give her an experimental treatment and Amanda Rabb, as you know, did not survive the treatment. She passed away in the treatment center, in the AURA treatment center, and then Lima lied about how Amanda died and she never really gave a good explanation for that.

134. These false statements are defamatory insofar as they impugn Jevremović's honesty.

135. Later in this same video, at 10:55 she states:

This has turned into a me versus everyone, everybody in the family, all the – no, it's the truth versus lies.

136. Courville thus emphasizes that her statements are accurate and factual.

137. Courville also states in this video, at 11:12:

Not only do we have one unexplained death that has happened in Lima's care, we also now have allegations of sex trafficking of people that Lima has purported to be in care of, and

---

[75] https://www.youtube.com/watch?v=RtwiHx8_oMA
[76] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)

48

**JA234**

Bam Margera told me himself he was held against his will for months without access to a phone, computer, internet, any of it.

138.    These statements are defamatory insofar as they characterize Jevremović as a criminal, which she is not.

139.    Courville then goes on to claim, "it's about the truth for me," before reading a letter which she states she sent to 25 to 50 different outlets and encourages viewers to also send, which states:

I am a lawyer and independent journalist with a few YouTube channels.[77]

140.    Courville thus further relies on her legal background to support that her statements are accurate and factual; they are not.

141.    Courville's letter, as read aloud in this video and posted in the video's description via a Google Doc for her followers to send, also states:

[Bam Margera] told me that he was held in rehab against his will and denied medical treatment.[78]

142.    This statement is defamatory insofar as Courville identifies Jevremović as responsible for Margera's treatment and characterizes such treatment as criminal.

143.    On August 14, 2023, Courville published a video to YouTube entitled "*SHOCKING* Presentation by Lima from AURA (NEW)"[79] in which she references her legal background, stating at 20:50:

I think I scored in the 96th or 97th percentile on [the LSAT], like I scored in the top like three or four percent of everyone who took the test.

144.    This statement serves to legitimize Courville's statements as factual and accurate, which they are not.

---

[77] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)
[78] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)
[79] https://www.youtube.com/watch?v=Emm1WfIdZbE (Accessed September 5, 2023.)

145.    In this same video, Courville repeats the same false, defamatory statements detailed herein about Jevremović with regard to Ms. Rapp's death.

146.    In an August 2022 video, Defendant Benipal appeared alongside Courville on the "That Surprise Witness" YouTube channel and personally made false or misleading statements regarding Jevremović and regarding Ms. Rapp's death, such as Benipal's statement at the 10:07 mark: "Had [Jevremović] left Amanda alone, Amanda might be alive today…".[80]

147.    This statement is defamatory insofar as Courville identifies Jevremović as responsible for Ms. Rabb's death, which has no basis in truth.

87. 148.    Jevremović's reputation and business endeavors have has been negatively impacted, if not destroyed by Defendants' actions, and she has unduly suffered humiliation, emotional distress, anger, embarrassment, sadness, frustration, fear, loss of income, chagrin, severe anxiety, stress, shame, mortification, hurt feelings, sleeplessness, and physical manifestations thereof resulting from Courville's Defendants' above-described actions. Ms. Jevremović's associated damages are in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

at trial, but in no event less than the jurisdictional minimum of this Court.

---

[80] https://www.youtube.com/watch?v=5EPVSf8Kdlo at 10:07 (Accessed September 5, 2023.)

88.149.    CourvilleDefendants knew or should have known each of these statements to be false at the time the statement was made, and thus, CourvilleDefendants acted with actual malice sufficient to support an award of punitive damages.

89.150.    CourvilleDefendants intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit herselfthemselves by gaining more online attention and compensation for more views on hertheir social media publications. CourvilleDefendants made these false statements in a wanton and willful disregard of Ms. Jevremović's rights. CourvilleDefendants knew or should have known at the time that shethey made the statements that serious harm would arise from Courville'sDefendants' conduct, and CourvilleDefendants, with knowledge of the harm caused, continued such conduct. Courville'sDefendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter herthem from similar wrongful conduct in the future.

## SECOND COUNT

## LIBEL

### (By Plaintiff AURA against All Defendants)

90.151.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 89150 as though fully set forth herein.in this paragraph.

91.    On April 27, 2022, Courville published to Instagram an imageimage[81] showing a digital

---

[81] https://www.instagram.com/p/Cc22uuMsobQ/

51

**JA237**

152.     message sent to her in which the message-sender criticizes Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovićh [sic] . . . ever up held [sic] HIPPA [sic]?

Courville responded:

never not once [sic].

92.     This statement is defamatory insofar as it references Ms. Jevremović's work on behalf of AURA, and it asserts that Ms. Jevremović, and by extension, AURA, violate the Health

**JA238**

153.    Insurance Portability and Accountability Act ("HIPAA"). Because AURA's products are used in mental health treatment, they must (and do) comply with HIPAA. Courville's statements are defamatory *per se* insofar as they falsely allege that AURA is irresponsible with its client'sclients' private information and that AURA does not follow black-letter law. Such statements would damage AURA's esteem and reputation amongst patients, healthcare practitioners, investors, and others, and would lead third parties to think that AURA is incompetent in its business or engages in misconduct in its business operations.

93.154.         On April 27, 2022, Courville republished an imageimage[82] containing another's statements to Instagram regarding Rabb, Margera, and Jevremović; an anonymous commenter asked:

to Instagram regarding Rabb, Margera, and Ms. Jevremović; an anonymous commenter asked:

Are [Ms. Jevremović and AuraAre [Jevremović and AURA,] using homeless people with addictions to experiment on them for their [YouTube] channel?

and Courville unequivocally affirmed the commenter's statement:

yes.

94.155.         By affirming the commenter's statement, Courville effectively adopted the statement as her own. This false statement is defamatory as it explicitly states that Ms. Jevremović and AURA are experimenting on homeless individuals, implying that they are doing something inhumane. It further implies that Ms. Jevremović and AuraAURA are dishonest insofar as Courville's statement contradicts Ms. Jevremović's stated reason for providing care to Rabb.

95.        On March 31, 2022, Courville published to Instagram an excerptexcerpt[83] from a video in

---

[82] https://www.instagram.com/p/Cc3REs7FNGJ/

[83] https://www.instagram.com/p/CbxaISSgRxR/

**JA239**

156.    which Ms. Jevremović read Rabb's cause of death as a seizure disorder. Courville pauses and adds commentary, including, at 0:10; Ms. Jevremović states:

Rabb never had seizures prior to being homeless.

Courville comments and states:

But I think another way of saying that is she never had seizures prior to using AURA.

54

96.157.    Courville thus seeks to falsely imply that AURA's products caused Rabb's seizures and potentially caused her death.

97.    On March 31, 2022, Courville published on Instagram a photophoto[84] of Rabb wearing virtual

158.    reality headgear and participating in a "Virtual Reality Exposure Therapy Session using AURA." A person commented on the photo with interest in the virtual reality-based treatment, and Courville responded:

> the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool. I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

98.159.    This statement is defamatory insofar as it falsely states that patients have the AURA system forced upon them as a test-subject; such a statement carries negative implications about AURA as people are generally opposed to being forced to test healthcare treatments.

99.    On April 1, 2022, Courville published an excerptexcerpt[85] from a program for a virtual reality

160.    conference which included Ms. Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Courville commented on the image:

> Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #RabbRabb.

100.161.    This statement is defamatory insofar as it characterizes Ms. Jevremović and AURA as experimenting on vulnerable populations whom Ms. Jevremović purportedly views as "problematic" and insofar as it contradicts Ms. Jevremović's stated reasons for working with those suffering from mental health disorders (thereby impugning her honesty); such a characterization is

---

[84] https://www.instagram.com/p/CbxIzVsOT-D/

[85] https://www.instagram.com/p/Cb02KZuAJEe/

55

**JA241**

highly offensive and falsely imputes a motive to ~~Ms.~~ Jevremović and to AURA which most people would

find condemnable.

**JA242**

101. On March 30, 2022, Courville published another ~~excerpt~~excerpt from a video[86] in which ~~Ms.~~

162. Jevremović describes the use of ~~Aura~~AURA products in connection with Rabb's treatment. ~~Ms.~~ Jevremović explains that AURA provides its products at no cost and uses the data collected for research purposes, and Rabb would have the opportunity to serve as a case study. Courville commented on the video:

> Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship. #FreeBam #RabbRabb #InvestigateAURA

~~102.~~163. These statements are defamatory as they falsely state that ~~Ms.~~ Jevremović and ~~Aura~~AURA forced Rabb to test AURA products – people are generally opposed to being forced to test healthcare tools. Such a statement negatively impacts AURA's reputation.

103. On February 22, 2022, Courville published to YouTube a ~~video~~video[87] in which she defames

164. ~~Ms.~~ Jevremović and AURA. At 49:55, Courville falsely states:

~~[Ms.~~[Jevremović] forces people by court order to use [AURA's] tools.

~~104.~~165. This statement is defamatory insofar as it falsely states that ~~Ms.~~ Jevremović on behalf of AURA imposes conservatorships on people as a means to force people to use AURA's tools (from which AURA and ~~Ms.~~ Jevremović would purportedly profit); people will generally understand this statement to be defamatory insofar as forcing guardianships and conservatorships on people for the purpose of generating profits is generally condemnable behavior.

---

[86] https://www.instagram.com/p/CbvGodsJLtE/

[87] https://www.youtube.com/watch?v=hAPdBs398vc (Accessed September 5, 2023.)

57

**JA243**

105. 166.     AURA's reputation has been negatively impacted due to Courville's Defendants' above-described actions; AURA has lost substantial investments, opportunities, and income resulting from Courville's Defendants' defamation.

106.     Courville Defendants intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit herself themselves by gaining more online attention and compensation for more views on her their social media publications. Courville Defendants made these false

**JA244**

167.    statements in wonton and willful disregard of AURA's rights, with knowledge of their falsity or reckless disregard for whether the statements were true. ~~Courville~~Defendants knew or should have known at the time ~~she~~they made the statements that serious harm would arise from ~~Courville's~~their conduct, and ~~Courville~~Defendants, with knowledge of the harm caused, nevertheless continued such conduct unabashedly. ~~Courville's~~Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter ~~her~~them from similar wrongful conduct in the future.

~~107.~~168.    These false statements expose AURA and its CEO, ~~Ms.~~Jevremović, to hatred, contempt, and the loss of the ~~good will~~goodwill and confidence felt toward them by others.

~~108.~~169.    Furthermore, these false statements have a tendency to injure, and did in fact injure, Plaintiffs' business operations in the addictions recovery and mental healthcare industry, including but not limited to their use of therapist-guided exposure therapy implementing virtual reality technology and telehealth solutions.

~~109.~~170.    These statements are entirely false. As a result of ~~Courville's~~Defendants' publications, Plaintiffs have suffered reputational harm in an amount to be proved at trial.

~~110.~~171.    As a result of ~~Courville's~~Defendants' publications, AURA has lost business opportunities in an amount to be proven at trial.

~~111.~~172.    ~~Courville's~~Defendants' conduct in publishing and republishing the above statements was actuated by actual malice and/or accompanied by a wanton and willful disregard of the effect ~~her~~their statements would have on Plaintiffs' reputations, which foreseeably might be harmed by ~~Courville's~~Defendants' republications. Such conduct entitles Plaintiffs to an award of punitive damages under N.J.S.A. 2A:15-5.9, *et seq.*, to both punish and deter ~~Courville's~~Defendants' wanton conduct in an amount to be proven at trial.

**JA245**

# THIRD COUNT

## Invasion of Privacy – Intrusion upon Seclusion

## (By Plaintiff Lima Jevremović against All Defendants)

173. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 172 as though fully set forth in this paragraph.

174. Plaintiff has alleged (i) an intentional intrusion (ii) upon the seclusion of another that is (iii) highly offensive to a reasonable person.[88]

175. Plaintiff has successfully alleged an intentional intrusion, where she was substantially certain she lacked any indicia of consent to commit the intrusive acts alleged herein. Plaintiff has alleged that Defendants released personal information without any permission to do so, and to the contrary, over Plaintiff's vehement objections.

176. Specifically, Defendants have released highly personal, private information regarding Plaintiff and her family, including Plaintiff's family's home addresses, the name and address of the church Plaintiff attends in Los Angeles, Plaintiff's phone number, and Plaintiff's social security number, as well as the names and photos of Plaintiff's husband, sisters, mother, and mother-in-law. Moreover, Defendants' release of Plaintiff's personal information, and encouragement of Courville's followers[89], has caused further intrusions and invasions into Plaintiff's privacy via death threats and text messages of dead bodies from unknown numbers, strangers showing up uninvited and unannounced at Plaintiff's home, and drones entering and surveilling Plaintiff's property to watch Plaintiff and her family.

---

[88] *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17 (1992) (citing Restatement (Second) of Torts § 652B.

[89] June 27, 2023 YouTube video with Courville touting the contributions of her followers to her activities in digging into Jevremovich's personal life: https://www.youtube.com/watch?v=Vh6j4YHIxoE.

60

**JA246**

177. Plaintiff has alleged herein that Defendants have intruded into Plaintiff's otherwise private seclusion that the plaintiff has regarding her person or private life. Specifically, Defendants have intruded upon Plaintiff's family life, home and property, private information, and church and religious life.

178. The above-listed intrusions on Plaintiff's privacy, such as the release of her private contact information and social security number, would undoubtedly be highly offensive to the ordinary reasonable person.

179. Plaintiff has suffered immense emotional and financial harm as a result of Defendants' invasion into her privacy as described herein.

## FOURTH COUNT

### Invasion of Privacy – False Light

### (By Plaintiff Lima Jevremović against All Defendants)

180. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 179 as though fully set forth in this paragraph.

181. Defendants gave publicity to a matter concerning Plaintiff that Defendants knew was false.

182. Defendants either knew that the publicized material was false and would place Plaintiff in a false light or acted with reckless disregard as to whether the publicized defamatory statements were false and/or with reckless disregard for the false impression created by the publicized defamatory statements. Specifically, Defendants made the defamatory statements and publications regarding Plaintiff with knowledge or reckless disregard of their falsity as described in Counts I and II.

183. The defamatory statements made by Defendants so misrepresented Plaintiff's character, history, activities and/or beliefs that a reasonable person in Plaintiff's position would find

61

the material highly offensive. In fact, significant numbers of people who have viewed these defamatory statements have been so affected by them that Plaintiff has received death threats and text messages of dead bodies from unknown numbers, strangers have shown up uninvited and unannounced at Plaintiff's home and recently, drones entered Plaintiff's property and hovered above Plaintiff and Plaintiff's mother to surveil them. A reasonable person would not only find Defendants' statements highly offensive but would be offended and shocked by the effect Defendants' statements have had on other persons, and Defendants' continuing to make such statements knowing that Plaintiff faced such egregious threats to her safety based thereon.

184. The publicity caused by Defendants' defamatory statements was the cause of injuries, damages, and/or losses sustained by Plaintiff.

## FIFTH COUNT

### Domestic Violence Act ("DVA")—Harassment (N.J.S.A. § 2C:25-19(a)(13))

### (By Plaintiff Lima Jevremović against All Defendants)

185. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 184 as though fully set forth in this paragraph.

186. Harassment under the DVA occurs where a person with purpose to harass another, "[m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. § 2C:33–4(a). "[A]nnoyance" under that subsection means to "disturb, irritate or bother." *State v. Hoffman*, 149 N.J. 564, 580 (1997). The provision in N.J.S.A. 2C:33–4(a) prohibiting conduct communicated in any manner likely to cause annoyance or alarm encompasses where those modes of communicative harassment "are also invasive of the recipient's privacy." *Id*. at 583.

62

**JA248**

187. The Act further provides that the court shall consider, among other factors: the existence of immediate danger to person or property and the existence of a verifiable order of protection from another jurisdiction. N.J.S.A. 2C:25–29(a). Here, a Temporary Restraining Order is attached as Exhibit 1, that has been issued pending a hearing on September 25, 2023, based on the harm that has been caused to Plaintiff in California. *See* Exhibit 1.

188. As alleged in multiple instances of harassing conduct above, Defendants have falsely suggested that Jevremović had an OnlyFans page with pornographic films and photographs (she does not and never has), which false suggestion would not have been made except as to cause annoyance or alarm, and which was invasive of the Plaintiff's privacy.

189. As alleged above, Defendants have published to the Internet Jevremović's social security number, date of birth, home phone number, multiple private home addresses of Jevremović and her family members, along with urgings to her followers that would be suggestive that the pieces of highly personal and sensitive information are to be used in nefarious ways. Even though Courville has occasionally issued brief disclaimers regarding the usage of this personal identifying information, the context of the release of the information would suggest that the sole purpose of such releases was to frighten, intimidate and harass Jevremović.

190. As a result, Plaintiff and her family have been forced to relocate from their homes multiple times, hire around-the-clock security, and have obtained a Temporary Restraining Order based on the aforementioned conduct of Defendants (*See* Exhibit 1), that has thus caused Plaintiff financial harm, as well as pain and suffering.

### SIXTH COUNT

**Domestic Violence—Cyber-harassment (N.J.S.A. § 2C:25-33-4.1)**

**(By Plaintiff Lima Jevremović against All Defendants)**

63

**JA249**

191. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 190 as though fully set forth in this paragraph.

192. Cyber-harassment under the DVA occurs where making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person, and knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person; or threatens to commit any crime against the person or the person's property. N.J.S.A. § 2C:25-33-4.1.

193. Here, among the other allegations pleaded above, Courville did post to her @ThatSurpriseWitness Instagram posted on April 22, 2023, which on information is operated by Defendants Courville, Benipal, and That Surprise Witness TV LLC, a lewd photograph[90] falsely suggesting that Jevremović had an OnlyFans[91] page—and linking to pornographic films and photographs that are not of Jevremović; Defendants knowingly used such lewd and indecent material solely with the purpose of causing emotional harm to Jevremović, and without any legitimate purpose.

194. Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, including the actions mentioned herein, with the knowledge that their publications could cause Plaintiff to suffer harassment and humiliation.

195. The acts of Defendants resulted in damage to Plaintiff.

---

[90]https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023).

[91] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

JA250

## SEVENTH COUNT

### Intentional Infliction of Emotional Distress

### (By Plaintiff Lima Jevremović against Defendant Courville)

196. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 195 as though fully set forth in this paragraph.

197. The New Jersey Supreme Court in the seminal case *Buckley v. Trenton Saving Fund Soc*. sets forth the common law cause of action for the tort of intentional infliction emotional distress: one must intentionally or recklessly commit an extreme and outrageous act which proximately causes plaintiff severe emotional distress. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).

198. The nature of the act or conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (quoting Restatement, Second, Torts, § 46).

199. Similarly, there is a rather rigorous, while objective, standard for how severe the distress must be that is suffered by plaintiff: "so severe that no reasonable man could be expected to endure it." *Cole v. Laughrey Funeral Home*, 376 N.J.Super. 135, 148 (App.Div.2005) ("The tort of intentional infliction of emotional distress requires emotional trauma that is severe.").

200. Here, there is no doubt that Defendants' distribution of Plaintiff's home address, her mother's home address, and myriad other releases of private information, including Plaintiff's phone number and social security number, was released with the aim of inflicting devastation and emotional distress on Plaintiff and her family—and that Defendants' actions did in fact cause devastation and emotional distress.

201. Further, the publication of a photo falsely suggesting Plaintiff was distributing pornographic materials via OnlyFans was but one example of the conduct alleged above, plainly

65

**JA251**

released to torment and distress Plaintiff; Defendants' conduct in publicly touting this obscene lie did in fact cause devastation and emotional distress.

202. Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, with the knowledge that their publications could cause Plaintiff to suffer harassment and potential violence.

203. The acts of Defendants resulted in damage to Plaintiff. In fact, as a direct result of Defendants' distribution of Plaintiff's and her family's private information, Plaintiff and her family have been forced to move homes, relocate to different states, and hire around-the-clock security.[92]

### EIGHTH COUNT

### Negligent Infliction of Emotional Distress

### (By Plaintiff Jevremović against All Defendants)

204. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 203 as though fully set forth in this paragraph.

205. For a claim of negligent infliction of emotional distress, a plaintiff must plead that the defendant had a duty to the plaintiff and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark*, 349 N.J.Super. 251, 277 (App.Div.2002).

206. Whether the defendant has a duty of care to the Plaintiff depends on whether it was foreseeable that the plaintiff would be seriously mentally distressed. *Id.*

207. Here, Defendants were aware of the risk of serious mental distress to Jevremović as a result of Defendants' distribution of Plaintiff's home address (three different private addresses after Jevremović has been forced to move as a result of Courville's doxing), Jevremović's mother's

---

[92] Danielle Keats Citron, Addressing Cyber Harassment: An Overview of Hate Crimes in Cyberspace, 6 Case W. Res. J.L. Tech. & Internet at 4 (2015): https://scholarlycommons.law.case.edu/jolti/vol6/iss1/3 ("Victims fundamentally change their lives. They move because they no longer feel safe at home.")

66

**JA252**

home address[93], Jevremović's sister Dahlia's private home address, along with release of links to pornography with the false suggestion that it was Jevremović in the pornography, and the myriad false statements and releases of private information as pleaded above.

208.    As such, Defendants breached their duty of care to Jevremović as they combined to jointly conduct outrageous, cruel, and malicious doxing and cyber-harassment of Jevremović despite knowledge that their conduct had caused Jevremović severe emotional distress, and despite knowledge that Jevremović's reporting the conduct to law enforcement in three states.

209.    The acts of Defendants resulted in damage to Plaintiff and her family, including but not limited to, forcing Plaintiff and her family to relocate and 24-7 hire security.

210.    Defendants conduct herein has caused Jevremović extensive additional mental anguish[94] and financial harm.

**NINTH COUNT**

**Unfair Competition**

**(By Plaintiff AURA against All Defendants)**

211.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 210 as though fully set forth in this paragraph.

212.    The actions of Defendants as alleged above were done deliberately and intentionally.

213.    The actions of Defendants misled the public regarding AURA and/or products in violation of the common law of unfair competition of the State of New Jersey. Specifically, Defendants have actively spread defamatory statements and falsehoods about AURA, while Courville simultaneously began contributing to another online health company, Giddy.

---

[93] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023).
[94] Danielle Keats Citron, Addressing Cyber Harassment at 4-5: ("Victims experience severe emotional distress, anxiety, and depression.").

67

**JA253**

214.    The actions of Defendants as alleged above were committed with the intention of deceiving or defrauding the public in violation of the common law of unfair competition of the State of New Jersey.

215.    Specifically, Defendants actions have effectively frozen investment in AURA, forestalled further development of AURA's new health-based business, and acted to siphon potential investors interested in a health start-up away from AURA.

216.    Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## TENTH COUNT

### Unfair Competition

### (By Plaintiff Jevremović against All Defendants)

217.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 216 as though fully set forth in this paragraph.

218.    The actions of Defendants as alleged above were done deliberately and intentionally to bring down Jevremović and to siphon off Jevremović's followers and viewers to Defendants' "That Surprise Witness" social media channels, and to deceive or defraud the public into following Defendants' social media channels instead of Jevremović, in violation of the common law of unfair competition of the State of New Jersey.

219.    The actions of Defendants misled the public regarding Jevremović as a social media influencer in the health space, in violation of the common law of unfair competition of the State of New Jersey.

220.    Specifically, Defendants have actively spread defamatory statements, falsehoods, and misleading statements about Jevremović, where negative commentary receives more traction

68

**JA254**

online than positive content. At the same time, Courville contributed to another competing online health company, Giddy, that was also in the health space.

221. Specifically, Defendants' actions have effectively destroyed Jevremović's business as a YouTube commentator herself, forestalling Jevremović's growth as commercially successful social media personality in the health space, after Defendants' social media blitzkrieg demonizing Jevremović, and siphoning viewers and followers to Defendants' social media channels, and profiting thereby in the form of Patreon sponsors, advertising on Defendants' YouTube channel and other methods of monetization that Defendants wrongfully obtained at the harm and expense of Jevremović.

222. Defendant's actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for Judgment as follows:

1. For general damages according to proof, but not less than $75,001;

2. For compensatory damages according to proof;

3. For special damages for damage to reputations, losses of business opportunities, and losses of investment opportunities according to proof, but not less than the jurisdictional minimum of this Court;

4. For the maximum available punitive damages per Plaintiff per cause of action;

69

**JA255**

5. For a permanent injunction to remove all statements and publications adjudged libelous and to estop Defendants from publishing additional actionable statements under the causes of action alleged;

6. For pre- and post-judgment interest as allowed by law;

7. For costs of suit and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

PlaintiffPlaintiffs hereby demandsdemand a trial by jury for all matters triable.

Respectfully submitted,

s/Sherri A. Affrunti

Sherri A. Affrunti

s/Elliot D. Ostrove

Elliot D. Ostrove, Esq. (SBN 017981996(Bar No. 025581997)

THE LAW OFFICE OF SHERRI A. AFFRUNTI, LLC
301 Oxford Valley Road
Bldg. 1800, #1803, 2d Floor, Jackson Suite Yardley, PA 19067
EPSTEIN OSTROVE
200 Metroplex Drive, Suit 304
Edison, New Jersey 08817
Telephone: (267) 392.5842 732) 828-8600
Fax: (732) 828-8601
Email: sherri@affruntilaw.come.ostrove@epsteinostrove.com

s/Neville L. Johnson

Neville L. Johnson (Admitted Pro Hac Vice) Adam M. Winokur (Admitted Pro Hac Vice)

70

**JA256**

JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: ~~njohnson@jjllplaw.com~~njohnson@jjllplaw.com
        ~~awinokur@jjllplaw.com~~

_____

_s/Rodney Smolla_____

Rodney Smolla ~~(Admitted~~
(_Pro Hac Vice_)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: ~~rodsmolla@gmail.com~~rodsmolla@gmail.com

~~Attorney~~Attorneys for Plaintiffs Lima Jevremović and

Autonomous User Rehabilitation Agent, LLC

Dated: ~~June 6~~ September 11, 2023

**JA257**

## NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation

Agent, LLC ("AURA"), hereby declare the following:

1.   ~~1.~~   I am a Plaintiff in the present case, a citizen of California and the United States of America.

2.   ~~2.~~   I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3.   ~~3.~~   I have fully reviewed the foregoing Second Amended Complaint~~;~~, and aver that the matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I hereby certify that the matter in controversy in the foregoing Second Amended Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding~~.~~, with the exception of an application for Domestic Violence Restraining Order filed in Family Court in California by Claimant Lima Jevremović against Respondent Brittany Courville at Case Number 23STR005881, which thus far resulted in a Temporary Restraining Order attached as Exhibit 1, and which was served upon Defendant on September 11, 2023.

I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on ~~June 6~~September 11, 2023~~—~~.                    /s/ Lima ~~Jevremovic~~Jevremović

_____

~~Lima Jevremović, on my own behalf, and on~~

72

**JA258**

behalf of Autonomous User Rehabilitation Agent, LLC

73

Case 3:22-cv-09293-RK-JBD Document 46-48 Filed 09/11/23 Page 74 Page ID: 544

**CERTIFICATE OF SERVICE**

I hereby certify that Defendant Brittany Jeream Courville is being served with the foregoing Amended Complaint *via* her counsel of record through the Court's ECF system.

s/Sherri A. Affrunti
Sherri A. Affrunti, Esq.

Dated: June 6, 2023

Lima Jevremović, on my own behalf, and on behalf of Autonomous User Rehabilitation Agent, LLC

74

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com


Neville L. Johnson, Esq. (*Pro Hac Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com

Rodney A. Smolla, Esq. (*Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company,<br><br>    Plaintiffs,<br><br>        vs.<br><br>BRITTANY JEREAM COURVILLE, an individual; PREM BENIPAL, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey limited liability corporation.<br><br>    Defendants. | Civil Action No: 3:22-cv-04969-ZNQ-RLS<br><br>*Document Electronically filed*<br><br>**VERIFIED THIRD AMENDED COMPLAINT FOR:**<br><br>**1. LIBEL**<br><br>**2. LIBEL**<br><br>**3. INVASION OF PRIVACY – INTRUSION UPON SECLUSION**<br><br>**4. INVASION OF PRIVACY – FALSE LIGHT** |

**JA261**

5. DOMESTIC VIOLENCE ACT—

HARASSMENT (N.J.S.A. § 2C:25-

19(a)(13))

6. DOMESTIC VIOLENCE ACT—

CYBER-HARASSMENT (N.J.S.A. §

2C:25-33-4.1)

7. INTENTIONAL INFLICTION OF

EMOTIONAL DISTRESS

8. NEGLIGENT INFLICTION OF

EMOTIONAL DISTRESS

9. UNFAIR COMPETITION

10. UNFAIR COMPETITION

DEMAND FOR JURY TRIAL

Plaintiffs Lima Jevremović ("Jevremović"), an individual with her principal residence in the State of California, and Autonomous User Rehabilitation Agent, LLC, a limited liability company with its principal place of business in the State of Washington ("AURA" or the "Company") (together, "Plaintiffs"), by and through their undersigned counsel, file this Third Amended Complaint against Defendant Brittany Jeream Courville ("Courville") and Defendant Prem Benipal ("Benipal") (collectively "Individual Defendants"), and Defendant That Surprise Witness TV LLC (the "Entity Defendant") (all collectively, "Defendants"), on the basis of libel[1] and additional causes of action for

---

[1] Plaintiffs respectfully disagree with the Court's finding that no libel claims have been stated. In part to preserve the issue for appeal, Plaintiffs replead and amended the libel claims, given that "if plaintiff simply drops the dismissed claim

2

**JA262**

harassment, cyber-harassment, intentional/negligent infliction of emotional distress, and unfair competition, arising from the conduct of Defendants.

## STATEMENT OF THE CASE

This action arises out of the conduct of Courville, in concert with Defendant Benipal, and the Entity Defendant to weaponize the social media handle "That Surprise Witness" on various forms of social media in a concerted campaign to bring down and "cancel" Jevremović and to destroy AURA's business, vowing to try "to stop [AURA] before it even gets off the ground."[2] More recently, the Defendants began to pivot towards a more dangerous campaign of cyber-harassment and doxing, with Courville promising that her activities will continue or worsen until Jevremović drops this very lawsuit.[3]

Defendants, in a concerted and premeditated effort to build on the worst trends in online harassment and doxing, have courted the forces behind Q-Anon[4], and have resorted to implementing the use of non-public, HIPAA protected video footage of Jevremović's family

---

and does not attempt to replead, the claim will be deemed waived and plaintiff will not be able to raise the original dismissal of the cause of action on appeal." Federal Civil Procedure Before Trial (Rutter Group 2023). Plaintiffs continue to strongly believe that they properly stated claims for libel in the Complaint, and Plaintiffs attempt to amend Plaintiffs' libel claims in a way that will make this more apparent, which Plaintiffs will further argue in the event that Defendants file a new motion to dismiss. In addition, Plaintiffs plead new, additional facts which, even accepting this Court's prior findings, constitute proper libel claims.

[2] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[3] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39, Courville speaking to/regarding Jevremović: "If you're gonna sue, and this goes to anybody out there thinks they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it and it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny--not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone..."

[4] Courville has recently been working on projects with noted Q-Anon leader Liz Crokin, *See* https://www.slaveprincess.com/credits (Accessed August 31, 2023). Crokin has been described as "an early embracer of the QAnon conspiracy theory, which alleges the world is run by a shadowy cabal of Satan-worshipping pedophiles.") https://thehill.com/homenews/campaign/3765836-trump-hosts-mar-a-lago-event-with-prominent-qanon-pizzagate-conspiracy-theorist/ (Accessed September 6, 2023).

3

**JA263**

members—and released private materials such as Jevremović's home address and social security number, her mother's home address, and countless other private photographs and details to intimidate and terrify Jevremović, and to gain clicks and exposure for the "That Surprise Witness" brand.

Initially, one aspect of Courville's campaign began in 2022 as a misguided attempt to "#FreeBam", based on a misunderstanding that Brandon Margera ("Bam" as he is termed by fans, or hereinafter, "Margera") was somehow being controlled or manipulated by Jevremović for her profit. It didn't matter to Courville that Jevremović received no compensation whatsoever for her work in attempting to assist Margera in fighting his battle with addiction.

Back then, Margera's family and friends were united in participating in his care— he was reconciling with his wife and spending time with his son. Positive influences in Margera's life like Steven Glover (better known as Steve-O), Johnny Schillereff and Brandon Novak, who had successfully found sobriety, were helping him get his career back on track and visiting with him often. Unfortunately, when Courville's early "#FreeBam" posts started gaining some online interest, unsavory characters slithered into Margera's circle, including Vinny Beedle[5] ("Beedle") and Brian Pingor ("Pingor") (an attorney who bragged about meeting Margera while they were both in rehab together). Beedle and Pingor befriended Margera at a fragile time and introduced him to Courville's toxic #FreeBam movement—with no motivation but to keep Margera too intoxicated to notice they were maxing out his credit cards and selling stories about him to TMZ. They knew if Margera stayed sober, there would be no benefit to them, so they tilted Bam towards Courville's toxicity and away from the friends and family who cared for him.

---

[5] https://twitter.com/VINNYBEEDLE (Accessed September 5, 2023).

4

**JA264**

Yet, Courville has been untroubled by the fact that there was nothing to "#FreeBam" from, except court orders arising from Margera's arrests that arose from the dangerous fight that Margera is having with addiction. Instead of grappling with the complicated realities of Margera's fight with substance abuse, Courville elected to make Jevremović and AURA into straw man villains. Courville knew that Jevremović-as-villain would generate more views for her channel and followers, without regard for the effect her campaign against Jevremović would have on Margera.

Recently, as Courville's off-kilter campaign has increasingly shifted towards a skewed personal vendetta against Jevremović, Margera has become an unfortunate casualty of Courville's online firebombing of all things associated with Jevremović and AURA. Accordingly, Margera's substance abuse issues have escalated and led to him being arrested twice in the past two months.[6] Courville has been complicit in using Margera, abetting him in getting high and drunk before coming on her YouTube show, angling to get Margera to say negative things about Jevremović and AURA (to contradict the positive things that Margera had said about Jevremović while Margera was sober). Courville has shown complete disregard for whether her efforts could derail Margera from a year-long attempt at sobriety.

At the same time, Courville's "#FreeBam" movement has been losing viewership and online followers, where it is becoming increasingly clear that the movement was nothing but a publicity ploy to drum up viewers and followers, that had nothing to do with the actual well-being of Margera or his family. Losing her grasp on viewership and followers on her social media channels, Courville has resorted to spiraling ever deeper into an unhinged obsession with

---

[6] Margera was arrested on August 9, 2023, for charges relating to Public Drunkenness and Engaging in Fighting. *See* https://www.nbcphiladelphia.com/news/local/jackass-star-bam-margera-arrest-radnor-hotel/3621538/#:~:text=Professional%20skateboarder%20and%20star%20of,to%20a%20law%20enforcement%20source (Accessed September 6, 2023). Margera's August arrest came just two weeks after an incident where he was charged with assault and making terroristic threats after a fight with Margera's brother. (*Id.*)

5

**JA265**

destroying Jevremović. Courville's panopticon of terror has reached into every conceivable cranny of Jevremović's family and personal life, destroyed her business, and even driven her and her family from their homes.

At the same time, Courville has effectively frozen investment in AURA and forestalled further development of AURA's new health-based business, even while simultaneously participating in the online health business "Giddy" as a contributor.[7] As such, Courville's conduct has the perverse effect that potential investors interested in a health start-up like AURA would perhaps now choose to invest in Giddy, rather than AURA.

Courville is nothing if not savvy about how to weaponize social media, and recent months have revealed a turn towards the depths of cyber-harassment and doxing in efforts to bring about real harm to Jevremović—an increasingly desperate attempt to keep her falling viewership and followers afloat at any cost, and to scare Jevremović into dropping this lawsuit.[8]

This includes publishing a video that urges Courville's followers to "make some noise," after arming her followers with Jevremović's mother's home address, phone number, and airing a humiliating mental health crisis video—a video that Oklahoma authorities have indicated should not have been available to the public.[9] As a result of Courville's doxing campaign, Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Courville to dig into Jevremović's mother's personal life to harass her and make calls to her employers.[10]

---

[7] https://getmegiddy.com/BJ_Courville; https://getmegiddy.com/BARE/BJ_Courville (Accessed September 5, 2023).
[8] June 27, 2023 YouTube Video: https://www.youtube.com/watch?v=Vh6j4YHIxoE (Accessed September 7, 2023).
[9] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). The Oklahoma police department from which this video footage was obtained has confirmed that this footage is not public information and Courville should not have been able to obtain it, and they have launched an on-going investigation into how Respondent was able to obtain these videos.
[10] Although Courville's release of private information is coupled with a disclaimer that such information should not be used to contact the people in the video, this disclaimer is disingenuous when combined with urgings that incite Courville's followers to "make some noise" in tandem with the release of the private information. The same video insists that anyone could get the same bodycam footage that Courville released; however, when contacted to inquire how the HIPAA

6

**JA266**

All the while, Courville has pretended her statements are not to be taken seriously, all the while winking and signaling to her followers that she means every word. Indeed, Courville has revealed that she is deliberately labelling herself a "conspiracy theorist", only so that her targets cannot use Courville's false statements "against her"[11], as shown below:



On numerous occasions, Courville has confirmed that her false statements of fact are a wolf in sheep's clothing (or a wolf in pink bunny ears)—hiding under a "conspiracy theorist" moniker as a shield to enable deeply dangerous false statements that are actually intended to be seen as true, and thus, are truly harmful.[12] Her followers tend to believe many of these Courville's statements have extra weight because Courville has often touted her

---

protected video had been obtained, the police department confirmed that such video should not have been publicly available and has launched an investigation into the release of that footage.

[11] https://www.instagram.com/p/Cb5b59wFxIg/?img_index=1 (Accessed September 8, 2023.)

[12] *Cf.* Court's August 10, 2023 Order on MTD, Jevremovic v. Courville, Dkt. 22-cv-4969 (ZNQ)(RLS) at 14 (August 10, 2023 (the "Order").

7

**JA267**

background as a lawyer, and she has made numerous statements based on her "education, knowledge, and experience."[13] Importantly, many of Courville's most serious false and misleading accusations about Jevremović have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata."[14] Instead, on her GoFundMe page, Courville describes herself as a "lawtuber and independent journalist" and has titled her fundraising campaign the "Facts Ain't Defamation Fund"—which reveals that she releases false information as fact.[15]

Frighteningly, Defendants have demonstrated that the "That Surprise Witness" team knows no limits, including using fake pornography to create public humiliation and shaming, as when Defendants published a photograph/link[16] falsely suggesting that Jevremović had an OnlyFans[17] page—a profile page which links to pornographic films and photographs that are not Jevremović. As recently as August 8, 2023, Courville's "@thatsurprisewitness" handle on Instagram hosted a post on a moderated comments thread that included Jevremović's home address, which resulted in Jevremović's needing to relocate and go into hiding for a third time since Courville's campaign began.[18] Drones were dispatched to Jevremović's home and strangers began to appear near her front yard, lurking inexplicably, almost immediately after this information being released on Courville's Instagram.[19] At the same time, followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise"

---

[13] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkyIMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)

[14] *See* https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); *see also* https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); Cf. Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

[15] https://www.gofundme.com/f/facts-aint-defamation-fund (Accessed September 9, 2023.)

[16] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)

[17] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

[18] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

[19] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

8

**JA268**

at Courville's urging, including on one of Courville's posts featuring non-public bodycam footage of Jevremović's mother and Jevremović's sister during a mental health emergency:[20]



As Courville's increasing acceptance of new levels of dangerous online doxing and cyber-harassment has escalated, Jevremović has been left no choice but to seek a restraining order to protect her personal safety in California (*See* Exhibit 1, Temporary Restraining Order) and forced to bring the additional claims alleged herein to attempt to preserve Jevremović's business, and any last vestiges of her personal safety, and to preserve the hope of a normal life.

## PARTIES

1.      AURA is a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300, Bainbridge Island, Washington 98110-2450, and with no member domiciled in New Jersey.[21] AURA operates as a wellness supplements and healthcare solutions software business.

2.      Jevremović, an individual, is the founder and CEO of AURA. She identifies her address as: c/o Neville Johnson, Johnson & Johnson, LLP, 439 North Canon Drive, Suite 200,

---

[20]https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRIODBiNWFIZA== (Accessed September 6, 2023).
[21] *See* Docket Nos. 28, 39.

9

**JA269**

Beverly Hills, California, 90210 because she and her family have received harassment and threats in connection with the claims in this matter, and because her home address was disseminated (and unknown third parties have attempted to gain entry while the family was home), Jevremović and her family relocated their residence multiple times and hired 24-hour security to guard their home. Jevremović thus respectfully seeks to avoid providing her California address in court filings, so she will not be forced to relocate yet again.

3.      Defendant Brittany Courville is an individual who resides at 10 Teak Lane, Princeton, New Jersey, 08540, and operates the various "That Surprise Witness" social media channels, and formed the Entity Defendants.

4.      Defendant Prem Benipal is an individual who resides at 10 Teak Lane, Princeton, New Jersey, 08540, and has financially supported Courville's activities on her various "That Surprise Witness" social media channels—and has himself appeared on the "That Surprise Witness" podcasts with Defendant Courville, and is involved with the operations of the Entity Defendants.

5.      Defendant "That Surprise Witness TV LLC" was formed in New Jersey, under file number 450708640, on September 30, 2021, to carry out the activities of Courville and Benipal on the various "That Surprise Witness" social media outlets.

**JURISDICTION AND VENUE**

6.      Subject matter jurisdiction is appropriate to this Court under 28 U.S.C. § 1332 because complete diversity exists amongst the parties and the amount in controversy exceeds the jurisdictional minimum.

7.      Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) because Defendants reside in this District and published a substantial number of actionable statements to the Internet from this District.

10

**JA270**

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.      Defendant Courville is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Courville worked at Winston Strawn briefly before she and the firm parted ways over Courville's use of social media. On her LinkedIn profile, describes her profession as "Legal Commentary on YouTube/Social Media Law."

9.      At all relevant times, Defendant Benipal has provided financial support and acted as a *de facto* producer for various "That Surprise Witness" social media channels—and has himself appeared on the "That Surprise Witness" YouTube with Defendant Courville on numerous occasions and personally made false or misleading statements regarding Jevremović.[22]

10.      Both Individual Defendants have, on information in belief, acted in coordinated efforts to carry out the business of the Entity Defendant.

11.      In July 2020, Courville began to affiliate herself with the "Free Britney" movement, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Courville uses variants of the handle "That Surprise Witness" on her various social media accounts. Courville reported becoming "obsessed" and using her newfound "legal expertise" to interpret the associated law, pleadings, and court opinions and orders. She spread this information online via videos, photos, and text commentary. As the "Free Britney" movement gained mass media attention, Courville was invited to give interviews as an attorney. Courville gathered hundreds of followers and viewers during the time that she gave commentary in connection with the Britney Spears conservatorship.

---

[22] *See* https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 7, 2023) (i.e., at 10:07 "Had [Jevremović] left Amanda alone, Amanda might be alive today…".)

11

**JA271**

12. However, after Britney Spears' conservatorship was terminated, Courville began to receive less attention, and fewer followers and viewers on her various "That Surprise Witness" social media handles. With her followers/viewers in the mere hundreds following the end of the Spears conservatorship, Courville needed to look for other celebrities and social media personalities that she could latch onto, to siphon off viewership and followers. Courville found the perfect combination of entities to tether "That Surprise Witness" to—with Margera (celebrity), Jevremović (entrepreneur with social media footprint), and AURA—Jevremović's wellness supplements and healthcare solutions software business that had been generating a lot of attention.

13. In 2019, Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA was founded to use technology to scale affordable, high-quality mental health treatment services. The Company was founded to support mental health professionals using the technology to track patient progress of people undergoing mental health treatment in various ways, *inter alia,* by recording and analyzing biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, *e.g.,* assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. The Company also produces vitamins/supplements for brain health and mood support and has explored various other means of using technology to enable better health outcomes.

14. AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch. Through AURA, Jevremović supplied mental health assistance tools to numerous individuals free of charge in order to receive

12

**JA272**

feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product. To that end, AURA had previously provided some services without charge to certain celebrities, influencers, and persons in the public eye—as well as individuals with no public presence as a community social service. Plaintiffs had been a successful and growing business in this regard, until Courville began to leverage the "That Surprise Witness" treatment against created Jevremović and AURA, concocting scandals from Courville's new ersatz villains.

15. On September 20, 2021, Courville and Benipal formed "That Surprise Witness TV LLC" in New Jersey with file number 0450708640.[23]

16. Courville and Benipal have co-hosted many of their broadcasts together and otherwise collaborate to carry out Courville's individual actions in support of the Entity Defendant.[24]

<u>**COURVILLE SPREADS FALSE STATEMENTS REGARDING**</u>

<u>**DEATH OF AMANDA RABB**</u>

17. One such recipient of AURA's free-of-charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles' notorious Skid Row who turned to sex work to fund her addiction. AURA provided $250,000 to be used by Rabb for a year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate Rabb back into society as a productive, healthy member. Rabb was also given the option to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health

---

[23] https://www.njportal.com/DOR/BusinessNameSearch/Search/EntityId (Accessed September 5, 2023).
[24] *See* https://www.instagram.com/p/CvhzNuqAV67/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

13

**JA273**

care professionals. Jevremović personally funded the majority of Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

18.     Tragically, on Sunday, May 9, 2021, staff at the Desert Hope Treatment Center ("Desert Hope"), where Rabb was receiving treatment—(a treatment center not in any way controlled or operated by AURA or Jevremović)—found Rabb unresponsive in her bed and unsuccessfully performed CPR. When an AURA employee contacted the Clark County Coroner's Office, requesting information regarding Rabb's death, Desert Hope relayed to AURA and Jevremović that Rabb only had Tylenol in her system—a fact that was verified by a representative of the Clark County Coroner, Dr. Paul Uribe. Dr. Uribe added that Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors. Courville conveniently left out that Jevremović made two separate podcast appearances, on Soft White Underbelly [published on Sep 9, 2022] and No Jumper [published on Sep 28, 2022], to clarify that the information Jevremović was based on conflicting information received from Dr. Uribe.

19.     It is not a coincidence that Courville launched her campaign of lies and misinformation surrounding the Rabb tragedy, around the time that Jevremović became involved as a court-appointed guardian to seek to help Margera in his fight with addiction. Some of Margera's unsavory associates such as Beedle and Pingor egged on Courville's efforts as a vigilante muckraker. These associates did not want to see Margera get better—these desultory individuals wanted to continue to take advantage of him financially and to borrow on Margera's fame—and they urged Courville to amplify her false claims to further these ends.

14

**JA274**

20.     So it was that Courville's thirst for online stardom was wedded with a deliberate effort to destroy Jevremović and AURA. Courville's campaign against Jevremović and AURA was amplified at the urgings of Beedle and Pingor, who sought to wild Courville's influence to punish Jevremović for trying to help Margera in his battle with the demons of addiction.

21.     Defendants' blitz of false statements regarding Jevremović and AURA, analyzed in detail below, began in February 2022 and has continued through September 2023, a modern media manipulation that has been pervasively toxic and wide ranging. While Defendants' social media blackmail effort began impugning with Jevremović and AURA making false suggestions that Jevremović had played some part in Rabb's cause of death, the media offensive has expanded to accusing of Jevremović of numerous additional humiliating falsehoods. See Count I, *infra*. Working Defendants' social media adherents into a dangerous frenzy, with Courville's adherents now labelling themselves "That Surprise Army", the crusade has escalated to dangerous cyber-harassment and doxing to intimidate Jevremović into dropping this lawsuit and gain clicks with fear mongering, which has increasingly crossed over from online commentary into real world effects that have caused a well-founded fear in Jevremović and her family for their personal safety.[25]

22.     All the while, Defendants have callously profiteered from this behavior in the form of advertising revenues.

---

[25] *See, e.g., Hate Speech on Social Media: Global Comparisons*, COUNCIL FOR FOREIGN RELATIONS, at https://www.cfr.org/backgrounder/hate-speech-social-media-global-comparisons ("Users' experiences online are mediated by algorithms designed to maximize their engagement, which often inadvertently promote extreme content. Some web watchdog groups say YouTube's autoplay function, in which the player, at the end of one video, tees up a related one, can be especially pernicious. The algorithm drives people to videos that promote conspiracy theories or are otherwise 'divisive, misleading or false,' according to a Wall Street Journal investigative report. 'YouTube may be one of the most powerful radicalizing instruments of the 21st century,' writes sociologist Zeynep Tufekci.") (Accessed September 1, 2023.)

**JA275**

## COURVILLE SPREADS FALSE STATEMENTS REGARDING

## JEVREMOVIĆ'S INVOLVEMENT WITH BAM MARGERA

23.     Celebrity entertainer Margera and his wife, Nicole Boyd-Margera ("Boyd-Margera"), took an interest in AURA in the Winter 2020. Margera has starred in blockbuster Jackass movies and popular television programs. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addictions over the previous two decades. Because of his background, Margera and Boyd-Margera initially sought to provide their support to Plaintiffs' efforts to mediate addiction and improve related health outcomes. However, when Margera proved susceptible to multiple relapses in his battle with addiction, Margera's family approached Jevremović for intervention assistance.

24.     On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed medical issues. When Margera's family and friends implored Jevremović to serve as Margera's temporary guardian, Jevremović agreed and took on the responsibility for overseeing Margera's treatment, which was put into effect by Court Order, with no connection to his financials or other aspects of his life. Indeed, despite the fact that the Jevremović was statutorily permitted to collect reasonable sums for her services as guardian, Jevremović has received no compensation whatsoever, directly or indirectly, as Margera's guardian. Rather, Margera's father has been assisting Margera in managing his finances for many years at Margera's request, and Jevremović's appointment as a temporary guardianship never touched upon Margera's money in any way.

25.     After the court-ordered guardianship terminated, Margera requested that Jevremović continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery.

16

**JA276**

26. After learning that Jevremović was involved in Margera's recovery, Courville began publishing videos, photos, and text commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam."

27. Courville began with baseless assertions that Margera's family and Jevremović manipulated a court-imposed guardianship as a tool to access Margera's assets, and that Jevremović is committing and assisting in the commission of criminal acts and that Jevremović is dishonest and promulgates lies.

28. At the same time, on a parallel front of Defendants' concerted media campaign, Courville manipulated the background of facts surrounding the Rabb tragedy, and published videos, photos, and textual commentary in which she falsely accused Jevremović of criminal acts and dishonesty.

29. Defendants' statements become so prolific that they all but wiped any legitimate results regarding Jevremović and AURA from the first few pages of Google search results regarding either Plaintiff. Defendants directly disrupted AURA's second round funding, causing potential investors actively involved in funding discussions to retreat.

30. Courville's false and misleading statements about Plaintiffs have directly interfered with AURA's business and caused deep financial disruption to Jevremović, directly resulting in order cancellations and the withdrawal of marketing affiliates.

**ACTUAL MALICE**

31. Courville knew and ignored the fact that no evidence demonstrated Jevremović to be dishonest and knew and ignored the fact that no evidence demonstrated Jevremović to be a criminal, because her true motivations were to create a smear campaign that would increase

17

**JA277**

views, divert Jevremović from effectively acting as guardian to Margera, ruin Jevremović's business, and eventually seek revenge on Jevremović for filing this lawsuit.

32.  At least at the outset, Courville had a preconceived story line, *i.e.*, that Jevremović must be acting improperly, and Courville purposefully twisted and misrepresented information in whatever manner would accomplish her purpose of dissuading Jevremović from acting as a guardian for Margera.

33.  That purpose changed over time to a more generalized goal of destroying Jevremović and AURA at any cost, out of an obsessive interest in Jevremović that developed over the course of the conduct.

34.  Defendants also purposefully sought to reap the benefits that disinformation and online harassment have in the form of increased viewership and followers for Defendants' social media channels.

35.  Courville was aware that her statements of fact were untrue based on their inherent improbability—such as outlandish and unfounded assertions that Jevremović is involved in human trafficking.

36.  Courville took steps to deliberately avoid learning the truth regarding Jevremović despite the fact that such information was available to her. For instance, in her most viral video titled "Virtual Reality Hell", Courville asserts that Rabb's father was a molester eight times and suggests that Jevremovic was working with a molester to coordinate Rabb's treatment[26], while at the same time, aware that Rabb had come out to clear her father's name before her tragic death.

---

[26] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2.

37.     Courville specifically posted that her intent in pursuing AURA was specifically "trying to stop [AURA] before it even gets off the ground."[27]

38.     Defendants' videos air advertisements from which they personally profit. Thus, Defendants are incentivized to publish and disseminate shocking and untrue materials[28], materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during their videos.

39.     Courville further solicits and collects donations directly from viewers during her live broadcasts *via* YouTube, and Courville operates a site to solicit donations on gofundme.com that has generated $48,108 in donations thus far.[29] Courville has a Patreon account[30] (an organization that provides users tools with which to fundraise) where she has generated paying subscribers, and where Courville solicits additional funds for in-depth "investigations" and videos in furtherance of her campaign. Defendants promote branded "That Surprise Witness TV" merchandise, deriving income from their activities.[31] Defendants derive income via false, misleading and defamatory statements, that also serve to generate more buzz and more viewers.

40.     On July 15, 2022, Plaintiffs contacted Courville in writing to demand retraction of defamatory statements. To the extent Courville disclaimed any of her defamation, her attempts were patently pretextual and obviously insincere. On July 22, 2022, Plaintiffs again contacted Courville in writing to identify further defamatory statements and to demand their

---

[27] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[28] https://news.mit.edu/2018/study-twitter-false-news-travels-faster-true-stories-0308 (Accessed September 1, 2023)("[F]alsehood diffuses significantly farther, faster, deeper, and more broadly than the truth, in all categories of information, and in many cases by an order of magnitude.)

[29] https://www.gofundme.com/f/facts-aint-defamation-fund ("Facts Aint Defamation Fund").

[30] https://www.patreon.com/thatsurprisewitness/posts (Accessed August 20, 2023.)

[31] https://thatsurprisewitness.com/products/facts-aint-defamation-black-hoodie (Accessed September 1, 2023.)

19

**JA279**

retraction. No retraction issued and instead, Courville issued retaliatory false claims that suggested Margera was an investor in AURA[32]—which has never been true.

41.     Courville and Benipal's doxing and harassment goes far beyond any sort of alleged social commentary, and on information and belief, is instead motivated by a desire to bring down Jevremović at any cost, even if it means exposing Jevremović to physical harm.

42.     This conduct has forced Jevremović to file police reports in New Jersey, California, and Oklahoma—and the LAPD Threat Management Unit is currently investigating Courville's actions as potentially criminal instances of stalking.

43.     Jevremović was forced to apply for a Restraining Order in California based on the actions of Courville's followers after they were armed with Jevremović's address, and as a result, Courville is subject to a Preliminary Restraining Order (attached as Exhibit 1), which includes an Order to Cease further social media posting about the protected parties (Jevremović, her sister and Jevremović's husband) with a hearing scheduled for September 25, 2023 to determine if a permanent restraining order will issue on the basis of Courville's malevolent conduct.

## WITH INTEREST IN DEFENDANTS' SOCIAL MEDIA CHANNELS WANING, COURVILLE HAS TURNED TO INCREASINGLY EXTREME ONLINE BEHAVIOR TO MAINTAIN VIEWERSHIP AND FOLLOWERS

44.     Additionally, it would seem that Defendants have resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremović and prevent

---

[32] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)(at Time Stamp 36:45-37:06: "Question whether that is ethical or appropriate for someone [Margera] who is basically an investor in your business [AURA] and now you put them under a conservatorship like I don't know about the actual laws behind that but that doesn't seem appropriate that you could be the someone's guardian or conservator and they have purchased a stake in your business".)  Margera has never been an investor in AURA.

20

**JA280**

Jevremović from maintaining this lawsuit, which was a goal stated by Courville in a YouTube video.[33]

45.    Courville's intent to seek to get Jevremović to drop this lawsuit has been a pervasive theme in the past year with Courville doxing even Jevremović's attorney, providing Neville L. Johnson's image in connection with her video criticizing the lawsuit[34]:



46.    Courville's unlawful activities have further evolved into a personal obsession with Plaintiff, and continuously increasingly disturbing incidents of harassment and doxing.

47.    Over the course of nineteen months of harassment, the Defendants have caused to be published over 300 videos across various forms of social media that are about Jevremović, with a total of 2,802+ minutes (46.7 hours), 8,000,000+ views across YouTube, Rumble, Instagram, Twitter and TikTok, and with over 1000 posts to Instagram and Tiktok about Jevremović. This does not include hundreds of other posts on Instagram and other forms of social media.

---

[33] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39 (Accessed September 8, 2023.)

[34] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)

21

**JA281**

48.     In one especially humiliating post on April 22, 2022, Defendants caused to be published a photograph[35] on the @ThatSurpriseWitness Instagram handle, falsely communicating that Courville had found an OnlyFans[36] page for Jevremović—a profile page which links to pornographic films and photographs that are not Jevremović, as pictured below:



49.     Courville has amplified the harm[37] to Jevremović from her campaign by including the false allegation regarding Jevremović's involvement in pornography, without any conceivable legitimate purpose except to harass and cause harm to Jevremović's reputation.[38]

---

[35] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)

[36] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

[37] Mary Anne Franks, Unwilling Avatars: Idealism and Discrimination in Cyberspace, 20 Colum. J. Gender & L. 224, 255 (2011) ("[W]omen's unwilling online embodiment is in effect a double-embodiment is one of the reasons that cyberspace harassment of women should be taken seriously. Women are frequently objectified in real life in ways that negatively impact their health, careers and general well-being, and are then re-objectified online in ways that also negatively impact their health, careers and general well-being. In the offline world, women are disproportionately "bodied"-over-identified with their physical characteristics-through their physical vulnerability relative to men and their historical, legal, and social objectification."); https://www.pewresearch.org/internet/2021/01/13/the-state-of-online-harassment/ ("Women targeted in online harassment are more than twice as likely as men to say most recent incident was very or extremely upsetting.")

50.     Courville has at various times published to the Internet Jevremović's social security number, date of birth, unlisted home phone number, and three of Jevremović's unlisted home addresses[39], her family members' addresses, among many other pieces of highly personal and sensitive information in a coordinated and intentional doxing campaign.

51.     Additionally, Defendants' publication of Jevremović's sisters addresses, resulted in the kidnapping and rape of Jevremović's sister, Dahlia, soon after the publication of Dahlia's otherwise private address.

52.     After being besieged in their home in Washington state by Courville's devotees, where Courville encouraged followers to "make some noise" directed towards Jevremović, Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

53.     As recently as August 2023, Defendants' "@thatsurprisewitness" handle on Instagram included a post with comments that included Jevremović's home address (in Courville's moderated comments section), which has resulted in Jevremović's needing to relocate and go into hiding, as drones were dispatched to her home and strangers began to appear near her front yard, lurking inexplicably, almost immediately upon this information being released on Defendants' "@thatsurprisewitness" Instagram handle:[40]

---

[39] *See, e.g.,* https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).
[40] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023) (the post has since been edited to remove the comment that included Lima's home address, but the screenshot above includes the post as originally listed).

23

**JA283**



54.     Followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise" at Courville's urging, including on one of Courville's posts featuring private bodycam footage of Jevremović's mother and Jevremović's sister.[41]

55.     After years of Defendants' assault on Jevremović, many previous collaborators of Jevremović's have fallen away. For example, Jevremović used to collaborate with Chloe Wilkinson on video projects relating to Wilkinson's "DissociaDID" social media channel and supported each other through difficult times, communicating through WhatsApp, for many years, until in August 2022, after Wilkinson became aware of Defendants' content regarding Jevremović, Wilkinson publicly denounced, ceased all future collaborations with Jevremović and blocked Jevremović on whatsapp based on Defendants' content. This caused Jevremović to lose a valuable friendship, and to lose further followers and viewers on her own social media channels, as a result of losing this valuable cross platform collaboration.

---

[41] https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

24

56.     Likewise, Courville's obsessive harassment and doxing has placed Jevremović in a false light, suggesting in turn that Jevremović is, by turns, a human trafficker[42], the cause of Amanda Rabb's death[43], a plotter out for Margera's money, a pornographic actress, and myriad other mistruths.

57.     Her followers tend to believe many of these items[44] especially because of Courville's background as a lawyer, where she has made numerous statements based on her "education, knowledge, and experience."[45]   Indeed, many of Courville's most serious false accusations have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata."[46]

58.     After nearly two years of Defendants' hundreds of postings about Jevremović and AURA, the top search engine results for Jevremović and AURA are now almost all Defendants' false and/or intimidating social media content.

59.     At the same time, Defendants' videos regarding Jevremović make up more than half of Courville's top ten most viewed videos, from which it can be inferred that Courville has operated with the awareness of the economic potential from distributing falsehoods about Jevremović.

60.     Accordingly, Defendants' activities have destroyed AURA's abilities to operate professionally or commercially and caused massive financial harm to both Plaintiffs.

---

[42] https://www.instagram.com/p/CcizM8YlOrq/?img_index=1 (Accessed September 8, 2023.)

[43] May 30, 2022 Instagram Post, at https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed September 8, 2023) (falsely suggesting Jevremovich's "Last ward died in her care and she lied about the cause of death.")

[44] https://www.socialmediatoday.com/news/new-report-shows-that-facebook-and-youtube-lead-the-way-as-key-sources-of-n/606877/ (Accessed September 8, 2023.)

[45] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)

[46] *See* https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); *see also* https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); *Cf.* Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

25

**JA285**

61.     As a result of the foregoing activities alleged regarding Defendants, AURA has lost countless investors and revenues have declined to near null.

62.     Defendants' activities have caused substantial and irreversible damage to Jevremović's career and reputation, and her career as an entrepreneur and healthcare activist has been nearly destroyed.

63.     Defendants' activities have destroyed Jevremović's prior income from social media, which was substantial prior to Courville's siphoning off Jevremović's followers/viewers by way of the unlawful activities.

## FIRST COUNT

## LIBEL

### (By Plaintiff Lima Jevremović against All Defendants)

64.     Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 63 as though fully set forth in this paragraph.

65.     On May 30, 2022, Courville published via Instagram the statement[47]:

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

66.     This statement is defamatory as it expressly impugns Jevremović's honesty and is wholly false.

67.     In this same statement, published alongside photos and videos of Jevremović at Disneyland with Bam Margera and his family, Courville refers to Jevremović as a "handler[] and trafficker[]."

---

[47] https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed August 28, 2023.)

26

**JA286**

68.     This statement is defamatory as it characterizes Jevremović as a trafficker, and thus a criminal, which she is not.

69.     On April 19, 2022, Courville published an image[48] of Jevremović reading Amanda's cause of death (as per the information obtained by an AURA employee from the Clark County Coroner) from a YouTube video to Instagram with the caption:

> I requested the autopsy report and lima is lying in this video. There was NO evidence of traumatic injury. There was LOTS [sic] of medication in her system (not 'only Tylenol'). The cause of death has nothing to do with 'seizure disorder', but rather cardiac arrhythmia. I've posted on [Instagram]about it.

70.     This is defamatory insofar as it falsely accuses Jevremović of dishonesty, whereas Jevremović in fact accurately conveyed the information that the Clark County Coroner had conveyed to AURA.

71.     On April 19, 2022, Courville published photos[49] of Amanda Rabb's "Report of Investigation" record obtained from the Clark County Coroner, and Courville published comments stating:

> Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1. WAYY [sic] more than just Tylenol in her system (including cannibinoids [sic] and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS.

72.     These false statements are defamatory insofar as they impugn Jevremović's honesty.

73.     On April 19, 2022, Courville published a video[50] of Jevremović reading Amanda's cause of death (as per the information obtained from the Clark County Coroner) from a YouTube video to Instagram. Courville commented on the video, stating:

---

[48] https://www.instagram.com/p/CciSZGpOyPH/ (Accessed August 30, 2023.)
[49] https://www.instagram.com/p/CciRdYbuxUX/?img_index=1 (Accessed August 30, 2023.)
[50] https://www.instagram.com/p/CciQwHOO-Ux/ (Accessed August 30, 2023.)

27

**JA287**

So lima from @meetAURA BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'. I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie?? #FreeBam #AmandaRabb.

74. This false statement is defamatory insofar as it impugns Jevremović's honesty.

75. On April 3, 2022, Courville published an image[51] on Instagram which purports to list biographical information about Margera, including his putative net worth ($20 Million). Courville commented on the image:

According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 😳 😳 😳 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂 😂 😵 😵 #FreeBam.

Another commenter states:

20 million now, soon to be much less, but it'll all be 'legit,'

to which Courville responds:

but a certain someone will have fresh lips, Botox, and a BBL watch.

Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Courville's comments here to reference Jevremović – in fact, people did comment in response who understood the messages to reference Jevremović.

76. These statements are defamatory insofar as Courville falsely characterizes Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such statements are defamatory as they falsely impute a motive to Jevremović, which most people would find condemnable.

77. On March 30, 2022, Courville published to Instagram an excerpt of a YouTube video[52] in which Jevremović and Larry Rabb, Amanda Rabb's father, describe how they

---

[51] https://www.instagram.com/p/Cb5b59wFxIg/ (Accessed August 30, 2023.)
[52] https://www.instagram.com/p/CbvTro1JLYk/

28

**JA288**

managed to transfer Amanda from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Courville states that Amanda's public defender is not supposed to:

help you push your scam conservatorship through.

78.     This statement is defamatory per se insofar as it accuses Jevremović of a scam with reference to attempting to impose an LPS conservatorship on Rabb; this imputes criminality or at least immorality and is thus defamatory.

79.     On May 7, 2022, Courville published a photo[53] to Instagram picturing Margera's costars from his television show and movies performing a stunt, and Courville captioned the photo:

[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy

And

#FREEBAM.

She further published a comment on the photo stating,

Let the #conspiracytheories roll #freebam.

80.     These statements were defamatory as they falsely imply that Jevremović, as a person Courville repeatedly identifies as responsible for Margera's confinement, is a criminal and engaged in a criminal conspiracy.

81.     On May 6, 2022, Courville published a picture[54] of Margera to Instagram, overlayed with an anonymous person's statement criticizing Courville's publications:

---

[53] https://www.instagram.com/p/CdQOLU9OQxl/
[54] https://www.instagram.com/p/CdOTKe4OFcG/

29

**JA289**

the whole #freebam thing is so weird and i [sic] strongly believe that [Courville] is a conspiracy theorist. if [sic] she was an actual lawyer[,] wouldn't she actually be busy? sorry [sic] i'm [sic] not buying it

Courville published a comment in response:

I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy. So they're right! #freebam.

82.     This statement is defamatory as it implies that Jevremović is engaged in a criminal conspiracy with respect to her previous involvement with Margera—which is false and misleading, and has caused harm to Jevremović.

83.     On May 4, 2022, Courville published an image[55] to Instagram containing mostly text; the text is a republication of a comment previously made by Courville, which of relevance includes:

. . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in [Margera's] best interest. . . . #freebam SPREAD THE WORD.

84.     This statement constitutes defamation insofar as it implies that Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy and is attempting to co-opt Margera's assets. Further, Courville encourages her audience to further publish her statements.

85.     On May 4, 2022, Courville published an image[56] on Instagram regarding Margera, and a user, "pettyhearst," commented thereupon stating:

I've been a [Margera] fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge[,] I would at least have peace of mind that there is no malicious intent. But they aren't in charge[;] Lima is, and she's a snake oil salesman with blood on her hands. She's

---

[55] https://www.instagram.com/p/CdJHr4Yu7WI/
[56] https://www.instagram.com/p/CdJDkylMVl_/

30

**JA290**

clearly adept at manipulation, and I have no doubt she is manipulating [Margera's parents].

86. Courville published a reply directly to this statement expressing agreement:

bingo.

87.     This statement is defamatory insofar as Courville affirmed the false statements made by the anonymous commenter, thus adopting those comments as her own. These statements assert that Jevremović is manipulating persons for her own gain (impugning Jevremović's honesty) and imply that Jevremović is not acting in Margera's interest, that Jevremović is responsible for Rabb's death ("blood on her hands" – in conjunction with Courville's other defamatory statements with respect to Jevremović and Rabb, this is a reference to Jevremović allegedly being at fault for Rabb's death), and that Jevremović has malicious intent.

88.     On April 27, 2022, Courville published on Instagram an image[57] showing a digital message sent to her in which Courville is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"). Courville captioned the image:

SUE ME

and published a comment on the image, stating:

The only facts that were imagined came from Lima Jevremović's lying ass mouth.

89.     This false statement is defamatory insofar as it impugns Jevremović's honesty. Courville further published a comment to this image, stating:

if telling the truth is 'damaging to others' and those others are criminals, SO BE IT.

---

[57] https://www.instagram.com/p/Cc3Ch4YLTYb/

31

90. This statement is defamatory insofar as it implies that "others" is Jevremović and thus falsely implies that she is a criminal (the "others" referenced is clearly a reference to Jevremović, in context).

91. On April 27, 2022, Courville published on Instagram another image[58] showing a portion of the message sent to her. Courville published a comment associated with the image that reads in relevant part:

> Or is it maybe because the public record doesn't agree with the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??.

92. This statement is defamatory as it impugns Jevremović's honesty by implying that she fabricated a "fake[,] imaginary tale" to mislead people. In a separate comment, Courville further answers a question about Jevremović's description of HIPAA's application to Rabb, stating:

> because they lie.

93. This is defamatory as it is false and expressly impugns Jevremović's honesty.

94. On April 26, 2022, Courville published to Instagram a screenshot[59] showing the "gofundme" donation page for Rabb's treatment, which then indicated that no new donations would be accepted. Courville commented on this photo with the statement:

> Thanks for taking down your fraudulent fundraiser lima!

95. This statement is defamatory as it falsely imputes criminality to Jevremović, expressly accusing her of fraud.

---

[58] https://www.instagram.com/p/Cc21n0Isp74/
[59] https://www.instagram.com/p/Cc1UinJsWvQ/

**JA292**

96. On April 25, 2022, Courville published on Instagram an excerpt[60] from a Complaint previously filed by Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

In response, Courville states:

> the plan is to end his life. I'm convinced of it. #savebam.

97. This statement is defamatory insofar as it alleges that those involved in "the plan" are seeking to kill Margera; in context with Courville's statements regarding Jevremović being central to Margera's treatment, one can reasonably infer that Courville is falsely referencing Jevremović as planning to kill Margera.

98. On April 25, 2022, Courville published to Instagram a screenshot[61] showing that the "Donate now" button was still present on the "gofundme" donation page for Rabb's treatment. Courville commented, asking Gofundme:

> can you return the funds that have been fraudulently collected from donors on this fundraiser?

and stated,

> many people have reported this fraudulent fundraiser and your organization has taken no action.

Elsewhere, Courville states that

> we've reported [fraud] a lot

---

[60] https://www.instagram.com/p/CcxsX9HsR9H/
[61] https://www.instagram.com/p/CcxeH1hOK1d/

33

**JA293**

99.      These statements are defamatory as they falsely accuse Jevremović of criminal behavior – namely, fraud.

100.     On April 19, 2022, Courville posted an image[62] comprising text with the tip line for human trafficking from the National Human Trafficking Hotline, and Courville commented: "#FreeBam." Courville specifically highlighted the phone number and the text stating,

REPORT A TIP with information on potential human trafficking activity.

101.     Courville further added a second photo, depicting a cell phone call to a phone number with five minutes having elapsed, the implication being that Courville had called to report Margera as being trafficked to the National Human Trafficking Hotline. A commenter asks in response:

There [are two] different numbers?!

to which Courville answers:

yeah[,] there's a few[.] I called a different tip line[,] but you can call either one.

102.     This is defamatory because Courville implies that Margera is being trafficked, a criminal act, and in the context of her other statements used in connection with the "#FreeBam" tag, it is clear that she views Jevremović as central to this effort. In the context of her statement that she has called to report Margera's situation as human trafficking and in light of her explicit instructions to a commenter to call, Courville intends this statement to be understood sincerely.

103.     On April 19, 2022, Courville published an image[63] on Instagram containing a short conversation between Courville and a commenter. The commenter accurately stated:

[Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

---

[62] https://www.instagram.com/p/CcizM8YlOrq/
[63] https://www.instagram.com/p/CcibN0JOx89/ (Accessed September 8, 2023.)

34

**JA294**

104.    As recounted in the discussion of Margera above, he was subject to a guardianship imposed in Arizona, and at no relevant time has a conservatorship been imposed. Nonetheless, Courville invokes her credentials, suggests she holds expertise, again provides an inaccurate interpretation of the law, and solicits viewers for her advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

In response, a commenter remarked:

> Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

Courville, apparently drawing upon her self-avowed lawyerly expertise, explains:

> it's to confuse people so the criminals can keep crim[e-]ing.

105.    This is defamatory insofar as, in the context of discussing Margera, it falsely states effectively that the guardianship system is a criminal tool, and thus by implication that Jevremović, as Margera's guardian, must be a criminal.

106.    On April 19, 2022, Courville published on Instagram a screenshot[64] of a conversation between unidentified persons regarding Margera; Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker." On April 19, 2022, Courville published on Instagram screenshots[65] of excerpts from a tabloid story about Margera's recovery, with a section of the article highlighted. Courville commented on the screenshot regarding Margera's recovery, in relevant part, by stating: "#FreeBam" and "#EndHumanTrafficking."

107.    These statements are defamatory as they imply that Jevremović is trafficking Margera. While these statements might ordinarily be readily understood as hyperbole,

---

[64] https://www.instagram.com/p/CciJ3HsuFlX/ (Accessed September 5, 2023.)
[65] https://www.instagram.com/p/CcilldIukcw/ (Accessed September 1, 2023.)

Courville's repeatedly holding herself out as a legal expert and her repeated emphasis of her use of legal language in its technical sense would reasonably lead a significant portion of her audience to understand the implications of these statements literally.

108.    On April 18, 2022, Courville published a screenshot[66] of a highlighted excerpt from an article discussing the application of Iceland law and whether Margera's and his wife's marriage is legally recognized. A commenter on this image asked:

where are his parents?

to which Courville responded:

helping the criminals [sic] girl.

109.    This statement is defamatory insofar as Courville's constant association of Jevremović with Margera's treatment naturally leads Courville's audience to understand "girl" in this context to reference Jevremović; these false statements are defamatory insofar they assert that Jevremović is a criminal, which she is not.

110.    On April 3, 2022, Courville posted a screenshot[67] of an excerpt of a celebrity tabloid article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth"; Courville commented on the photo, saying:

I heard forced rehab is expensive… I learned that from Lima from @meetAURA. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😂 #FreeBam.

111.    By linking the cost of rehabilitation, as described by Jevremović, to the supposed depletion of Margera's net worth, Courville is falsely characterizing Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such a

---

[66] https://www.instagram.com/p/Ccf9UdxuHYc/ (Accessed September 1, 2023.)
[67] https://www.instagram.com/p/Cb5djK4FXNI/ (Accessed September 8, 2023.)

36

**JA296**

statement is defamatory as it falsely imputes a profit motive to Jevremović which most people would find condemnable.

112. On March 30, 2022, Courville published to Instagram a screenshot[68] of comments made to Instagram; a commenter asked:

> forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

Courville responded:

> I mean… that's my impression, so if you're wrong[,] I am too.

113. Courville thereby explicitly adopted the commenter's false statements. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Jevremović is exploiting celebrities for money. Such false statements are defamatory as they indicate dishonesty and insofar as people hold low opinions of those who exploit others.

114. On April 4, 2022, Courville published to YouTube a video entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT"[69] in which she defames Jevremović. At 27:39, Courville describes Margera's transfers between treatment facilities and states:

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

115. This statement defames Jevremović insofar as Courville repeatedly identifies Jevremović as responsible for Margera's treatment, and insofar as Courville, invoking the authority she commands as a lawyer, describes aspects of Margera's treatment as criminal.

---

[68] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed September 8, 2023.)
[69] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed September 8, 2023.)

37

**JA297**

116.  On July 15, 2022, Courville published to YouTube a video entitled "Bam's Guardian LASHES OUT | Breaks Silence on #FreeBam – Reaction"[70] in which she reacts to Jevremović's public statements addressing, *inter alia*, Courville's harassment ("the relentless harassment, leaking all of my private information all over the internet, threats to my family and clients, constantly reporting my social media accounts and businesses and the over 14,000 emails that have cluttered my inbox"). At 05:05 Courville states

I also know Lima [is] a liar.

117.  This is defamatory insofar as Courville expressly impugns Jevremović's honesty without basis.

118.  Later in the same video, at 26:08, Courville addresses the discrepancy between Jevremović's description of Rabb's cause of death and the official autopsy report and states:

[Jevremović] can't keep track of her story. And that's what happens when you lie; you have to keep track of the lies you told.

119.  This is defamatory insofar as it expressly characterizes Jevremović's statements as lies, when in reality, Jevremovic's alleged false statements emanated from an email with conflicting information which Jevremovic read from in a video Courville cites as inaccurate.[71] Clark County did not provide Jevremovic with the complete autopsy report citing HIPAA law as the reason for not providing the full document—which Courville somehow obtained and publicized in attempts to discredit Jevremović. In reality, Jevremović read from the information she was provided.

120.  On July 8, 2022, Courville published to YouTube a video entitled "Bam's Family Breaks Silence on #FreeBam | Jess and April Margera SPEAK OUT."[72] At 6:10, she states:

---

[70] https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 8, 2023.)
[71] https://www.youtube.com/watch?v=lQTPnbpsAlc (Accessed September 8, 2023.)
[72] https://www.youtube.com/watch?v=Nr3e0RKY6Ig (Accessed September 8, 2023.)

**JA298**

I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

121.    Courville thus emphasizes that her statements are accurate and factual. At 15:59, Courville describes herself as

the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation

122.    This is defamatory insofar as it characterizes Jevremović's imposition of a guardianship as human trafficking, a crime. While such statements might ordinarily be susceptible to an interpretation as hyperbole, Courville disclaims hyperbole by use of the term "literal," and she makes clear that if she did not intend for this statement to be taken literally, then she would have been "very explicit that it is my opinion or my belief or my suspicion," and she would "never say [this statement] as if it is a fact if [she didn't] know it to be a fact."

123.    On April 18, 2022, Courville posted a screenshot[73] of anonymous comments to Instagram, captioning the photo:

Looks like team con is planning to traffic @bam_margera for a "few more months". #freebam

124.    This statement is defamatory insofar as it characterizes Jevremović as a trafficker and a con. Given Courville's repeated statements regarding Jevremović's guardianship, viewers would clearly understand "team con" to refer to Jevremović.

125.    On July 1, 2022, Courville published a video to YouTube entitled "Virtual Reality Hell: The Amanda Rabb Story."[74] At 31:02 she states:

I operate in one absolute thing and that is truth. Lima didn't tell the truth.

---

[73] https://www.instagram.com/p/Ccf9opHlvNm/
[74] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2

39

126.   By these statements, Courville impugns Jevremović's honesty, and emphasizes that Courville's statements are accurate and factual.

127.   In this same video, at 31:31, Courville states:

That was not true. Amanda was hand chosen because they had the cooperation of Larry Rabb.

128.   These statements are defamatory insofar as they impugn Jevremović's honesty.

129.   On September 10, 2022, Courville published a video to YouTube entitled "Lima Jevremovic Made A Video About Me,"[75] in which she states at 17:53:

I joke about stuff, and I make light of situations, but like, make no mistake, this isn't drama, this is very serious.

130.   By this statement, Courville emphasizes that her statements are not jokes or hyperbole but should be understood as accurate and factual by her viewers.

131.   Courville reiterates this in the same video at 18:15, when she states:

It's very serious, a woman is dead, a woman has passed under [Jevremović's] care.

132.   This statement both defames Jevremović by characterizing her as personally responsible for wrongdoing, i.e., a woman's death, and reiterates that Courville's statements are serious and should be taken as such.

133.   On July 30, 2023, Courville published to YouTube a video titled "Missing Twin NEEDS Help | *URGENT*."[76] At 1:37, she states:

Another story is the Amanda Rabb story and the fact that Lima did take over Amanda's life and healthcare in order to give her an experimental treatment and Amanda Rabb, as you know, did not survive the treatment. She passed away in the treatment center, in the AURA treatment center, and then Lima lied about how Amanda died and she never really gave a good explanation for that.

---

[75] https://www.youtube.com/watch?v=RtwiHx8_oMA
[76] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)

40

**JA300**

134. These false statements are defamatory insofar as they impugn Jevremović's honesty.

135. Later in this same video, at 10:55 she states:

This has turned into a me versus everyone, everybody in the family, all the – no, it's the truth versus lies.

136. Courville thus emphasizes that her statements are accurate and factual.

137. Courville also states in this video, at 11:12:

Not only do we have one unexplained death that has happened in Lima's care, we also now have allegations of sex trafficking of people that Lima has purported to be in care of, and Bam Margera told me himself he was held against his will for months without access to a phone, computer, internet, any of it.

138. These statements are defamatory insofar as they characterize Jevremović as a criminal, which she is not.

139. Courville then goes on to claim, "it's about the truth for me," before reading a letter which she states she sent to 25 to 50 different outlets and encourages viewers to also send, which states:

I am a lawyer and independent journalist with a few YouTube channels.[77]

140. Courville thus further relies on her legal background to support that her statements are accurate and factual; they are not.

141. Courville's letter, as read aloud in this video and posted in the video's description via a Google Doc for her followers to send, also states:

[Bam Margera] told me that he was held in rehab against his will and denied medical treatment.[78]

---

[77] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)
[78] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)

41

**JA301**

142. This statement is defamatory insofar as Courville identifies Jevremović as responsible for Margera's treatment and characterizes such treatment as criminal.

143. On August 14, 2023, Courville published a video to YouTube entitled "*SHOCKING* Presentation by Lima from AURA (NEW)"[79] in which she references her legal background, stating at 20:50:

> I think I scored in the 96th or 97th percentile on [the LSAT], like I scored in the top like three or four percent of everyone who took the test.

144. This statement serves to legitimize Courville's statements as factual and accurate, which they are not.

145. In this same video, Courville repeats the same false, defamatory statements detailed herein about Jevremović with regard to Ms. Rapp's death.

146. In an August 2022 video, Defendant Benipal appeared alongside Courville on the "That Surprise Witness" YouTube channel and personally made false or misleading statements regarding Jevremović and regarding Ms. Rapp's death, such as Benipal's statement at the 10:07 mark: "Had [Jevremović] left Amanda alone, Amanda might be alive today...".[80]

147. This statement is defamatory insofar as Courville identifies Jevremović as responsible for Ms. Rabb's death, which has no basis in truth.

148. Jevremović's reputation and business endeavors has been negatively impacted, if not destroyed by Defendants' actions, and she has unduly suffered humiliation, emotional distress, anger, embarrassment, sadness, frustration, fear, loss of income, chagrin, severe anxiety, stress, shame, mortification, hurt feelings, sleeplessness, and physical manifestations thereof resulting from Defendants' above-described actions. Jevremović's associated damages

---

[79] https://www.youtube.com/watch?v=Emm1WfIdZbE (Accessed September 5, 2023.)
[80] https://www.youtube.com/watch?v=5EPVSf8Kdlo at 10:07 (Accessed September 5, 2023.)

42

**JA302**

are in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

149. Defendants knew or should have known each of these statements to be false at the time the statement was made, and thus, Defendants acted with actual malice sufficient to support an award of punitive damages.

150. Defendants intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications. Defendants made these false statements in a wanton and willful disregard of Jevremović's rights. Defendants knew or should have known at the time that they made the statements that serious harm would arise from Defendants' conduct, and Defendants, with knowledge of the harm caused, continued such conduct. Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter them from similar wrongful conduct in the future.

## SECOND COUNT

## LIBEL

### (By Plaintiff AURA against All Defendants)

151. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 150 as though fully set forth in this paragraph.

152. On April 27, 2022, Courville published to Instagram an image[81] showing a digital message sent to her in which the message-sender criticizes Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovićh [sic] . . . ever up held [sic] HIPPA [sic]?

---

[81] https://www.instagram.com/p/Cc22uuMsobQ/

43

**JA303**

Courville responded:

> never not once [sic].

153. This statement is defamatory insofar as it references Jevremović's work on behalf of AURA, and it asserts that Jevremović, and by extension, AURA, violate the Health Insurance Portability and Accountability Act ("HIPAA"). Because AURA's products are used in mental health treatment, they must (and do) comply with HIPAA. Courville's statements are defamatory *per se* insofar as they falsely allege that AURA is irresponsible with its clients' private information and that AURA does not follow black-letter law. Such statements would damage AURA's esteem and reputation amongst patients, healthcare practitioners, investors, and others, and would lead third parties to think that AURA is incompetent in its business or engages in misconduct in its business operations.

154. On April 27, 2022, Courville republished an image[82] containing another's statements to Instagram regarding Rabb, Margera, and Jevremović; an anonymous commenter asked:

> Are [Jevremović and AURA,] using homeless people with addictions to experiment on them for their [YouTube] channel?

and Courville unequivocally affirmed the commenter's statement:

> yes.

155. By affirming the commenter's statement, Courville effectively adopted the statement as her own. This false statement is defamatory as it explicitly states that Jevremović and AURA are experimenting on homeless individuals, implying that they are doing something inhumane. It further implies that Jevremović and AURA are dishonest insofar as Courville's statement contradicts Jevremović's stated reason for providing care to Rabb.

---

[82] https://www.instagram.com/p/Cc3REs7FNGJ/

44

156.    On March 31, 2022, Courville published to Instagram an excerpt[83] from a video in which Jevremović read Rabb's cause of death as a seizure disorder. Courville pauses and adds commentary, including, at 0:10; Jevremović states:

Rabb never had seizures prior to being homeless.

Courville comments and states:

But I think another way of saying that is she never had seizures prior to using AURA.

157.    Courville thus seeks to falsely imply that AURA's products caused Rabb's seizures and potentially caused her death.

158.    On March 31, 2022, Courville published on Instagram a photo[84] of Rabb wearing virtual reality headgear and participating in a "Virtual Reality Exposure Therapy Session using AURA." A person commented on the photo with interest in the virtual reality-based treatment, and Courville responded:

the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool. I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

159.    This statement is defamatory insofar as it falsely states that patients have the AURA system forced upon them as a test-subject; such a statement carries negative implications about AURA as people are generally opposed to being forced to test healthcare treatments.

160.    On April 1, 2022, Courville published an excerpt[85] from a program for a virtual reality conference which included Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Courville commented on the image:

---

[83] https://www.instagram.com/p/CbxaISSgRxR/
[84] https://www.instagram.com/p/CbxIzVsOT-D/

[85] https://www.instagram.com/p/Cb02KZuAJEe/

45

**JA305**

Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #RabbRabb.

161.    This statement is defamatory insofar as it characterizes Jevremović and AURA as experimenting on vulnerable populations whom Jevremović purportedly views as "problematic" and insofar as it contradicts Jevremović's stated reasons for working with those suffering from mental health disorders (thereby impugning her honesty); such a characterization is highly offensive and falsely imputes a motive to Jevremović and to AURA which most people would find condemnable.

162.    On March 30, 2022, Courville published another excerpt from a video[86] in which Jevremović describes the use of AURA products in connection with Rabb's treatment. Jevremović explains that AURA provides its products at no cost and uses the data collected for research purposes, and Rabb would have the opportunity to serve as a case study. Courville commented on the video:

Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship. #FreeBam #RabbRabb #InvestigateAURA

163.    These statements are defamatory as they falsely state that Jevremović and AURA forced Rabb to test AURA products – people are generally opposed to being forced to test healthcare tools. Such a statement negatively impacts AURA's reputation.

164.    On February 22, 2022, Courville published to YouTube a video[87] in which she defames Jevremović and AURA. At 49:55, Courville falsely states:

[Jevremović] forces people by court order to use [AURA's] tools.

165.    This statement is defamatory insofar as it falsely states that Jevremović on behalf of AURA imposes conservatorships on people as a means to force people to use AURA's tools (from

---

[86] https://www.instagram.com/p/CbvGodsJLtE/

[87] https://www.youtube.com/watch?v=hAPdBs398vc (Accessed September 5, 2023.)

46

**JA306**

which AURA and Jevremović would purportedly profit); people will generally understand this statement to be defamatory insofar as forcing guardianships and conservatorships on people for the purpose of generating profits is generally condemnable behavior.

166.    AURA's reputation has been negatively impacted due to Defendants' above-described actions; AURA has lost substantial investments, opportunities, and income resulting from Defendants' defamation.

167.    Defendants intentionally and maliciously made the above-quoted false statements over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications. Defendants made these false statements in wonton and willful disregard of AURA's rights, with knowledge of their falsity or reckless disregard for whether the statements were true. Defendants knew or should have known at the time they made the statements that serious harm would arise from their conduct, and Defendants, with knowledge of the harm caused, nevertheless continued such conduct unabashedly. Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter them from similar wrongful conduct in the future.

168.    These false statements expose AURA and its CEO, Jevremović, to hatred, contempt, and the loss of the goodwill and confidence felt toward them by others.

169.    Furthermore, these false statements have a tendency to injure, and did in fact injure, Plaintiffs' business operations in the addictions recovery and mental healthcare industry, including but not limited to their use of therapist-guided exposure therapy implementing virtual reality technology and telehealth solutions.

170.    These statements are entirely false. As a result of Defendants' publications, Plaintiffs have suffered reputational harm in an amount to be proved at trial.

47

**JA307**

171. As a result of Defendants' publications, AURA has lost business opportunities in an amount to be proven at trial.

172. Defendants' conduct in publishing and republishing the above statements was actuated by actual malice and/or accompanied by a wanton and willful disregard of the effect their statements would have on Plaintiffs' reputations, which foreseeably might be harmed by Defendants' republications. Such conduct entitles Plaintiffs to an award of punitive damages under N.J.S.A. 2A:15-5.9, *et seq.*, to both punish and deter Defendants' wanton conduct in an amount to be proven at trial.

## THIRD COUNT

### Invasion of Privacy – Intrusion upon Seclusion

### (By Plaintiff Lima Jevremović against All Defendants)

173. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 172 as though fully set forth in this paragraph.

174. Plaintiff has alleged (i) an intentional intrusion (ii) upon the seclusion of another that is (iii) highly offensive to a reasonable person.[88]

175. Plaintiff has successfully alleged an intentional intrusion, where she was substantially certain she lacked any indicia of consent to commit the intrusive acts alleged herein. Plaintiff has alleged that Defendants released personal information without any permission to do so, and to the contrary, over Plaintiff's vehement objections.

176. Specifically, Defendants have released highly personal, private information regarding Plaintiff and her family, including Plaintiff's family's home addresses, the name and address of the church Plaintiff attends in Los Angeles, Plaintiff's phone number, and Plaintiff's

---

[88] *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17 (1992) (citing Restatement (Second) of Torts § 652B.

48

**JA308**

social security number, as well as the names and photos of Plaintiff's husband, sisters, mother, and mother-in-law. Moreover, Defendants' release of Plaintiff's personal information, and encouragement of Courville's followers[89], has caused further intrusions and invasions into Plaintiff's privacy via death threats and text messages of dead bodies from unknown numbers, strangers showing up uninvited and unannounced at Plaintiff's home, and drones entering and surveilling Plaintiff's property to watch Plaintiff and her family.

177. Plaintiff has alleged herein that Defendants have intruded into Plaintiff's otherwise private seclusion that the plaintiff has regarding her person or private life. Specifically, Defendants have intruded upon Plaintiff's family life, home and property, private information, and church and religious life.

178. The above-listed intrusions on Plaintiff's privacy, such as the release of her private contact information and social security number, would undoubtedly be highly offensive to the ordinary reasonable person.

179. Plaintiff has suffered immense emotional and financial harm as a result of Defendants' invasion into her privacy as described herein.

## FOURTH COUNT

### Invasion of Privacy – False Light

### (By Plaintiff Lima Jevremović against All Defendants)

180. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 179 as though fully set forth in this paragraph.

181. Defendants gave publicity to a matter concerning Plaintiff that Defendants knew was false.

---

[89] June 27, 2023 YouTube video with Courville touting the contributions of her followers to her activities in digging into Jevremovich's personal life: https://www.youtube.com/watch?v=Vh6j4YHIxoE.

49

**JA309**

182.   Defendants either knew that the publicized material was false and would place Plaintiff in a false light or acted with reckless disregard as to whether the publicized defamatory statements were false and/or with reckless disregard for the false impression created by the publicized defamatory statements. Specifically, Defendants made the defamatory statements and publications regarding Plaintiff with knowledge or reckless disregard of their falsity as described in Counts I and II.

183.   The defamatory statements made by Defendants so misrepresented Plaintiff's character, history, activities and/or beliefs that a reasonable person in Plaintiff's position would find the material highly offensive. In fact, significant numbers of people who have viewed these defamatory statements have been so affected by them that Plaintiff has received death threats and text messages of dead bodies from unknown numbers, strangers have shown up uninvited and unannounced at Plaintiff's home and recently, drones entered Plaintiff's property and hovered above Plaintiff and Plaintiff's mother to surveil them. A reasonable person would not only find Defendants' statements highly offensive but would be offended and shocked by the effect Defendants' statements have had on other persons, and Defendants' continuing to make such statements knowing that Plaintiff faced such egregious threats to her safety based thereon.

184.   The publicity caused by Defendants' defamatory statements was the cause of injuries, damages, and/or losses sustained by Plaintiff.

### FIFTH COUNT

**Domestic Violence Act ("DVA")—Harassment (N.J.S.A. § 2C:25-19(a)(13))**

**(By Plaintiff Lima Jevremović against All Defendants)**

185.   Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 184 as though fully set forth in this paragraph.

186. Harassment under the DVA occurs where a person with purpose to harass another, "[m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. § 2C:33–4(a). "[A]nnoyance" under that subsection means to "disturb, irritate or bother." *State v. Hoffman*, 149 N.J. 564, 580 (1997). The provision in N.J.S.A. 2C:33–4(a) prohibiting conduct communicated in any manner likely to cause annoyance or alarm encompasses where those modes of communicative harassment "are also invasive of the recipient's privacy." *Id.* at 583.

187. The Act further provides that the court shall consider, among other factors: the existence of immediate danger to person or property and the existence of a verifiable order of protection from another jurisdiction. N.J.S.A. 2C:25–29(a). Here, a Temporary Restraining Order is attached as Exhibit 1, that has been issued pending a hearing on September 25, 2023, based on the harm that has been caused to Plaintiff in California. *See* Exhibit 1.

188. As alleged in multiple instances of harassing conduct above, Defendants have falsely suggested that Jevremović had an OnlyFans page with pornographic films and photographs (she does not and never has), which false suggestion would not have been made except as to cause annoyance or alarm, and which was invasive of the Plaintiff's privacy.

189. As alleged above, Defendants have published to the Internet Jevremović's social security number, date of birth, home phone number, multiple private home addresses of Jevremović and her family members, along with urgings to her followers that would be suggestive that the pieces of highly personal and sensitive information are to be used in nefarious ways. Even though Courville has occasionally issued brief disclaimers regarding the usage of this personal identifying information, the context of the release of the information would suggest that the sole purpose of such releases was to frighten, intimidate and harass Jevremović.

51

**JA311**

190. As a result, Plaintiff and her family have been forced to relocate from their homes multiple times, hire around-the-clock security, and have obtained a Temporary Restraining Order based on the aforementioned conduct of Defendants (*See* Exhibit 1), that has thus caused Plaintiff financial harm, as well as pain and suffering.

## SIXTH COUNT

### Domestic Violence—Cyber-harassment (N.J.S.A. § 2C:25-33-4.1)

### (By Plaintiff Lima Jevremović against All Defendants)

191. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 190 as though fully set forth in this paragraph.

192. Cyber-harassment under the DVA occurs where making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person, and knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person; or threatens to commit any crime against the person or the person's property. N.J.S.A. § 2C:25-33-4.1.

193. Here, among the other allegations pleaded above, Courville did post to her @ThatSurpriseWitness Instagram posted on April 22, 2023, which on information is operated by Defendants Courville, Benipal, and That Surprise Witness TV LLC, a lewd photograph[90] falsely suggesting that Jevremović had an OnlyFans[91] page—and linking to pornographic films and photographs that are not of Jevremović; Defendants knowingly used such lewd and indecent

---

[90] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023).

[91] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

material solely with the purpose of causing emotional harm to Jevremović, and without any legitimate purpose.

194. Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, including the actions mentioned herein, with the knowledge that their publications could cause Plaintiff to suffer harassment and humiliation.

195. The acts of Defendants resulted in damage to Plaintiff.

## SEVENTH COUNT

### Intentional Infliction of Emotional Distress

### (By Plaintiff Lima Jevremović against Defendant Courville)

196. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 195 as though fully set forth in this paragraph.

197. The New Jersey Supreme Court in the seminal case *Buckley v. Trenton Saving Fund Soc.* sets forth the common law cause of action for the tort of intentional infliction emotional distress: one must intentionally or recklessly commit an extreme and outrageous act which proximately causes plaintiff severe emotional distress. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).

198. The nature of the act or conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement, Second, Torts, § 46).

199. Similarly, there is a rather rigorous, while objective, standard for how severe the distress must be that is suffered by plaintiff: "so severe that no reasonable man could be expected to endure it." *Cole v. Laughrey Funeral Home*, 376 N.J.Super. 135, 148 (App.Div.2005) ("The tort of intentional infliction of emotional distress requires emotional trauma that is severe.").

53

200. Here, there is no doubt that Defendants' distribution of Plaintiff's home address, her mother's home address, and myriad other releases of private information, including Plaintiff's phone number and social security number, was released with the aim of inflicting devastation and emotional distress on Plaintiff and her family—and that Defendants' actions did in fact cause devastation and emotional distress.

201. Further, the publication of a photo falsely suggesting Plaintiff was distributing pornographic materials via OnlyFans was but one example of the conduct alleged above, plainly released to torment and distress Plaintiff; Defendants' conduct in publicly touting this obscene lie did in fact cause devastation and emotional distress.

202. Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, with the knowledge that their publications could cause Plaintiff to suffer harassment and potential violence.

203. The acts of Defendants resulted in damage to Plaintiff. In fact, as a direct result of Defendants' distribution of Plaintiff's and her family's private information, Plaintiff and her family have been forced to move homes, relocate to different states, and hire around-the-clock security.[92]

## EIGHTH COUNT

### Negligent Infliction of Emotional Distress

### (By Plaintiff Jevremović against All Defendants)

204. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 203 as though fully set forth in this paragraph.

---

[92] Danielle Keats Citron, Addressing Cyber Harassment: An Overview of Hate Crimes in Cyberspace, 6 Case W. Res. J.L. Tech. & Internet at 4 (2015): https://scholarlycommons.law.case.edu/jolti/vol6/iss1/3 ("Victims fundamentally change their lives. They move because they no longer feel safe at home.")

JA314

205. For a claim of negligent infliction of emotional distress, a plaintiff must plead that the defendant had a duty to the plaintiff and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark*, 349 N.J.Super. 251, 277 (App.Div.2002).

206. Whether the defendant has a duty of care to the Plaintiff depends on whether it was foreseeable that the plaintiff would be seriously mentally distressed. *Id.*

207. Here, Defendants were aware of the risk of serious mental distress to Jevremović as a result of Defendants' distribution of Plaintiff's home address (three different private addresses after Jevremović has been forced to move as a result of Courville's doxing), Jevremović's mother's home address[93], Jevremović's sister Dahlia's private home address, along with release of links to pornography with the false suggestion that it was Jevremović in the pornography, and the myriad false statements and releases of private information as pleaded above.

208. As such, Defendants breached their duty of care to Jevremović as they combined to jointly conduct outrageous, cruel, and malicious doxing and cyber-harassment of Jevremović despite knowledge that their conduct had caused Jevremović severe emotional distress, and despite knowledge that Jevremović's reporting the conduct to law enforcement in three states.

209. The acts of Defendants resulted in damage to Plaintiff and her family, including but not limited to, forcing Plaintiff and her family to relocate and 24-7 hire security.

210. Defendants conduct herein has caused Jevremović extensive additional mental anguish[94] and financial harm.

---

[93] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023).
[94] Danielle Keats Citron, Addressing Cyber Harassment at 4-5: ("Victims experience severe emotional distress, anxiety, and depression.").

55

**JA315**

## NINTH COUNT

### Unfair Competition

### (By Plaintiff AURA against All Defendants)

211.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 210 as though fully set forth in this paragraph.

212.    The actions of Defendants as alleged above were done deliberately and intentionally.

213.    The actions of Defendants misled the public regarding AURA and/or products in violation of the common law of unfair competition of the State of New Jersey. Specifically, Defendants have actively spread defamatory statements and falsehoods about AURA, while Courville simultaneously began contributing to another online health company, Giddy.

214.    The actions of Defendants as alleged above were committed with the intention of deceiving or defrauding the public in violation of the common law of unfair competition of the State of New Jersey.

215.    Specifically, Defendants actions have effectively frozen investment in AURA, forestalled further development of AURA's new health-based business, and acted to siphon potential investors interested in a health start-up away from AURA.

216.    Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## TENTH COUNT

### Unfair Competition

### (By Plaintiff Jevremović against All Defendants)

217.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 216 as though fully set forth in this paragraph.

56

**JA316**

218. The actions of Defendants as alleged above were done deliberately and intentionally to bring down Jevremović and to siphon off Jevremović's followers and viewers to Defendants' "That Surprise Witness" social media channels, and to deceive or defraud the public into following Defendants' social media channels instead of Jevremović, in violation of the common law of unfair competition of the State of New Jersey.

219. The actions of Defendants misled the public regarding Jevremović as a social media influencer in the health space, in violation of the common law of unfair competition of the State of New Jersey.

220. Specifically, Defendants have actively spread defamatory statements, falsehoods, and misleading statements about Jevremović, where negative commentary receives more traction online than positive content. At the same time, Courville contributed to another competing online health company, Giddy, that was also in the health space.

221. Specifically, Defendants' actions have effectively destroyed Jevremović's business as a YouTube commentator herself, forestalling Jevremović's growth as commercially successful social media personality in the health space, after Defendants' social media blitzkrieg demonizing Jevremović, and siphoning viewers and followers to Defendants' social media channels, and profiting thereby in the form of Patreon sponsors, advertising on Defendants' YouTube channel and other methods of monetization that Defendants wrongfully obtained at the harm and expense of Jevremović.

222. Defendant's actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

**JA317**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment as follows:

1.     For general damages according to proof, but not less than $75,001;

2.     For compensatory damages according to proof;

3.     For special damages for damage to reputations, losses of business opportunities, and losses of investment opportunities according to proof, but not less than the jurisdictional minimum of this Court;

4.     For the maximum available punitive damages per Plaintiff per cause of action;

5.     For a permanent injunction to remove all statements and publications adjudged libelous and to estop Defendants from publishing additional actionable statements under the causes of action alleged;

6.     For pre- and post-judgment interest as allowed by law;

7.     For costs of suit and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all matters triable.

Respectfully submitted,

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suit 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com

58

**JA318**

s/Neville L. Johnson
Neville L. Johnson (*Pro Hac Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com


s/Rodney Smolla
Rodney Smolla
(*Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC


Dated: December 6, 2023

**JA319**

## NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation Agent, LLC ("AURA"), hereby declare the following:

1.      I am a Plaintiff in the present case, a citizen of California and the United States of America.

2.      I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3.      I have fully reviewed the foregoing Third Amended Complaint, and aver that the matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I hereby certify that the matter in controversy in the foregoing Third Amended Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding, with the exception of an application for Domestic Violence Restraining Order filed in Family Court in California by Claimant Lima Jevremović against Respondent Brittany Courville at Case Number 23STR005881, which thus far resulted in a Temporary Restraining Order attached as Exhibit 1, and which was served upon Defendant on September 11, 2023.

I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on December 6, 2023.                    /s/ Lima Jevremović

                                                 _____
                                                 Lima Jevremović, on my own behalf, and
                                                 on     behalf    of    Autonomous    User
                                                 Rehabilitation Agent, LLC

60

**JA320**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **LIMA JEVREMOVIC,** *et al.*, | |
| Plaintiffs, | Civil Action No. 22-4969 (ZNQ) (RLS) |
| v. | **ORDER** |
| **BRITTANY JEREAM COURVILLE,** *et al.*, | |
| Defendants. | |

### QURAISHI, District Judge

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville, Prem Benipal, and That Surprise Witness TV LLC (collectively, "Defendants"). ("Motion", ECF No. 67.) For the reasons set forth in the accompanying Opinion,

**IT IS** on this **30th** day of **August 2024,**

**ORDERED** that Defendants' Motion (ECF No. 67) is hereby **GRANTED**; and it is further

**ORDERED** that Counts One, Two, Three, Four, Seven, Eight, Nine, and Ten of Plaintiffs' Third Amended Complaint are hereby **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Counts Five and Six of Plaintiffs' Third Amended Complaint are hereby **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that Plaintiffs are hereby granted leave to file a Fourth Amended Complaint within thirty (30) days of the entry of this Order. A failure to cure the defects noted in the accompanying Opinion may lead to dismissal with prejudice.

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

**JA321**

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LIMA JEVREMOVIC,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **BRITTANY JEREAM COURVILLE,** *et al.*, <br><br> Defendants. | Civil Action No. 22-4969 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Brittany Jeream Courville ("Courville"), Prem Benipal ("Benipal"), and That Surprise Witness TV LLC (the "LLC") (collectively, "Defendants"). ("Motion", ECF No. 67.) Defendant filed a brief in support of their Motion. ("Moving Br.", ECF No. 67-1.) Plaintiffs Lima Jevremovic ("Jevremovic") and Autonomous User Rehabilitation Agent, LLC ("AURA") (collectively, "Plaintiffs") filed an Opposition to the Motion ("Opp'n Br.", ECF No. 71), to which Defendants replied ("Reply Br.", ECF No. 74).

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will GRANT Defendants' Motion.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I.      BACKGROUND AND PROCEDURAL HISTORY

This action arises out of alleged defamatory statements made by Defendants across various online platforms about Jevremovic and her company, AURA.  (*See generally* Third Amended Complaint, "TAC".)  A complete factual background of this dispute is set forth in this Court's Opinion dated August 10, 2023, which the Court incorporates by reference.  *Jevremovic v. Courville*, Civ. No. 22-4969, 2023 WL 5127332 (D.N.J. Aug. 10, 2023) (hereinafter *Jevremovic*). The relevant background and procedural history are summarized as follows.

Plaintiffs initiated the instant action on August 8, 2022, by filing the original Complaint. ("Compl.", ECF No. 1.)  On May 30, 2022, the Court issued an Order to Show Cause why this matter should not be dismissed for lack of subject matter jurisdiction because Plaintiffs failed to adequately allege the citizenship of AURA.  (ECF No. 24.)  On June 6, 2023, Plaintiffs filed an Amended Complaint ("Am. Compl.", ECF No. 26) that adequately alleged AURA's citizenship; the original Complaint and the Amended Complaint are otherwise identical. Accordingly, the Court withdrew its Order to Show Cause. (ECF No. 32.)

The Amended Complaint asserted two counts of libel against Courville.  (Am. Compl., ECF No. 26 ¶¶ 29–111.)  Between the two counts, Plaintiffs alleged that Courville made defamatory statements about Plaintiffs on her YouTube channel, on Instagram posts, and on other social media platforms.  The statements largely concerned Plaintiffs' relationship with Amanda Rabb and Brandon "Bam" Margera, individuals associated with Jevremovic and AURA's efforts to provide mental health services to individuals suffering mental health crises.  (TAC ¶¶ 18–19, 23–24.)

Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 20), which the Court granted.  *Jevremovic*, 2023 WL 5127332.  In *Jevremovic*, the Court held that Courville's

statements ("Challenged Statements") were unactionable opinions, not defamatory statements. *Id.* The Court provided several explanations to support its conclusion that the Challenged Statements were not actionable defamatory statements, including that: (1) the statements were made on Instagram and YouTube which are "forums that welcome opinions and candor," (*id.* at *5); (2) despite being a lawyer, Courville "disclaims that her opinions are 'not legal advice,'" (*id.* at *6); and (3) Courville characterizes her opinions as "theories" and even refers to herself as a "conspiracy theorist," (*id.*). The Court also found that Plaintiffs failed to sufficiently plead actual malice, a demanding standard requiring "particularized facts to suggest that . . . [the statement] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement." *Darakjian v. Hanna*, 366 N.J. Super. 238, 248 (App. Div. 2004). Ultimately, Court dismissed the two libel counts without prejudice and granted Plaintiff leave to "cure the defects noted in [*Jevremovic*]" and noted that a failure to do so may result in dismissal with prejudice. *Jevremovic*, 2023 WL 5127332, at *8.

On September 11, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"). (ECF No. 48.) Just a few months later, Plaintiffs filed the Third Amended Complaint ("TAC") on December 6, 2023, to correct a clerical error in the caption of the SAC. (ECF No. 64.) Other than the caption, the SAC and the TAC are identical, and the Court refers to the TAC as it is the operative pleading in this matter.

The amendments in the TAC significantly exceeded the Court's narrow authorization for Plaintiffs to file an amended complaint to cure the defects with their two counts for libel. First, Plaintiffs added two new parties in the TAC, Defendants Benipal and the LLC. (*See generally id.*) Second, Plaintiffs retain their two libel claims but have also added *eight* additional counts, Counts Three through Ten, for various causes of action including invasion of privacy, harassment,

intentional and negligent infliction of emotional distress, and unfair competition.  (*Id.* ¶¶ 173–222.)  To support their additional causes of action, Plaintiffs plead several factual allegations describing Defendants' purported harassment and doxing behavior towards them.  (*Id.* ¶¶ 44–63.)  Plaintiffs describe how Defendants "have resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremovic and prevent" her from bringing this lawsuit.  (*Id.* ¶ 44.)  Plaintiffs allege that Defendants have published over 300 videos and over 1,000 posts about Jevremovic across Defendants' social media outlets.  (*Id.* ¶ 47.)  In particular, Plaintiffs point to a photo that Defendants published "falsely communicating that Courville had found an OnlyFans page for Jevremovic—a profile page which links to pornographic films and photographs that are not Jevremovic."  (*Id.* ¶ 48.)  Finally, Plaintiffs allege that Defendants have distributed personal information relating to Jevremovic and her family.  (*Id.* ¶¶ 50–53.)  Altogether, Plaintiffs claim that Defendants' conduct has caused "substantial and irreversible damage to Jevremovic's career and reputation" and well as destroying AURA's ability to operate professionally or commercially.  (TAC ¶¶ 60–61.)

Although Defendants recognize that Plaintiffs have "tried to widen the scope of this action" with their amendments in the TAC, Defendants do not object to Plaintiffs' amendments on a procedural basis and the Motion only seeks dismissal under Rule 12(b)(6).  (Moving Br. at 1.)  As such, the Court accepts the TAC as the operative pleading and will consider Defendants' arguments for dismissal.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.   **DISCUSSION**

### A.   **VIABILITY OF CLAIMS AGAINST DEFENDANTS BENIPAL AND THE LLC**

Before the Court addresses Defendants' arguments for dismissal under Rule 12(b)(6), the Court will first address two arguments Defendants raise seeking to dismiss claims against Benipal and the LLC on alternative grounds.

### 1. No Plausible Allegations Support the Claims against Benipal and the LLC

Defendants first raise a broad, overarching argument that the entire TAC should be dismissed against Benipal and the LLC because the TAC lacks specific factual allegations to substantiate the claims against Benipal and the LLC. (Moving Br. at 30–31.) Defendants claim that Plaintiffs make "only a handful of allegations relating to Benipal or the LLC, but none plausibly allege any wrongdoing." (*Id.* at 30.) Despite Defendants' efforts to characterize the allegations against Benipal and the LLC as "scant," the Court disagrees. A review of the TAC reveals that, in accordance with Federal Rules of Civil Procedure, Plaintiffs have sufficiently pled allegations against both Benipal and the LLC to satisfy threshold pleading requirements. The Court therefore rejects Defendants' argument and declines dismissing the claims against Benipal and the LLC on this basis.

### 2. Plaintiffs' Libel and False Light Claims are Time-Barred

Defendants next argue that Plaintiffs' defamation-based claims—the libel and false light claims set forth in Counts One, Two, and Four—must be dismissed against Benipal and the LLC because they are time-barred and do not relate-back to the original Complaint filed in 2022. (*Id.* at 31–33.) Because Plaintiffs did not seek leave before adding Benipal and the LLC as named Defendants in the SAC (which was superseded by the TAC), the Court must first determine whether the TAC meets the requirements of Federal Rule of Civil Procedure 15(c)(1)(C) prior to addressing the Motion.

Pursuant to Federal Rule of Civil Procedure 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A)–(C).

Specifically, Defendants take issue with one allegation (TAC ¶ 146), an alleged defamatory statement Benipal made on Courville's YouTube channel, That Surprise Witness, in August 2022.[2] (Moving Br. at 31–32.) Notably, this is the only defamatory statement alleged against Benipal in the entire TAC. The allegations that form the basis of the defamation claims against Benipal and the LLC were first filed in the SAC on September 11, 2023. (ECF No. 48.) Defendants cite to N.J.S.A. 2A:14-3, the New Jersey statute which sets forth a one-year statute of limitations for a libel claim. Thus, Defendants argue that libel and false light claims against both Benipal and the LLC must be dismissed.

The parties do not dispute that the first two requirements under Rule 15(c)(1) have been satisfied. Instead, the dispute lies as to whether Benipal and the LLC were sufficiently put on notice under Rule 15(c)(1)(C). "[T]he underlying question for a Rule 15(c) analysis is 'whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C.Cir.2008)). Defendants

---

[2] Though TAC states that the video is from August 2022, Defendants note that the video actually aired in July 2022. (Moving Br. at 9 (citing TAC ¶ 146 n.80)). Plaintiffs try and frame the "concerns with the exact date" of the video as "serious issues with factual and evidentiary development that should be conducted after the pleading stage." (Opp'n Br. at 33.) However, this argument fails given Plaintiffs' own pleading and arguments in Opposition confirm that the video was, at the very latest, reposted online in August 2022, which is clearly one year before the SAC was filed in September 2023. (Id.)

contend that the original pleading in this matter failed to put Benipal and the LLC on notice that they would be sued later because the original Complaint only mentions Courville and contains no mention of Benipal or the LLC. (Moving Br. at 32.) Defendants also argue that the original Complaint did not assert a false light claim at all and therefore it could "not have given notice to Benipal and the LLC for this claim." (*Id.*) Plaintiffs, on the other hand, argue that the Benipal and the LLC were adequately notified because the factual allegations in the original Complaint "would have alerted Benipal and [the LLC] that their conduct would fall within the same penumbra." (Opp'n Br. at 33.) Plaintiffs further explain that Benipal "produced all [the LLC's] content and he is thereby liable for the Courville statements pleaded on the [LLC's] channels." (*Id.*)

For the reasons set forth below, the Court finds that the defamation claims relate back with respect to the LLC but do not relate back with respect to Benipal.

The parties do not substantively focus their arguments as to whether the defamation claims relate back to the LLC; they largely focus on Benipal. However, a review of the original Complaint does support a finding that it "adequately notified the [LLC] of the basis for liability [Plaintiffs] would later advance in the [TAC]." *Glover*, 698 F.3d at 146 (internal quotations omitted). The LLC was not specifically mentioned in the TAC, but the LLC shares a nearly identical name as Courville's various social media handles, "That Surprise Witness" and the LLC was created "to carry out the activities of Courville and Benipal" across the various social media outlets. (TAC ¶ 5.) Given Plaintiffs' robust allegations identifying that the majority of the alleged defamatory statements Courville made took place on her social media outlets, and that the original Complaint made many references to her specific social media posts, there is a relationship between Courville and the social media outlets she uses to express her statements. To that end, there is sufficient overlap between the pleadings so that the LLC was put on notice that it could be culpable for the

conduct that occurred across the social media outlet it carries out.  As such, the Court disagrees with Defendants that the original Complaint "lacked any indication of potential claims" against the LLC.  (Moving Br. at 32.)  Therefore, Plaintiffs may rely upon the relation back doctrine as to the LLC and the Court declines to dismiss the defamation claims against the LLC as time-barred.

The Court does not reach the same conclusion for Benipal.  Regarding Benipal, Plaintiffs raise inconsistent and unpersuasive arguments.  First, unlike with the LLC, Plaintiffs specifically included an alleged defamatory statement made by Benipal in the TAC in 2022.  Plaintiffs argue that Benipal is not only responsible for this alleged defamatory statement, but that he played a role in various other statements that Courville made in 2023.  (Opp'n Br. at 33–34.)  However, if this is the case, then it is unclear why Benipal was not included in the original pleading and Plaintiffs offer no explanation as to why they did not include him.  The Court must therefore find that Plaintiffs "failed to plead this particular alleged act of defamation *at all* until the statute of limitation had long expired."  *See Bank of Hope v. Chon*, Civ. No. , 2017 WL 39554, at *3 (D.N.J. Jan. 4, 2017) (emphasis in original).  Second, the original Complaint neither mentions Benipal nor makes any reference to any other individual or producer that assists or works with Courville.  "Rule 15(c) cannot save a complaint that obscures the factual predicate and legal theory of the amended claim."  *Glover*, 698 F.3d at 147–48.  In that light, even if Benipal is associated with Courville and the LLC, the original Complaint only contemplated the statements Courville herself made on her own social media outlets.  Plaintiffs could have asserted in their original Complaint that other individuals made defamatory statements about Jevremovic and AURA, but they did not.  Therefore, Plaintiffs may not rely on the relation back doctrine as to Benipal and the Court will dismiss Counts One, Two, and Four against Benipal as time-barred.

## B. RULE 12(b)(6) ANALYSES

### 1. Libel Claims (Counts One & Two)

Counts One and Two of the TAC assert claims for libel. In Count One, Jevremovic alleges a libel claim against Defendants (TAC ¶¶ 64–150), and in Count Two, AURA alleges a libel claim against Defendants (*id.* ¶¶ 151–72).

To adequately state a claim for libel, a plaintiff must satisfy two requirements. First, a plaintiff must allege a prima facie case of defamation. To establish a prima facie case of defamation, a plaintiff must show that the defendant communicated a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff. *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 164–65 (1999). A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 201 N.J. 500, 512 (2010). "To determine if a statement has a defamatory meaning, a court must consider three factors: '(1) the content, (2) the verifiability, and (3) the context of the challenged statement.'" *Id.* (quoting *DeAngelis v. Hill*, 180 N.J. 1, 14 (2004)).

Second, where the plaintiff is a public figure, like Jevremovic here, in the present action, a plaintiff must also allege that the defendant acted with "actual malice."[3] *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 356 (3d Cir. 2020) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). "Actual malice" is a term of art that does not connote ill will or improper motivation. Rather, it requires that the publisher of the statements either knew that the

---

[3] The parties do not dispute that Jevremovic is a limited public figure.

statements were false, or they published the statements with "reckless disregard" for their truth. *McCafferty*, 955 F.3d at 359.

Before considering the parties' arguments, the Court will first identify the amendments Plaintiffs made in the TAC regarding their libel claims. As a general note, the allegations relating to Plaintiffs' libel claims in the TAC are materially unaltered from the allegations in the Amended Complaint, and it appears that Plaintiffs have intentionally done so.[4] In the TAC, Plaintiffs explain that they "disagree with the Court's finding that no libel claims have been stated" but that they are still bringing their libel claims "[i]n part to preserve the issue for appeal." (TAC at 2 n.1.) The most substantive amendment is in Count One, where Jevremovic alleges several new defamatory statements ("New Statements") made by Courville.[5] (*Id.* ¶¶ 67, 123, 125, 127, 131, 133, 135, 137, 141.) Otherwise, Count Two in the TAC is identical to Count Two in the Amended Complaint, except that AURA has added Benipal and the LLC. (*Id.* ¶¶ 151–72.) Finally, there are some new general factual allegations relating to statements Courville made about Plaintiffs' relationship to Rabb and Margera. (*Id.* ¶¶ 18–19, 23–24.)

Defendants first argue that Plaintiffs failed to cure the deficiencies identified by this Court in *Jevremovic* as to Plaintiffs' prima facie libel claim. Namely, Defendants argue that Plaintiffs' minimal amendments to their libel claims still fail to allege actionable defamatory statements, especially as it relates to the Challenged Statements. The Court agrees with Defendants that Plaintiffs did not "attempt to change the context of the [C]hallenged [S]tatements" and that the Challenged Statements remain unactionable opinions. (Moving Br. at 12.) The only substantive attempt Plaintiffs make to support the viability of the Challenged Statements is underscoring

---

[4] Most substantively, Plaintiffs have included an eight-page "Statement of the Case" in a narrative format and not in numbered paragraph format in accordance with the Federal and Local Rules. (*Id.* at 2–9.)
[5] There is an additional statement alleged in ¶ 146 of the TAC, but because it is made by Benipal, the Court will not consider it.

Courville's legal background. (Opp'n Br. at 14–17.) In this respect, Plaintiffs argue that "Courville's implied authority as a trained lawyer imbues all the content on the Surprise Witness channels" even if she disclaims her opinion are not legal advice or pair her credentials with each of her statements. (*Id.*) However, the Court already considered these arguments in *Jevremovic* and found them unpersuasive. As such, given the TAC remains consistent with the Amended Complaint regarding the Challenged Statements, the Court rejects disturbing the conclusions it made regarding the Challenged Statements in *Jevremovic*.

Further, the Court need not depart from its conclusions in *Jevremovic* as it relates to the New Statements in the TAC because the New Statements suffer the same flaws as the Challenged Statements. Most striking, the New Statements are very similar to the Challenged Statements. For example, the New Statements allege that Defendants referred to Jevremovic as a "handler and trafficker" and that Defendants made a comment stating that it "Looks like team con is planning to traffic @bam_margera for a 'few more months'. #freebam." (TAC ¶¶ 67, 123.) However, the Court previously dismissed Jevremovic's libel claim based on very similar statements, such as a comment Courville made "describing 'Lima Jevremovic' as an 'alleged trafficker'" (SAC ¶ 70) and another statement Courville made suggesting that Jevremovic placed Margera in "a literal human trafficking situation" (*id.* ¶¶ 85–86). The remaining New Statements similarly parallel the content of the Challenged Statements, which further supports the Court's conclusion that the New Statements are also unactionable opinions.

The Court also explained that the context of statements is critical in deciphering unactionable opinions from defamatory speech. 2023 WL 5127332, at *5. Here, the New Statements once again stem from Instagram and YouTube, forums that welcome opinions and candor. *See id.* (collecting cases). This factor again favors a finding that the New Statements are

unactionable opinions.  Finally, though it is evident throughout the TAC that Defendants have a lot to say about Jevremovic, "mere insults and rhetorical hyperbole, while they may be offensive, are not defamatory."  *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 331 N.J. Super. 303, 312 (App. Div. 2000) (quoting *Lynch*, 161 N.J. at 167–68).  Accordingly, the Court finds that the New Statements in the TAC are not defamatory statements, but rather unactionable opinions.  For these reasons, the Court will dismiss Counts One and Two without prejudice.[6]

### 2.    Invasion of Privacy Claims (Counts Three & Four)

#### a)    *Invasion of Privacy – Intrusion upon Seclusion (Count Three)*

In Count Three, Jevremovic alleges a claim for intrusion upon seclusion.  (TAC ¶¶ 173–79.)  To state a claim for intrusion upon seclusion, the New Jersey Supreme Court has held that a plaintiff must allege (1) an intentional intrusion, (2) upon the seclusion of another, (3) that is highly offensive to a reasonable person.  *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 293 (3d Cir. 2016) (citing *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17 (1992)).  Courts have explained that the "thrust" of an intrusion upon seclusion claim is that "a person's private, personal affairs should not be pried into" and that "there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known."  *D'Ambly v. Exoo*, Civ. No. 20-12880, 2021 WL 5083816, at *8 (D.N.J. Nov.

---

[6] Even if the TAC's allegations could somehow be construed as sufficiently stating a claim for libel, the Court further finds that it still must dismiss Counts One and Two because the TAC again fails to adequately allege actual malice.  "The actual malice standard is not satisfied by proof of even 'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.'" *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 498 (E.D. Pa. 2018) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989)).  Rather, "'actual malice' requires that 'the defendant in fact entertained serious doubts as to the truth of his publication.'"  *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731(1968)).  Defendants correctly note that Plaintiffs continue to rely on "conclusory allegations and vague insinuations of improper motives and financial bias" to satisfy the high standard of actual malice.  (Moving Br. at 2–4.)  Plaintiffs' allegations in the TAC do not make such showing.  At best, Plaintiffs allege facts that might explain Defendants' motive for making social media posts about Jevremovic, but these allegations are insufficient to show that Defendants entertained doubts about the truth of the statements.  (TAC ¶¶ 33–36.)

1, 2021) (citing *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 691 (N.J. Sup. Ct. App. Div. 1982) (citing Prosser, LAW OF TORTS (4 ed. 1971), § 117 at 807–809)).

Here, Jevremovic alleges that Defendant released the following personal and private information: Jevremovic's family's home addresses, the name and address of the church she attends, her phone number, her social security number, and photos of her family. (TAC ¶ 176.) Defendants argue that Jevremovic's intrusion upon seclusion claim must be dismissed because "other than conclusory labels, Jevremovic fails to plead that [the] information was not publicly available or that it was wrongfully obtained by Defendants." (Moving Br. at 24.) Defendants note that home addresses, names and addresses of churches, and phone numbers are all publicly available information. (Reply Br. at 9–10.) Jevremovic disagrees and contends that "much of the private information published by Defendants was not available to the public." (Opp'n Br. at 25 (citing TAC at 6 nn. 9–10, ¶¶ 50–51, 53–54, 176, 178, 207)).

The Court does not find Jevremovic's arguments convincing because the conclusory allegations in the TAC are insufficient to allege that Defendants committed an intentional intrusion or that Defendants invaded her privacy. Jevremovic's conclusory characterization of labeling the information Defendants released about her as "private" does not explain how she has an expectation of privacy in any of the information she identifies.[7] Jevremovic also admits that an intrusion upon seclusion claim typically involves "unauthorized entry to the plaintiff's premises, electronic eavesdropping, unauthorized opening of plaintiff's mail, examining a private bank account, or repeated hounding and harassment." (Opp'n Br. at 25.) However, the TAC contains

---

[7] Defendants also argue that Jevremovic lacks standing to bring an intrusion upon seclusion claim relating to information Defendants released about individuals other than Jevremovic. (Moving Br. at 24; Reply Br. at 10.) Jevremovic does not respond to this argument in their Opposition brief. However, having determined that Jevremovic's intrusion upon seclusion claim cannot succeed based on its failure to state a claim, the Court need not reach Plaintiffs' separate argument.

no allegation to support that Defendants acted in any such manner. There are no allegations about how Defendants obtained the information, whether Defendants "used anything other than public or permissible means to" obtain the information, or if the information was not public. *See D'Ambly*, 2021 WL 5083816, at *9.[8] Without more, Jevremovic cannot sufficiently allege an intentional intrusion into her private information. The Court will therefore dismiss Count Three without prejudice.

### b) Invasion of Privacy – False Light (Count Four)

In Count IV, Jevremovic asserts a claim for the tort of false light. (TAC ¶¶ 180–84.) To state a claim of false light, a plaintiff must allege that (1) the defendant publicized a matter concerning the plaintiff "before the public in a false light"; (2) "the false light in which [the plaintiff] was placed would be highly offensive to a reasonable person"; and (3) the defendant had "knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [the plaintiff] would be placed." *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988) (quoting *Restatement (Second) of Torts* § 652E). The third element of a false-light claim parallels the actual malice requirement of a defamation claim. *Durando v. Nutley Sun*, 209 N.J. 235, 249 (2012). For the reasons provided above, the Court concludes that Plaintiff did not sufficiently allege actual malice with respect to her two libel claims. As such, the Court finds that Jevremovic

---

[8] At best, the TAC includes two facts that reference private information: Jevremovic's social security number (TAC ¶ 50) and a video Courville aired of Jevremovic that was "not public information" (*id.* at 6 nn. 9–10). As it relates to her social security number, though Jevremovic characterizes the number as "private," Defendants point out that "Jevremovic fails to plead that this information was not publicly available." (Moving Br. at 24.) As such, the allegations are unclear as to whether her social security number was already known. As it relates to the video, the Court notes that the reference to the video is not incorporated in a numbered paragraph within the TAC. Instead, it appears in the "Statement of the Case" introduction to the TAC and is not repeated again in the pleading. (TAC at 6.) The Court rejects relying on this passing reference to support Jevremovic's intrusion upon seclusion claim. Even if Jevremovic sufficiently alleged that the social security number and the video are private, her intrusion upon seclusion claim nevertheless fails because she does not adequately allege the threshold element of this claim: an intentional intrusion.

has also failed to properly allege actual malice for her claim of false light, and it will dismiss Count Four without prejudice.

### 3. Harassment Claims (Counts Five & Six)

In Counts Five and Six, Jevremovic asserts claims for harassment, N.J.S.A. § 2C:25-19(a)(13), and cyber-harassment, N.J.S.A. § 2C:25-33-4.1, under the Domestic Violence Act ("DVA"). (TAC ¶¶ 185–95.) Defendants argue that both of "causes of action are brought under New Jersey's *criminal* harassment statute, N.J.S.A. § 2C:33-4, which does not confer a private civil right of action" and therefore must be dismissed. (Moving Br. at 25 (emphasis in original) (citing *Reaves v. Monmouth Univ.*, Civ. No. 22-1782, 2022 WL 17722803, at *6 (D.N.J. Dec. 15, 2022); *Todd v. Citibank*, Civ. No. 16-5204, 2017 WL 1502796, at *5 (D.N.J. Apr. 26, 2017); *Clark v. Cox*, Civ. No. 15-6174, 2018 WL 259770, at *3 (D.N.J. Jan. 2, 2018))). Plaintiffs do not respond to any of Defendants' cited case law. Instead, Plaintiffs argue that the DVA provides "emergency and long-term civil and criminal remedies" and permits victims to file complaints alleging acts of domestic violence and to "seek emergency *ex parte* relief as a civil remedy."[9] (Opp'n Br. at 26 (citing N.J.S.A. § 2C:25-18; *Cesare v. Cesare*, 154 N.J. 394, 399 (1998)).

In Opposition, Plaintiffs clarify that their claims for harassment and cyber-harassment are defined by N.J.S.A. § 2:33-4 and N.J.S.A. § 2:33-4.1, respectively. (Opp'n Br. at 26–27.) It is well established that New Jersey law does not provide a private right of action for harassment. *See Rooney v. Carlomagno*, Civ. No. A–1049–08T1, 2010 WL 199397, at *2 (N.J. Super. Ct. App. Div. Jan. 22, 2010) (stating "[w]e have specifically declined the opportunity to consider whether

---

[9] Plaintiffs' reliance on the DVA and *Cesare* to support their civil harassment claim is misplaced. Among other reasons, Plaintiffs cannot rely on the DVA to bring a civil right of action in federal court given the DVA permits a victim to "file a complaint alleging the commission of an act of domestic violence *with the Family Part of the Chancery Division of the Superior Court* in conformity with the Rules of Court." N.J.S.A. § 2C:25-28 (emphasis added).

an act of harassment under N.J.S.A. 2C:33–4 creates a civil cause of action for damages"); *Reaves*, 2022 WL 17722803, at *6 ("New Jersey law does not provide a private right of action to bring a civil lawsuit pursuant to [N.J.S.A. § 2:33-4]."); *Malcolm v. Bray*, Civ. No. 19-11734, 2019 WL 4918105, at *1 (D.N.J. Oct. 4, 2019) (dismissing plaintiff's harassment claim because New Jersey does not recognize a civil cause of action for harassment); *Todd*, 2017 WL 1502796, at *5 (same). Accordingly, consistent with case law, the Court finds that Jevremovic has no right of action under the state criminal laws and will dismiss Counts Five and Six with prejudice.

### 4. Emotional Distress Claims (Counts Seven & Eight)

Next, Jevremovic alleges two emotional distress claims. In Count Seven, Jevremovic alleges a claim for intentional infliction of emotional distress ("IIED") (TAC ¶¶ 196–203), and in Count Eight, she alleges a claim for negligent infliction of emotional distress ("NIED") (*id.* ¶¶ 204–210). To state a claim for intentional infliction of emotional distress, a plaintiff must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988). To state a claim for negligent infliction of emotional distress, a plaintiff must plead "negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (1989).

Jevremovic premises both her emotional distress claims on the following facts: (1) Defendants' distribution of her home address, phone number, social security number, (2) Defendants' distribution of her family's home addresses, and (3) Defendants' publication of a photo of Jevremovic suggesting she was "distributing pornographic materials via OnlyFans."[10]

---

[10] The Court notes that Plaintiffs' IIED and NIED claims are particularly strained. This is because plaintiffs may not rely upon defamatory statements to serve as the basis for an IIED or NIED claim where their defamation claim fails. "'There is . . . a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results,' such that New Jersey courts do not permit claims for infliction of emotional distress to proceed

(TAC ¶¶ 200–01, 207.)  Defendants argue that both the IIED and the NIED claims fail because Jevremovic did not plead that she suffered emotional distress.  (Moving Br. at 25–26).  Jevremovic disagrees and contends that she pleads the various types of psychological and physical harm that she has experienced with sufficient particularity.  (Opp'n Br. at 30–31 (citing TAC ¶¶ 148–150, 176, 177, 179, 182–83, 200, 201, 210 n. 94)).

The Court can dispose of Jevremovic's emotional distress claims quickly.[11]  In New Jersey, "the emotional stress suffered by the plaintiff must be 'so severe that no reasonable man could be expected to endure it.'"  *Moran v. DaVita*, 441 F. App'x 942, 947 (3d Cir. 2011) (quoting *Buckley*, 111 N.J. at 366 (quoting *Restatement (Second) of Torts* § 46 comment j)).  The TAC does contain allegations that allege that Jevremovic suffered "emotional distress," but each allegations is bare, conclusory, and falls very short of the severe distress standard.  Plaintiffs' IIED and NIED claims are narrow and they are premised only on Defendants distribution of Jevremovic's personal information and publication of a photo.  (*See* TAC ¶¶ 196–210.)  With respect to these claims, Jevremovic summarily and conclusory alleges that Defendants' actions have caused "devastation and emotional distress" (*id.* ¶¶ 200–01) and "mental anguish" (*id.* ¶ 210).  There are simply no allegations or facts that actually illustrate or explain the severe emotional distress Jevremovic suffered.  The Court recognizes that Jevremovic alleged facts regarding how Defendants' distribution of her personal information has impacted her privacy (*id.* ¶ 176) and that it "forced [Jevremovic and her family] to move homes, relocate to different states and hire around-the-clock security" (*id.* ¶ 203).  However, these are not the factual allegations required to support an IIED

---

when the factual basis for the claim is non-actionable alleged defamation."  *Edelman v. Croonquist*, Civ. No. 09-1938, 2010 WL 1816180, at *8 (D.N.J. May 4, 2010) (quoting *Decker*, 116 N.J. at 432).  As such, Plaintiffs must rely on other non-defamation based grounds to support their claims for IIED and NIED.

[11] Defendants also argue that Jevremovic's IIED claim must be dismissed because Defendants' alleged conduct is not "intentional and outrageous conduct."  (Moving Br. at 26–27.)  The Court need not reach this argument because it finds that Plaintiffs do not adequately plead severe distress.

or NIED claim as they do not pertain to any emotional distress. Accordingly, the Court will dismiss Counts Seven and Eight without prejudice.

### 5. Unfair Competition Claims (Counts Nine & Ten)

AURA and Jevremovic each assert a claim for unfair competition in Counts Nine and Ten of the TAC, respectively. (TAC ¶¶ 211–222.) Specifically, AURA alleges that Defendants engaged in unfair competition by "actively spread[ing] defamatory statements and falsehoods about AURA, while Courville simultaneously began contributing to another online health company, Giddy." (*Id.* ¶ 213.) AURA alleges that in doing so, Defendants deceived and defrauded the public and have effectively frozen investment in AURA. (*Id.* ¶¶ 214–15.) Jevremovic alleges that Defendants spread defamatory statements about her to intentionally destroy her social media personality and to "siphon off Jevremovic's followers and viewers to Defendants'" social media channels at Jevremovic's expense. (*Id.* ¶¶ 218–221.)

Although New Jersey's unfair competition law is "flexible and elastic," it is "not completely boundless." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 815 (D.N.J. 2000) (quoting *N.J. Optometric Ass'n v. Hillman–Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (Ch. Div. 1976)); *Wellness Publ'g v. Barefoot*, Civ. No. 02–3773, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008). "[M]ost cases of unfair competition encompass one of two torts: [(1) misappropriation or] passing off one's goods or services as those of another and [(2)] unprivileged imitation[.]" *Id.* Furthermore, New Jersey courts have recognized a third tort that falls under the common law of unfair competition: tortious interference.[12] *See EP Henry Corp. v. Cambridge*

---

[12] Some acts that constitute unfair competition have been described as follows:

> either that the means used are dishonest, or that, by imitation of name or device, there is a tendency to create a confusion in the trade, and enable the seller to pass off upon the unwary his goods as those of another, and thereby deceive the purchaser; or that, by false representation, it is intended to mislead the public, and induce them to accept a spurious article in the place of one they have been accustomed to use.

*Pavers, Inc.*, Civ. No. 17-1538, 2017 WL 4948064, at *6 (D.N.J. Oct. 31, 2017) (citing *Nat'l Auto Div., LLC v. Collector's All., Inc.*, Civ. No. A-3178-14T3, 2017 WL 410241, at *4 (N.J. Super. App. Div. Jan. 31, 2017)).

Therefore, under New Jersey's common law, the tort of unfair competition is, thus far, limited to the following three broad categories of behavior: "(1) the 'passing off' of [another's commercial] goods or services [as one's own]; (2) unprivileged imitation; and (3) tortious interference." *EP Henry*, 2017 WL 4948064, at *6 (declining to extend New Jersey's common law tort of unfair competition to encompass false advertising); see also *Tris Pharma, Inc. v. UCB Mfg., Inc.*, Civ. No. A-5808-13T3, 2016 WL 4506129, at *5 (N.J. Super. Ct. App. Div. Aug. 29, 2016) (same). A plaintiff asserting an unfair competition claim must allege two essential elements: (1) "the misappropriation of one's property by another . . . which has some sort of commercial or pecuniary value"; and (2) "bad faith or malicious conduct." *Harish v. Rubinstein*, 602 F. Supp. 3d 696, 703 (D.N.J. 2022) (quoting *Vorhees v. Tolia*, Civ. No. 16-8208, 2020 WL 1272193, at *11 (D.N.J. Mar. 17, 2020)).

As a preliminary matter, Jevremovic's unfair competition claim is particularly attenuated given that she is an individual. Unfair competition is known as a "business tort, generally consisting of the misappropriation of a business's property by another business." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc.*, Civ. No. A-3714-07T1, 2010 WL 3772543, *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010). Defendants argue that Jevremovic's unfair competition claim must be dismissed because she is not a corporate entity and therefore cannot, as a matter of law, assert such a claim. (Moving Br. at 28.) At least one court has dismissed a similar claim—an unfair competition counterclaim based on a theory of tortious interference brought by an individual

___

*Duffy*, 123 F. Supp. 2d at 815–16 (quoting *Squeezit Corp. v. Plastic Dispensers*, 31 N.J. Super. 217, 221–22 (App. Div. 1954)).

20
**JA341**

defendant—noting that the individual defendant's counterclaim is "barred by the derivative injury rule" given the defendant's company, and not himself, would be harmed by the alleged tortious interference. *See Heartland Payment Sys., LLC v. Carr*, Civ. No. 18-9764, 2021 WL 302918, at *8 (D.N.J. Jan. 29, 2021). Jevremovic does not directly address this point and offers no authority to support how she can plausibly allege an unfair competition claim as an individual. In fact, her arguments in Opposition merely contend that Defendants' actions have destroyed her "online persona and/or online brand." (Opp'n Br. at 32.) Jevremovic's basis for her unfair competition claim is neither supported by the law or her allegations.

Notwithstanding Jevremovic's capacity as an individual plaintiff, both Plaintiffs' unfair competition claims suffer another flaw. Plaintiffs make no attempt to categorize their claims into one of the three recognized categories of unfair competition: (1) misappropriation of business information or the "passing off" of goods or services; (2) unprivileged imitation; or (3) tortious interference. And it is not surprising that Plaintiffs have failed to do so. The spirit of an unfair competition claim is to "promote higher ethical standards in the business world." *Ryan v. Carmona Bolen Home for Funerals*, 341 N.J. Super. 87, 92 (App. Div. 2001) (citing *N.J. Optometric*, 144 N.J. Super. at 427). The essence of the present action is a defamation claim primarily between two individuals. Even under the "amorphous" and "flexible and elastic" area of law that is unfair competition, Plaintiffs' allegations do not set forth viable claims here. *See Duffy*, 123 F. Supp. 2d at 815–16. At best, AURA alleges that Defendants' statements have frozen investment in the company and "forestalled further development of AURA's new health-based business." (TAC ¶ 215.) In making this argument, AURA improperly relies on the alleged defamatory statements as the basis for the harm. The Court agrees with Defendants that this theory is simply a "repackaged defamation claim" and not an independent claim for unfair competition. *See*

*Innovasystems, Inc. v. Proveris Sci. Corp.*, Civ. No. 13-05077, 2014 WL 3887746, at *7 (D.N.J. Aug. 6, 2014) (finding that plaintiff's unfair competition claim premised on defamatory statements did not "constitute a claim for unfair competition, but rather an additional attempt to advance a defamation/trade libel claim under the banner of an inapposite business tort"). Therefore, the Court will dismiss Counts Nine and Ten without prejudice.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court will GRANT Defendants' Motion (ECF No. 67). Specifically, the Court will DISMISS WITHOUT PREJUDICE Counts One, Two, Three, Four, Seven, Eight, Nine, and Ten; the Court will DISMISS WITH PREJUDICE Counts Five and Six. Plaintiffs will be given thirty (30) days to file a Fourth Amended Complaint, limited to remedying the defects in the counts dismissed without prejudice. Failure to cure the defects noted in this Opinion may lead to dismissal with prejudice. An appropriate Order will follow.

Date: **August 30, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com

Rodney A. Smolla, Esq. (*Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Ms. Jevremović and
Autonomous User Rehabilitation Agent, LLC

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> BRITTANY JEREAM COURVILLE, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey Limited Liability Company, <br><br> Defendants. | Civil Action No: 3:22-cv-04969-ZNQ-RLS <br><br> *Document Electronically filed* <br><br> **VERIFIED FOURTH AMENDED COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, Lima Jevremović ("Ms. Jevremović"), and Autonomous User Rehabilitation

Agent, LLC ("AURA") (together, "Plaintiffs"), by and through their undersigned counsel, Epstein

Ostrove, LLC, together with Rodney Smolla, Esq., file this Fourth Amended Complaint against

**JA344**

Defendants Brittany Jeream Courville ("Ms. Courville") and That Surprise Witness TV LLC (the "Entity Defendant") (collectively, "Defendants"), and say:

## PARTIES

1.     AURA was a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300, Bainbridge Island, Washington 98110-2450, and with no member domiciled in New Jersey. AURA operated as a wellness supplements and healthcare solutions software business. AURA was closed in February 2024, as no investors were willing to make investment due to Defendants' campaign of misrepresentations and lies about Plaintiffs.

2.     Ms. Jevremović is a resident of the State of California. Ms. Jevremović is the founder and CEO of AURA. She and her family have been harassed and received threats from third parties as a result of the claims in this matter. Her home address was disseminated (and unknown third parties attempted to gain entry while the family was home). She and her family were forced to relocate their residence, more than once, and were forced to hire a 24-hour security to guard their home. Ms. Jevremović therefore has not provided her California address in court filings so she will not be forced to relocate, yet again.

3.     Ms. Courville is an individual who resides in Princeton, New Jersey, operates the various "That Surprise Witness" social media channels, and formed the Entity Defendants.

4.     The Entity Defendant was formed in New Jersey, under file number 450708640, on September 30, 2021, to carry out the activities of Ms. Courville on the various "That Surprise Witness" social media channels.

## JURISDICTION

5.     This Court has jurisdiction pursuant to 28 U.S.C. §1332, because complete diversity exists amongst the parties and the amount in controversy far exceeds $75,000.

2

**JA345**

## NATURE OF THE CASE

6.  Ms. Jevremović has two sisters who have experienced mental health crises starting from their early twenties. As Ms. Jevremović helped to take care of her sisters, she became familiar with the difficulties of navigating the complexities to get the medical care for mental illness treatment, and to obtain health insurance coverage for inpatient and outpatient treatments.

7.  As a result, Ms. Jevremović became inspired and decided to pursue a career in the management of mental illness, using what she has learned to help those who struggle with mental illnesses.

8.  In 2019, Ms. Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA was founded to use technology to scale affordable, high-quality mental health treatment services. AURA intended to support mental health professionals using its proprietary technology to track the progress of people undergoing mental health treatment in various ways, inter alia, by recording and analyzing biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, *e.g.*, assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. AURA also produced vitamins/supplements for brain health and mood support and has explored various other means of using technology to enable better health outcomes.

9.  Ms. Jevremović made tremendous efforts to get AURA off the ground by, among other things, speaking at public and private universities and mental health forums.

3

**JA346**

10. One of Ms. Jevremović's appearances was on a series of videos produced for a YouTube Channel, Soft White Underbelly ("SWU"), run by Mark Laita, a commercial photographer.

11. Mr. Laita interviews "people who are frequently invisible in society—the unhoused, the sex worker, the chronic drug user, the runaway, the gang member, the poor and the sick."[1]

12. In or around July 2020, Ms. Jevremović first appeared on SWU in an interview to discuss her connection with mental health and the company she founded – AURA.

13. Due to Ms. Jevremović's efforts, AURA developed a community of adherents, and it succeeded in garnering an initial round of investor funding for its development and launch. By or around March 2022, AURA has received $1.5 million investment and was valued at $10 Million dollars.

14. Through AURA, Ms. Jevremović supplied mental health assistance tools to clinics and ambulatory facilities, free of charge, in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product. To that end, AURA had previously provided some services without charge to certain celebrities, influencers, and persons in the public eye—as well as individuals with no public presence as a community social service. AURA was a burgeoning startup, until Ms. Courville began to leverage the "That Surprise Witness" treatment against Ms. Jevremović and AURA.

15. Ms. Courville is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Ms. Courville worked at Winston Strawn LLP, briefly, before she and the firm parted ways over Ms. Courville's use of social

---

[1] https://en.wikipedia.org/wiki/Soft_White_Underbelly_(YouTube_channel) (Accessed October 11, 2024.)

**JA347**

media. Ms. Courville describes her profession on her LinkedIn Profile as "Legal Commentary on YouTube/Social Media Law."

16.     On or about September 20, 2021, Ms. Courville formed "That Surprise Witness TV LLC."

17.     Ms. Courville hosted many of her broadcasts through one of her YouTube Channel, That Surprise Witness TV.[2]

18.     Beginning in February 2022 and through to date, Ms. Courville has posted hundreds, if not thousands, of videos or Instagram posts defaming Ms. Jevremović.

19.     A large number of Ms. Courville's dedicated followers, people who call themselves "that Surprise Army," have heard Ms. Courville's calls to "make noise," and have targeted, harassed, doxed, and cyberstalked Ms. Jevremović, and everyone and everything associated with Ms. Jevremović.

20.     Ms. Jevremović's life has been turned upside down by Defendants' videos and posts, as well as the relentless harassment, doxing, and cyberstalking by Ms. Courville and her followers.

21.     As a result of the wrongful conduct of Ms. Courville, Ms. Jevremović has lost "everything."

22.     AURA became defunct after Ms. Courville started publishing defamatory statements, and eventually, had to be closed around February 2024, because investors were not willing to invest in AURA and no longer was generating sufficient revenue from the sales of supplements.

23.     As a result of Ms. Courville's wrongful acts, Ms. Jevremović has been unable

---

[2] https://www.youtube.com/@ThatSurpriseWitness (Accessed October 11, 2024.)

**JA348**

to find consistent employment, because potential employers have been dissuaded from hiring her because any Google search reveals Ms. Courville's false and defamatory statements.

24. Ms. Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Ms. Courville to harass Ms. Courville's mother and make calls to her employer.

25. Ms. Jevremović's husband has also been the target of Defendants' social media campaigns. Ms. Courville published Mr. Jevremović's and his family's information through her platforms, resulting in the harassment of Mr. Jevremović and his family. As of October 2024, Mr. Jevremović and Ms. Jevremović are in the process of finalizing their divorce – yet another result of Defendants' wrongful conduct.

## **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26. In July 2020, Ms. Courville began to affiliate herself with the "Free Britney" movement, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Ms. Courville used variants of the handle "That Surprise Witness" across her social media accounts. Ms. Courville reported becoming "obsessed" and using her newfound "legal expertise" to interpret the associated law, pleadings, and court opinions and orders. She spread information online via videos, photos, and text commentary. As the "Free Britney" movement gained mass media attention, Ms. Courville was invited to give interviews as an attorney. Ms. Courville gathered hundreds of followers and viewers during the time that she gave commentary in connection with the Britney Spears conservatorship.

27. However, after Britney Spears' conservatorship was terminated, Ms. Courville began to receive less attention and had fewer followers and viewers across her various "That Surprise Witness" social media handles. With her followers/viewers in the mere hundreds following the end of the Spears conservatorship, Ms. Courville needed to look for other

6

**JA349**

celebrities and social media personalities that she could latch onto to build her own viewership and followers. Ms. Courville found the perfect combination of entities to tether "That Surprise Witness" to—with Mr. Margera (a celebrity), Ms. Jevremović (an entrepreneur with a social media footprint), and AURA.

**I.  MS. COURVILLE SPREADS FALSE STATEMENTS REGARDING MS. JEVREMOVIĆ'S INVOLVEMENT WITH AMANDA RABB**

28.  In or around late July, 2020, Ms. Jevremović appeared for an interview with Mr. Laita on SWU.[3] During that interview, Ms. Jevremović said that she was starting a scholarship program, through a nonprofit entity she formed,  Jevremović Institute of Behavior and Brain Sciences ("JIBBS"), by which the recipient would receive one-year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate back into society as a productive, healthy member, free of charge.

29.  At the end of that interview, Ms. Jevremović proposed that the first recipient of that scholarship would be one of the people that Mr. Laita had interviewed.

30.  On or around August 1, 2020, Ms. Jevremović's interview was released on SWU. Some viewers commented under that interview that they believed Amanda Rabb ("Ms. Rabb") could be qualified as the first recipient.

31.  Ms. Rabb was an unhoused, drug-addicted, woman residing in Los Angeles' notorious Skid Row, who turned to sex work to fund her addiction. In or around July 2020, Ms. Rabb was in jail for assaulting her father, Larry Rabb.

---

[3] https://www.youtube.com/watch?v=b0twUppY6Z4&t=40s (Accessed October 18, 2024.)

**JA350**

32.     After having seen those comments, discussing the issues with Mr. Laita, and getting to know more about Ms. Rabb, Ms. Jevremović decided to select Ms. Rabb as the first recipient of the scholarship.

33.     In or around August 2020, Ms. Jevremović started working with Mr. Rabb and Ms. Rabb's public defender to help Ms. Rabb obtain the treatment she needed for her substance abuse and mental illnesses.

34.     In or around November 2020, the Court granted the petition for Ms. Rabb to receive treatment. The two treatment facilities where Ms. Rabb later received treatment, Hathaway Recovery Center and Desert Hope Treatment Center ("Desert Hope"), were not in any way owned or controlled by Ms. Jevremović. While Ms. Jevremović connected Ms. Rabb with those treatment centers, Ms. Jevremović and AURA did not, and could not, control the kind of treatment that Ms. Rabb received in the treatment centers.

35.     Since AURA provided its products to the two treatment centers where Ms. Rabb received treatment, Ms. Rabb was also given the option to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care professionals. Ms. Jevremović personally funded the majority of Ms. Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

36.     Tragically, on Sunday, May 9, 2021, staff at Desert Hope, found Ms. Rabb unresponsive in her bed and unsuccessfully performed CPR. When an AURA employee contacted the Clark County Coroner's Office, requesting information regarding Ms. Rabb's death, Desert Hope relayed to AURA and Ms. Jevremović that Ms. Rabb only had Tylenol in her system—a fact that was verified by a representative of the Clark County Coroner, Dr. Paul

8

**JA351**

Uribe. Dr. Uribe added that Ms. Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. However, Ms. Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors.

37. It is not a coincidence that Ms. Courville launched her campaign of lies and misinformation surrounding Ms. Rabb's tragedy, around the time that Ms. Jevremović became involved as a court-appointed guardian to seek to help Brandon Margera ("Bam" as he is referred to by fans, or hereinafter "Mr. Margera") in his fight with addiction.

38. Defendants' blitz of false statements regarding Ms. Jevremović and AURA, discussed in detail below, began in February 2022 and continued through today. While Defendants' social media blackmail effort began impugning Ms. Jevremović and AURA by making false suggestions that Ms. Jevremović had played some part in Ms. Rabb's cause of death, the media offensive expanded to accusing Ms. Jevremović of numerous additional humiliating falsehoods. Working Defendants' social media adherents – "That Surprise Army" – into a dangerous frenzy, the crusade escalated to dangerous cyber-harassment and doxing to intimidate Ms. Jevremović into, among other things, dropping this lawsuit and to gain clicks with fear mongering, which has increasingly crossed over from online commentary into real world effects that have caused a well-founded fear in Ms. Jevremović and her family for their personal safety.

39. When it comes to disseminating misinformation regarding Ms. Jevremović's and AURA's help with Ms. Rabb, Ms. Courville created a preconceived storyline. Ms. Courville initially claimed Plaintiffs conspired with Ms. Rabb's father, Larry Rabb, and Mr.

9

**JA352**

Laita, to put Ms. Rabb in jail. Ms. Courville further claimed that Ms. Jevremović and AURA conducted experimental treatment on Ms. Rabb, against Ms. Rabb's will. And, Ms. Courville claimed that Plaintiffs caused, and then lied about, Ms. Rabb's death.

40.     Ms. Courville fabricated her eye-catching story by portraying everyone around Ms. Rabb as villains. She published the story through her social media platforms, including, but not limited to, the most viral video on her YouTube channel, called "Virtual Reality Hell: The Amanda Rabb Story,"[4] which was streamed live on July 21, 2022, and is still accessible online, today.

41.     The video was published through her YouTube channel: BJ Investigates.[5] Ms. Courville describes her BJ Investigates Channel as follows:

> BJ sets off to uncover the TRUTH behind some of the biggest scandals
> in History. No matter what that truth may hold…

42.     Ms. Courville later made a series of videos under the name "Virtual Reality Hell: The Amanda Rabb Story" and posted them on both her channel of That Surprise Witness TV and BJ Investigates.

43.     In a July 21, 2022 video, Ms. Courville's made numerous false accusations without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata,"[6] appearing as:

---

[4] https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed October 14, 2024.)

[5] https://www.youtube.com/@bjinvestigates (Accessed October 11, 2024.)

[6] *See* https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed October 10, 2024); *see also* https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); *Cf.* Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

**JA353**



44.     In the video, Ms. Courville played a short excerpt of one of Ms. Rabb's six interviews with Mr. Laita, where Ms. Rabb had stated that her father was a molester.

45.     While Ms. Courville showed a short excerpt from a later interview that Ms. Rabb had with Mr. Laita in April 2021, Ms. Courville chose not to disclose to her audience that Ms. Rabb stated during that very same interview, posted on April 19, 2021, that Ms. Rabb cleared her father's name.[7]

46.     During a 12-minute interview with Mr. Laita, Ms. Rabb spoke fondly of her father, multiple times, including, but not limited to:

> I mean I was tripping and the things that I accused my dad of in those videos is not true. I had schizophrenia. I had a mental illness where things I hear voices hallucinations all that. So my dad has done nothing to hurt me. He's a great guy. He's always been there for me and I really love him. So I just want to put that out there.

> Yeah my dad we talk three times a day. I mean he's just such a great guy. I mean I can't wait to leave here. We're probably going to travel around the world together, that's just being sarcastic. But we're probably going to do a lot of fun things together because he's like my best friend now. We talk like three times a day.

> And

> I miss my dad. I love him so much. He's my rock honestly.

---

[7] https://www.youtube.com/watch?v=rt9OoLSavKM&list=PLBEIBBdgAOAoTfxs3dbbBIwM3FR7vNJQA&index=12 (Accessed October 15, 2024.)

47. Ms. Courville intentionally lied about, or at the very least recklessly disregarded, Ms. Rabb's relationship with her father, so that Ms. Courville could persuade her audience that Ms. Jevremović conspired with Mr. Rabb – who in Ms. Courville's viewers' eyes, is a molester – to put Ms. Rabb into jail.

48. Ms. Courville claimed, among other things:[8]

So by July, Lima already knew about Amanda, and was working in concert with Amanda's father who she called a molester, and Mark Laita who was paying her admittedly, knowing to go buy crack with. And they all conspired to make sure that Amanda went to jail.

49. Her statement was and is false. Ms. Jevremović first found out about Ms. Rabb only after Ms. Rabb was already in jail. Ms. Courville did not provide any basis for her accusation.

50. Ms. Courville further claimed, among other things:

Mark and Lima conspired to force her and it was easier to choose Amanda as the victim of this coerced treatment because they already had Larry Rabb.

51. Ms. Courville falsely claimed that Ms. Jevremović and AURA chose Ms. Rabb to be the subject of AURA's experimental treatment, with the cooperation of Mr. Rabb, whom Ms. Courville portrayed to her audience as a molester.

52. Ms. Courville additionally claimed, among other things:

Lima didn't tell the truth. Now we've caught her in two lies so far on the timeline. First of all, that the audience was somehow gonna help pick Amanda… Amanda was hand chosen because they had the cooperation of Larry Rabb. You need a family member.

53. Ms. Courville intentionally hid from her audience, or recklessly disregarded the truth that Mr. Laita specified that he recommended Ms. Rabb to be as the recipient of the

---

[8] https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed October 14, 2024.)

**JA355**

scholarship program, due to Ms. Rabb's history, during his interview with Ms. Rabb on April

19, 2021:[9]

> Mr. Laita: Well all all I can say is Lima is an amazing woman. Ms. Rabb:
> She is.
> Mr. Laita: Because when she asked me who would I recommend for my
> chan. She wanted to do something for my channel. She would do this
> for and I recommended, you know, like you know maybe five or ten
> people.
> Ms. Rabb: Yeah.
> Mr. Laita: They would all have been good candidates but I said "or you
> can choose the hardest of all…"
> Ms. Rabb: Right.
> Mr. Laita: Which was you.

54. Ms. Courville further stated:

I operate in one absolute thing and that is truth. Lima didn't tell the truth.

55. Defendants' audience believed in Defendants' fabricated story as truth, and

praised Defendants for discovering the truth:

 **@thedalillama3143** 1 year ago
Lima and her company "AURA" is a SCAM. She reminds me of the narcissistic "conservator" in the 2020 movie "I Care A Lot," who ends up attempting to scam the wrong old lady. All 3 of these people are monsters who helped to end Amanda Rabb.

👍 309 👎 Reply

 **@teetee996112** 2 years ago
BJ is calling out people who profit off of the suffering of others and deserves far more respect for her work

👍 1.6K 👎 Reply

 **@kbonvie** 2 years ago
Look how panicked Lima looks at the part where Mark said he had been trying to put Amanda in a conservatorship!!! The timeline is everything. Great job BJ Investigate team

👍 300 👎 Reply

∧ 2 replies

 **@kbonvie** 2 years ago
*Larry not Mark

---

[9] https://www.youtube.com/watch?v=rt9OoLSavKM&list=PLBEIBBdgAOAoTfxs3dbbBIwM3FR7vNJQA&index=12 (Accessed October 15, 2024.)

13

**JA356**

56.     On or about March 29, 2022, Ms. Courville, in her video called "Bam Margera Conservatorship | $HOCK!NG UPDATES," stated that Ms. Jevremović instructed Mr. Rabb to call the police and have Ms. Rabb arrested. Ms. Courville falsely called both Ms. Rabb's arrest and Mr. Margera's arrest in Florida a "setup," and claimed that Ms. Jevremović conspired with others in both instances to force both Ms. Rabb and Mr. Margera into a conservatorship. Specially, Ms. Courville claimed:[10]

> Now if y'all remember, what happened with Amanda in the Soft White Underbelly video, this that case is related to this one **because Lima is involved in both of them**. So how did they get Amanda in jail in that Soft White Underbelly case? Well, she attacked her dad, which they could be all lying about that, I didn't see that. Did y'all see Amanda attack her dad? Because I didn't. But allegedly Amanda attacked her dad and then her dad calls Mark Laita, the produce the YouTuber, Soft White Belly YouTuber and photographer. The dad calls and says hey Amanda just attacked me what should I do. **On Lima's suggestion**, Mark Laita said you should call the cops and get her arrested. **Once Amanda was arrested, they put her into a conservatorship and put her forced her into rehab.** So let's see if this looks familiar.

(emphasis added).

57.     Defendants made the above statements, and other defamatory statements, with actual malice. During the April 19, 2021 interview, that Ms. Courville referenced and cited to in her own video, Mr. Laita said to Ms. Rabb and the audience:[11]

> so so you, I think assaulted your dad and your dad called me that one night and said, "what do I do Amanda just assaulted me the police are here." And I said, I told your dad like, just put her in jail. She's going to walk the streets barefoot and and probably get killed eventually so putting her in jail for a month or two isn't gonna hurt her. So that's you went to jail and then from jail you went the court decided that you needed to do rehab for one year.

---

[10] https://www.youtube.com/watch?v=dYqBXwmKLxY (Accessed October 15, 2024.)

[11] https://www.youtube.com/watch?v=rt9OoLSavKM&list=PLBEIBBdgAOAoTfxs3dbbBIwM3FR7vNJQA&index=12 (Accessed October 15, 2024.)

To which Ms. Rabb responded: "Right."

58.　　Mr. Laita did not mention Mr. Jevremović, whatsoever, in making the decision to put Ms. Rabb in jail. And Ms. Courville knew of it.

59.　　On March 30, 2022, Ms. Courville published on Instagram an excerpt of a YouTube video[12] in which Ms. Jevremović and Mr. Rabb, Amanda Rabb's father, described how they managed to transfer Ms. Rabb from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Ms. Courville stated that Ms. Rabb's public defender is not supposed to: "help you push your scam conservatorship through."

60.　　On April 26, 2022, Ms. Courville published on Instagram a screenshot[13] showing the "GoFundMe" donation page for Ms. Rabb's treatment, which then indicated that no new donations would be accepted. Ms. Courville commented on the photo with the statement:

> Thanks for taking down your fraudulent fundraiser Lima!

61.　　On April 25, 2022, Ms. Courville published on Instagram a screenshot[14] showing that the "Donate now" button was still present on the "GoFundMe" donation page for Ms. Rabb's treatment. Ms. Courville commented:

> can you return the funds that have been fraudulently collected from donors on this fundraiser?
>
> …
>
> many people have reported this fraudulent fundraiser and your organization has taken no action.

---

[12] https://www.instagram.com/p/CbvTro1JLYk/ (Accessed October 15, 2024.)
[13] https://www.instagram.com/p/Cc1UinJsWvQ/ (Accessed October 21, 2024.)
[14] https://www.instagram.com/p/CcxeH1hOK1d/ (Accessed October 21, 2024.)

15

**JA358**

Elsewhere, Ms. Courville stated that:

> we've reported [fraud] a lot

62.     Ms. Courville's viewers believe Ms. Courville's false accusations and multiple

viewers have commented, among other things, that:


sarahmac406 129w
I can't say I'm surprised. This woman is a criminal and a con artist. It makes me sick that this is happening

4 likes    Reply    •••

and


sadoulethoff 129w
That's criminal......

6 likes    Reply

63.     Ms. Courville reiterated her accusations and false statements this in the same

video, at 18:15, when she stated:

> It's very serious, a woman is dead, a woman has passed under
> [Jevremović's] care.

64.     On July 30, 2023, Ms. Courville published to YouTube a video titled "Missing

Twin NEEDS Help | *URGENT*."[15] At 1:37 into the video, she stated:

> Another story is the Amanda Rabb story and the fact that Lima did take
> over Amanda's life and healthcare in order to give her an experimental
> treatment and Amanda Rabb, as you know, did not survive the treatment.
> She passed away in the treatment center, in the AURA treatment center,
> and then Lima lied about how Amanda died and she never really gave a
> good explanation for that.

65.     Later in the same video, at 10:55 she stated:

---

[15] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed October 21, 2024.)

16

**JA359**

This has turned into a me versus everyone, everybody in the family, all the – no, it's the truth versus lies.

66. Ms. Courville thus emphasized her statements as accurate and factual.

67. Ms. Courville also stated in the video, at 11:12:

Not only do we have one unexplained death that has happened in Lima's care, we also now have allegations of sex trafficking of people that Lima has purported to be in care of, and Bam Margera told me himself he was held against his will for months without access to a phone, computer, internet, any of it.

68. On April 27, 2022, Ms. Courville published on Instagram an image[16] showing a digital message sent to her in which the message-sender criticized Ms. Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovićh [sic] . . . ever up held [sic] HIPPA [sic]?

69. Ms. Courville responded:

never not once [sic].

70. On April 27, 2022, Ms. Courville republished an image[17] containing another's statements on Instagram regarding Ms. Rabb, Mr. Margera, and Ms. Jevremović; an anonymous commenter asked:

Are [Ms. Jevremović and AURA,] using homeless people with addictions to experiment on them for their [YouTube] channel?

and Ms. Courville unequivocally affirmed the commenter's statement:

yes.

71. By affirming the commenter's statement, Ms. Courville adopted the statement as her own.

---

[16] https://www.instagram.com/p/Cc22uuMsobQ/ (Accessed October 21, 2024.)

[17] https://www.instagram.com/p/Cc3REs7FNGJ/ (Accessed October 21, 2024.)

17

**JA360**

72.     On March 31, 2022, Ms. Courville published on Instagram an excerpt[18] from a video in which Ms. Jevremović read Rabb's cause of death as a seizure disorder. Ms. Courville paused and added commentary, including, at 0:10 in the video:

Rabb never had seizures prior to being homeless.

Ms. Courville further commented and stated:

But I think another way of saying that is she never had seizures prior to using AURA.

73.     Ms. Courville thus falsely stated that AURA's products caused Ms. Rabb's seizures.

74.     On March 31, 2022, Ms. Courville published on Instagram a photo[19] of Ms. Rabb wearing virtual reality headgear and participating in a "Virtual Reality Exposure Therapy Session using AURA." A person commented on the photo with interest in the virtual reality-based treatment, and Ms. Courville responded:

the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool.

I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

75.     On April 1, 2022, Ms. Courville published an excerpt[20] from a program for a virtual reality conference which included Ms. Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Ms. Courville commented on the image:

---

[18] https://www.instagram.com/p/CbxaISSgRxR/ (Accessed October 21, 2024.)

[19] https://www.instagram.com/p/CbxIzVsOT-D/ (Accessed October 21, 2024.)

[20] https://www.instagram.com/p/Cb02KZuAJEe/ (Accessed October 21, 2024.)

18

**JA361**

Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #AmandaRabb.

76.    At least one commenter, danielle__trotter, believed Ms. Courville's comments, and responded:

This is so sick 😖. She's torturing people that are often ignored by society and disgusting it as "help". It's giving me old time my "insane asylum" vibes. Thank you for researching and casting light on this BJ. This is so heavy.

77.    On March 30, 2022, Ms. Courville published another excerpt from a video[21] in which Ms. Jevremović described the use of AURA products in connection with Ms. Rabb's treatment. Ms. Jevremović explained that AURA provides its products at no cost and uses the data collected for research purposes, and Ms. Rabb would have the opportunity to serve as a case study. Ms. Courville commented on the video:

Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship. #FreeBam #AmandaRabb #InvestigateAURA

78.    Defendants' audience believed Ms. Courville's false accusations and commented, for example:

 **ms.sarah.esq** 132w
She sounds like another Elizabeth Holmes of Theranos touting fake technology, killing people with it, and getting away with murder because somehow she figured this shit out. What the absolute fuck.

1 like    Reply    · · ·

---

[21] https://www.instagram.com/p/CbvGodsJLtE/ (Accessed October 21, 2024.)

**JA362**



**freelizzieharding** 132w
PSYCHOPATHS. Sociopaths. The abuse of mental health and hygiene laws to enslave humanity. #WAKEUPEVERYONE. #freelizzieharding



**litigiousgrl** 132w
Disgusting, extremely reckless and dangerous...

Reply



**barbielluttman** 132w
This is so evil.

6 likes    Reply



**gogogadgetadvocatechick** 132w
These pig tails are soooooo manipulative

12 likes    Reply    • • •

79.     On February 22, 2022, Ms. Courville published to YouTube a video[22] in which she defamed Ms. Jevremović and AURA. At 49:55 in the video, Ms. Courville falsely stated:

[Jevremović] forces people by court order to use [AURA's] tools.

80.     In fact, Ms. Jevremović and AURA did not have any control of the treatment Ms. Rabb received at the treatment centers, which Ms. Jevremović or AURA did not own or control. Ms. Courville knew her statement to be false and/or acted with reckless disregard for the truth or falsity of the statements.

---

[22] https://www.youtube.com/watch?v=hAPdBs398vc (Accessed on September 5, 2023.) When accessed on October 14, 2024, the video is no longer available. It is hereby submitted that Defendants admitted that this video should not have been published because Ms. Courville removed the video at a later date.

20

**JA363**

81.     While Ms. Courville claimed to publish nothing but the truth, she chose not to show to her audience that Ms. Rabb admitted during her April 19, 2022 interview with Mr. Laita that she had been clean of substance abuse for 10 to 11 months at that time, that the treatment she was receiving "really helped," and what Ms. Rabb thought of Ms. Jevremović:

> Ms. Rabb: I'm so glad you hooked us up with Lima. She feels like a mom. You know I never had my mom so it feels like such a blessing just to have her in my life, and just have you guys for support, because I really only have my dad so.
>
> Mr. Laita: You couldn't pick somebody better than Lima.
>
> Ms. Rabb: Yeah she's great. Lima's great.

82.     Ms. Rabb further confirmed that "I'm blessed to have you and Lima. You guys are the best, like honestly."

83.     Defendants' so-called truths are directly contradicted by statements, including those from Ms. Rabb herself, that pre-dated any of the defamatory statements that Defendants made.

**II.     MS. COURVILLE SPREADS FALSE STATEMENTS REGARDING JEVREMOVIĆ'S INVOLVEMENT WITH MR. MARGERA**

84.     Celebrity entertainer Mr. Margera and his wife, Nicole Boyd-Margera ("Ms. Boyd-Margera"), took an interest in AURA in the Winter 2020. Mr. Margera has starred in the blockbuster Jackass movies and popular television programs. Mr. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addiction over the previous two decades. Because of his background, Mr. Margera and Ms. Boyd-Margera initially sought to provide their support to Plaintiffs' efforts to rehabilitate addiction and improve related health outcomes. When Mr. Margera proved susceptible to multiple relapses in his battle with addiction, Mr. Margera's family approached Ms. Jevremović for intervention assistance.

21

**JA364**

85. When Mr. Margera's family and friends implored Ms. Jevremović to serve as Mr. Margera's temporary guardian, Ms. Jevremović agreed and took on the responsibility for overseeing Mr. Margera's treatment, which was put into effect by Court Order, with no connection to his financials or other aspects of his life. On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Mr. Margera in connection with his diagnosed medical issues. Indeed, despite the fact that the Ms. Jevremović was statutorily permitted to collect reasonable sums for her services as guardian, Ms. Jevremović was not reimbursed for funds she advanced for Mr. Margera's treatment and legal fees. Mr. Margera's father had been assisting Mr. Margera in managing his finances for many years at Mr. Margera's request, and Ms. Jevremović's appointment as a temporary guardianship did not touch upon Mr. Margera's money in any way.

86. After the court-ordered guardianship terminated, Mr. Margera requested that Ms. Jevremović continue to serve as his "Health Care Agent," a role in which she assisted Mr. Margera with his medical care related to his mental health treatment and recovery.

87. After learning that Ms. Jevremović was involved in Mr. Margera's recovery, Ms. Courville began publishing videos, photos, and text commentary regarding Mr. Margera, labeling her publications "#FreeBam," a reference to Mr. Margera's stage name, "Bam."

88. Ms. Courville began with baseless assertions that Mr. Margera's family and Ms. Jevremović manipulated a court-imposed guardianship as a tool to access Mr. Margera's assets, that Ms. Jevremović is committing and assisting in the commission of criminal acts, and that Ms. Jevremović is dishonest and promulgates lies.

89. Ms. Courville continued to publish videos, photos, and textual commentary in which she falsely accused Ms. Jevremović of criminal acts and dishonesty.

**JA365**

**A.  Ms. Courville Published False Statements that Ms. Jevremović Was a Conservator and Was Able to Access Mr. Margera's Assets, With Knowledge of Their Falsity or a Reckless Disregard for the Truth or Falsity of Those Statements**

90.  Defendants knew, or had a reckless disregard for the truth, that Mr. Margera was under guardianship, and not a conservatorship. Ms. Courville, who often touts her legal credentials, knew or should have known the difference between a guardianship and a conservatorship.

91.  On or about February 9, 2022, Defendants published the following post on Instagram:[23]

> Novak said Margera is currently 'in a programme', while Steve-O went on to explain that he is also under a 'guardianship'.
>
> "It's not a conservatorship, it's a guardianship," he said.
>
> "The conservatorship has financial implications, with a conservatorship they're in charge of all of your money and everything. With a guardianship, they kind of leave your money out of it, and the guardianship they're just like – there's rules you have to abide by and he's forced to be in."

92.  Notwithstanding that the statements published by Defendants expressly stated, among other things, that Mr. Margera was under a guardianship, and that conservatorship has financial implications, while guardianship has not, Defendants commented, among other things:

Bam margera from jackass is in a conservatorship.

His so called friends are erroneously stating that guardianships and

---

[23] https://www.instagram.com/p/CZwgfgSFxJo/ (Accessed October 10, 2024.)

**JA366**

conservatorships are not the same thing. The so called friends are mistaken.

93.     As correctly stated in the original post, above, in Arizona, a conservator's "first priority is to marshal and protect the assets of the conservatorship estate,"[24] while a guardian's responsibility is to "ensure that the ward is receiving appropriate medical care, proper education and their overall health and welfare is protected."[25] Such distinction is easily accessible on the website of Arizona Judicial Branch.[26]

94.     Indeed, the training modules provided by Arizona Judicial Branch specifically provide, in relevant part: [27]

> The law allows a guardian to handle money on behalf of the ward if there is no conservator appointed. In most instances, if the ward receives more than just Social Security income and has significant assets, such as a home, car or brokerage account, then the court will appoint a conservator. ***The Order to Guardian indicates that the guardian shall not manage more than $10,000 on behalf of the ward.***

(emphasis added).

95.     While being informed about the difference between guardianship and conservatorship, Defendants misrepresented the concepts with reckless disregard for the truth of their statements.

---

[24] https://supremestateaz.granicus.com/player/clip/2663?redirect=true (Accessed October 14, 2024.)

[25] https://supremestateaz.granicus.com/player/clip/2662?redirect=true (Accessed October 14, 2024.)

[26] https://www.azcourts.gov/educationservices/COJET-Classroom/Probate-Guardianship (Accessed October 16, 2024.)

[27] https://supremestateaz.granicus.com/player/clip/2662?redirect=true (Accessed October 14, 2024.)

**JA367**

96.     On April 19, 2022, Ms. Courville published an image [28] on Instagram containing a short conversation between Ms. Courville and a commenter. The commenter accurately stated:

> [Mr. Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

97.     As recounted in the discussion of Mr. Margera above, he was subject to guardianship imposed in Arizona, and at no relevant time was a conservatorship been imposed. Nonetheless, Ms. Courville invoked her credentials, suggesting she holds expertise, and again provided an inaccurate interpretation of the law, and solicited viewers for her advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Mr. Margera playlist on YouTube for more info!

In response, a commenter remarked:

> Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

Ms. Courville, apparently drawing upon her self-avowed expertise, explained: "it's to confuse people so the criminals can keep crim[e-]ing."

98.     When Defendants' audience questioned the parameter of Ms. Jevremović's duties as a guardian to Ms. Courville, who touted her background as a lawyer, Ms. Courville again made false statements regarding Ms. Jevremović's role in the treatment of Mr. Margera, with reckless disregard for the truth of her statements, knowing that her audience viewed her as an authority to answer questions involving legal terms.

---

[28] https://www.instagram.com/p/CcibN0JOx89/ (Accessed October 14, 2024.)

**JA368**

99.     For example, a user "courtcarls" commented:

Especially when it's a lawyer who went to UPenn and knows their shit
to the point that powerful people have tried to silence them! Sounds like
a damned good lawyer to me 👏

100.     On or about June 24, 2022, Defendants published the "Order Appointing Emergency Temporary Guardian With Inpatient Mental Health Authority," entered by the Superior Court of the State of Arizona, County of Maricopa. The Order, published by Defendants, included Ms. Jevremović's Application to be appointed as a temporary guardian – the Application is not accessible to the public.[29]  Notwithstanding that the Court Order specified that Bam was under guardianship, Ms. Courville posted under the Court Order, among other things:

EXCLUSIVE @bam__margera CONSERVATORSHIP          COURT
DOCUMENTS going live TODAY

101.     Defendants published the statement with reckless disregard for the truth or falsity of it, to lay foundation for their preconceived story that Mr. Margera's family and Ms. Jevremović manipulated a court-imposed guardianship as a tool to access Mr. Margera's assets, even though Ms. Jevremović was not authorized to do so – a fact Defendants knew or acted in reckless disregard of the truth or falsity of such statement.

102.     From June 22, 2022 to June 24, 2022, Ms. Courville published, no less than five (5) posts, on her Instagram, documents filed in the Superior Court of the State of Arizona, County of

---

[29] https://www.instagram.com/p/CfMCi1dOg51/?img_index=1 (Accessed October 10, 2023.)

**JA369**

Maricopa, in the matter captioned "In the Matter of the Guardianship of: BRANDON MARGERA."[30]

103.    The Guardianship and Conservatorships webpage of the Maricopa Court Website provides, as the first sentence on this webpage: [31]

> A guardian is someone who has the legal authority to care for another, and a conservator is someone who manages another's financial affairs.

104.    Ms. Courville publishes, until today, that Ms. Jevremović petitioned conservatorship for Mr. Margera, and as such, managed Mr. Margera's financial affairs, with knowledge of its falsity or a reckless disregard for the truth or falsity of those statements.

105.    On March 30, 2022, Ms. Courville published to Instagram a screenshot[32] of comments made to Instagram, in which she stated, among other things, "[Lima] filed a petition to put him in a conservatorship in Florida…"

106.    A commenter asked:[33]

Aleggedy [sic] right?

Ms. Courville responded:

no. This is documented on court records.

107.    By responding to their audience's comment, Defendants reinforced the false and defamatory statements Defendants previously made.

---

[30]    *See*    https://www.instagram.com/p/CfH7x3rl_T0/?img_index=1    (Accessed    October    16,    2024.); https://www.instagram.com/p/CfH9HOulAJw/?img_index=1(Accessed October 16, 2024.); https://www.instagram.com/p/CfH9ZSMlbye/?img_index=1(Accessed October 16, 2024.); https://www.instagram.com/p/CfIEZqjDQ4_/(Accessed October 16, 2024.); and https://www.instagram.com/p/CfMCi1dOg51/?img_index=1(Accessed October 16, 2024.).

[31] https://superiorcourt.maricopa.gov/departments/superior-court/probate/guardians-and-conservatorships/ (Accessed October 14, 2024.)

[32] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed October 14, 2024.)

[33] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed October 14, 2024.)

27

**JA370**

108. A commenter asked:[34]

> forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

Ms. Courville responded:

> I mean… that's my impression, so if you're wrong[,] I am too.

109. Ms. Courville thereby explicitly adopted the commenter's false statements.

110. Ms. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Ms. Jevremović is exploiting celebrities for money.

111. On April 3, 2022, Ms. Courville published an image[35] on Instagram, which purports to list biographical information about Mr. Margera, including his putative net worth ($20 Million). Ms. Courville commented on the image:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 🙄🙄🙄 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂😂👀👀 #FreeBam.

A commenter stated:

> 20 million now, soon to be much less, but it'll all be 'legit,'

to which Ms. Courville responded:

> but a certain someone will have fresh lips, Botox, and a BBL watch.

To which the same commentator responded:

> plus a vehicle, home, medical expenses, all necessary in order to fulfil duties.

---

[34] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed October 14, 2024.)

[35] https://www.instagram.com/p/Cb5b59wFxIg/ (Accessed October 16, 2024.)

28

**JA371**

112. Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Ms. Courville's comments here to reference Ms. Jevremović– in fact, people did comment in response who understood the messages to reference Ms. Jevremović.

113. Under the post, Ms. Courville also admitted to her viewer that she only called it "conspiracy theory" to avoid legal responsibility, as follows:



114. On May 4, 2022, Ms. Courville published an image[36] on Instagram regarding Mr. Margera, to which she commented, in relevant part:

> To clarify, I am a licensed attorney who believes @bam__margera's constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by *a group of criminal co-conspirators for financial purposes* not in bams best interest.

(emphasis added).

115. The statement was made is in furtherance of Ms. Courville's defamatory statement that Ms. Jevremović was serving as a conservator, instead of a guardian, of Mr. Margera, and that Ms. Jevremović was able to touch upon Mr. Margera's finances.

---

[36] https://www.instagram.com/p/CdJDkylMVl_/ (Accessed October 14, 2024.)

116.    The statement was published to Defendants' audience, who believe in Ms. Courville's credential as a licensed attorney who allegedly had conducted a thorough investigation of Mr. Margera's "conservatorship" and her assertion that Ms. Jevremović was in total control of Mr. Margera, including his finances. A user "chili_been" commented, among other things:

> …You have since presented Extremely damning evidence that Bam is being taken advantage of by people who want control of his money…

To which another user "simplymonca" responded:

> We feel those on team-con have been working hard to discredit BJ so they can keep their profits, whether they be monetary or credit for their own business ventures, or control so that they can do with him as they please.

117.    A user, "rhinestone_.artist0" praised Ms. Courville's videos as "investigates [] so well done btw, amazing investigative journalism, with all the receipts," and commented, among other things:

> If I was in Bam's situation I would want a lawyer like you that was going to fight for me. I guess this person is completely OK with Lima being in charge of his decisions.

118.    A user, "pettyhearst," commented thereupon stating:[37]

---

[37] https://www.instagram.com/p/CdJDkylMVl_/ (Accessed October 14, 2024.)

30

**JA373**

pettyhearst 127w
I've been a Bam fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge I would at least have peace of mind that there is no malicious intent. But they aren't in charge, Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating Phil and April.

47 likes    Reply    • • •

119.    Ms. Courville published a reply directly to this statement expressing agreement:

"bingo."

**B.    Defendants Continued to Publish Defamatory Statements Based on the False Foundation that Ms. Jevremović Can Access Mr. Margera's Assets**

120.    On May 30, 2022, Ms. Courville published via Instagram the statement[38]:

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

121.    In the same statement, published alongside photos and videos of Ms. Jevremović at Disneyland with Mr. Margera and his family, Ms. Courville referred to Ms. Jevremović as a "handler[] and trafficker[]."

122.    Defendants' viewers and audience demonstrated that they believed Ms. Courville's statements that Ms. Jevremović is a trafficker or criminal by commenting, among other things:

---

[38] https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed October 14, 2024.)

31

**JA374**

ryanbohac 123w
#investigateLima
#investigateloumtaylor
#investigateaura #freebam

3 likes    Reply

123.    On April 25, 2022, Ms. Courville published on Instagram an excerpt[39] from a Complaint previously filed by Mr. Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

In response, Ms. Courville stated: "the plan is to end his life. I'm convinced of it. #savebam."

124.    On April 19, 2022, Ms. Courville published on Instagram a screenshot[40] of a conversation between unidentified persons regarding Mr. Margera. Ms. Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker."

125.    One of Defendants' viewers praised Ms. Courville's post as "speaking truth, doing God's work."

126.    On April 18, 2022, Ms. Courville published a screenshot[41] of a highlighted excerpt from an article discussing the application of Iceland law and whether Mr. Margera's and his wife's marriage is legally recognized. A commenter on the image asked:

> where are his parents?

---

[39] https://www.instagram.com/p/CcxsX9HsR9H/(Accessed October 16, 2024.)

[40] https://www.instagram.com/p/CciJ3HsuFlX/ (Accessed October 14, 2024.)

[41] https://www.instagram.com/p/Ccf9UdxuHYc/ (Accessed October 14, 2024.)

32

**JA375**

127.    to which Ms. Courville responded, referring to Ms. Jevremović:

helping the criminals [sic] girl.

128.    On April 3, 2022, Ms. Courville posted a screenshot[42] of an excerpt of a celebrity tabloid article on Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million Net Worth"; Courville commented on the photo, saying:

> I heard forced rehab is expensive… I learned that from Lima from @meetAURA. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😄 #FreeBam.

129.    By linking the cost of rehabilitation, as described by Ms. Jevremović, to the supposed depletion of Mr. Margera's net worth, Ms. Courville falsely characterized Ms. Jevremović as depleting Mr. Margera's money, rather than assisting with treatment for a substance abuse disorder.

130.    The statement is also a continuation of Ms. Courville's previous defamatory statements that Ms. Jevremović was Mr. Margera's conservator, a role permitted by law to manage Mr. Margera's finances, notwithstanding that Ms. Jevremović was a guardian.

131.    Defendants' audience believed Ms. Courville's implication that Ms. Jevremović financially benefited from Mr. Margera's guardianship. A viewer, officialbogwitch, commented, in relevant part: "It's not unreasonable to think that Lima would also wanna sink her claws into his parents and manipulate them out of what little he has left."

132.    On April 4, 2022, Ms. Courville published to YouTube a video entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT"[43] in which she defamed Ms.

---

[42] https://www.instagram.com/p/Cb5djK4FXNI/ (Accessed October 14, 2024.)

[43] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed October 14, 2024.)

33

**JA376**

Jevremović. In the video, Ms. Courville claimed that Ms. Jevremović conspired with Steven Timmer and Mr. Margera's aunt, Antoinette Melissa Dompierre, a/k/a, Aunt Missy, to deceive Mr. Margera into flying to Florida, and then to have police arrive at the hotel that he was staying so that he could be escorted to a treatment center in Florida.

133. Ms. Courville made numerous false statements in that video, including, but not limited to, that Ms. Jevremović was present at the hotel when the police were called to the hotel to "setup" Mr. Margera's arrest.

134. In that video, Ms. Courville read to her audience an online article, titled "Bam Margera allegedly attacked woman while on cocaine, 911 call shows" published on Page Six, on October 13, 2021.[44] The article provided, among other things, that 911 was called because Mr. Margera allegedly assaulted a female, stating that "[Mr. Margera] attacked her, grabbed her breast, and she said she thinks he tore her implant." The article further provided that the 911 caller claimed that Mr. Margera was in the room with a prostitute and a "minder" when the alleged assault happened.

135. While reading the article to her audience, Ms. Courville stated:

> Then he referenced the some alleged victim and says he attacked her, grabbed her body part and she thinks he tore her implant. Now I don't know who this alleged victim could be. I don't know who could possibly have implants. I don't know whose implant he could have been accidentally tearing, who maybe was trying to force him to go somewhere against their will. But it's all going to add up real soon…

136. While making the statements above, Ms. Courville clicked on two pictures of Ms. Jevremović, and zoomed in those two pictures, such as insinuating that Ms. Jevremović was the woman referred in the article:

---

[44] https://pagesix.com/2021/10/13/bam-margera-attacked-woman-while-on-cocaine-911-call-shows/ (Accessed October 14, 2024.)

34

**JA377**





137. Of course, Ms. Jevremović was in the State of Washington when the alleged assault occurred.

138. Furthermore, the article that Ms. Courville was reading from provided, in relevant part:

> The caller described the alleged victim – whose name will not be disclosed out of discretion – as a white woman in her 50s or early 60s.

And

> Bam was with his aunt in the hotel room. She is a 65-year-old woman, who is clean and sober…

139. As such, it was plain from the article that Ms. Courville was reading from, that Ms. Jevremović, who was in her 30s, could not have been the alleged victim.

35

140.    Ms. Courville, in making that statement, showed a reckless disregard of the truth or falsity of her statements.

141.    Defendants' audience interpreted Ms. Courville's defamatory statements as the truth. A user, "ultimateluxe" commented under Ms. Courville's Instagram post of an excerpt in which Ms. Jevremović was wearing the same black sweater as in the two pictures that Ms. Courville zoomed in:[45]



142.    Another user "myshittyreviews" commented under the same post:



143.    Knowing that her statements were false, Ms. Courville did not correct any of the statements, but reinforced the false statements by replying to her audience to imply that

---

[45] https://www.instagram.com/p/CbvGodsJLtE/ (Accessed October 16, 2024.)

36

Ms. Jevremović was at the scene and was actually the "minder" in the room, as described by the 911 caller.

144. At 27:39 of the video, Ms. Courville described Mr. Margera's transfers between treatment facilities and states:

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

145. This statement defames Ms. Jevremović insofar as Ms. Courville repeatedly identifies Ms. Jevremović as responsible for Mr. Margera's treatment, and insofar as Ms. Courville, invoking the authority she commands as a lawyer, describes aspects of Mr. Margera's treatment as criminal.

146. The audience targeted by the video believed Ms. Courville's statements, which aim to imply objective facts that are false – that Ms. Jevremović conducted criminal activity. For example, a viewer commented:[46]

> Lima, when acting as guardian, unequivocally breached her fiduciary duty with the placement of Bam into a center that employs an interventionist with documented criminal behavior.

147. A viewer of another of Ms. Courville's videos about Mr. Margera's "conservatorship," @JessicaC., commented:[47]

> Damn BJ why aren't you practicing law? You need to be a lawyer! You have your degree! You would make an amazing civil rights lawyer! By the look of it a lot of individuals who are dealing with addiction and being trafficked around to different facilities need legal representation! You would be perfect for this! You found your calling!

To which Ms. Courville, again, touted her legal background:

---

[46] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed October 14, 2024.)

[47] https://www.youtube.com/watch?v=Cj6xVkd56tU&list=PLxoh8HZ0hbVHpC3RufJee77ZQkrxEOdRh&index=10 (Accessed October 16, 2024.)

37

**JA380**

I am a lawyer. That's how I know this stuff 😊 🖤

And

I can make a LOT bigger difference doing stuff like this. I'm not meant to be an employee. Not my current path. But I do use my degree for civil rights! Just not the traditional way 😜

148.     On July 8, 2022, Ms. Courville published to YouTube a video entitled "Bam's Family Breaks Silence on #FreeBam | Jess and April Margera SPEAK OUT."[48] At 6:10, in the video she stated:

I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

149.     Ms. Courville thus emphasized that her statements are accurate and factual even when they were not. At 15:59 of the video, Ms. Courville described herself as

the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation [.]

150.     Audience of the video praised Ms. Courville as "such a good investigator" and spoke highly of Ms. Courville: "Your passion for truth is so refreshing!!" It is clear that Defendants' audience interpreted Ms. Courville's statements as truth, not hyperbole.

151.     A viewer of the video commented:

Lima reminds me of that lady from the movie "I care a lot" that movie is about a woman becoming rich off of putting people in conservatorships and stealing their money or making money off of them.

152.     Defendants' audience believed Defendants' continuous false and defamatory statements about Ms. Jevremović.

---

[48] https://www.youtube.com/watch?v=Nr3e0RKY6Ig (Accessed October 14, 2024.)

38

**JA381**

153. On April 18, 2022, Ms. Courville posted a screenshot [49] of anonymous comments to Instagram, captioning the photo:

Looks like team con is planning to traffic @bam_margera for a "few more months". #freebam

154. On September 10, 2022, Ms. Courville published a video to YouTube entitled "Lima Jevremović Made A Video About Me,"[50] in which she stated at 17:53 of the video:

I joke about stuff, and I make light of situations, but like, make no mistake, this isn't drama, this is very serious.

155. By the statement, Ms. Courville emphasized that her statements are not jokes or hyperbole but should be understood as accurate and factual.

156. Defendants' statements became so prolific that any Google search of Ms. Jevremović or AURA reveals the false accusations and defamatory statements posted by Defendants.

157. Defendants directly disrupted AURA's second round funding, causing potential investors actively involved in funding discussions to retreat.

158. Ms. Courville's false and misleading statements about Plaintiffs have directly interfered with AURA's business and caused damage to Ms. Jevremović, resulting in, among other things, order cancellations and the withdrawal of marketing affiliates.

---

[49] https://www.instagram.com/p/Ccf9opHlvNm/ (Accessed October 14, 2024.)

[50] https://www.youtube.com/watch?v=RtwiHx8_oMA (Accessed October 10, 2024.)

39

**JA382**

### III. DEFENDANTS' INTENTIONAL RELEASE OF PRIVATE INFORMATION AND ENCOURAGEMENT OF UNLAWFUL CONDUCT

159. Ms. Courville has, at various times, published Ms. Jevremović's social security number,[51] date of birth, unlisted home phone number, and three of Ms. Jevremović's unlisted home addresses,[52] her family members' addresses, among many other information in a coordinated and intentional doxing campaign.

160. Additionally, Defendants' publication of Ms. Jevremović's sisters' addresses, resulted in putting Ms. Jevremović's sister, Dahlia, soon after the publication of her otherwise private address, in harms way.

161. After being besieged in their home in Washington State by Ms. Courville's devotees, where Ms. Courville encouraged followers to "make some noise" directed towards Ms. Jevremović, Ms. Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

162. In or around August 2023, Defendants' "@thatsurprisewitness" handle on Instagram included a post with comments that included Ms. Jevremović's home address. Strangers began to appear near her front yard, lurking inexplicably, almost immediately upon the information being released on Defendants' "@thatsurprisewitness" Instagram handle. As a result, Ms. Jevremović had to relocate.

---

[51] https://www.instagram.com/p/CfMCi1dOg51/?img_index=2 (Accessed October 14, 2024). The Application for Appointment as Guardian posted by Defendants initially contained Ms. Jevremović's Social Security Number, unredacted. When accessed on October 14, 2024, Ms. Jevremović's SSN was redacted. As such, it is respectfully submitted that Defendants have admitted that posting Ms. Jevremović's SSN is unlawful by redacting the SSN later.

[52] *See, e.g.,* https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023) When accessed on October 14, 2024, there is no longer publication of Ms. Jevremović's addresses under the post. It is hereby submitted that Defendants admitted that Ms. Jevremović's addresses should not have been published because Ms. Courville removed them at a later date. *See also* https://www.instagram.com/p/CfMCi1dOg51/?img_index=2 (Accessed October 10, 2024).

40

**JA383**

163. There was a video that urged Ms. Courville's followers to "make some noise," after arming her followers with Ms. Jevremović's mother's home address, phone number, and airing a humiliating mental health crisis video—a video that Oklahoma authorities have indicated should not have been available to the public.[53]

164. As a result of Ms. Courville's doxing campaign, Ms. Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Ms. Courville to harass Ms. Jevremović's mother and make calls to her employer.

165. A collection of fans and Defendants' online supporters participated in private virtual meetings, and called themselves "That Surprise Army." At least one former dedicated member of That Surprise Army declared, under oath, that members of That Surprise Army had a discord server called That Surprise Army that had over 10,000 pieces of information about Ms. Jevremović and everyone she knew, including estimates and timelines of when Ms. Jevremović met certain people and where Ms. Jevremović was located.

166. According to that former member, the That Surprise Army believed that they were fighting for justice and gathered on the server to investigate Ms. Jevremović and her family on behalf of Defendants.

167. Ms. Courville communicated with her followers and encouraged them to "do their own research" while sharing private information with her followers about Ms. Jevremović and her family. Indeed, Defendants' numerous social media posts, videos, and directives, led Defendants' followers to believe that Ms. Jevremović was involved in criminal activities as Ms. Courville claimed.

---

[53] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). When accessed on October 14, 2024, the video is no longer available. It is submitted that Defendants have admitted that the video should not have been published because Ms. Courville has not removed it.

41

**JA384**

168.     Feeling compelled to assist Ms. Courville, no less than one member obtained Ms. Jevremović's mother's address, from a video published by Ms. Courville in which she also detailed Ms. Jevremović's sister's private medical information.

169.     In one of her videos containing the police intervention crisis footage, Ms. Courville persuaded thousands of her viewers that Ms. Jevremović's sister urgently required rescue from her own mother and from Ms. Jevremović.

170.     In or around late 2023 or early 2024, that former member of That Surprise Army reached out to Ms. Courville privately via a direct message ("DM"), informing Ms. Courville that she had gone to the home of Ms. Jevremović's mother to look into the accusations and Ms. Courville responded by stating:

**JA385**



171.   Defendants' viewers believed they were doing the right thing because Ms. Courville claimed to be an attorney that knows the law and is advising her audience on what they are legally allowed to do to bring justice to "powerful criminals."

## IV.   ACTUAL MALICE

172.   Ms. Courville made and published each of the many false statements with the knowledge that the statements were false when made, and/or with reckless disregard for the truth or falsity of the statements.

173.   Ms. Courville touted her background as a lawyer, and advised her many viewers and listeners that her many false and defamatory statements should be believed because she

43

**JA386**

has made the statements based on her "education, knowledge, and experience." [54]  Ms. Courville has posted, among other things, her Attorney ID, and Bar Admission Date in the State of New Jersey. [55] She has touted to her audience that she "graduated from Ivy League law school." [56]

174.    In addition to the many false and defamatory statements described above, in one especially intentionally humiliating post made on April 19, 2022, Defendants published a photograph [57] on the @ThatSurpriseWitness Instagram page, which appeared to be a screenshot of a female's account, whose name is "Lima Mora," as below:



---

[54] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed October 10, 2024.) ("To clarify, I am a licensed attorney…".)

[55] https://www.instagram.com/p/Cf4a8lolr1N/(Accessed October 10, 2024.)

[56] https://www.instagram.com/p/Cf4brvtlxV0/?img_index=1 (Accessed October 10, 2024.) ("that time I graduated from Ivy League law school.").

[57]    https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed October 10, 2024.)

44

**JA387**

175. Since Defendants posted this picture amid their efforts to vilify Ms. Jevremović, Defendants' viewers immediately realized that Ms. Courville was saying that the female in the picture is Ms. Jevremović.

176. Various viewers of the post also pointed out that the picture shows an OnlyFans account, and commented, for example:

Omg she's on only fans too? Wtaf??

She got an onlyfans.

And

Looks like only fans acct.

177. Defendants' viewers reasonably interpreted Defendants' post as Defendants telling their viewers that Ms. Jevremović has an OnlyFans account.

178. Ms. Courville furthered her campaign against Ms. Jevremović by including the false statement that Ms. Jevremović is involved in pornography, without any conceivable legitimate purpose to say so except to harass and cause harm to Ms. Jevremović's reputation.

179. After more than three years of Defendants' thousands of postings about Ms. Jevremović and AURA, the top search engine results for Ms. Jevremović and AURA are now almost all Defendants' false and otherwise intimidating social media content.

180. At the same time, Defendants' videos regarding Ms. Jevremović make up more than half of Ms. Courville's top ten most viewed videos, from which it can be inferred that Ms. Courville has operated with the awareness of the economic potential from distributing falsehoods about Ms. Jevremović.

181. To date, Defendants are continuing their defamatory statements against Plaintiffs. Ms. Courville stated to her audience, through a video streamed on June 27, 2023:

45

**JA388**

they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it and it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny–not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…

182. Defendants know that what they are disseminating is false. Defendants are betting that they can say false and defamatory statements without repercussions.

## FIRST COUNT

### Libel

**(By Plaintiff Lima Jevremović against All Defendants)**

183. Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 182 as though fully set forth in this paragraph.

184. Defendants published defamatory statements of and concerning Ms. Jevremović, including, but not limited to the false statements referenced in Paragraphs 26 to 182, above.

185. Defendants published to the public, including but not limited to their many viewers, these false statements through their social media channels.

186. All of Defendants statements are false and/or made with reckless disregard for the truth or falsity of these statements.

187. Ms. Jevremović's reputation and business endeavors have been negatively impacted, if not destroyed, by Defendants' statements. She has suffered humiliation, emotional distress, anger, embarrassment, frustration, fear, loss of income, severe anxiety,

46

**JA389**

stress, shame, mortification, sleeplessness, and other physical manifestations thereof resulting from Defendants' above-described actions.

188.    Defendants intentionally and maliciously made the false and defamatory statements, referenced in Paragraphs 26 to 182, above, since February 2022, in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications.

189.    Defendants published their statements with the knowledge of the falsity of those statements or a reckless disregard for the truth or falsity of these statements, and thus, Defendants acted with actual malice sufficient to support an award of punitive damages.

190.    Defendants false and defamatory statements, including but not limited to those statements referenced in Paragraphs 88, 89, 114, 121, 122, 124, 144, 145, 146, 174-175, and 178, constitute libel *per se.*

191.    As a direct and proximate result of Defendants published false and defamatory statements to third parties about Ms. Jevremović, which they knew to be false and/or acted in reckless disregard of the truth or falsity of those statements, Ms. Jevremović has been and continues to be damaged.

## SECOND COUNT

### Libel

**(By Plaintiff AURA against All Defendants)**

192.    Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 191 as though fully set forth in this paragraph.

193.    Defendants published defamatory of and concerning AURA, including, but not limited to the false statements referenced in Paragraphs 26 to 182, above.

47

**JA390**

194. Defendants published to the public, including but not limited to their many viewers, the false statements through their social media channels.

195. All of Defendants statements are false and/or made with reckless disregard for the truth or falsity of these statements.

196. AURA's reputation has been negatively impacted due to Defendants' above-described actions; AURA has lost substantial investments, opportunities, and income and AURA and its CEO, Ms. Jevremović, have been exposed to hatred, contempt, and the loss of the goodwill and confidence felt toward them by others, because of Defendants' libelous statements.

197. Defendants intentionally and maliciously made the false statements referenced in Paragraphs 26 to 182, above, over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications.

198. Defendants published their statements with knowledge of the falsity of those statements or a reckless disregard for the truth or falsity of those statements, and thus, Defendants acted with actual malice sufficient to support an award of punitive damages.

199. As a direct and proximate result of Defendants publishing false and defamatory statements about AURA, which they knew to be false and/or acted in reckless disregard of the truth or falsity of those statements, AURA has been and continues to be damaged.

### THIRD COUNT

### Invasion of Privacy – Intrusion upon Seclusion

### (By Plaintiff Lima Jevremović against All Defendants)

200. Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 199 as though fully set forth in this paragraph.

48

**JA391**

201.    Defendants intentionally intruded upon Ms. Jevremović's seclusion by, among other things, intentionally releasing personal information without any permission to do so, and to the contrary, over Plaintiff's vehement objections.

202.    Specifically, Defendants published personal and private information regarding Ms. Jevremović and her family, including Ms. Jevremović's family's home addresses, the name and address of the church Ms. Jevremović attends in Los Angeles, Ms. Jevremović's phone number, Ms. Jevremović's social security number,[58] as well as the names and photos of Ms. Jevremović's husband, sisters, mother, and mother-in-law.

203.    Defendants' intentional release of Ms. Jevremović's social security number to her viewers, alone, constitutes a violation of N.J.S.A. §58:8-164.

204.    Moreover, Defendants' release of Ms. Jevremović's personal information and encouragement of Ms. Courville's followers to act on that information,[59] has caused further intrusions and invasions into Plaintiff's privacy via death threats and text messages of dead bodies from unknown numbers, strangers showing up uninvited and unannounced at Ms. Jevremović's home, and drones entering and surveilling Ms. Jevremović's property to watch Ms. Jevremović and her family.

205.    The public has no legitimate interest in learning of Ms. Jevremović's personal and private information and the publication of Ms. Jevremović's personal and private information would be highly offensive to a reasonable person.

---

[58] https://www.instagram.com/p/CfMCi1dOg51/?img_index=2 (Accessed October 14, 2024). The Application for Appointment as Guardian posted by Defendants initially contained Ms. Jevremović's Social Security Number, unredacted. When accessed on October 14, 2024, Ms. Jevremović's SSN was redacted. As such, it is respectfully submitted that Defendants have admitted that posting Ms. Jevremović's SSN is unlawful by redacting the SSN later.

[59] June 27, 2023 YouTube video with Ms. Courville touting the contributions of her followers to her activities in digging into Jevremovich's personal life: https://www.youtube.com/watch?v=Vh6j4YHIxoE.

49

**JA392**

206.     As a direct and proximate result of Defendants' wrongful conduct, Ms. Jevremović has suffered and continues to suffer emotion and financial harm.

### FOURTH COUNT

### Invasion of Privacy – False Light

### (By Plaintiff Lima Jevremović against All Defendants)

207.     Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 206 as though fully set forth in this paragraph.

208.     Defendants exposed Ms. Jevremović in a false light, by making defamatory statements about Ms. Jevremović's character, history, activities and beliefs.

209.     Defendants either knew that the publicized material was false and would place Plaintiffs in a false light or acted with reckless disregard as to whether the publicized defamatory statements were false and/or with reckless disregard for the false impression created by the publicized defamatory statements.

210.     The defamatory statements made by Defendants so misrepresented Ms. Jevremović's character, history, activities, and/or beliefs that a reasonable person in Plaintiff's position would find the material highly offensive.

211.     As a direct and proximate result of Defendants' wrongful conduct, Ms. Jevremović has suffered and continues to damages.

### FIFTH COUNT

### Intentional Infliction of Emotional Distress

### (By Plaintiff Lima Jevremović against Defendant Brittany Jeream Courville)

212.     Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 211 as though fully set forth in this paragraph.

50

**JA393**

213. Ms. Courville's distribution of Ms. Jevremović's home address, her mother's home address, and myriad other releases of private information, including Ms. Jevremović's phone number and social security number, with the aim of inflicting devastation and emotional distress on Ms. Jevremović and her family - and that Ms. Courville's' actions did in fact cause devastation and emotional distress.

214. Ms. Jevremović has suffered, and continues to suffer, emotional distress as a result of Defendants' wrongful conduct. She regularly sees a psychiatrist and a therapist. In April 2024, Ms. Jevremović was diagnosed of depression. The emotional distress that Ms. Courville has inflicted on Ms. Jevremović has exacerbated physical conditions of Ms. Jevremović as well.

215. As a direct and proximate result of Ms. Courville's intentional infliction of emotional distress, including the doxing and cyber-harassment of Ms. Jevremović, so severe that no reasonable person could be expected to endure it, Ms. Jevremović has been, and will continue to be damaged.

## SIXTH COUNT

### Negligent Infliction of Emotional Distress

### (By Plaintiff Lima Jevremović against All Defendants)

216. Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 215 as though fully set forth in this paragraph.

217. Defendants acted negligently when Defendants published and otherwise distributed Plaintiff's home address (three different private addresses after Ms. Jevremović has been forced to move as a result of Ms. Courville's doxing), Ms. Jevremović's mother's

51

**JA394**

home address,[60] Ms. Jevremović's sister's private home address, along with release of links to pornography with the false suggestion that it is Ms. Jevremović in the pornography, and the myriad false statements and releases of private information as pleaded above.

218. Defendants' acts resulted in damage to Ms. Jevremović and her family, including but not limited to, forcing Ms. Jevremović and her family to relocate, and to hire 24/7 security.

219. Defendants conduct herein has caused Ms. Jevremović extensive additional mental anguish and financial harm. As of April 2024, Ms. Jevremović was clinically diagnosed with depression. Ms. Jevremović has been regularly visiting a psychiatrist and mental therapist. Ms. Jevremović is also developing heart condition related to the emotional distress that she is suffering from.

220. Ms. Jevremović has suffered, and continues to suffer, emotional distress as a result of Defendants' wrongful conduct. She regularly sees a psychiatrist and a therapist. In April 2024, Ms. Jevremović was diagnosed of depression. The emotional distress that Ms. Courville has negligently inflicted on Ms. Jevremović has exacerbated physical conditions of Ms. Jevremović as well.

221. As a direct and proximate result of Ms. Courville's negligent infliction of emotional distress, including the doxing and cyber-harassment of Ms. Jevremović, so severe that no reasonable person could be expected to endure it, Ms. Jevremović has been, and will continue to be damaged.

---

[60] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). When accessed on October 22, 2024, the video is no longer available. It is hereby submitted that Defendants admitted that this video should not have been published because Ms. Courville removed the video at a later date.

**SEVENTH COUNT**

**Tortious Interference with Contractual Relations**

**(By Plaintiff AURA against All Defendants)**

222. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 221 as though fully set forth in this paragraph.

223. By or around March 2022, AURA received $1.5 million for funding, and was valued at approximately $10 million. AURA received investment from seasoned investors.

224. Defendants tortiously interfered with the contracts that AURA had with its investors by, among other things, intentionally disseminating false information that harms AURA's reputation.

225. The interference was intentionally inflicted by Defendants, who are not party to those contracts, and without justification.

226. The interference caused harm to AURA because the investors that had already invested in AURA chose to renege on their investment due to Defendants' false statements and accusations.

227. AURA was closed in February 2024.

228. As a direct and proximate result of Defendants tortious interference with AURA's contractors and its investors, AURA has suffered and will continue to suffer damages.

**EIGHTH COUNT**

**Tortious Interference with Prospective Economic Advantage**

**(By Plaintiff AURA against All Defendants)**

229. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 228 as though fully set forth in this paragraph.

53

**JA396**

230. By or around March 2022, AURA received $1.5 million for funding, and was valued at approximately $10 million. AURA received investment from seasoned investors.

231. Many prospective investors showed demonstrated interest in investing in AURA, and expressed their interest either orally or by providing a Letter of Intent.

232. After Defendants began publishing false and defamatory statements that cause harm to AURA's reputation, the prospective investors, including those who had provided a Letter of Intent, refused to invest in AURA.

233. Defendants intentionally interfered with AURA's prospective contractual or economic relationship intentionally without justification of excuse.

234. Defendants' intentional interference caused AURA's loss of the expected advantage.

235. As a direct and proximate result of Defendants tortious interference with AURA's potential investors, AURA has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiffs, Ms. Jevremović and AURA, hereby demand the following relief in favor of Ms. Jevremović and AURA, and against Defendants:

a. A permanent injunction to remove all statements and publications adjudged libelous and to estop Defendants from publishing additional actionable statements under the causes of action alleged;

b. Awarding Plaintiffs actual damages;

c. Awarding Plaintiffs punitive damages;

d. Awarding Plaintiffs special damages damage to reputations, losses of business opportunities, and losses of investment opportunities;

e. Awarding Plaintiffs interest;

54

**JA397**

f.     Attorneys' fees and costs of suit; and

g.     Any other relief the Court deems equitable and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all matters triable.

Respectfully submitted,

*s/ Elliot D. Ostrove*

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com

*s/ Rodney Smolla*

Rodney Smolla
(*Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Ms. Jevremović and
Autonomous User Rehabilitation Agent, LLC

Dated: October 23, 2024

55

**JA398**

## NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation Agent, LLC ("AURA"), hereby declare the following:

1.      I am a Plaintiff in the present case, a citizen of California and the United States of America.

2.      I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3.      I have fully reviewed the foregoing Third Amended Complaint, and aver that the matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I hereby certify that the matter in controversy in the foregoing Fourth Amended Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding, with the exception of the matter pending in Superior Court of the State of California, County of Los Angeles, Case No.: 24STRO00762, captioned *Lima Jevremović v. Brittany Jeream Courville*, and the matter pending in Superior Court of the State of California, County of Los Angeles – Central District, Case No.: 23STRO05821, captioned *Lima Jevremović v. Brittany Jeream Courville*.

I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on October 23, 2024

_____
Lima Jevremović, on my own behalf, and
on behalf of Autonomous User
Rehabilitation Agent, LLC

56

**JA399**

Elliot D. Ostrove, Esq. (Bar No. 025581997)
EPSTEIN OSTROVE
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
Telephone: (732) 828-8600
Fax: (732) 828-8601
Email: e.ostrove@epsteinostrove.com

Neville L. JohnsonEmail: e.ostrove@epsteinostrove.com

Rodney A. Smolla, Esq. (*Pro Hac Vice*)
JOHNSON & JOHNSON LLP
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (310) 975-1080864) 373-3882
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com

Rodney A. Smolla, Esq. (*Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Jevremović and
Autonomous User Rehabilitation Agent, LLC

Email: rodsmolla@gmail.com

Attorneys for Plaintiffs Lima Ms. Jevremović and
Autonomous User Rehabilitation Agent, LLC

**UNITED STATES DISTRICT COURT**
**FOR**
**THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIMA JEVREMOVIĆ, an individual; and AUTONOMOUS USER REHABILITATION AGENT, LLC, a Delaware Limited Liability Company, | Civil Action No: 3:22-cv-04969-ZNQ-RLS<br><br>*Document Electronically filed* |

**JA400**

12.

Plaintiffs,

vs.

BRITTANY JEREAM COURVILLE, an individual; PREM BENIPAL, an individual; and THAT SURPRISE WITNESS TV LLC, a New Jersey limited liability corporation. Limited Liability Company,

Defendants.

VERIFIED THIRDFOURTH AMENDED COMPLAINT FOR:

1. LIBEL

2. LIBEL

3. INVASION OF PRIVACY INTRUSION UPON SECLUSION

4. INVASION OF PRIVACY FALSE LIGHT

5. DOMESTIC VIOLENCE ACT HARASSMENT (N.J.S.A. § 2C:25-19(a)(13))

6. DOMESTIC VIOLENCE ACT CYBER-HARASSMENT (N.J.S.A. § 2C:25-33-4.1)

7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

8. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

9. UNFAIR COMPETITION

2

**JA401**

12.

**10. UNFAIR**

**COMPETITION**

> Formatted: Body Text, Space After: 12 pt, Line spacing: single, Don't keep with next

**DEMAND FOR JURY TRIAL**

> Formatted: Font: +Body (Calibri), 11 pt, Not Bold
>
> Formatted: Indent: Left: 0.75", Hanging: 0.25", Right: 0", Space After: 12 pt, Line spacing: single

Plaintiffs, Lima Jevremović ("Ms. Jevremović"), an individual with her principal residence in the State of California, and Autonomous User Rehabilitation Agent, LLC, a limited liability company with its principal place of business in the State of Washington ("AURA" or the "Company") (together, "Plaintiffs"), by and through their undersigned counsel, Epstein Ostrove, LLC, together with Rodney Smolla, Esq., file this ThirdFourth Amended Complaint against DefendantDefendants Brittany Jeream Courville ("Ms. Courville") and Defendant Prem Benipal ("Benipal") (collectively "Individual Defendants"), and Defendant That Surprise Witness TV LLC (the "Entity Defendant") (all collectively, "Defendants"), on the basis of libel[1] and additional causes of action for harassment, cyber harassment, intentional/negligent infliction of emotional distress, and unfair competition, arising from the conduct of Defendants.

**STATEMENT OF THE CASE**

---

1. [1] Plaintiffs respectfully disagree with the Court's finding that no libel claims have been stated. In part to preserve the issue for appeal, Plaintiffs replead and amended the libel claims, given that "if plaintiff simply drops the dismissed claim and does not attempt to replead, the claim will be deemed waived and plaintiff will not be able to raise the original dismissal of the cause of action on appeal." Federal Civil Procedure Before Trial (Rutter Group 2023). Plaintiffs continue to strongly believe that they properly stated claims for libel in the Complaint, and Plaintiffs attempt to amend Plaintiffs' libel claims in a way that will make this more apparent, which Plaintiffs will further argue in the event that Defendants file a new motion to dismiss. In addition, Plaintiffs plead new, additional facts which, even accepting this Court's prior findings, constitute proper libel claims.

> Formatted: Indent: Left: 0.75"

3

12.

This action arises out of the conduct of Courville, in concert with Defendant Benipal, and the Entity Defendant to weaponize the social media handle "That Surprise Witness" on various forms of social media in a concerted campaign to bring down and "cancel" Jevremović and to destroy AURA's business, vowing to try "to stop [AURA] before it even gets off the ground."[2] More recently, the Defendants began to pivot towards a more dangerous campaign of cyber-harassment and doxing, with Courville promising that her activities will continue or worsen until Jevremović drops this very lawsuit.[3]

Defendants, in a concerted and premeditated effort to build on the worst trends in online harassment and doxing, have courted the forces behind Q-Anon[4], and have resorted to implementing the use of non-public, HIPAA protected video footage of Jevremović's family members – and released private materials such as Jevremović's home address and social security number, her mother's home address, and countless other private photographs and details to intimidate and terrify Jevremović, and to gain clicks and exposure for the "That

---

[2] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)

[3] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39, Courville speaking to/regarding Jevremović: "If you're gonna sue, and this goes to anybody out there thinks they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it and it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny  not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…"

[4] Courville has recently been working on projects with noted Q-Anon leader Liz Crokin, *See* https://www.slaveprincess.com/credits (Accessed August 31, 2023). Crokin has been described as "an early embracer of the QAnon conspiracy theory, which alleges the world is run by a shadowy cabal of Satan worshipping pedophiles.") https://thehill.com/homenews/campaign/3765836-trump-hosts-mar-a-lago-event-with-prominent-qanon-pizzagate-conspiracy-theorist/ (Accessed September 6, 2023).

4.

4

**Formatted:** Indent: Left: 0.75"

12.

Surprise Witness" brand.

Initially, one aspect of Courville's campaign began in 2022 as a misguided attempt to "#FreeBam", based on a misunderstanding that Brandon Margera ("Bam" as he is termed by fans, or hereinafter, "Margera") was somehow being controlled or manipulated by Jevremović for her profit. It didn't matter to Courville that Jevremović received no compensation whatsoever for her work in attempting to assist Margera in fighting his battle with addiction.

Back then, Margera's family and friends were united in participating in his care—he was reconciling with his wife and spending time with his son. Positive influences in Margera's life like Steven Glover (better known as Steve-O), Johnny Schillereff and Brandon Novak, who had successfully found sobriety, were helping him get his career back on track and visiting with him often. Unfortunately, when Courville's early "#FreeBam" posts started gaining some online interest, unsavory characters slithered into Margera's circle, including Vinny Beedle[5] ("Beedle") and Brian Pingor ("Pingor") (an attorney who bragged about meeting Margera while they were both in rehab together). Beedle and Pingor befriended Margera at a fragile time and introduced him to Courville's toxic #FreeBam movement—with no motivation but to keep Margera too intoxicated to notice they were maxing out his credit cards and selling stories about him to TMZ. They knew if Margera stayed sober, there would be no benefit to them, so they tilted Bam towards Courville's toxicity and away from the friends and family who cared for him.

---

5. [5] https://twitter.com/VINNYBEEDLE (Accessed September 5, 2023).

5

**Formatted:** Indent: Left: 0.75"

12.

Yet, Courville has been untroubled by the fact that there was nothing to "#FreeBam" from, except court orders arising from Margera's arrests that arose from the dangerous fight that Margera is having with addiction. Instead of grappling with the complicated realities of Margera's fight with substance abuse, Courville elected to make Jevremović and AURA into straw man villains. Courville knew that Jevremović as villain would generate more views for her channel and followers, without regard for the effect her campaign against Jevremović would have on Margera.

Recently, as Courville's off-kilter campaign has increasingly shifted towards a skewed personal vendetta against Jevremović, Margera has become an unfortunate casualty of Courville's online firebombing of all things associated with Jevremović and AURA. Accordingly, Margera's substance abuse issues have escalated and led to him being arrested twice in the past two months.[6] Courville has been complicit in using Margera, abetting him in getting high and drunk before coming on her YouTube show, angling to get Margera to and say negative things about Jevremović and AURA (to contradict the positive things that Margera had said about Jevremović while Margera was sober). Courville has shown complete disregard for whether her efforts could derail Margera from a year-long attempt at sobriety.;

At the same time, Courville's "#FreeBam" movement has been losing viewership and online followers, where it is becoming increasingly clear that

---

6.    [6] Margera was arrested on August 9, 2023, for charges relating to Public Drunkenness and Engaging in Fighting.    *See*    https://www.nbcphiladelphia.com/news/local/jackass-star-bam-margera-arrest-radnor-hotel/3621538/#:~:text=Professional%20skateboarder%20and%20star%20of,to%20a%20law%20enforcement%20source (Accessed September 6, 2023). Margera's August arrest came just two weeks after an incident where he was charged with assault and making terroristic threats after a fight with Margera's brother. (*Id*.)

6

JA405

12.

the movement was nothing but a publicity ploy to drum up viewers and followers, that had nothing to do with the actual well-being of Margera or his family. Losing her grasp on viewership and followers on her social media channels, Courville has resorted to spiraling ever deeper into an unhinged obsession with destroying Jevremović. Courville's panopticon of terror has reached into every conceivable cranny of Jevremović's family and personal life, destroyed her business, and even driven her and her family from their homes.

At the same time, Courville has effectively frozen investment in AURA and forestalled further development of AURA's new health-based business, even while simultaneously participating in the online health business "Giddy" as a contributor.[7] As such, Courville's conduct has the perverse effect that potential investors interested in a health start-up like AURA would perhaps now choose to invest in Giddy, rather than AURA.

Courville is nothing if not savvy about how to weaponize social media, and recent months have revealed a turn towards the depths of cyber-harassment and doxing in efforts to bring about real harm to Jevremović — an increasingly desperate attempt to keep her falling viewership and followers afloat at any cost, and to scare Jevremović into dropping this lawsuit.[8]

This includes publishing a video that urges Courville's followers to "make some noise," after arming her followers with Jevremović's mother's

---

7. [7] https://getmegiddy.com/BJ_Courville; https://getmegiddy.com/BARE/BJ_Courville (Accessed September 5, 2023).
8. [8] June 27, 2023 YouTube Video: https://www.youtube.com/watch?v=Vh6j4YHIxoE (Accessed September 7, 2023).

7

**Formatted:** Font color: Auto, Character scale: 100%

**Formatted:** Indent: Left: 0.75"

12.

~~home address, phone number, and airing a humiliating mental health crisis video — a video that Oklahoma authorities have indicated should not have been available to the public.[9]~~ As a result of Courville's doxing campaign, Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Courville to dig into Jevremović's mother's personal life to harass her and make calls to her employers.[10]

~~All the while, Courville has pretended her statements are not to be taken seriously, all the while winking and signaling to her followers that she means every word. Indeed, Courville has revealed that she is deliberately labelling herself a "conspiracy theorist", only so that her targets cannot use Courville's false statements "against her"[11], as shown below:~~

---

[9] ~~https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). The Oklahoma police department from which this video footage was obtained has confirmed that this footage is not public information and Courville should not have been able to obtain it, and they have launched an on-going investigation into how Respondent was able to obtain these videos. When accessed on October 14, 2024, the video is no longer available. It is submitted that Defendants have admitted that the video should not have been published because Ms. Courville has not removed it.~~

9. ~~[10] Although Courville's release of private information is coupled with a disclaimer that such information should not be used to contact the people in the video, this disclaimer is disingenuous when combined with urgings that incite Courville's followers to "make some noise" in tandem with the release of the private information. The same video insists that anyone could get the same bodycam footage that Courville released; however, when contacted to inquire how the HIPAA protected video had been obtained, the police department confirmed that such video should not have been publicly available and has launched an investigation into the release of that footage.~~

10. ~~[11] https://www.instagram.com/p/Cb5b59wFxIg/?img_index=1 (Accessed September 8, 2023.)~~

8

**Formatted:** Indent: Left: 0.75"

**JA407**

12.



On numerous occasions, Courville has confirmed that her false statements of fact are a wolf in sheep's clothing (or a wolf in pink bunny ears) hiding under a "conspiracy theorist" moniker as a shield to enable deeply dangerous false statements that are actually intended to be seen as true, and thus, are truly harmful. [12] Her followers tend to believe many of these Courville's statements have extra weight because Courville has often touted her background as a lawyer, and she has made numerous statements based on her "education, knowledge, and experience." [13] Importantly, many of Courville's most serious false and misleading accusations about Jevremović have been

---

11. [12] *Cf.* Court's August 10, 2023 Order on MTD, Jevremovic v. Courville, Dkt. 22-cv-4969 (ZNQ)(RLS) at 14 (August 10, 2023 (the "Order").

12. [13] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)

Formatted: Indent: Left: 0.75"

9

12.

~~made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata." [14] Instead, on her GoFundMe page, Courville describes herself as a "lawtuber and independent journalist" and has titled her fundraising campaign the "Facts Ain't Defamation Fund" — which reveals that she releases false information as fact. [15]~~

~~Frighteningly, Defendants have demonstrated that the "That Surprise Witness" team knows no limits, including using fake pornography to create public humiliation and shaming, as when Defendants published a photograph/link [16] falsely suggesting that Jevremović had an OnlyFans [17] page—a profile page which links to pornographic films and photographs that are not Jevremović. As recently as August 8, 2023, Courville's "@thatsurprisewitness" handle on Instagram hosted a post on a moderated comments thread that included Jevremović's home address, which resulted in Jevremović's needing to relocate and go into hiding for a third time since Courville's campaign began. [18] Drones were dispatched to Jevremović's home and strangers began to appear near her front yard, lurking inexplicably, almost immediately after this information being released on Courville's Instagram. [19]~~

---

13. ~~[14] See https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); see also https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); Cf. Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")~~

14. ~~[15] https://www.gofundme.com/f/facts-aint-defamation-fund (Accessed September 9, 2023.)~~

15. ~~[16]~~
~~https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)~~

16. ~~[17] https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).~~

17. ~~[18] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).~~

18. ~~[19] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).~~

10

**Formatted:** Indent: Left: 0.75"

12.

At the same time, followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise" at Courville's urging, including on one of Courville's posts featuring non-public bodycam footage of Jevremović's mother and Jevremović's sister during a mental health emergency:[20]



As Courville's increasing acceptance of new levels of dangerous online doxing and cyber-harassment has escalated, Jevremović has been left no choice but to seek a restraining order to protect her personal safety in California (*See* Exhibit 1, Temporary Restraining Order) and forced to bring the additional claims alleged herein to attempt to preserve Jevremović's business, and any last vestiges of her personal safety, and to preserve the hope of a normal life.

## PARTIES

1.   AURA is~~was~~ a limited liability company organized under the laws of Delaware, with its registered address and principal place of business located at 900 Winslow Way E Ste 300,

---

19.   [20] https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRl ODBiNWFlZA== (Accessed September 6, 2023).

11

12.

Bainbridge Island, Washington 98110-2450, and with no member domiciled in New Jersey.[21] AURA ~~operates~~operated as a wellness supplements and healthcare solutions software business. AURA was closed in February 2024, as no investors were willing to make investment due to Defendants' campaign of misrepresentations and lies about Plaintiffs.

2. Ms. Jevremović~~, an individual,~~ is a resident of the State of California. Ms. Jevremović is the founder and CEO of AURA. She ~~identifies her address as: c/o Neville Johnson, Johnson & Johnson, LLP, 439 North Canon Drive, Suite 200, Beverly Hills, California, 90210 because she~~ and her family have been harassed and received ~~harassment and~~ threats ~~in connection with~~from third parties as a result of the claims in this matter~~, and because her~~. Her home address was disseminated (and unknown third parties ~~have~~ attempted to gain entry while the family was home~~), Jevremović~~). She and her family ~~relocated~~ were forced to relocate their residence ~~multiple times and hired~~, more than once, and were forced to hire a 24-hour security to guard their home. Ms. Jevremović ~~thus respectfully seeks to avoid providing~~therefore has not provided her California address in court filings~~,~~ so she will not be forced to relocate~~.~~ yet again.

3. ~~Defendant Brittany~~Ms. Courville is an individual who resides ~~at 10 Teak Lane,~~ in Princeton, New Jersey, ~~08540, and~~ operates the various "That Surprise Witness" social media channels, and formed the Entity Defendants.

4. ~~Defendant Prem Benipal is an individual who resides at 10 Teak Lane, Princeton, New Jersey, 08540, and has financially supported Courville's activities on her various "That Surprise Witness" social media channels and has himself appeared on the "That Surprise Witness" podcasts with Defendant Courville, and is involved with the operations of the Entity Defendants.~~

---

20. [21] ~~See Docket Nos. 28, 39.~~

12

12.

4. Defendant ~~"That Surprise Witness TV LLC"~~The Entity Defendant was formed in New Jersey, under file number 450708640, on September 30, 2021, to carry out the activities of Ms. Courville ~~and Benipal~~ on the various "That Surprise Witness" social media ~~outlets~~channels.

## JURISDICTION ~~AND VENUE~~

5. ~~Subject matter~~ This Court has jurisdiction ~~is appropriate~~pursuant to ~~this Court under~~ 28 U.S.C. §1332, because complete diversity exists amongst the parties and the amount in controversy far exceeds ~~the jurisdictional minimum~~$75,000.

~~7. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1) because Defendants reside in this District and published a substantial number of actionable statements to the Internet from this District.~~

~~ALLEGATIONS COMMON TO ALL CAUSES OF ACTION~~

~~8. Defendant Courville is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Courville worked at Winston Strawn briefly before she and the firm parted ways over Courville's use of social media. On her LinkedIn profile, describes her profession as "Legal Commentary on YouTube/Social Media Law."~~

~~9. At all relevant times, Defendant Benipal has provided financial support and acted as a de facto producer for various "That Surprise Witness" social media channels— and has himself appeared on the "That Surprise Witness" YouTube with Defendant Courville on numerous occasions and personally made false or misleading statements regarding Jevremović.[22]~~

~~10. Both Individual Defendants have, on information in belief, acted in coordinated~~

---

21. ~~[22] See~~ https://www.youtube.com/watch?v=5EPVSf8Kdlo ~~(Accessed September 7, 2023) (i.e., at 10:07 "Had [Jevremović] left Amanda alone, Amanda might be alive today…".)~~

13

12.

efforts to carry out the business of the Entity Defendant.

11.1. In July 2020, Courville began to affiliate herself with the "Free Britney" movement, which criticized the institution of a conservatorship on celebrity musician Britney Spears. Courville uses variants of the handle "That Surprise Witness" on her various social media accounts. Courville reported becoming "obsessed" and using her newfound "legal expertise" to interpret the associated law, pleadings, and court opinions and orders. She spread this information online via videos, photos, and text commentary. As the "Free Britney" movement gained mass media attention, Courville was invited to give interviews as an attorney. Courville gathered hundreds of followers and viewers during the time that she gave commentary in connection with the Britney Spears conservatorship.

12. However, after Britney Spears' conservatorship was terminated, Courville began to receive less attention, and fewer followers and viewers on her various "That Surprise Witness" social media handles. With her followers/viewers in the mere hundreds following the end of the Spears conservatorship, Courville needed to look for other celebrities and social media personalities that she could latch onto, to siphon off viewership and followers. Courville found the perfect combination of entities to tether "That Surprise Witness" to — with Margera (celebrity), Jevremović (entrepreneur with social media footprint), and AURA — Jevremović's wellness supplements and healthcare solutions software business that had been generating a lot of attention.

**NATURE OF THE CASE**

6. Ms. Jevremović has two sisters who have experienced mental health crises starting from their early twenties. As Ms. Jevremović helped to take care of her sisters, she became familiar with the difficulties of navigating the complexities to get the medical care for mental illness treatment, and to obtain health insurance coverage for inpatient and outpatient treatments.

14

**JA413**

12.

7. As a result, Ms. Jevremović became inspired and decided to pursue a career in the management of mental illness, using what she has learned to help those who struggle with mental illnesses.

13.8. In 2019, Ms. Jevremović founded AURA to help individuals suffering through mental health crises, including addiction. AURA was founded to use technology to scale affordable, high-quality mental health treatment services. The Company was foundedAURA intended to support mental health professionals using theits proprietary technology to track patientthe progress of people undergoing mental health treatment in various ways, inter alia, by recording and analyzing biometric data and providing the information to treatment providers from therapy sessions, connecting patients to therapists via telehealth, guiding users through grounding exercises and coping strategies, providing instructions in mindfulness and meditation, and using virtual reality (a.k.a. "VR") to, e.g., assist with exposure therapy, a technique guided by licensed therapists to extinguish an anxiety response. The CompanyAURA also producesproduced vitamins/supplements for brain health and mood support and has explored various other means of using technology to enable better health outcomes.

9. Ms. Jevremović made tremendous efforts to get AURA off the ground by, among other things, speaking at public and private universities and mental health forums.

10. One of Ms. Jevremović's appearances was on a series of videos produced for a YouTube Channel, Soft White Underbelly ("SWU"), run by Mark Laita, a commercial photographer.

15

**JA414**

12.

11.  Mr. Laita interviews "people who are frequently invisible in society—the unhoused, the sex worker, the chronic drug user, the runaway, the gang member, the poor and the sick."[23]

12.  In or around July 2020, Ms. Jevremović first appeared on SWU in an interview to discuss her connection with mental health and the company she founded – AURA.

13.  Due to Ms. Jevremović's efforts, AURA developed a community of adherents, and it has succeeded in garnering an initial round of investor funding for its development and launch. By or around March 2022, AURA has received $1.5 million investment and was valued at $10 Million dollars.

14.  Through AURA, Ms. Jevremović supplied mental health assistance tools to numerous individualsclinics and ambulatory facilities, free of charge, in order to receive feedback, refine her tools, and develop a viral, word-of-mouth buzz surrounding the product. To that end, AURA had previously provided some services without charge to certain celebrities, influencers, and persons in the public eye—as well as individuals with no public presence as a community social service. Plaintiffs had beenAURA was a successful and growing business in this regardburgeoning startup, until Ms. Courville began to leverage the "That Surprise Witness" treatment against createdMs. Jevremović and AURA, concocting scandals from Courville's new ersatz villains.

15.  Ms. Courville is a New Jersey attorney, licensed in 2021 after graduating from The University of Pennsylvania School of Law in 2020. Ms. Courville worked at Winston Strawn LLP, briefly, before she and the firm parted ways over Ms. Courville's use of social

_____

[23] https://en.wikipedia.org/wiki/Soft_White_Underbelly_(YouTube_channel) (Accessed October 11, 2024.)

16

**Formatted:** Complaint, Left, Line spacing:  single,  No bullets or numbering

**Formatted:** Indent: Left:  0.75"

12.

media. Ms. Courville describes her profession on her LinkedIn Profile as "Legal Commentary on YouTube/Social Media Law."

15.16. On or about September 20, 2021, Ms. Courville and Benipal formed "That Surprise Witness TV LLC" in New Jersey with file number 0450708640.[24]-."

> **Formatted:** Pleading Signature, Left, Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 3.06" + Indent at: 3.31", Tab stops: 0.5", Left + 1", Left

17. Ms. Courville and Benipal have co-hosted many of theirher broadcasts together and otherwise collaborate to carry outthrough one of her YouTube Channel, That Surprise Witness TV.[25]

18. Beginning in February 2022 and through to date, Ms. Courville has posted hundreds, if not thousands, of videos or Instagram posts defaming Ms. Jevremović.

19. A large number of Ms. Courville's individual actions in support of dedicated followers, people who call themselves "that Surprise Army," have heard Ms. Courville's calls to "make noise," and have targeted, harassed, doxed, and cyberstalked Ms. Jevremović, and everyone and everything associated with Ms. Jevremović.

16.20. Ms. Jevremović's life has been turned upside down by Defendants' videos and posts, as well as the Entity Defendant.[26]relentless harassment, doxing, and cyberstalking by Ms. Courville and her followers.

> **Formatted:** Complaint, Left, Line spacing: single, No bullets or numbering

21. As a result of the wrongful conduct of Ms. Courville, Ms. Jevremović has lost "everything."

22. AURA became defunct after Ms. Courville started publishing defamatory statements, and eventually, had to be closed around February 2024, because investors were

---

22. [24] https://www.njportal.com/DOR/BusinessNameSearch/Search/EntityId (Accessed September 5, 2023).
[25] https://www.youtube.com/@ThatSurpriseWitness (Accessed October 11, 2024.)
23. [26] See https://www.instagram.com/p/CvhzNuqAV67/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

> **Formatted:** Indent: Left: 0.75"

17

12.

not willing to invest in AURA and no longer was generating sufficient revenue from the sales of supplements.

23. As a result of Ms. Courville's wrongful acts, Ms. Jevremović has been unable to find consistent employment, because potential employers have been dissuaded from hiring her because any Google search reveals Ms. Courville's false and defamatory statements.

24. Ms. Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Ms. Courville to harass Ms. Courville's mother and make calls to her employer.

25. Ms. Jevremović's husband has also been the target of Defendants' social media campaigns. Ms. Courville published Mr. Jevremović's and his family's information through her platforms, resulting in the harassment of Mr. Jevremović and his family. As of October 2024, Mr. Jevremović and Ms. Jevremović are in the process of finalizing their divorce – yet another result of Defendants' wrongful conduct.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26. In July 2020, Ms. Courville began to affiliate herself with the "Free Britney" movement, which criticized the institution of a conservatorship on celebrity-musician Britney Spears. Ms. Courville used variants of the handle "That Surprise Witness" across her social media accounts. Ms. Courville reported becoming "obsessed" and using her newfound "legal expertise" to interpret the associated law, pleadings, and court opinions and orders. She spread information online via videos, photos, and text commentary. As the "Free Britney" movement gained mass media attention, Ms. Courville was invited to give interviews as an attorney. Ms. Courville gathered hundreds of followers and viewers during the time that she gave commentary in connection with the Britney Spears conservatorship.

18

**JA417**

27. However, after Britney Spears' conservatorship was terminated, Ms. Courville began to receive less attention and had fewer followers and viewers across her various "That Surprise Witness" social media handles. With her followers/viewers in the mere hundreds following the end of the Spears conservatorship, Ms. Courville needed to look for other celebrities and social media personalities that she could latch onto to build her own viewership and followers. Ms. Courville found the perfect combination of entities to tether "That Surprise Witness" to—with Mr. Margera (a celebrity), Ms. Jevremović (an entrepreneur with a social media footprint), and AURA.

MS. COURVILLE SPREADS FALSE STATEMENTS REGARDING

I. ~~DEATH OF~~MS. JEVREMOVIĆ'S INVOLVEMENT WITH AMANDA RABB

28. ~~One such recipient of AURA's free of charge services was Amanda Rabb ("Rabb"), an unhoused, drug-addicted woman residing in Los Angeles' notorious Skid Row who turned to sex work to fund her addiction. AURA provided $250,000 to be used by Rabb for a~~ In or around late July, 2020, Ms. Jevremović appeared for an interview with Mr. Laita on SWU.[27] During that interview, Ms. Jevremović said that she was starting a scholarship program, through a nonprofit entity she formed, Jevremović Institute of Behavior and Brain Sciences ("JIBBS"), by which the recipient would receive one-year of mental health treatment (including detoxification), seven months of in-patient residential care, three months of full-time out-patient treatment while residing at a sober living facility, and two months of job placement training and reduced therapy to gradually integrate ~~Rabb~~ back into society as a productive, healthy member, free of charge.

---

[27] https://www.youtube.com/watch?v=b0twUppY6Z4&t=40s (Accessed October 18, 2024.)

19

JA418

12.

29.    At the end of that interview, Ms. Jevremović proposed that the first recipient of that scholarship would be one of the people that Mr. Laita had interviewed.

30.    On or around August 1, 2020, Ms. Jevremović's interview was released on SWU. Some viewers commented under that interview that they believed Amanda Rabb ("Ms. Rabb") could be qualified as the first recipient.

31.    Ms. Rabb was an unhoused, drug-addicted, woman residing in Los Angeles' notorious Skid Row, who turned to sex work to fund her addiction. In or around July 2020, Ms. Rabb was in jail for assaulting her father, Larry Rabb.

32.    After having seen those comments, discussing the issues with Mr. Laita, and getting to know more about Ms. Rabb, Ms. Jevremović decided to select Ms. Rabb as the first recipient of the scholarship.

33.    In or around August 2020, Ms. Jevremović started working with Mr. Rabb and Ms. Rabb's public defender to help Ms. Rabb obtain the treatment she needed for her substance abuse and mental illnesses.

34.    In or around November 2020, the Court granted the petition for Ms. Rabb to receive treatment. The two treatment facilities where Ms. Rabb later received treatment, Hathaway Recovery Center and Desert Hope Treatment Center ("Desert Hope"), were not in any way owned or controlled by Ms. Jevremović. While Ms. Jevremović connected Ms. Rabb with those treatment centers, Ms. Jevremović and AURA did not, and could not, control the kind of treatment that Ms. Rabb received in the treatment centers.

17.35. Since AURA provided its products to the two treatment centers where Ms. Rabb received treatment, Ms. Rabb was also given the option to use AURA's products at no cost in conjunction with her treatment and therapy under the supervision of health care

20

JA419

12.

professionals. ~~Ms.~~ Jevremović personally funded the majority of ~~Ms.~~ Rabb's treatment, including drawing $212,500 from a personal line of credit, supplemented by $37,241 in donated funds.

~~18.~~36. Tragically, on Sunday, May 9, 2021, staff at ~~the Desert Hope Treatment Center ("Desert Hope"), where Rabb was receiving treatment (a treatment center not in any way controlled or operated by AURA or Jevremović) found~~Desert Hope, found ~~Ms.~~ Rabb unresponsive in her bed and unsuccessfully performed CPR. When an AURA employee contacted the Clark County Coroner's Office, requesting information regarding ~~Ms.~~ Rabb's death, Desert Hope relayed to AURA and ~~Ms.~~ Jevremović that ~~Ms.~~ Rabb only had Tylenol in her system—a fact that was verified by a representative of the Clark County Coroner, Dr. Paul Uribe. Dr. Uribe added that ~~Ms.~~ Rabb's death resulted from natural causes, likely from multiple causes including physical trauma previously endured while abusing illicit substances and harm caused directly by the substances she had formerly abused. However, ~~Ms.~~ Rabb's formal autopsy report states that she died from cardiac arrhythmia with hypertension, obesity, and schizophrenia as contributing factors. ~~Courville conveniently left out that Jevremović made two separate podcast appearances, on Soft White Underbelly [published on Sep 9, 2022] and No Jumper [published on Sep 28, 2022], to clarify that the information Jevremović was based on conflicting information received from Dr. Uribe.~~

~~19.~~ It is not a coincidence that ~~Ms.~~ Courville launched her campaign of lies and misinformation surrounding ~~the Rabb~~Ms. Rabb's tragedy, around the time that ~~Ms.~~ Jevremović became involved as a court-appointed guardian to seek to help Brandon Margera ("Bam" as he is referred to by fans, or hereinafter "Mr. Margera") in his fight with addiction. ~~Some of Margera's unsavory associates such as Beedle and Pingor egged on Courville's efforts as a vigilante~~

21

**JA420**

12.

muckraker. These associates did not want to see Margera get better – these desultory individuals wanted to continue to take advantage of him financially and to borrow on Margera's fame – and they urged Courville to amplify her false claims to further these ends.

20.37. So it was that Courville's thirst for online stardom was wedded with a deliberate effort to destroy Jevremović and AURA. Courville's campaign against Jevremović and AURA was amplified at the urgings of Beedle and Pingor, who sought to wild Courville's influence to punish Jevremović for trying to help Margera in his battle with the demons of addiction.

21.38. Defendants' blitz of false statements regarding Ms. Jevremović and AURA, analyzeddiscussed in detail below, began in February 2022 and has continued through September 2023, a modern media manipulation that has been pervasively toxic and wide ranging.today. While Defendants' social media blackmail effort began impugning withMs. Jevremović and AURA by making false suggestions that Ms. Jevremović had played some part in Ms. Rabb's cause of death, the media offensive has expanded to accusing ofMs. Jevremović of numerous additional humiliating falsehoods. See Count I, infra. Working Defendants' social media adherents – "That Surprise Army" – into a dangerous frenzy, with Courville's adherents now labelling themselves "That Surprise Army", the crusade has escalated to dangerous cyber-harassment and doxing to intimidate Ms. Jevremović into, among other things, dropping this lawsuit and to gain clicks with fear mongering, which has increasingly crossed over from online commentary into real world effects that have caused a well-founded fear in Ms. Jevremović and her family for their personal safety.[28]

---

[28] See, e.g., Hate Speech on Social Media: Global Comparisons, COUNCIL FOR FOREIGN RELATIONS, at https://www.cfr.org/backgrounder/hate-speech-social-media-global-comparisons ("Users' experiences online are

22

**JA421**

12.

22. All the while, Defendants have callously profiteered from this behavior in the form of advertising revenues.

**COURVILLE SPREADS FALSE STATEMENTS REGARDING**

I. **JEVREMOVIĆ'S INVOLVEMENT WITH BAM MARGERA**

23.1. Celebrity entertainer Margera and his wife, Nicole Boyd Margera ("Boyd Margera"), took an interest in AURA in the Winter 2020. Margera has starred in blockbuster Jackass movies and popular television programs. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner circle fight addictions over the previous two decades. Because of his background, Margera and Boyd Margera initially sought to provide their support to Plaintiffs' efforts to mediate addiction and improve related health outcomes. However, when Margera proved susceptible to multiple relapses in his battle with addiction, Margera's family approached Jevremović for intervention assistance.

24.1. On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Margera in connection with his diagnosed medical issues. When Margera's family and friends implored Jevremović to serve as Margera's temporary guardian, Jevremović agreed and took on the responsibility for overseeing Margera's treatment, which was put into effect by Court Order, with no connection to his financials or other aspects of his life. Indeed, despite the fact that the Jevremović was statutorily permitted to collect reasonable sums for her services as guardian, Jevremović has received no compensation whatsoever,

---

mediated by algorithms designed to maximize their engagement, which often inadvertently promote extreme content. Some web watchdog groups say YouTube's autoplay function, in which the player, at the end of one video, tees up a related one, can be especially pernicious. The algorithm drives people to videos that promote conspiracy theories or are otherwise 'divisive, misleading or false,' according to a Wall Street Journal investigative report. 'YouTube may be one of the most powerful radicalizing instruments of the 21st century,' writes sociologist Zeynep Tufekci.") (Accessed September 1, 2023.)

23

**JA422**

12.

directly or indirectly, as Margera's guardian. Rather, Margera's father has been assisting Margera in managing his finances for many years at Margera's request, and Jevremović's appointment as a temporary guardianship never touched upon Margera's money in any way.

25.1. After the court-ordered guardianship terminated, Margera requested that Jevremović continue to serve as his "Health Care Agent," a role in which she assists Margera with his medical care related to his mental health treatment and recovery.

26.1. After learning that Jevremović was involved in Margera's recovery, Courville began publishing videos, photos, and text commentary regarding Margera, labeling her publications "#FreeBam," a reference to Margera's stage name, "Bam."

27.1. Courville began with baseless assertions that Margera's family and Jevremović manipulated a court-imposed guardianship as a tool to access Margera's assets, and that Jevremović is committing and assisting in the commission of criminal acts and that Jevremović is dishonest and promulgates lies.

28.1. At the same time, on a parallel front of Defendants' concerted media campaign, Courville manipulated the background of facts surrounding the Rabb tragedy, and published videos, photos, and textual commentary in which she falsely accused Jevremović of criminal acts and dishonesty.

29.1. Defendants' statements become so prolific that they all but wiped any legitimate results regarding Jevremović and AURA from the first few pages of Google search results regarding either Plaintiff. Defendants directly disrupted AURA's second round funding, causing potential investors actively involved in funding discussions to retreat.

> **Formatted:** Complaint, Left, Line spacing: single, No bullets or numbering

> **Formatted:** Indent: Left: 0.75"

24

**JA423**

12.

30.     Courville's false and misleading statements about Plaintiffs have directly interfered with AURA's business and caused deep financial disruption to Jevremović, directly resulting in order cancellations and the withdrawal of marketing affiliates.

I.     ACTUAL MALICE

31.     Courville knew and ignored the fact that no evidence demonstrated Jevremović to be dishonest and knew and ignored the fact that no evidence demonstrated Jevremović to be a criminal, because her true motivations were to create a smear campaign that would increase views, divert Jevremović from effectively acting as guardian to Margera, ruin Jevremović's business, and eventually seek revenge on Jevremović for filing this lawsuit.

32.     At least at the outset, Courville had a preconceived story line, *i.e.*, that Jevremović must be acting improperly, and Courville purposefully twisted and misrepresented information in whatever manner would accomplish her purpose of dissuading Jevremović from acting as a guardian for Margera.

33.     That purpose changed over time to a more generalized goal of destroying Jevremović and AURA at any cost, out of an obsessive interest in Jevremović that developed over the course of the conduct.

34.     Defendants also purposefully sought to reap the benefits that disinformation and online harassment have in the form of increased viewership and followers for Defendants' social media channels.

35.     Courville was aware that her statements of fact were untrue based on their inherent improbability—such as outlandish and unfounded assertions that Jevremović is involved in human trafficking.

25

**JA424**

12.

36. Courville took steps to deliberately avoid learning the truth regarding Jevremović despite the fact that such information was available to her. For instance, in her most viral video titled "Virtual Reality Hell", Courville asserts that Rabb's father was a molester eight times and suggests that Jevremovic was working with a molester to coordinate Rabb's treatment[29], while at the same time, aware that Rabb had come out to clear her father's name before her tragic death.

39. Courville specifically When it comes to disseminating misinformation regarding Ms. Jevremović's and AURA's help with Ms. Rabb, Ms. Courville created a preconceived storyline. Ms. Courville initially claimed Plaintiffs conspired with Ms. Rabb's father, Larry Rabb, and Mr. Laita, to put Ms. Rabb in jail. Ms. Courville further claimed that Ms. Jevremović and AURA conducted experimental treatment on Ms. Rabb, against Ms. Rabb's will. And, Ms. Courville claimed that Plaintiffs caused, and then lied about, Ms. Rabb's death.

40. Ms. Courville fabricated her eye-catching story by portraying everyone around Ms. Rabb as villains. She published the story through her social media platforms, including, but not limited to, the most viral video on her YouTube channel, called "Virtual Reality Hell: The Amanda Rabb Story,"[30] which was streamed live on July 21, 2022, and is still accessible online, today.

41. The video was published through her YouTube channel: BJ Investigates.[31] Ms. Courville describes her BJ Investigates Channel as follows:

25. [29] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2.
[30] https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed October 14, 2024.)

[31] https://www.youtube.com/@bjinvestigates (Accessed October 11, 2024.)

**Formatted:** Indent: Left: 0.75"

26

**JA425**

12.

BJ sets off to uncover the TRUTH behind some of the biggest scandals in History. No matter what that truth may hold…

37.     Ms. Courville later made a series of videos under the name "Virtual Reality Hell: The Amanda Rabb Story" and posted that her intent in pursuing AURA was specifically "trying to stop [AURA] before it even gets off the ground."[32]

38.     Defendants' videos air advertisements from which they personally profit. Thus, Defendants are incentivized to publish and disseminate shocking and untrue materials[33], materials regarding celebrities, and other materials designed to maximize the views received by the commercials that play during their videos.

39.42.  Courville further solicits and collects donations directly from viewers during her live broadcasts *via* YouTube, and Courville operates a site to solicit donations on gofundme.com that has generated $48,108 in donations thus far.[34] Courville has a Patreon account[35] (an organization that provides users tools with which to fundraise) where she has generated paying subscribers, and where Courville solicits additional funds for in depth "investigations" and videos in furtherance of her campaign. Defendants promote branded "them on both her channel of That Surprise Witness TV" merchandise, deriving income from their activities.[36] Defendants derive income via false, misleading and defamatory statements, that also serve to generate more buzz and more viewers. and BJ Investigates.

---

26.     [32] @That Surprise Witness, Instagram video, at time stamp 7:23 https://www.instagram.com/p/Ca2DuTfqZwt/ (Accessed September 8, 2023.)
27.     [33] https://news.mit.edu/2018/study-twitter-false-news-travels-faster-true-stories-0308 (Accessed September 1, 2023)("[F]alsehood diffuses significantly farther, faster, deeper, and more broadly than the truth, in all categories of information, and in many cases by an order of magnitude.)
28.     [34] https://www.gofundme.com/f/facts-aint-defamation-fund ("Facts Aint Defamation Fund").
29.     [35] https://www.patreon.com/thatsurprisewitness/posts (Accessed August 20, 2023.)
30.     [36] https://thatsurprisewitness.com/products/facts-aint-defamation-black-hoodie (Accessed September 1, 2023.)

27

12.

40.     On July 15, 2022, Plaintiffs contacted Courville in writing to demand retraction of defamatory statements. To the extent Courville disclaimed any of her defamation, her attempts were patently pretextual and obviously insincere. On In a July 2221, 2022, Plaintiffs again contacted Courville in writing to identify further defamatory statements and to demand their retraction. No retraction issued and instead, Courville issued retaliatory false claims that suggested Margera was an investor in AURA[37] — which has never been true.

41.     Courville and Benipal's doxing and harassment goes far beyond any sort of alleged social commentary, and on information and belief, is instead motivated by a desire to bring down Jevremović at any cost, even if it means exposing Jevremović to physical harm.

42.     This conduct has forced Jevremović to file police reports in New Jersey, California, and Oklahoma — and the LAPD Threat Management Unit is currently investigating Courville's actions as potentially criminal instances of stalking.

43.     Jevremović was forced to apply for a Restraining Order in California based on the actions of Courville's followers after they were armed with Jevremović's address, and as a result, Courville is subject to a Preliminary Restraining Order (attached as Exhibit 1), which includes an Order to Cease further social media posting about the protected parties (Jevremović, her sister and Jevremović's husband) with a hearing scheduled for September 25, 2023 to determine if a permanent restraining order will issue on the basis of Courville's malevolent conduct.

---

31.     [37] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)(at Time Stamp 36:45-37:06: "Question whether that is ethical or appropriate for someone [Margera] who is basically an investor in your business [AURA] and now you put them under a conservatorship like I don't know about the actual laws behind that but that doesn't seem appropriate that you could be the someone's guardian or conservator and they have purchased a stake in your business".) Margera has never been an investor in AURA.

28

12.

**WITH INTEREST IN DEFENDANTS' SOCIAL MEDIA CHANNELS WANING, COURVILLE HAS TURNED TO INCREASINGLY EXTREME ONLINE BEHAVIOR TO MAINTAIN VIEWERSHIP AND FOLLOWERS**

44.     Additionally, it would seem that Defendants have resorted to an unabashed campaign of doxing and cyber-harassment in attempts to intimidate Jevremović and prevent Jevremović from maintaining this lawsuit, which was a goal stated by Courville in a YouTube video.[38]

45.     Courville's intent to seek to get Jevremović to drop this lawsuit has been a pervasive theme in the past year with Courville doxing even Jevremović's attorney, providing Neville L. Johnson's image in connection with her video criticizing the lawsuit[39]:



46.     , Ms. Courville's unlawful activities have further evolved into a personal obsession with Plaintiff, and continuously increasingly disturbing incidents of harassment and doxing.

---

[38] June 27, 2023 YouTube Video, at https://www.youtube.com/watch?v=Vh6j4YHIxoE, at 3:45-4:39 (Accessed September 8, 2023.)

[39] https://www.youtube.com/watch?v=JbM360M98Ew&t=3s (Accessed September 8, 2023.)

29

JA428

12.

47.    Over the course of nineteen months of harassment, the Defendants have caused to be published over 300 videos across various forms of social media that are about Jevremović, with a total of 2,802+ minutes (46.7 hours), 8,000,000+ views across YouTube, Rumble, Instagram, Twitter and TikTok, and with over 1000 posts to Instagram and Tiktok about Jevremović. This does not include hundreds of other posts on Instagram and other forms of social media.

48.    In one especially humiliating post on April 22, 2022, Defendants caused to be published a photograph [40] on the @ThatSurpriseWitness Instagram handle, falsely communicating that Courville had found an OnlyFans [41] page for Jevremović—a profile page which links to pornographic films and photographs that are not Jevremović, as pictured below:



34.    [40] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023.)
35.    [41]    https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer    (Accessed September 9, 2023).

30

Formatted: Indent: Left: 0.75"

**JA429**

12.

49.     Courville has amplified the harm [42] to Jevremović from her campaign by including the false allegation regarding Jevremović's involvement in pornography, without any conceivable legitimate purpose except to harass and cause harm to Jevremović's reputation. [43]

50.     Courville has at various times published to the Internet Jevremović's social security number, date of birth, unlisted home phone number, and three of Jevremović's unlisted home addresses [44], her family members' addresses, among many other pieces of highly personal and sensitive information in a coordinated and intentional doxing campaign.

51.     Additionally, Defendants' publication of Jevremović's sisters addresses, resulted in the kidnapping and rape of Jevremović's sister, Dahlia, soon after the publication of Dahlia's otherwise private address.

52.1.     After being besieged in their home in Washington state by Courville's devotees, where Courville encouraged followers to "make some noise" directed towards Jevremović, Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

> **Formatted:** Complaint, Left, Line spacing: single, No bullets or numbering

53.     As recently as August 2023, Defendants' "@thatsurprisewitness" handle on Instagram included a post with comments that included Jevremović's home address (in Courville's moderated comments section), which has resulted in Jevremović's needing to

---

[42] Mary Anne Franks, Unwilling Avatars: Idealism and Discrimination in Cyberspace, 20 Colum. J. Gender & L. 224, 255 (2011) ("[W]omen's unwilling online embodiment is in effect a double-embodiment is one of the reasons that cyberspace harassment of women should be taken seriously. Women are frequently objectified in real life in ways that negatively impact their health, careers and general well-being, and are then re-objectified online in ways that also negatively impact their health, careers and general well-being. In the offline world, women are disproportionately "bodied" over identified with their physical characteristics through their physical vulnerability relative to men and their historical, legal, and social objectification."); https://www.pewresearch.org/internet/2021/01/13/the-state-of-online-harassment/ ("Women targeted in online harassment are more than twice as likely as men to say most recent incident was very or extremely upsetting.")

[44] See, e.g., https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023).

> **Formatted:** Indent: Left: 0.75"

31

12.

relocate and go into hiding, as drones were dispatched to her home and strangers began to appear near her front yard, lurking inexplicably, almost immediately upon this information being released on Defendants' "@thatsurprisewitness" Instagram handle:[45]



54.     Followers of Courville's began calling themselves "that Surprise Army" and plotting to "make some noise" at Courville's urging, including on one of Courville's posts featuring private bodycam footage of Jevremović's mother and Jevremović's sister.[46]

55.     After years of Defendants' assault on Jevremović, many previous collaborators of Jevremović's have fallen away. For example, Jevremović used to collaborate with Chloe Wilkinson on video projects relating to Wilkinson's "DissociaDID" social media channel and supported each other through difficult times, communicating through WhatsApp, for many years, until in August 2022, after Wilkinson became aware of Defendants' content regarding

39.     [45] https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023) (the post has since been edited to remove the comment that included Lima's home address, but the screenshot above includes the post as originally listed).
40.     [46] https://www.instagram.com/reel/Cvkrt1pgM0x/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 6, 2023).

32

**JA431**

12.

Jevremović, Wilkinson publicly denounced, ceased all future collaborations with Jevremović and blocked Jevremović on whatsapp based on Defendants' content. This caused Jevremović to lose a valuable friendship, and to lose further followers and viewers on her own social media channels, as a result of losing this valuable cross platform collaboration.

56.     Likewise, Courville's obsessive harassment and doxing has placed Jevremović in a false light, suggesting in turn that Jevremović is, by turns, a human trafficker[47], the cause of Amanda Rabb's death[48], a plotter out for Margera's money, a pornographic actress, and myriad other mistruths.

57.43. Her followers tend to believe many of these items[49] especially because of Courville's background as a lawyer, where she has made numerous statements based on her "education, knowledge, and experience."[50] Indeed, many of Courville's most serious false accusations have been made without any "panda ears or bunny ears" and without any props like the "sparkly unicorn pinata.".".51 appearing as;

58.     After nearly two years of Defendants' hundreds of postings about Jevremović and AURA, the top search engine results for Jevremović and AURA are now almost all Defendants' false and/or intimidating social media content.

---

41.     [47] https://www.instagram.com/p/CcizM8YlOrq/?img_index=1 (Accessed September 8, 2023.)
42.     [48] May 30, 2022 Instagram Post, at https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed September 8, 2023) (falsely suggesting Jevremovich's "Last ward died in her care and she lied about the cause of death.")
43.     [49]  https://www.socialmediatoday.com/news/new-report-shows-that-facebook-and-youtube-lead-the-way-as-key-sources-of-n/606877/ (Accessed September 8, 2023.)
44.     [50] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed September 8, 2023.) ("To clarify, I am a licensed attorney…".)
[51]  See https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed September 8, 2023); see also https://www.gofundme.com/f/facts-aint-defamation-fund.See https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed October 10, 2024); see also https://www.gofundme.com/f/facts-aint-defamation-fund ("I am a lawtuber and independent journalist"); Cf. Court's August 10, 2023 Order at 13 ("In satirical spirit, Defendant can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.")

33

**JA432**

12.

59.1. At the same time, Defendants' videos regarding Jevremović make up more than half of Courville's top ten most-viewed videos, from which it can be inferred that Courville has operated with the awareness of the economic potential from distributing falsehoods about Jevremović.

60. Accordingly, Defendants' activities have destroyed AURA's abilities to operate professionally or commercially and caused massive financial harm to both Plaintiffs.

61. As a result of the foregoing activities alleged regarding Defendants, AURA has lost countless investors and revenues have declined to near null.

62. Defendants' activities have caused substantial and irreversible damage to Jevremović's career and reputation, and her career as an entrepreneur and healthcare activist has been nearly destroyed.

63. Defendants' activities have destroyed Jevremović's prior income from social media, which was substantial prior to Courville's siphoning off Jevremović's followers/viewers by way of the unlawful activities.

FIRST COUNT

LIBEL

(By Plaintiff Lima Jevremović against All Defendants)

64. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 63 as though fully set forth in this paragraph.

65.1. On May 30, 2022, Courville published via Instagram the statement[52]:

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

---

[52] https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed August 28, 2023.) October 14, 2024.)

34

JA433

12.

66.     This statement is defamatory as it expressly impugns Jevremović's honesty and
is wholly false.

        In this same statement, published alongside photos and videos of Jevremović at
Disneyland with Bam Margera and his family,



44.     In the video, Ms. Courville played a short excerpt of one of Ms. Rabb's six
interviews with Mr. Laita, where Ms. Rabb had stated that her father was a molester.

67.1.     While Ms. Courville refers to showed a short excerpt from a later interview that Ms.
Rabb had with Mr. Laita in Jevremović as a "handler[] and trafficker[]."

68.     This statement is defamatory as it characterizes Jevremović as a trafficker, and
thus a criminal, which she is not.

69.     On April 19, 2022,2021, Ms. Courville published an image⁵³ of Jevremović
reading Amanda's cause of death (as per the information obtained by an AURA employee
from the Clark County Coroner) from a YouTube video to Instagram with the caption:

        I requested the autopsy report and lima is lying in this video. There was NO
        evidence of traumatic injury. There was LOTS [sic] of medication in her system
        (not 'only Tylenol'). The cause of death has nothing to do with 'seizure
        disorder', but rather cardiac arrhythmia. I'vechose not to disclose to her audience
        that Ms. Rabb stated during that very same interview, posted on [Instagram]about
        it.

---

45.     ⁵³ https://www.instagram.com/p/CciSZGpOyPH/ (Accessed August 30, 2023.)

35

**JA434**

12.

70.    This is defamatory insofar as it falsely accuses Jevremović of dishonesty, whereas Jevremović in fact accurately conveyed the information that the Clark County Coroner had conveyed to AURA.

71.45.  On April 19, 2022, Courville published photos[54] of Amanda Rabb's "Report of Investigation" record obtained from the Clark County Coroner, and Courville published comments stating:2021, that Ms. Rabb cleared her father's name.[55]

Two of Lima's lies EXPOSED: (EXCLUSIVE AUTOPSY REPORT) 1. WAYY [sic] more than just Tylenol in her system (including cannibinoids [sic] and barbiturates) 2. Cause of death is NOT 'seizure disorder' or 'caused by beatings and rap[e]s) [sic], but rather, 'cardiac arrhythmia'. #AmandaRabb #FreeBam #LIARS.

72.    These false statements are defamatory insofar as they impugn Jevremović's honesty.

73.    On April 19, 2022, Courville published a video[56] of Jevremović reading Amanda's cause of death (as per the information obtained from the Clark County Coroner) from a YouTube video to Instagram. Courville commented on the video, stating:

So lima from @meetAURA BOLD FACE LIED to [Mr. Laita] and [YouTube] followers when she said Amanda Rabb's cause of death was 'seizure disorder'. I have reached out twice to [Mr. Laita] for comment, and he has ignored me. Why did lima lie?? #FreeBam #AmandaRabb.

74.    This false statement is defamatory insofar as it impugns Jevremović's honesty.

75.1.  On April 3, 2022, Courville published an image[57] on Instagram which purports to list biographical information about Margera, including his putative net worth ($20 Million). Courville commented on the image:

---

46.    [54] https://www.instagram.com/p/CciRdYbuxUX/?img_index=1 (Accessed August 30, 2023.)
[55] https://www.youtube.com/watch?v=rt9OoLSavKM&list=PLBEIBBdgAOAoTfxs3dbbBIwM3FR7vNJQA&index=12 (Accessed October 15, 2024.)
47.    [56] https://www.instagram.com/p/CciQwHOO-Ux/ (Accessed August 30, 2023.)
48.    [57] https://www.instagram.com/p/Cb5b59wFxIg/ (Accessed August 30, 2023.)

36

12.

According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 🤨🤨🤨 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😵😵😵😵 #FreeBam.

Another commenter states:

20 million now, soon to be much less, but it'll all be 'legit,'

to which Courville responds:

but a certain someone will have fresh lips, Botox, and a BBL watch.

Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Courville's comments here to reference Jevremović — in fact, people did comment in response who understood the messages to reference Jevremović.

76. These statements are defamatory insofar as Courville falsely characterizes Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such statements are defamatory as they falsely impute a motive to Jevremović, which most people would find condemnable.

46. On March 30, 2022, Courville published to Instagram an excerpt of a YouTube video[58] in which Jevremović and Larry Rabb, Amanda Rabb's During a 12-minute interview with Mr. Laita, Ms. Rabb spoke fondly of her father, multiple times, including, but not limited to:

I mean I was tripping and the things that I accused my dad of in those videos is not true. I had schizophrenia. I had a mental illness where things I hear voices hallucinations all that. So my dad has done nothing

---

49. [58] https://www.instagram.com/p/CbvTro1JLYk/

37

12.

to hurt me. He's a great guy. He's always been there for me and I really love him. So I just want to put that out there.

Yeah my dad we talk three times a day. I mean he's just such a great guy. I mean I can't wait to leave here. We're probably going to travel around the world together, that's just being sarcastic. But we're probably going to do a lot of fun things together because he's like my best friend now. We talk like three times a day.

And

I miss my dad. I love him so much. He's my rock honestly.

47.    Ms. Courville intentionally lied about, or at the very least recklessly disregarded, Ms. Rabb's relationship with her father, so that Ms. Courville could persuade her audience that Ms. Jevremović conspired with Mr. Rabb – who in Ms. Courville's viewers' eyes, is a molester – to put Ms. Rabb into jail.

48.    Ms. Courville claimed, among other things:[59]

So by July, Lima already knew about Amanda, and was working in concert with Amanda's father who she called a molester, and Mark Laita who was paying her admittedly, knowing to go buy crack with. And they all conspired to make sure that Amanda went to jail.

49.    Her statement was and is false. Ms. Jevremović first found out about Ms. Rabb only after Ms. Rabb was already in jail. Ms. Courville did not provide any basis for her accusation.

50.    Ms. Courville further claimed, among other things:

Mark and Lima conspired to force her and it was easier to choose Amanda as the victim of this coerced treatment because they already had Larry Rabb.

51.    Ms. Courville falsely claimed that Ms. Jevremović and AURA chose Ms. Rabb to be the subject of AURA's experimental treatment, with the cooperation of Mr. Rabb, whom

---

[59] https://www.youtube.com/watch?v=xdfvYfuEUsA (Accessed October 14, 2024.)

38

**JA437**

12.

Ms. Courville portrayed to her audience as a molester.

52.    Ms. Courville additionally claimed, among other things:

Lima didn't tell the truth. Now we've caught her in two lies so far on the timeline. First of all, that the audience was somehow gonna help pick Amanda… Amanda was hand chosen because they had the cooperation of Larry Rabb. You need a family member.

53.    Ms. Courville intentionally hid from her audience, or recklessly disregarded the truth that Mr. Laita specified that he recommended Ms. Rabb to be as the recipient of the scholarship program, due to Ms. Rabb's history, during his interview with Ms. Rabb on April 19, 2021:[60]

Mr. Laita: Well all all I can say is Lima is an amazing woman. Ms. Rabb: She is.
Mr. Laita: Because when she asked me who would I recommend for my chan. She wanted to do something for my channel. She would do this for and I recommended, you know, like you know maybe five or ten people.
Ms. Rabb: Yeah.
Mr. Laita: They would all have been good candidates but I said "or you can choose the hardest of all…"
Ms. Rabb: Right.
Mr. Laita: Which was you.

54.    Ms. Courville further stated:

I operate in one absolute thing and that is truth. Lima didn't tell the truth.

55.    describeDefendants' audience believed in Defendants' fabricated story as truth, and praised Defendants for discovering the truth:

@thedalillama3143 1 year ago
Lima and her company "AURA" is a SCAM. She reminds me of the narcissistic "conservator" in the 2020 movie "I Care A Lot," who ends up attempting to scam the wrong old lady. All 3 of these people are monsters who helped to end Amanda Rabb.

309    Reply

---

[60] https://www.youtube.com/watch?v=rt9OoLSavKM&list=PLBEIBBdgAOAoTfxs3dbbBIwM3FR7vNJQA&index=12 (Accessed October 15, 2024.)

39

**JA438**

12.



**@teetee996112** 2 years ago

BJ is calling out people who profit off of the suffering of others and deserves far more respect for her work

👍 1.6K 👎  Reply

**@kbonvie** 2 years ago

Look how panicked Lima looks at the part where Mark said he had been trying to put Amanda in a conservatorship!!! The timeline is everything. Great job BJ Investigate team

👍 300 👎  Reply

∧ 2 replies

**@kbonvie** 2 years ago

*Larry not Mark

56.     On or about March 29, 2022, Ms. Courville, in her video called "Bam Margera Conservatorship | $HOCK!NG UPDATES," stated that Ms. Jevremović instructed Mr. Rabb to call the police and have Ms. Rabb arrested. Ms. Courville falsely called both Ms. Rabb's arrest and Mr. Margera's arrest in Florida a "setup," and claimed that Ms. Jevremović conspired with others in both instances to force both Ms. Rabb and Mr. Margera into a conservatorship. Specially, Ms. Courville claimed:[61]

Now if y'all remember, what happened with Amanda in the Soft White Underbelly video, this that case is related to this one ***because Lima is involved in both of them***. So how did they get Amanda in jail in that Soft White Underbelly case? Well, she attacked her dad, which they could be all lying about that, I didn't see that. Did y'all see Amanda attack her dad? Because I didn't. But allegedly Amanda attacked her dad and then her dad calls Mark Laita, the produce the YouTuber, Soft White Belly YouTuber and photographer. The dad calls and says hey Amanda just attacked me what should I do. ***On Lima's suggestion***, Mark Laita said you should call the cops and get her arrested. ***Once Amanda was arrested, they put her into a conservatorship and put her forced her into rehab.*** So let's see if this looks familiar.

(emphasis added).

57.     Defendants made the above statements, and other defamatory statements, with actual malice. During the April 19, 2021 interview, that Ms. Courville referenced and cited to

---

[61] https://www.youtube.com/watch?v=dYqBXwmKLxY (Accessed October 15, 2024.)

40

Formatted: Indent: Left: 0.75"

**JA439**

12.

in her own video, Mr. Laita said to Ms. Rabb and the audience:[62]

> so so you, I think assaulted your dad and your dad called me that one night and said, "what do I do Amanda just assaulted me the police are here." And I said, I told your dad like, just put her in jail. She's going to walk the streets barefoot and and probably get killed eventually so putting her in jail for a month or two isn't gonna hurt her. So that's you went to jail and then from jail you went the court decided that you needed to do rehab for one year.

> To which Ms. Rabb responded: "Right."

58. Mr. Laita did not mention Mr. Jevremović, whatsoever, in making the decision to put Ms. Rabb in jail. And Ms. Courville knew of it.

~~77.~~59. On March 30, 2022, Ms. Courville published on Instagram an excerpt of a YouTube video[63] in which Ms. Jevremović and Mr. Rabb, Amanda Rabb's father, described how they managed to transfer ~~Amanda~~Ms. Rabb from jail to a drug rehabilitation facility through the use of Court Ordered Treatment under California law. Pausing and speaking over the video at the one-minute and fifteen-second timestamp, Ms. Courville ~~states~~stated that ~~Amanda's~~Ms. Rabb's public defender is not supposed to: "help you push your scam conservatorship through."

~~help you push your scam conservatorship through.~~

~~78. This statement is defamatory per se insofar as it accuses Jevremović of a scam with reference to attempting to impose an LPS conservatorship on Rabb; this imputes criminality or at least immorality and is thus defamatory.~~

---

[62] https://www.youtube.com/watch?v=rt9OoLSavKM&list=PLBEIBBdgAOAoTfxs3dbbBIwM3FR7vNJQA&index=12 (Accessed October 15, 2024.)

[63] https://www.instagram.com/p/CbvTro1JLYk/ (Accessed October 15, 2024.)

41

12.

79.    On May 7April 26, 2022, Ms. Courville published a photo[64] to Instagram picturing Margera's costars from his television show and movies performing a stunt, and Courville captioned the photo:

[PEOPLE] . . . are mad that I'm uncovering a criminal conspiracy

And

#FREEBAM.

She further published a comment on the photo stating,

Let the #conspiracytheories roll #freebam.

80.    These statements were defamatory as they falsely imply that Jevremović, as a person Courville repeatedly identifies as responsible for Margera's confinement, is a criminal and engaged in a criminal conspiracy.

81.    On May 6, 2022, Courville published a picture[65] of Margera to Instagram, overlayed with an anonymous person's statement criticizing Courville's publications:

the whole #freebam thing is so weird and i [sic] strongly believe that [Courville] is a conspiracy theorist. if [sic] she was an actual lawyer[,] wouldn't she actually be busy? sorry [sic] i'm [sic] not buying it

Courville published a comment in response:

I AM a conspiracy theorist. I have a theory that this is a criminal conspiracy. So they're right! #freebam.

82.1.    This statement is defamatory as it implies that Jevremović is engaged in a criminal conspiracy with respect to her previous involvement with Margera—which is false and misleading, and has caused harm toon Jevremović.

---

64 https://www.instagram.com/p/CdQOLU9OQxl/
65 https://www.instagram.com/p/CdOTKe4OFcG/

42

JA441

12.

83. On May 4, 2022, Courville published an image[66] to Instagram containing mostly text; the text is a republication of a comment previously made by Courville, which of relevance includes:

> . . . I am a licensed attorney who believes [Margera]'s constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by a group of criminal co-conspirators for financial purposes not in [Margera's] best interest. . . . #freebam SPREAD THE WORD.

84. This statement constitutes defamation insofar as it implies that Jevremović, as a person whom Courville repeatedly identifies as central in Margera's treatment, is engaged in a criminal conspiracy and is attempting to co-opt Margera's assets. Further, Courville encourages her audience to further publish her statements.

85. On May 4, 2022, Courville published an image[67] on Instagram regarding Margera, and a user, "pettyhearst," commented thereupon stating:

> I've been a [Margera] fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge[,] I would at least have peace of mind that there is no malicious intent. But they aren't in charge[;] Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating [Margera's parents].

86. Courville published a reply directly to this statement expressing agreement:

> bingo.

87. This statement is defamatory insofar as Courville affirmed the false statements made by the anonymous commenter, thus adopting those comments as her own. These statements assert that Jevremović is manipulating persons for her own gain (impugning Jevremović's honesty) and imply that Jevremović is not acting in Margera's interest, that

---

[66] https://www.instagram.com/p/CdJHr4Yu7WI/
[67] https://www.instagram.com/p/CdJDkylMVI_/

43

**Formatted:** Indent: Left: 0.75"

12.

Jevremović is responsible for Rabb's death ("blood on her hands" — in conjunction with Courville's other defamatory statements with respect to Jevremović and Rabb, this is a reference to Jevremović allegedly being at fault for Rabb's death), and that Jevremović has malicious intent.

88. On April 27, 2022, Courville published on Instagram an image[68] showing a digital message sent to her in which Courville is criticized for spreading falsehoods (i.e., "Irresponsible videos with imagined facts can be very damaging to others"). Courville captioned the image:

SUE ME

and published a comment on the image, stating:

The only facts that were imagined came from Lima Jevremović's lying ass mouth.

89. This false statement is defamatory insofar as it impugns Jevremović's honesty. Courville further published a comment to this image, stating:

if telling the truth is 'damaging to others' and those others are criminals, SO BE IT.

90. This statement is defamatory insofar as it implies that "others" is Jevremović and thus falsely implies that she is a criminal (the "others" referenced is clearly a reference to Jevremović, in context).

91. On April 27, 2022, Courville published on Instagram another image[69] showing a portion of the message sent to her. Courville published a comment associated with the image that reads in relevant part:

---

[68] https://www.instagram.com/p/Cc3Ch4YLTYb/
[69] https://www.instagram.com/p/Cc21n0Isp74/

44

**Formatted:** Indent: Left: 0.75"

**JA443**

12.

Or is it maybe because the public record doesn't agree with the fake[,] imaginary tale surrounding Rabb's death that [the message sender] wants us to believe??.

92. This statement is defamatory as it impugns Jevremović's honesty by implying that she fabricated a "fake[,] imaginary tale" to mislead people. In a separate comment, Courville further answers a question about Jevremović's description of HIPAA's application to Rabb, stating:

because they lie.

93. This is defamatory as it is false and expressly impugns Jevremović's honesty.

94.60. On April 26, 2022, Courville published to Instagram a screenshot[70] showing the "gofundmeGoFundMe" donation page for Ms. Rabb's treatment, which then indicated that no new donations would be accepted. Ms. Courville commented on thisthe photo with the statement:

Thanks for taking down your fraudulent fundraiser limaLima!

95. This statement is defamatory as it falsely imputes criminality to Jevremović, expressly accusing her of fraud.

96.1. On April 25, 2022, Courville published on Instagram an excerpt[71] from a Complaint previously filed by Margera against others affiliated with his television and film career. A commenter stated in response:

You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears]

---

[70] https://www.instagram.com/p/Cc1UinJsWvQ/ https://www.instagram.com/p/Cc1UinJsWvQ/ (Accessed October 21, 2024.)

56. [71] https://www.instagram.com/p/CcxsX9HsR9H/

45

**JA444**

12.

~~would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.~~

~~In response, Courville states:~~

~~Ms.~~~~the plan is to end his life. I'm convinced of it. #savebam.~~

~~97. This statement is defamatory insofar as it alleges that those involved in "the plan" are seeking to kill Margera; in context with Courville's statements regarding Jevremović being central to Margera's treatment, one can reasonably infer that Courville is falsely referencing Jevremović as planning to kill Margera.~~

~~98.~~61. ~~On April 25, 2022,~~ Courville published ~~to~~on Instagram a screenshot72 showing that the "Donate now" button was still present on the "~~gofundme~~GoFundMe" donation page for Ms. Rabb's treatment. Ms. Courville commented~~, asking Gofundme~~:

can you return the funds that have been fraudulently collected from donors on this fundraiser?

~~and stated,~~

…

many people have reported this fraudulent fundraiser and your organization has taken no action.

Elsewhere, Ms. Courville ~~states~~stated that:

we've reported [fraud] a lot

~~99. These statements are defamatory as they falsely accuse Jevremović of criminal behavior—namely, fraud.~~

---

72 ~~https://www.instagram.com/p/CcxeH1hOK1d/~~ https://www.instagram.com/p/CcxeH1hOK1d/ (Accessed October 21, 2024.)

46

**JA445**

12.

100.    On April 19, 2022, Courville posted an image[73] comprising text with the tip line for human trafficking from the National Human Trafficking Hotline, and Courville commented: "#FreeBam." Courville specifically highlighted the phone number and the text stating,

REPORT A TIP with information on potential human trafficking activity.

101.    Courville further added a second photo, depicting a cell phone call to a phone number with five minutes having elapsed, the implication being that Courville had called to report Margera as being trafficked to the National Human Trafficking Hotline. A commenter asks in response:

There [are two] different numbers?!

to which Courville answers:

yeah[,] there's a few[.] I called a different tip line[,] but you can call either one.

102.    This is defamatory because Courville implies that Margera is being trafficked, a criminal act, and in the context of her other statements used in connection with the "#FreeBam" tag, it is clear that she views Jevremović as central to this effort. In the context of her statement that she has called to report Margera's situation as human trafficking and in light of her explicit instructions to a commenter to call, Courville intends this statement to be understood sincerely.

103.    On April 19, 2022, Courville published an image[74] on Instagram containing a short conversation between Courville and a commenter. The commenter accurately stated:

[Margera is] not under a conservatorship[;] he's under a guardianship — big difference.

---

[73] https://www.instagram.com/p/CcizM8YlOrq/
[74] https://www.instagram.com/p/CcibN0JOx89/ (Accessed September 8, 2023.)

47

Formatted: Indent: Left: 0.75"

**JA446**

12.

104.    As recounted in the discussion of Margera above, he was subject to a guardianship imposed in Arizona, and at no relevant time has a conservatorship been imposed. Nonetheless, Courville invokes her credentials, suggests she holds expertise, again provides an inaccurate interpretation of the law, and solicits viewers for her advertisement-supported videos:

62.    Ms. Courville's viewers believe Ms. Courville's false accusations and multiple viewers have commented, among other things, that:

 **sarahmac406** 129w
I can't say I'm surprised. This woman is a criminal and a con artist. It makes me sick that this is happening

4 likes    Reply    • • •

and

 **sadoulethoff** 129w
That's criminal......

6 likes    Reply

63.    Ms. Courville reiterated her accusations and false statements this in the same video, at 18:15, when she stated:

are you a lawyer? Because I am. It's not different. It's exactly the same. Different states just call it different things. Please feel free to check out my Bam Margera playlist on YouTube for more info!

In response, a commenter remarked:

Every state is so different that I think these people use it to confuse people. I wonder if it would help if it was more uniform across the United States?

48

**JA447**

12.

Courville, apparently drawing upon her self-avowed lawyerly expertise, explains:

it's to confuse people so the criminals can keep crim[e ]ing.

105. This is defamatory insofar as, in the context of discussing Margera, it falsely states effectively that the guardianship system is a criminal tool, and thus by implication that Jevremović, as Margera's guardian, must be a criminal.

106. On April 19, 2022, Courville published on Instagram a screenshot[75] of a conversation between unidentified persons regarding Margera; Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker." On April 19, 2022, Courville published on Instagram screenshots[76] of excerpts from a tabloid story about Margera's recovery, with a section of the article highlighted. Courville commented on the screenshot regarding Margera's recovery, in relevant part, by stating: "#FreeBam" and "#EndHumanTrafficking."

107. These statements are defamatory as they imply that Jevremović is trafficking Margera. While these statements might ordinarily be readily understood as hyperbole, Courville's repeatedly holding herself out as a legal expert and her repeated emphasis of her use of legal language in its technical sense would reasonably lead a significant portion of her audience to understand the implications of these statements literally.

108. On April 18, 2022, Courville published a screenshot[77] of a highlighted excerpt from an article discussing the application of Iceland law and whether Margera's and his wife's marriage is legally recognized. A commenter on this image asked:

where are his parents?

---

[75] https://www.instagram.com/p/CciJ3HsuFlX/ (Accessed September 5, 2023.)
[76] https://www.instagram.com/p/CcilldIukcw/ (Accessed September 1, 2023.)
[77] https://www.instagram.com/p/Ccf9UdxuHYc/ (Accessed September 1, 2023.)

49

**JA448**

12.

to which Courville responded:

helping the criminals [sic] girl.

**Formatted:** Font color: Auto

**Formatted:** No Spacing, Left, Indent: Left: 0", Right: 0"

109. This statement is defamatory insofar as Courville's constant association of Jevremović with Margera's treatment naturally leads Courville's audience to understand "girl" in this context to reference Jevremović; these false statements are defamatory insofar they assert that Jevremović is a criminal, which she is not.

110. On April 3, 2022, Courville posted a screenshot[78] of an excerpt of a celebrity tabloid article to Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million New Worth"; Courville commented on the photo, saying:

I heard forced rehab is expensive… I learned that from Lima from @meetAURA. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😊 #FreeBam.

**Formatted:** Font color: Auto

**Formatted:** No Spacing, Left, Indent: Left: 0", Right: 0"

111. By linking the cost of rehabilitation, as described by Jevremović, to the supposed depletion of Margera's net worth, Courville is falsely characterizing Jevremović as depleting Margera's money rather than assisting with treatment for a substance abuse disorder. Such a statement is defamatory as it falsely imputes a profit motive to Jevremović which most people would find condemnable.

112. On March 30, 2022, Courville published to Instagram a screenshot[79] of comments made to Instagram; a commenter asked:

forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

**Formatted:** Font color: Auto

**Formatted:** No Spacing, Left, Indent: Left: 0", Right: 0"

---

[78] https://www.instagram.com/p/Cb5djK4FXNI/ (Accessed September 8, 2023.)
[79] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed September 8, 2023.)

**Formatted:** Indent: Left: 0.75"

50

12.

Courville responded:

I mean… that's my impression, so if you're wrong[,] I am too.

113. Courville thereby explicitly adopted the commenter's false statements. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Jevremović is exploiting celebrities for money. Such false statements are defamatory as they indicate dishonesty and insofar as people hold low opinions of those who exploit others.

114.1. On April 4, 2022, Courville published to YouTube a video entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT"[80] in which she defames Jevremović. At 27:39, Courville describes Margera's transfers between treatment facilities and states:

Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

115. This statement defames Jevremović insofar as Courville repeatedly identifies Jevremović as responsible for Margera's treatment, and insofar as Courville, invoking the authority she commands as a lawyer, describes aspects of Margera's treatment as criminal.

116. On July 15, 2022, Courville published to YouTube a video entitled "Bam's Guardian LASHES OUT | Breaks Silence on #FreeBam — Reaction"[81] in which she reacts to Jevremović's public statements addressing, *inter alia*, Courville's harassment ("the relentless harassment, leaking all of my private information all over the internet, threats to my family

---

[80] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed September 8, 2023October 14, 2024.)

64. [81] https://www.youtube.com/watch?v=5EPVSf8Kdlo (Accessed September 8, 2023.)

51

**JA450**

12.

and clients, constantly reporting my social media accounts and businesses and the over 14,000 emails that have cluttered my inbox"). At 05:05 Courville states

I also know Lima [is] a liar.

117. This is defamatory insofar as Courville expressly impugns Jevremović's honesty without basis.

118. Later in the same video, at 26:08, Courville addresses the discrepancy between Jevremović's description of Rabb's cause of death and the official autopsy report and states:

[Jevremović] can't keep track of her story. And that's what happens when you lie; you have to keep track of the lies you told.

119. This is defamatory insofar as it expressly characterizes Jevremović's statements as lies, when in reality, Jevremovic's alleged false statements emanated from an email with conflicting information which Jevremovic read from in a video Courville cites as inaccurate.[82] Clark County did not provide Jevremovic with the complete autopsy report citing HIPAA law as the reason for not providing the full document – which Courville somehow obtained and publicized in attempts to discredit Jevremović. In reality, Jevremović read from the information she was provided.

120. On July 8, 2022, Courville published to YouTube a video entitled "Bam's Family Breaks Silence on #FreeBam | Jess and April Margera SPEAK OUT."[83] At 6:10, she states:

I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

---

65.  [82] https://www.youtube.com/watch?v=lQTPnbpsAIc (Accessed September 8, 2023.)
[83] https://www.youtube.com/watch?v=Nr3e0RKY6Ig (Accessed September 8, 2023October 14, 2024.)

52

JA451

12.

121. Courville thus emphasizes that her statements are accurate and factual. At 15:59, Courville describes herself as

the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation

122. This is defamatory insofar as it characterizes Jevremović's imposition of a guardianship as human trafficking, a crime. While such statements might ordinarily be susceptible to an interpretation as hyperbole, Courville disclaims hyperbole by use of the term "literal," and she makes clear that if she did not intend for this statement to be taken literally, then she would have been "very explicit that it is my opinion or my belief or my suspicion," and she would "never say [this statement] as if it is a fact if [she didn't] know it to be a fact."

123.1. On April 18, 2022, Courville posted a screenshot[84] of anonymous comments to Instagram, captioning the photo:

Looks like team con is planning to traffic @bam_margera for a "few more months". #freebam

124. This statement is defamatory insofar as it characterizes Jevremović as a trafficker and a con. Given Courville's repeated statements regarding Jevremović's guardianship, viewers would clearly understand "team con" to refer to Jevremović.

125. On July 1, 2022, Courville published a video to YouTube entitled "Virtual Reality Hell: The Amanda Rabb Story."[85] At 31:02 she states:

I operate in one absolute thing and that is truth. Lima didn't tell the truth.

---

[84] https://www.instagram.com/p/Ccf9opHlvNm/ (Accessed October 14, 2024.)

66. [85] https://www.youtube.com/watch?v=xdfvYfuEUsA&list=PLO9hzkqACQ1yoJ_RPLakmoyil7pb84_Uq&index=2

12.

126. By these statements, Courville impugns Jevremović's honesty, and emphasizes that Courville's statements are accurate and factual.

127. In this same video, at 31:31, Courville states:

That was not true. Amanda was hand chosen because they had the cooperation of Larry Rabb.

128. These statements are defamatory insofar as they impugn Jevremović's honesty.

129. On September 10, 2022, Courville published a video to YouTube entitled "Lima Jevremovic Made A Video About Me,"[86] in which she states at 17:53:

I joke about stuff, and I make light of situations, but like, make no mistake, this isn't drama, this is very serious.

130. By this statement, Courville emphasizes that her statements are not jokes or hyperbole but should be understood as accurate and factual by her viewers.

131. Courville reiterates this in the same video at 18:15, when she states:

It's very serious, a woman is dead, a woman has passed under [Jevremović's] care.

132. This statement both defames Jevremović by characterizing her as personally responsible for wrongdoing, i.e., a woman's death, and reiterates that Courville's statements are serious and should be taken as such.

133.64. On July 30, 2023, Ms. Courville published to YouTube a video titled "Missing Twin NEEDS Help | *URGENT*."[87] At 1:37 into the video, she statesstated:

Another story is the Amanda Rabb story and the fact that Lima did take over Amanda's life and healthcare in order to give her an experimental treatment and Amanda Rabb, as you know, did not survive the treatment. She passed away in the treatment center, in the AURA treatment center,

---

67. [86] https://www.youtube.com/watch?v=RtwiHx8_oMA
[87] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023October 21, 2024.)

54

**JA453**

12.

and then Lima lied about how Amanda died and she never really gave a good explanation for that.

134. These false statements are defamatory insofar as they impugn Jevremović's honesty.

135.65. Later in thisthe same video, at 10:55 she statesstated:

This has turned into a me versus everyone, everybody in the family, all the – no, it's the truth versus lies.

136.66. Ms. Courville thus emphasizes thatemphasized her statements areas accurate and factual.

137.67. Ms. Courville also statesstated in thisthe video, at 11:12:

Not only do we have one unexplained death that has happened in Lima's care, we also now have allegations of sex trafficking of people that Lima has purported to be in care of, and Bam Margera told me himself he was held against his will for months without access to a phone, computer, internet, any of it.

138. These statements are defamatory insofar as they characterize Jevremović as a criminal, which she is not.

139. Courville then goes on to claim, "it's about the truth for me," before reading a letter which she states she sent to 25 to 50 different outlets and encourages viewers to also send, which states:

I am a lawyer and independent journalist with a few YouTube channels.[88]

140. Courville thus further relies on her legal background to support that her statements are accurate and factual; they are not.

141. Courville's letter, as read aloud in this video and posted in the video's description via a Google Doc for her followers to send, also states:

---

68. [88] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)

55

12.

[Bam Margera] told me that he was held in rehab against his will and denied medical treatment.[89]

142. This statement is defamatory insofar as Courville identifies Jevremović as responsible for Margera's treatment and characterizes such treatment as criminal.

143. On ~~August 14, 2023,~~ April 27, 2022, Ms. Courville published ~~a video to YouTube entitled "*SHOCKING* Presentation by Lima from AURA (NEW)"[90] in which she references her legal background, stating at 20:50:~~

I think I scored in the 96th or 97th percentile on [the LSAT], like I scored in the top like three or four percent of everyone who took the test.

144. This statement serves to legitimize Courville's statements as factual and accurate, which they are not.

145. In this same video, Courville repeats the same false, defamatory statements detailed herein about Jevremović with regard to Ms. Rapp's death.

146. In an August 2022 video, Defendant Benipal appeared alongside Courville on the "That Surprise Witness" YouTube channel and personally made false or misleading statements regarding Jevremović and regarding Ms. Rapp's death, such as Benipal's statement at the 10:07 mark: "Had [Jevremović] left Amanda alone, Amanda might be alive today…".[91]

147. This statement is defamatory insofar as Courville identifies Jevremović as responsible for Ms. Rabb's death, which has no basis in truth.

148. Jevremović's reputation and business endeavors has been negatively impacted, if not destroyed by Defendants' actions, and she has unduly suffered humiliation, emotional distress, anger, embarrassment, sadness, frustration, fear, loss of income, chagrin, severe

---

69. [89] https://www.youtube.com/watch?v=7d_8hiUYONQ (Accessed September 8, 2023.)
70. [90] https://www.youtube.com/watch?v=Emm1WfIdZbE (Accessed September 5, 2023.)
71. [91] https://www.youtube.com/watch?v=5EPVSf8Kdlo at 10:07 (Accessed September 5, 2023.)

56

JA455

12.

anxiety, stress, shame, mortification, hurt feelings, sleeplessness, and physical manifestations thereof resulting from Defendants' above-described actions. Jevremović's associated damages are in an amount to be proven at trial, but in no event less than the jurisdictional minimum of this Court.

149. Defendants knew or should have known each of these statements to be false at the time the statement was made, and thus, Defendants acted with actual malice sufficient to support an award of punitive damages.

150. Defendants intentionally and maliciously made the above quoted false statements over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications. Defendants made these false statements in a wanton and willful disregard of Jevremović's rights. Defendants knew or should have known at the time that they made the statements that serious harm would arise from Defendants' conduct, and Defendants, with knowledge of the harm caused, continued such conduct. Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter them from similar wrongful conduct in the future.

SECOND COUNT

LIBEL

(By Plaintiff AURA against All Defendants)

151. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 150 as though fully set forth in this paragraph.

57

**JA456**

12.

152.68.       On April 27, 2022, Courville published toon Instagram an image92 showing a digital message sent to her in which the message-sender criticizes criticized Ms. Courville for spreading falsehoods. An anonymous commenter asked,

When has Lima Jevremovich [sic] . . . ever up held [sic] HIPPA [sic]?

69.    Ms. Courville responded:

never not once [sic].

153.   This statement is defamatory insofar as it references Jevremović's work on behalf of AURA, and it asserts that Jevremović, and by extension, AURA, violate the Health Insurance Portability and Accountability Act ("HIPAA"). Because AURA's products are used in mental health treatment, they must (and do) comply with HIPAA. Courville's statements are defamatory *per se* insofar as they falsely allege that AURA is irresponsible with its clients' private information and that AURA does not follow black-letter law. Such statements would damage AURA's esteem and reputation amongst patients, healthcare practitioners, investors, and others, and would lead third parties to think that AURA is incompetent in its business or engages in misconduct in its business operations.

154.70.       On April 27, 2022, Ms. Courville republished an image93 containing another's statements toon Instagram regarding Ms. Rabb, Mr. Margera, and Ms. Jevremović; an anonymous commenter asked:

Are [Ms. Jevremović and AURA,] using homeless people with addictions to experiment on them for their [YouTube] channel?

---

92 https://www.instagram.com/p/Cc22uuMsobQ/ https://www.instagram.com/p/Cc22uuMsobQ/ (Accessed October 21, 2024.)

93 https://www.instagram.com/p/Ce3REs7FNGJ/ https://www.instagram.com/p/Cc3REs7FNGJ/ (Accessed October 21, 2024.)

58

JA457

12.

and Ms. Courville unequivocally affirmed the commenter's statement:

yes.

155.71. By affirming the commenter's statement, Ms. Courville effectively adopted the statement as her own. This false statement is defamatory as it explicitly states that Jevremović and AURA are experimenting on homeless individuals, implying that they are doing something inhumane. It further implies that Jevremović and AURA are dishonest insofar as Courville's statement contradicts Jevremović's stated reason for providing care to Rabb.

156.72. On March 31, 2022, Ms. Courville published toon Instagram an excerpt94 from a video in which Ms. Jevremović read Rabb's cause of death as a seizure disorder. Ms. Courville pausespaused and addsadded commentary, including, at 0:10, Jevremović states in the video:

Rabb never had seizures prior to being homeless.

Ms. Courville commentsfurther commented and statesstated:

But I think another way of saying that is she never had seizures prior to using AURA.

157.73. Ms. Courville thus seeks to falsely implystated that AURA's products caused Ms. Rabb's seizures and potentially caused her death.

158.74. On March 31, 2022, Ms. Courville published on Instagram a photo95 of Ms. Rabb wearing virtual reality headgear and participating in a "Virtual Reality Exposure

---

[94] https://www.instagram.com/p/CbxaISSgRxR/ https://www.instagram.com/p/CbxaISSgRxR/ (Accessed October 21, 2024.)

[95] https://www.instagram.com/p/CbxIzVsOT_D/

4.

59

JA458

12.

Therapy Session using AURA." A person commented on the photo with interest in the virtual reality-based treatment, and Ms. Courville responded:

> the issue is that Rabb was forced to do this treatment under threat of going to prison. She was set up against her will with the help of the government do be used as a test subject and marketing tool.

> I agree with you completely that it 'seems cool'. What's not cool is taking away someone's choice for their own treatment.

159. This statement is defamatory insofar as it falsely states that patients have the AURA system forced upon them as a test subject; such a statement carries negative implications about AURA as people are generally opposed to being forced to test healthcare treatments.

160.75. On April 1, 2022, Ms. Courville published an excerpt[96] from a program for a virtual reality conference which included Ms. Jevremović and her then-company, which worked with virtual reality in jail and prison settings. Ms. Courville commented on the image:

> Seems like Lima has BEEN looking for a way to use experimental virtual reality apps on vulnerable populations that she views as 'problematic'. #InvestigateAURA #FreeBam #RabbRabbAmandaRabb.

161. This statement is defamatory insofar as it characterizes Jevremović and AURA as experimenting on vulnerable populations whom Jevremović purportedly views as "problematic" and insofar as it contradicts Jevremović's stated reasons for working with those suffering from mental health disorders (thereby impugning her honesty); such a characterization is highly offensive and falsely imputes a motive to Jevremović and to AURA which most people would find condemnable.

---

https://www.instagram.com/p/CbxIzVsOT-D/ (Accessed October 21, 2024.)

[96] https://www.instagram.com/p/Cb02KZuAJEe/ https://www.instagram.com/p/Cb02KZuAJEe/ (Accessed October 21, 2024.)

60

JA459

12.

76.     At least one commenter, danielle__trotter, believed Ms. Courville's comments, and responded:

> This is so sick 😭. She's torturing people that are often ignored by society and disgusting it as "help". It's giving me old time my "insane asylum" vibes. Thank you for researching and casting light on this BJ. This is so heavy.

162.77.     On March 30, 2022, Ms. Courville published another excerpt from a video97 in which Ms. Jevremović describesdescribed the use of AURA products in connection with Ms. Rabb's treatment. Ms. Jevremović explainsexplained that AURA provides its products at no cost and uses the data collected for research purposes, and Ms. Rabb would have the opportunity to serve as a case study. Ms. Courville commented on the video:

> Rabb did not consent to being used as a research object. She was court ordered into a conservatorship after Lima, mark Laita, and Rabb's dad SET HER UP. This same woman petitioned to put Bam into a conservatorship.          #FreeBam          #RabbRabbAmandaRabb #InvestigateAURA

163.    These statements are defamatory as they falsely state that Jevremović and AURA forced Rabb to test AURA products — people are generally opposed to being forced to test healthcare tools. Such a statement negatively impacts AURA's reputation.

78.     Defendants' audience believed Ms. Courville's false accusations and commented, for example:

---

97 https://www.instagram.com/p/CbvGodsJLtE/ (Accessed October 21, 2024.)

12.

 **ms.sarah.esq** 132w
She sounds like another Elizabeth
Holmes of Theranos touting fake
technology, killing people with it,
and getting away with murder
because somehow she figured this
shit out. What the absolute fuck.

1 like   Reply   • • •

 **freelizzieharding** 132w
PSYCHOPATHS. Sociopaths. The
abuse of mental health and hygiene
laws to enslave humanity.
#WAKEUPEVERYONE.
#freelizzieharding

 **litigiousgrl** 132w
Disgusting, extremely reckless and
dangerous...

Reply

 **barbielluttman** 132w
This is so evil.

6 likes   Reply

 **gogogadgetadvocatechick** 132w
These pig tails are soooooo
manipulative

12 likes   Reply   • • •

~~164.~~79.      On February 22, 2022, Ms. Courville published to YouTube a video[98] in which she ~~defames~~defamed Ms. Jevremović and AURA. At 49:55, in the video, Ms. Courville falsely ~~states~~stated:

---

[98]   ~~https://www.youtube.com/watch?v=hAPdBs398vc      (Accessed      September      5,      2023.)~~
4.

62

**JA461**

12.

[Jevremović] forces people by court order to use [AURA's] tools.

80.    ~~This statement is defamatory insofar as it falsely states that~~ In fact, Ms. Jevremović and AURA did not have any control of the treatment Ms. Rabb received at the treatment centers, which Ms. Jevremović, ~~on behalf of AURA imposes conservatorships on people as a means to force people to use AURA's tools (from which AURA and Jevremović would purportedly profit); people will generally understand this~~ or AURA did not own or control. Ms. Courville knew her statement to be false and/or acted with reckless disregard for the truth or falsity of the statements.

81.    While Ms. Courville claimed to publish nothing but the truth, she chose not to show to her audience that Ms. Rabb admitted during her April 19, 2022 interview with Mr. Laita that she had been clean of substance abuse for 10 to 11 months at that time, that the treatment she was receiving "really helped," and what Ms. Rabb thought of Ms. Jevremović:

Ms. Rabb: I'm so glad you hooked us up with Lima. She feels like a mom. You know I never had my mom so it feels like such a blessing just to have her in my life, and just have you guys for support, because I really only have my dad so.

Mr. Laita: You couldn't pick somebody better than Lima.

Ms. Rabb: Yeah she's great. Lima's great.

82.    Ms. Rabb further confirmed that "I'm blessed to have you and Lima. You guys are the best, like honestly."

---

https://www.youtube.com/watch?v=hAPdBs398vc (Accessed on September 5, 2023.) When accessed on October 14, 2024, the video is no longer available. It is hereby submitted that Defendants admitted that this video should not have been published because Ms. Courville removed the video at a later date.

63

**JA462**

12.

83.     Defendants' so-called truths are directly contradicted by statements, including those from Ms. Rabb herself, that pre-dated any of the defamatory statements that Defendants made.

II.     **MS. COURVILLE SPREADS FALSE STATEMENTS REGARDING JEVREMOVIĆ'S INVOLVEMENT WITH MR. MARGERA**

84.     Celebrity entertainer Mr. Margera and his wife, Nicole Boyd-Margera ("Ms. Boyd-Margera"), took an interest in AURA in the Winter 2020. Mr. Margera has starred in the blockbuster Jackass movies and popular television programs. Mr. Margera fought a longtime battle with substance abuse and witnessed numerous members of his inner-circle fight addiction over the previous two decades. Because of his background, Mr. Margera and Ms. Boyd-Margera initially sought to provide their support to Plaintiffs' efforts to rehabilitate addiction and improve related health outcomes. When Mr. Margera proved susceptible to multiple relapses in his battle with addiction, Mr. Margera's family approached Ms. Jevremović for intervention assistance.

85.     When Mr. Margera's family and friends implored Ms. Jevremović to serve as Mr. Margera's temporary guardian, Ms. Jevremović agreed and took on the responsibility for overseeing Mr. Margera's treatment, which was put into effect by Court Order, with no connection to his financials or other aspects of his life. On or about June 7, 2021, an Arizona court imposed a one-year temporary guardianship over Mr. Margera in connection with his diagnosed medical issues. Indeed, despite the fact that the Ms. Jevremović was statutorily permitted to collect reasonable sums for her services as guardian, Ms. Jevremović was not reimbursed for funds she advanced for Mr. Margera's treatment and legal fees. Mr. Margera's father had been assisting Mr. Margera in managing his finances for many years at Mr.

64

**JA463**

12.

Margera's request, and Ms. Jevremović's appointment as a temporary guardianship did not touch upon Mr. Margera's money in any way.

86.      After the court-ordered guardianship terminated, Mr. Margera requested that Ms. Jevremović continue to serve as his "Health Care Agent," a role in which she assisted Mr. Margera with his medical care related to his mental health treatment and recovery.

87.      After learning that Ms. Jevremović was involved in Mr. Margera's recovery, Ms. Courville began publishing videos, photos, and text commentary regarding Mr. Margera, labeling her publications "#FreeBam," a reference to Mr. Margera's stage name, "Bam."

88.      Ms. Courville began with baseless assertions that Mr. Margera's family and Ms. Jevremović manipulated a court-imposed guardianship as a tool to access Mr. Margera's assets, that Ms. Jevremović is committing and assisting in the commission of criminal acts, and that Ms. Jevremović is dishonest and promulgates lies.

89.      Ms. Courville continued to publish videos, photos, and textual commentary in which she falsely accused Ms. Jevremović of criminal acts and dishonesty.

    **A.**    ~~defamatory insofar as forcing~~**Ms. Courville Published False Statements that Ms. Jevremović Was a Conservator and Was Able to Access Mr. Margera's Assets, With Knowledge of Their Falsity or a Reckless Disregard for the Truth or Falsity of Those Statements**

90.      Defendants knew, or had a reckless disregard for the truth, that Mr. Margera was under guardianship, and not a conservatorship. Ms. Courville, who often touts her legal credentials, knew or should have known the difference between a guardianship and a conservatorship.

**Formatted:** Indent: Left:  0.75"

65

**JA464**

12.

91.     On or about February 9, 2022, Defendants published the following post on Instagram:[99]

Novak said Margera is currently 'in a programme', while Steve-O went on to explain that he is also under a 'guardianship'.

"It's not a conservatorship, it's a guardianship," he said.

"The conservatorship has financial implications, with a conservatorship they're in charge of all of your money and everything. With a guardianship, they kind of leave your money out of it, and the guardianship they're just like – there's rules you have to abide by and he's forced to be in."

92.     Notwithstanding that the statements published by Defendants expressly stated, among other things, that Mr. Margera was under a guardianship, and that conservatorship has financial implications, while guardianship has not, Defendants commented, among other things:

Bam margera from jackass is in a conservatorship.

His so called friends are erroneously stating that guardianships and conservatorships are not the same thing. The so called friends are mistaken.

93.     As correctly stated in the original post, above, in Arizona, a conservator's "first priority is to marshal and protect the assets of the conservatorship estate,"[100] while a guardian's responsibility is to "ensure that the ward is receiving appropriate medical care,

---

[99] https://www.instagram.com/p/CZwgfgSFxJo/ (Accessed October 10, 2024.)
[100] https://supremestateaz.granicus.com/player/clip/2663?redirect=true (Accessed October 14, 2024.)

**Formatted:** Indent: Left: 0.75"

**JA465**

12.

proper education and their overall health and welfare is protected."[101] Such distinction is easily accessible on the website of Arizona Judicial Branch.[102]

94.  Indeed, the training modules provided by Arizona Judicial Branch specifically provide, in relevant part: [103]

> The law allows a guardian to handle money on behalf of the ward if there is no conservator appointed. In most instances, if the ward receives more than just Social Security income and has significant assets, such as a home, car or brokerage account, then the court will appoint a conservator. ***The Order to Guardian indicates that the guardian shall not manage more than $10,000 on behalf of the ward.***

(emphasis added).

95.  While being informed about the difference between guardianship and conservatorship, Defendants misrepresented the concepts with reckless disregard for the truth of their statements.

96.  On April 19, 2022, Ms. Courville published an image [104] on Instagram containing a short conversation between Ms. Courville and a commenter. The commenter accurately stated:

> [Mr. Margera is] not under a conservatorship[;] he's under a guardianship – big difference.

97.  As recounted in the discussion of Mr. Margera above, he was subject to guardianship imposed in Arizona, and at no relevant time was a conservatorship been imposed. Nonetheless, Ms. Courville invoked her credentials, suggesting she holds expertise,

---

[101] https://supremestateaz.granicus.com/player/clip/2662?redirect=true (Accessed October 14, 2024.)

[102] https://www.azcourts.gov/educationservices/COJET-Classroom/Probate-Guardianship (Accessed October 16, 2024.)

[103] https://supremestateaz.granicus.com/player/clip/2662?redirect=true (Accessed October 14, 2024.)

[104] https://www.instagram.com/p/CcibN0JOx89/ (Accessed October 14, 2024.)

67

**Formatted:** Indent: Left: 0.75"

**JA466**

12.

and again provided an inaccurate interpretation of the law, and solicited viewers for her

advertisement-supported videos:

> are you a lawyer? Because I am. It's not different. It's exactly the same.
> Different states just call it different things. Please feel free to check out
> my Bam Mr. Margera playlist on YouTube for more info!

In response, a commenter remarked:

> Every state is so different that I think these people use it to confuse
> people. I wonder if it would help if it was more uniform across the
> United States?

Ms. Courville, apparently drawing upon her self-avowed expertise, explained: "it's to confuse

people so the criminals can keep crim[e-]ing."

98.    When Defendants' audience questioned the parameter of Ms. Jevremović's

duties as a guardian to Ms. Courville, who touted her background as a lawyer, Ms. Courville

again made false statements regarding Ms. Jevremović's role in the treatment of Mr. Margera,

with reckless disregard for the truth of her statements, knowing that her audience viewed her

as an authority to answer questions involving legal terms.

99.    For example, a user "courtcarls" commented:

> Especially when it's a lawyer who went to UPenn and knows their shit
> to the point that powerful people have tried to silence them! Sounds like
> a damned good lawyer to me 🙌

100.   On or about June 24, 2022, Defendants published the "Order Appointing

Emergency Temporary Guardian With Inpatient Mental Health Authority," entered by the

Superior Court of the State of Arizona, County of Maricopa. The Order, published by

Defendants, included Ms. Jevremović's Application to be appointed as a temporary guardian

– the Application is not accessible to the public.[105] Notwithstanding that the Court Order

---

[105] https://www.instagram.com/p/CfMCi1dOg51/?img_index=1 (Accessed October 10, 2023.)

68

**JA467**

12.

specified that Bam was under guardianship, Ms. Courville posted under the Court Order, among other things:

EXCLUSIVE @bam__margera CONSERVATORSHIP      COURT DOCUMENTS going live TODAY

101.    Defendants published the statement with reckless disregard for the truth or falsity of it, to lay foundation for their preconceived story that Mr. Margera's family and Ms. Jevremović manipulated a court-imposed guardianship as a tool to access Mr. Margera's assets, even though Ms. Jevremović was not authorized to do so – a fact Defendants knew or acted in reckless disregard of the truth or falsity of such statement.

102.    From June 22, 2022 to June 24, 2022, Ms. Courville published, no less than five (5) posts, on her Instagram, documents filed in the Superior Court of the State of Arizona, County of Maricopa, in the matter captioned "In the Matter of the Guardianship of: BRANDON MARGERA."[106]

103.    The Guardianship and Conservatorships webpage of the Maricopa Court Website provides, as the first sentence on this webpage: [107]

A guardian is someone who has the legal authority to care for another, and a conservator is someone who manages another's financial affairs.

---

[106]    *See* https://www.instagram.com/p/CfH7x3rl_T0/?img_index=1 (Accessed October 16, 2024.); https://www.instagram.com/p/CfH9HOulAJw/?img_index=1(Accessed October 16, 2024.); https://www.instagram.com/p/CfH9ZSMlbye/?img_index=1(Accessed October 16, 2024.); https://www.instagram.com/p/CfIEZqjDQ4_/(Accessed October 16, 2024.); and https://www.instagram.com/p/CfMCi1dOg51/?img_index=1(Accessed October 16, 2024.).

[107]        https://superiorcourt.maricopa.gov/departments/superior-court/probate/guardians-and-conservatorships/ (Accessed October 14, 2024.)

69

**JA468**

12.

104. Ms. Courville publishes, until today, that Ms. Jevremović petitioned conservatorship for Mr. Margera, and as such, managed Mr. Margera's financial affairs, with knowledge of its falsity or a reckless disregard for the truth or falsity of those statements.

105. On March 30, 2022, Ms. Courville published to Instagram a screenshot[108] of comments made to Instagram, in which she stated, among other things, "[Lima] filed a petition to put him in a conservatorship in Florida…"

106. A commenter asked:[109]

Aleggedy [sic] right?

Ms. Courville responded:

no. This is documented on court records.

107. By responding to their audience's comment, Defendants reinforced the false and defamatory statements Defendants previously made.

108. A commenter asked:[110]

forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers? If im [sic] wrong on anything[,] please [let me know.]

Ms. Courville responded:

I mean… that's my impression, so if you're wrong[,] I am too.

109. Ms. Courville thereby explicitly adopted the commenter's false statements.

---

[108] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed October 14, 2024.)

[109] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed October 14, 2024.)
[110] https://www.instagram.com/p/CbvFUFAOuoU/ (Accessed October 14, 2024.)

70

**JA469**

12.

110.    Ms. Jevremović does not engage in experiments on the homeless and has no treatment centers; further, the pejorative term "celebrity cash cows" implies that Ms. Jevremović is exploiting celebrities for money.

111.    On April 3, 2022, Ms. Courville published an image[111] on Instagram, which purports to list biographical information about Mr. Margera, including his putative net worth ($20 Million). Ms. Courville commented on the image:

> According to @distractify, [Margera] is worth $20 million. Now who would have an incentive to want to control that money and who would be in a position to do so 🫣 🫣 🫣 but what do I know I'm just a cOnSpIrAcY tHeOrIsT 😂 😂 👀 👀 #FreeBam.

A commenter stated:

> 20 million now, soon to be much less, but it'll all be 'legit,'

to which Ms. Courville responded:

> but a certain someone will have fresh lips, Botox, and a BBL watch.

To which the same commentator responded:

> plus a vehicle, home, medical expenses, all necessary in order to fulfil duties.

112.    Based on her other comments using the term "#FreeBam," her audience would reasonably interpret Ms. Courville's comments here to reference Ms. Jevremović– in fact, people for the purpose of generating did comment in response who understood the messages to reference Ms. Jevremović.

113.    Under the post, Ms. Courville also admitted to her viewer that she only called it "conspiracy theory" to avoid legal responsibility, as follows:

---

[111] https://www.instagram.com/p/Cb5b59wFxIg/ (Accessed October 16, 2024.)

71

**JA470**

12.



114.    On May 4, 2022, Ms. Courville published an image[112] on Instagram regarding Mr.    Margera, to which she commented, in relevant part:

To clarify, I am a licensed attorney who believes @bam__margera's constitutional rights have been violated. Based on my education, knowledge, and experience, he has been set up by *a group of criminal co-conspirators for financial purposes* not in bams best interest.

(emphasis added).

115.    The statement was made is in furtherance of Ms. Courville's defamatory statement that Ms. Jevremović was serving as a conservator, instead of a guardian, of Mr. Margera, and that Ms. Jevremović was able to touch upon Mr. Margera's finances.

116.    The statement was published to Defendants' audience, who believe in Ms. Courville's credential as a licensed attorney who allegedly had conducted a thorough investigation of Mr. Margera's "conservatorship" and her assertion that Ms. Jevremović was in total control of Mr. Margera, including his finances. A user "chili_been" commented, among other things:

---

[112] https://www.instagram.com/p/CdJDkylMVl_/ (Accessed October 14, 2024.)

72

**Formatted:** Indent: Left:  0.75"

**JA471**

12.

…You have since presented Extremely damning evidence that Bam is being taken advantage of by people who want control of his money…

To which another user "simplymonca" responded:

We feel those on team-con have been working hard to discredit BJ so they can keep their profits, whether they be monetary or credit for their own business ventures, or control so that they can do with him as they please.

117.   A user, "rhinestone_.artist0" praised Ms. Courville's videos as "investigates []

so well done btw, amazing investigative journalism, with all the receipts," and commented,

among other things:

If I was in Bam's situation I would want a lawyer like you that was going to fight for me. I guess this person is completely OK with Lima being in charge of his decisions.

118.   A user, "pettyhearst," commented thereupon stating:[113]



**pettyhearst** 127w
I've been a Bam fan for 20 years, and his parents are good people who want the best for their son. While I personally believe conservatorships are never the answer and forced treatment is harmful, if it was just them in charge I would at least have peace of mind that there is no malicious intent. But they aren't in charge, Lima is, and she's a snake oil salesman with blood on her hands. She's clearly adept at manipulation, and I have no doubt she is manipulating Phil and April.

47 likes   Reply   •••

119.   Ms. Courville published a reply directly to this statement expressing agreement:

"bingo."

---

[113] https://www.instagram.com/p/CdJDkylMVl_/ (Accessed October 14, 2024.)

**Formatted:** Indent: Left: 0.75"

12.

**B.      Defendants Continued to Publish Defamatory Statements Based on the False Foundation that Ms. Jevremović Can Access Mr. Margera's Assets**

120.    On May 30, 2022, Ms. Courville published via Instagram the statement[114]:

Lima [Jevremović]. . . LIED ABOUT [AMANDA'S] CAUSE OF DEATH TO MILLIONS of people.

121.    In the same statement, published alongside photos and videos of Ms. Jevremović at Disneyland with Mr. Margera and his family, Ms. Courville referred to Ms. Jevremović as a "handler[] and trafficker[]."

122.    Defendants' viewers and audience demonstrated that they believed Ms. Courville's statements that Ms. Jevremović is a trafficker or criminal by commenting, among other things:

> ryanbohac 123w
> #investigateLima
> #investigateloumtaylor
> #investigateaura #freebam
>
> 3 likes    Reply

123.    On April 25, 2022, Ms. Courville published on Instagram an excerpt[115] from a Complaint previously filed by Mr. Margera against others affiliated with his television and film career. A commenter stated in response:

> You discover so much more each days [sic] that goes by.. I don't trust any of them.. If this man does not come out of this [conservatorship,] they will eventually [k]ill him with prescription drug[s] or disguise street drugs as prescription drugs[;] who knows.. If [Britney Spears] would not be out of this[,] she would prob[ably] be de[a]d by now.. This man need[s] to be saved and free now.. #freebam.

---

72.        [114] https://www.instagram.com/p/CeMD_lAuo7L/?img_index=1 (Accessed August 28, 2023.) October 14, 2024.)
[115] https://www.instagram.com/p/CcxsX9HsR9H/(Accessed October 16, 2024.)

74

JA473

12.

In response, Ms. Courville stated: "the plan is to end his life. I'm convinced of it. #savebam."

124.    On April 19, 2022, Ms. Courville published on Instagram a screenshot[116] of a conversation between unidentified persons regarding Mr. Margera. Ms. Courville commented, describing "[L]ima [J]evremović" as an "alleged trafficker."

125.    One of Defendants' viewers praised Ms. Courville's post as "speaking truth, doing God's work."

126.    On April 18, 2022, Ms. Courville published a screenshot[117] of a highlighted excerpt from an article discussing the application of Iceland law and whether Mr. Margera's and his wife's marriage is legally recognized. A commenter on the image asked:

where are his parents?

127.    to which Ms. Courville responded, referring to Ms. Jevremović:

helping the criminals [sic] girl.

128.    On April 3, 2022, Ms. Courville posted a screenshot[118] of an excerpt of a celebrity tabloid article on Instagram, in which she highlighted a portion of the title stating, "Margera Used To Have A $45 Million Net Worth"; Courville commented on the photo, saying:

I heard forced rehab is expensive… I learned that from Lima from @meetAURA. Who now has @bam__margera in a forced rehab. WhT are the chances!! That's just my conspiracy theory lol 😂 #FreeBam.

129.    By linking the cost of rehabilitation, as described by Ms. Jevremović, to the supposed depletion of Mr. Margera's net worth, Ms. Courville falsely characterized Ms.

---

[116] https://www.instagram.com/p/CciJ3HsuFlX/ (Accessed October 14, 2024.)

[117] https://www.instagram.com/p/Ccf9UdxuHYc/ (Accessed October 14, 2024.)
[118] https://www.instagram.com/p/Cb5djK4FXNI/ (Accessed October 14, 2024.)

75

JA474

12.

Jevremović as depleting Mr. Margera's money, rather than assisting with treatment for a substance abuse disorder.

130. The statement is also a continuation of Ms. Courville's previous defamatory statements that Ms. Jevremović was Mr. Margera's conservator, a role permitted by law to manage Mr. Margera's finances, notwithstanding that Ms. Jevremović was a guardian.

131. Defendants' audience believed Ms. Courville's implication that Ms. Jevremović financially benefited from Mr. Margera's guardianship. A viewer, officialbogwitch, commented, in relevant part: "It's not unreasonable to think that Lima would also wanna sink her claws into his parents and manipulate them out of what little he has left."

132. On April 4, 2022, Ms. Courville published to YouTube a video, entitled "What Happened to Bam Margera? EXCLUSIVE POLICE REPORT"[119] in which she defamed Ms. Jevremović. In the video, Ms. Courville claimed that Ms. Jevremović conspired with Steven Timmer and Mr. Margera's aunt, Antoinette Melissa Dompierre, a/k/a, Aunt Missy, to deceive Mr. Margera into flying to Florida, and then to have police arrive at the hotel that he was staying so that he could be escorted to a treatment center in Florida.

133. Ms. Courville made numerous false statements in that video, including, but not limited to, that Ms. Jevremović was present at the hotel when the police were called to the hotel to "setup" Mr. Margera's arrest.

134. In that video, Ms. Courville read to her audience an online article, titled "Bam Margera allegedly attacked woman while on cocaine, 911 call shows" published on Page Six, on October 13, 2021.[120] The article provided, among other things, that 911 was called because

---

[119] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed September 8, 2023October 14, 2024.)
[120] https://pagesix.com/2021/10/13/bam-margera-attacked-woman-while-on-cocaine-911-call-shows/ (Accessed October 14, 2024.)

76

JA475

12.

Mr. Margera allegedly assaulted a female, stating that "[Mr. Margera] attacked her, grabbed her breast, and she said she thinks he tore her implant." The article further provided that the 911 caller claimed that Mr. Margera was in the room with a prostitute and a "minder" when the alleged assault happened.

135.    While reading the article to her audience, Ms. Courville stated:

Then he referenced the some alleged victim and says he attacked her, grabbed her body part and she thinks he tore her implant. Now I don't know who this alleged victim could be. I don't know who could possibly have implants. I don't know whose implant he could have been accidentally tearing, who maybe was trying to force him to go somewhere against their will. But it's all going to add up real soon…

136.    While making the statements above, Ms. Courville clicked on two pictures of Ms. Jevremović, and zoomed in those two pictures, such as insinuating that Ms. Jevremović was the woman referred in the article:



**Formatted:** Indent: Left: 0.75"

**JA476**

12.



137. Of course, Ms. Jevremović was in the State of Washington when the alleged assault occurred.

138. Furthermore, the article that Ms. Courville was reading from provided, in relevant part:

> The caller described the alleged victim – whose name will not be disclosed out of discretion – as a white woman in her 50s or early 60s.

> And

> Bam was with his aunt in the hotel room. She is a 65-year-old woman, who is clean and sober…

139. As such, it was plain from the article that Ms. Courville was reading from, that Ms. Jevremović, who was in her 30s, could not have been the alleged victim.

140. Ms. Courville, in making that statement, showed a reckless disregard of the truth or falsity of her statements.

141. Defendants' audience interpreted Ms. Courville's defamatory statements as the truth. A user, "ultimateluxe" commented under Ms. Courville's Instagram post of an excerpt

78

**Formatted:** Indent: Left:  0.75"

12.

in which Ms. Jevremović was wearing the same black sweater as in the two pictures that Ms. Courville zoomed in:[121]



_ultimateluxe 132w
Looks like one of her implants was already ripped/leaking but she blamed it on bam, smh

Reply   •••

142.  Another user "myshittyreviews" commented under the same post:



myshittyreviews 133w
She must be the prostitute that got her implant torn. Cause none else was in that room besides Bam and his aunt. 💁

8 likes  Reply

—— Hide all replies



thatsurprisewitness 133w
@myshittyreviews 🤞🏻😅😂
the "minder"

4 likes  Reply

143.  Knowing that her statements were false, Ms. Courville did not correct any of the statements, but reinforced the false statements by replying to her audience to imply that Ms. Jevremović was at the scene and was actually the "minder" in the room, as described by the 911 caller.

144.  At 27:39 of the video, Ms. Courville described Mr. Margera's transfers between treatment facilities and states:

**Formatted:** Complaint, Left, Line spacing: single, No bullets or numbering

[121] https://www.instagram.com/p/CbvGodsJLtE/ (Accessed October 16, 2024.)

**Formatted:** Indent: Left: 0.75"

79

12.

> Honestly, some of it looks criminal. Now I'm a lawyer, but what do I know. It looks criminal to me.

145.    ~~is generally condemnable~~This statement defames Ms. Jevremović insofar as Ms. Courville repeatedly identifies Ms. Jevremović as responsible for Mr. Margera's treatment, and insofar as Ms. Courville, invoking the authority she commands as a lawyer, describes aspects of Mr. Margera's treatment as criminal.

146.    The audience targeted by the video believed Ms. Courville's statements, which aim to imply objective facts that are false – that Ms. Jevremović conducted criminal activity. For example, a viewer commented:[122]

> ~~165.~~    Lima, when acting as guardian, unequivocally breached her fiduciary duty with the placement of Bam into a center that employs an interventionist with documented criminal behavior.

147.    A viewer of another of Ms. Courville's videos about Mr. Margera's "conservatorship," @JessicaC., commented:[123]

> Damn BJ why aren't you practicing law? You need to be a lawyer! You have your degree! You would make an amazing civil rights lawyer! By the look of it a lot of individuals who are dealing with addiction and being trafficked around to different facilities need legal representation! You would be perfect for this! You found your calling!

To which Ms. Courville, again, touted her legal background:

> I am a lawyer. That's how I know this stuff 😊 💕

And

> I can make a LOT bigger difference doing stuff like this. I'm not meant to be an employee. Not my current path. But I do use my degree for civil rights! Just not the traditional way 😜

---

[122] https://www.youtube.com/watch?v=b3beCLgl6aw (Accessed October 14, 2024.)

[123] https://www.youtube.com/watch?v=Cj6xVkd56tU&list=PLxoh8HZ0hbVHpC3RufJee77ZQkrxEOdRh&index=10 (Accessed October 16, 2024.)

80

**JA479**

12.

148.    On July 8, 2022, Ms. Courville published to YouTube a video entitled "Bam's Family Breaks Silence on #FreeBam | Jess and April Margera SPEAK OUT."[124] At 6:10, in the video she stated:

I do not say theories without being very explicit that it is my opinion or my belief or my suspicion. I never say anything as if it is a fact when I don't know it to be a fact.

149.    Ms. Courville thus emphasized that her statements are accurate and factual even when they were not. At 15:59 of the video, Ms. Courville described herself as

the woman who dared use her, volunteer her time to help [Margera] out of a literal human trafficking situation [.]

150.    Audience of the video praised Ms. Courville as "such a good investigator" and spoke highly of Ms. Courville: "Your passion for truth is so refreshing!!" It is clear that Defendants' audience interpreted Ms. Courville's statements as truth, not hyperbole.

151.    A viewer of the video commented:

Lima reminds me of that lady from the movie "I care a lot" that movie is about a woman becoming rich off of putting people in conservatorships and stealing their money or making money off of them.

152.    Defendants' audience believed Defendants' continuous false and defamatory statements about Ms. Jevremović.

153.    On April 18, 2022, Ms. Courville posted a screenshot [125] of anonymous comments to Instagram, captioning the photo:

Looks like team con is planning to traffic @bam_margera for a "few more months". #freebam

---

[124] https://www.youtube.com/watch?v=Nr3e0RKY6Ig (Accessed September 8, 2023October 14, 2024.)
[125] https://www.instagram.com/p/Ccf9opHlvNm/ (Accessed October 14, 2024.)

81

12.

154. On September 10, 2022, Ms. Courville published a video to YouTube entitled "Lima Jevremović Made A Video About Me,"[126] in which she stated at 17:53 of the video:

I joke about stuff, and I make light of situations, but like, make no mistake, this isn't drama, this is very serious.

155. By the statement, Ms. Courville emphasized that her statements are not jokes or hyperbole but should be understood as accurate and factual.

156. Defendants' statements became so prolific that any Google search of Ms. Jevremović or AURA reveals the false accusations and defamatory statements posted by Defendants.

157. Defendants directly disrupted AURA's second round funding, causing potential investors actively involved in funding discussions to retreat.

158. Ms. Courville's false and misleading statements about Plaintiffs have directly interfered with AURA's business and caused damage to Ms. Jevremović, resulting in, among other things, order cancellations and the withdrawal of marketing affiliates.

### III. DEFENDANTS' INTENTIONAL RELEASE OF PRIVATE INFORMATION AND ENCOURAGEMENT OF UNLAWFUL CONDUCT

159. Ms. Courville has, at various times, published Ms. Jevremović's social security number,[127] date of birth, unlisted home phone number, and three of Ms. Jevremović's unlisted

---

[126] https://www.youtube.com/watch?v=RtwiHx8_oMA (Accessed October 10, 2024.)

[127] https://www.instagram.com/p/CfMCi1dOg51/?img_index=2 (Accessed October 14, 2024). The Application for Appointment as Guardian posted by Defendants initially contained Ms. Jevremović's Social Security Number, unredacted. When accessed on October 14, 2024, Ms. Jevremović's SSN was redacted. As such, it is respectfully submitted that Defendants have admitted that posting Ms. Jevremović's SSN is unlawful by redacting the SSN later.

82

**JA481**

12.

home addresses,[128] her family members' addresses, among many other information in a coordinated and intentional doxing campaign.

160. Additionally, Defendants' publication of Ms. Jevremović's sisters' addresses, resulted in putting Ms. Jevremović's sister, Dahlia, soon after the publication of her otherwise private address, in harms way.

161. After being besieged in their home in Washington State by Ms. Courville's devotees, where Ms. Courville encouraged followers to "make some noise" directed towards Ms. Jevremović, Ms. Jevremović and her family relocated to California for their safety and have hired a round-the-clock home security detail.

162. In or around August 2023, Defendants' "@thatsurprisewitness" handle on Instagram included a post with comments that included Ms. Jevremović's home address. Strangers began to appear near her front yard, lurking inexplicably, almost immediately upon the information being released on Defendants' "@thatsurprisewitness" Instagram handle. As a result, Ms. Jevremović had to relocate.

163. There was a video that urged Ms. Courville's followers to "make some noise," after arming her followers with Ms. Jevremović's mother's home address, phone number, and airing a humiliating mental health crisis video—a video that Oklahoma authorities have indicated should not have been available to the public.[129]

---

[128] *See, e.g.,* https://www.instagram.com/p/Cvm7JP5ABLB/?hl=en (Accessed September 6, 2023) When accessed on October 14, 2024, there is no longer publication of Ms. Jevremović's addresses under the post. It is hereby submitted that Defendants admitted that Ms. Jevremović's addresses should not have been published because Ms. Courville removed them at a later date. *See also* https://www.instagram.com/p/CfMCi1dOg51/?img_index=2 (Accessed October 10, 2024).

[129] https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). The Oklahoma police department from which this video footage was obtained has confirmed that this footage is not public information and Courville should not have been able to obtain it, and they have launched an on-going investigation into how Respondent was able to obtain these videos. When accessed on October 14, 2024, the video is no longer available. It

4.

**Formatted:** Complaint, Left, Line spacing: single, No bullets or numbering

**Formatted:** Indent: Left: 0.75"

12.

164.     As a result of Ms. Courville's doxing campaign, Ms. Jevremović's mother lost her job as a Software Engineer, after thousands of people used the information released by Ms. Courville to harass Ms. Jevremović's mother and make calls to her employer.

165.     A collection of fans and Defendants' online supporters participated in private virtual meetings, and called themselves "That Surprise Army." At least one former dedicated member of That Surprise Army declared, under oath, that members of That Surprise Army had a discord server called That Surprise Army that had over 10,000 pieces of information about Ms. Jevremović and everyone she knew, including estimates and timelines of when Ms. Jevremović met certain people and where Ms. Jevremović was located.

166.     According to that former member, the That Surprise Army believed that they were fighting for justice and gathered on the server to investigate Ms. Jevremović and her family on behalf of Defendants.

167.     Ms. Courville communicated with her followers and encouraged them to "do their own research" while sharing private information with her followers about Ms. Jevremović and her family. Indeed, Defendants' numerous social media posts, videos, and directives, led Defendants' followers to believe that Ms. Jevremović was involved in criminal activities as Ms. Courville claimed.

168.     Feeling compelled to assist Ms. Courville, no less than one member obtained Ms. Jevremović's mother's address, from a video published by Ms. Courville in which she also detailed Ms. Jevremović's sister's private medical information.

---

is submitted that Defendants have admitted that the video should not have been published because Ms. Courville has not removed it.

84

JA483

12.

169.    In one of her videos containing the police intervention crisis footage, Ms. Courville persuaded thousands of her viewers that Ms. Jevremović's sister urgently required rescue from her own mother and from Ms. Jevremović.

170.    In or around late 2023 or early 2024, that former member of That Surprise Army reached out to Ms. Courville privately via a direct message ("DM"), informing Ms. Courville that she had gone to the home of Ms. Jevremović's mother to look into the accusations and Ms. Courville responded by stating:



**Formatted:** Indent: Left:  0.75"

**JA484**

12.

171. Defendants' viewers believed they were doing the right thing because Ms. Courville claimed to be an attorney that knows the law and is advising her audience on what they are legally allowed to do to bring justice to "powerful criminals."

## IV. ACTUAL MALICE

172. Ms. Courville made and published each of the many false statements with the knowledge that the statements were false when made, and/or with reckless disregard for the truth or falsity of the statements.

173. Ms. Courville touted her background as a lawyer, and advised her many viewers and listeners that her many false and defamatory statements should be believed because she has made the statements based on her "education, knowledge, and experience."[130] Ms. Courville has posted, among other things, her Attorney ID, and Bar Admission Date in the State of New Jersey.[131] She has touted to her audience that she "graduated from Ivy League law school."[132]

174. In addition to the many false and defamatory statements described above, in one especially intentionally humiliating post made on April 19, 2022, Defendants published a photograph[133] on the @ThatSurpriseWitness Instagram page, which appeared to be a screenshot of a female's account, whose name is "Lima Mora," as below:

---

[130] May 4, 2022 Instagram Post, at https://www.instagram.com/p/CdJDkylMVl_/ (Accessed October 10, 2024.) ("To clarify, I am a licensed attorney…".)

[131] https://www.instagram.com/p/Cf4a8lolr1N/(Accessed October 10, 2024.)

[132] https://www.instagram.com/p/Cf4brvtlxV0/?img_index=1 (Accessed October 10, 2024.) ("that time I graduated from Ivy League law school.").

[133] https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed October 10, 2024.)

86

**JA485**

12.



Lima Mora

Add Friend    Message

175.  Since Defendants posted this picture amid their efforts to vilify Ms. Jevremović, Defendants' viewers immediately realized that Ms. Courville was saying that the female in the picture is Ms. Jevremović.

176.  Various viewers of the post also pointed out that the picture shows an OnlyFans account, and commented, for example:

Omg she's on only fans too? Wtaf??

She got an onlyfans.

And

Looks like only fans acct.

177.  Defendants' viewers reasonably interpreted Defendants' post as Defendants telling their viewers that Ms. Jevremović has an OnlyFans account.

178.  Ms. Courville furthered her campaign against Ms. Jevremović by including the false statement that Ms. Jevremović is involved in pornography, without any conceivable legitimate purpose to say so except to harass and cause harm to Ms. Jevremović's reputation.

87

**Formatted:** Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 3.06" + Indent at: 3.31"

**Formatted:** Indent: Left: 0.75"

**JA486**

12.

179.    After more than three years of Defendants' thousands of postings about Ms. Jevremović and AURA, the top search engine results for Ms. Jevremović and AURA are now almost all Defendants' false and otherwise intimidating social media content.

180.    At the same time, Defendants' videos regarding Ms. Jevremović make up more than half of Ms. Courville's top ten most viewed videos, from which it can be inferred that Ms. Courville has operated with the awareness of the economic potential from distributing falsehoods about Ms. Jevremović.

181.    To date, Defendants are continuing their defamatory statements against Plaintiffs. Ms. Courville stated to her audience, through a video streamed on June 27, 2023:

> they're going to sue me for telling the truth, you better not have no skeletons in your damn closet. You better not have a single femur bone in your closet because I'm gonna find it. Oh yes I am. Stuff you never ever thought that I was gonna find I'm gonna find it and then if I find it and it was public which almost every single thing I ever find is public I'm gonna tell every damn person about it who will listen. Yes, I will. Do not sue me for telling the truth bitch! I bet you learned your lesson now! Didn't you? So, long story short I've spent the greater part of the last two weeks probably 10 to 15 hours a day searching every single possible nook and cranny–not only of the internet but of the physical field of reality in order to find every single skeleton, every femur, every skull, every kneecap, every pinky toe bone…

182.    Defendants know that what they are disseminating is false. Defendants are betting that they can say false and defamatory statements without repercussions.

# FIRST COUNT

## Libel

**(By Plaintiff Lima Jevremović against All Defendants)**

183.    Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 182 as though fully set forth in this paragraph.

88

**JA487**

12.

184.    Defendants published defamatory statements of and concerning Ms. Jevremović, including, but not limited to the false statements referenced in Paragraphs 26 to 182, above.

185.    Defendants published to the public, including but not limited to their many viewers, these false statements through their social media channels.

186.    All of Defendants statements are false and/or made with reckless disregard for the truth or falsity of these statements.

187.    Ms. Jevremović's reputation and business endeavors have been negatively impacted, if not destroyed, by Defendants' statements.  She has suffered humiliation, emotional distress, anger, embarrassment, frustration, fear, loss of income, severe anxiety, stress, shame, mortification, sleeplessness, and other physical manifestations thereof resulting from Defendants' above-described actions.

188.    Defendants intentionally and maliciously made the false and defamatory statements, referenced in Paragraphs 26 to 182, above, since February 2022, in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications.

189.    Defendants published their statements with the knowledge of the falsity of those statements or a reckless disregard for the truth or falsity of these statements, and thus, Defendants acted with actual malice sufficient to support an award of punitive damages.

190.    Defendants false and defamatory statements, including but not limited to those statements referenced in Paragraphs 88, 89, 114, 121, 122, 124, 144, 145, 146, 174-175, and 178, constitute libel *per se.*

**Formatted:** Indent: Left:  0.75"

89

**JA488**

12.

191.    As a direct and proximate result of Defendants published false and defamatory statements to third parties about Ms. Jevremović, which they knew to be false and/or acted in reckless disregard of the truth or falsity of those statements, Ms. Jevremović has been and continues to be damaged.

## SECOND COUNT

### Libel

### (By Plaintiff AURA against All Defendants)

192.    Plaintiffs incorporate the allegations set forth above in Paragraphs 1 through 191 as though fully set forth in this paragraph.

193.    Defendants published defamatory of and concerning AURA, including, but not limited to the false statements referenced in Paragraphs 26 to 182, above.

194.    Defendants published to the public, including but not limited to their many viewers, the false statements through their social media channels.

195.    All of Defendants statements are false and/or made with reckless disregard for the truth or falsity of these statements.

166.196.    AURA's reputation has been negatively impacted due to Defendants' above-described actions; AURA has lost substantial investments, opportunities, and income resulting from Defendants' defamation. and AURA and its CEO, Ms. Jevremović, have been exposed to hatred, contempt, and the loss of the goodwill and confidence felt toward them by others, because of Defendants' libelous statements.

197.    Defendants intentionally and maliciously made the above quoted false statements referenced in Paragraphs 26 to 182, above, over several months in an attempt to benefit themselves by gaining more online attention and compensation for more views on their social media publications.

90

**JA489**

12.

167.198.     Defendants ~~made these false~~ published their statements ~~in wonton and willful disregard of AURA's rights,~~ with knowledge of ~~their~~the falsity of those statements or a reckless disregard for ~~whether the statements were true. Defendants knew or should have known at~~ the ~~time they made the~~ truth or falsity of those statements ~~that serious harm would arise from their conduct~~, and thus, Defendants~~,~~ acted with ~~knowledge of the harm caused, nevertheless continued such conduct unabashedly. Defendants' outrageous, egregious, and exceptionally wrongful behavior should be punished in the form of punitive damages to deter them from similar wrongful conduct in the future.~~actual malice sufficient to support an award of punitive damages.

168.   ~~These~~ As a direct and proximate result of Defendants publishing false and defamatory statements ~~expose~~about AURA ~~and its CEO, Jevremović, to hatred, contempt, and the loss of the goodwill and confidence felt toward them by others.~~

169.   ~~Furthermore, these~~ , which they knew to be false and/or acted in reckless disregard of the truth or falsity of those statements ~~have a tendency to injure, and did in fact injure, Plaintiffs' business operations in the addictions recovery and mental healthcare industry, including but not limited to their use of therapist-guided exposure therapy implementing virtual reality technology and telehealth solutions.~~

170.   ~~These statements are entirely false. As a result of Defendants' publications, Plaintiffs have suffered reputational harm in an amount to be proved at trial.~~

171.199.     ~~As a result of Defendants' publications~~, AURA has ~~lost business opportunities in an amount~~been and continues to be ~~proven at trial.~~damaged.

172.   ~~Defendants' conduct in publishing and republishing the above statements was actuated by actual malice and/or accompanied by a wanton and willful disregard of the effect~~

91

**JA490**

12.

their statements would have on Plaintiffs' reputations, which foreseeably might be harmed by Defendants' republications. Such conduct entitles Plaintiffs to an award of punitive damages under N.J.S.A. 2A:15-5.9, *et seq.*, to both punish and deter Defendants' wanton conduct in an amount to be proven at trial.

## THIRD COUNT

### Invasion of Privacy – Intrusion upon Seclusion

**(By Plaintiff Lima Jevremović against All Defendants)**

173.200.    Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 172199 as though fully set forth in this paragraph.

174.    Plaintiff has alleged (i) an intentional intrusion (ii) upon the seclusion of another that is (iii) highly offensive to a reasonable person.[134]

175.201.    Plaintiff has successfully alleged an intentional intrusion, where she was substantially certain she lacked any indicia of consent to commit the intrusive acts alleged herein. Plaintiff has alleged that Defendants releasedDefendants intentionally intruded upon Ms. Jevremović's seclusion by, among other things, intentionally releasing personal information without any permission to do so, and to the contrary, over Plaintiff's vehement objections.

202.    Specifically, Defendants have released highlypublished personal, and private information regarding PlaintiffMs. Jevremović and her family, including Plaintiff'sMs. Jevremović's family's home addresses, the name and address of the church PlaintiffMs. Jevremović attends in Los Angeles, Plaintiff'sMs. Jevremović's phone number, and

---

73.    [134] *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 609 A.2d 11, 17 (1992) (citing Restatement (Second) of Torts § 652B.

92

12.

Plaintiff's Ms. Jevremović's social security number,[135] as well as the names and photos of Plaintiff's Ms. Jevremović's husband, sisters, mother, and mother-in-law.

203. Defendants' intentional release of Ms. Jevremović's social security number to her viewers, alone, constitutes a violation of N.J.S.A. §58:8-164.

176.204. Moreover, Defendants' release of Plaintiff's Ms. Jevremović's personal information, and encouragement of Ms. Courville's followers[136], to act on that information,[137] has caused further intrusions and invasions into Plaintiff's privacy via death threats and text messages of dead bodies from unknown numbers, strangers showing up uninvited and unannounced at Plaintiff's Ms. Jevremović's home, and drones entering and surveilling Plaintiff's Ms. Jevremović's property to watch Plaintiff Ms. Jevremović and her family.

177. Plaintiff The public has alleged herein that Defendants have intruded into Plaintiff's otherwise private seclusion that the plaintiff has regarding her person or private life. Specifically, Defendants have intruded upon Plaintiff's family life, home no legitimate interest in learning of Ms. Jevremović's personal and property, private information, and church the publication of Ms. Jevremović's personal and religious life.

178.205. The above-listed intrusions on Plaintiff's privacy, such as the release of her private contact private information and social security number, would undoubtedly be highly offensive to the ordinary a reasonable person.

---

[135] https://www.instagram.com/p/CfMCi1dOg51/?img_index=2 (Accessed October 14, 2024). The Application for Appointment as Guardian posted by Defendants initially contained Ms. Jevremović's Social Security Number, unredacted. When accessed on October 14, 2024, Ms. Jevremović's SSN was redacted. As such, it is respectfully submitted that Defendants have admitted that posting Ms. Jevremović's SSN is unlawful by redacting the SSN later.

74. [136] June 27, 2023 YouTube video with Courville touting the contributions of her followers to her activities in digging into Jevremovich's personal life: https://www.youtube.com/watch?v=Vh6j4YHIxoE.

[137] June 27, 2023 YouTube video with Ms. Courville touting the contributions of her followers to her activities in digging into Jevremovich's personal life: https://www.youtube.com/watch?v=Vh6j4YHIxoE.

12.

179.206.    ~~Plaintiff has suffered immense emotional and financial harm as a~~As a direct and proximate result of Defendants' ~~invasion into her privacy as described herein~~wrongful conduct, Ms. Jevremović has suffered and continues to suffer emotion and financial harm.

### FOURTH COUNT

### Invasion of Privacy – False Light

### (By Plaintiff Lima Jevremović against All Defendants)

180.207.    Plaintiffs ~~hereby~~ incorporate the allegations set forth above in Paragraphs 1 through ~~179~~206 as though fully set forth in this paragraph.

181.208.    Defendants ~~gave publicity to~~exposed Ms. Jevremović in a ~~matter concerning Plaintiff that Defendants knew was~~ false. light, by making defamatory statements about Ms. Jevremović's character, history, activities and beliefs.

182.209.    Defendants either knew that the publicized material was false and would place ~~Plaintiff~~Plaintiffs in a false light or acted with reckless disregard as to whether the publicized defamatory statements were false and/or with reckless disregard for the false impression created by the publicized defamatory statements. ~~Specifically, Defendants made the defamatory statements and publications regarding Plaintiff with knowledge or reckless disregard of their falsity as described in Counts I and II.~~

210.    The defamatory statements made by Defendants so misrepresented ~~Plaintiff's~~Ms. Jevremović's character, history, activities, and/or beliefs that a reasonable person in Plaintiff's position would find the material highly offensive. ~~In fact, significant numbers~~

183.211.    As a direct and proximate result of ~~people who have viewed these defamatory statements have been so affected by them that Plaintiff~~Defendants' wrongful

94

12.

conduct, Ms. Jevremović has ~~received death threats and text messages of dead bodies from unknown numbers, strangers have shown up uninvited~~suffered and ~~unannounced at Plaintiff's home and recently, drones entered Plaintiff's property and hovered above Plaintiff and Plaintiff's mother~~continues to ~~surveil them. A reasonable person would not only find Defendants' statements highly offensive but would be offended and shocked by the effect Defendants' statements have had on other persons, and Defendants' continuing to make such statements knowing that Plaintiff faced such egregious threats to her safety based thereon.~~damages.

~~184.   The publicity caused by Defendants' defamatory statements was the cause of injuries, damages, and/or losses sustained by Plaintiff.~~

## FIFTH COUNT

~~Domestic Violence Act ("DVA")   Harassment (N.J.S.A. § 2C:25-19(a)(13))~~

~~(By Plaintiff Lima Jevremović against All Defendants)~~

~~185.   Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 184 as though fully set forth in this paragraph.~~

~~186.   Harassment under the DVA occurs where a person with purpose to harass another, "[m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. § 2C:33-4(a). "[A]nnoyance" under that subsection means to "disturb, irritate or bother." *State v. Hoffman*, 149 N.J. 564, 580 (1997). The provision in N.J.S.A. 2C:33-4(a) prohibiting conduct communicated in any manner likely to cause annoyance or alarm encompasses where those modes of communicative harassment "are also invasive of the recipient's privacy." *Id.* at 583.~~

95

12.

187.    The Act further provides that the court shall consider, among other factors: the existence of immediate danger to person or property and the existence of a verifiable order of protection from another jurisdiction. N.J.S.A. 2C:25–29(a). Here, a Temporary Restraining Order is attached as Exhibit 1, that has been issued pending a hearing on September 25, 2023, based on the harm that has been caused to Plaintiff in California. *See* Exhibit 1.

188.    As alleged in multiple instances of harassing conduct above, Defendants have falsely suggested that Jevremović had an OnlyFans page with pornographic films and photographs (she does not and never has), which false suggestion would not have been made except as to cause annoyance or alarm, and which was invasive of the Plaintiff's privacy.

189.    As alleged above, Defendants have published to the Internet Jevremović's social security number, date of birth, home phone number, multiple private home addresses of Jevremović and her family members, along with urgings to her followers that would be suggestive that the pieces of highly personal and sensitive information are to be used in nefarious ways. Even though Courville has occasionally issued brief disclaimers regarding the usage of this personal identifying information, the context of the release of the information would suggest that the sole purpose of such releases was to frighten, intimidate and harass Jevremović.

190.    As a result, Plaintiff and her family have been forced to relocate from their homes multiple times, hire around-the-clock security, and have obtained a Temporary Restraining Order based on the aforementioned conduct of Defendants (*See* Exhibit 1), that has thus caused Plaintiff financial harm, as well as pain and suffering.

**SIXTH COUNT**

**Domestic Violence – Cyber-harassment (N.J.S.A. § 2C:25-33-4.1)**

**(By Plaintiff Lima Jevremović against All Defendants)**

96

| | |
|---|---|
| **Formatted:** Font: Not Bold, Font color: Auto | |
| **Formatted:** Heading 1, Left, Line spacing: single, Don't keep with next | |
| **Formatted:** Indent: Left: 0.75" | |

12.

191. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 190 as though fully set forth in this paragraph.

192. Cyber-harassment under the DVA occurs where making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person, and knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person; or threatens to commit any crime against the person or the person's property. N.J.S.A. § 2C:25-33-4.1.

193. Here, among the other allegations pleaded above, Courville did post to her @ThatSurpriseWitness Instagram posted on April 22, 2023, which on information is operated by Defendants Courville, Benipal, and That Surprise Witness TV LLC, a lewd photograph[138] falsely suggesting that Jevremović had an OnlyFans[139] page—and linking to pornographic films and photographs that are not of Jevremović; Defendants knowingly used such lewd and indecent material solely with the purpose of causing emotional harm to Jevremović, and without any legitimate purpose.

194. Defendants combined to conduct their outrageous, cruel, and malicious doxing and cyber-harassment of Plaintiff, including the actions mentioned herein, with the knowledge that their publications could cause Plaintiff to suffer harassment and humiliation.

195. The acts of Defendants resulted in damage to Plaintiff.

## SEVENTH COUNT

---

138 https://www.instagram.com/p/CciejDiFsTl/?utm_source=ig_web_copy_link&igshid=MzRlODBiNWFlZA== (Accessed September 9, 2023).

139 https://www.complex.com/life/a/joshua-espinoza/what-is-onlyfans-explainer (Accessed September 9, 2023).

97

12.

**Intentional Infliction of Emotional Distress**

**(By Plaintiff Lima Jevremović against Defendant Brittany Jeream Courville)**

~~196.~~212.	Plaintiffs ~~hereby~~ incorporate the allegations set forth above in Paragraphs 1 through ~~195~~211 as though fully set forth in this paragraph.

~~197.	The New Jersey Supreme Court in the seminal case *Buckley v. Trenton Saving Fund Soc.* sets forth the common law cause of action for the tort of intentional infliction emotional distress: one must intentionally or recklessly commit an extreme and outrageous act which proximately causes plaintiff severe emotional distress. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).~~

~~198.	The nature of the act or conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement, Second, Torts, § 46).~~

~~199.	Similarly, there is a rather rigorous, while objective, standard for how severe the distress must be that is suffered by plaintiff: "so severe that no reasonable man could be expected to endure it." *Cole v. Laughrey Funeral Home*, 376 N.J.Super. 135, 148 (App.Div.2005) ("The tort of intentional infliction of emotional distress requires emotional trauma that is severe.").~~

~~200.~~213.	~~Here, there is no doubt that Defendants'~~Ms. Courville's distribution of ~~Plaintiff's~~Ms. Jevremović's home address, her mother's home address, and myriad other releases of private information, including ~~Plaintiff's~~Ms. Jevremović's phone number and social security number, ~~was released~~ with the aim of inflicting devastation and emotional distress on ~~Plaintiff~~Ms. Jevremović and her family ~~—~~ - and that ~~Defendants'~~Ms. Courville's' actions did in fact cause devastation and emotional distress.

98

JA497

12.

201. Further, the publication of a photo falsely suggesting Plaintiff was distributing pornographic materials via OnlyFans was but one example of the conduct alleged above, plainly released to torment and distress Plaintiff; Defendants' conduct in publicly touting this obscene lie did in fact cause devastation and emotional distress.

214. Defendants combined to conduct their outrageous, cruel, and malicious Ms. Jevremović has suffered, and continues to suffer, emotional distress as a result of Defendants' wrongful conduct. She regularly sees a psychiatrist and a therapist. In April 2024, Ms. Jevremović was diagnosed of depression. The emotional distress that Ms. Courville has inflicted on Ms. Jevremović has exacerbated physical conditions of Ms. Jevremović as well.

202.215. As a direct and proximate result of Ms. Courville's intentional infliction of emotional distress, including the doxing and cyber-harassment of Plaintiff, with the knowledge that their publicationsMs. Jevremović, so severe that no reasonable person could cause Plaintiff to suffer harassmentbe expected to endure it, Ms. Jevremović has been, and potential violencewill continue to be damaged.

## SIXTH COUNT

203. The acts of Defendants resulted in damage to Plaintiff. In fact, as a direct result of Defendants' distribution of Plaintiff's and her family's private information, Plaintiff and her family have been forced to move homes, relocate to different states, and hire around-the-clock security.[140]

## EIGHTH COUNT

### Negligent Infliction of Emotional Distress

---

77. [140] Danielle Keats Citron, Addressing Cyber Harassment: An Overview of Hate Crimes in Cyberspace, 6 Case W. Res. J.L. Tech. & Internet at 4 (2015): https://scholarlycommons.law.case.edu/jolti/vol6/iss1/3 ("Victims fundamentally change their lives. They move because they no longer feel safe at home.")

99

**JA498**

12.

**(By Plaintiff Lima Jevremović against All Defendants)**

~~(By Plaintiff Jevremović against All Defendants)~~

~~204.~~216.     Plaintiffs ~~hereby~~ incorporate the allegations set forth above in Paragraphs 1 through ~~203~~215 as though fully set forth in this paragraph.

~~205.     For a claim of negligent infliction of emotional distress, a plaintiff must plead that the defendant had a duty to the plaintiff and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark*, 349 N.J.Super. 251, 277 (App.Div.2002).~~

~~206.     Whether the defendant has a duty of care to the Plaintiff depends on whether it was foreseeable that the plaintiff would be seriously mentally distressed. *Id.*~~

~~207.~~217.     ~~Here,~~ Defendants ~~were aware of the risk of serious mental distress to Jevremović as a result of Defendants' distribution of~~ acted negligently when Defendants published and otherwise distributed Plaintiff's home address (three different private addresses after ~~Ms.~~ Jevremović has been forced to move as a result of ~~Ms.~~ Courville's doxing), ~~Ms.~~ Jevremović's mother's home address,141, Ms. Jevremović's ~~sister Dahlia's~~sister's private home address, along with release of links to pornography with the false suggestion that it ~~was~~is Ms. Jevremović in the pornography, and the myriad false statements and releases of private information as pleaded above.

~~208.     As such, Defendants breached their duty of care to Jevremović as they combined to jointly conduct outrageous, cruel, and malicious doxing and cyber-harassment of Jevremović despite knowledge that their conduct had caused Jevremović severe emotional~~

---

141    ~~https://www.youtube.com/watch?v=CLiFEyC0WK8    (Accessed    September    5,    2023).~~ https://www.youtube.com/watch?v=CLiFEyC0WK8 (Accessed September 5, 2023). When accessed on October 22, 2024, the video is no longer available. It is hereby submitted that Defendants admitted that this video should not have been published because Ms. Courville removed the video at a later date.

12.

distress, and despite knowledge that Jevremović's reporting the conduct to law enforcement in three states.

209.218.     TheDefendants' acts of Defendants resulted in damage to Plaintiff Ms. Jevremović and her family, including but not limited to, forcing Plaintiff Ms. Jevremović and her family to relocate, and 24-7to hire 24/7 security.

210.219.     Defendants conduct herein has caused Ms. Jevremović extensive additional mental anguish[142] and financial harm. As of April 2024, Ms. Jevremović was clinically diagnosed with depression. Ms. Jevremović has been regularly visiting a psychiatrist and mental therapist. Ms. Jevremović is also developing heart condition related to the emotional distress that she is suffering from.

220.     Ms. Jevremović has suffered, and continues to suffer, emotional distress as a result of Defendants' wrongful conduct. She regularly sees a psychiatrist and a therapist. In April 2024, Ms. Jevremović was diagnosed of depression. The emotional distress that Ms. Courville has negligently inflicted on Ms. Jevremović has exacerbated physical conditions of Ms. Jevremović as well.

221.     As a direct and proximate result of Ms. Courville's negligent infliction of emotional distress, including the doxing and cyber-harassment of Ms. Jevremović, so severe that no reasonable person could be expected to endure it, Ms. Jevremović has been, and will continue to be damaged.

## SEVENTH COUNT

---

78.     [142] Danielle Keats Citron, Addressing Cyber Harassment at 4-5: ("Victims experience severe emotional distress, anxiety, and depression.").

12.

~~NINTH COUNT~~

~~Unfair Competition~~

~~Tortious Interference with Contractual Relations~~

**(By Plaintiff AURA against All Defendants)**

~~(By Plaintiff AURA against All Defendants)~~

~~211.~~222. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through ~~210~~221 as though fully set forth in this paragraph.

223. By or around March 2022, AURA received $1.5 million for funding, and was valued at approximately $10 million. AURA received investment from seasoned investors.

224. Defendants tortiously interfered with the contracts that AURA had with its investors by, among other things, intentionally disseminating false information that harms AURA's reputation.

225. The interference was intentionally inflicted by Defendants, who are not party to those contracts, and without justification.

226. The interference caused harm to AURA because the investors that had already invested in AURA chose to renege on their investment due to Defendants' false statements and accusations.

227. AURA was closed in February 2024.

228. As a direct and proximate result of Defendants tortious interference with AURA's contractors and its investors, AURA has suffered and will continue to suffer damages.

**EIGHTH COUNT**

~~212. The actions of Defendants as alleged above were done deliberately and intentionally.~~

102

**JA501**

12.

213. The actions of Defendants misled the public regarding AURA and/or products in violation of the common law of unfair competition of the State of New Jersey. Specifically, Defendants have actively spread defamatory statements and falsehoods about AURA, while Courville simultaneously began contributing to another online health company, Giddy.

214. The actions of Defendants as alleged above were committed with the intention of deceiving or defrauding the public in violation of the common law of unfair competition of the State of New Jersey.

215. Specifically, Defendants actions have effectively frozen investment in AURA, forestalled further development of AURA's new health-based business, and acted to siphon potential investors interested in a health start-up away from AURA.

216. Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## TENTH COUNT

### Unfair Competition

### Tortious Interference with Prospective Economic Advantage

**(By Plaintiff JevremovićAURA against All Defendants)**

217.229. Plaintiffs hereby incorporate the allegations set forth above in Paragraphs 1 through 216228 as though fully set forth in this paragraph.

218. The actions of Defendants as alleged above were done deliberately and intentionally to bring down Jevremović and to siphon off Jevremović's followers and viewers to Defendants' "That Surprise Witness" social media channels, and to deceive or defraud the public into following Defendants' social media channels instead of Jevremović, in violation of the common law of unfair competition of the State of New Jersey.

103

**Formatted:** Centered, Indent: First line: 0"

**Formatted:** Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 3.06" + Indent at: 3.31"

**Formatted:** Indent: Left: 0.75"

**JA502**

**JA503**

12.

219. The actions of Defendants misled the public regarding Jevremović as a social media influencer in the health space, in violation of the common law of unfair competition of the State of New Jersey.

220. Specifically, Defendants have actively spread defamatory statements, falsehoods, and misleading statements about Jevremović, where negative commentary receives more traction online than positive content. At the same time, Courville contributed to another competing online health company, Giddy, that was also in the health space.

221. Specifically, Defendants' actions have effectively destroyed Jevremović's business as a YouTube commentator herself, forestalling Jevremović's growth as commercially successful social media personality in the health space, after Defendants' social media blitzkrieg demonizing Jevremović, and siphoning viewers and followers to Defendants' social media channels, and profiting thereby in the form of Patreon sponsors, advertising on Defendants' YouTube channel and other methods of monetization that Defendants wrongfully obtained at the harm and expense of Jevremović.

222. Defendant's actions as alleged herein have caused and will continue to cause irreparable damage and injury to AURA if not enjoined by this Court.

## PRAYER FOR RELIEF

230. By or around March 2022, AURA received $1.5 million for funding, and was valued at approximately $10 million. AURA received investment from seasoned investors.

**Formatted:** Indent: Left: 0.75"

104

12.

231.  Many prospective investors showed demonstrated interest in investing in AURA, and expressed their interest either orally or by providing a Letter of Intent.

232.  After Defendants began publishing false and defamatory statements that cause harm to AURA's reputation, the prospective investors, including those who had provided a Letter of Intent, refused to invest in AURA.

233.  Defendants intentionally interfered with AURA's prospective contractual or economic relationship intentionally without justification of excuse.

234.  Defendants' intentional interference caused AURA's loss of the expected advantage.

235.  As a direct and proximate result of Defendants tortious interference with AURA's potential investors, AURA has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiffs pray for Judgment as follows, Ms. Jevremović and AURA, hereby demand the following relief in favor of Ms. Jevremović and AURA, and against Defendants:

1.  For general damages according to proof, but not less than $75,001;

2.  For compensatory damages according to proof;

3.  For special damages for damage to reputations, losses of business opportunities, and losses of investment opportunities according to proof, but not less than the jurisdictional minimum of this Court;

4.  For the maximum available punitive damages per Plaintiff per cause of action;

5. a.  For a A permanent injunction to remove all statements and publications adjudged libelous and to estop Defendants from publishing additional actionable statements under the causes of action alleged;

105

**JA504**

12.

6. ~~For pre- and post- judgment interest as allowed by law;~~

b. ~~For~~ Awarding Plaintiffs actual damages;

c. Awarding Plaintiffs punitive damages;

d. Awarding Plaintiffs special damages damage to reputations, losses of business opportunities, and losses of investment opportunities;

e. Awarding Plaintiffs interest;

f. Attorneys' fees and costs of suit; and ~~such~~

7.g. Any other ~~and further~~ relief ~~as this~~the Court ~~may deem just~~deems equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all matters triable.

1. Respectfully submitted,
2.

3.

*s/ Elliot D. Ostrove*

4. Elliot D. Ostrove, Esq. (Bar No. 025581997)
5. EPSTEIN OSTROVE
6. 200 Metroplex Drive, ~~Suit~~Suite 304
7. Edison, New Jersey 08817
8. Telephone: (732) 828-8600
9. Fax: (732) 828-8601
10. Email: ~~e.ostrove@epsteinostrove.com~~
11.

Email: e.ostrove@epsteinostrove.com

~~s/Neville L. Johnson~~
~~Neville L. Johnson (Pro Hac Vice)~~
~~JOHNSON & JOHNSON LLP~~
~~439 North Canon Drive, Suite 200~~
~~Beverly Hills, California 90210~~
~~Telephone: (310) 975-1080~~
~~Facsimile: (310) 975-1095~~

106

**JA505**

12.

Email: njohnson@jjllplaw.com

*s/ Rodney Smolla*
Rodney Smolla
(*Pro Hac Vice*)
7 Brook Road
P.O. Box 77
Strafford, Vermont 05072
Telephone: (864) 373-3882
Email: rodsmolla@gmail.com

Email: rodsmolla@gmail.com

12.     Attorneys for Plaintiffs Lima Ms. Jevremović and
Autonomous User Rehabilitation Agent, LLC

Dated:  December 6, 2023October 23, 2024

107

**JA506**

12.

**NEW JERSEY DISTRICT COURT LOCAL RULE 11.2 CERTIFICATION**

I, Lima Jevremović, on my own behalf and on behalf of Autonomous User Rehabilitation Agent, LLC ("AURA"), hereby declare the following:

1. I am a Plaintiff in the present case, a citizen of California and the United States of America.

2. I am also the CEO of Autonomous User Rehabilitation Agent, LLC and, as such, I am authorized to make statements on the Company's behalf.

3. I have fully reviewed the foregoing Third Amended Complaint, and aver that the matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I hereby certify that the matter in controversy in the foregoing ~~Third~~Fourth Amended Complaint is not the subject of any other civil action pending in any court, or of any pending arbitration or administrative proceeding, with the exception of ~~an application for Domestic Violence Restraining Order filed~~the matter pending in ~~Family~~Superior Court ~~in~~ of the State of California ~~by Claimant~~, County of Los Angeles, Case No.: 24STRO00762, captioned *Lima Jevremović ~~against Respondent~~v. Brittany Jeream Courville ~~at Case Number 23STR005881, which thus far resulted in a Temporary Restraining Order attached as Exhibit 1~~*, and ~~which was served upon Defendant on September 11, 2023.~~ the matter pending in Superior Court of the State of California, County of Los Angeles – Central District, Case No.: 23STRO05821, captioned *Lima Jevremović v. Brittany Jeream Courville.*

I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed on ~~December 6, 2023.~~                    ~~/s/ Lima Jevremović~~October 23, 2024

|  | Lima Jevremović, on my own behalf, and on behalf of Autonomous User Rehabilitation Agent, LLC |

108

**JA507**