# United States Court of Appeals

*for the*

# Third Circuit

Case No. 25-2553

LIMA JEVREMOVIĆ, an individual; AUTONOMOUS USER
REHABILITATION AGENT LLC, a Delaware Limited Liability Company,

*Plaintiffs-Appellants,*

– v. –

BRITTANY JEREAM COURVILLE, an individual; THAT SURPRISE
WITNESS TV LLC, a New Jersey limited liability corporation,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY IN CASE NO. 3:22-CV-04969
ZAHID N. QURAISHI, DISTRICT JUDGE

## BRIEF FOR DEFENDANTS-APPELLEES

TAMAR S. WISE
DAVID MARGULIS
COZEN O'CONNOR
*Attorneys for Defendants-Appellees*
Three World Trade Center
175 Greenwich Street, 55th Floor
New York, New York 10007
(212) 509-9400

CP COUNSEL PRESS   (800) 4-APPEAL • (387822)

## CORPORATE DISCLOSURE STATEMENT
## AND STATEMENT OF FINANCIAL INTEREST

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Third Circuit Local Appellate Rule 26.1, Appellee That Surprise Witness TV LLC makes the following disclosures:

1.      That Surprise Witness TV LLC is a non-governmental corporate entity that does not have any parent corporation.

2.      No publicly-held company holds 10% or more of stock in That Surprise Witness TV LLC.

3.      No publicly-held company holds a financial interest in the outcome of this litigation.

Dated: November 20, 2025

Respectfully submitted,

COZEN O'CONNOR

By:   */s/ Tamar S. Wise*
Tamar S. Wise
3 WTC
175 Greenwich Street, 55th Fl
New York, NY 10007
(212) 883-4924
TWise@cozen.com

*Attorneys for Defendants-Appellees*

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION.........................................................................4

COUNTERSTATEMENT OF ISSUES PRESENTED ON APPEAL.....................5

COUNTERSTATEMENT OF THE CASE..............................................................6

I.    STATEMENT OF FACTS.............................................................................6

    A.    Jevremović and AURA ......................................................................6

    B.    AURA and Amanda Rabb...................................................................6

    C.    Jevremović and Bam Margera............................................................7

    D.    Courville Opines on Jevremović's and AURA's Conduct .................8

II.   RELEVANT PROCEDURAL HISTORY .....................................................9

    A.    The District Court Dismisses Plaintiffs' Original Complaint...............9

    B.    The District Court Dismisses Plaintiffs' Third Amended
        Complaint ..........................................................................................11

    C.    The District Court Dismisses Plaintiffs' Fourth Amended
        Complaint ..........................................................................................12

SUMMARY OF THE ARGUMENT .....................................................................14

ARGUMENT .........................................................................................................16

I.    STANDARD OF REVIEW..........................................................................16

II.   THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS'
    DEFAMATION CLAIMS.............................................................................16

    A.    Legal Standard for Defamation Claims.............................................17

    B.    As the District Court Properly Found, the Challenged
        Statements in the FAC are Not Defamatory .....................................19

1.    The District Court Properly Concluded that the Broader Context of All the Challenged Statements Demonstrates That They Are Protected Opinion ..................................20

2.    The District Court's Dismissal of the Defamation Claims was Proper Also Because Plaintiffs Failed to Plead Actual Malice ..................................................................29

        a.    The District Court Properly Held that the Actual Malice Standard Applies to Plaintiffs' Defamation Claims ................................................................29

        b.    The District Court Correctly Found Plaintiffs Failed to Allege Actual Malice .....................................32

3.    The Defamation Claims were Properly Dismissed Because They are Otherwise not Defamatory as a Matter of Law ........................................................................40

III.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' ADDITIONAL CLAIMS ........................................................................49

    A.    The District Court Properly Dismissed Jevremović's False Light Claim ..............................................................................49

    B.    The District Court Properly Dismissed Jevremović's Intrusion Upon Seclusion Claim ................................................................50

    C.    The District Court Properly Dismissed Jevremović's Emotional Distress Claims ..............................................................................53

    D.    The District Court Properly Dismissed AURA's Tortious Interference Claims ..............................................................................57

CONCLUSION ..............................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1 Reliable Transp., Inc. v. Trader Joe's Co., Inc.*,
2020 WL 4279789 (N.J. Super. App. Div. 2020)...............................................58

*Albion Eng'g Co. v. Hartford Fire Ins. Co.*,
779 Fed. App'x 85 (3d Cir. 2019) ......................................................28, 48

*Alianza Dominicana, Inc. v. Luna*,
229 A.D.2d 328 (1st Dep't 1996) ....................................................25

*Angle v. United States*,
2012 WL 6708165 (D.N.J. Dec. 21, 2012).........................................57

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................16

*Baiul v. Disson*,
607 Fed. App'x 18 (2d Cir. 2015) ................................................34, 40

*Bajardi v. Pincus*,
2019 WL 3521847 (N.J. Super. Ct. App. Div. Aug. 2, 2019).....................21, 47

*Bank v. Lee*,
481 N.J. Super. 412 (App. Div. 2025) ...........................................45

*Barasch v. Soho Weekly News, Inc.*,
208 N.J. Super. 163 (App. Div. 1986)...........................................30

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................16

*Berkery v. Gudknecht*,
763 Fed. App'x 288 (3d Cir. 2019) .............................................33

*Bisbee v. John C. Conover Agency, Inc.*,
186 N.J. Super. 335 (App. Div. 1982)...........................................51

*Bishop v. Okidata, Inc.*,
864 F. Supp. 416 (D.N.J. 1994).................................................55

*Blankenship v. NBCUniversal, LLC*,
   60 F.4th 744 (4th Cir. 2023) ..................................................................34, 40

*Bloom v. Consol. Rail Corp.*,
   41 F.3d 911 (3d Cir. 1994) ..................................................................57

*Botts v. New York Times Co.*,
   106 F. App'x 109 (3d Cir. 2004) ..........................................................44

*Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*,
   654 Fed. App'x 80 (3d Cir. 2016) ........................................................48

*Calkins v. Dollarland, Inc.*,
   117 F. Supp. 2d 421 (D.N.J. 2000) ......................................................54

*Campbell v. United States*,
   375 Fed. App'x 254 (3d Cir. 2010) ......................................................57

*Clark v. Nenna*,
   465 N.J. Super. 505 (App. Div. 2020) ..................................................56

*Coefield v. GPU*,
   125 Fed. App'x 445 (3d Cir. 2005) ......................................................54

*Dairy Stores, Inc. v. Sentinel Pub. Co.*,
   104 N.J. 125 (1986) ............................................................................20

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749 (1985) ............................................................................31

*Eyrich for Eyrich v. Dam*,
   193 N.J. Super. 244 (App. Div. 1984) ..................................................53

*F.D.I.C. v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994) ..................................................................48

*Friedman v. Martinez*,
   242 N.J. 449 (2020) ............................................................................52

*Gensinger v. Reyes*,
   2020 WL 6703370 (N.J. Super. Ct. App. Div. Nov. 16, 2020) ............53

iv

*Gertz v. Robert Welch Inc.*,
   418 U.S. 323 (1974)................................................................................18, 30

*Hammer v. Hair Sys., Inc.*,
   2009 WL 1686820 (N.J. Super. Ct. App. Div. June 18, 2009) .........................52

*Herman v. Muhammad*,
   2024 WL 4488462 (N.J. Super. Ct. App. Div. Oct. 15, 2024).....................24, 49

*Holk v. Snapple Beverage Corp.*,
   575 F.3d 329 (3d Cir. 2009) ............................................................................40

*Huang v. Phan*,
   2022 WL 2752218 (3d Cir. July 14, 2022).......................................................56

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ............................................................................8

*In re the Guardianship of Brandon Margera*,
   21-011821-GD, Dkt. #15 (Fla. 6th Cir. Ct.).....................................................51

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
   31 F.3d 1259 (3d Cir. 1994) ............................................................................52

*Jevremović, et al., v. Courville, et al.*,
   No. 22-4969 (D.N.J. 2022) .........................................................................29, 31

*Johnson v. City of Hoboken*,
   476 N.J. Super. 361 (App. Div. 2023)...............................................................54

*Kerrigan v. Otsuka Am. Pharm., Inc.*,
   560 Fed. App'x 162 (3d Cir. 2014)..............................................................17, 18

*Kotlikoff v. The Cmty. News*,
   89 N.J. 62 (1982) ........................................................................................17, 18

*Lee v. TMZ Prods. Inc*,
   710 Fed. App'x 551 (3d Cir. 2017)..............................................17, 18, 29, 32

*Lynch v. New Jersey Educ. Ass'n*,
   161 N.J. 152 (1999) ........................................................................................18

*Mankodi v. Trump Marina Assocs., LLC*,
    525 Fed. App'x 161 (3d Cir. 2013) ...............................................................56

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991) .....................................................................................45

*Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*,
    34 F.4th 190 (3d Cir. 2022) ........................................................................58

*Mauro v. Intellectual Freedom Found., Inc.*,
    2015 WL 10372230 (N.J. Super. Ct. App. Div. Feb. 26, 2016).........................30

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020) ...............................................................*passim*

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990).........................................................................................25

*Moran v. DaVita*,
    441 Fed. App'x 942 (3d Cir. 2011) ..............................................................55

*Nanavati v. Burdette Tomlin Mem'l Hosp.*,
    857 F.2d 96 (3d Cir. 1988) ..........................................................................49

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964).....................................................................................32

*Pace v. Baker-White*,
    432 F. Supp. 3d 495 (E.D. Pa. 2020), *aff'd*, 85 Fed. App'x 827 (3d
    Cir. 2021) ....................................................................................................32

*Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
    63 F.4th 240 (3d Cir. 2023) ................................................................*passim*

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) .........................................................................39

*Petrosino v. Ventrice*,
    2015 WL 13694300 (N.J. Super. Ct. App. Div. Aug. 27, 2015).................54, 56

*Pierce v. Capital City Comm'ns*,
    576 F.2d 495 (3d Cir. 1978) .........................................................................27

vi

*Rapaport v. Barstool Sports Inc.*,
2024 WL 88636 (2d Cir. Jan. 9, 2024) ................................................24, 25, 26

*Roberts v. Mintz*,
2016 WL 3981128 (N.J. Super. Ct. App. Div. July 26, 2016) .....................28, 47

*Samost v. Voorhees*,
2013 WL 978243 (N.J. Super. Ct. App. Div. Mar. 14, 2013) ......................22, 23

*Schachtel v. Hughes*,
2024 WL 4579075 (N.J. Super. Ct. App. Div. Oct. 25, 2024) .....................24, 54

*Sciore v. Phung*,
2022 WL 950261 (D.N.J. Mar. 30, 2022) ........................................................21

*Smith v. Lynn*,
809 Fed. App'x 115 (3d Cir. 2020) ...................................................................51

*Soobzokov v. Lichtblau*,
664 Fed. App'x 163 (3d Cir. 2016) ............................................................*passim*

*St. Amant v. Thompson*,
390 U.S. 727 (1968) .........................................................................................32

*Standridge v. Ramey*,
323 N.J. Super. 538 (App. Div. 1999) ..............................................................33

*Stedrak v. Seton Hall University*,
2023 WL 4418310 (N.J. Super. App. Div. Jul. 10, 2023) ................................58

*Stonehill v. Nesta*,
2007 WL 4258328 (N.J. Super. Ct. App. Div. Dec. 6, 2007) ..........................22

*Strayer v. Wingate at Wyndham*,
2024 WL 207497 (N.J. Super. Ct. App. Div. Jan. 19, 2024) ......................56, 57

*Swift v. United Food Commercial Workers Union Local 56*,
2008 WL 2696174 (N.J. App. Div. July 11, 2008) ...........................................50

*Tah v. Global Witness Publ'g, Inc.*,
413 F. Supp. 3d 1 (D.D.C. 2019).................................................................27, 28

*United States v. Gonzalez*,
   905 F.3d 165 (3d Cir. 2018) ................................................................24

*Valley Elecs. AG v. Polis*,
   2022 WL 893674 (2d Cir. Mar. 28, 2022)...................................21, 22

*Vaughn v. MGM Resorts Int'l*,
   782 Fed. App'x 218 (3d Cir. 2019) ...........................................40, 44

*Ward v. Zelikovsky*,
   136 N.J. 516 (1994) ............................................................................27

*Watson v. NY Doe 2*,
   2025 WL 2662306 (S.D.N.Y. Sept. 17, 2025) ....................................30

*Weiss v. Pinnacle Ent., Inc.*,
   2012 WL 1448050 (N.J. Super. Ct. App. Div. Apr. 27, 2012)...........43

**Statutes**

Consumer Fraud Act ..........................................................................52

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................................9, 16, 25

## <u>INTRODUCTION</u>

Plaintiff-Appellant Autonomous User Rehabilitation Agent, LLC ("AURA") offers mental health treatment services for substance abuse disorders and Plaintiff-Appellant Lima Jevremović serves as its founder and CEO.  This suit concerns a handful of posts by Defendant-Appellee Brittany Courville on her social media platforms (Instagram and YouTube), raising concerns and expressing her opinions about AURA's and Jevremović's practices, primarily as they relate to treatment of two high profile AURA clients: celebrity Bam Margera, and Amanda Rabb, a homeless, drug-addicted woman, both of whom used AURA's services and received court-ordered care by Jevremović.  Plaintiffs coopted extensive media opportunities to market AURA, thereby inviting the scrutiny of the millions of viewers of these platforms—but when confronted with criticism or an unflattering opinion, Plaintiffs quickly moved to stifle those opinions with a defamation lawsuit.  Courville's statements, made on these informal media channels and replete with hyperbolic language, are valid expression about matters of public concern which are constitutionally protected.  They are not actionable as defamation simply because Plaintiffs do not like Courville's opinions or because they are unflattering.

The District Court properly dismissed Plaintiffs' defamation and related claims, finding that the challenged statements were protected opinion *and* that Plaintiffs failed to allege particularized facts satisfying the high bar for "actual

malice." The District Court afforded Plaintiffs *two* opportunities to amend their pleading, but each subsequent version of the complaint failed to cure these deficiencies, which provide independent grounds for dismissal of the claims.

Now, on appeal, Plaintiffs repeat the same failing arguments the District Court properly rejected in three detailed, carefully-considered opinions. Yet Plaintiffs offer no reason to disturb the District Court's dismissal of the final pleading, the Fourth Amended Complaint ("FAC").

As the District Court properly found, Courville's statements are precisely the kind of opinion statements the Constitution protects. In so concluding, the District Court first weighed the relevant context—profanity-laden Instagram posts replete with hyperbolic rhetoric, Courville wearing fuzzy panda ears with a unicorn piñata in the backdrop—as well as Courville's repeated clarifications that her statements are merely her opinions, beliefs, or impressions—all of which signified to the audience that her statements were non-actionable opinion. Moreover, Courville set forth the bases for her opinions, disclosing the underlying facts supporting the statements.

This Court can also affirm the dismissal on a separate, independent ground— that Plaintiffs failed to plead actual malice, a deliberately high pleading bar that requires alleging, through particularized facts, that Courville made the allegedly defamatory statements with actual knowledge of their falsity or with reckless

disregard of their truth. Plaintiffs conceded in two rounds of briefing before the District Court that the actual malice standard applies, so their untimely objection to the standard is too late. In any event, as the District Court properly held, Plaintiffs are limited public figures (because they used public outreach to publicize AURA) and the challenged statements at issue regard matters of public concern (mental health treatment and guardianship of impaired individuals). And Plaintiffs failed to meet this standard. Indeed, Plaintiffs do not even *attempt* to show actual malice for many of the challenged statements. And when they do, they point to conclusory or otherwise entirely unrelated allegations, none of which demonstrate that Courville *actually* doubted the truth of her statements. On the contrary, Courville's repeated disclosure of the undisputed public facts underlying her opinions makes clear that she reasonably believed her statements.

Jevremović's remaining claims are based on allegations that, as part of her commentary, Courville published Jevremović's information online. As the District Court properly found, Jevremović failed to allege that *any* such information was private or that it was wrongfully obtained to support her claim for intrusion upon seclusion. Rather, Jevremović alleged in her pleading that Jevremović publicly filed this information herself. Jevremović also brings claims for intentional and negligent infliction of emotional distress based on the challenged statements and the supposed disclosure of private information. The District Court properly found that any such

3

conduct did not qualify as "extreme and outrageous"—a finding reserved for the most extraordinary of circumstances—and that the statements did not place Jevremović in immediate danger of harm.

Lastly, AURA appeals dismissal of its two claims for tortious interference, asserted for the first time in the FAC. The District Court properly exercised its discretion in dismissing those claims because they exceeded the District Court's narrow leave to amend only preexisting claims. Regardless, those claims—which, as AURA admits, are merely repackaged defamation claims—fail on the merits.

Plaintiffs have repeatedly failed to meet their pleading burden, as detailed by the District Court in three well-reasoned Opinions. For these reasons, as more fully set forth below, Defendants respectfully request that this Court affirm the District Court's dismissal of the FAC with prejudice.

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. §1332(a), the District Court had jurisdiction as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00. Plaintiffs are Jevremovic, a California citizen, and AURA, a limited liability company whose members are citizens of California, Colorado, Texas, Florida, and Illinois, and Australia. Defendants are Courville, a New Jersey citizen, and That Surprise Witness TV LLC, whose lone member is a New Jersey citizen.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because on July 11, 2025, the District Court entered a final order disposing of all parties' claims, with prejudice. JA012-027.  On August 8, 2025, Plaintiffs filed a timely Notice of Appeal. JA010-011.

**COUNTERSTATEMENT OF ISSUES PRESENTED ON APPEAL**

1.      Did the District Court correctly hold that the challenged statements are Constitutionally-protected opinion as a matter of law, where the District Court holistically considered the entire context of the statements and many indicia of opinion, including the forum and context in which they were made, the use of loose, colloquial language, and clear disclaimers.

2.      Did the District Court correctly hold that that the challenged statements were mere opinions based on disclosed underlying facts.

3.      Did the District Court correctly dismiss the intrusion upon seclusion claim, where Jevremović failed to allege that any information Courville supposedly disseminated was private or wrongfully obtained.

4.      Did the District Court correctly dismiss Jevremović's false light claim for the same reasons it dismissed Plaintiffs' defamation claims, considering they are essentially the same claim under relevant law.

5.      Did the District Court correctly dismiss Jevremović's intentional infliction of emotional distress ("IIED") claim to the extent it is based on non-

actionable defamation, and also because Jevremović failed to allege sufficiently "extreme and outrageous" conduct.

6.     Did the District Court correctly dismiss Jevremović's negligent infliction of emotional distress ("NIED") claim for failure to allege that Courville's conduct placed her in a zone of immediate danger.

7.     Did the District Court act within its discretion in dismissing AURA's tortious interference claims after AURA exceeded the Court's narrow leave to only amend preexisting claims, and where, in any event, AURA failed to meet the pleading burden.

<b><u>COUNTERSTATEMENT OF THE CASE</u></b>

**I.     STATEMENT OF FACTS**

**A.     Jevremović and AURA**

Jevremović is the founder and CEO of AURA (JA345 ¶2), a company which provides mental health treatment services for substance abuse disorders.  JA347 ¶14.  AURA's business model includes providing free-of-charge services to less fortunate individuals.  *Id.*  AURA offers various tools—including "virtual reality" "and other undisclosed "technology" it is "explor[ing]"—so it can "receive feedback" on those tools and "refine" them.  JA347 ¶¶13-14, JA361-362 ¶¶74-75, 77.

**B.     AURA and Amanda Rabb**

Around July 2020, Jevremović began searching for an individual who would serve as AURA's "case study."  JA361 ¶74.  She hoped to give that individual "in-

6

patient residential care" (JA350 ¶28) at facilities utilizing AURA's products (JA346 ¶8; JA351 ¶¶34-35; JA361-362 ¶¶74-75), so she could use the "data collected" on them "for research purposes." JA362 ¶77. Working alongside photographer and YouTuber Mark Laita (JA347 ¶¶10-11; JA350 ¶¶28-29; JA351 ¶32), Jevremović selected Rabb, a homeless and drug-addicted woman. JA350-351 ¶¶31-32. Jevremović obtained court-ordered treatment for Rabb, which AURA provided. JA350 ¶28; JA351 ¶¶34-35; JA358 ¶59. Unfortunately, Rabb passed away on May 9, 2021 while still in treatment. JA351-352 ¶36. While Jevremović publicly claimed Rabb passed away from "a seizure disorder," Rabb's formal autopsy report states otherwise. JA351-352 ¶36; JA361 ¶72.

## C.    Jevremović and Bam Margera

AURA's business model also includes engaging "celebrities, influencers, and persons in the public eye" to "develop a viral, word-of-mouth buzz surrounding" its services. JA347 ¶14. One such celebrity was Bam Margera, who "starred in the blockbuster Jackass movies and popular television programs." JA364 ¶84. Initially, Margera provided his "support" to Jevremović and the development of her business. *Id.* On June 7, 2021, an Arizona court ordered that Jevremović serve as his guardian and further ordered that Margera undergo treatment at a rehabilitation facility. JA365 ¶85; JA369 ¶100; JA376 ¶¶128-129.

### D.  Courville Opines on Jevremović's and AURA's Conduct

Courville is a self-proclaimed conspiracy "theorist" with an active social media presence.  JA371 ¶111; JA376 ¶128; JA381 ¶148.  Courville has taken an interest in conservatorship cases and posts about her "theories" on Instagram and YouTube.  *See generally* Courville's Instagram account, instagram.com/thatsurprisewitness/?hl=en; YouTube channel, youtube.com/channel/UCDP9HU8g2JLimHmcLqsTGEg?app=desktop.[1]  That Surprise Witness TV LLC (the "LLC Defendant," and together with Courville, "Courville") was formulated "to carry out the activities of Ms. Courville."  JA345 ¶4.

This defamation-based action purports to arise from Courville's statements on social media concerning Rabb's cause of death; procurement of and treatment for Rabb; and Jevremović's relationship to Margera's treatment and arrest.

---

[1] The FAC is based upon alleged defamatory statements on Courville's Instagram and YouTube accounts.  As such, their contents are properly considered in evaluating a motion to dismiss for purposes of understanding the context of any individual post.  *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (where the plaintiff "relied upon" certain sources in formulating the complaint, those sources are properly considered on a motion to dismiss, as this allows for the challenged statements to be examined in their "full context").

## II.    RELEVANT PROCEDURAL HISTORY

### A.    The District Court Dismisses Plaintiffs' Original Complaint

On August 8, 2022, Plaintiffs filed their original Complaint against Courville alleging defamation.  JA028-058.  By Opinion dated August 10, 2023, the District Court granted Courville's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  JA089-109 ("Opinion I").

The Court relied on two independent grounds for dismissal of the Complaint: (1) the allegedly defamatory statements were protected opinion; and (2) Plaintiffs failed to adequately plead actual malice given that Plaintiffs were limited-purpose public figures.  JA101-108.  As to the first ground, the Court held that the context of Courville's statements made clear they were opinion.  JA101-105.  In particular, they were delivered on Instagram and YouTube, "forums that welcome opinions and candor."  JA101-102.  Additionally, Courville, "[i]n satirical spirit," "can be seen wearing either panda ears or bunny ears while making her statements, while a sparkly unicorn piñata rests prominently in the background.  Additionally, [Courville's] profile picture [on her Instagram page] [was] a photograph of her wearing a pink fuzzy ear headband and tie-dye shirt, and includes in her Instagram biography that she is a 'Legal Edutainer (not legal advice).'"  *Id.*  These contextual clues suggest opinion.  Finally, the District Court noted that "the specific language" used by Courville "signals that [she] is merely expressing her opinions and theories,"

9

as she "repeatedly refers to her opinions" "as mere 'theories,'" marked by language such as "I think" or "it seems," and she "disclaims that her opinions are 'not legal advice.'"  JA102-103, 105.  The District Court held that "all of [this] point[s] to unactionable opinions."  JA103.

As to actual malice, the District Court first noted that Plaintiffs conceded they were "limited-purpose public figures," triggering that pleading requirement.  JA105-06.  In any event, the Court held that Plaintiffs "injected themselves into the public sphere by soliciting attention via an intensive public relations campaign" and treating "high profile celebrities such as Margera."  JA105-106.

The District Court held that the "demanding" actual malice standard was not met.  JA105-108.  The Court found Plaintiffs' actual malice allegations—statements concerning motive, ignoring purported evidence, a "preconceived storyline," and a supposedly insufficient investigation—"bare and conclusory" and deficient as a matter of law.  *Id.*  Ultimately, the Court dismissed Plaintiffs' defamation claims without prejudice and granted Plaintiffs leave to "cure the defects" identified.  JA089.

### B.      The District Court Dismisses Plaintiffs' Third Amended Complaint

On September 11, 2023, Plaintiffs filed their Second Amended Complaint (superseded by a Third Amended Complaint ("TAC"))[2] which "significantly exceeded the Court's narrow authorization" to "cure the defects with their two counts of libel," and added two defendants (Prem Benipal, who is not an appellee, and the LLC Defendant) and an additional eight causes of action.  JA324 (August 30, 2024 Opinion ("Opinion II")).  Nonetheless, the District Court exercised its discretion to evaluate the claims and additional defendants.  JA325; JA015-016.

In Opinion II, the Court granted Courville's motion to dismiss the TAC.  As to the defamation claims, the District Court found that Plaintiffs failed to remedy the pleading defects that warranted dismissal of the original complaint.  JA332-334.  Specifically, the Court held that Plaintiffs "did not attempt to change the context of the challenged statements," and held once again that the challenged statements "remain unactionable opinions."  JA332 (cleaned up).  The District Court noted that that "[t]he only substantive attempt Plaintiffs make to support the viability of the Challenged Statements is underscoring Courville's legal background," but the District Court "already considered these arguments in [Opinion I] and found them unpersuasive."  JA332-333.  As the District Court concluded, after finding that any

---

[2] The TAC is identical to its predecessor but for a correction to the LLC Defendant's name.

new allegations in the TAC were "very similar" to those already deemed not actionable in Opinion I, "though it is evident throughout the [TAC] that Defendants have a lot to say about Jevremović, 'mere insults and rhetorical hyperbole, while they may be offensive, are not defamatory.'" JA333-334 (citation omitted).

The Court also again noted that Plaintiffs conceded the actual malice standard applied. JA331. And it again held that Plaintiffs failed to meet this high bar, offering only "conclusory allegations and vague insinuations of improper motives and financial bias" which "are insufficient to show that [Courville] entertained doubts about the truth of the statements." JA334. As the District Court noted, "At best, Plaintiffs allege facts that might explain Defendants' motive for making social media posts about Jevremović, but these allegations are insufficient to show that Defendants entertained doubts about the truth of the statements." *Id.*

The District Court also dismissed the new, non-defamation claims for failure to state various elements of those claims, including alleging that information Courville purportedly disseminated was private and wrongfully obtained. JA334-343. The District Court allowed Plaintiffs to file an amended complaint limited to remedying the defects identified in the preexisting claims. JA343.

### C.    The District Court Dismisses Plaintiffs' Fourth Amended Complaint

On October 23, 2024, Plaintiffs filed their FAC. JA344-399. Plaintiffs "exceed[ed] the leave provided by the Court," adding two new claims for tortious

12

interference, even though the Court made clear that any amendment was "*limited to remedying the defects in the counts dismissed.*" JA018 (July 11, 2025 Opinion ("Opinion III"). Noting that this was Plaintiffs' second time "ignor[ing] the Court's instructions" and "fifth pleading in this matter," the Court declined to excuse Plaintiffs' procedural infirmities and dismissed Plaintiffs' tortious interference claims. *Id.*

The Court also again dismissed Plaintiffs' defamation claims, reaffirming the findings from Opinions I and II and explicitly incorporating such prior opinions by reference. JA014, JA019, JA021. The Court noted that it conducted "a thorough review of the FAC," and again concluded that Courville's statements were non-actionable opinions, particularly in light of the context as set forth in Opinions I and II. JA021. It also again concluded that Plaintiffs needed to, yet failed, to plead actual malice. JA019, JA024.[3]

The District Court again disposed of Plaintiffs' remaining claims for failure to state a claim, including failing to allege that information Courville purportedly disseminated was private or wrongfully obtained and failing to show "extreme and outrageous" conduct or conduct that put Jevremović in the zone of immediate danger. JA021-026.

---

[3] The District Court addressed the actual malice finding in the section on false light, which mirrors the actual malice requirement for defamation. *Soobzokov v. Lichtblau*, 664 Fed. App'x 163, 169 (3d Cir. 2016).

Finally, noting that this was already Plaintiffs' fourth amended pleading, the District Court dismissed with prejudice, because "any further amendment would be futile." JA027.

## SUMMARY OF THE ARGUMENT

Plaintiffs failed to plausibly plead defamation, as the District Court correctly concluded in three successive Opinions. Courville's statements were opinion, made after a full disclosure of undisputed facts, and riddled with clear indicia of opinion including profanity-laden colloquialisms and *explicit disclaimers* that the statements are only what Courville "thinks" or "believes." The District Court properly considered these indicia of opinion in their *totality*, rather than looking at each of these contextual clues in isolation, as Plaintiffs argue.

As another basis for dismissal, the District Court rightly concluded that Plaintiffs failed to allege that Courville's statements—made about a public figure on the public interest topic—were made with actual malice. Indeed, Plaintiffs do not even try to show they pled actual malice for all the challenged statements. As to the others, Plaintiffs offer nothing to suggest that Courville actually doubted the truth of her statements, as required to survive dismissal. Instead, it is clear that Courville reasonably believed her statements, for which the underlying facts are not contested. For these independent reasons, as well as reasons not reached by the District Court

14

(including opinions with disclosed facts and statements not alleged to be false), the defamation and false light claims fail.

The District Court also properly dismissed Jevremović's IIED, NIED, and intrusion upon seclusion claims, all based upon the alleged defamation and the supposed dissemination of Jevremović's information. As the District Court properly found, Jevremović never alleged that information was private or wrongfully obtained, and, on the contrary, admitted it was publicly available. Nor does any of the alleged conduct in the FAC amount to "extreme and outrageous" conduct as required to sustain an IIED claim. Jevremović further fails to allege that Courville put her in a zone of immediate danger, as needed to plead NIED.

Finally, AURA's appeal of the District Court's dismissal of its tortious interference claims is meritless. AURA admits that these are mere repackaged defamation claims. Regardless, those tortious interference claims exceeded the narrow permission granted by the District Court to amend claims.

As the District Court properly held, even accepting Plaintiffs' allegations as true, they have failed to plausibly plead a claim. This Court should reach the same conclusion.

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews the District Court's dismissal of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) *de novo.  McCafferty v. Newsweek Media Grp., Ltd.,* 955 F.3d 352, 356 (3d Cir. 2020).

In reviewing a decision on a motion to dismiss, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly¸* 550 U.S. 544, 555, 557 (2007)).  A claim must be pled with facial plausibility; where a complaint provides facts "merely consistent with" the defendant's liability, it "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### II.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' DEFAMATION CLAIMS

Plaintiffs have failed three times to plausibly plead defamation.  As the District Court correctly held, Plaintiffs' defamation claims are subject to dismissal on two independent grounds: (1) the challenged statements were constitutionally protected opinion; and (2) they were not made with actual malice.  JA096-108; JA331-334; JA019-021, JA024.  On appeal, Plaintiffs offer no legally supported

16

ground to disturb these well-reasoned Opinions, and their defamation claims fail as a matter of law.

## A.   Legal Standard for Defamation Claims

To plead defamation, Plaintiffs needed to allege: (1) a false and defamatory statement concerning Plaintiffs; (2) that was communicated to a third-party; and (3) fault. *Lee v. TMZ Prods. Inc,* 710 Fed. App'x 551, 560 (3d Cir. 2017).

The first element of a defamation claim is a defamatory statement of *fact*. *Kerrigan v. Otsuka Am. Pharm., Inc.,* 560 Fed. App'x 162, 167 (3d Cir. 2014). Statements of opinion, as a matter of constitutional law, are not actionable as defamation. *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.,* 63 F.4th 240, 245-46 (3d Cir. 2023).[4]

"Opinions" can take one of two forms. "Pure opinion" is where the speaker "states the facts on which he bases his opinion of the plaintiff and then states a view as to the plaintiff's conduct." *Kotlikoff v. The Cmty. News*, 89 N.J. 62, 68-69 (1982). Such "[s]tatements of pure opinion"—*i.e.* those "based on stated facts or facts that are known to the parties or assumed by them to exist"—"do not provide a basis for relief." *Pacira* 63 F.4th at 245-46. Instead, they are fully protected, "no matter how unjustified, unreasonable or derogatory the opinion might be. This is so because

---

[4] *Pacira* dealt with a claim for trade libel, but recognized that trade libel and defamation, "similar causes of action," are "subject to the same privileges, or limitations, that render certain statements nonactionable." 63 F.4th at 244-45.

readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified." *Kotlikoff*, 89 N.J. at 73. The second type of opinion is "mixed"—it is actionable "if the statement implies underlying objective facts that are false." *Id.*

Along these lines, "hyperbolic" or "satirical language," while it "may be distasteful or insulting," "is not actionable for defamation." *Lee,* 710 Fed. App'x at 559; *Pacira*, 63 F.4th at 245-46 ("loose" or "figurative" language is "non-actionable as rhetorical hyperbole"); *Kerrigan,* 560 Fed. App'x at 168 ("mere obscenities, insults, and other verbal abuse" are not actionable). As the United States Supreme Court held, it does not matter how "pernicious" an opinion is; it cannot be false and is therefore constitutionally protected. *Gertz v. Robert Welch Inc.*, 418 U.S. 323, 339-340 (1974).

The constitutional protection afforded to opinions is so compelling that even where "a statement could be construed as either fact or opinion, [courts] must construe it as opinion," as holding otherwise would "impose a chilling effect on speech." *Pacira,* 63 F.4th at 245, n.9; *see also Lynch v. New Jersey Educ. Ass'n,* 161 N.J. 152, 168 (1999) (same). "Whether a statement constitutes a fact or opinion is a legal question resolved by the court." *Kerrigan,* 560 Fed. App'x at 168.

18

**B.    As the District Court Properly Found, the Challenged Statements in the FAC are Not Defamatory**

In their Brief, Plaintiffs only challenge the District Court's dismissal of their defamation claims as to five specific categories of statements:

(1) statements relating to Rabb's treatment (*i.e.*, that it was experimental and against her will) and death, specifically that Jevremović lied about the cause of death;

(2) statements suggesting that Jevremović worked with Rabb's father and Mark Laita to put Rabb in jail;

(3) statements concerning Jevremović's guardianship over Margera, including sometimes referring to it as a "conservatorship";

(4) statements suggesting that Jevremović was the victim of Margera's assault in a Florida hotel room where Margera was allegedly arrested; and

(5) statements calling Jevremović a "handler" and "criminal" in relation to Margera.

(together, the "Challenged Statements"), *see* Plaintiffs-Appellants' Brief ("Pls.' Br.") 23-42.  The District Court correctly concluded that these statements were not defamatory because they were protected opinion and because Plaintiffs failed to allege actual malice.  This Court should affirm that holding.

19

**1.      The District Court Properly Concluded that the Broader Context of All the Challenged Statements Demonstrates That They Are Protected Opinion**

The District Court properly held that the Challenged Statements are all non-actionable opinion. As the District Court held, "context is critical in deciphering unactionable opinion versus defamatory speech." JA101; *see also* JA100-05; JA332-334; JA021; *Pacira,* 63 F.4th at 248-49; *see also Dairy Stores, Inc. v. Sentinel Pub. Co.,* 104 N.J. 125, 147-48 (1986) ("In drawing the distinction between fact and opinion, we have looked to the content of the statement and to the context in which it appeared"). In dismissing Plaintiffs' defamation claims, the District Court considered the many indicia of opinion contextualizing the Challenged Statements to conclude that these contextual clues, *together*, would indicate to a reader that the statements are intended to be opinion. JA100-105; JA332-334; JA021. This Court should affirm.

First, "[i]n considering context, New Jersey courts examine, among other things, the 'medium by which the statement is disseminated and the audience to which it is published.'" *Pacira*, 63 F.4th at 248. This is exactly the inquiry in which the District Court engaged, recognizing that Courville's statements were "delivered by a social media influencer" on Instagram and YouTube—*not* in scholarly articles, newspapers, or any other medium traditionally known for coolheaded recitation of the facts. JA101-102 (noting the particular forums—Instagram and YouTube—

"welcome opinions and candor") (citing cases); *see also Pacira*, 63 F.4th at 248 (citing *Sciore v. Phung*, 2022 WL 950261, at *6, 11-12 (D.N.J. Mar. 30, 2022) ("[s]tatements made on Internet forums are made in a unique context in that they are generally informal and unedited. This context leads readers to give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts") (cleaned up)); *Bajardi v. Pincus*, 2019 WL 3521847, at *18 (N.J. Super. Ct. App. Div. Aug. 2, 2019) ("public debate … is more likely found on the internet and is often crude, contentious, and opinion rather than fact based," and "[r]easonable people … would understand [the statements made on the internet] were opinion based … especially considering the venue in which they were made"); *Valley Elecs. AG v. Polis*, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) (affirming dismissal of defamation claim, where statements were made in Instagram comments and thus "used media that are typically regarded by the public as vehicles for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter") (cleaned up).

The District Court considered further contextual clues, noting that, "[i]n satirical spirit," Courville made the Challenged Statements while wearing "either panda ears or bunny ears," with a "sparkly unicorn piñata" resting "prominently in the background." JA102. The District Court also noted that Courville's Instagram "profile picture [was] a photograph of her wearing a pink fuzzy ear headband and

21

tie-dye shirt," (*id.*) in an exaggerated pose of surprise. The District Court also considered Courville's "frequent[] use[ of] hashtags and emojis in her writing." (*id.*)—punctuating her statements with, *e.g.*, "#bitcheslovehashtags" (JA375 ¶124 (linking post)) or employing crying laughing emojis. JA372 ¶113. *See* JA102 (citing to, *inter alia*, these Instagram posts). This context further indicated to the audience that the statements were to be considered subjective opinion, not fact.

As yet further indicia of opinion, the Court also found that Courville used "specific language" signaling that she "is merely expressing her opinions and theories." JA102. For example, Courville repeatedly refers to her "mere 'theories'" and "continually characterizes herself as a 'conspiracy theorist.'" *Id.* Finally, as Plaintiffs themselves concede, Courville "attaches disclaimers to her self-proclaimed theories making clear they are her beliefs." *Id.* (citing, *e.g.*, JA371 ¶111 ("what do I know I'm just a conspiracy theorist.")). Indeed, as the Court made clear, Plaintiffs' allegations themselves directly "acknowledge [Courville] making clear that when she refers to her theories, she is consistently referring to 'my opinion or my belief or my suspicion,'" "my impression," "my [] theory," "what 'I believe[],'" or what was "alleged." JA103. As the Court properly found, there could hardly be clearer language signaling opinion. JA102-103; *Stonehill v. Nesta,* 2007 WL 4258328, at *4 (N.J. Super. Ct. App. Div. Dec. 6, 2007) (statement: "*I have concerns…*" is necessarily "phrased as a personal opinion."); *Samost v. Voorhees,*

2013 WL 978243, at *5 (N.J. Super. Ct. App. Div. Mar. 14, 2013) ("The statement was prefaced by the qualifier, 'we believe,' which a reasonable person would have recognized as [defendant's] opinion.") (cleaned up).

Weighing all of these indicia holistically, and in sum total, the contextual clues that the District Court acknowledged—the social media platform; the loose, figurative and colloquial language and cheeky backdrop; the rhetorical questions and conjecture; and the disclaimers—would indicate to a reader that the statements are intended to be opinion. The District Court correctly dismissed the defamation claims on this ground. JA103 ("The Third Circuit has held that 'if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise…the statement is not actionable.'") (quoting *McCafferty*, 955 F.3d at 356); JA105; JA332-334; JA021.

Against this backdrop, Plaintiffs grossly mischaracterize the Court's holistic analysis, suggesting—in the extreme—that it provided for a "talismanic social media defense" (Pls.' Br., 34) or a "free pass allowing online surfers to defame others without consequence." *Id.*, 1, 20. That is a complete distortion of the careful analysis in which the District Court engaged. As just *one* of the many factors signaling opinion, and in keeping with this Court's directive in *Pacira*, the District Court considered the fact that the statements were made on social media forums. Plaintiffs cite cases where courts have held statements made on the Internet to be

23

defamatory (Pls.' Br., 20, 34-35)[5]—but that is not controversial.  The District Court

did not rely on the social media forum *exclusively* to reach its opinion determination;

it was one of many considerations that formed a holistic picture that the context of

the statements signaled opinion.  *See, e.g., Rapaport v. Barstool Sports Inc.*, 2024

WL 88636, at *3-5 (2d Cir. Jan. 9, 2024) (holistic review of context supports finding

of opinion).  In concluding that Courville's statements were mere opinion, the

District Court was correct to consider it, at a minimum, persuasive, that her

statements were "delivered by a social media influencer" on "forums that welcome

opinions and candor."  JA101-102; JA333-334; JA021.

Plaintiffs try the same maneuver when they argue that "[t]he District Court

also held that linguistic trappings such as 'it appears,' 'I believe,' or simply couching

one's statements as a 'conspiracy theory' entitles Defendants to a free pass for

defamation."  Pls.' Br., 2, 21.  Again, the use of qualifiers and conditional language

was just *one more* of the indicia to which the District Court looked to determine if

the context of the statements signaled to the reader that the statement was opinion.

And none of Plaintiffs' case law stands for the proposition that consideration of

---

[5] Those cases are, in any event, entirely distinguishable.  Neither *United States v. Gonzalez*, 905 F.3d 165, 190-94 (3d Cir. 2018), nor *Herman v. Muhammad*, 2024 WL 4488462, at *4-5 (N.J. Super. Ct. App. Div. Oct. 15, 2024), engaged in the opinion analysis to consider the medium on which the challenged statements were made. And *Schachtel v. Hughes*, 2024 WL 4579075, at *15 (N.J. Super. Ct. App. Div. Oct. 25, 2024) dealt with opinions based on false facts.

qualifying language, alongside other contextual clues in a holistic review of context, is in any way improper. Instead, Plaintiffs cite to the Supreme Court's decision in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990), which discussed hypotheticals where the *only* suggestion of opinion was a perfunctory "I believe" before an otherwise defamatory statement, and to *Alianza Dominicana, Inc. v. Luna*, 229 A.D.2d 328, 329 (1st Dep't 1996), a New York state court case finding that cautionary language *alone* did not insulate statements from defamation liability. But that is not the case here, where the qualifying language is one of many contextual indicia suggesting opinion.

The Second Circuit recently rejected a nearly identical argument on appeal of dismissal of a defamation claim on a Rule 12(b)(6) motion. In *Rapaport v. Barstool Sports Inc.*, 2024 WL 88636 (2d Cir. Jan. 9, 2024), the Second Circuit noted that the plaintiff-appellant, in appealing the lower court's determination that the statements were protected opinion, was "attempt[ing] to isolate and emphasize individual factors that the court considered as part of its totality of the context analysis. He suggests that 'the [d]istrict [c]ourt incorrectly gave a disproportionate amount of weight to the fact that the statements at issue here were made on the internet.'" *Id.* at *3. The Second Circuit rejected this "mischaracteriz[ation] of the district court's analysis," noting that "the district court did not find that the statements at issue were non-actionable opinions solely because the statements were made on internet

25

platforms; rather the district court's determination was based on careful evaluation of all of the surrounding circumstances." *Id.* (affirming dismissal based on all contextual factors indicating opinion, including the social media platform, presence of "epithets, vulgarities, hyperbole, and non-literal language and imagery," and disclosed underlying facts).

This Court, too, should reject Plaintiffs' attempt to "isolate and emphasize" individual parts of the context analysis, where the District Court properly engaged in a holistic review of all relevant factors and found the broader context of the challenged statements to signal opinion.

The District Court was also correct to reject Plaintiffs' argument that a handful of self-selected, isolated third-party comments on Courville's Instagram posts are somehow dispositive of whether Courville's statements are fact or opinion *as a matter of law*. For example, Plaintiffs make the bald, unsupported statement that "there is no doubt that Ms. Courville's fans … believed that the statements regarding Plaintiffs were objectively true." Pls.' Br., 27. There is no support for this statement about what *third parties* thought of Courville's statements. Even the limited sampling of viewer comments Plaintiffs offer reflects only that viewers were engaged in dialogue with Courville, thanking her for drawing attention to her concerns and for providing them with her thoughtful insights, or offering their own conclusions on the basis of the disclosed facts. Some of the viewer's comments are

statements which Courville herself never made nor ever even implied—and others simply suggest viewers agreed with Courville's opinions. To the extent viewers commented with characterizations of Jevremović's conduct or praised Courville's efforts, this has no bearing on whether Courville's statements were presented as fact or opinion.

Unsurprisingly, Plaintiffs' case law does not support the proposition that a sampling of viewer comments on an Instagram post can be dispositive of whether the statement in the post is fact or opinion as a matter of law—particularly in light of the presence of indicia of opinion courts in this Circuit look to for this analysis. Plaintiffs cite *Pierce v. Capital City Comm'ns*, 576 F.2d 495, 502 (3d Cir. 1978), but that case stands for the unremarkable proposition that a court should consider the literal and contextual understanding of a phrase to determine if it has a defamatory meaning. *Id.* at 501-02; *Ward v. Zelikovsky*, 136 N.J. 516, 532 (1994) (same, looking to "listener's reasonable interpretation" to determine whether the statement that someone is a "B-tch" has the capacity to lower that person's esteem in the community so as to be defamatory).

For the same reasons, Appellant's citation to *Tah v. Global Witness Publ'g, Inc.*, 413 F. Supp. 3d 1, 9-12 (D.D.C. 2019)—an out-of-circuit district court case— is inapt. That court considered a claim for *defamation by implication*, and looked to listeners' interpretation of a publication as evidence of what the statement implied

27

to the audience—not as part of an analysis of whether a statement was fact or opinion. Setting aside that New Jersey does not even recognize a separate claim for defamation by implication (*Albion Eng'g Co. v. Hartford Fire Ins. Co.*, 779 Fed. App'x 85, 90 (3d Cir. 2019)), *Tah* does not support the proposition that out-of-context, isolated third-party comments can be dispositive of whether a statement is fact or opinion as a matter of law.

Finally, the District Court correctly rejected Plaintiffs' self-serving contention that Courville somehow holds herself out as a legal expert. Pls.' Br., 9, 38, 42. On the contrary, Courville disclaimed any such characterization by describing herself in her Instagram biography as a "Legal Edutainer," and made explicit that her opinions are entertainment and "not legal advice"—among many other disclaimers and opinion indicia. JA102 (citing *Roberts v. Mintz*, 2016 WL 3981128, at *6 (N.J. Super. Ct. App. Div. July 26, 2016) (dismissing defamation claim because "defendant made [the challenged] statements under the heading, 'Rants and Raves,' signaling to any reader that what followed were the author's personal viewpoints")).

Ultimately, Plaintiffs cannot avoid the legal precedent that, so long as there is ***any possible interpretation*** that Courville's statements were mere opinions, they must be construed as such. *Pacira,* 63 F.4th at 245. The District Court's Opinion should be affirmed.

28

**2.     The District Court's Dismissal of the Defamation Claims was Proper Also Because Plaintiffs Failed to Plead Actual Malice[6]**

The District Court also properly dismissed Plaintiffs' defamation claims on the separate, independent ground that Plaintiffs failed to plausibly allege actual malice as to each of the Challenged Statements.

**a.     The District Court Properly Held that the Actual Malice Standard Applies to Plaintiffs' Defamation Claims**

As an initial matter, the District Court correctly concluded that the actual malice standard applied to Plaintiffs' defamation claims. Where a statement concerns a public figure or involves a "matter of public concern," a plaintiff must plausibly allege that the defendant acted with actual malice, *i.e.*, that the plaintiff "*actually* doubted the veracity of the [statements]." *Lee*, 710 Fed. App'x at 560.

Plaintiffs conceded several times before the District Court that the actual malice standard applies: they reserved a section of each of their complaints to pleading actual malice and then engaged the actual malice standard in opposition to Courville's motions to dismiss the first two complaints. *Jevremović, et al., v. Courville, et al.*, No. 22-4969 (D.N.J. 2022), Dkt. #22, p.14 ("The Complaint Plausibly Pleads Actual Malice"); *id.*, Dkt. #71, p.21 ("Plaintiffs Satisfy the Pleading Standard for Actual Malice"). Indeed, in Opinion II, the District Court expressly

---

[6] Notably, Plaintiffs do not challenge the District Court's actual malice analysis in their statement of issues on appeal. Pls.' Br., 3-4.

stated that "the parties do not dispute that Jevremović is a limited public figure." JA331. It was only in opposition to the motion to dismiss the FAC that Plaintiffs—for the first time—challenged application of the actual malice standard, but by then they had long waived such a challenge. *See, e.g., Watson v. NY Doe 2*, 2025 WL 2662306, at \*11, n.18, 19 (S.D.N.Y. Sept. 17, 2025) ("Any argument that New York's … actual malice standard do[es] not apply to this action would be waived, in any event, because [plaintiff] has conceded [actual malice applies] in his prior filings in this case," obviating further inquiry).

In any event, as the District Court properly found, the allegations of this case warrant pleading actual malice. A plaintiff is a public figure, and must plead actual malice, where they "voluntarily inject[] [themselves] or [are] drawn into a particular public controversy." *Mauro v. Intellectual Freedom Found., Inc.,* 2015 WL 10372230, at \*3 (N.J. Super. Ct. App. Div. Feb. 26, 2016); *see also Barasch v. Soho Weekly News, Inc.*, 208 N.J. Super. 163, 170 (App. Div. 1986) (people who have "thrust themselves 'into the vortex of [a] public issue,' or who ha[ve] 'engage[d] the public's attention in an attempt to influence its outcome,'" are limited public figures) (quoting *Gertz*, 418 U.S. at 352).

In three separate opinions, the District Court concluded that Plaintiffs are limited-purpose public figures, as they purposefully "injected themselves into the public sphere by soliciting attention via an intensive public relations campaign."

30

JA105-106 (citing JA347 ¶14 (conceding Plaintiffs sought to "develop a viral, word-of-mouth buzz" in the public health space by using "celebrities, influencers, and persons in the public eye" to promote their products)); JA331; JA024.

Moreover, matters of public concern "occup[y] the 'highest rung of the hierarchy of First Amendment values'" and therefore require pleading actual malice. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 759 (1985). "Speech deals with matters of public concern"—triggering the actual malice standard—"when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Soobzokov*, 664 Fed. App'x at 169. The Challenged Statements relate to treatment methods for substance abuse, conservatorship concerns (including for a celebrity), and public health, and therefore trigger application of the actual malice standard.

Tellingly, Plaintiffs do not contest on appeal these holdings that they are public figures. They simply argue—incorrectly—that Courville failed to make this showing.[7]

---

[7] Courville argued application of the actual malice standard. *Jevremović, et al., v. Courville, et al.*, No. 22-4969 (D.N.J. 2022), Dkt. #20-1, pp.26-27.

31

### b. The District Court Correctly Found Plaintiffs Failed to Allege Actual Malice

Next, the District Court's determination that Plaintiffs failed to plead actual malice should be affirmed. To meet this prohibitively "high bar," Plaintiffs needed to plead "sufficient particularized facts" establishing that Courville "seriously doubted" the truth of her statements. JA106-107 (citing cases, *e.g., St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Indeed, actual malice is not demonstrated by alleging even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Id.* (citing, *e.g.*, *Lee*, 710 Fed. App'x at 560). As the District Court noted, this "high bar is purposeful as the actual malice standard reflects a 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks.'" *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)); *Lee*, 710 Fed. App'x at 560 (actual malice imposes a "heavy burden.").

Given this high bar, actual malice is frequently the ground on which defamation complaints are dismissed *on the pleadings*. *Pace v. Baker-White*, 432 F. Supp. 3d 495, 513-14 (E.D. Pa. 2020) ("In the wake of *Iqbal* and *Twombly*, 'adequately pleading actual malice is an onerous task'" and "it is one that regularly results in early dismissal of an action"), *aff'd*, 85 Fed. App'x 827 (3d Cir. 2021);

*Soobzokov*, 664 Fed. App'x at 169 (affirming dismissal of defamation claim for failure to allege actual malice); *McCafferty*, 955 F.3d at 359-360 (same); *Berkery v. Gudknecht*, 763 Fed. App'x 288, 289 (3d Cir. 2019) (same).[8]

The District Court correctly found that Plaintiffs failed to meet the high bar of pleading actual malice. While Plaintiffs argue the District Court failed to engage in an "independent analysis" of actual malice in dismissing the FAC, the Opinion dismissing the FAC expressly adopts and incorporates the prior opinions' in-depth actual malice analyses. JA014, JA019, JA021; *see also* Pls.' Br., 18, 41 (conceding as much). On top of the extensive actual malice analysis it incorporated from the prior opinions, the District Court conducted "a thorough review of the FAC" and otherwise found no allegations satisfying the actual malice standard in the FAC— whether it specifically delineated the additional allegations in the FAC or not. JA019, JA021, JA024.

That holding was correct. In their Brief, Plaintiffs include a chart purporting to show allegations to support actual malice for only *three* of the Challenged Statements. Pls.' Br., 38-39. Dismissal of the defamation claims as to the remaining

---

[8] Plaintiffs cite a summary judgment opinion in which a court held that disputed issues of material fact warranted further discovery on a defamation claim brought by a "public official." Pls.' Br., 38 (citing *Standridge v. Ramey*, 323 N.J. Super. 538, 547-48 (App. Div. 1999)). But that is not relevant here, where the public figure determination was correctly made on the pleadings and where Plaintiffs *conceded* as much in court filings.

Challenged Statements should be dismissed on this ground alone. *See, e.g., Baiul v. Disson*, 607 Fed. App'x 18, 20-21 (2d Cir. 2015) (actual malice requires demonstrating that "[defendant] made *each* of the challenged statements with 'actual malice'"); *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 757 (4th Cir. 2023) (same).

In any event, the purported "evidence of actual malice" Plaintiffs provide for the limited subset of challenged statements is inadequate as a matter of law.

***Jevremović's court-appointed role with Margera.*** Plaintiffs argue that Courville "chose to ignore the critical distinction between conservatorship and guardianship" when describing her legal relationship to Margera. Pls.' Br., 38. But the FAC included no allegations that Courville "actually doubted the veracity" of her statements. Instead, the FAC demonstrates that Courville relayed to her audience her understanding that the terms "guardianship" and "conservatorship" are used interchangeably in different states to refer to the same general concept. JA368 ¶¶97. And a review of the Instagram posts and the video in which the challenged statements appear makes clear that, pursuant to this belief, Courville used the terms "guardianship" and "conservatorship" interchangeably to refer to Jevremović's relationship to Margera—even once referring in the subject video to the legal status

34

as "guardianship aka conservatorship."    JA370 ¶102 (linking, *inter alia*, video:

instagram.com/p/CfIEZqjDQ4_/).[9]

*Margera's hotel room arrest.*   Jevremović alleges that Courville had to know

Jevremović was not the victim of the alleged assault (and somehow defamed

Jevremović by suggesting she could have been the victim).  To make this showing,

Jevremović relies on an article published in the New York Post tabloid section, *Page*

*Six*, which reported: "The caller described the alleged victim – whose name will not

be disclosed out of discretion – as a white woman in her 50s or early 60s."  JA378

¶138; *see also* JA377 ¶134, n.44 (linking article ("Page Six Article" or "Article")).

Jevremović further excerpts from the Page Six Article an alleged Margera

representative stating that "Bam was with his aunt in the hotel room. She is a 65-

year-old woman."  JA378 ¶138.  On this basis, Jevremović argues that "it was plain

from the article that the caller described the alleged victim as a white woman in her

50s or early 60s and … Jevremović, in her 30s, could not have been the alleged

victim."  Pls.' Br., 39.

---

[9] Plaintiffs cited in their FAC to videos—hidden deep on the Arizona judiciary website as part of a "Committee on Judicial Education and Training" module for *members of the Arizona judiciary*—which supposedly discuss the difference.  JA367 ¶¶93-94, ns. 24-27.  The FAC does not plead that Courville was aware of or had any reason to know about these videos, but in any event, even a total "failure to investigate" does not establish actual malice.  JA106-108 (citing cases); JA334.

But Jevremović's excerpts from the Page Six Article are intentionally misleading—she *omits the very next sentence* in the Article that obliterates any actual malice allegation. The Article correctly reads as follows: "The caller described the alleged victim – whose name will not be disclosed out of discretion – as a white woman in her 50s or early 60s. It's unclear from the call, however, which woman the man was referring to." *See* <u>Article</u>. The Page Six Article explicitly contemplates the possibility that Margera's assault victim was someone other than the 50-year woman. It is therefore not "plain" that Jevremović could not have been the victim.

What the actual article says is nevertheless irrelevant given that in the very video in question, Courville herself casts doubt on the entire Page Six narrative. *See* JA376 ¶132 (linking video: youtube.com/watch?v=b3beCLgl6aw ("Margera Video")). Courville opened the Margera Video by reading from the Article describing the hotel events involving two unnamed women and Margera's purported arrest for assaulting one of them. *Id.* Courville then goes on to show the viewers a few clips of Margera describing his arrest and the police report from that night— with Courville ultimately concluding that, given these disclosed public facts, she did not believe the story unfolded as Page Six reported—she states, I "don't know" which woman was assaulted, "I don't know if that's even true." *Id.* Courville could

not have made any statement with knowledge of its falsity if she expressly *disclaimed* the truth of the narrative altogether.

Jevremović does not dispute that Courville explicitly told her audience that the whole story—hotel room assault and all—was improbable. Instead, Jevremović makes the absurd suggestion that statements made about Jevremović as part of this media narrative are somehow defamatory because a third-party commenter on Courville's YouTube video suggested the assaulted woman was Jevremović, and Courville responded with a "laughing out loud" emoji. Pls.' Br., 39-40. This has nothing to do with demonstrating actual malice, particularly where Courville *tells her audience* not to believe anything about the Page Six hotel assault story, including any role played by Jevremović. There is no defamation, and certainly no showing that Courville doubted what she was telling her audience about the hotel incident.

***Jevremović allegedly conspiring to put Rabb in jail.*** Jevremović points to a series of entirely irrelevant allegations to argue that Courville had to know it was false to opine that Jevremović conspired with Rabb's father, Larry, and a photographer, Mark Laita, to put Rabb in jail prior to her court-ordered treatment. Pls.' Br., 40-41. But the FAC falls far short of satisfying the high actual malice pleading burden as to this statement. Jevremović alleges only that in an interview with Laita, Rabb's father discussed Laita trying to get Rabb arrested. JA357-358 ¶¶57-58. Based on this statement alone, Jevremović suggests that Courville had to

37

know that Jevremović was not involved in getting Rabb arrested simply because Jevremović was not explicitly mentioned in this conversation. *Id.* That implausible leap of logic does not satisfy the actual malice burden. The *absence* of a mention of Jevremović in this casual conversation is a far cry from the "particularized" facts necessary to show Courville *knew* that her conclusion about Jevremović's participation in this plan was published with knowledge of its alleged falsity. Indeed, any such unsupported suggestion is belied further by the disclosed facts Courville laid out in her "***understanding of the setup***" disclaimer. *See infra*, pp.41-42.

In a further futile attempt to demonstrate actual malice, Jevremović suggests that Rabb said a few positive statements about her father (Pls.' Br., 40)—but whether or not Rabb had positive feelings towards her father is completely irrelevant in considering Courville's state of mind in opining about Jevremović working with others to put Rabb in jail. Along the same lines, Jevremović suggests that Courville had to have been aware that Rabb stated she was drug-free by April 2022 and had positive feelings towards Jevremović (*id.*)—but again, these allegations are entirely irrelevant in considering Courville's state of mind in opining about Jevremović working with others to put Rabb in jail.

In connection with *all* these statements, Plaintiffs also argue that Courville had legal training and was therefore somehow knowledgeable. Pls.' Br., 38-39, 42-

38

43. In other words, Plaintiffs ask this Court to find that Courville's law degree is somehow sufficient to satisfy the high burden of pleading actual malice. For this absurd proposition, Plaintiffs rely on *Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019), and suggest that in that case, it was the defendant reporter's mere "credentials" as a newspaper editor that supported actual malice. Pls.' Br., 42-43. But it was not simply that the defendant was an editor; rather, that defendant was editor-in-chief of *specific newspapers* that published articles *contradicting* the defamatory statements, giving rise to a plausible inference the defendant recklessly disregarded the available truth in making his statements. *Palin*, 940 F.3d at 814. The *Palin* court also found an inference of actual malice where an early version of the defamatory article hyperlinked an article that contradicted the defamatory statement. *Id.* at 815. Plaintiffs baldly state "the same is true here" (Pls.' Br., 43), but fail to point to any contradictory information accessible to Courville.

Ultimately, Plaintiffs are left to rely on bald allegations that Courville "knew," or "reckless[ly] disregard[ed]," that her statements were untrue. Pls.' Br., 37-43. But, as the District Court correctly found, such allegations are "bare and conclusory." JA107; JA334. Because the FAC includes no particularized allegations plausibly alleging actual malice as to *each* of the Challenged Statements when they were made, this Court should affirm dismissal of Plaintiffs' defamation claims on this ground as well.

39

### 3. The Defamation Claims were Properly Dismissed Because They are Otherwise not Defamatory as a Matter of Law

The Challenged Statements were also properly dismissed because, in addition to the broader opinion context and the failure to allege actual malice, the statements are not defamatory on other grounds supported by the record. *See Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 335 (3d Cir. 2009) (appellate court may affirm holding for any reason supported by the record). Specifically, the Challenged Statements are either "pure" opinion (*i.e.*, based upon disclosed facts), or they are rhetorical hyperbole, or not alleged to be false. Each of these reasons provides an additional ground to affirm dismissal of the defamation claims. *Pacira*, 63 F.4th at 245-46; *McCafferty*, 955 F.3d at 358-59; *Vaughn v. MGM Resorts Int'l*, 782 Fed. App'x 218, 220-21 (3d Cir. 2019) (affirming district court dismissal of defamation claim where statement not alleged to be false).

**Statements Referring to Rabb's Cause of Death.** Plaintiffs did not even attempt to provide any actual malice substantiation for Courville's statements about Rabb's cause of death (Pls.' Br., 38-40)—that is sufficient for dismissal. *Baiul*, 607 Fed. App'x at 20-21; *Blankenship*, 60 F.4th at 757. In any event, Courville's statements that Jevremović "lied" about Rabb's cause of death are pure opinion based on disclosed facts that Plaintiffs concede. As Plaintiffs admit, Jevremović's public account of Rabb's cause of death differs from Rabb's formal autopsy report. JA361 ¶72 (contending that Rabb died from a "seizure disorder"); JA351-352 ¶¶36

40

(acknowledging that does not appear in Rabb's autopsy report, which instead lists the cause of death as, *inter alia*, "cardiac arrhythmia.").

Rather than attempting to dispute these facts, Jevremović acknowledges the discrepancy between her public statements and Rabb's autopsy report. And in disclosing the discrepancy, and then opining based on this discrepancy that Jevremović "lied," Courville was merely offering her subjective opinion in light of these undisputed facts—so it is constitutionally protected opinion. *McCafferty*, 955 F.3d at 358 (where opinions "relate back to the disclosed facts [in an article, they] are most naturally read as characterizing the [disclosed] facts" and are therefore not actionable defamation); *Pacira*, 63 F.4th at 245-49.

**Statements Suggesting that Jevremović Conspired to Put Rabb in Jail.** Jevremović challenges Courville's opinion that Jevremović conspired with Rabb's father and Laita to put Rabb in jail prior to her court-ordered treatment. Pls.' Br., 29-31, 40-41. But the allegations in the FAC omit the crucial context in which this particular statement was made. Before Courville launches into her opinion about how Rabb ended up in jail, the YouTube video screen turns black with a large, all-caps disclaimer: "MY UNDERSTANDING OF THE SETUP." JA355 ¶50 (linking video: youtube.com/watch?v=xdfvYfuEUsA ("Rabb Video")). Moreover, the tagline "**IN MY UNDERSTANDING**" appeared at the bottom of the screen the

entire time Courville discussed her theory, signaling to the viewer her upcoming opinion. *Id.*



Courville then detailed a series of facts—which Jevremović does not dispute—underlying her "theory" as follows: Rabb assaulted her father, who reached out to Laita for assistance. *Id.* Courville then explains how Jevremović and Larry Rabb were connected in an attempt to get Rabb into a conservatorship. *Id.* Courville then showed her audience Jevremović's method for securing a conservatorship, displaying on the screen a screenshot of AURA's website on which Jevremović publicized that Step One of getting a loved one into treatment is to threaten an unwilling participant with "conservatorship or jail." *Id.* Courville explains to her audience that, based on this clear website, "Lima's M.O. is to force someone to choose between conservatorship or jail." *Id.*

Because Jevremović does not allege that the underlying facts disclosed in the Rabb Video are false, Courville's subsequent characterization and opinion in that

video—that Rabb's incarceration prior to her court-ordered treatment involved Jevremović in some manner—is protected and non-actionable. *Weiss v. Pinnacle Ent., Inc.,* 2012 WL 1448050, at \*6-7 (N.J. Super. Ct. App. Div. Apr. 27, 2012) (commentary based on disclosed facts that are not false is not defamatory).

**Statements Regarding Rabb's Treatment.** Plaintiffs also challenge Courville's statements that Jevremović and AURA gave Rabb "experimental treatment" and used her as a "test subject." Pls.' Br., 14, 29-30. As an initial matter, Plaintiffs do not even try to argue in their Brief that they pled actual malice for these statements. Moreover, Plaintiffs readily concede the facts underlying this opinion— *i.e.,* that Rabb received "Virtual Reality Exposure Therapy" (JA361-362 ¶¶74-75) and other undisclosed "technology" AURA was "explor[ing]" (JA346 ¶8)—and that she was used as a "case study" with her "data collected" "for research purposes." JA362 ¶77; *see also* JA347 ¶¶13-14 (AURA provided its products free of charge so it could "receive feedback" and "refine" its tools). On these admitted facts, Courville's characterization of these tools as "experimental" and that Rabb was used as a "test subject" is protected opinion.

Plaintiffs also challenge Courville's suggestion that Rabb's treatment was "against her will" (Pls.' Br., 14, 30), but again, Plaintiffs *alleged* the underlying disclosed facts—that Rabb's treatment was "Court Ordered" and involuntary, and that she was transferred from jail to her treatment facility (JA358 ¶59), where she

43

was treated with AURA's products.  JA350 ¶28; JA351 ¶35; JA361 ¶74.  Against this backdrop, Courville's characterization of Rabb's treatment is nothing more than pure opinion on undisputed facts.

Lastly, Plaintiffs invent a statement Courville never made: that Plaintiffs "caused" Rabb's death.  Pls.' Br., 13.  Plaintiffs point to the following exchange, where Jevremović publicly stated: "Rabb never had seizures prior to being homeless," and Courville commented: "I think another way of saying that is she never had seizures prior to using AURA."  JA361 ¶72.  Setting aside that this exchange does not come close to stating that AURA caused Rabb's death, Plaintiffs do not even try to plead that Courville's statement in the exchange is even false—this is fatal.  *Vaughn*, 782 Fed. App'x at 220-21 (affirming holding that plaintiff "failed to state a viable claim for defamation because he 'admits that the alleged defamatory statement is not false'").

**Statements Referring to Margera's Guardianship.** Courville had various opinions on Margera's guardianship—none of which are actionable as defamation.

To the extent Jevremović challenges Courville's reference to Jevremović's guardianship over Margera as a "conservatorship" (Pls.' Br., 8-9, 38), in addition to the failure of pleading actual malice, there is nothing injurious to someone's reputation in opining that guardianships are similar to conservatorships.  *Botts v. New York Times Co.,* 106 F. App'x 109, 110 (3d Cir. 2004) (statement must be

44

"injurious to the reputation of another" or expose them "to hatred, contempt or ridicule").

And equally fatally, the statement that Jevremović had a "conservatorship" rather than a "guardianship" is substantially true. *Bank v. Lee*, 481 N.J. Super. 412, 432 (App. Div. 2025) (when assessing substantial truth, "minor inaccuracies" must be overlooked: "an action will not lie 'so long as the substance, the gist, the sting, of the libelous charge be justified'") (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991)). Indeed, whether Courville refers to the legal status as a guardianship or conservatorship is inconsequential given that Jevremović does not dispute she had some legal relationship relative to Margera in that general nature. While Jevremović argues without support that the term "conservatorship" suggested to viewers that Jevremović was trying to access Margera's assets, Jevremović tellingly does not include one instance of Courville making that accusation. To the contrary—Courville repeatedly tells her viewers her understanding that Jevremović's "conservatorship" of Margera is "of the person" (as opposed to control of his money). *See* JA376-377 ¶132 (linking Margera Video). At most, Courville questions aloud who is in charge of Margera's assets given that he is not even allowed to access his phone—a fact that Jevremović does not argue is false. *Id.*

45

Courville's questioning of the ramifications of this underlying fact is not actionable defamation.[10]

Jevremović also falsely contends that Courville described Margera as Jevremović's "cash cow." Pls.' Br., 28-29. First, this contention is inaccurate: in fact, it was a third-party commentator who asked, "forced incarceration, experimenting on homeless & celebrity cash cows to fund her treatment centers?" and Courville responded "I mean…that's my impression." JA371 ¶108. It is unclear to which portion of the commentator's question Courville was referring, and regardless, she made clear that was only her "impression." Further, again, Jevremović does not dispute the fully disclosed facts upon which this supposed opinion was based—her financial ties to Margera. JA364 ¶84 (Margera provided his "support" to Jevremović's business); *see also* JA365 ¶85 (alleging Jevremović was "statutorily permitted to collect reasonable sums for her services"). Given these undisputed facts, even if Courville had made the "cash cow" comment (which she did not), it would be non-actionable opinion or substantially true. *McCafferty*, 955

---

[10] Jevremović's herself equated conservatorships and guardianships in a public video airing on September 9, 2022 called A Talk on Mental Health and Addiction-Lima Jevremović. youtube.com/watch?v=4xWNlQKzlm4 ("What we were trying to do was file what's called an LPS conservatorship. It's the equivalent of a guardianship in um – you know, in the grand understanding …").

F.3d at 359 ("Everyone is free to speculate about someone's motivations based on disclosed facts about that person's behavior.").

Finally, Jevremović appears to challenge Courville's statements allegedly referring to the "trafficking" of Margera, and other vague, "criminal" activity (Pls.' Br., 11, 25, 28, 47, 49), but these are hyperbolic opinion.  JA100-103; JA332-334; JA021.  As the District Court properly found, a statement is not defamatory simply because one uses a "word that is also the name of a crime"—rather, the statement must be examined in context to identify whether it rises beyond pure opinion.  JA100 (quoting *Roberts*, 2016 WL 3981128, at *6) (accusations of "fraud" were mere hyperbolic opinion); *see also Bajardi*, 2019 WL 3521847, at *16, 21 (accusations plaintiffs were "future convicted felons" engaged in "conspiracy" were mere hyperbolic opinion).

**Statements Regarding the Alleged Assault in Margera's Hotel Room.** Jevremović fails in her challenge to Courville's statements about whether Jevremović was the victim of Margera's alleged assault in the Florida hotel room where an arrest took place.  Pls.' Br., 11-12.  As an initial matter, nowhere in the video referenced in the FAC does Courville ever state that Jevremović was physically present at the hotel during this incident or that she was the victim of an assault.  *See* JA376 ¶132 (linking Margera Video).  Moreover, the discussion about Margera's hotel arrest was made in a live-streamed YouTube video with the

47

hallmark opinion features (Courville in fuzzy bunny ears with piñata in the background; extensive statements of subjectivity such as "I have a theory" and "What do I know" and "What do you all think"). *Id*. More critically, however, a viewer who watched the entire YouTube video would learn that *Courville herself does not believe* the story about Margera assaulting someone in the hotel room—and therefore anything relating to Jevremović being in that hotel room—is even true. *Id*. Indeed, as set forth above, *Courville herself debunks this media story*. This statement can therefore not be actionable defamation.

**Post Allegedly Insinuating an Alleged OnlyFans Page.** Finally, Plaintiffs make the brazen suggestion that Courville "insinuate[ed] that Ms. Jevremović had a sexually explicit OnlyFans account." Pls.' Br., 16. Critically, the FAC *did not allege that the screenshot comprises a defamatory statement*, and Jevremović may not make that allegation on appeal. *F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994) (complaint must "identify the alleged defamatory statements"). Nor can Plaintiffs rely on the theory of "defamation by implication," which New Jersey has not adopted as a cause of action. *See Albion,* 779 Fed. App'x at 90; *Bull Int'l, Inc. v. MTD Consumer Grp, Inc.,* 654 Fed. App'x 80, 105 (3d Cir. 2016) (Plaintiffs' cited case addressing defamation by implication under Pennsylvania law).

In any event, the subject Instagram post shows only a Facebook profile image from the account of a woman named "Lima Mora," along with the question: "Who's

she?" JA387 ¶174 (linking post).  This is a rhetorical question which is inherently non-actionable opinion.  *Nanavati v. Burdette Tomlin Mem'l Hosp.,* 857 F.2d 96, 108 (3d Cir. 1988).  And even while Plaintiffs *concede* that Courville's screenshot of a Facebook profile says nothing about Jevremović posing for OnlyFans (it is clearly a Facebook profile picture as made clear by the "add friend" and "Facebook Messenger" tools underneath the photograph), they continue to implausibly suggest there is an *implication* about Jevremović and OnlyFans.  Pls.' Br., 16, 32-33.  This suggestion is based exclusively on a select few comments by a limited sample of unidentified readers (tellingly, not in quotation marks and not attributed to Courville herself)—that Jevremović has an "only fans."  JA388 ¶176.  These third-party comments cannot transform Courville's reposting of a public photo into something Courville never actually said.

## III.    THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' ADDITIONAL CLAIMS

### A.    The District Court Properly Dismissed Jevremović's False Light Claim

Jevremović's false light claim—which rests on the same allegations as Plaintiffs' defamation claims—fails for the same reasons.  "New Jersey extends the same constitutional protection to false light…claims as it does to defamation claims."  *Soobzokov*, 664 Fed. App'x at 169; *Herman*, 2024 WL 4488462, at *4 (false light is "essentially a claim of defamation.") (cleaned up).  Thus, for all the reasons

identified above—including because the Challenged Statements are opinion and not pled with actual malice—Jevremović's false light claim was properly dismissed. JA336-337; JA024.

### B.    The District Court Properly Dismissed Jevremović's Intrusion Upon Seclusion Claim

Jevremović failed to plead two of the required elements for an intrusion upon seclusion claim: "that [Courville] committed an intentional intrusion or that [Courville] invaded her privacy." JA335; JA023; *Swift v. United Food Commercial Workers Union Local 56,* 2008 WL 2696174, at *3 (N.J. App. Div. July 11, 2008) (dismissing intrusion upon seclusion claim for failure to plead these two elements).

Jevremović's claim relies on the contention that Courville published her supposedly "private" social security number ("SSN").[11]   Pls.' Br., 44.  But as the District Court correctly held, the FAC lacks allegations about "how Defendants obtained the information, whether Defendants 'used anything other than public or permissible means to' obtain the information, or [that] the information was not public." JA023.

---

[11] Jevremović briefly references the purported disclosure of her date of birth, phone number, and address, but does not point to allegations showing that this information was private *and* that Courville wrongfully obtained it. And to the extent Jevremović alleges that Courville disclosed others' private information, Jevremović lacks standing to pursue such claims.

Jevremović cannot overcome this finding on appeal.  While she blithely suggests that the SSN was "contained in a court-sealed document" (Pls.' Br., 44), there are no allegations in the FAC that the SSN was only ever in a "court-sealed document" or to otherwise suggest that the SSN was actually private.  Indeed, the opposite is true.  As Jevremović concedes in the FAC, "The Application for Appointment as Guardian posted by Defendants"—a public document Jevremović filed herself on a public court docket on June 11, 2021—"***initially contained Ms. Jevremović's Social Security Number, unredacted.***"  JA392 ¶202, n.58.  Indeed, as the public court docket makes clear, on February 17, 2022, the Pinellas County clerk *denied* Jevremović's request for confidential treatment of the guardianship application.  *In re the Guardianship of Brandon Margera*, 21-011821-GD, Dkt. #15 (Fla. 6th Cir. Ct.).[12]

Jevremović's concession that she herself publicly filed the document containing her SSN—unredacted—undermines any suggestion that this information is private or that it was obtained by Courville by "unlawful means," as required to state a claim for intrusion upon seclusion.  *Bisbee v. John C. Conover Agency, Inc.,* 186 N.J. Super. 335, 340 (App. Div. 1982) ("all of the matters at issue herein were

---

[12] This public filing may be considered on a motion to dismiss.  Jevremović referenced and linked to it in the FAC (JA392 ¶202, n.58) and the Court may "take judicial notice" of public court filings as "matters of public record." *Smith v. Lynn*, 809 Fed. App'x 115, 117 (3d Cir. 2020).

otherwise known and public…Defendants did nothing wrongful in obtaining or compiling this information."); *Hammer v. Hair Sys., Inc.,* 2009 WL 1686820, at *6 (N.J. Super. Ct. App. Div. June 18, 2009) (dismissing claim absent allegation information was obtained wrongfully).[13]

Jevremović implausibly asks this Court to "draw a reasonable inference" that Courville "did not obtain the information by any rightful means" (Pls.' Br., 45)—but any such inference is unreasonable where Jevremović admits in her own pleadings that she failed to redact her SSN on a public filing that she made. Jevremović supports her "reasonable inference" argument with a case decided on summary judgment addressing circumstantial evidence (*Friedman v. Martinez*, 242 N.J. 449, 471 (2020)); this case is on a motion to dismiss, where the allegations in the complaint control.  And, as the District Court correctly held, Jevremović's pleadings lack the requisite allegations that the information was private and that Courville wrongfully obtained it.[14]

---

[13] Notably, the Instagram post at issue (JA392 ¶202, n.58) shows a version of the guardianship application with the SSN redacted. The FAC does not show any post by Courville with an unredacted SSN.

[14] Jevremović invocation of the Consumer Fraud Act (Pls.' Br., 44) is irrelevant here as it can only be invoked by "consumers." *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.,* 31 F.3d 1259, 1272 (3d Cir. 1994).

Finally, to the extent Jevremović points to conduct by third-parties (Pls.' Br., 44-45), any such conduct cannot be imputed to Courville, particularly where she actually discouraged it.  JA385-386 ¶170.

## C.    The District Court Properly Dismissed Jevremović's Emotional Distress Claims

Jevremović failed to plead that Courville engaged in "intentional and outrageous conduct," as required for an IIED claim.  JA025-026.  As the District Court correctly found, what qualifies as "intentional and outrageous conduct" is limited; "[T]ortious or even criminal" conduct is not enough—it must be "so extreme and outrageous" "as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." *Eyrich for Eyrich v. Dam*, 193 N.J. Super. 244, 260 (App. Div. 1984).  Jevremović's self-serving statement that "[a]n IIED claim is rarely dismissed on a motion to dismiss" is against the weight of the law, and none of the cases she cites stand for this proposition.  To the contrary—the inquiry is subject to an "elevated threshold" which "is only satisfied in extreme cases under New Jersey law."  JA025-026; *Gensinger v. Reyes,* 2020 WL 6703370, at *6 (N.J. Super. Ct. App. Div. Nov. 16, 2020) (same).

The conduct Jevremović cites in support of her emotional distress claims falls far short of this high bar.  First, Jevremović points to the same statements she challenges as defamatory.  Pls.' Br., 4, 49.  But as the District Court found, "New Jersey courts do not permit claims for infliction of emotional distress to proceed

53

when the factual basis for the claim is non-actionable alleged defamation." JA338-339, n.10 (citation omitted); *Soobzokov*, 664 Fed. App'x at 169.

Otherwise, Jevremović's IIED claim rests exclusively on Courville's alleged dissemination of Jevremović's personal information (Pls.' Br., 49-50)—an unsupported allegation. In any event, New Jersey courts have found that even publicly disseminating social security numbers does not constitute sufficiently "extreme and outrageous" conduct. *See, e.g., Johnson v. City of Hoboken*, 476 N.J. Super. 361, 367, 376 (App. Div. 2023). Even the release of far more harmful information has been deemed insufficient to sustain an IIED claim. *Petrosino v. Ventrice,* 2015 WL 13694300, at *1, 12 (N.J. Super. Ct. App. Div. Aug. 27, 2015) (affirming dismissal of IIED claim where house seller lied about the safety of elevator and "intentionally withheld" that the elevator previously killed two children, finding such conduct did "not constitute the sort of atrocious conduct defined by the tort").

Jevremović's case law showcases wholly incomparable behavior—some of which did not even qualify as sufficiently "outrageous behavior" to support an IIED claim. *See, e.g., Calkins v. Dollarland, Inc.,* 117 F. Supp. 2d 421, 432 (D.N.J. 2000) (allegations of sexual harassment "do[] not constitute sufficiently outrageous behavior"); *Coefield v. GPU*, 125 Fed. App'x 445, 450 (3d Cir. 2005) (no IIED claim based on alleged racial discrimination); *Schachtel v. Hughes*, 2024 WL 4579075, at

54

*9-10 (N.J. Super. Ct. App. Div. Oct. 25, 2024) (only actionable alleged defamation can support IIED claim); *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 428 (D.N.J. 1994) (IIED claim stated where employee "alleged a continuing pattern of [workplace] harassment," including "forc[ing] her to return to work two weeks after her cancer surgery, in contravention to her doctor's orders," and "refus[ing] to allow her to leave work for needed radiation and chemotherapy treatments").

The District Court's dismissal of the IIED claim could be affirmed on the separate, independent ground that Jevremović failed to allege emotional distress manifesting in physical or psychological sequalae "so severe that no reasonable man could be expected to endure it." JA339 (quoting *Moran v. DaVita*, 441 Fed. App'x 942, 947 (3d Cir. 2011)). The FAC pled only conclusory allegations of psychological or physical manifestations of emotional distress, or non-physical or psychological damages (*see* JA349 ¶25; JA394 ¶213; JA394-395 ¶¶217-20), and those allegations are entirely inadequate. JA339-340. And while Jevremović pleads that she "regularly sees a psychiatrist and a therapist" (JA395 ¶¶219-220), she never contends that she started seeing her psychiatrist/therapist because of Courville's conduct, or that seeing a psychiatrist or therapist is because of a severe and disabling emotional or mental condition that would qualify for an IIED claim.

Jevremović also alleged that she was diagnosed with depression in April 2024 (*id.*), *over two years* after the alleged defamatory statements began, but there is no

55

allegation that the depression was caused by Courville.  In any event, bare allegations of "depression" fall short of the "severe distress standard." JA339 (citing cases); *see also Clark v. Nenna*, 465 N.J. Super. 505, 512 (App. Div. 2020) (allegations of "depression have been frequently deemed insufficient as a matter of law").

Finally, Jevremović's allegations that she is *in the process of* "developing" a "heart condition related to the emotional distress" (JA395 ¶219), or that her emotional distress has "exacerbated" some unspecified "physical conditions" (JA395 ¶220) are too non-specific and speculative to salvage her claims. *Mankodi v. Trump Marina Assocs., LLC*, 525 Fed. App'x 161, 166 (3d Cir. 2013) (plaintiff must allege "what type of emotional distress he suffered, what symptoms he had, or what treatment, if any, he sought."); *Huang v. Phan*, 2022 WL 2752218, at *3 (3d Cir. July 14, 2022) (concern about *potential* physical conditions cannot sustain an emotional distress claim).  Ultimately, the FAC does not make any plausible allegations causally connecting Jevremović's alleged symptoms to Courville's conduct.

The District Court was also correct to dismiss Jevremović's NIED claim, which requires a showing that Courville's conduct placed her in a "zone of danger" of "*immediate* personal injury." *See Strayer v. Wingate at Wyndham*, 2024 WL 207497, at *4-6 (N.J. Super. Ct. App. Div. Jan. 19, 2024) (emphasis added); *see also Petrosino*, 2015 WL 13694300, at *11.  Jevremović alleged only that she feared

56

someone might harm her after her home address was published online (JA394-395 ¶217)—but such speculative fear is not presence in an *immediate* zone of danger. *Cf. Angle v. United States,* 2012 WL 6708165, at *7 (D.N.J. Dec. 21, 2012) (plaintiffs not in "*immediate*" zone of danger even after a bomb fragment penetrated their home, violently shook the house, and landed in an upstairs bedroom); *Strayer*, 2024 WL 207497, at *4-6 (plaintiff not in "immediate" zone of danger when he awoke to find that his roommate was murdered, since he "did not encounter the murderer"); *Bloom v. Consol. Rail Corp.,* 41 F.3d 911, 914-17 (3d Cir. 1994) (plaintiff not in "*immediate*" zone of danger when his train crashed but his section of the train was unharmed).

### D. The District Court Properly Dismissed AURA's Tortious Interference Claims

The District Court properly exercised its discretion in dismissing AURA's tortious interference claims, which were asserted for the first time in the FAC. In Opinions I and II, the Court had twice warned Plaintiffs that its grant of leave to amend was "*limited to remedying the defects in the counts dismissed.*" JA018; JA108; JA343. Yet twice, Plaintiffs "ignore[d] the Court's instructions" by adding entirely new claims, thus "exceed[ing] the leave provided by the Court." JA018. The District Court properly exercised its discretion in dismissing those claims. *Campbell v. United States*, 375 Fed. App'x 254, 260 (3d Cir. 2010) (district court

had discretion to dismiss amended complaint that exceeded the permissible scope of amendment).

Regardless, AURA admits that these claims are repackaged versions of their defamation claims (Pls.' Br., 53-55)—thus, they fail for the same reasons. Moreover, AURA failed to plead any of the required elements of a tortious interference claim—an existing/prospective contract, interfered with intentionally and maliciously, causing loss of the contract and damages. *Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, 34 F.4th 190, 200 (3d Cir. 2022); *Stedrak v. Seton Hall University*, 2023 WL 4418310, at *5 (N.J. Super. App. Div. Jul. 10, 2023). Moreover, AURA's "allegations do not include any of the specific potential business relationships with which defendant allegedly interfered." *1 Reliable Transp., Inc. v. Trader Joe's Co., Inc.*, 2020 WL 4279789, at *5-6 (N.J. Super. App. Div. 2020) (affirming dismissal of tortious interference claim on this ground). AURA only vaguely alludes to unidentified "contracts" or lost business from its unidentified "investors" (Pls.' Br., 55), which is fatal to AURA's claims.

## **CONCLUSION**

For the foregoing reasons, Appellees, Brittany Courville and That Surprise Witness TV, LLC, respectfully request that the Court affirm the District Court's dismissal of the Fourth Amended Complaint.

DATED: November 20, 2025       Respectfully submitted,

COZEN O'CONNOR

*/s/ Tamar S. Wise*

Tamar S. Wise
David Margulis
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: 212-883-4924
Fax: 646-461-2054
twise@cozen.com
dmargulis@cozen.com

## CERTIFICATION OF ADMISSION TO BAR

I, Tamar S. Wise, hereby certify as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated:  November 20, 2025

*/s/ Tamar S. Wise*
Tamar S. Wise, Esq.

*Counsel for Defendants-Appellees*

## CERTIFICATION OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 12,967 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and a virus detection program, the Vipre Virus Protection, version 3.1 was run on the file containing the electronic version of this brief and no viruses have been detected.

Dated:  November 20, 2025        /s/ Tamar S. Wise
                                 Tamar S. Wise, Esq.

                                 *Counsel for Defendants-Appellees*

## **CERTIFICATE OF SERVICE**

I, Tamar S. Wise, hereby certify that on this 20th day of November, 2025, a copy of the foregoing Brief for Defendants-Appellees was electronically filed with the Third Circuit Court of Appeals, and service was made upon counsel of record through the Court's electronic docketing system.

Dated:  November 20, 2025          */s/ Tamar S. Wise*
                                                      Tamar S. Wise, Esq.

                                                      *Counsel for Defendants-Appellees*